F I L E D
11/19/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Maria Albarran
DV-15-2024-0001197-TO
Allison, Robert B
38.1

Susan G. Ridgeway
HALL & EVANS, LLC
Millennium Building
125 Bank Street, Suite 403
Missoula, Montana 59802
Telephone: (406) 541-8882
Fax No: (406) 519-2035
ridgeways@hallevans.com

*Attorneys for Defendant Taylor Kai Gronke*

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT
## FLATHEAD COUNTY

| | |
|---|---|
| RYAN DEAN GABRIEL,<br><br>Plaintiff,<br><br>vs.<br><br><br><br><br>FREDERICK "FRITZ" J. GROENKE/ DBA MONTANA REAL ESTATE GROUP, TAYLOR KAI GROENKE, GROENKE HOLDINGS, LLC, and MONTANA REGIONAL MLS, LLC,<br><br>Defendants. | Case No. DV-15-2024-1197<br><br>**DEFENDANT TAYLOR KAI GROENKE'S EXHIBITS 1-76 TO STATEMENT OF FACTS IN SUPPORT OF MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT AND FOR PREFILING ORDER AND FEES** |

Defendant Taylor Kai Groenke submits the attached Exhibits 1-76 in support of her Statement of Facts.

DATED this 19th day of November, 2024.

Hall & Evans, LLC


/s/ Susan G. Ridgeway
Susan G. Ridgeway
*Attorneys for Defendant,*
*Taylor Kai Groenke*

# INDEX TO DEFENDANT KAI GROENKE'S EXHIBITS

| Exhibit | Date | Description |
| --- | --- | --- |
| 1 | March 21, 2022 | Olsen's Dissolution of Domestic Partnership Complaint |
| 2 | | Case Summary 22DR04942 |
| 3 | March 15, 2022 | Gabriel's Oregon Partition Complaint |
| 4 | | Case Summary OR 22CV10399 |
| 5 | June 06, 2022 | Gabriel's Montana Partition Complaint |
| 6 | August 17, 2022 | Order Consolidating and Denying Motion to Dismiss |
| 7 | May 09, 2023 | Olsen's Motion and Brief to Dismiss or Stay Proceedings in Montana Partition Action |
| 8 | May 10, 2023 | Gabriel's email to K. Groenke threatening lawsuits |
| 9 | May 10, 2023 | Gabriel's email to K. Groenke mocking her appearance |
| 10 | May 15, 2023 | Gabriel's email to K. Groenke with multiple threats |
| 11 | May 19, 2023 | Gabriel's Response Brief Opposing Motion to Dismiss or Stay Proceedings (exhibits omitted) |
| 12 | May 31, 2023 | Olsen's Reply Brief to Dismiss or Stay Proceedings (exhibits omitted) |
| 13 | June 01, 2023 | Gabriel's emails to K. Groenke in response to Olsen's Reply Brief |
| 14 | June 30, 2023 | Gabriel's email to K. Groenke threatening expensive tortious interference lawsuit |
| 15 | July 10, 2023 | Gabriel's Tortious Interference Complaint Against Nelson |
| 16 | June 01, 2023 | Order Staying Proceedings in Montana Partition Action |
| 17 | September 04, 2023 | Ethics Complaint Against Nelson |
| 18 | September 07, 2023 | Gabriel's email to K. Groenke re investigating her family background |
| 19 | September 26, 2023 | Gabriel's email to K. Groenke responding to First Status Report |
| 20 | October 03, 2023 | Gabriel's email to K. Groenke threatening motion for sanctions against her |
| 21 | October 17, 2023 | Order Dismissing Tortious Interference Lawsuit against Nelson |
| 22 | October 24, 2023 | Gabriel's email to Kai renewing threat of sanctions motion |
| 24 | November 20, 2023 | Gabriel's email to K. Groenke notifying of USDC action against Olsen |
| 23 | November 17, 2023 | Montana USDC Due Process Lawsuit against Olsen |
| 25 | November 19, 2023 | Gabriel's Motion to Postpone proceedings due to Filing of federal lawsuit |
| 26 | December 29, 2023 | Order Denying Motion to Postpone and other Motions |
| 27 | January 02, 2023 | Gabriel's Petition for "Peremptory" or "Alternative" Writ of Mandamus |
| 28 | January 02, 2024 | Oregon Appeal from Dissolution of Domestic Partnership Proceedings |

| 29 | January 22, 2024 | Order Dismissing Appeal; Denying Motion to Stay Trial Court Proceedings |
|----|------------------|---------------------------------------------------------|
| 30 | January 19, 2024 | Gabriel's Emergency Motion to Stay Trial Court Proceedings |
| 31 | January 23, 2024 | Findings and Recommendation, Gabriel v. Olsen |
| 32 | January 26, 2024 | Order Dismissing Case with Prejudice, Gabriel v Olsen |
| 33 | February 01, 2024 | Order Denying Petition for Writ of Mandamus and Dismissing Motions to Stay and to Dismiss |
| 34 | March 27, 2024 | Gabriel's Post-Trial Brief |
| 35 | April 17, 2024 | Order re Dissolution of Domestic Partnership and Partition Claims with findings and conclusions |
| 36 | May 02, 2024 | General Judgment |
| 37 | May 03, 2024 | Oregon USDC Due Process Action against Government |
| 38 |  | Case View of Appeal from Dissolution of Domestic Partnership Judgment |
| 39 | July 02, 2024 | Oregon Amended General Judgment |
| 40 |  | NO EXHIBIT 40 |
| 41 | June 25, 2024 | Order Denying Stay of Enforcement - Oregon Court of Appeals |
| 42 | July 02, 2024 | Notice of Filing of Foreign Judgment and Affidavit |
| 43 |  | Gabriel's Text Messages to F. Groenke |
| 44 | July 16, 2024 | Gabriel's email to K. Groenke, "settlement on table" |
| 45 | July 19, 2024 | Kai's Petition for Temporary Order of Protection |
| 46 | August 22, 2024 | Fritz Groenke's Order of Protection |
| 47 | August 14, 2024 | Order Denying Motion for Stay and Sustaining Objection to Bond |
| 48 | August 03, 2024 | Gabriel's Petition for Order of Protection against Olsen, exhibits omitted |
| 49 | August 09, 2024 | Order Denying Gabriel's TOP Petition Against Olsen |
| 50 | August 12, 2024 | Gabriel's Rejected TOP Petition |
| 51 | August 08, 2024 | Gabriel's Motion to Lift Stay in Montana Partition Action |
| 52 | August 16, 2024 | Gabriel's Briefs in Support of Motion to Lift Stay in Montana Partition Action |
| 53 | August 09, 2024 | Kai Groenke's Order of Protection |
| 54 | August 15, 2024 | Gabriel's Northwest Montana Association of Realtors Complaint against Fritz Groenke |
| 55 | August 26, 2024 | Fritz Groenke's Response to Gabriel's NMAR Complaint |
| 56 | September 06, 2024 | NMAR Letter holding complaint in abeyance |
| 57 | August 15, 2024 | Gabriel's Complaint to Board of Realty Regulation (exhibits omitted) |
| 58 | October 22, 2024 | Board of Realty Regulation's dismissal of complaint |
| 59 | September 30, 2024 | District Court Order affirming Kai's Order of Protection |
| 60 |  | Insured Titles emails regarding Mr. Gabriel being a safety risk |
| 61 | August 19, 2024 | Affidavit of Jesse Olsen ISO motion to enforce and contempt |

| 62 | August 19, 2024 | Complaint for Injunctive and Other Relief - tortious interference and consumer protection |
|---|---|---|
| 62A | July 24, 2024 | Communications with Gabriel's attorney re stay |
| 63 | August 26, 2024 | Montana USDC Complaint Gray v. Gabriel |
| 63A | August 29, 2024 | Gabriel's email to K. Groenke's paralegal regarding death of Stalin |
| 64 | September 06, 2024 | Gabriel's email to Kai's assistant with torture photo |
| 65 | October 03, 2024 | Findings and Recommendations, Oregon USDC |
| 66 | October 22, 2024 | Order Adopting Findings & Recommendations |
| 66A | October 04, 2024 | Gabriel's email to K. Groenke's paralegal regarding Robespierre |
| 67 | October 06, 2024 | Gabriel's Appeal to District Court of Fritz's Order of Protection |
| 68 | October 18, 2024 | Gabriel's Undertaking and Filing of Bond |
| 69 | October 21, 2024 | Gabriel's "Notice of Reinstatement of Stay" in Enforcement Action |
| 70 | October 22, 2024 | Gabriel's "Notice of Reinstatement of Stay" in tortious interference and consumer protection action |
| 71 | October 20, 2024 | Gabriel's email with "the doe must die, die" song |
| 72 | October 23, 2024 | Gabriel's Motion to Vacate Contempt Hearing and Dismiss Olsen's Motion to Enforce Judgment |
| 73 | October 23, 2024 | Gabriel's email to Kai's assistant with threats if Olsen does not withdraw motion |
| 74 | October 31, 2024 | No Contact Order against Gabriel re Lakeside Property |
| 75 | November 07, 2024 | Order Clarifying Court's No Contract Order |
| 76 | October 30, 2024 | Notice of Appeal of District Court's affirmation of Kai's Order of Protection |

1

2

3

4        IN THE CIRCUIT COURT OF THE STATE OF OREGON

5           FOR THE COUNTY OF MULTNOMAH

6   Jesse Mark Olsen,                          )
                                               )
7              Petitioner,                     )
                                               )
8        v.                                    ) Case No.
                                               )
9   Ryan Dean Gabriel,                         ) PETITION FOR DISSOLUTION OF
                                               ) DOMESTIC PARTNERSHIP
10             Respondent..                    )
                                               )
11                                             )
                                               )
12  _____       )

13        Petitioner Jesse Mark Owen alleges:

14                          1.

15        Petitioner and Respondent began a domestic partnership in April, 2010.  The parties resided

16  together until March 1, 2022.

17                          2.

18

19        Irreconcilable differences between the parties have caused an irremediable breakdown of the

20  domestic partnership.

21                          3.

22        No other domestic relation suit or other court proceeding is pending in any other court of this

23  state or any other state.

24                          4.

25        Petitioner has been a resident and domiciliary of Oregon for six immediately prior hereto.

26

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR  97204 · (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 1 p. 001

5.

The parties have adopted no children.

6.

The parties are the owners of two parcels of real property.  One in Multnomah County, Oregon and one in Montana.  The Oregon property was acquired in June of 2014.  The Montana property was acquired in February of 2021.  The parties own both parcels, which could be equally divided between them.

7.

The parties have separated effective March 1, 2022.  There are no other issues as to real or personal property, other than as alleged in the paragraph above.  There are no debts other than the mortgages on the real property, which will be involved in the disposition of the said properties.

8.

Petitioner should be awarded his costs incurred in these proceedings.

WHEREFORE Petitioner prays for judgement dissolving the domestic partnership, awarding the disposition of the two parcels of real property above mentioned, and granting such other equitable relief as the court deems proper.

Dated this 21 day of March, 2022.

*/s/ Roscoe C. Nelson, Jr.*
Roscoe C. Nelson, Jr.
OSB# 732218
NELSON & NELSON

<u>Submitted by:</u>
Roscoe C. Nelson, Jr., OSB #732218
Attorney for Party Type
NELSON & NELSON
811 SW Naito Parkway, Suite 200
Portland, OR 97204
Telephone: (503) 222-1081
E-mail: attorneys@roscoecnelson.com

Page 2 – PETITION FOR DISSOLUTION OF
DOMESTIC PARTNERSHIP

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR  97204 · (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 1 p. 002

| | | | |
|---|---|---|---|
| **Jesse Mark Olsen** | § | Location: | **MUL Domestic Relations** |
| **vs** | § | Judicial Officer: | **Henry, Patrick W.** |
| **Ryan Dean Gabriel** | § | Filed on: | **03/21/2022** |
| | § | | |

---

### CASE INFORMATION

**Related Cases**
22CV10399 (Consolidated)
24PO00918 (Related - Same Family)
24SK00336 (Related - Same Family)

Case Type: **Dissolution**

Case Flags: **Appeal**

**Statistical Closures**
05/23/2024 Closed

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**
| | |
|---|---|
| Case Number | 22DR04942 |
| Court | MUL Domestic Relations |
| Date Assigned | 07/12/2023 |
| Judicial Officer | Henry, Patrick W. |

---

### PARTY INFORMATION

| | | *Attorneys* |
|---|---|---|
| **Petitioner** | **Olsen, Jesse Mark** | **NELSON, ROSCOE C, III** |
| | | *Retained* |
| | | 503 222-1081(W) |
| | | **KELLY, GEORGE W** |
| | | *Retained* |
| | | 541 343-1884(W) |
| **Respondent** | **Gabriel, Ryan Dean** | |
| | | **NEWSOM, ANDREW WALKER** |
| | | *Retained* |
| | | 503 224-9878(W) |
| | | **Pro Se** |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 03/21/2022 | Petition - Case Initiating<br>*of domestic partnership*<br>Filed By: Petitioner Olsen, Jesse Mark<br>Serving: Respondent Gabriel, Ryan Dean<br>Created: 03/22/2022 9:21 AM | |
| 03/21/2022 | Summons<br>Party: Respondent Gabriel, Ryan Dean<br>Created: 03/22/2022 9:21 AM | |
| 03/21/2022 | Notice - Filing of CIF<br>Party: Petitioner Olsen, Jesse Mark<br>Created: 03/22/2022 9:22 AM | |
| 03/23/2022 | Notice - Dismissal<br>Created: 03/23/2022 11:53 AM | |

*Printed on 11/13/2024 at 11:09 AM*

Exhibit 2 p. 001

03/28/2022    Proof - Service
     Party: Respondent Gabriel, Ryan Dean
     Created: 03/28/2022 3:03 PM

03/29/2022    **Service**
     Gabriel, Ryan Dean
     Served: 03/26/2022
     Created: 03/29/2022 8:20 AM

04/06/2022    Notice - Dismissal
     Created: 04/06/2022 2:43 PM

05/20/2022    Motion - Dismissal
     *RE: Petition (Oral Argument Requested)*
     Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
     Created: 05/20/2022 9:13 AM

05/24/2022    Order - Show Cause (Judicial Officer: Troy, Francis G )
     *RE: Motion to Dismiss*
     Signed: 05/20/2022
     Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
     Created: 05/24/2022 1:25 PM

05/24/2022    Proof - Service
     *Emailed*
     Party: Attorney NELSON, ROSCOE C, III
     Created: 05/24/2022 2:40 PM

05/26/2022    Motion - Attorney Withdrawal
     Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
     Created: 05/27/2022 3:03 PM

05/26/2022    Declaration
     *Supporting Motion to Withdraw*
     Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
     Created: 05/27/2022 3:03 PM

05/27/2022    Response
     *to Motions to Dismiss*
     Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
     Created: 05/31/2022 9:56 AM

05/27/2022    Motion - Attorney Withdrawal
     *Amended*
     Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
     Created: 05/31/2022 1:07 PM

05/27/2022    Declaration
     *Amended Supporting Motion to Withdraw*
     Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
     Created: 05/31/2022 1:07 PM

05/30/2022    Notice
     *of Unavailability of Attorney*

Exhibit 2 p. 002

Party: Attorney NELSON, ROSCOE C, III
Created: 05/31/2022 11:02 AM

06/22/2022   Order - Withdrawal of Attorney (Judicial Officer: Authority, Administrative )
*"UNSIGNED" RE: Amended (Duplicate Order)*
Signed: 06/21/2022
Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
Created: 06/22/2022 10:29 AM

06/22/2022   Order - Withdrawal of Attorney (Judicial Officer: Troy, Francis G )
Signed: 06/21/2022
Party: Privately Retained Fassler, Amy D; Respondent Gabriel, Ryan Dean
Created: 06/22/2022 11:25 AM

08/15/2022   **Hearing - Trial Assignment** (9:00 AM) (Judicial Officer: McGuire, Patricia L ;Location: Central Courthouse Courtroom 10B)
*- For hearing 08/16/22*
*- Re Motion to Dismiss Case*
*- Proof of Service*
*- Rsp's OSC Re Motion to Dismiss Case Signed 05/20/22*
*- Response Re Motion to Dismiss filed 05/27/22*
Resource: Court Reporter MULFTRJD27 Recording, FTR
Resource: Calendar Group MULDRROT Family Law Rotation
Resource: Location MULCC10B Central Courthouse Courtroom 10B
*Held*
Created: 05/20/2022 8:38 AM

08/15/2022   Notice - Representation
Party: Respondent Gabriel, Ryan Dean
Created: 08/15/2022 10:12 AM

08/16/2022   **Trial - Court** (2:00 PM) (Judicial Officer: Raines, Keith R ;Location: Central Courthouse Courtroom 13C)
*Re: Dissolution of Domestic Partnership*
*- Motion to Dismiss*
*- Proof of Service*
Resource: Court Reporter MULFTRJD13 Recording, FTR
Resource: Location MULCC13C Central Courthouse Courtroom 13C
*Held*
Created: 08/15/2022 10:16 AM

08/16/2022   Motion
*to Allow Remote Appearance at Hearings*
Party: Respondent Gabriel, Ryan Dean
Created: 08/16/2022 11:59 AM

08/16/2022   Order (Judicial Officer: Raines, Keith R )
*on Respondent's Unopposed Motion to Allow Remote Appearance at Hearing*
Signed: 08/16/2022
Created: 08/18/2022 2:40 PM

08/25/2022   Order - Denial (Judicial Officer: Raines, Keith R )
*motion to dismiss is denied, 22cv10399 will be consolidated*
Signed: 08/17/2022
Created: 08/25/2022 8:16 AM

01/03/2023   Letter
*Requesting back dating due to rejection in File & Serve*

Exhibit 2 p. 003

Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 01/08/2023 10:45 PM

01/03/2023    Response
*to Initial Request for Admission cc: ABrown (Per Judge Adrian Brown, this document should have not been filed with the Court. There is no order for the court to sign. Document should be rejected)*
Party: Privately Retained Peddie, Kelsey M; Respondent Gabriel, Ryan Dean
Created: 01/08/2023 10:45 PM

01/27/2023    Order (Judicial Officer: Marshall, Christopher J )
*Re Filings in Domestic Relations Case*
Signed: 01/27/2023
Created: 01/30/2023 8:49 AM

03/01/2023    Request - Admission
*w/attached Exhibits*
Party: Privately Retained Peddie, Kelsey M; Respondent Gabriel, Ryan Dean
Created: 03/02/2023 9:25 AM

03/07/2023    Request
*Second - For Admissions to Petitioner*
Party: Respondent Gabriel, Ryan Dean
Created: 03/08/2023 7:44 AM

03/07/2023    Notice - Withdrawal of Attorney
Party: Respondent Gabriel, Ryan Dean
Created: 03/08/2023 7:52 AM

03/08/2023    Motion - Attorney Withdrawal
Party: Respondent Gabriel, Ryan Dean
Created: 03/08/2023 10:04 AM

03/08/2023    Declaration
*In Support of Motion to Withdraw*
Party: Respondent Gabriel, Ryan Dean
Created: 03/08/2023 10:04 AM

03/08/2023    Order - Denial (Judicial Officer: Svetkey, Susan M )
*Re Motion to Postpone Trial*
Signed: 03/08/2023
Created: 03/08/2023 11:57 AM

03/08/2023    Motion - Postponement
*Re Trial*
Party: Petitioner Olsen, Jesse Mark
Created: 03/08/2023 11:59 AM

03/08/2023    Declaration
*in Support of Motion to Postpone*
Party: Respondent Gabriel, Ryan Dean
Created: 03/08/2023 11:59 AM

03/08/2023    Order - Withdrawal of Attorney (Judicial Officer: Alarcon, Jacqueline L )
Signed: 03/08/2023

Exhibit 2 p. 004

Created: 03/09/2023 3:37 PM

03/29/2023    Declaration
*in Support of Special Motion to Strike w/Exhibits*
Party:  Respondent  Gabriel, Ryan Dean
Created: 04/04/2023 4:28 PM

03/29/2023    Motion - Strike
*and Memorandum in Support Therof*
Party:  Respondent  Gabriel, Ryan Dean
Created: 04/04/2023 4:29 PM

03/30/2023    Proof - Service
*Certificate of Service Re: Special Motion To Strike, Cert of Readiness, & Dec. in Support*
Party:  Respondent  Gabriel, Ryan Dean
Created: 03/30/2023 3:44 PM

03/31/2023    Motion - Strike
*With exhibits*
Party:  Respondent  Gabriel, Ryan Dean
Created: 03/31/2023 3:56 PM

03/31/2023    Declaration
*Motion to strike*
Party:  Respondent  Gabriel, Ryan Dean
Created: 03/31/2023 3:58 PM

04/03/2023    **Hearing - Trial Assignment** (9:00 AM)  (Judicial Officer: Svetkey, Susan
M ;Location: Central Courthouse Courtroom 16D)
          *- For Trial 04/04/2023*
          *Re: Dissolution of Domestic Partnership- No Children*
          *- Proof of Service 03/26/22*
          *- No Response Filed (Original Petition)*
          Resource: Court Reporter  MULFTRJD27  Recording, FTR
          Resource: Calendar Group  MULDRROT  Family Law Rotation
          Resource: Location  MULCC16D  Central Courthouse Courtroom 16D
          Created: 01/19/2023 1:24 PM

04/04/2023    **Trial - Court** (1:30 PM)  (Judicial Officer: Stuart, Diana
I ;Location: Central Courthouse Courtroom 12C)
          *- Re: Motion to Strike*
          Resource: Court Reporter  MULFTRFLTA  Recording, FTR
          Resource: Calendar Group  MULDRROT  Family Law Rotation
          Resource: Calendar Group  MULDRROT  Family Law Rotation
          Resource: Location  MULCC12C  Central Courthouse Courtroom 12C
          *Held*
          Created: 04/03/2023 12:30 PM

04/07/2023    Order - Denial (Judicial Officer: Henry, Patrick W. )
*re: defendant's motion to strike and memorandum*
Signed: 04/07/2023
Created: 04/11/2023 1:41 PM

04/13/2023    Motion - Protective Order
Party:  Attorney  NELSON, ROSCOE C, III;  Petitioner  Olsen, Jesse Mark
Created: 04/14/2023 10:26 AM

04/17/2023

Exhibit 2 p. 005

Motion - Protective Order
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 04/17/2023 12:34 PM

04/19/2023    **Judgment - Limited** (Judicial Officer: Stuart, Diana I)
Comment (motion to strike is Denied)
Created: 04/19/2023 7:21 AM

04/19/2023    Digitized Judgment Document (Judicial Officer: Stuart, Diana I )
*Limited Judgment; motion to strike is denied*
Signed Date: 04/05/2023
Created: 04/19/2023 7:21 AM

04/19/2023    Notice - Judgment Entry
Created: 04/19/2023 7:22 AM

04/21/2023    Motion - Show Cause
*Re Compel Discovery*
Party: Respondent Gabriel, Ryan Dean
Created: 04/25/2023 11:14 AM

04/24/2023    Reply
*to Respondent's Answer to Petitioner's Initiating Petition*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 04/25/2023 7:56 AM

04/24/2023    Response
*TO: Petition*
Party: Respondent Gabriel, Ryan Dean
Created: 04/25/2023 11:09 AM

04/25/2023    Order - Show Cause (Judicial Officer: Troy, Francis G )
*RE Motion to Compel Discovery*
Signed: 04/25/2023
Created: 04/26/2023 9:33 AM

04/25/2023    Order (Judicial Officer: Troy, Francis G )
*Re Motion for Remote Appearance - Respondent*
Signed: 04/25/2023
Created: 04/26/2023 9:34 AM

04/27/2023    Motion - Strike
*RE: Motion to Compel Discover, Motion to Appear Remotely & for Sanctions*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 04/28/2023 8:20 AM

04/28/2023    Return - Mail
*notice entry of judgment*
Party: Respondent Gabriel, Ryan Dean
Created: 05/02/2023 1:28 PM

05/01/2023    Order - Denial (Judicial Officer: Troy, Francis G )
*Re Protective Order*
Signed: 05/01/2023
Created: 05/02/2023 7:40 AM

**Exhibit 2 p. 006**

05/11/2023    Order - Denial (Judicial Officer: Troy, Francis G )
*RE: Motion to Strike*
Signed: 05/09/2023
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 05/11/2023 6:58 AM

05/15/2023    Return - Mail
*noitce of remote appearance*
Party: Respondent Gabriel, Ryan Dean
Created: 05/15/2023 3:53 PM

05/24/2023    Proof - Service
Party: Attorney NELSON, ROSCOE C, III
Created: 05/24/2023 12:00 PM

05/25/2023    **Hearing - Trial Assignment** (9:00 AM) (Judicial Officer: McGuire, Patricia L ;Location: Central Courthouse Courtroom 10B)
*- For Hearing 05/26/23*
*Re: Motion and Order to Compel Discovery*
*- No Proof of Service*
*- Respondent's OSC Re: Motion to Compel Discovery signed 04/25/23*
*- No Response Filed*
*- Trial Assignment 07/05/23 for trial 07/06/23 Re: Dissolution of Domestic Partnership*
Resource: Court Reporter MULFTRJD27 Recording, FTR
Resource: Calendar Group MULDRROT Family Law Rotation
Resource: Location MULCC10B Central Courthouse Courtroom 10B
*Held*
Created: 04/25/2023 11:13 AM

05/26/2023    **Hearing - Trial Assignment** (2:00 PM) (Judicial Officer: Alarcon, Jacqueline L ;Location: Central Courthouse Courtroom 12A)
*- Re: Motion and Order to Compel Discovery*
*\*Respondent to appear remotely\**
Resource: Court Reporter MULFTRJD3 Recording, FTR
Resource: Location MULCC12A Central Courthouse Courtroom 12A
*Held*
Created: 05/25/2023 9:47 AM

05/26/2023    Notice (Judicial Officer: Authority, Administrative )
*In Person Hearing*
Created: 05/30/2023 11:09 AM

06/05/2023    Order - Denial (Judicial Officer: Alarcon, Jacqueline L )
*Respondent's motion to show cause to compel discovery*
Signed: 05/31/2023
Created: 06/05/2023 1:05 PM

06/09/2023    Motion - Compel Discovery
Party: Respondent Gabriel, Ryan Dean
Created: 06/15/2023 3:46 PM

06/09/2023    Declaration
*of Ryan Gabriel in support of repsondent's motion to compel discovery*
Party: Respondent Gabriel, Ryan Dean
Created: 06/15/2023 3:47 PM

06/09/2023

**Exhibit 2 p. 007**

Proof - Service
*certificate of service*
Party: Attorney NELSON, ROSCOE C, III
Created: 06/15/2023 3:50 PM

06/14/2023    Subpoena
Party: Respondent Gabriel, Ryan Dean
Created: 06/14/2023 1:56 PM

06/16/2023    Subpoena
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:39 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:40 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:40 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:41 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:41 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:41 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:41 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:41 PM

06/16/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/16/2023 3:42 PM

06/16/2023    Subpoena
*not issued by clerk*

Exhibit 2 p. 008

Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:42 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:42 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:42 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:42 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:43 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:43 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:43 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:43 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:43 PM

06/16/2023   Subpoena
*not issued by clerk*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/16/2023 3:43 PM

06/16/2023   Motion
*Re: Change of TA date*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/21/2023 9:34 AM

06/16/2023   Order - Denial (Judicial Officer: Svetkey, Susan M )
*Re: change of TA date*

Exhibit 2 p. 009

Signed: 06/16/2023
Created: 06/21/2023 9:35 AM

06/19/2023    Subpoena
*not issued by clerk*
Party: Respondent Gabriel, Ryan Dean
Created: 06/20/2023 8:17 AM

06/20/2023    **Hearing - Trial Assignment** (9:00 AM) (Judicial Officer: Svetkey, Susan
M ;Location: Central Courthouse Courtroom 16D)
    *- For Hearing 06/21/23*
    *Re: Motion and Order to Compel Discovery*
    *- Proof of Service 04/25/23*
    *- Respondent's OSC Re: Motion to Compel Discovery signed 04/25/23*
    *- No Response Filed*
    *- Trial Assignment 07/05/23 for trial 07/06/23 Re: Dissolution of Domestic Partnership*
Resource: Court Reporter MULFTRJD27 Recording, FTR
Resource: Calendar Group MULDRROT Family Law Rotation
Resource: Location MULCC16D Central Courthouse Courtroom 16D
*Held*
Created: 06/07/2023 3:39 PM

06/20/2023    Order (Judicial Officer: Svetkey, Susan M )
    *- Allowing Remote Appearance for Respondent*
Signed: 06/16/2023
Party: Respondent Gabriel, Ryan Dean
Created: 06/20/2023 8:58 AM

06/20/2023    Order - Show Cause (Judicial Officer: Torres H, Xiomara )
*re: respondent's motion to compel discovery*
Signed: 06/20/2023
Created: 06/30/2023 3:15 PM

06/20/2023    Certificate
*of readiness*
Party: Respondent Gabriel, Ryan Dean
Created: 06/30/2023 3:15 PM

06/21/2023    Order (Judicial Officer: Svetkey, Susan M )
*Setover TA 6/29/23*
Signed: 06/20/2023
Created: 06/29/2023 11:04 AM

06/22/2023    Letter
*addressed Family Law Presiding Judge RE: Court's direction on how to respond to Subp cc: SMS*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 06/22/2023 12:12 PM

06/28/2023    Letter
*Response to letter sent by petitioner's attorney*
Party: Respondent Gabriel, Ryan Dean
Created: 06/28/2023 3:51 PM

06/29/2023    **Hearing - Trial Assignment** (9:00 AM) (Judicial Officer: Svetkey, Susan
M ;Location: Central Courthouse Courtroom 16D)
    *- For Hearing 06/30/23*
    *- Re: Motion and Order to Compel Discovery*

Exhibit 2 p. 010

*- Order Denying Rsp's Motion to Compel Discovery signed 05/31/23*
*- No Motion to Compel Discovery filed*
Resource: Court Reporter  MULFTRJD27  Recording, FTR
Resource: Calendar Group  MULDRROT  Family Law Rotation
Resource: Location  MULCC16D  Central Courthouse Courtroom 16D
*Held*
Created: 06/20/2023 3:20 PM

| | | |
|---|---|---|
| 06/29/2023 | 📕 Letter | |

*Response to letter sent by petitioners attorney. Missing pages*
Party:  Respondent  Gabriel, Ryan Dean
Created: 06/29/2023 1:42 PM

| | | |
|---|---|---|
| 06/29/2023 | 📕 Proof - Service | |

*Certificate*
Party:  Attorney  NELSON, ROSCOE C, III
Created: 06/29/2023 1:44 PM

06/30/2023    **Hearing - Motion** (9:00 AM)  (Judicial Officer: Allen, Beth
A ;Location: East County Courthouse Courtroom 290)
*RE: Motion to Compel Discovery*
Resource: Court Reporter  MULFTRJD34  Recording, FTR
Resource: Location  MULECC290  East County Courthouse Courtroom 290
*Held*
Created: 06/29/2023 10:44 AM

| | | |
|---|---|---|
| 07/03/2023 | 📕 Proof - Service | |

*Robin Weirich*
Created: 07/03/2023 3:07 PM

07/05/2023    📄 **Hearing - Trial Assignment** (9:00 AM)  (Judicial Officer: Svetkey, Susan
M ;Location: Central Courthouse Courtroom 16D)
*- For Trial 07/06/23*
*- Re: Dissolution of Domestic Partnership*
*- Proof of Service 03/26/23*
*- Rsp's Response filed 04/24/23*
Resource: Court Reporter  MULFTRJD27  Recording, FTR
Resource: Calendar Group  MULDRROT  Family Law Rotation
Resource: Location  MULCC16D  Central Courthouse Courtroom 16D
*Held*
Created: 04/25/2023 11:11 AM

07/05/2023    📕 Order (Judicial Officer: Allen, Beth A )
*Granting motion to compel*
Signed: 07/05/2023
Created: 07/05/2023 10:02 AM

07/05/2023    📕 Order (Judicial Officer: Svetkey, Susan M )
*Setover TA 7/20/23*
Signed: 07/05/2023
Created: 07/07/2023 2:18 PM

07/06/2023    📕 Order - Show Cause (Judicial Officer: Henry, Patrick W. )
*Re: Respondent/Plaintiff's motion for sanctions and to strike, stay, or dismiss further pleadings*
Signed: 07/06/2023
Created: 07/07/2023 8:16 AM

07/07/2023    📕 Exhibit - List

Exhibit 2 p. 011

*Election*
Created: 07/07/2023 9:55 AM

07/12/2023 **Hearing - Trial Assignment** (9:00 AM) (Judicial Officer: Svetkey, Susan M ;Location: Central Courthouse Courtroom 16D)
- *For Trial 07/13/23*
- *Re: Motion for Sanctions and to Strike, Stay, or Dismiss Further Pleadings*
- *Rsp's Order to Show Cause Re: Motion for Sanctions and to Strike, Stay or Dismiss Further Pleadings signed 07/06/23*
- *No Proof of Service*
- *Trial Assignment 07/20/23 For Trial 07/21/23 Re: Dissolution of Domestic Partnership*
Resource: Court Reporter MULFTRJD27 Recording, FTR
Resource: Calendar Group MULDRROT Family Law Rotation
Resource: Location MULCC16D Central Courthouse Courtroom 16D
*Held*
Created: 07/07/2023 8:19 AM

07/12/2023 Order (Judicial Officer: Svetkey, Susan M )
*Re: Special set. Assigned to Judge Henry*
Signed: 07/12/2023
Created: 07/13/2023 10:44 AM

07/20/2023 *CANCELED* **Hearing - Trial Assignment** (9:00 AM) (Judicial Officer: Svetkey, Susan M ;Location: Central Courthouse Courtroom 16D)
*for Trial 07/21/23*
*Re: Dissolution of Domestic Partnership*
*Other*
Created: 07/05/2023 12:38 PM

07/25/2023 Response
*to Motion for Sanctions & to Strike, Stay or Dismiss Further Pleadings Pursuant to ORCP 46 cc: PWH*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 07/25/2023 2:20 PM

10/02/2023 Response
*Amended to Motion for Sanctions & to Strike, Stay or Dismiss Further Pleadings Pursuant to ORCP 46 w/attached Exhibits*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 10/02/2023 2:56 PM

10/20/2023 **Hearing - Motion** (2:00 PM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D)
*Re Motion for Sanctions, Motion to Strike, Stay or Dismiss Further Pleadings Pursuant to ORCP 46*
*(Respondent's Motion)*
Resource: Court Reporter MULFTRJD35 Recording, FTR
Resource: Location MULCC14D Central Courthouse Courtroom 14D
*Held*
Created: 07/28/2023 10:22 AM

11/29/2023 Motion
*to Bifurcate Trial or in the Alternative to Postpone Trial Due to Filing of Federal Lawsuit*
Party: Respondent Gabriel, Ryan Dean
Created: 11/29/2023 11:46 AM

12/05/2023 **Appearance** (1:30 PM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D)
*by phone re Status/Scheduling Conference Parties to call Judge Henry's Webex number: 503-388-9555 and enter code 146 717 7114##*

Exhibit 2 p. 012

Resource: Court Reporter  MULFTRJD35  Recording, FTR
Resource: Location  MULCC14D  Central Courthouse Courtroom 14D
*Held*
Created: 11/28/2023 2:04 PM

| | |
|---|---|
| 12/07/2023 | Response |

*to Motion to Bifurcate Trial cc: PWH*
Party:  Attorney  NELSON, ROSCOE C, III;  Petitioner  Olsen, Jesse Mark
Created: 12/07/2023 3:06 PM

12/15/2023   Order (Judicial Officer: Henry, Patrick W. )
*Re: Motion for sanctions, motion to strike, stay or dismiss further proceedings*
Signed: 12/15/2023
Created: 12/21/2023 8:50 AM

12/26/2023   Response
Party:  Respondent  Gabriel, Ryan Dean
Created: 12/26/2023 2:45 PM

12/27/2023   **Hearing** (4:00 PM)  (Judicial Officer: Henry, Patrick
W. ;Location: Central Courthouse Courtroom 14D)
*by phone re Status Conference Parties to call Judge Henry's Webex number: 503-388-9555
and enter code 146 717 7114##*
*Motion to bifurcate/ motion to postpone*
Resource: Court Reporter  MULFTRJD35  Recording, FTR
Resource: Location  MULCC14D  Central Courthouse Courtroom 14D
*Held*
Created: 12/05/2023 2:06 PM

12/29/2023   Order - Denial (Judicial Officer: Henry, Patrick W. )
*Re: Several Motions*
Signed: 12/29/2023
Created: 01/03/2024 1:33 PM

01/09/2024   Motion
*To supplement answer to ORCP 23*
Party:  Respondent  Gabriel, Ryan Dean
Created: 01/09/2024 3:43 PM

01/09/2024   Order - Denial (Judicial Officer: Henry, Patrick W. )
*Re: Re Order to Show Cause Re Motion to Supplement Complaint/Answer*
Signed: 01/09/2024
Created: 01/09/2024 3:44 PM

01/09/2024   Proof - Service
Party:  Attorney  NELSON, ROSCOE C, III
Created: 01/09/2024 3:45 PM

01/09/2024   Proof - Service
Party:  Petitioner  Olsen, Jesse Mark
Created: 01/11/2024 3:53 PM

01/09/2024   Motion
*to Appear Remotely & Dec in Support*
Party:  Respondent  Gabriel, Ryan Dean
Created: 01/11/2024 3:53 PM

Exhibit 2 p. 013

| | |
|---|---|
| 01/09/2024 | Order (Judicial Officer: Henry, Patrick W. ) |
| | *Allowing Remote Appearance* |
| | Signed: 01/09/2024 |
| | Created: 01/11/2024 3:54 PM |
| | |
| 01/09/2024 | Motion |
| | *To Stay Proceedings* |
| | Party: Respondent Gabriel, Ryan Dean |
| | Created: 01/26/2024 8:50 AM |
| | |
| 01/12/2024 | Motion - Telephone Testimony |
| | Party: Respondent Gabriel, Ryan Dean |
| | Created: 01/22/2024 11:49 AM |
| | |
| 01/12/2024 | Order - Denial (Judicial Officer: Henry, Patrick W. ) |
| | *Re: Motion to Stay Proceedings* |
| | Signed: 01/12/2024 |
| | Created: 01/26/2024 8:51 AM |
| | |
| 01/22/2024 | Order - Denial (Judicial Officer: Henry, Patrick W. ) |
| | *Re: Remote Appearance* |
| | Signed: 01/12/2024 |
| | Created: 01/22/2024 11:50 AM |
| | |
| 01/26/2024 | **Trial - Court** (9:00 AM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D) |
| | *Dissolution of Domestic Partnership* |
| | *10:00-12 and 3:00-5 To be heard at the Juvenile Justice Complex, 1401 NE 68th Ave, Portland, OR in Courtroom #4* |
| | **01/26/2024, 01/26/2024** |
| | Resource: Court Reporter MULFTRJD35 Recording, FTR |
| | Resource: Location MULCC14D Central Courthouse Courtroom 14D |
| | *Held* |
| | Created: 07/28/2023 10:26 AM |
| | |
| 02/14/2024 | **Trial - Court** (9:00 AM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D) |
| | *continued from 1/26* |
| | Resource: Court Reporter MULFTRJD35 Recording, FTR |
| | Resource: Location MULCC14D Central Courthouse Courtroom 14D |
| | *Held* |
| | Created: 01/26/2024 5:06 PM |
| | |
| 02/14/2024 | **Trial - Court** (2:00 PM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D) |
| | *continued from 1/26* |
| | Resource: Court Reporter MULFTRJD35 Recording, FTR |
| | Resource: Location MULCC14D Central Courthouse Courtroom 14D |
| | *Held* |
| | Created: 01/26/2024 5:09 PM |
| | |
| 02/28/2024 | Motion |
| | *To conform to evidence* |
| | Party: Respondent Gabriel, Ryan Dean |
| | Created: 02/29/2024 9:57 AM |
| | |
| 02/28/2024 | Exhibit |

Exhibit 2 p. 014

*1-15*
Party: Respondent Gabriel, Ryan Dean
Created: 02/29/2024 9:57 AM

02/28/2024    Order - Show Cause (Judicial Officer: Henry, Patrick W. )
*Re: Motion to conform to evidence*
Signed: 02/28/2024
Created: 02/29/2024 9:58 AM

03/01/2024    Motion
*to Conform to Evidence w/attached Exhibits*
Party: Respondent Gabriel, Ryan Dean
Created: 03/01/2024 3:48 PM

03/01/2024    Proof - Service
*RE: Motion to Conform*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 03/01/2024 3:48 PM

03/06/2024    Order (Judicial Officer: Henry, Patrick W. )
*RE: Motion to Conform to Evidence*
Signed: 03/05/2024
Party: Respondent Gabriel, Ryan Dean
Created: 03/06/2024 6:46 AM

03/12/2024    Argument - Closing
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 03/12/2024 9:35 AM

03/20/2024    Letter
*addressed to Judge Matarazzo RE: New Trial cc: Judge Matarazzo*
Party: Respondent Gabriel, Ryan Dean
Created: 03/21/2024 10:00 AM

03/20/2024    Letter
*addressed to Judge Matarazzo RE: New Trial cc: Judge Matarazzo & Judge Henry*
Party: Respondent Gabriel, Ryan Dean
Created: 03/21/2024 10:00 AM

03/28/2024    Argument - Closing
Party: Respondent Gabriel, Ryan Dean
Created: 03/28/2024 3:05 PM

04/03/2024    Letter
*from Court Staff*
Party: Respondent Gabriel, Ryan Dean
Created: 04/08/2024 10:24 AM

04/17/2024    Order (Judicial Officer: Henry, Patrick W. )
*Re Dissolution of Domestic Partnership and Partition Claim*
Signed: 04/17/2024
Created: 04/17/2024 3:28 PM

04/27/2024    Motion - New Trial
Party: Respondent Gabriel, Ryan Dean

Exhibit 2 p. 015

Created: 04/29/2024 1:04 PM

04/27/2024  Declaration
*Supporting Motion for New Trial*
Party: Respondent Gabriel, Ryan Dean
Created: 04/29/2024 1:04 PM

04/27/2024  Proof - Service
*RE: New Trial*
Party: Attorney NELSON, ROSCOE C, III
Created: 04/29/2024 1:04 PM

05/02/2024  Order - Denial (Judicial Officer: Henry, Patrick W. )
*RE: Motion for New Trial*
Signed: 05/01/2024
Party: Respondent Gabriel, Ryan Dean
Created: 05/02/2024 8:14 PM

05/03/2024  Exhibit - List
*Box*
Created: 05/03/2024 12:01 PM

05/10/2024  Notice
Party: Respondent Gabriel, Ryan Dean
Created: 05/13/2024 9:07 AM

05/15/2024  Notice
Party: Respondent Gabriel, Ryan Dean
Created: 05/17/2024 1:34 PM

05/15/2024  Declaration
*In support of appeal*
Party: Respondent Gabriel, Ryan Dean
Created: 05/17/2024 1:35 PM

05/21/2024  Filing Copy - Dismiss on Appeal (Post-Disposition)
*Order Giving Leave*
UTCR 7 Party: Respondent Gabriel, Ryan Dean
Created: 05/23/2024 2:16 PM

05/22/2024  Exhibit - List
*Box*
Created: 05/22/2024 10:27 AM

05/23/2024  Digitized Judgment Document (Judicial Officer: Henry, Patrick W. )
*General Judgment (Case No. 22CV10399 is dismissed)*
Signed Date: 05/02/2024
Created: 05/23/2024 3:50 PM

05/23/2024  Notice - Judgment Entry
Created: 05/23/2024 3:51 PM

05/23/2024  Closed
Created: 05/23/2024 3:52 PM

Exhibit 2 p. 016

05/29/2024    Notice
*of Appeal*
Party: Respondent Gabriel, Ryan Dean
Created: 06/03/2024 7:27 AM

06/17/2024    Proof - Service
Party: Respondent Gabriel, Ryan Dean
Created: 06/21/2024 4:08 PM

06/18/2024    Affidavit/Declaration - Mailing
*1 box of exhibits sent to CoA via shuttle*
Created: 06/18/2024 8:26 AM

06/18/2024    Affidavit/Declaration - Mailing
*1 box of exhibits sent to CoA via shuttle*
Created: 06/18/2024 8:27 AM

06/18/2024    Affidavit/Declaration - Mailing
*1 envelope of exhibits sent to CoA via shuttle*
Created: 06/18/2024 10:18 AM

06/27/2024    Digitized Judgment Document (Judicial Officer: Henry, Patrick W. )
*Amended General Judgment*
Signed Date: 06/21/2024
Created: 06/27/2024 1:56 PM

06/27/2024    **Amended Judgment - General** (Judicial Officer: Henry, Patrick W. )  Reason: Court
Order  Supersedes Previous Judgment
Created: 06/27/2024 1:57 PM

     **05/23/2024 Judgment - General** (Judicial Officer: Henry, Patrick W. )
Created: 05/23/2024 3:49 PM

06/27/2024    Notice - Judgment Entry
Created: 06/27/2024 1:57 PM

07/01/2024    Motion - Stay Execution
Party: Respondent Gabriel, Ryan Dean
Created: 07/22/2024 12:26 PM

07/01/2024    Proof - Service
Party: Respondent Gabriel, Ryan Dean
Created: 07/22/2024 12:26 PM

07/01/2024    Undertaking - Appeal
Party: Respondent Gabriel, Ryan Dean
Created: 07/22/2024 12:26 PM

07/02/2024    Motion - Stay Execution
*of Amended Judgment Pending Appeal*
Party: Respondent Gabriel, Ryan Dean
Created: 07/02/2024 4:30 PM

07/02/2024    Proof - Service

Exhibit 2 p. 017

*Certificate of Service*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 07/02/2024 4:40 PM

07/02/2024    **Service**
Olsen, Jesse Mark
Served: 07/01/2024
Created: 07/02/2024 5:16 PM

07/02/2024    Bond - Appeal Supersedeas
*Undertaking*
Party: Respondent Gabriel, Ryan Dean
Created: 07/02/2024 6:37 PM

07/06/2024    Undertaking - Appeal
Party: Respondent Gabriel, Ryan Dean
Created: 07/08/2024 9:22 AM

07/06/2024    Proof - Service
*Certificate of Service*
Party: Attorney NELSON, ROSCOE C, III
Created: 07/08/2024 9:22 AM

07/08/2024    Motion - Stay Execution
Party: Respondent Gabriel, Ryan Dean
Created: 07/08/2024 4:57 PM

07/08/2024    Notice - Representation
*limited scope RE: George Kelly*
Party: Petitioner Olsen, Jesse Mark
Created: 07/09/2024 8:00 AM

07/08/2024    Objection
*cc: PWH 7/10 staff only*
Party: Petitioner Olsen, Jesse Mark
Created: 07/09/2024 8:03 AM

07/11/2024    **Service**
NELSON, ROSCOE C, III
Served: 07/01/2024
Created: 07/11/2024 4:57 PM

07/18/2024    Notice
*of Representation of Counsel for Respondent-Appellant*
Created: 07/18/2024 1:53 PM

07/24/2024    **Hearing** (8:30 AM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D)
*Re Motion and Objection to Stay*
*To be held remotely by calling Judge Henry's Webex number: 503-388-9555 and entering code 146 717 7114##*
Resource: Court Reporter MULFTRJD35 Recording, FTR
Resource: Location MULCC14D Central Courthouse Courtroom 14D
*Held*
Created: 07/15/2024 9:39 AM

07/24/2024    Order (Judicial Officer: Henry, Patrick W. )

Exhibit 2 p. 018

*\*\*Unsigned\*\* re Motion for Stay; see document*
Signed: 07/24/2024
Created: 07/24/2024 3:53 PM

| | | |
|---|---|---|
| 08/05/2024 | 📄 Objection | |

*cc: PWH 8/5 staff only*
Party: Respondent Gabriel, Ryan Dean
Created: 08/05/2024 4:29 PM

| | | |
|---|---|---|
| 08/14/2024 | 📄 Order - Denial (Judicial Officer: Henry, Patrick W. ) | |

*RE: Stay Motions & Sustaining Objections to Undertaking*
Signed: 08/14/2024
Party: Privately Retained KELLY, GEORGE W; Petitioner Olsen, Jesse Mark
Created: 08/14/2024 4:21 PM

| | | |
|---|---|---|
| 10/18/2024 | 📄 Undertaking - Appeal | |

*Supersedeas*
Party: Respondent Gabriel, Ryan Dean
Created: 10/25/2024 10:50 AM

| | | |
|---|---|---|
| 10/28/2024 | 📄 Objection | |

*to Undertaking (Oral Argument & Remote Appearance Requested) cc: PWH*
Party: Attorney NELSON, ROSCOE C, III; Petitioner Olsen, Jesse Mark
Created: 10/29/2024 2:18 PM

| | | |
|---|---|---|
| 11/19/2024 | **Hearing** (2:30 PM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D) | |

*Re Objection to Undertaking, Hearing to be heard remotely by telephone w/parties calling Judge Henry's Webex number: 503-388-9555, code 146 717 7114##*
Resource: Court Reporter MULFTRJD35 Recording, FTR
Resource: Location MULCC14D Central Courthouse Courtroom 14D
Created: 11/12/2024 10:46 AM

| **Date** | **Financial Information** |
|---|---|

**Petitioner** Olsen, Jesse Mark

| | |
|---|---:|
| Total Charges | 301.00 |
| Total Payments and Credits | 301.00 |
| **Balance Due as of 11/13/2024** | **0.00** |

**Respondent** Gabriel, Ryan Dean

| | |
|---|---:|
| Total Charges | 301.00 |
| Total Payments and Credits | 301.00 |
| **Balance Due as of 11/13/2024** | **0.00** |

**Respondent** Gabriel, Ryan Dean

| | |
|---|---:|
| Bond on Appeal Balance as of 11/13/2024 | **500.00** |

**Respondent** Gabriel, Ryan Dean

| | |
|---|---:|
| Tender Balance as of 11/13/2024 | **51,816.00** |

**Exhibit 2 p. 019**

Ryan D. Gabriel
Zurc Capital, LLC
2000 Blacktail Rd.
Lakeside, MT 59922

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| RYAN DEAN GABRIEL,<br><br>       Plaintiff,<br><br>   vs.<br><br>JESSE MARK OLSEN,<br><br>     Defendant | Case No.: _____<br><br>COMPLAINT<br><br>(Suit for Partition and Sale pursuant to ORS 105.205, 105.245-105.405)<br><br>(Not subject to mandatory arbitration)<br><br>(Per ORS 21.135) |

For its claims against Defendant, Plaintiff alleges:

1.

Together with residential mortgage company Security National Mortgage Corporation (SNMC), the parties comprise all persons or entities holding ownership, lienholders' interests, or a tenancy for year or life, in a certain tract of real property in Multnomah County. The property is particularly described as Lot 3, Cliveden Woods, a cluster subdivision situated in the NW 114 of SEC 6, T15, RIE, WM Multnomah County, Oregon; Postal Address 5721 SW Salmon St., Portland OR 97221.

2.

Title to the Property is held in equal one-half ownership interests by Plaintiff and Defendant Jesse Mark Olsen with right of survivorship.

3.

Plaintiff and Defendant Jesse Mark Olsen are unable to agree on management decisions with respect to the Property, including each party's contribution to the property, management, development, and potential sale. Further, Plaintiff desires to

COMPLAINT - 1

Exhibit 3 p. 001

1  sell the property on the open market, while local real estate values are at their
2  present peak, with a target sale date of September 2022.

3                                      4.

4       An equal and equitable partition of the property cannot be had without great
5  prejudice to the owners of the property, if it were even feasible under present land
6  use regulations. The sole habitable structure on the property is one single-family
7  home.

8                                      5.

9       If the parties are unable to agree on the terms of a private sale of the
10 property, Plaintiff seeks one or more referees to arrange for a sale of the Property,
11 and a partition by sale of the Property, and a distribution of sale proceeds in
12 accordance with ORS 105.245 and 105.285, in accordance with the respective interests
13 of Plaintiff and Defendant Jesse Mark Olsen.

14      WHEREFORE, Plaintiff prays for an order of the court:

15 A. Appointing one or more referees to prepare a partition report and arrange
16    for sale of the Property, if the parties are unable to agree on the terms of
17    a private sale;

18 B. Distributing between the owners of the Property, according to their
19    respective shares, historical monetary contributions made for the
20    improvement of the property and its value, the proceeds from the sale of the
21    property, in accordance with ORS 105.285;

22 C. Granting such other relief as may be just and equitable herein.

23

24 DATED this 15th day of March, 2022

25                                     Zurc Capital, LLC
26
27                                     Ryan D. Gabriel
                                       2000 Blacktail Rd.
28                                     Lakeside, MT 59922

                            COMPLAINT - 2

Exhibit 3 p. 002

# Case Summary
### Case No. 22CV10399

| | | | |
|---|---|---|---|
| **Ryan Dean Gabriel** | § | Location: | **MUL Civil** |
| vs | § | Filed on: | **03/21/2022** |
| **Jesse Mark Olsen** | § | Case Number History: | |
| | § | | |

---

## Case Information

---

**File Date** 03/21/2022        Case Type: **In unctive Relief**

**Cause of Action**      **Description/Remedy**
- Original Action      Action
         0.00   Judicial Resolution

**Related Cases**
22DR04942   (Consolidated)
24PO00918   (Related - Same Family)

**Statistical Closures**
06/28/2024     Closed
05/02/2024     Closed

---

| Date | Case Assignment |
|---|---|

**Current Case Assignment**
Case Number            22CV10399
Court                  MUL Civil
Date Assigned        06/06/2022

---

## Party Information

---

| | | |
|---|---|---|
| **Plaintiff** | **Gabriel, Ryan Dean** | **Peddie, Kelsey M**<br>*Retained*<br>503 928-8515(W) |
| **Defendant** | **Olsen, Jesse Mark** | **NELSON, ROSCOE C, III**<br>*Retained*<br>503 222-1081(W) |

---

| Date | Events & Orders of the Court | Index |
|---|---|---|

03/21/2022     **Cause of Action**    - Original Action    ()

             Action Type              Action

             Remedies Sought       Judicial Resolution

03/21/2022     📄 Complaint
             *Partition and Sale; Not Subject to Mandatory Arbitration*
             Filed By:   Plaintiff   Gabriel, Ryan Dean
             Serving:   Defendant   Olsen, Jesse Mark
             Created: 03/25/2022 1:27 PM

03/21/2022     **Service**
             Olsen, Jesse Mark
             Served: 04/18/2022
             Created: 03/25/2022 1:27 PM

04/25/2022     📄 Proof - Service
             Party:   Defendant   Olsen, Jesse Mark
             Created: 04/27/2022 3:25 PM

Exhibit 4 p. 001

| | | |
|---|---|---|
| 04/29/2022 | | Proof of Service - Substitute |
| | | Party: Defendant Olsen, Jesse Mark |
| | | Created: 05/03/2022 3:44 PM |
| 04/29/2022 | | Proof - Service |
| | | Party: Defendant Olsen, Jesse Mark |
| | | Created: 05/03/2022 3:45 PM |
| 05/27/2022 | | Order - Proposed |
| | | ** *Unsigned* ** |
| | | Created: 05/31/2022 4:38 PM |
| 05/27/2022 | | Motion - Dismiss with Prejudice |
| | | Party: Defendant Olsen, Jesse Mark |
| | | Created: 06/03/2022 9:04 AM |
| 05/27/2022 | | Exhibit |
| | | Created: 06/03/2022 9:04 AM |
| 05/27/2022 | | Exhibit |
| | | Party: Defendant Olsen, Jesse Mark |
| | | Created: 06/03/2022 9:04 AM |
| 05/27/2022 | | Exhibit |
| | | Party: Defendant Olsen, Jesse Mark |
| | | Created: 06/03/2022 9:04 AM |
| 05/27/2022 | | Motion - Dismiss with Prejudice |
| | | Created: 06/03/2022 9:04 AM |
| 05/30/2022 | | Notice |
| | | *Of Unavailability of Attorney* |
| | | Party: Defendant Olsen, Jesse Mark |
| | | Created: 05/31/2022 11:43 AM |
| 05/31/2022 | | Notice - Representation |
| | | Party: Defendant Olsen, Jesse Mark |
| | | Created: 06/01/2022 6:46 AM |
| 06/01/2022 | | Notice - Representation |
| | | Party: Plaintiff Gabriel, Ryan Dean |
| | | Created: 06/02/2022 7:22 AM |
| 06/06/2022 | | Notice |
| | | *Appointment of Judge* |
| | | Created: 06/06/2022 2:27 PM |
| 06/06/2022 | | Order (Judicial Officer: Marshall, Christopher J ) |
| | | *Appointing Judge Adrian Brown as Motions Judge* |
| | | Signed: 06/06/2022 |
| | | Created: 06/06/2022 2:27 PM |
| 06/17/2022 | | Response |
| | | *to Def's motion to dismiss or alt mot to consolidate* |

Exhibit 4 p. 002

Party: Plaintiff Gabriel, Ryan Dean
Created: 06/23/2022 11:23 AM

08/25/2022   Order - Consolidate (Judicial Officer: Raines, Keith R )
*with case 22DR04942*
Signed: 08/17/2022
Created: 08/25/2022 8:12 AM

01/03/2023   Response
*to Def's initial RFA*
Party: Plaintiff Gabriel, Ryan Dean
Created: 01/04/2023 9:35 AM

01/27/2023   Order (Judicial Officer: Marshall, Christopher J )
*Jg Brown is no longer designated as the Motions Judge in 22CV10399*
Signed: 01/27/2023
Created: 01/27/2023 1:59 PM

03/01/2023   Request - Admission
*1st*
Party: Plaintiff Gabriel, Ryan Dean
Created: 03/02/2023 4:23 PM

05/24/2023   Declaration
*of e-mailed svc to Petitioner of motion and order to compel discovery*
Party: Plaintiff Gabriel, Ryan Dean
Created: 05/30/2023 3:34 PM

10/11/2023   Notice - Compliance
*sent in Error*
Created: 10/11/2023 9:23 AM

11/07/2023   Notice - Compliance
Created: 11/07/2023 10:46 AM

12/05/2023   **Appearance** (1:30 PM) (Judicial Officer: Henry, Patrick
W. ;Location: Central Courthouse Courtroom 14D)
*by phone re Status/Scheduling Conference Parties to call Judge Henry's Webex number: 503-388-9555 and enter code 146 717 7114##*
Resource: Court Reporter MULFTRJD35 Recording, FTR
Resource: Location MULCC14D Central Courthouse Courtroom 14D
*Held*
Created: 11/28/2023 2:04 PM

12/15/2023   Order (Judicial Officer: Henry, Patrick W. )
*Re: motion for sanctions, motion to strike, stay or dismiss further proceedings*
Signed: 12/15/2023
Created: 12/21/2023 8:52 AM

12/19/2023   Motion - Dismissal
Party: Defendant Olsen, Jesse Mark
Created: 12/21/2023 1:29 PM

12/22/2023   Motion - Postponement
Party: Plaintiff Gabriel, Ryan Dean
Created: 12/22/2023 2:42 PM

Exhibit 4 p. 003

| | | |
|---|---|---|
| 12/22/2023 | | Proof - Service |

12/22/2023    Proof - Service
     Party: Plaintiff Gabriel, Ryan Dean
     Created: 12/22/2023 2:43 PM

12/26/2023    Response
     *to 2nd Motion to Dismiss*
     Party: Plaintiff Gabriel, Ryan Dean
     Created: 12/26/2023 2:32 PM

12/26/2023    Response
     *ISO Motion to Bifurcate Trial or in the Alternative to Postpone Trial due to Filing of Federal Lawsuit and Demand for Jury Trial*
     Party: Plaintiff Gabriel, Ryan Dean
     Created: 12/27/2023 12:37 PM

12/27/2023    **Hearing - Status C eck** (4:00 PM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D)
     *by phone re Status Conference Parties to call Judge Henry's Webex number: 503-388-9555 and enter code 146 717 7114##*
     *Motion to bifurcate/motion to postpone*
     Resource: Court Reporter MULFTRJD35 Recording, FTR
     Resource: Location MULCC14D Central Courthouse Courtroom 14D
     *Held*
     Created: 12/05/2023 2:06 PM

12/27/2023    Response
     *ISO Motion to Bifurcate Trial or in the Alternative to Postpone Trial due to Filing of Federal Lawsuit and Demand for Jury Trial*
     Party: Plaintiff Gabriel, Ryan Dean
     Created: 12/27/2023 12:44 PM

12/28/2023    Motion - Summary Judgment
     Filed Party: Plaintiff Gabriel, Ryan Dean
     Created: 12/29/2023 9:33 AM

12/28/2023    Motion
     Party: Plaintiff Gabriel, Ryan Dean
     Created: 12/29/2023 10:15 AM

12/28/2023    Request - Jury Trial
     Party: Plaintiff Gabriel, Ryan Dean
     Created: 12/29/2023 10:15 AM

12/29/2023    Order - Proposed
     *\*\*Unsigned\*\**
     Created: 12/29/2023 9:33 AM

12/29/2023    Order - Denial (Judicial Officer: Henry, Patrick W. )
     *Denying motions to bifurcate trial, postpone trial, demand for jury trial, request for stay proceedings until jury is selected, and summary judgment*
     Signed: 12/29/2023
     Created: 01/02/2024 8:45 AM

12/29/2023    Response
     Party: Defendant Olsen, Jesse Mark
     Created: 01/02/2024 9:45 AM

Exhibit 4 p. 004

12/29/2023    Order - Denial (Judicial Officer: Gates, Maurisa )
*Re: Several Motions*
Signed: 12/29/2023
Created: 01/03/2024 1:35 PM

01/01/2024    Declaration
*ISO Request and Demand For Jury Trial*
Party: Plaintiff Gabriel, Ryan Dean
Created: 01/02/2024 2:51 PM

01/01/2024    Declaration
*ISO Request and Demand For Jury Trial*
Party: Plaintiff Gabriel, Ryan Dean
Created: 01/03/2024 2:58 PM

01/03/2024    Order - Denial (Judicial Officer: Henry, Patrick W. )
*Motion To Bifurcate Trial Or In The Alternative To Postpone Trial*
Signed: 01/03/2024
Party: Plaintiff Gabriel, Ryan Dean
Created: 01/04/2024 11:38 AM

01/03/2024    Order - Denial (Judicial Officer: Henry, Patrick W. )
*Motion to Stay Proceedings*
Signed: 01/03/2024
Created: 01/05/2024 8:41 AM

01/10/2024    Proof of Service - Substitute
Party: Defendant Olsen, Jesse Mark
Created: 01/11/2024 9:32 AM

01/10/2024    Notice - Appeal
*w/Designation of the record*
Filed By: Plaintiff Gabriel, Ryan Dean
Created: 01/11/2024 11:37 AM

01/10/2024    Petition
*Corrected; for Peremptory Writ of Mandamus OSC case # S070743*
Filed By: Plaintiff Gabriel, Ryan Dean
Created: 01/25/2024 3:11 PM

01/12/2024    Motion
*to Stay Order and Proceedings Pending Oregon Supreme Court Petition for Writ of Mandamus*
Party: Plaintiff Gabriel, Ryan Dean
Created: 01/19/2024 11:56 AM

01/12/2024    Motion
*to Stay Order and Proceedings Pending Oregon Supreme Court Petition for Writ of Mandamus*
Party: Plaintiff Gabriel, Ryan Dean
Created: 01/19/2024 11:57 AM

01/12/2024    Declaration
*in Support of Plaintiff's Motion to Stay Order Pending Petition for Writ of Mandamus*
Party: Plaintiff Gabriel, Ryan Dean

Exhibit 4 p. 005

Created: 01/19/2024 12:20 PM

01/12/2024    Order - Denial (Judicial Officer: Henry, Patrick W. )
*Denying Motion to Stay Order and Proceedings Pending Oregon Supreme Court Petition for Writ of Mandamus*
Signed: 01/09/2024
Created: 01/19/2024 12:29 PM

01/22/2024    Petition
*Corrected; For Peremptory Wit of Manamus*
Filed By: Plaintiff Gabriel, Ryan Dean
Created: 01/23/2024 8:57 AM

01/22/2024    Motion
*To Stay Proceedings In Trial Court*
Party: Plaintiff Gabriel, Ryan Dean
Created: 01/23/2024 8:57 AM

01/26/2024    **Hearing** (9:00 AM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D)
*Re Partition Consolidated with 22DR04942*
**01/26/2024, 01/26/2024**
Resource: Court Reporter MULFTRJD35 Recording, FTR
Resource: Location MULCC14D Central Courthouse Courtroom 14D
*Held*
Created: 12/28/2023 2:45 PM

02/14/2024    **Hearing** (9:00 AM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D)
*continued from 1/26*
Resource: Court Reporter MULFTRJD35 Recording, FTR
Resource: Location MULCC14D Central Courthouse Courtroom 14D
*Held*
Created: 01/26/2024 5:07 PM

02/14/2024    **Hearing** (2:00 PM) (Judicial Officer: Henry, Patrick W. ;Location: Central Courthouse Courtroom 14D)
*continued from 1/26*
Resource: Court Reporter MULFTRJD35 Recording, FTR
Resource: Location MULCC14D Central Courthouse Courtroom 14D
*Held*
Created: 01/26/2024 5:09 PM

03/27/2024    Argument - Closing
Party: Plaintiff Gabriel, Ryan Dean
Created: 03/28/2024 10:08 AM

03/27/2024    Argument - Closing
Party: Plaintiff Gabriel, Ryan Dean
Created: 03/28/2024 10:12 AM

04/17/2024    Order (Judicial Officer: Henry, Patrick W. )
*Re: Dissolution of Domestic Partnership & Partition Claim*
Signed: 04/17/2024
Created: 04/17/2024 2:57 PM

04/18/2024    **Judgment - Supplemental**

Comment (A183215; Appellate Judgment; Appeal dismissed; /s/Theresa M. Kidd 1/22/24;

Exhibit 4 p. 006

Prevailing party: Respondents; No costs allowed; Effective datae: 4/7/24)
Party (Olsen, Jesse Mark)
   Created: 04/18/2024 9:52 AM

04/18/2024    Filing Copy - Dismiss on Appeal (Pre-Disposition)
*A183215; Appellate Judgment; Appeal dismissed; /s/Theresa M. Kidd 1/22/24; Prevailing party: Respondents; No costs allowed*
UTCR 7 Party:  Defendant  Olsen, Jesse Mark
   Created: 04/18/2024 10:15 AM

04/18/2024    Notice - Judgment Entry
Party:  Defendant  Olsen, Jesse Mark
   Created: 04/18/2024 10:16 AM

04/19/2024    Judgment - Proposed
***unsigned***
   Created: 04/19/2024 11:27 AM

04/23/2024    Judgment - Proposed
***Unsigned***
   Created: 04/23/2024 3:20 PM

04/29/2024    Judgment - Proposed
***Unsigned***
   Created: 04/29/2024 3:42 PM

04/29/2024    Motion - New Trial
Party:  Plaintiff  Gabriel, Ryan Dean
   Created: 04/29/2024 4:45 PM

04/29/2024    Declaration
*ISO Motion for New Trial Pursuant to ORCP 64*
Party:  Plaintiff  Gabriel, Ryan Dean
   Created: 04/29/2024 4:45 PM

04/29/2024    Declaration
*Service*
Party:  Plaintiff  Gabriel, Ryan Dean
   Created: 04/29/2024 4:45 PM

04/29/2024    Order - Denial (Judicial Officer: Henry, Patrick W. )
*Motion For A New Trial*
Signed: 04/29/2024
Party:  Plaintiff  Gabriel, Ryan Dean
   Created: 04/30/2024 12:05 PM

05/01/2024    Notice - Compliance
   Created: 05/01/2024 12:02 PM

05/02/2024    **Judgment - General Dismissal** (Judicial Officer: Henry, Patrick W.)
Party (Olsen, Jesse Mark)
   Created: 05/02/2024 4:57 PM

05/02/2024    Digitized Judgment Document (Judicial Officer: Henry, Patrick W. )
*General Dismissal (see details)*
Signed Date: 05/02/2024

Exhibit 4 p. 007

|  | Created: 05/02/2024 4:58 PM |
|---|---|
| 05/02/2024 | Notice - Judgment Entry<br>Created: 05/02/2024 4:58 PM |
| 05/02/2024 | Closed<br>Created: 05/02/2024 4:59 PM |
| 05/03/2024 | Exhibit - List<br>*Box*<br>Created: 05/03/2024 1:10 PM |
| 05/10/2024 | Filing Copy - Dismiss on Appeal (Post-Disposition)<br>*S070743; Appellate Judgment; Writ of mandamus is denied; /s/Meagan A. Flynn 2/1/24;*<br>*Prevaiing party: Adverse party: No costs allowed; Effective date: 5/6/24*<br>UTCR 7 Party:  Defendant  Olsen, Jesse Mark<br>Created: 05/20/2024 9:15 AM |
| 05/13/2024 | Notice - Appeal<br>*Designates the record in its entirety,*<br>*w/Atached Jgm*<br>Filed By:  Plaintiff  Gabriel, Ryan Dean<br>Created: 05/14/2024 9:50 AM |
| 05/20/2024 | **Judgment - Supplemental**<br>Comment (S070743; Appellate Judgment; Writ of mandamus is denied; /s/Meagan A. Flynn<br>2/1/24; Prevaiing party: Adverse party: No costs allowed; Effective date: 5/6/24)<br>Party (Olsen, Jesse Mark)<br>Created: 05/20/2024 9:09 AM |
| 05/20/2024 | Notice - Judgment Entry<br>Party:  Defendant  Olsen, Jesse Mark<br>Created: 05/20/2024 9:15 AM |
| 05/22/2024 | Exhibit - List<br>*Box*<br>Created: 05/22/2024 10:29 AM |
| 06/17/2024 | Undertaking - Appeal<br>Party:  Plaintiff  Gabriel, Ryan Dean<br>Created: 06/25/2024 9:05 AM |
| 06/17/2024 | Declaration<br>*certificate of service*<br>Party:  Plaintiff  Gabriel, Ryan Dean<br>Created: 06/25/2024 9:05 AM |
| 06/18/2024 | Affidavit/Declaration - Mailing<br>*1 box of exhibits sent to Coa via shuttle*<br>Created: 06/18/2024 8:17 AM |
| 06/18/2024 | Affidavit/Declaration - Mailing<br>*1 box of exhibits sent to CoA via shuttle*<br>Created: 06/18/2024 8:19 AM |
| 06/20/2024 | Digitized Judgment Document (Judicial Officer: Henry, Patrick W. ) |

Exhibit 4 p. 008

*Amended General Judgment (see details)*
Signed Date: 06/20/2024
Created: 06/28/2024 8:33 AM

06/28/2024    **Judgment - General** (Judicial Officer: Henry, Patrick W.)
Comment ("Amended General Judgment" (see details and link to 22DR04942))
Created: 06/28/2024 8:33 AM

06/28/2024    Notice - Judgment Entry
Created: 06/28/2024 8:34 AM

07/08/2024    Motion - Stay Execution
Party: Plaintiff Gabriel, Ryan Dean
Created: 07/08/2024 3:41 PM

07/08/2024    Order - Proposed
***Unsigned***
Party: Plaintiff Gabriel, Ryan Dean
Created: 07/08/2024 3:41 PM

07/08/2024    Undertaking - Appeal
Party: Plaintiff Gabriel, Ryan Dean
Created: 07/08/2024 3:41 PM

07/08/2024    Proof - Service
Party: Plaintiff Gabriel, Ryan Dean
Created: 07/08/2024 3:41 PM

07/08/2024    Undertaking - Appeal
*A184374*
Party: Plaintiff Gabriel, Ryan Dean
Created: 07/11/2024 10:23 AM

07/08/2024    Undertaking - Appeal
*A184374*
Party: Plaintiff Gabriel, Ryan Dean
Created: 07/11/2024 10:26 AM

07/16/2024    Notice - Representation
*of Counsel For Respondentt*
*A184374*
Party: Plaintiff Gabriel, Ryan Dean
Created: 07/17/2024 10:09 AM

| Date | Financial Information | |
|---|---|---|
| | **Defendant** Olsen, Jesse Mark | |
| | Total Charges | 281.00 |
| | Total Payments and Credits | 281.00 |
| | **Balance Due as of 10/28/2024** | **0.00** |
| | **Plaintiff** Gabriel, Ryan Dean | |
| | Total Charges | 392.00 |
| | Total Payments and Credits | 392.00 |
| | **Balance Due as of 10/28/2024** | **0.00** |
| | **Plaintiff** Gabriel, Ryan Dean | |
| | Bond on Appeal Balance as of 10/28/2024 | **500.00** |

Exhibit 4 p. 009

*Printed on 10/28/2024 at 4:09 PM*

Exhibit 4 p. 010

# IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

|  |  |  |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Case No. DV-22-605 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | COMPLAINT |
| vs. | ) | (Suit for Partition pursuant to MCA TITLE 70. CHAPTER 29. 70-29-101, 70-29-103 through 330) |
|  | ) |  |
| JESSE MARK OLSEN, | ) | (Not subject to mandatory Arbitration) |
| Defendant | ) |  |
|  | ) |  |

For its claims against Defendant, Plaintiff alleges:

1.

Together with residential mortgage company Security National Mortgage Corporation (SNMC), the parties comprise all persons or entities holding ownership, lienholders' interests, or a tenancy for year or life, in a certain tract of real property in Flathead County. The property is particularly described as THAT PORTION OF THE NORTHWEST QUARTER (NW1/4) OF SECTION 22, TOWNSHIP 26 N, RANGE 21 W, P.M.M., FLATHEAD COUNTY, MONTANA, ACRES 5.95, DESCRIBED AS FOLLOWS, TO-WIT:  PARCEL A OF

1    COMPLAINT

Exhibit 5 p. 001

CERTIFICATE OF SURVEY 21413; Postal/Deliveries Address 2000 Blacktail Road, Box 1140, Lakeside, MT 59922.

2.

Title to the Property is held in equal one-half ownership interests by Plaintiff and Defendant Jesse Mark Olsen as tenants in common, with no right of survivorship.

3.

Plaintiff and Defendant Jesse Mark Olsen are unable to agree on management decisions with respect to the Property in its entirety, including each party's contribution to the property, management, development and potential sale. Further, Plaintiff desires to partition the Property into approximately equal parcels, given that the Property is comprised of two fully autonomous residential homes with all necessary, separate amenities, including independent gates/driveways, and is further situated on 5.95 acres of property, which can be easily divided into two separate parcels of approximately 3 acres each.

4.

An equal and equitable partition of the property can indeed be had without great prejudice to the owners of the property, and is feasible under present land use regulations.

5.

If the parties are unable to agree to the terms of a privately arranged partition of the Property, Plaintiff seeks one or more referees to arrange for a Court-ordered partition of the Property, in accordance with MCA 70-29-202, 70-29-205, 70-29-208 and 70-29-215, in Accordance with the respective interests of Plaintiff and Defendant Jesse Mark Olsen.

WHEREFORE, Plaintiff prays for an order of the Court:

A. Appointing one or more referees to prepare a partition report and arrange for the commencement of an equitable partition of the Property, if the parties are unable

2    COMPLAINT

Exhibit 5 p. 002

to agree to the terms of a private partition action.

B.   Distributing between the owners of the Property, according to their respective Shares, historical monetary contributions made for the improvement of the property and its value.

C.   Granting such other relief as may be just and equitable herein.

DATED this 29th Day of March, 2022.

Petitioner, Pro Se (signature)

Ryan D. Gabriel

2000 Blacktail Rd., Box 1140

Lakeside, MT 59922

(403) 606-5859
Telephone
rgabriel @ zurccapital.com

3   COMPLAINT

Exhibit 5 p. 003

# IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

| | | |
|---|---|---|
| | ) | |
| RYAN DEAN GABRIEL, | ) | Case No. DV-22-605 |
| Petitioner, | ) | |
| | ) | **SUMMONS** |
| vs. | ) | Judge Robert B Allison |
| JESSE MARK OLSEN, | ) | |
| Defendant | ) | |

**TO THE ABOVE-NAMED DEFENDANT:**

A lawsuit has been filed against you.

Within 21 days after service of this summons on you, you must serve the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Montana Rules of Civil Procedure. Do not include the day you were served in your calculation of time. The answer or motion must be served on the plaintiff or plaintiff's attorney, if plaintiff is represented by an attorney, whose name and address are:

> Ryan Dean Gabriel
> 2000 Blacktail Rd.
> Lakeside, MT 59922

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.

You must also file your answer or motion with the court.

Date: ___April 18, 2023___

Peg L. Allison
Clerk of the District Court

**SEAL**
*ELEVENTH JUDICIAL DISTRICT · FLATHEAD COUNTY · MONTANA*

By: _____
Deputy Clerk

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

RYAN DEAN GABRIEL,  )
                    )
        Petitioner, )      Case No, 22CV10399
                    )
v.                  )      ORDER CONSOLIDATING CASE
                    )      WITH 22DR04942
JESSE MARK OLSEN,   )
                    )
        Respondent. )

1.

THIS MATTER came before the Hon. Keith R. Raines, Senior Circuit Court Judge, on

August 16, 2022 for hearing on a motion to dismiss 22DR04942, in part because the relief sought

in this case was a portion of the relief sought in that case. The motion to dismiss was denied.

2.

Now, therefore, IT IS HEREBY ADJUDGED AND ORDERED that this matter be

consolidated with 22DR04942 and the matter be heard in the domestic relations court.

DATED this 17th day of August, 2022.

**Keith R. Raines**
Senior Circuit Court Judge

Page **1** of **1** – **ORDER CONSOLIDATING CASE WITH 22DR04942**

Exhibit 6 p. 001

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

JESSE MARK OLSEN,                    )
                                     )
                   Petitioner,       )    Case No, 22DR04942
                                     )
        v.                           )    ORDER DENYING MOTION TO
                                     )    DISMISS, CONSOLIDATING CASE
RYAN DEAN GABRIEL,                   )    WITH 22CV10399
                                     )
                   Respondent.       )

1.

THIS MATTER came before the Hon. Keith R. Raines, Senior Circuit Court Judge, on

August 16, 2022 on respondent's motion to dismiss. Both parties appeared with counsel.

2.

The Court FINDS that:

(A)     The parties are the co-owners of real property in Oregon and Montana.

(B)     The instant case is a dissolution of unregistered partnership. A partition action

        involving only the Oregon property was filed in 22CV 10399.

(C)     The Court has personal jurisdiction over the parties.

(D)     The Court has subject matter jurisdiction to compel the parties to act in each ofhte

        properties.

3.

Now, therefore, IT IS HEREBY ADJUDGED AND ORDERED that respondent's

motion to dismiss is denied and 22CV10299 will be consolidated with this matter with the cases

heard in the domestic relations court.

DATED this 17th day of August, 2022.

_____
**Keith R. Raines**
Senior Circuit Court Judge

Page **1** of **1** –   **ORDER DENYING DISMISSAL, CONSOLIDATING CASES**

Exhibit 6 p. 002

**F I L E D**
05/09/2023
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Meagan Ngo
DV-15-2022-0000605-PA
Allison, Robert B
4.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
Email: kai@familylawflathead.com

Attorney for Defendant

### MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| RYAN DEAN GABRIEL,<br><br>               Plaintiff,<br><br>v.<br><br>JESSE MARK OLSEN<br><br>               Defendant. | Cause No. DV-22-605(B)<br><br><br>MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS |

COMES NOW, the Defendant, Jesse Olsen ("Jesse"), by and through his undersigned counsel, and hereby moves to dismiss the Complaint filed by the Plaintiff, Ryan Gabriel ("Ryan"), on or about June 6, 2022 based on the doctrine of comity. In the alternative, Jesse moves this Court for a stay of these proceedings pending the outcome of the parties' litigation in Oregon.

Respondent requests dismissal of the matter because the Circuit Court of the State of Oregon, County of Multnomah, has already asserted jurisdiction over these parties and the issues presented in the Complaint. Plaintiff filed a similar partition action in the State of Oregon involving jointly owned real property located in Oregon. That matter has been consolidated with an action for dissolution of a domestic partnership pending in Multnomah County (Portland), Oregon. The dissolution matter is set for trial on July 6, 2023. If the Court does not dismiss this proceeding, the undersigned requests in the alternative a stay of these proceedings until such time as the Oregon matter reaches its conclusion.

Exhibit 7 p. 001

This Motion is supported by the Affidavit of Jesse Olsen and the Brief in Support filed contemporaneously herewith.  The undersigned attempted to communicate with the Plaintiff at his address of record regarding this Motion, but the letter was returned with a note, "Vacant unable to forward."

DATED this 9th day of May, 2023.

LAW OFFICE OF KAI GROENKE, P.C.

By:     */s/ Kai Groenke*
         Attorneys for Defendant

Exhibit 7 p. 002

**CERTIFICATE OF SERVICE**

I, Taylor Kai Groenke, hereby certify that I have served true and accurate copies of the foregoing Motion - Motion to Dismiss to the following on 05-09-2023:

Ryan Dean Gabriel (Plaintiff)
2000 Blacktail Rd. Box 1140
Lakeside 59922
Service Method: First Class Mail

Electronically signed by Melissa Smith on behalf of Taylor Kai Groenke
Dated: 05-09-2023

Exhibit 7 p. 003

**F I L E D**
05/09/2023
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Meagan Ngo
DV-15-2022-0000605-PA
Allison, Robert B
5.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
Email: kai@familylawflathead.com

Attorney for Defendant

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| RYAN DEAN GABRIEL,<br><br>       Plaintiff,<br><br>v.<br><br>JESSE MARK OLSEN<br><br>       Defendant. | Cause No. DV-22-605(B)<br><br>BRIEF IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS |

COMES NOW, the Defendant, Jesse Olsen ("Jesse"), by and through his undersigned counsel, and hereby submits his Brief in Support of Motion to Dismiss or in the Alternative to Stay Proceedings.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts supporting Jesse's Motion are found within the Court's record and in the Affidavit of Jesse Olsen filed contemporaneously herewith. The Plaintiff, Ryan Gabriel ("Ryan") is the Respondent in Case No. 22DR04942 currently pending in the Circuit Court of the State of Oregon, County of Multnomah (hereinafter "Oregon case"). Affidavit of Jesse Olsen, ¶ 4 (May 8, 2023). Jesse is the Petitioner in the Oregon case. The Oregon case is an action for dissolution of a domestic partnership which is treated the same as a dissolution of marriage under Oregon law. Aff. Jesse, ¶ 4.

Exhibit 7 p. 004

Ryan has engaged in substantial harassment of Jesse through the legal system, through email and text, and through his Oregon attorney. Aff. Jesse, ¶ 2. Ryan and Jesse are both residents of Portland, Oregon. Aff. Jesse, ¶ 3. They jointly own real property in Oregon and also jointly own real property located at 2000 Blacktail Road, Lakeside, Montana. Aff. Jesse, ¶ 3. See also the Property Record Card attached hereto as **Exhibit 1**, noting Ryan's mailing address in Portland, Oregon. On March 21, 2022, Jesse filed the dissolution action in Multnomah County, Oregon which was assigned Case No. 22DR04942 (i.e., "Oregon case"). Aff. Jesse, ¶ 4. On the same day, Ryan filed a separate partition action involving the real property owned by the parties in Oregon which was assigned Case No. 22CV10399. Aff. Jesse, ¶ 5. On March 26, 2022, Ryan was personally served with the Petition for Dissolution in the Oregon case. Aff. Jesse, ¶ 6. On April 18, 2022, Jesse was personally served with the Complaint in the partition action, Case No. 22CV10399. Aff. Jesse, ¶ 7. On June 6, 2022, Ryan filed the instant partition action in Flathead County. Aff. Jesse, ¶ 8. A Summons was not filed or issued in the Flathead County partition action until April 18, 2023. Aff. Jesse, ¶ 13.

On August 17, 2022, the Circuit Court in Oregon consolidated the Oregon case and Case No. 22CV10399, finding that the parties are co-owners of real property in Oregon and Montana; that the partition action involved only the Oregon property; that the Circuit Court has personal jurisdiction over the parties; and that the Circuit Court has subject matter jurisdiction to compel the parties to act in each of the properties. Aff. Jesse, ¶ 9. The Court also denied a motion to dismiss that had been filed by Ryan in August 2022. Aff. Jesse, ¶ 10. A true and correct copy of the Circuit Court's *Order Denying Motion to Dismiss, Consolidating Case With 22CV10399* is attached hereto as **Exhibit 2**.

Exhibit 7 p. 005

Between August 17, 2022 and April 4, 2023, the Oregon case proceeded. A trial was set for April 4, 2023. Aff. Jesse, ¶ 11. However, the trial had to be converted to a hearing on a motion to strike filed by Ryan. Aff. Jesse, ¶ 11. The Circuit Court denied the motion to strike following a hearing on April 4. Aff. Jesse, ¶ 11. A true and correct copy of the Circuit Court's *Limited Judgment* regarding same is attached hereto as **Exhibit 3**. The *Limited Judgment* was docketed in the Oregon case e-filing system on April 19, 2023.

On April 7, 2023, Ryan filed another motion to strike, this time ex parte, which was summarily denied by the Circuit Court. Aff. Jesse, ¶ 12. A true and correct copy of the Circuit Court's *Order re: Defendant's Special Motion to Strike Pursuant to ORS 31.150 and ORS 31.152 and Memorandum in Support Thereof* is attached hereto as **Exhibit 4**.

On or around April 18, 2023, Ryan submitted a Summons in the instant case which the Clerk issued on April 18, 2023. Aff. Jesse, ¶ 13. Jesse has not been personally served with the Flathead County partition action, but became aware of it through his attorney in Oregon. Aff. Jesse, ¶ 14. Pursuant to the advice of his Oregon attorney, he hired the undersigned to seek dismissal of the Flathead County action. Aff. Jesse, ¶ 14.

The Oregon case is set for trial on July 6, 2023. Aff. Jesse, ¶ 4. Ryan and Jesse have both actively pursued the Oregon case and each party continues to file motions and other documents in the case. Ryan has been particularly active in filing documents, resulting in the filing of a Motion for Protective Order by Jesse on April 12, 2023. Although the Motion for Protective Order was denied, Ryan was ordered to pay for all of Jesse's attorneys' fees and costs associated with the motion and order. A true and correct copy of the Circuit Court's *Petitoiner's [sic] Protective Order* is attached hereto as **Exhibit 5**. Ryan also filed a Motion to Compel

Exhibit 7 p. 006

Discovery in the Oregon case on April 21 which is set for a show cause hearing on May 26. A true and correct copy of the Circuit Court's *Order to Show Cause re Motion to Compel Discovery* is attached hereto as **Exhibit 6**. The Oregon case involving the dissolution of the parties' domestic partnership is *actively* proceeding and is set to be concluded in July 2023.

DISCUSSION

This Court should voluntarily recognize the Oregon dissolution action as the Court with jurisdiction over the parties, the issues and the subject matter related to the dissolution of the parties' partnership. The Circuit Court of Multnomah County, Oregon is the proper forum to address the equities between the parties, including the equitable division of their real properties in Oregon and Montana. The doctrine of comity allows this Court to defer to the Circuit Court in Oregon to determine the rights and obligations of the parties.

"Comity is the basis for voluntary enforcement or recognition by one state of the judicial proceedings of a sister state." *Kane v. Kane*, 198 Mont. 335, 338, 646 P.2d 505, 507 (1982), citing *Mast Foos & Co. v. Stoerer Mfg. Co.*, 177 U.S. 485, 488-489, 20 S.Ct. 708 (1900). Comity is a courtesy voluntarily extended to another state for reasons of practice, convenience and expediency. *Kane*, 198 Mont. at 338, 646 P.2d at 507. Voluntarily deferring to another state's authority may be perceived as "promoting uniformity of decision, as encouraging harmony among participants in a system of co-operative federalism, or as merely an expression of hope for reciprocal advantages in some future case in which the interests of the forum are more critical." *Simmons v. State*, 206 Mont. 264, 289, 670 P.2d 1372, 1385 (1983). Comity should be applied unless it would contravene the public or judicial policy of the forum state, and therefore a court applying comity must examine the public policy of the forum state and the

Exhibit 7 p. 007

impact on that policy of enforcing the foreign proceeding. *Kane*, 198 Mont. at 338, 646 P.2d at 507, citing *Philadelphia v. Austin*, 429 A.2d 568 (1981).

The Circuit Court in Oregon has personal jurisdiction over the parties, the issues and subject matter to determine the equities between the parties with respect to their domestic partnership property and debts. *Gammon v. Gammon*, 210 Mont. 463, 472, 684 P.2d 1081, 1085-1086 (1984). "Jurisdiction to hear the divorce [domestic partnership in this case] gives jurisdiction over all the rest of the problems of custody, support and division of property." *Wilson v. Wilson*, 186 Mont. 290, 296, 607 P.2d 539, 542 (1980). The Oregon dissolution matter will determine the rights between the parties regarding their assets and liabilities, but will not determine title to the Montana property *in rem*. *Gammon*, 210 Mont. at 475, 684 P.2d at 1087. However, the Oregon Court's final determination of the equities between the parties will be entitled to full faith and credit in the courts of Montana. *Gammon*, 210 Mont. at 473, 684 P.2d at 1086. *Wamsley v. Nodak Mut. Ins. Co.*, 2008 MT 56, ¶ 51, 341 Mont. 467, 178 P.3d 102. Comity is a compelling reason for this Court to dismiss the instant partition action out of regard and respect for the Circuit Court in Oregon. *Gammon*, 210 Mont. at 473, 684 P.2d at 1086. There is no need for this Court to entertain a separate partition action as the dissolution matter will govern the parties' rights regarding their real properties. The reasons of practice, convenience and expediency all support this Court's deferral to the Circuit Court in Oregon.

Applying the doctrine of comity in this case does not contravene the public or judicial policy of Montana and serves the important purposes of avoiding piecemeal litigation, collateral attacks against judgments and forum shopping. *Wamsley*, ¶¶ 33, 34. *Baltrusch v. Baltrusch*, 2005 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267. Although Mont. Code Ann. § 40-1-401(1)(d)

Exhibit 7 p. 008

would otherwise prohibit same sex marriages, the United States Supreme Court ruled in *Obergefell v. Hodges*, 576 U.S. 644, 681, 135 S. Ct. 2584, 2608 (2015) that same-sex couples enjoy a fundamental constitutional right to marry and that no State may deny them that right. Furthermore, the Supreme Court held in *Obergefell* that no State may refuse to recognize a lawful same-sex marriage (or domestic partnership as is the case here) performed in another State. The state of Oregon recognizes domestic partnerships and treats them the same as a marriage under the law. Montana is obligated to recognize the parties' domestic partnership and to give full faith and credit to the Oregon court's judgment in that regard. Such recognition does not contravene the public policy of the State of Montana. Allowing the dissolution matter to reach its conclusion in Oregon promotes the important policy of maintaining harmonious interstate relations and co-operative federalism. *Simmons*, 206 Mont. at 290, 670 P.2d at 1385. Oregon is the most convenient and efficient forum for resolving the issue of the equitable division of the parties' assets and liabilities, including their real property in Montana. The Court should decline to exercise personal jurisdiction over Jesse or the subject matter of the parties' Montana real property on the basis of comity.

Once the Oregon litigation reaches its conclusion, the issues of res judicata and collateral estoppel will apply to bar Ryan from pursuing his partition action in Montana. Res judicata and collateral estoppel are doctrines intended to promote the important public policy of a definite end to litigation and prevents parties from "waging piecemeal, collateral attacks against judgments." *Baltrusch*, ¶ 15. The doctrines deter plaintiffs from splitting a single cause of action into more than one lawsuit, conserving judicial resources and preventing inconsistent judgments. *Baltrusch*, ¶ 15. Res judicata (claim preclusion) bars relitigating a claim that a party has already

Exhibit 7 p. 009

had an opportunity to litigate.  *Baltrusch*, ¶ 15.  Collateral estoppel (issue preclusion) bars reopening an issue that has been litigated and determined in a prior suit.  *Baltrusch*, ¶ 15.  The Oregon dissolution matter is scheduled for trial on July 6, 2023.  Once the final decree is entered dissolving the parties' domestic partnership and dividing their property and debts, the instant partition action will be barred by res judicata and collateral estoppel.  Although it would conserve judicial resources to dismiss this case now, since the judgment in the Oregon dissolution matter is not final, the Court has the authority to stay this proceeding under the doctrine of comity until the Oregon judgment is final.

<u>CONCLUSION</u>

The Court should dismiss, without prejudice, Ryan's Complaint filed in DV-22-605 on the basis of comity, or in the alternative should stay this proceeding until a final judgment is entered in the Oregon case.

DATED this 9th day of May, 2023.

LAW OFFICE OF KAI GROENKE, P.C.


By:   */s/ Kai Groenke*
      Attorneys for Defendant

Exhibit 7 p. 010

# Property Record Card

## Summary

| Primary Information | |
|---|---|
| Property Category: RP | Subcategory: Residential Property |
| Geocode: 07-3704-22-01-30-0000 | Assessment Code: 0000980159 |
| Primary Owner: | PropertyAddress: 2000 BLACKTAIL RD |
| GABRIEL RYAN D | LAKESIDE, MT 59922 |
| 5721 SW SALMON ST | COS Parcel: |
| PORTLAND, OR 97221-1533 | |
| *NOTE: See the Owner tab for all owner information* | |
| Certificate of Survey: | |
| Subdivision: | |
| Legal Description: | |
| S22, T26 N, R21 W, ACRES 5.95, CS 21413-A, TR 1H IN NW4 | |
| Last Modified: 4/26/2023 9:26:25 PM | |

| General Property Information | |
|---|---|
| Neighborhood: 207.800.0 | Property Type: IMP_R - Improved Property - Rural |
| Living Units: 2 | Levy District: 07-0327-29 - MAIN |
| Zoning: | Ownership %: 100 |
| Linked Property: | |
| | No linked properties exist for this property |
| Exemptions: | |
| | No exemptions exist for this property |
| Condo Ownership: | |
| General: 0 | Limited: 0 |

| Property Factors | |
|---|---|
| Topography: | Fronting: |
| Utilities: | Parking Type: |
| Access: | Parking Quantity: |
| Location: | Parking Proximity: |

### Land Summary

| Land Type | Acres | Value |
|---|---|---|
| Grazing | 0.000 | 00.00 |
| Fallow | 0.000 | 00.00 |
| Irrigated | 0.000 | 00.00 |
| Continuous Crop | 0.000 | 00.00 |
| Wild Hay | 0.000 | 00.00 |
| Farmsite | 0.000 | 00.00 |
| ROW | 0.000 | 00.00 |
| NonQual Land | 0.000 | 00.00 |
| Total Ag Land | 0.000 | 00.00 |
| Total Forest Land | 0.000 | 00.00 |
| Total Market Land | 5.950 | 00.00 |

### Deed Information:

| Deed Date | Book | Page | Recorded Date | Document Number | Document Type |
|---|---|---|---|---|---|
| 1/28/2021 | | | 2/1/2021 | 202100003785 | Warranty Deed |
| 5/7/2020 | | | 5/11/2020 | 202000012024 | Quit Claim Deed |

## Owners

| Party #1 | |
|---|---|
| Default Information: | GABRIEL RYAN D |
| | 5721 SW SALMON ST |
| Ownership %: | 100 |
| Primary Owner: | "Yes" |
| Interest Type: | Conversion |
| Last Modified: | 8/24/2021 2:39:09 PM |

| Other Names | | Other Addresses |
|---|---|---|
| **Name** | **Type** | |
| OLSEN JESSE M | L Additional Legal Owners | No other address |

## Appraisals

| Appraisal History |
|---|

**EXHIBIT 1**

Exhibit 7 p. 011

| Tax Year | Land Value | Building Value | Total Value | Method |
|----------|-----------|----------------|-------------|--------|
| 2022 | 87605 | 359660 | 447265 | COST |
| 2021 | 87605 | 207150 | 294755 | COST |
| 2020 | 78817 | 200320 | 279137 | COST |

## Market Land

| Market Land Item #1 | |
|---|---|
| **Method:** Acre | **Type:** Primary Site |
| **Width:** | **Depth:** |
| **Square Feet:** 00 | **Acres:** 5.95 |

| Valuation | |
|---|---|
| **Class Code:** 2101 | **Value:** |

## Dwellings

| Existing Dwellings | | |
|---|---|---|
| **Dwelling Type** | **Style** | **Year Built** |
| SFR | 01 - Bi-Level | 1994 |
| SFR | 03 - Ranch | 1995 |

| Dwelling Information | | |
|---|---|---|
| **Residential Type:** SFR | **Style:** 01 - Bi-Level | |
| **Year Built:** 1994 | **Roof Material:** 10 - Asphalt Shingle | |
| **Effective Year:** 2010 | **Roof Type:** 3 - Gable | |
| **Story Height:** 1.0 | **Attic Type:** 0 | |
| **Grade:** 6 | **Exterior Walls:** 1 - Frame | |
| **Class Code:** 3301 | **Exterior Wall Finish:** 6 - Wood Siding or Sheathing | |
| **Year Remodeled:** 0 | **Degree Remodeled:** | |

| Mobile Home Details | | |
|---|---|---|
| **Manufacturer:** | **Serial #:** | **Width:** 0 |
| **Model:** | | **Length:** 0 |

| Basement Information | | |
|---|---|---|
| **Foundation:** 2 - Concrete | **Finished Area:** 760 | **Daylight:** Y |
| **Basement Type:** 3 - Full | **Quality:** 3 - Typical | |

| Heating/Cooling Information | |
|---|---|
| **Type:** Non-Central | **System Type:** 7 - Electric Baseboard/Electric Radiant |
| **Fuel Type:** 4 - Electricity | **Heated Area:** 1660 |

| Living Accomodations | | |
|---|---|---|
| **Bedrooms:** 2 | **Full Baths:** 2 | **Addl Fixtures:** 3 |
| **Family Rooms:** 0 | **Half Baths:** 0 | |

| Additional Information | | |
|---|---|---|
| **Fireplaces:** | **Stacks:** 0 | **Stories:** |
| | **Openings:** 0 | **Prefab/Stove:** 1 |
| **Garage Capacity:** 0 | **Cost & Design:** 0 | **Flat Add:** 0 |
| **% Complete:** 0 | **Description:** | **Description:** |

| Dwelling Amenities | |
|---|---|
| **View:** | **Access:** |

| Area Used In Cost | | |
|---|---|---|
| **Basement:** 760 | **Additional Floors:** 0 | **Attic:** 0 |
| **First Floor:** 900 | **Half Story:** 0 | **Unfinished Area:** 0 |
| **Second Floor:** 0 | | **SFLA:** 900 |

| Depreciation Information | | |
|---|---|---|
| **CDU:** | **Physical Condition:** Average (7) | **Utility:** Average (7) |
| **Desirability:** | **Property:** Good (8) | |
| | **Location:** Good (8) | |

| Depreciation Calculation | | |
|---|---|---|
| **Age:** 12 | **Pct Good:** 0.9 | **RCNLD:** 0 |

### Additions / Other Features

**Additions**

| Lower | First | Second | Third | Area | Year | Cost |
|---|---|---|---|---|---|---|
| | 11 - Porch, Frame, Open | | | 36 | 0 | 0 |
| | 11 - Porch, Frame, Open | | | 192 | 0 | 0 |
| | 33 - Deck, Wood | | | 460 | 0 | 0 |

There are no other features for this dwelling

| Dwelling Information | | |
|---|---|---|
| **Residential Type:** SFR | **Style:** 03 - Ranch | |
| **Year Built:** 1995 | **Roof Material:** 10 - Asphalt Shingle | |
| **Effective Year:** 2010 | **Roof Type:** 2 - Hip | |
| **Story Height:** 1.0 | **Attic Type:** 0 | |
| **Grade:** 5 | **Exterior Walls:** 1 - Frame | |
| **Class Code:** 3301 | **Exterior Wall Finish:** 6 - Wood Siding or Sheathing | |
| **Year Remodeled:** 0 | **Degree Remodeled:** | |

| Mobile Home Details | | |
|---|---|---|
| **Manufacturer:** | **Serial #:** | **Width:** 0 |
| **Model:** | | **Length:** 0 |

Exhibit 7 p. 012

## Basement Information

**Foundation:** 2 - Concrete          **Finished Area:** 0          **Daylight:** Y
**Basement Type:** 3 - Full            **Quality:**

## Heating/Cooling Information

**Type:** Non-Central               **System Type:** 7 - Electric Baseboard/Electric Radiant
**Fuel Type:** 4 - Electricity       **Heated Area:** 0

## Living Accomodations

**Bedrooms:** 2                     **Full Baths:** 1          **Addl Fixtures:** 3
**Family Rooms:** 0                 **Half Baths:** 0

## Additional Information

**Fireplaces:**                     **Stacks:** 0              **Stories:**
                                    **Openings:** 0            **Prefab/Stove:** 0
**Garage Capacity:** 5              **Cost & Design:** 0        **Flat Add:** 0
**% Complete:** 0                   **Description:**           **Description:**

## Dwelling Amenities

**View:**                           **Access:**

## Area Used In Cost

**Basement:** 948                   **Additional Floors:** 0    **Attic:** 0
**First Floor:** 948                **Half Story:** 0           **Unfinished Area:** 0
**Second Floor:** 0                                            **SFLA:** 948

## Depreciation Information

**CDU:**                            **Physical Condition:** Average (7)     **Utility:** Average (7)
**Desirability:**                   **Property:** Good (8)
                                    **Location:** Good (8)

## Depreciation Calculation

**Age:** 12                         **Pct Good:** 0.9          **RCNLD:** 0

## Additions / Other Features

### Additions

| Lower | First | Second | Third | Area | Year | Cost |
|-------|-------|--------|-------|------|------|------|
|  | 11 - Porch, Frame, Open |  |  | 24 | 0 | 0 |
|  | 33 - Deck, Wood |  |  | 124 | 0 | 0 |

### Other Features

| Quantity | Type | Value |
|----------|------|-------|
| 1 | BG5 - Basement Garage/5-car | 0 |

## Other Buildings/Improvements

### Outbuilding/Yard Improvement #1

**Type:** Residential               **Description:** RRS1 - Shed, Frame
**Quantity:** 1                     **Year Built:** 1994       **Grade:** L
**Condition:**                      **Functional:**            **Class Code:** 3301

#### Dimensions

**Width/Diameter:** 11              **Length:** 13             **Size/Area:** 143
**Height:**                        **Bushels:**               **Circumference:**

### Outbuilding/Yard Improvement #2

**Type:** Residential               **Description:** RPA2 - Concrete
**Quantity:** 1                     **Year Built:** 1995       **Grade:** A
**Condition:**                      **Functional:**            **Class Code:** 3301

#### Dimensions

**Width/Diameter:** 24              **Length:** 30             **Size/Area:** 720
**Height:**                        **Bushels:**               **Circumference:**

## Commercial

### Existing Commercial Buildings

No commercial buildings exist for this parcel

## Ag/Forest Land

### Ag/Forest Land

No ag/forest land exists for this parcel

Exhibit 7 p. 013

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

JESSE MARK OLSEN,

               Petitioner,

   v.

RYAN DEAN GABRIEL,

               Respondent.

Case No, 22DR04942

ORDER DENYING MOTION TO
DISMISS, CONSOLIDATING CASE
WITH 22CV10399

1.

THIS MATTER came before the Hon. Keith R. Raines, Senior Circuit Court Judge, on August 16, 2022 on respondent's motion to dismiss. Both parties appeared with counsel.

2.

The Court FINDS that:

(A)    The parties are the co-owners of real property in Oregon and Montana.

(B)    The instant case is a dissolution of unregistered partnership. A partition action involving only the Oregon property was filed in 22CV 10399.

(C)    The Court has personal jurisdiction over the parties.

(D)    The Court has subject matter jurisdiction to compel the parties to act in each ofhte properties.

3.

Now, therefore, IT IS HEREBY ADJUDGED AND ORDERED that respondent's motion to dismiss is denied and 22CV10299 will be consolidated with this matter with the cases heard in the domestic relations court.

DATED this 17th day of August, 2022.

_____
**Keith R. Raines**
Senior Circuit Court Judge

Page 1 of 1 – **ORDER DENYING DISMISSAL, CONSOLIDATING CASES**

**EXHIBIT 2**

Exhibit 7 p. 014

## IN THE CIRCUIT COURT FOR THE STATE OF OREGON
## FOR MULTNOMAH COUNTY

### Family Law Department

Case No. __**22DR04942 / 22CV10399**__

**Jesse Mark Olsen**_____,

Petitioner,

And

**Ryan Dean Gabriel**_____,

Respondent

**LIMITED JUDGMENT**

This matter came before the court on April 4, 2023.
The following persons appeared and received a copy of this order:
[ X ] Petitioner  [ ] Petitioner's Attorney : __Roscoe Nelson__
[ X ] Respondent  [ ] Respondent's Attorney: _____
[ ] Other: _____


Respondent's motion is untimely. Even if Respondent's motion was timely, Respondent failed to meet his prima facie burden under ORS 31.150(3).


The motion to strike is denied.


April 4, 2023
_____  _____
Date          Sr. Judge Diana Stuart

# EXHIBIT 3

Exhibit 7 p. 015

_Verified Correct Copy of Original 4/12/2023_

```
22DR04942
ORDN
Order - Denial
16565949
```

IN THE DISTRICT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| JESSE MARK OLSEN, | ) | Case No. 22DR04942 |
| Petitioner, | ) | **ORDER RE:** DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO ORS 31.150 AND ORS 31.152 AND MEMORANDUM IN SUPPORT THEREOF |
| | ) | |
| vs. | ) | |
| | ) | |
| RYAN DEAN GABRIEL, | ) | |
| Defendant | ) | |
| | ) | |

Pursuant to the Defendant's special motion to strike pursuant to ORS 31.150 and ORS 31.152, the following is ordered:

☑ *Denied. This is not a matter that can be presented ex parte.*

[ ] An order striking Petitioner's petition in its entirety.

[ ] An order to move the extant, now-consolidated Partition Claim (**Case No. 22CV10399**) to the Civil division (Multnomah County).

[ ] An order to stay discovery in the proceeding upon the filing of this instant special motion to strike, to remain in effect until entry or the judgment.

1    **ORDER RE:** DEFENDANT'S SPECIAL MOTION TO STRIKE **EXHIBIT 4**

Exhibit 7 p. 016

_Verified Correct Copy of Original 4/12/2023_

1      [ ] An order granting Defendant Mr. Gabriel his attorney's fees and costs incurred

2  herein, which include $_____ as an award of attorney's fees, $ _____ as an award of

3  costs, and $_____ for disbursements related to this matter.

4

5      DATED this _____ Day of _____, 2023.

6

7

8                  Honorable _____ **PATRICK W. HENRY**

9                  Multnomah County Civil/Family Judge

10

11  Submitted by Ryan Dean Gabriel, *pro se*
      (206) 391-9886

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2    **ORDER RE:** DEFENDANT'S SPECIAL MOTION TO STRIKE

Exhibit 7 p. 017

22DR04942

1
2
3
4                  IN THE CIRCUIT COURT OF THE STATE OF OREGON
5                        FOR THE COUNTY OF MULTNOMAH
6   Jesse Mark Olsen,                    )
                                         )
7              Petitioner,               )
                                         )   Case No.   22DR04942
8        v.                              )
                                         )   PETITOINER'S PROTECTIVE ORDER
9   Ryan Dean Gabriel,                   )
                                         )
10             Respondent.               )
                                         )
11
          THIS MATTER having come before the court upon Petitioner's Motion for Protective Order,
12
   Petitioner's Motion for a Protective Order is:
13
14             _____ Granted
15             ☒ Denied
16        IT IS FURTHER ORDERED Respondent Ryan Dean Gabriel, is responsible for all attorneys
17  costs and fees associated with the execution of this order.
18                                              5/1/2023 4:50:35 PM
19
20                                              _____
   Prepared & Submitted by:                    Circuit Court Judge Francis G. Troy II
21  Roscoe C. Nelson, Jr.
    OSB # 732218
22  Attorney for Petitioner
    811 SW Naito Parkway
23  Suite 200
    Portland, OR  97204
24  (503) 222-1081
25  attorneys@roscoecnelson.com
                                                **EXHIBIT 5**
26

Page 1 – PETITIONER'S PROTECTIVE ORDER

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR  97204 · (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 7 p. 018

**CERTIFICATE OF READINESS FOR SUBMISSION**

This proposed order or judgment is ready for judicial signature because:

1.   ☐ Each opposing party affected by this order or judgment has stipulated to the order or judgment, as shown by each opposing party's signature on the document being submitted.

2.   ☐ Each opposing party affected by this order or judgment has approved the order or judgment, as shown by signature on the document being submitted or written confirmation of approval sent to me.

3.   ☒ I have served a copy of this order or judgment on all parties entitled to service and;

   (a)   ☐ No objection has been served on me.

   (b)   ☐ I received objections that I could not resolve with the opposing party despite reasonable efforts to do so. I have filed a copy of the objections I received and indicated which objections remain unresolved.

   (c)   ☒ After conferring about objections, role and name of opposing party agreed to independently file any remaining objection.

4.   ☐ The relief sought is against an opposing party who has been found in default.

5.   ☐ An order of default is being requested with this proposed judgment.

6.   ☐ Service is not required pursuant to UTCR 5.100(3), or by statute, rule or otherwise.

7.   ☐ This is a proposed judgment that includes an award of punitive damages and notice has been served on the Director of Crime Victims' Assistance Section as required by subsection (4) of this rule.

DATED this 13th day of April, 2021.

/s/ *Roscoe C. Nelson, Jr.*
ROSCOE C. NELSON, JR.
OSB #732218
mail@roscoecnelson.com
Attorney for Petitioner

Nelson & Nelson
811 SW Naito Parkway ~ Suite 200
Portland, OR 97204 **(**503) 222-1081
attorneys@roscoecnelson.com

Exhibit 7 p. 019

IN THE CIRCUIT COURT OF THE STATE OF OREGON
COUNTY OF MULTNOMAH
Family Law Department

In the matter of ☐ the Marriage of: )
)                                    **22DR04942**
*Jesse Olsen* )
**Petitioner** )                     Case No._____
)
)
and )
)                                    **ORDER to SHOW CAUSE RE Motion to**
)                                    **Compel Discovery**
)
*Ryan Gabriel* )
**Respondent** )

CERTIFIED TO BE A TRUE
COPY OF THE ORIGINAL.
DATED: 04/25/23
COURT CLERK

The ☐ Petitioner ☑ Respondent ☐ _____ filed a Motion & Declaration to VLN
Compel Discovery Pursuant to ORCP 46(A).

**IT IS HEREBY ORDERED that:**

☒ The Motion for an Order to Show Cause is GRANTED.

☑ All parties must appear *remotely* for TRIAL ASSIGNMENT
at 9:00 a.m. on this date: __5/25/23__ to report their readiness
for an *in-person* hearing on __5/26/23__
about_____.

**Trial Assignment Call-In** - Call 503-388-9555, Access Code 146 792 6901###
*An attached sheet provides information about the Trial Assignment process.*

At Trial Assignment, the hearing on __5/26/23__ will be assigned
to a specific Judge and courtroom for the next business day. **IF YOU FAIL TO
APPEAR REMOTELY AT TRIAL ASSIGNMENT YOU MAY LOSE YOUR
CHANCE TO PARTICIPATE IN THE IN-PERSON HEARING THE NEXT DAY.**

☐ This matter will be heard before Judge _____ in Room _____
of the Central Courthouse at _____ a.m./p.m. on _____, 20____.
*The attached sheet about Trial Assignment does not apply in this situation.*

☐ The Motion for an order to show cause is DENIED.

Dated: __04/25/23__

/s/ **FRANCIS G. TROY II**
Circuit Court Judge
☒ Form stamped and issued by clerk at counter VLN
Clerk initial

*Service Copy*

_____
Print Name

Page 1 of 2 –Order to Show Cause Generic (04/22)

**EXHIBIT 6**

Exhibit 7 p. 020

**CERTIFICATE OF SERVICE**

I, Taylor Kai Groenke, hereby certify that I have served true and accurate copies of the foregoing Answer/Brief - Brief In Support of Motion to the following on 05-09-2023:

Ryan Dean Gabriel (Plaintiff)
2000 Blacktail Rd. Box 1140
Lakeside 59922
Service Method: First Class Mail

Electronically signed by Melissa Smith on behalf of Taylor Kai Groenke
Dated: 05-09-2023

Exhibit 7 p. 021

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Wednesday, May 10, 2023 5:56 PM |
| **To:** | Melissa Smith |
| **Cc:** | Kai Groenke; jesse.m.olsen@nike.com; info_nsdlawfirm.com ;<br>jessica@roscoecnelson.com |
| **Subject:** | Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605 |

Thank you, Melissa.

Kindly note that my 2021 and 2022 taxes were filed as a resident of Montana. Prior to that, I was a resident of Washington State.

As such, this is now effectively an appellate and/or Federal case unless Jesse withdraws/settles. A detailed settlement offer has been furnished by my previous attorneys in Oregon.

Please minimize your time on this case for your client's financial benefit, unless you are also licensed to practice in Washington, Utah and Wyoming (where there are parties soon to be joining the case, along with a forthcoming tortious interference lawsuit being filed by Zurc Capital, LLC, a multi-member Wyoming corporation).

Sent via BlackBerry Hub+ Inbox for Android

---

**From:** melissa@familylawflathead.com
**Sent:** May 10, 2023 3:22 PM
**To:** rgabriel@zurccapital.com
**Cc:** kai@familylawflathead.com
**Subject:** Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Dear Ryan,

Kindly be advised that this firm represents Jesse relating to the partition action you filed in the Flathead County District Court. Attached, please find a letter that was originally mailed to you on April 27th. This letter was mailed to your address on file with the Clerk of Court but was returned to us as undeliverable. Also attached you will find copies of the Motion and supporting documents we filed with the Court yesterday. These documents were mailed to the same address as we are required to do so. Would you please provide us with your correct mailing address?

Kind regards,

*Melissa C. Smith*
*Paralegal*
**Law Office of Kai Groenke, P.C.**
239 2nd Street West
Kalispell, MT 59901
Tel: (406)-890-2999
Fax: (406)-755-1918
www.familylawflathead.com

Click here to send me a secure email

Exhibit 8 p. 001

## Kai Groenke

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Wednesday, May 10, 2023 9:48 PM
**To:** Melissa Smith
**Cc:** Kai Groenke; Jessica Edmiston; jesse.olsen@nike.com
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605
**Attachments:** Capturekai.JPG *photo of me attached*

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Oh, Kai... sweetie.

Oof.

Where to begin?  Kindly refer me to your digital media alterations team, whom I can only assume are either in Nigeria, Sri Lanka or the Philippines.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

Exhibit 9 p. 001



## See more of Law Office of Kai Groenke, P.C. on Facebook

Log In  or  Create new account

Exhibit 9 p. 002

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Monday, May 15, 2023 7:44 PM |
| **To:** | Kai Groenke; Melissa Smith |
| **Cc:** | jesse.m.olsen@gmail.com; Roscoe C. Nelson; jesse.olsen@nike.com |
| **Subject:** | RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605 |
| **Attachments:** | Exhibit_B_2023-03-29_155804.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

One further attachment (Exhibit B).

On 05/15/2023 9:41 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kai/Melissa,

Attached please find the below promised exhibits (Exhibit Y was sent in a previous e-mail), in particular those exhibits which unequivocally demonstrate the pretext under which Kai Goenke may/will be disbarred and/or face punitive sanctions by the State Bar Association of Montana.

Cheers,

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/15/2023 7:57 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kai,

Further to the below, what follows is the text of Federal Rule 7.1(c), lifted directly from the 2022 UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA Local Rules of Procedure:

Civil Rule 7. Motions and Other Papers
7.1 Motions.
(a) Scope. Except for pleadings under Fed. R. Civ. P. 7(a), pleadings in proceedings under 28 U.S.C. §§ 2241, 2254, or 2255, or applications for a temporary restraining order, Rules 7.1 and 7.2 apply to all written requests that the court take or refrain from taking a particular action, except where another rule provides otherwise.
(b) Timeliness. All motions must be made sufficiently in advance of trial to comply with the time periods set forth in this rule or other order of the court and to avoid any delays in the trial.

Exhibit 10 p. 001

(c) Prerequisites to Filing a Motion.
(1) The text of a non-dispositive motion must state that other parties have been contacted and state whether any party objects to the motion. Parties that have not yet appeared in the action or whose default has been entered need not be contacted. This Rule 7.1(c)(1) does not apply to any party in a case filed by a self-represented prisoner.
(2) When a motion is unopposed, the word "unopposed" must appear in the title of the motion.
(3) Proposed Orders. Except as otherwise provided in these rules or by order, a proposed order is required and permitted only with a motion for extension of time or with an unopposed motion. All proposed orders must:
(A) be attached to the motion in PDF format as an exhibit, so that the order, as proposed, is filed in the electronic record of the case;
(B) be e-mailed to the judge in WordPerfect, Word, or a compatible program, so that the judge may alter it;
(C) use 14-point font;



You and Roscoe are hopelessly outmatched, and totally out of your depth - squaring off with a *pro se* litigant, no less.

**Ryan D. Gabriel**
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

> On 05/15/2023 7:47 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

> Kai,

> As I have stated previously, this case is ultimately headed for an appellate and/or Federal court. A game plan has been sketched out nearly a year ago by the NY-LA-Baltimore national firm I have retained to research the and map out the final outcome.

>  I strongly encourage you to consider the implications of this, and your obligations as Jesse's counsel to do the same.

> If you are not up to the challenge - which your astonishing misinterpretation of Oregon Circuit Court Judge Francis G. Troy II's denial of Roscoe's error-strewn Motion for Protective Order (re: attorneys' fees) puts on stark display - then you may have a legal obligation to withdraw from the case, notwithstanding any subsequent  tortious interference lawsuit that may be forthcoming.

> Ryan D. Gabriel
> Zurc Capital, LLC

2

Exhibit 10 p. 002

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/15/2023 7:18 PM EDT Kai Groenke
<kai@familylawflathead.com> wrote:

Ryan,

Montana Rules of Civil Procedure control in Montana
District Courts over the Federal Rules of Civil
Procedure. There is no meet and confer requirement
under the Montana rules. Furthermore, there is no
Rule 7.1(c) in the Federal Rules. If you wish to negotiate
the outcome of property disposition attendant to your
relationship with Jesse, you will need to get in touch
with Roscoe Nelson who represents Jesse in that
capacity.

Your claim that I committed perjury is
unfounded. Under Rule 11 of the Montana Rules of
Civil Procedure, if you file a document with the Court
that presented for an improper purpose, such as to
harass or needlessly increase the cost of litigation or
make factual contentions that do not have evidentiary
support, the District Court can impose sanctions against
you. However, in this case instead of imposing
sanctions, I would expect the Court to at minimum stay
the partition action pending the outcome of the Oregon
dissolution.

The State Bar of Montana is not going to disbar
me. Your baseless threat is noted, however, and your
email communications will be used to show that your
childlike threats are imposed solely for the purpose of
harassment.

Sincerely,

3

Exhibit 10 p. 003

*Kai Groenke*

**Law Office of Kai Groenke, P.C.**

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Monday, May 15, 2023 3:48 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Cc:** Kai Groenke <kai@familylawflathead.com>;
jesse.olsen@nike.com; jesse.m.olsen@gmail.com
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause
No. DV-22-605

Kai/Melissa,

For conferral purposes, please see an initial draft of my
proposed/intended Response to Mr. Olsen's Motion to
Dismiss or in the Alternative Stay Proceedings, along
with relevant exhibits.

More exhibits to follow in a separate e-mail due to
attachment size limitations.

 Absent a suitable conferral outcome, the final edited
version will be filed with the court later this week, along
with a proposed order, requested sanctions, and
referral of M/r/s. Groenke to the Montana State Bar
Association proposing disbarment and/or other
sanctions.

Ryan D. Gabriel

Zurc Capital, LLC

rgabriel@zurccapital.com

4

Exhibit 10 p. 004

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

---

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Wednesday, May 10, 2023, 5:59 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Cc:** Kai Groenke <kai@familylawflathead.com>;
jesse.m.olsen@nike.com <jesse.m.olsen@nike.com>;
info@nsdlawfirm.com <info@nsdlawfirm.com>; Jessica
Edmiston <jessica@roscoecnelson.com>
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause
No. DV-22-605

Also please note that 2000 Blacktail Rd. in Lakeside,
MT is a rural address and the US Postal Service does
not deliver to wilderness addresses.

You will need to send any paper correspondence via
courier, UPS, DHL or FedEx to be delivered to the
front door.

Sent via BlackBerry Hub+ Inbox for Android

Exhibit 10 p. 005

1

2

**IN THE DISTRICT COURT OF THE STATE OF MONTANA**

3

4

**FOR THE COUNTY OF FLATHEAD**

5

| | | |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Cause No. DV-22-605(B) |
| Plaintiff, | ) | PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS |
| vs. | ) | |
| JESSE MARK OLSEN, | ) | |
| Defendant | ) | **ROBERT B ALLISON** |

6

7

8

9

10

11

12

13    Plaintiff RYAN DEAN GABRIEL ("Mr. Gabriel") hereby answers Defendant JESSE

14    MARK OLSEN's ("Mr. Olsen") unmerited 'Motion to Dismiss or in the Alternative to Stay

15    Proceedings' (hereafter "instant Motion to Dismiss") and its companion 'Brief in Support of

16    Motion to Dismiss or in the Alternative to Stay Proceedings' (hereafter "Defendant's Brief in

17

18    Support of Motion to Dismiss").

19                              **CONFERRAL STATEMENT**

20    Plaintiff conferred in good faith with Defendant's counsel by e-mail exchange on May

21    10, 2023, May 15, 2023 and May 18, 2023.

22    Conversely, no conferral was sought by the Defendant's attorney (hereafter "M/r/s.

23    Groenke"). Instead, M/r/s. Groenke filed this instant 'Motion to Dismiss or in the Alternative to

24    Stay Proceedings' without conferring in good faith, and indeed without any warning, while

25    simultaneously threatening to seek sanctions for attorney's fees within 3 days of filing the

26

27    Defendant's Motion to Dismiss, stating "If you are unwilling to consent to dismissal of the

28    lawsuit, Jesse will seek an award of his attorneys' fees and costs incurred in connection with

1    PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN
     THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 001

bringing a motion to dismiss." … "If I do not hear from you by May 12, 2023, I will proceed with dismissal and a request for Jesse's attorneys' fees." While M/r/s. Groenke's letter is dated April 27, 2023, Plaintiff did not receive a copy of this letter until the day after Defendant's motion to dismiss was filed, on May 10, 2023, an intentional *post mortem* incident premeditated by M/r/s. Groenke. (*See* Exhibit Q, ¶¶ 1-2.) At the same time, Defendant and his attorneys know – and have always known intimately well – that the United States Postal Service (USPS) does not deliver regular mail to 2000 Blacktail Road, Lakeside MT 59922, as it is rural address, and Defendant's counsel has been repeatedly advised that all correspondence must be sent via UPS, FedEx, courier or electronically – any other method aside from USPS regular mail. (*See* Exhibit H, ¶¶ 1-3, 8-10, and 15-23.)

While the Montana Rules of Civil Procedure (hereinafter "MCA Rules") do not specify conferral requirements, M/r/s. Groenke spells out in Defendant's 'Brief in Support of Motion to Dismiss' – in painstaking detail – the importance of voluntarily following such doctrines as good faith comity in legal procedure, citing Federal case law and other state court precedents, all while arguing Plaintiff's wholly appropriate partition claim – as 50% owner of the property in question – constitutes bad faith lawfare and is "inappropriate harassment". Per the Defendant, "The doctrine of comity allows this Court to defer…"; "Comity is the basis for voluntary enforcement or recognition…" (*See Defendant's* 'Brief in Support of Motion to Dismiss or Stay Proceedings', ¶ 4.) Therefore, reasonable guidance on good faith conferral – in the spirit of M/r/s. Groenke's and Defendant's unequivocal desire for this Court to "voluntarily" defer to or comply with Federal or other Court rules of order in good faith – can be found in the Federal Rules of Civil Procedure. Per FRCP 7.1(c)(1), "[Prerequisites to Filing a Motion] The text of a non-dispositive motion must state that other parties have been contacted and state whether any party objects to the motion." Per this rule, the courts will automatically deny such

Exhibit 11 p. 002

a motion unless the moving party, prior to filing, makes a good faith effort to confer with the other parties concerning the issues in dispute.

At minimum, the procedural discourtesies committed by Defendant and M/r/s. Groenke ought to disqualify the Defendant from any award of attorneys' fees, and result in Plaintiff's award of the same, plus any and all his costs associated with this instant motion to dismiss.

## GENERAL DENIAL

In accordance with MCA Title 25, Ch. 23, Rule 9(b), Mr. Gabriel denies, generally and specifically, Defendant's each and every allegation, statement, matter and purported cause of action contained in Mr. Olsen's 'Motion to Dismiss or in the Alternative Stay Proceedings'.

## SPECIFIC DENIALS

In accordance with MCA Title 25, Ch. 23, Rule 9(b), Mr. Gabriel further denies:

**False Allegation No. 1:** "The Oregon case [Case No. 22DR04942] currently pending in the Circuit Court of the State of Oregon, County of Multnomah … is an action for *dissolution of a domestic partnership which is treated the same as a dissolution of marriage under Oregon law*." (emphasis added).

On the contrary, the State of Oregon does not recognize common law marriage at all, which is the typical if not essential dispositive requirement for the legal claim of an *implied* marital contract where no explicit marital contract exists. Defendant (hereinafter "Mr. Olsen") is alleging in Case No. 22DR04942 (the "Oregon case") that there is an *implied* domestic partnership, despite the fact that Mr. Olsen has repeatedly confirmed there is no *explicit* domestic partnership, and in fact has confirmed in sworn testimony – testimony which was subsequently embedded into legally binding, fully executed Security Agreements (mortgages) and companion title documents, "… **we are not in a domestic partnership**", a statement to which the only other contractually bound party to the Defendant and Plaintiff, mortgage lender

3    PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 003

1   Security National Mortgage Corporation (hereinafter "SNMC"), unequivocally agrees.

2   (Emphases added.) (*See* Exhibit V, ¶¶ 1-10.)

3          Beyond these compounding problems, Mr. Olsen's domestic partnership claim cannot

4   overcome an estoppel affirmative defense, on the grounds Mr. Olsen is estopped from claiming

5   domestic partnership where Mr. Gabriel and SNMC relied on Mr. Olsen's representations to

6   their mutual detriment (*See* Exhibit V, ¶¶ 1-10.)  In other words, there is no realistic legal basis

7   for the Circuit Court of the State of Oregon, County of Multnomah (family division) to

8   adjudicate the disposition of the Montana property jointly owned by Plaintiff and Defendant.

9   This necessitates the Plaintiff's instant, appropriate, properly filed partition claim lawsuit.

10         Further, the case law establishing the criteria for legitimate claims of *implied* domestic

11  partnership are entirely separate and distinct from marital law in Oregon state.  They are so

12  distinct that nearly all case law precedent rulings by Oregon courts adjudicating *implied*

13  domestic partnership claims were and continue to be established amidst the insistence by all

14  parties alleging *implied* domestic partnership – whenever facing skeptical Oregon judges – that

15  there are no parallels to *implied* marriage.  This is because the state of Oregon does not

16  recognize *implied* marriage, as it is not a common law marriage state. (Emphases added); (*See:*

17  '*In re the Domestic Partnership of Baker'*, 232 Or. App. 646, 649 (Or. Ct. App. 2009).

18         **False Allegation No. 2:**  "Ryan has engaged in substantial harassment of Jesse through

19  the legal system, through email and text, and through his Oregon attorney."  On the contrary,

20  precisely the opposite is true, and no evidence is provided by the Defendant other than Mr.

21  Olsen's affidavit.  Indeed, Mr. Olsen's own petition in the state of Oregon includes a single

22  claim for dissolution of domestic partnership against Mr. Gabriel, but does not specify any

23  statement or document from Mr. Gabriel pledging himself to a domestic partnership or

24  marriage, nor does it cite any joint tax returns, joint applications aside from mortgage

4      PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN
       THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 004

applications with SNMC, other joint accounts, credit or otherwise, aside from a single SNMC mortgage on the Montana property, presumably because Mr. Olsen knows that none of the preceding items exist or have ever existed. Moreover, counsel for the Defendant cites case law, such as '*Obergefell v. Hodges*, 576 U.S. 644, 681, 135 S. Ct. 2584, 2608 (2015)', etc., that fails to address the distinction between common law 'implied' marriage and an explicit marital binding contract in a state that does not observe common law marriage (as is the case in Oregon), and which also fails to address how the state of Oregon and its courts have taken great pains in all rulings concerning 'implied domestic partnership' to dispel any notion that such precedent case law is governed by the same rules as 'implied marriage', which does not exist in Oregon. Thus, there is a conspicuous lack of evidence to support the domestic partnership claim, offset by an overwhelming amount of contrary evidence refuting the existence of any implied domestic partnership. This fact pattern strongly suggests it is Mr. Olsen who is abusing process and venue shopping, contrary to M/r/s. Groenke's argument, and presumably to curtail or overcomplicate a legitimate, wholly appropriate partition claim on a property Mr. Gabriel owns a 50% stake in, in Plaintiff's instant partition claim case.

**False Allegation No. 3:** "Ryan and Jesse are both residents of Portland, Oregon." On the contrary, Mr. Gabriel is and has been a Montana resident since 2021, and has filed taxes as a Montana resident in 2022 and 2021. Prior to this, Mr. Gabriel was a resident of Washington State, and filed taxes as a resident of Washington State from 2002 – 2020. All of Mr. Gabriel's payroll tax records, tax records, tax documents, drivers' licenses, car licenses, and other official and employment documents – without exception – show that Mr. Gabriel has been a resident of either Washington state or Montana from 2002-2020, and prior to 2002 was a resident of the State of New York, where he attended and graduated college (New York University – Leonard N. Stern School of Business). The real estate parcel summary furnished as an exhibit by the

PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 005

Defendant is likely a clerical error on the part of SNMC, who drafted the title documents, and who did throughout other documentation firmly establish Mr. Gabriel's primary residence as Washington state at the time of the closing of all mortgage loans being referenced by the Defendant. (*See:* Exhibit K – title documents, mortgage applications.)

**False Allegation No. 4:** "On the same day, Ryan filed a separate partition action involving the real property owned by the parties in Oregon which was assigned Case No. 22CV10399." Here the Defendant and his counsel, M/r/s. Groenke, P.C., should be referred to the criminal division of the Court and the Montana State Bar Association for perjury charges before this court, as both the Defendant and his counsel know beyond any shadow of any doubt that their written claim and testimony on the sequence of filing events is materially and substantively false.

Contrary to the Defendant's statement, Mr. Gabriel submitted his partition claim before the Oregon court weeks prior to March 21, 2022, and his claim was accepted by the court clerk prior to Mr. Olsen's domestic partnership claim filing. Compounding the false narrative, Mr. Olsen, at the advice of his Oregon attorney, Roscoe C. Nelson III, Jr. ("Mr. Nelson"), both *drafted* and filed the instant dissolution of domestic partnership lawsuit on the same day, March 21, 2022, and which was recorded by the Multnomah County Court at 3:33pm that same day. The domestic partnership lawsuit is a wholly cynical attempt to contravene a previously filed partition claim by Mr. Gabriel, which was drafted weeks earlier, sent via e-mail twice to the Defendant Mr. Olsen, who shared the draft with his attorney weeks before the dissolution of domestic partnership claim was ultimately drafted. Mr. Gabriel's partition claim was ultimately recorded by the Multnomah County Court at 2:49 p.m. on March 21, 2022, prior to Mr. Olsen's petition. Mr. Olsen's dissolution of domestic partnership claim has been from the outset a cynical, malicious attempt to intimidate and coerce Plaintiff Mr. Gabriel, whom Defendant's

6    PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN
     THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 006

Oregon attorney Roscoe C. Nelson III, Jr. had previously called to inquire as to the nature and purpose of Mr. Gabriel's partition claim at 11:09 a.m. on March 17, 2022, angrily concluding the call by declaring that in response, Mr. Olsen would file a dissolution of domestic partnership claim. Previously, Mr. Gabriel had not considered the viability of anything called 'implied domestic partnership' case law in Oregon, which does not recognize common law marriage, and had no belief that Mr. Nelson was a family law specialist until he was served this instant, observably retaliatory lawsuit (Case No. 22DR04942).

Here, the time stamps on the pertinent documents are illustrative and implicate the Defendant and M/r/s. Groenke of perjury (i.e., proactively engaged in deception, fully knowledgeable that they are fabricating a lie, cut from whole cloth) before this Court. Mr. Nelson's draft of Defendant's *Petition, Summons, Notice of CIF Filing Form (2.130.2)*, and the time-stamped signatures on these documents all occurred on the same day that Plaintiff's now-consolidated instant Partition Claim (Case No. 22CV10399) was finally accepted and filed by the Court clerk. (*See* Exhibit A (*as-served* Summons, Petition, Discovery Notice, etc.) ¶¶ 1-15, and Exhibit B (*now-consolidated* Partition Claim 22CV10399) ¶¶ 1-2.) Moreover, the time-stamped signatures by Mr. Olsen on the preceding documents were executed after Case No. 22CV10399 ("Partition Claim") was recorded and filed, and weeks after Defendant and Mr. Nelson had knowledge the partition claim case had been received for filing by the Multnomah County Court clerk. While this Partition Claim had only been served electronically to Mr. Olsen at the time of Plaintiff's draft and filing on March 21, 2022, verification of Defendant's receipt of Case No. 22CV10399 came in the form of Mr. Olsen's attorney, Mr. Nelson, who placed his first phone call to Mr. Gabriel at 11:09 a.m. on March 17, 2022, to inquire as to the nature and purpose of Mr. Gabriel's Partition Claim, angrily concluding the call by declaring that in response, Mr. Olsen would file a dissolution of domestic partnership claim.

Compounding the Defendant's false narrative and M/r/s. Groenke's perjurious claims on the sequence of events, Mr. Nelson had previously called Mr. Gabriel's now-withdrawn real estate attorney at Chenoweth Law Group, Kelsey Peddie, on March 15, 2022 at 10:37 a.m., in direct response to Mr. Gabriel's initial electronic filing attempt of the Oregon partition claim, referencing Mr. Gabriel's initial e-filing in that phone message. (*See* Gabriel Decl. ¶¶ 1-3 and Exhibit Y ¶¶ 1-10.)

Here criminal perjury charges, disciplinary measures and sanctions against M/r/s. Groenke and Defendant can be recommended/ordered by this Court, in addition to corroborating factual background in support of the points made in this instant Answer Brief, which can be obtained by verifying the above sequence of events with Mr. Nelson's paralegal, Jessica Edmiston ("M/r/s. Edmiston"), as well as now-withdrawn attorney for Mr. Gabriel, Kelsey Peddie ("M/r/s. Peddie"). M/r/s. Edmiston and M/r/s. Peddie both have intimate knowledge of these events and this timeline, and are unlikely to perjure themselves before this Court, given Mr. Gabriel's extensive documentation and correspondence with Mr. Olsen and M/r/s. Peddie in and around the time of Mr. Nelson's above-referenced phone call to Mr. Gabriel at 11:09 a.m. on March 17, 2022, and for weeks preceding the call, throughout which Mr. Gabriel's pending Oregon Partition Claim was actively discussed, in writing and by phone, by all of the above mentioned parties (*See* Gabriel Decl., ¶¶ 1-4, and Exhibit A, ¶ 6, and Exhibit C, ¶ 1, and Exhibit Y, ¶¶ 1-10.)

**False Allegation No. 5:** "...that the [Multnomah County] Circuit Court has subject matter jurisdiction to compel the parties to act in each of the properties." At the time of the ruling in question, the retired Senior Judge Raines was unaware that Mr. Gabriel was not a resident of Oregon, nor that Mr. Olsen had disclaimed in written testimony the notion that there was any domestic partnership in the only legally binding active contract (an SNMC mortgage)

PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 008

that contractually ties the parties together in any way (*See* Exhibit V, ¶¶ 1-10.). Beyond this, it is entirely within the purview of this Court to rule that it also has subject matter jurisdiction in the context of this partition claim, and that this court's jurisdiction either supersedes or can precede the Multnomah County court's opinion, which has not ultimately been adjudicated, and also given the location of the property in question (2000 Blacktail Rd., Lakeside, MT 59922), and also given that the property can be easily partitioned, and finally given that the property in question is comprised of two wholly separate, fully autonomous cabins, with all utilities and amenities in each cabin, on 6 acres of property with two wholly separate driveways.

**False Allegation No. 6:** "On April 7, 2023, Ryan filed another motion to strike, this time ex parte, which was summarily denied by the Circuit Court." On the contrary, this "second filing" and subsequent denial is likely the result of a clerical error by the Multnomah County Circuit Court clerk, which dispatched one copy of the same 'Special Motion to Strike' to a procedural judge, even while a trial assignment judge allowed the Special Motion to Strike to take the place of the original trial date, resulting in the original ruling. The procedural judge seemed to either be unaware of the in-person hearing ruling, or the procedural judge wanted to offer the corrective decision that the Special Motion to Strike cannot or should not have been brought *ex parte*. This is a common pattern with Mr. Olsen and his counsel (M/r/s. Groenke) – they appear to be unable, unwilling or simply not up to the task of interpreting the documents they are reviewing, particularly with respect to the court in Multnomah County, Oregon.

**False Allegation No. 7:** "Ryan was ordered to pay for all of Jesse's attorneys' fees and costs associated with the motion and order." On the contrary, the [Petitioner's Motion for] Protective Order (note the misspelling – "Petitoiner's Protective Order") did not supply an option for the Multnomah Circuit Court Judge to grant or deny the motion for attorneys' fees, and was almost certainly overlooked by the clerk filing the court's denial of Mr. Olsen's Motion

Exhibit 11 p. 009

for Protective Order.  Again, we see here a remarkable pattern of intellectual incompetence by both the Defendant and the Defendant's wholly unqualified attorneys, who seem to have no ability to properly interpret what they are reviewing, and ultimately have no business practicing law in any jurisdiction for lack of intellectual capability, and more importantly, lack of personal and professional integrity.

**False Allegation No. 8**:  "The dissolution matter is set for trial on July 6, 2023."  On the contrary, the first-filed claim in what the Defendant is loosely calling the "dissolution matter" is actually the Oregon property partition claim, which itself does not cite, nor reference in any way, nor involve the Montana property.  Thus, two separate partition claims on two separate properties in two entirely separate jurisdictions are not incompatible with one another, and the oft-cited "comity doctrine" does in no way preclude this court from ruling expeditiously on the Montana property.

Furthermore, Mr. Gabriel personally discussed setting that particular "trial date" with the head clerk in Multnomah County, who believed she was doing Mr. Gabriel a favor by setting that date as early as possible, given Mr. Gabriel's previous motion to dismiss (vs. the domestic partnership claim) and special motion to strike (vs. the domestic partnership claim) – understandably assuming Mr. Gabriel wanted the entire lawsuit to be over as quickly as possible.  However, after Mr, Gabriel explained the new sequence of events following the dismissal of the special motion to strike – including the new necessity to compel discovery – the clerk carefully guided Mr. Gabriel, strictly on procedural terms, on how to postpone the trial date given Mr. Olsen's previous attempts to foil Mr. Gabriel's discovery attempts.  It is commonly recognized by all parties – including and especially Mr. Olsen, notwithstanding his attorneys' now-intimate knowledge – that the evidence produced in discovery will not only

PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 010

work in Mr. Gabriel's favor, but also likely yield separate related state and Federal criminal charges against Mr. Olsen and possibly his attorney(s) as well.

Thus, the "dissolution matter", now folded into Mr. Gabriel's original partition claim in Multnomah County, Oregon, will likely not actually proceed to final trial until early- or mid-2024 – and even then may be appealed. Given those multiple contingencies, this Court has no compelling reason to defer a simple, rather straightforward partition claim case in a county (Flathead County, Montana) that this Court has direct, unequivocal jurisdiction over.

## **DISCUSSION**

Defendant and M/r/s. Groenke rely upon the wholly erroneous conflation of common law implied marriage with Oregon's unique case law precedents governing implied domestic partnerships, brazenly stating at one point, "The state of Oregon recognizes domestic partnerships and treats them the same as a marriage under the law." This is substantively incorrect, given that the state of Oregon does not recognize common law *implied* marriage at all, and has an entirely separate set of statutes governing marriages (vs. domestic partnerships). Numerous flawed case citations such as '*Obergefell v. Hodges*, 576 U.S. 644, 681, 135 S. Ct. 2584, 2608 (2015)' flow from this foundational error in the Defendant's brief in support of the instant motion to dismiss, which seems inevitable given that Defendant's attorney, M/r/s. Groenke, is not licensed to practice in Oregon and possesses no understanding of this activist, controversial case law (implied domestic partnership) in the state of Oregon. Here a more appropriate case citation is *In re the Domestic Partnership of Baker*, 232 Or. App. 646, 649 (Or. Ct. App. 2009), in which the plaintiff in that case – who claims to be the defendant's wife and homemaker of 24 years and the caretaker of their multiple children – was forced nevertheless to fall back on the concept of 'implied domestic partnership' precisely because Oregon is not a state that recognizes common law marriage arising from circumstances within Oregon.

11      PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN
THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 011

As *In re the Domestic Partnership of Baker*, 232 Or. App. 646, 649 (Or. Ct. App. 2009)

shows, in this equitable proceeding for dissolution of a domestic partnership, plaintiff Baker

appeals from a judgment determining that no domestic partnership existed and from a

supplemental judgment ordering plaintiff and her attorney to each pay sanctions in an amount

equal to one half of defendant Andrews' attorney fees.  The case record shows plaintiff Baker

makes seven assignments of error, one pertaining to her domestic partnership claim and six

related to the supplemental judgment for sanctions.  At trial, plaintiff Baker testified that the

parties were in an intimate relationship, with defendant Andrews introducing her as his wife to

others, that she contributed to the down payment for the house, and that she was the primary

provider of child care to the children. The defendant Andrews in the *Baker* case testified that the

parties were merely friends, that he was the primary child care provider for his children, that he

paid the down payment and mortgage payments on the house, and that he never considered the

parties to be "pooling financial resources."

    In 2005, plaintiff Baker filed an application for Social Security disability that contained

the following sworn statements:

> "[Defendant] owns or is buying the home where I live.
> "I buy food separately from the other household members.
>
> * * * * *
>
> "I live with my cousin [defendant] in a home he owns. When I had income I paid about
> $200 towards rent and 1/2 of the utilities. Since 6/05 when my job ended, I've paid only
> utilities ($200-400/month). He doesn't consider the extra support since 6/05 to be a debt,
> but I'd like to repay him when I can. I buy my own food separately.
>
> * * * * *
>
> "On May 1, 2005, I took my name off title of [the parties' house] to [defendant] who is
> related to me. It was worth [blank]. I do not expect additional cash, property or services.
> I do not still own part of the property.

12    PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN
THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 012

"[Defendant] and I used to co-own the house together, but it was always mostly his money that paid for it. This year when my income ended, I didn't feel right about my name still being on the title since I wasn't contributing to it, so I took my name off the title and now he's the sole owner. He didn't compensate me for the change because I owe him so much just for helping me out."

Those statements were inconsistent with plaintiff Baker's demand for an equitable division of the property. Because of that inconsistency and plaintiff's testimony at trial, the trial court found plaintiff Baker to have "virtually zero" credibility. The court accepted defendant Andrews' version of the facts, which it found to be consistent with plaintiff Baker's sworn statements in her application for disability benefits. The court determined that the parties did not intend to create a domestic partnership and denied the equitable relief sought by plaintiff. (*See: 'In re the Domestic Partnership of Baker*, 232 Or. App. 646, 649 (Or. Ct. App. 2009)'.

Similarly, Mr. Olsen is alleging in Case No. 22DR04942 (the "Oregon case") that there is an *implied* domestic partnership, despite the fact that Mr. Olsen has repeatedly confirmed there is no *explicit* domestic partnership, and in fact has confirmed in sworn testimony – testimony which was subsequently embedded into legally binding, fully executed Security Agreements (mortgages) and companion title documents, "… **we are not in a domestic partnership**", a statement to which the only other contractually bound party to the Defendant and Plaintiff, mortgage lender Security National Mortgage Corporation (hereinafter "SNMC"), unequivocally agrees. (Emphases added.) (*See* Exhibit V, ¶¶ 1-10.)

Beyond these compounding problems, Mr. Olsen's domestic partnership claim cannot overcome an estoppel affirmative defense, on the grounds Mr. Olsen is estopped from claiming domestic partnership where Mr. Gabriel and SNMC relied on Mr. Olsen's representations to their mutual detriment (*See* Exhibit V, ¶¶ 1-10.)

In other words, there is no realistic legal basis for the Circuit Court of the State of Oregon, County of Multnomah (family division) to adjudicate the disposition of the Montana

13    PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

Exhibit 11 p. 013

property jointly owned by Plaintiff and Defendant, necessitating the Plaintiff's instant, appropriate, properly filed partition claim lawsuit.

## CONCLUSION

WHEREFORE Plaintiff prays for judgment dismissing the Defendant's 'Motion to Dismiss or in the Alternative Stay Proceedings', awarding Mr. Gabriel his attorneys' fees, and entry of a judgment ordering the equitable partition of the jointly owned property at 2000 Blacktail Road, Lakeside, MT 59922, per the Plaintiff's original instant claim.

Dated this 19th day of May, 2023.


_____
Respondent/Plaintiff, Pro Se (signature)


Ryan D. Gabriel
2000 Blacktail Rd.
Lakeside, MT 59922


(206) 391-9886
Telephone

**Certificate of Service**

I, _RYAN D. GABRIEL_, certify that I served a true and correct copy of _Plaintiff's Answer Brief to Defendant's Motion to Dismiss or in Alt. Stay Proc._ by depositing into the US Mail on _May 19_, 20 _23_ postage prepaid, and addressed to the following:

_Law Office of Kai Groenke, P.C._
_239 2nd street West_
_Kalispell MT 59901_

Dated this _19th_ day of _May_, 20 _23_.

_____
Signature

_____RYAN D. GABRIEL_____
Printed Name

Exhibit 11 p. 015

# FILED

05/31/2023
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Rachael Parra
DV-15-2022-0000605-PA
Allison, Robert B
8.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
Email: kai@familylawflathead.com

Attorney for Defendant

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| RYAN DEAN GABRIEL,<br><br>Plaintiff,<br><br>v.<br><br>JESSE MARK OLSEN<br><br>Defendant. | Cause No. DV-22-605(B)<br><br>REPLY TO PLAINTIFF'S ANSWER BRIEF TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS |

COMES NOW, the Defendant, Jesse Olsen ("Jesse"), by and through his undersigned counsel, and hereby submits his Reply to Plaintiff's Answer Brief to Defendant's Motion to Dismiss or in the Alternative to Stay Proceedings filed by the Plaintiff, Ryan Gabriel ("Ryan").

Ryan argues that Jesse failed to confer in good faith pursuant to the Federal Rules of Civil Procedure. The Montana Rules of Civil Procedure govern the procedure in all civil actions and proceedings in the District Courts of the State of Montana. M.R.Civ.P. 1 (2021). The Montana Rules do not include a conferral requirement. Nonetheless, the undersigned did attempt to confer with Ryan prior to filing the Motion to Dismiss by mailing a letter to Ryan's address of record on April 27, 2023. A true and correct copy of the letter is attached hereto as **Exhibit 1**.

Exhibit 12 p. 001

At the time of filing of Jesse's Motion, Ryan's address of record with this Court, and the address he used on his pleadings filed herein, is 2000 Blacktail Mountain Road Box 1140, Lakeside, Montana, 59922. The Court may review the last page of the Complaint (Dkt. #1) and the Summons issued by the Clerk of Court to confirm same. The e-filing system automatically generates the Certificate of Service using the litigant's address of record. The Certificate of Service automatically generated by the e-filing system populated the Blacktail Mountain Road address as Ryan's address of record. As an example, please see the Certificate of Service attached to the Notice of Appearance filed in this matter by the undersigned on May 9, 2023 (Dkt. #3). It is Ryan's duty to provide the Court with a correct mailing address serviced by the United States Postal Service. Ryan's ability to cite the Federal Rules of Civil Procedure and other legal sources suggests he has the wherewithal to understand he is required to use an appropriate mailing address. While pro se litigants are afforded a reasonable amount of latitude, the latitude may not be so wide as to prejudice the other party. *Wittich Law Firm, P.C. v. O'Connell*, ¶ 26, 2013 MT 122, 370 Mont. 103, 304 P.3d 375. Pro se litigants are expected to adhere to procedural rules. *O'Connell*, ¶ 26.

Ryan argues the State of Oregon does not recognize common law marriage and further argues he and Jesse do not have a domestic partnership. However, the issue of whether Ryan and Jesse have a domestic partnership or if other equitable grounds exist to dissolve their relationship is an issue squarely before the Circuit Court in Multnomah County, Oregon. The State of Oregon has jurisdiction over the parties, the issues and the subject matter related to whether a domestic partnership exists. This Court should defer to the decision of the Circuit Court in that regard.

Exhibit 12 p. 002

Ryan has engaged in substantial harassment of Jesse and his Oregon attorney and staff. Ryan has engaged in similar harassment of the undersigned. As an example, please review **Exhibit 2** attached hereto, which is a true and correct copy of an email string between Ryan and the undersigned. In his email, Ryan disparages the undersigned's physical appearance and professionalism while copying Jesse and paralegals from the Law Office of Kai Groenke and Nelson & Nelson law firm in Oregon. He also "accidentally" copied an attorney from another law firm. On page six of his Answer Brief, Ryan suggests, "M/r/s. Groenke, P.C., should be referred to the criminal division of the Court and the Montana State Bar Association for perjury charges before this court…" On page 8 of his Answer Brief, he suggests "criminal perjury charges, disciplinary measures and sanctions against M/r/s. Groenke and Defendant can be recommended/ordered by this Court…" On page 10 of his Answer Brief, Ryan rails on about "Defendant's wholly unqualified attorneys, who seem to have no ability to properly interpret what they are reviewing, and ultimately have no business practicing law in any jurisdiction for law of intellectual capability, and more importantly, lack of personal and professional integrity." By the end of this litigation, Jesse will most likely be filing a motion under Rule 11, M.R.Civ.P. because Ryan seems unable to help himself from communicating in a scathing manner without regard to relevant facts or law.

Ryan argues he is not a resident of Portland, Oregon. However, he is currently residing in the home the parties shared in Portland. His property tax address listed on the Blacktail Road property is 5721 SW Salmon Street, Portland, Oregon, 97221. The Property Record Card for the Blacktail Road property showing Ryan's address in Oregon is attached to Ryan's Brief in Support of Motion to Dismiss as Exhibit 1. Attached hereto as **Exhibit 3** is the current Flathead

Exhibit 12 p. 003

County Property Tax bill also showing Ryan's Oregon address as the mailing address for important property tax documents for the Blacktail Road property. Ryan appears to be a resident of Oregon. However, whether Ryan is or is not a resident of Oregon is irrelevant to whether this partition action should be dismissed, especially since the State of Oregon has already obtained jurisdiction over the parties in the Oregon domestic partnership action.

Ryan alleges that Jesse made a false statement of the timeline of document filings. The record speaks for itself. Attached hereto as **Exhibit 4** is a court-stamped copy of the Petition filed in the Circuit Court of the State of Oregon, Multnomah County, in Cause No. 22DR94942 filed on March 21, 2022 at 3:33 p.m. The Complaint in this matter is date-stamped June 6, 2022 at 2:29 p.m. It is irrelevant whether Ryan filed the Oregon partition action or Jesse filed the Oregon domestic partnership action first, because it is undisputed that Ryan was personally served with the Petition for Dissolution of the domestic partnership *before* Jesse was served with the Complaint in the Oregon partition action. Affidavit of Jesse Olsen, ¶¶ 6-7 (May 8, 2023). Moreover, the partition claim filed by Ryan in Oregon has been consolidated with the domestic partnership action under Cause No. 22DR94942 so the date of filing the partition action in Oregon is of zero relevance to this partition action in Montana as the partition action no longer exists as a separate cause of action from the domestic partnership action.

The remainder of Ryan's claims in his Answer Brief are irrelevant, inaccurate, nonsensical, and histrionic. It would be a waste of this Court's time to consider any further discussion of same. There is no legitimate legal issue as to whether the Circuit Court of Multnomah County, Oregon has jurisdiction over the parties, the issues and the subject matter related to the equities between the parties, including but not limited to the equitable division of

Exhibit 12 p. 004

their real properties in Oregon and Montana.  The doctrine of comity allows this Court to defer to the Circuit Court in Oregon to determine the rights and obligations of the parties.  Ryan is clearly attempting to split what should be a single cause of action into more than one lawsuit, wasting judicial resources, needlessly increasing the cost of litigation and risking inconsistent judgments.  The Court should dismiss Ryan's Complaint filed in DV-22-605 on the basis of comity, or in the alternative should stay this proceeding until a final judgment is entered in the Oregon case.

DATED this 31st day of May, 2023.

LAW OFFICE OF KAI GROENKE, P.C.


By:    _/s/ Kai Groenke_
          Attorneys for Defendant

Exhibit 12 p. 005

**From:**        Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:**        Thursday, June 1, 2023 3:21 PM
**To:**          Melissa Smith; Kai Groenke
**Cc:**          jesse.olsen@nike.com; jesse.m.olsen@gmail.com
**Subject:**     Re: Gabriel / Olsen; Flathead County, MT
**Attachments:** Flathead Electric Cooperative SmartHub - Usage Explorer.pdf; Flathead_Electric_2023_01
                 _5_1825014.pdf

Further to the below, attached are bills and usage readings from Flathead Electric.

 Before you choose which crime (/perjurious statement) you have committed that will cause the revocation of your license to practice law in Montana, and which perjurious statement will serve as the predicate for a forthcoming tortious interference lawsuit brought by Zurc Capital, LLC - a multi-member Wyoming LLC - against your practice, you ought to contemplate the implications of these energy usage bills.

 Personally, if I were you, I would recommend admitting the perjurious claims that Ryan Gabriel "lives" in Portland, OR is a knowing lie, given how much time and energy you have spent billing Jesse and his ailing mother to demonstrate the importance of 'comity' and 'good faith' in the context of your vexatious, unscrupulous lawfare tactics.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 06/01/2023 4:31 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kai,'

In the same legal filing you are declaring under oath:

a) Ryan Gabriel lives in Portland

b) Kai Groenke attempted in good faith to confer with Ryan Gabriel via USPS snail mail using the Montana address

Which mutually exclusive statement would you prefer I select to argue you have committed perjury before the court?

Forgive me for the awkward question, but I can only argue one of the two is a knowing lie, and only you can tell me which one.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

Exhibit 13 p. 001

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/31/2023 5:13 PM EDT Melissa Smith <melissa@familylawflathead.com> wrote:

Hi Ryan,

We filed the attached Reply Brief with the Court today and mailed a copy to your Lakeside address as the Rules of Civil Procedure requires of us. The attached copy is being provided to you as a courtesy. If you wish to receive all correspondence from this office, including copies of documents filed with the Court, exclusively by email, please respond to this email confirming same.

Thanks,

*Melissa C. Smith*

*Paralegal*

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT 59901

Tel: (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com

Click here to send me a secure email

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the*

Exhibit 13 p. 002

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Thursday, June 1, 2023 9:39 PM |
| **To:** | Melissa Smith; Kai Groenke |
| **Cc:** | jesse.olsen@nike.com; jesse.m.olsen@gmail.com |
| **Subject:** | Re: Gabriel / Olsen; Flathead County, MT |

Kai,

Further to the below, I just noticed this curious and amusing inclusion in your recent court filing:

"In his email, Ryan disparages the undersigned's physical appearance and professionalism while copying Jesse and paralegals from the Law Office of Kai Groenke and Nelson & Nelson law firm in Oregon. He also "accidentally" copied an attorney from another law firm."

...

"On page 10 of his Answer Brief, Ryan rails on about "Defendant's wholly unqualified attorneys, who seem to have no ability to properly interpret what they are reviewing, and ultimately have no business practicing law in any jurisdiction for law of intellectual capability, and more importantly, lack of personal and professional integrity.""

...

Here it is noteworthy that the object of my critique is your digital photo editor, which could only be made possible by the assumption there was nothing objectively wrong with subject of the photograph as taken (you).

But your projected insecurities are remarkable, and once noticed they cannot be un-noticed - even by a judge.

Typically, a professional would not bill a paying client to ease their own internal emotional struggles. Instead, a professional would typically hire a qualified psychiatrist, and the psychiatrist would in turn invoice the professional.

What is even more remarkable is that this acute error of observation and logic on your part was made in the context of offense taken at my entirely appropriate assertion of your intellectual incompetence, which is highlighted in painfully vivid color in the above quoted paragraph.

I dare say, here you are setting yourself up to be the Taylor Lorenz of the Montana legal community to their endless entertainment, and therefore the moniker is sure to stick:

https://greenwald.substack.com/p/your-top-priority-is-the-emotional

From the above, a selected caption: "The front-page reporter, Taylor Lorenz, recently of *The New York Times* and now *The Washington Post*, uses the skills she learned growing up in Old Greenwich, Connecticut and while being educated at Greenwich High School and absolutely lovely boarding schools in the Swiss Alps to express, on NBC News' *Meet the Press Daily*, the trauma and victimization she endures from critics of her journalism: journalism which she has often weaponized to destroy the lives of many powerless people including teenagers, on April 1, 2022 (credit: MSNBC)"

Exhibit 13 p. 003

Cheers,

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 06/01/2023 5:20 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Further to the below, attached are bills and usage readings from Flathead Electric.

Before you choose which crime (/perjurious statement) you have committed that will cause the revocation of your license to practice law in Montana, and which perjurious statement will serve as the predicate for a forthcoming tortious interference lawsuit brought by Zurc Capital, LLC - a multi-member Wyoming LLC - against your practice, you ought to contemplate the implications of these energy usage bills.

Personally, if I were you, I would recommend admitting the perjurious claims that Ryan Gabriel "lives" in Portland, OR is a knowing lie, given how much time and energy you have spent billing Jesse and his ailing mother to demonstrate the importance of 'comity' and 'good faith' in the context of your vexatious, unscrupulous lawfare tactics.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 06/01/2023 4:31 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kai,'

In the same legal filing you are declaring under oath:

a) Ryan Gabriel lives in Portland

b) Kai Groenke attempted in good faith to confer with Ryan Gabriel via USPS snail mail using the Montana address

Which mutually exclusive statement would you prefer I select to argue you have committed perjury before the court?

Exhibit 13 p. 004

Forgive me for the awkward question, but I can only argue one of the two is a knowing lie, and only you can tell me which one.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/31/2023 5:13 PM EDT Melissa Smith <melissa@familylawflathead.com> wrote:

Hi Ryan,

We filed the attached Reply Brief with the Court today and mailed a copy to your Lakeside address as the Rules of Civil Procedure requires of us. The attached copy is being provided to you as a courtesy. If you wish to receive all correspondence from this office, including copies of documents filed with the Court, exclusively by email, please respond to this email confirming same.

Thanks,

*Melissa C. Smith*

*Paralegal*

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT 59901

Tel: (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com

Exhibit 13 p. 005

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Friday, June 30, 2023 8:25 PM |
| **To:** | Kai Groenke; Melissa Smith |
| **Cc:** | jesse.olsen@nike.com; jesse.m.olsen@gmail.com |
| **Subject:** | Fwd: Olsen v. Gabriel 22DR04942 |
| **Attachments:** | Order Granting Motion from 63023 hearing.pdf; SvetkeyS_20230620-0945_01d9a35bf6a1a380.trm; SvetkeyS_20230620-0950_01d9a35ca97731a0.trm; Merrick_Garland.jpg |

Kai,

FYI.

You're next.

 The forthcoming tortious interference (with a contract) lawsuits, filed in Wyoming, are going to be something you should start considering.

Then, appeals court, then SCOTUS to overturn Beal v. Beal and its demented, activist progeny.

 Then, RICO civil suits for all unscrupulous, opportunistic attorneys who have no earthly idea what they are getting themselves into, yet who bill handsomely for their frivolous decadence. You may have read the news today.

My national attorneys, licensed to practice in Washington, California, Maryland, New York and Washington, DC, have mapped this all out.

Savor the opportunity, and the expense.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

Exhibit 14 p. 001

**IN THE DISTRICT COURT OF THE STATE OF MONTANA**

**FOR THE COUNTY OF FLATHEAD**

DANNI COFFMAN

| | | |
|---|---|---|
| RYAN DEAN GABRIEL | ) | Case No. DV-23-186 |
| Plaintiff, | ) | COMPLAINT (TORTIOUS INTERFERENCE WITH A CONTRACT) |
| vs. | ) | |
| ROSCOE C. NELSON, JR. /DBA NELSON & NELSON, | ) | |
| Defendant. | ) | |

PARTIES

1.   Plaintiff, Ryan Dean Gabriel (hereinafter referred to as 'Mr. Gabriel') at all times relevant hereto, is an individual residing at 2000 Blacktail Road, Lakeside, Montana 59922.

2.   A third party, Zurc Capital, LLC (hereinafter referred to as 'Zurc') at all times relevant hereto, is a duly formed limited liability corporation of the State of Wyoming, located at 20 N. Gould Street, Suite N, Sheridan, Wyoming 82801.

3.   The Defendant, Roscoe C. Nelson, Jr. (hereinafter referred to as 'Mr. Nelson'), doing business as sole proprietorship 'Nelson & Nelson', at all times relevant hereto, is:

   (a)   a non-incorporated business (sole proprietorship) doing business under the laws of the State of Oregon, the assumed name certificate for which has been revoked since February 23, 2023, and which asserts authorization to do business as a foreign corporation in this State of Montana, and thus is subject to service of process pursuant to the laws of the State of Montana.

Exhibit 15 p. 001

(b)     an adult citizen of the State of Oregon who resides at 2903 SW Fairview

Boulevard, Portland, Oregon 97205 and is subject to service of process pursuant

to the laws of the State of Montana, due to Mr. Nelson's systematic and

continuous activity in Flathead County, Montana, the cause of action (tortious

interference) arising from that activity. (*See* International Shoe Co. v.

Washington, 326 U.S. 310 (1945).

## FACTS

On or about April 1, 2021, the Plaintiffs entered into a written contract, a copy of which

is attached hereto, made a part hereof, and is marked as Exhibit A (hereinafter referred to as the

'Contract'). Said contract provides that the laws of the State of Montana shall govern the

Contract.

Pursuant to the Contract, Plaintiff Zurc Capital, LLC entered an agreement with Plaintiff

Mr. Gabriel to serve as the Property Manager for an AirBNB rental located at 2000 Blacktail

Road, Lakeside, MT 59922. Among other things, the contract stipulates: "The Property

Manager shall manage, operate and maintain the Project in a commercially reasonable manner

for the tenants thereof, subject to (a) applicable governmental requirements and (b) the terms and

provisions of this Agreement. At the expense of the Property Owner, the Property Manager shall

keep the Project clean and in good repair, and shall order and supervise the completion of such

repairs as may be required, provided that the Property Owner, in a manner reasonably

satisfactory to the Property Manager, makes available to the Property Manager sufficient sums to

pay the costs thereof."

On or about March 15, 2023 the Defendant Mr. Nelson breached the Contract by filing a

bogus marriage dissolution lawsuit in the State of Oregon, claiming jurisdiction over Mr.

Gabriel's property in Montana, though Oregon is not a community property state and there is no

COMPLAINT (TORTIOUS INTERFERENCE WITH CONTRACT) 11ᵗʰ Judicial District – *Pro se* Civil Complaint

Exhibit 15 p. 002

1    registered marriage to be dissolved in Montana or elsewhere. Mr. Nelson has stated through the

2    lawsuit and directly to the Plaintiff Mr. Gabriel in writing that he intends to evict Mr. Gabriel

3    from his property at 2000 Blacktail Road in Lakeside, MT and liquidate (force a sale of the

4    property using the forementioned spurious lawsuit in Oregon) without Plaintiff Mr. Gabriel's

5    consent or negotiated participation, thus substantially interfering with the property management

6    Contract between Zurc Capital, LLC and Mr. Gabriel, leading to a substantive and costly breach

7

8    of the same.

9        Plaintiff has performed all conditions precedent to recovery and has not excused

10    Defendant's non-performance or breach of the Contract.

11 CLAIMS

12    1.      The Defendant's acts delineated hereinabove were willful and intentional.

13

14    2.      The Defendant's acts delineated hereinabove were done with the unlawful

15           purpose of causing damage and loss to the Plaintiff.

16    3.      The Defendant's acts delineated hereinabove were calculated to cause loss and

17           damage to Plaintiff Mr. Gabriel in his/her lawful business or undertakings.

18    4.      The Defendant's acts delineated hereinabove proximately caused Plaintiffs Mr.

19           Gabriel and Zurc Capital, LLC combined contractual damages of $37,817.10 to

20

21           date.

22 DEMAND FOR RELIEF

23    WHEREFORE, the Plaintiffs pray for the following relief:

24    1.      Trial by jury;

25    2.      Judgment for Plaintiffs and against the Defendant;

26

27

28

3. An award of damages in an amount which will fully and fairly compensate Plaintiff for loss of contract revenue of $37,817.10.

4. Reasonable attorney fees, costs and expenses.

5. Such other and further relief as may be deemed just and proper in the premises.

DATED this 10th Day of July, 2023.

Plaintiff, Pro Se (signature)

Ryan D. Gabriel

2000 Blacktail Rd. #1140
Lakeside, MT 59922

(206) 391.9886 (m.)
Telephone



# PROPERTY MANAGEMENT AGREEMENT

This PROPERTY MANAGEMENT AGREEMENT (the "Agreement") is effective as of April 1, 2021 (the "Effective Date") by and between Zurc Capital, LLC a Wyoming limited liability company (the "Property Management Co.") and Ryan D. Gabriel, owner (the "Property Owner") of 2000 Blacktail Road, Lakeside, MT 59922 which consists of 2 detached, wholly autonomous single-family home (cabin) units located at that address, and as more particularly described in <u>Exhibit "1"</u> attached hereto.

The Property Owner desires to engage the Property Manager to supervise, manage, lease, operate, and maintain the Project.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Commencement and Termination Dates.</u>

      1.1 <u>Commencement and Termination.</u> The Property Manager's duties and responsibilities under this Agreement shall begin on the Effective Date.

      1.2 <u>Termination.</u> This Agreement shall terminate on the earlier of: (i) the sale of the Project or (ii) April 1, 2025, which may be automatically extended for up to 4 additional 1 year periods barring the objection of either party. Notwithstanding the above, the Property Owner and the Property Manager may elect to extend this Agreement beyond the term set forth above by mutual written agreement.

2. <u>Property Manager's Responsibilities.</u>

      2.1 <u>Status of the Property Manager.</u> The Property Owner and the Property Manager do not intend to form a joint venture, partnership or similar relationship. Instead, the parties intend that the Property Manager shall act solely in the capacity of an independent contractor for the Property Owner. Nothing in this Agreement shall cause the Property Manager and the Property Owner to be joint venturers or partners of each other, and neither shall have the power to bind or obligate the other party by virtue of this Agreement, except as expressly provided in this Agreement. Nothing in this Agreement shall deprive or otherwise affect the right

Exhibit 15 p. 005

of the parties to this Agreement to own, invest in, manage or operate, or to conduct business activities that compete with the business of the Project.

2.2   Management. The Property Manager shall manage, operate and maintain the Project in a commercially reasonable manner for the tenants thereof, subject to (a) applicable governmental requirements and (b) the terms and provisions of this Agreement. At the expense of the Property Owner, the Property Manager shall keep the Project clean and in good repair, and shall order and supervise the completion of such repairs as may be required, provided that the Property Owner, in a manner reasonably satisfactory to the Property Manager, makes available to the Property Manager sufficient sums to pay the costs thereof.

2.3   Employees/Independent Contractors of Property Manager. The Property Manager shall employ, directly or through third party contractors (e.g. employee leasing company) employees and/or independent contractors to enable the Property Manager to manage, operate and maintain the Project. All matters pertaining to the supervision of such employees and independent contractors shall be the responsibility of the Property Manager. All salaries, benefits and positions of employees who perform work in connection with the Project shall be consistent with the Budget (as defined in Section 2.5).

2.4   Compliance with Laws, Mortgages and Other Matters.

2.4.1   The Property Manager shall comply with all applicable local, state and federal laws (collectively "Laws"). The Property Manager may implement such procedures with respect to the Project as the Property Manager may deem advisable for the efficient and economic management and operation thereof. The Property Manager shall pay from the Operating Account (defined in Section 6.1) expenses incurred to remedy violations of Laws. However, the Property Manager shall not be obligated to remedy any violations of Law if sufficient funds are not available in the Operating Account or if the Property Owner does not provide sufficient additional funds to do so.

2.4.2   The Property Manager shall furnish to the Property Owner, promptly after receipt, any notice of violation of any material Laws issued by any governmental entity or any notice of termination or cancellation of any insurance policy.

2.4.3   The Property Manager shall use commercially reasonable efforts to comply with the Loan Documents. The Property Manager shall furnish to the Property Owner, promptly after receipt, any notices of default received from a Lender. The Property Owner shall furnish to the Property Manager, promptly after receipt, any notices of default received from a Lender.

2.5   Budgets.

2.5.1   The Property Manager shall prepare and submit to the Property Owner annually an annual capital and operating budget ("Budget") for the promotion, operation, leasing, repair, maintenance and improvement of the Project for each calendar year. The Budget for the initial calendar year, preapproved by the Property Owner, is attached hereto as Exhibit "B" and incorporated herein by this reference. The Property Manager shall deliver the Budget for each subsequent calendar year on or prior to December 1st of the calendar year before the budget year, or as soon as possible thereafter. The Property Owner shall have thirty (30) days after delivery of the Budget to approve or disapprove of the Budget. The Property Owner agrees to use its best

EXHIBIT A
PAGE 2 OF 14

Exhibit 15 p. 006

efforts to approve the Budget. If the Property Owner does not disapprove of the Budget (which disapproval shall be in writing to the Property Manager), or any item therein, within such thirty (30) day specified response period described above, the Property Owner shall have been deemed to have approved the Budget. In the event the approval is not obtained, the Property Owner shall negotiate in good faith with the Property Manager for fifteen (15) days to resolve the issue. If the parties are unable to reach an agreement, the issue shall be resolved by arbitration as set forth in Section 13.5 with the Property Owner on the one hand, and the Property Manager on the other hand; the costs of the arbitration shall be paid by the Project. The Property Manager may proceed under the terms of the proposed Budget for items that are not objected to and may take any action with respect to Permitted Expenditures (as defined in Section 2.5.2 below). In the event that the items that are objected to are operational expenditures, as opposed to capital expenditures, the Property Manager shall be entitled to operate the Project using the prior year's Budget for such items plus five percent (5%) until approval is obtained. The Property Manager may at any time submit a revised Budget to the Property Owner for its approval, which will be governed by the terms of this Section 2.5.1 and shall continue to operate the Project under the previously approved Budget until the revised Budget is approved. The Property Manager shall provide the Property Owner with such information regarding the Budget as may be, from time to time, reasonably requested by the Property Owner.

2.5.2   The Property Manager shall charge all expenses to the proper account as specified in the Budget, provided that the Property Manager may reallocate savings from one line item to other line items for the benefit of the Property Owner. The Property Manager shall submit (subject to the same procedures as set forth in Section 2.5.1) a revised Budget to the Property Owner before making any expenditure not within the Budget unless the expenditure is (a) less than $25,000, or (b) is, in the Property Manager's reasonable judgment, required to avoid personal injury, significant property damage, a default under any loan encumbering the Project, a violation of applicable Law or the suspension of a service (collectively, "Permitted Expenditures").

2.5.3   During each calendar year, in the regular monthly reports sent to the Property Owner, the Property Manager shall inform the Property Owner of any material increases in costs and expenses not foreseen and not included in the Budget within a reasonable time after the Property Manager learns of such changes.

2.5.4   Any controversy arising out of or related to any dispute regarding the Budget as set forth in Section 2.5.1 shall be settled by binding arbitration as provided in Section 13.5.

2.6   Leasing.

2.6.1   The Property Owner hereby approves all Leases, as defined in Section 2.6.2 presently in effect on the date hereof and the Property Manager's standard lease form, a copy of which is attached hereto and incorporated herein as Exhibit C.

2.6.2   The Property Manager shall use commercially reasonable efforts to obtain tenants for all leasable space in the Project and to renew leases and rental agreements (collectively, "Leases") as provided herein. The Property Manager shall have the authority to negotiate and execute new and renewal Leases on behalf of the Property Owner. In connection with its leasing efforts, the Property Manager may advertise the Project for lease.

EXHIBIT A
PAGE 3 OF 14

Exhibit 15 p. 007

2.6.3   The Property Manager shall not, without the prior written approval of the Property Owner, give free rental or discounts or rental concessions to any employees, officers or shareholders of the Property Manager or anyone related to such employees, officers or shareholders unless such discounts or concessions are disclosed in the Budget or are in lieu of salaries or other benefits to which they would be contractually entitled. The Property Manager shall not lease any space in the Project to itself or to any of its affiliates or subsidiaries.

2.6.4   The Property Manager shall reasonably investigate all prospective tenants, and shall not rent to persons not meeting credit standards reasonable for the market. The Property Manager may, in its discretion, obtain a credit check for all prospective tenants through LexisNexis or a similar service. The Property Manager shall retain such information for the duration of the tenancy, and shall make it available to the Property Owner upon reasonable notice, subject to compliance with any confidentiality restrictions required by any credit check company and any applicable Laws. The Property Manager does not guarantee the accuracy of any such information or the financial condition of any tenant.

2.6.5   The Property Manager is hereby authorized to execute any and all subordination and non-disturbance agreements, tenant estoppel certificates and tenant notices with respect to the Project, and any and all property tax declaration forms with respect to the acquisition of the Project.

2.7   Collection of Rents and Other Income. Unless otherwise required by any Loan Documents affecting the Project, the Property Manager shall bill all tenants and shall use its commercially reasonable efforts to collect all rent and other charges due and payable from any tenant or from others for services provided in connection with the Project. The Property Manager shall deposit all monies so collected in the Operating Account as defined in Section 6.1.

2.8   Repairs and Maintenance. The Property Manager shall maintain the buildings, appurtenances and common areas of the Project other than areas that are the responsibility of the tenants, including, without limitation, all repairs, cleaning, painting, decorations and alterations, for example electrical, plumbing, carpentry, masonry, elevators and such other routine repairs as are necessary or reasonably appropriate in the course of maintenance of the Project (subject to the limitations of this Agreement). The Property Manager shall pay actual and reasonable expenses for materials and labor for such purposes from the Operating Account.

2.9   Capital Expenditures. The Property Manager, on behalf of the Property Owner, may make any capital expenditure within any Budget approved by the Property Owner without any further consent, provided that the Property Manager follows the bidding procedures prescribed below. All other capital expenditures (other than Permitted Expenditures) shall be subject to submittal of a revised Budget to the Property Owner. Unless the Property Owner specifically waives such requirements, or approves a particular contract, the Property Manager shall award any contract for a capital improvement exceeding $50,000 in cost on the basis of competitive bidding, solicited from a minimum of two (2) written bids. The Property Manager shall accept the bid of the lowest bidder determined by the Property Manager to be responsible, qualified and capable of completing such improvements on a reasonable schedule.

2.10   Service Contracts, Supplies and Equipment.

Exhibit 15 p. 008

2.10.1   The Property Manager, on behalf of the Property Owner, may enter into or renew any contract for cleaning, maintaining, repairing or servicing the Project or any of the constituent parts of the Project (including but not limited to contracts for utilities, security or other protection, extermination, landscaping, architectural or engineering services) without the further consent of the Property Owner. Each service contract shall (a) be in the name of the Property Owner or the Property Manager as agent of the Property Owner, (b) be assignable to a successor owner of the Project, and (c) be for a term not to exceed one year unless the circumstances require otherwise in the sole discretion of the Property Manager.

2.10.2   If this Agreement terminates pursuant to Section 10, the Property Manager shall assign to the Property Owner or the nominee of the Property Owner all of the Property Manager's interest in the service agreements pertaining to the Project or otherwise terminate such service agreements as directed by the Property Owner to the extent the Property Manager and/or Property Owner has the authority to terminate such service agreements.

2.10.3   At the expense of the Property Owner, the Property Manager shall purchase, provide, and pay for any needed janitorial and maintenance supplies, tools and equipment, restroom and toilet supplies, light bulbs, paints, and similar supplies necessary to operate and maintain the Project. Any interest in such supplies and equipment shall be the property of the Property Owner. All such supplies, tools, and equipment generally shall be delivered to and stored at the Project and shall be used only in connection with the management, operation, and maintenance of the Project.

2.10.4   The Property Manager shall use reasonable efforts to purchase all goods, supplies or services at the lowest cost reasonably available from reputable sources.

2.11   Taxes and Mortgages. The Property Manager, unless otherwise requested, shall obtain and verify bills for real estate and personal property taxes, general and special real property assessments and other like charges (collectively "Taxes") which are, or may become, liens against the Project and appeal such Taxes as the Property Manager may decide, in its reasonable judgment, to be prudent. The Property Manager shall report any such Taxes that materially exceed the amounts contemplated by the Budget to the Property Owner prior to the Property Manager's payment thereof. The Property Manager, if requested by the Property Owner, will prepare an application for correction of the assessed valuation (in cooperation with the Property Owner) to be filed with the appropriate governmental agency. The Property Manager shall pay, within the time required to obtain discounts, from funds provided by the Property Owner or from the Operating Account, all utilities, Taxes and payments due under each lease, mortgage, deed of trust or other security instrument, if any, affecting the Project. To the extent contemplated by the Budget (as may be revised from time to time), the Property Manager may make any such payments and pay customary rates to tax professionals for related tax services without the additional approval of the Property Owner.

2.12   Miscellaneous Duties. The Property Manager shall (a) maintain at the Property Manager's office address as set forth in Section 12.1 or at the Project, and readily accessible to the Property Owner, orderly files containing rent records, insurance policies, Leases and subleases, correspondence, receipted bills and vouchers, bank statements, canceled checks, deposit slips, debit and credit memos, and all other documents and papers pertaining to the Project or the operation thereof; (b) provide information about the Project necessary for the preparation and filing by the Property Owner of its income or other tax returns required by any governmental authority, including annual statements,; (c) consider and record

EXHIBIT A
PAGE 5 OF 14

Exhibit 15 p. 009

tenant service requests in systematic fashion showing the action taken with respect to each; (d) supervise the moving in and out of tenants and, if permitted under the Leases and known to the Property Manager, subtenants; arrange, to the extent possible, the dates thereof to minimize disturbance to the operation of the Project and inconvenience to other tenants; and render an inspection report, an assessment for damages and a recommendation on the disposition of any deposit held as security for the performance by the tenant under its lease with respect to each premises vacated; (e) check all bills received for the services, work and supplies ordered in connection with maintaining and operating the Project and, except as otherwise provided in this Agreement, pay such bills when due and payable; and (f) not knowingly permit the use of the Project for any purpose that might void any policy of insurance held by the Property Owner or that might render any loss thereunder uncollectible. All such records are the property of the Property Owner and will be made available to the Property Owner upon request.

3. Insurance.

    3.1 Insurance.

        3.1.1 The Property Manager, at the Property Owner's expense, will, to the extent available at commercially reasonable rates, obtain and keep in force (or require the tenants under the Leases to obtain and keep in force) adequate insurance against physical damage (such as fire with extended coverage endorsement, boiler and machinery) and against liability for loss, damage or injury to property or persons that might arise out of the occupancy, management, operation or maintenance of the Project, as contemplated by the Budget and any Loan Documents affecting the Project. Such insurance shall be obtained for the Property Owner and shall include the Property Owner as a named insured. The Property Manager shall not be required to obtain terrorism, earthquake or flood insurance unless required by the Loan Documents or otherwise expressly directed to do so by a specific written notice from the Property Owner, but may do so in the Property Manager's reasonable discretion. The Property Manager shall be a named insured on all property damage insurance and an additional insured on all liability insurance maintained with respect to the Project. In the event the Property Manager receives insurance proceeds for the Project, the Property Manager will take any required actions as set forth in any Loan Documents affecting the Project. In the event that the Property Manager receives insurance proceeds that are not governed by the terms of any Loan Documents affecting the Project, the Property Manager will either (i) use such proceeds to replace, repair or refurbish the Project or (ii) distribute such proceeds to the Property Owner, as directed by the Property Owner. Any insurance proceeds distributed to the Property Owner will be distributed subject to any fees owed by the Property Manager pursuant to this Agreement. The foregoing notwithstanding, in all events the Property Manager will obtain on behalf of the Property Owner, at the Property Owner's expense, all applicable insurance coverage as may be required by the terms of any Loan Documents.

        3.1.2 The Property Owner acknowledges that the Property Manager is not a licensed insurance agent or insurance expert. Accordingly, the Property Manager shall be entitled to rely on the advice of a reputable insurance broker or consultant regarding the proper insurance for the Project.

        3.1.3 Subject to the provisions of any Loan Documents, the Property Manager shall investigate and submit, as soon as reasonably practicable, any required reports to the insurance carrier as to all accidents, claims for damage relating to the ownership, operation and maintenance of the Project, any damage to or destruction of the Project and the estimated costs of repair thereof. Subject to the provisions of any Loan

EXHIBIT A
PAGE 6 OF 14

Exhibit 15 p. 010

Documents, the Property Manager shall settle all claims, including the execution of proofs of loss, the adjustment of losses, signing and collection of receipts and collection of money.

       3.2  <u>Contractor's and Subcontractor's Insurance</u>. The Property Manager shall require all contractors and subcontractors entering upon the Project to perform services to have insurance coverage at the contractor's or subcontractor's expense, in the following minimum amounts or such other amounts as may be required under the terms of any Loan Documents: (a) worker's compensation – statutory amount; (b) employer's liability (if required) - $500,000; and (c) comprehensive general liability insurance, including comprehensive auto liability insurance covering the use of all owned, non-owned and hired automobiles, with bodily injury and property damage limits of $750,000 per occurrence. The Property Manager may waive such requirements in its reasonable discretion. The Property Manager shall obtain and keep on file a certificate of insurance which shows that each contractor and subcontractor is so insured.

       3.3  <u>Waiver of Subrogation</u>. To the extent available at commercially reasonable rates, all property damage insurance policies required hereunder shall contain language whereby the insurance carrier thereunder waives any right of subrogation it may have with respect to the Property Owner or the Property Manager.

   4.  <u>Bank Accounts</u>.

       4.1  <u>Operating Account</u>. To the extent funds are not required to be placed in a lockbox pursuant to any Loan Documents affecting the Project, the Property Manager shall deposit all rents and other funds collected from the operation of the Project in a reputable bank or financial institution in a special trust or depository account or accounts for the Project maintained by the Property Manager for the benefit of the Property Owner. The Property Manager shall maintain books and records of the funds deposited in the accounts and withdrawals therefrom (such accounts together with any interest earned thereon, shall collectively be referred to herein as the "Operating Account"). The Property Manager shall maintain, with funds from the Property Owner, the Operating Account so that an amount at least as great as the budgeted expenses for such month is in such Operating Account as of the first of each month. The Property Manager shall pay from the Operating Account, on behalf of the Property Owner, the operating expenses of the Project and any other payments relating to the Project as required by this Agreement. If more than one account is necessary to operate the Project, each account shall have a unique name, except to the extent any Lender requires sub-accounts within any account. All rents and other funds collected in the Operating Account after payment of all operating expenses, debt service and such amounts as may be reasonably determined by the Property Manager to be retained for reserves or improvements, shall, unless otherwise provided by any Loan Documents, be paid to the Property Owner.

       4.2  <u>Access to Account</u>. As authorized by signature cards, representatives of the Property Manager shall have access to and may draw upon all funds without the approval of the Property Owner. Additionally, representatives of the Property Manager shall have access to and may draw upon any funds escrowed or held in reserve for capital expenditures without the approval of the Property Owner, provided that the requirements of Section 2.9 and any additional Lender requirements with respect to such amounts are satisfied. The Property Owner may not withdraw funds from such accounts without the Property Manager's prior written consent, except following the Property Manager's default after expiration of any applicable notice and cure periods or the termination of this Agreement.

EXHIBIT A<br>PAGE 7 OF 14

Exhibit 15 p. 011

7. Payment of Expenses.

7.1 Costs Eligible for Payment from Operating Account. The Property Manager shall pay all expenses of the operation, maintenance and repair of the Project contemplated by the Budget directly from the Operating Account or shall be reimbursed by the Property Owner, subject to the conditions set forth in Section 2.5, including the following to the extent applicable: (a) costs of the gross salary and wages or proportional shares thereof, payroll taxes, payroll processing fees, worker's compensation insurance, employee education, training and certification and all other benefits of employees (for example, on-site personnel) required to manage, operate and maintain the Project properly, adequately, safely and economically, subject to this Agreement, provided that the Property Manager shall not pay such employees in advance; (b) cost to comply with the terms of any Loan Documents and/or to correct the violation of any governmental requirement relating to the leasing, use, repair and maintenance of the Project, or relating to the Laws, if such cost is not the result of the Property Manager's gross negligence fraud or willful misconduct; (c) actual and reasonable cost of making all repairs, decorations and alterations if such cost is not the result of the Property Manager's gross negligence or willful misconduct; (d) cost incurred by the Property Manager in connection with all service agreements; (e) cost of collection of delinquent rents collected by a collection agency or attorney; (f) legal support fees and reasonable legal fees of attorneys for the costs of services otherwise provided herein; (g) cost of capital expenditures subject to the restrictions in Section 2.9 and in this Section; (h) cost of printed checks for each account required for the Project and the Property Owner; (i) cost of utilities and costs associated with utility billing; (j) cost of advertising, marketing and resident surveys; (k) cost of printed forms and supplies required for use at the Project; (l) management compensation set forth in Section 9; (m) the cost of tenant improvements to the Project subject to the restrictions in Section 2.9 and this Section 7.1; (n) all hiring, relocation and termination costs for any employees whose salaries and benefits are paid by the Property Owner; (n) brokers' commissions; (o) debt service; (p) the cost of utilities, services, contractors and insurance; (q) reimbursement of the Property Manager's out-of-pocket costs and expenses to the extent not prohibited by Section 8; (r) general accounting and reporting services within the reasonable scope of the Property Manager's responsibility to the Property Owner; (s) cost of forms, papers, ledgers, postage and other supplies and equipment (including computer equipment) used in the Property Manager's office at any location;(t) computer/information technology (IT) support and the cost of electronic data processing equipment, including personal computers located at the Property Manager's office at the Project for preparation of reports, information and returns to be prepared by the Property Manager under the terms of this Agreement; (u) cost of electronic data processing provided by computer service companies for preparation of reports, information and returns to be prepared by the Property Manager under the terms of this Agreement, including but not limited to any costs associated with Yardi or similar property management software; (v) travel and entertainment expenses intended to advance the interests of the Project; and (w) cost of routine travel by the Property Manager's employees or agents to and from Project. In the alternative, the Property Manager may charge a monthly flat fee for the above services, which flat fee is subject to the approval of the Property Owner. All other amounts not directly related to the Project or the Property Owner shall be payable solely by the Property Manager, and shall not be paid out of the Operating Account or reimbursed by the Property Owner.

7.2 Operating Account Deficiency. If there are not sufficient funds in the Operating Account (or any reserve account held by the Lender) to make any required payment, the Property Manager shall notify the Property Owner, if possible, at least ten (10) days prior to any such delinquency so that the Property Owner has an opportunity to deposit sufficient funds into the Operating Account (or, if applicable, any reserve account held

EXHIBIT A
PAGE 8 OF 14

Exhibit 15 p. 012

by the Lender) to allow for payment prior to the imposition of any penalty or late charge. In no event shall the Property Manager be required to expend any of its own funds for the operation or maintenance of the Project; however, should it do so, the Property Manager shall be entitled to reimbursement from the Property Owner within thirty (30) days after such advance.

8.    Property Manager's Costs Not To Be Reimbursed.

8.1    Non-Reimbursable Costs. Costs attributable to losses arising from the gross negligence or fraud on the part of the Property Manager, the Property Manager's agents or employees shall be at the sole cost and expense of the Property Manager and shall not be reimbursed by the Property Owner.

8.2    Litigation. The Property Manager will be responsible for and hold the Property Owner harmless from, all fees, costs, expenses, and damages relating to criminal activity involving employees, disputes with employees for worker's compensation (to the extent not covered by insurance), discrimination or wrongful termination, including legal fees and other expenses, where it is determined by final judicial determination that such loss, cost or expense was the fault of the Property Manager.

9.    Compensation. The Property Manager and its Affiliates will receive the compensation set forth on Schedule 1.

10.    Termination.

10.1    Termination by Property Owner. The Property Owner shall have the right to terminate this Agreement only upon the following events: (i) because of the gross negligence, willful misconduct or fraud of the Property Manager, (ii) the bankruptcy, insolvency or inability of the Property Manager to meet its obligation as the same come due or (iii) as directed by a Lender pursuant to the terms of any applicable Loan Documents.

10.2    Termination by the Property Manager. The Property Manager shall have the right to terminate this Agreement upon thirty (30) days prior written notice from the Property Manager to the Property Owner indicating its termination of the Agreement.

10.3    Termination on Sale.    This Agreement shall automatically terminate upon the sale of the entire Project.

10.4    Final Accounting.    Within forty-five (45) days after termination of this Agreement for any reason, the Property Manager shall deliver to the Property Owner the following: (a) a final accounting, setting forth the balance of income and expenses on the Project as of the date of termination; (b) transfer to any account indicated by the Property Owner any balance or monies of the Property Owner or tenant security deposits held by the Property Manager with respect to the Project (or transfer the accounts in which such sums are held as instructed by the Property Owner); and (c) deliver to a subsequent property manager or other agent indicated by the Property Owner all materials and supplies, keys, books and records, contracts, leases, receipts for deposits, unpaid bills and other papers or documents which pertain to the Project. For a period of forty-five (45) days after such expiration or cancellation for any reason other than the Property Owner's default, the Property Manager shall be available, through its senior executives familiar with the Project, to consult with and advise the Property Owner or any person or entity succeeding to the Property Owner as owner of the Project

EXHIBIT A
PAGE 9 OF 14

Exhibit 15 p. 013

or such other person or persons selected by the Property Owner regarding the operation and maintenance of the Project. In addition, the Property Manager shall cooperate with the Property Owner in notifying all tenants of the Project of the expiration and termination of this Agreement, and shall use reasonable efforts to cooperate with the Property Owner to accomplish an orderly transfer of the operation and management of the Project to a party designated by the Property Owner. The Property Manager shall receive its monthly Property Management Fee for such services. The Property Manager shall, at its cost and expense, promptly remove all signs wherever located indicating that it is the Property Manager and replace and repair any damage resulting therefrom. Termination of this Agreement shall not release either party from liability for failure to perform any of the duties or obligations as expressed herein and required to be performed by such party for the period prior to the termination.

       10.5   <u>Debts and Obligations of the Property Owner</u>. In the performance of its duties hereunder, the Property Manager and its affiliates, shall act on behalf of the Property Owner solely in their capacity as the Property Owner's agent. All debts and obligations to third parties incurred by the Property Manager or its affiliates, in relation to the Project, shall be the debts and obligations of the Property Owner, and neither the Property Manager, nor its affiliates, shall be liable for, and shall be indemnified by, the Property Owner for any such debts, liabilities or obligations. The Property Manager and its affiliates shall have no obligation or responsibility to make payments with their own funds on any indebtedness incurred on behalf of the Property Owner or the Project, whether secured by the Project, or any portion thereof. Furthermore, this Agreement shall not be terminated by the Property Owner until all existing debts, liabilities and obligations arising out of any loan or the payment for goods or services on behalf of the Project are paid in full or assumed by a successor property manager; any guarantees entered into or made by the Property Manager, its affiliates, principles or officers on behalf of the Project are extinguished; and all fees owed to the Property Manager and its affiliates have been paid in full.

       11.   <u>Conflicts</u>. The Property Manager shall not deal with or engage, or purchase goods or services from, any subsidiary or affiliated company of the Property Manager in connection with the management of the Project for amounts above market rates.

       12.   <u>Notices</u>. All notices, demands, consents, approvals, reports and other communications to the Property Owner as provided for in this Agreement shall be in writing and shall be given to the Property Owner as set forth below, or at such other address as they may specify hereafter in writing. All notices, demands, consents, approvals, reports, and other communications to the Property Manager provided for in this Agreement shall be in writing and shall be given to the Property Manager at the address set forth below or at such other address as it may specify hereafter in writing:

To the Property Manager at:

Zurc Capital, LLC
30 N. Gould St. Suite N
Sheridan, WY 82801
Attention: General Administrator

EXHIBIT A
PAGE 10 OF 14

Exhibit 15 p. 014

To the Property Owner:

Ryan D. Gabriel
2000 Blacktail Road, #1140
Lakeside, MT 59922

Any notice or other communication that is not emailed may be delivered by a recognized overnight delivery service providing a receipt, facsimile transmission or mailed by United States registered or certified mail, return receipt requested, postage prepaid if deposited in a United States Post Office or depository for the receipt of mail regularly maintained by the post office. Notices sent by overnight courier shall be deemed given one (1) business day after mailing; notices sent by registered or certified mail shall be deemed given two (2) business days after mailing; and notices sent by facsimile transmission shall be deemed given as of the date sent (if sent prior to 5:00 p.m. MT and if receipt has been acknowledged by the operator of the receiving machine). Notices sent via e-mail shall be deemed given as of the date sent (if sent prior to 5:00 p.m. MT and if the Property Manager does not receive a "bounce back" notice that the e-mail transmission was not completed).

13. Miscellaneous.

13.1 Assignment. The Property Manager may not assign this Agreement without the prior written consent of the Property Owner, which consent may be withheld in the Property Owner's sole and absolute discretion, except with respect to an assignment to an affiliate, including, but not limited to a wholly-owned subsidiary, which shall be permissible under this Agreement.

13.2 Gender. Each gender shall include each other gender. The singular shall include the plural and vice-versa.

13.3 Amendments. Each amendment, addition or deletion to this Agreement shall not be effective unless approved by the parties in writing, except as otherwise provided herein.

13.6 Governing Law; Venue. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Wyoming without regard to any choice of law rules. Any action relating to or arising out of this Agreement shall be brought only in a court of competent jurisdiction located in Montana where the property is involved directly, or otherwise Wyoming.

13.7 Headings. All headings are only for convenience and ease of reference and are irrelevant to the construction or interpretation of any provision of this Agreement.

13.8 Representations. The Property Manager represents and warrants that it is or shall become fully qualified and licensed, to the extent required by applicable Law, to manage and lease real estate and perform all obligations assumed by the Property Manager hereunder. The Property Manager shall use reasonable efforts to comply with all such laws now or hereafter in effect. If at any time it is determined that the Property Manager does not have all applicable licenses or qualifications, the Property Manager shall be given a reasonable opportunity to cure such deficiency by obtaining any required licenses or permits.

13.9 Indemnification by Property Manager. The Property Manager shall indemnify, defend and hold the Property Owner and its shareholders, officers, directors, members, partners and employees harmless

Exhibit 15 p. 015

from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including reasonable attorneys' fees and court costs, sustained or incurred by or asserted against the Property Owner where it is determined by final judicial determination that such loss, cost or expense was the result of the acts of the Property Manager which arise out of the gross negligence, willful misconduct or fraud of the Property Manager, its agents or employees or the Property Manager's material breach of this Agreement. If any person or entity makes a claim or institutes a suit against the Property Owner on a matter for which the Property Owner claims the benefit of the foregoing indemnification, then (a) the Property Owner shall give the Property Manager prompt notice thereof in writing; (b) the Property Manager may defend such claim or action by counsel of its own choosing provided such counsel is reasonably satisfactory to the Property Owner; and (c) neither the Property Owner nor the Property Manager shall settle any claim without the other's written consent.

13.10 <u>Indemnification by the Property Owner.</u> The Property Owner shall indemnify, defend and hold the Property Manager and its shareholders, members, partners, officers, directors, managers and employees harmless from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including reasonable attorneys' fees and court costs, sustained or incurred by or asserted against the Property Manager by reason of the operation, management, and maintenance of the Project and the performance by the Property Manager of the Property Manager's obligations under this Agreement, except those which arise from the Property Manager's gross negligence, willful misconduct or fraud. If any person or entity makes a claim or institutes a suit against the Property Manager on matters for which the Property Manager claims the benefit of the foregoing indemnification, then (a) the Property Manager shall give the Property Owner prompt notice thereof in writing; (b) the Property Owner may defend such claim or action by counsel of its own choosing provided such counsel is reasonably satisfactory to the Property Manager; (c) neither the Property Manager nor the Property Owner shall settle any claim without the other's written consent; and (d) this subsection shall not be so construed as to release the Property Owner or the Property Manager from any liability to the other for a breach of any of the covenants agreed to be performed under the terms of this Agreement.

13.11 <u>Complete Agreement.</u> This Agreement shall supersede and take the place of any and all previous agreements entered into between the parties with respect to the Project.

13.12 <u>Severability.</u> If any provisions of this Agreement or application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement, where the application of such provisions or circumstances other than those as to which it is determined to be invalid or unenforceable shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

13.13 <u>No Waiver.</u> The failure by any party to insist upon the strict performance of, or to seek remedy of, any one of the terms or conditions of this Agreement or to exercise any right, remedy, or election set forth herein or permitted by law shall not constitute or be construed as a waiver or relinquishment for the future of such term, condition, right, remedy or election, but such item shall continue and remain in full force and effect. All rights or remedies of the parties specified in this Agreement and all other rights or remedies that they may have at law, in equity or otherwise shall be distinct, separate and cumulative rights or remedies, and no one of them, whether exercised or not, shall be deemed to be in exclusion of any other right or remedy of the parties.

EXHIBIT A
PAGE 12 OF 14

Exhibit 15 p. 016

13.14  Binding Effect. This Agreement shall be binding and inure to the benefit of the parties and their respective successors and assigns.

13.15  Counterparts. This Agreement may be executed in several counterparts, which when executed shall constitute one Agreement, binding on all of the parties hereto, notwithstanding that all of the parties are not signatory to the original or the same counterpart.

IN WITNESS WHEREOF the parties hereby execute this Agreement to be effective as of the date set forth above.

PROPERTY MANAGER:

Zurc Capital, LLC
30 N. Gould St. Suite N
Sheridan, WY 82801

By: _RYAN D. GABRIEL_

Name: _____

Title: _MANAGING MEMBER_

PROPERTY OWNER:

Ryan Gabriel
2000 Blacktail Road #1140
Lakeside, MT 59922

By: _____

EXHIBIT A
PAGE 13 OF 14

Exhibit 15 p. 017

SCHEDULE 1

FEES TO PROPERTY MANAGER & AFFILIATES

The Property Manager and its Affiliates will receive the following compensation:

- Property Management Fee.  The Property Manager, or an affiliate, shall receive, for its services in managing the day-to-day operations of the Project in accordance with the terms of this Agreement, an annual property management fee (the "Property Management Fee") equal to 3.5% of the Gross Revenues (as defined below) and prorated for any partial year, payable in monthly installments, which Property Management Fee shall be in addition to any out-of-pocket and on-site personnel costs that are reimbursable pursuant to Section 7. "Gross Revenues" shall be all gross billings from the operations of the Project including rental receipts, late fees, application fees, pet fees, damages, lease buy-out payments, and reimbursements by tenants for common area expenses, operating expenses and Taxes and similar pass-through obligations paid by tenants, but excluding (i) security deposits received from tenants and interest accrued thereon for the benefit of the tenant until such deposits or interest are included in the taxable income of the Property Owner; (ii) advance rents (but not lease buy-out payments) until the month in which payments are to apply as rental income; (iii) reimbursements by tenants for work done for that particular tenant, (iv) proceeds from the sale or other disposition of all or any part of the Project, (v) insurance proceeds received by the Property Owner as a result of any insured loss (except proceeds from rent insurance or the excess of insurance proceeds for repairs over the actual costs of such repairs), (vi) condemnation proceeds not attributable to rent, (vii) capital contributions made by the Property Owner; (viii) proceeds from capital, financing and any other transactions not in the ordinary course of the operation of the Project, (ix) income derived from interest on investments or otherwise, (x) abatement of Taxes, awards arising out of takings by eminent domain, discounts and dividends on insurance policies, and (xi) rental concessions not paid by third parties. The Property Management Fee shall be payable monthly from the Operating Account or from other funds timely provided by the Property Owner. Upon termination of this Agreement, the parties will prorate the Property Management Fee on a daily basis to the effective date of such cancellation or termination. Upon a sale of the Project, the Property Manager shall receive additional compensation equal to the previous month's Property Management Fee as compensation for work to be performed in connection with the sale or completion of managing matters relating to each tenant. The Property Management Fee will be paid monthly in arrears.

EXHIBIT A
PAGE 14 OF 14

Exhibit 15 p. 018

F I L E D
08/01/2023
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Kristen Skees
DV-15-2022-0000605-PA
Allison, Robert B
10.00

District Court Judge
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, MT  59901
(406) 758-5906

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| RYAN DEAN GABRIEL,<br><br>Plaintiff,<br><br>v.<br><br>JESSE MARK OLSEN<br><br>Defendant. | Cause No. DV-22-605 (B)<br><br>**ORDER STAYING PROCEEDINGS** |

The Court, having reviewed Defendant's Motion to Dismiss or in the Alternative to Stay Proceedings filed in this matter, and good cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Stay Proceedings is GRANTED **so long as quarterly updates regarding the case mentioned below are received by this Court beginning October 1, 2023. Exhibits of court orders shall accompany said updates when necessary. Should either party wish to lift this STAY, the moving party shall file a motion requesting as much.** Accordingly**,** all further proceedings in this matter are hereby STAYED pending the entry of a final judgment in the Circuit Court of the State of Oregon, County of Multnomah Case No. 22DR04942. Even if Defendant is served with the Summons in this matter subsequent to this Order, Defendant's Answer need not be filed and Defendant may not be defaulted without further order of the Court.

ELECTRONICALLY signed and dated below.

Electronically Signed By:
Hon. Judge Robert B. Allison
Tue, Aug 01 2023 01:53:07 PM

Exhibit 16 p. 001

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922

September 4, 2023

**Via e-Mail: (*cao@osbar.org*)**

Oregon State Bar
Client Assistance Office
PO Box 231935
Tigard, OR 97281-1935

RE: Ethics Complaint - Roscoe C. Nelson, Jr., **Bar No. 732218**

To Whom it May Concern,

In the above matter, below please find an outline of reasons for my ethics complaint to the Oregon State Bar regarding Roscoe C. Nelson, Jr. (hereinafter "Roscoe", "Mr. Nelson") who is representing Jesse Mark Olsen (hereinafter "Mr. Olsen") in Multnomah County case No. 22DR04942, and is also the Defendant in a tortious interference (with a contract) case wherein I am the Plaintiff: Flathead County District Court (State of Montana) Case No. DV-23-786.

1. **Late Night e-mails:** In the capacity of retained counsel for Mr. Olsen in Multnomah County Case No. 22DR04942, Mr. Nelson has a habit of sending angry, drunken-sounding e-mails replete with grammatical and spelling errors – as late as 11:41pm, in one instance, although e-mails as late as 9:30pm-10:00pm are more common. I have attached here a few select exchanges (Exhibit A2).

2. **Oregon Rules of Professional Conduct ("ORPC") Rule 1.7 Conflict of Interest:** Roscoe's primary motives, at this point, are more aligned with his immediate interests to defend himself from a tortious interference lawsuit that I filed against him in my resident jurisdiction - Flathead County, 11th District, Montana. These personal interests, which directly conflict with his ability to negotiate on behalf of his client Mr. Olsen in good faith and without personal animus, are complicated yet further by companion interests involving a lawsuit that he has vowed to file against me for character defamation:

   a) Attached here is a copy of the e-mail exchange (Exhibit A3) in which Roscoe commits himself to filing a lawsuit against me for defamation, merely for raising the issue of his DUI arrest and guilty plea in 2010 at the ripe age of 61 – claiming that by using the expression "criminal history" to describe the incident as a pretext for barring him from trespassing on my properties, he can now sue me for libelous defamation. You can see from the exchange his menacing taunts (e.g., "Try me.") and malevolent posture.

   b) **Per ORPC rules,** as I understand them, the above fact pattern presents a clear **conflict of interest** and **Roscoe must therefore withdraw from representing Jesse Olsen and transfer to an unconflicted attorney, which Mr. Nelson has not yet done.** Moreover,

Exhibit 17 p. 001

production of discovery in the Olsen v. Gabriel (No. 22DR04942, Multnomah County) case has passed a court-ordered deadline of July 3, 2023, and the discovery produced thus far not only does not support Roscoe's domestic partnership thesis, remarkably, the evidence meets the immensely high **burden of disproof** of domestic partnership (Exhibit V). Roscoe is aware that after my Motion for Sanctions, the hearing for which is set for October 20, 2023, I plan to file a Motion for Summary Judgment thereafter, at which point Roscoe will be a direct litigant in two civil lawsuits against me, one in Montana and the other in Oregon (the latter being his promised defamation lawsuit against me).

c) **Furthermore, I will shortly be suing both Jesse Olsen and Roscoe C. Nelson, Jr. in a Federal court** to intervene – as a contingency – in the improperly filed Oregon domestic partnership/marriage claim, specifically challenging implied domestic partnership case law in Oregon on 14th Amendment due process and privacy grounds, and Mr. Nelson's abuse of this controversial case law. Here we will cite among other national trends the effective abolition of common law marriage via such landmark cases as *PNC Bank Corp. v. W.C.A.B.* (Stamos), 831 A.2d 1269 (Pa. Commw. Ct. 2003) and *Stone v. Thompson*, 428 S.C. 79, 82, 833 S. E.2d 266, 267 (July 24, 2019). The implications for *Beal v. Beal*, 577 P.2d 507 (1978) and its progeny in Oregon – which Mr. Nelson relies upon for his spurious marriage / domestic partnership thesis – effectively ends this instant lawsuit *Olsen v. Gabriel* (Case No. 22DR04942, Multnomah County) before it goes to trial, notwithstanding that a Federal judge may soon declare supremacy of jurisdiction. These cases, recently adjudicated outside Oregon, were brought to my attention by national lawyers assisting me with the developing Federal case. Taken together, these recent rulings and others have effectively abolished common law marriage nationwide, including such related constructs as implied domestic partnership – particularly following the *Obergfell v. Hodges* SCOTUS decision. The legal reasoning of the Courts has consistently been that, following '*Obergfell*' and other statutory and case law revisions governing common law marriage, there is no basis for the Courts to determine implied **intent** of the parties when the avenues for filing for marriage or domestic partnership are readily, easily and cheaply available – and without impediment, in any state – to anyone who intends such an arrangement. **This will bring the number of lawsuits in which Roscoe is a direct opposing litigant (vs. me specifically) to three.**

d) **ORPC "Rule 1.7 Conflict of Interest: Current Clients" is unequivocal:**

> *"(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a current conflict of interest. A current conflict of interest exists if: ... (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer;"*

> ...

> *"(b) Notwithstanding the existence of a current conflict of interest under paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;"*

Exhibit 17 p. 002

Here it occurs to anyone now familiar with this lawsuit – and I assure you, word is getting out – that Mr. Nelson's late-night, angry, malicious, drunken-sounding e-mails cited above, combined with Mr. Nelson's promised retaliation via his forthcoming defamation lawsuit (for raising the issue of his DUI and guilty plea), demonstrate that he will not be able to, and has not been able to, provide competent representation to Mr. Olsen.

3. **Oregon Rules of Professional Conduct ("ORPC") Rule 1.5 (c) (1) and (3) Fees Violations:** Furthermore, it has come to my attention that Roscoe C. Nelson is also likely in violation of the Oregon Rules of Professional Conduct regarding fees and compensation (rules which were adopted 3/1/2022 - before Mr. Nelson entered into a representation agreement with Jesse Olsen, in which Mr. Nelson has agreed to accept a contingency fee or bonus after the lawsuit has concluded, and/or has committed to financing the lawsuit until a settlement or award has been reached, also in violation of ORPC rules):

### *Rule 1.5 FEES*:

> *(c) A lawyer shall not enter inter an arrangement for, charge or collect:*
>
> *(1) any fee in a domestic relations matter, the payment or amount of which is **contingent** upon the securing of ... a property settlement;*

ORPC Rule 1.5 (c) goes on to state:

> *(3) [...or] a fee denominated as "earned on receipt", "nonrefundable" or in similar terms unless it is pursuant to a written agreement signed by the client which explains that:*
>
> > *(i) the funds will not be deposited into the lawyer trust account, and*
> >
> > *(ii) the client may discharge the lawyer at any time and in that event may be entitled to a refund of all or part of the fee if the services for which the fee was paid are not completed.*

Here I will leave it to the Oregon State Bar to determine its right to obtain a copy of the original fee agreement struck between Roscoe C. Nelson, Jr. and his client, Jesse Mark Olsen. Given Mr. Nelson's pattern of unscrupulous, deceptive and evasive conduct (see attached Exhibit A4), I encourage you to verify the fee agreement that Mr. Nelson furnishes you upon your request by confirming the executed version is the correct, original signed version directly with his client Mr. Olsen, who can be reached at jesse.m.olsen@gmail.com or jesse.olsen@nike.com.

4. **The Oregon State Bar, Family Division should discourage bounty hunter lawyers:** Similar to the now-infamous slip-and-fall, 'ambulance-chasing' personal injury lawyers, Roscoe's observed practice model is to effectively serve as a bounty hunter who seeks to raid holistic lives for a contingency bonus, wherein the biggest prize comes from complete destruction and liquidation of entire estates, including business enterprises, using shoddy, controversial and now obsolete case

Exhibit 17 p. 003

law, following *Obergefell v. Hodges*, *PNC Bank Corp. v. W.C.A.B. (Stamos)*, 831 A.2d 1269 (Pa. Commw. Ct. 2003) and *Stone v. Thompson*, 428 S.C. 79, 82, 833 S. E.2d 266, 267 (July 24, 2019). **Even when there is no marriage and no domestic partnership, his stated goal is to extract a settlement under false pretenses.** This should be illegal if it is not already illegal, because in my view this elevates Roscoe's business to what is effectively a criminal practice (i.e., an ensnarement and extortion racket).

5. **Conclusion:** Mr. Nelson is demanding access to my homes where I live and could be sleeping, and we know he intends to sue me, that he is a direct defendant in a lawsuit that I filed against him, and that he has a history of drunken, angry, threatening e-mails late into the evening, and we know he has a public criminal history of drunken, disorderly conduct that has put other lives in jeopardy (see Exhibit A3, which includes a summary of his public DUI, arrest and guilty plea).

Due to these extraordinary conflicts, I therefore implore the Oregon State Bar to require Mr. Nelson, **Bar No. 732218** to withdraw as counsel from Case No. 22DR04942 so that Mr. Olsen can retain an unconflicted, reputable attorney to represent him in this dispute, and to take any further punitive action against Mr. Nelson that it feels is warranted.

Sincere regards,

Ryan D. Gabriel
*Cc: Jesse Olsen (via e-mail) and Roscoe C. Nelson (via e-mail)*

Phone: (206) 391-9886 m.

Exhibit 17 p. 004

On 09/08/2023 3:23 PM EDT Kai Groenke
<kai@familylawflathead.com> wrote:

Ryan,

Your efforts to find information about me by searching public records
is concerning.  You are clearly engaging in harassment, threats and
intimidation.  You have no business looking into my personal life; it
is not relevant to the litigation.  The Montana litigation is on hold, so
there is nothing more for us to talk about unless the stay of
proceedings is vacated.

Do not communicate with me about anything other than the case
currently pending in Montana.

Thanks,

*Kai Groenke*

**Law Office of Kai Groenke, P.C.**

---

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Thursday, September 7, 2023 10:15 PM
**To:** Kai Groenke <kai@familylawflathead.com>; Melissa Smith
<melissa@familylawflathead.com>
**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com
**Subject:** RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-
605

Oof.  This dossier is thick.

Brian Dale Lee

Exhibit 18 p. 001

David C. Dowell

Groenke 1997 Grandchildrens Trust

Oh, my - there's a lot to unpack here.  I look forward to sorting out the contents.

Good luck, Taylor.

Ryan D. Gabriel

**Zurc Capital, LLC**

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

Exhibit 18 p. 002

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Tuesday, September 26, 2023 6:15 PM |
| **To:** | Kai Groenke; Melissa Smith |
| **Cc:** | jesse.m.olsen@gmail.com; jesse.olsen@nike.com |
| **Subject:** | RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605 |
| **Attachments:** | Roscoe_C_Nelson_Ethics_Complaint_2023-09-09_161423.pdf |

**Importance:** High

Taylor,

I am in receipt of your latest filing, 'Defendant's First Status Report'.

While I wouldn't normally recommend someone with a clinical psychiatric condition such as yours (malignant vulnerable narcissism) position their own persona at the very center of a very simple partition claim - on a property that can be easily partitioned without controversy, no less - I appreciate that someone with your disabling condition probably cannot help themselves.

Since you are absolutely determined to make this lawsuit about you - in which you are the star - and not the case at hand, you ought to be fair and include the previous e-mail contrasting your behavior with a brilliant character study of your most famous avatar - Taylor Lorenz, as reported by the outstanding Glenn Greenwald - as an exhibit. If you don't get around to it, I am happy to include this as an exhibit in my reply to the Court.

Also, you might also want to include as an exhibit the actual ethics complaint I filed against Roscoe C. Nelson, Jr. with the Oregon State Bar, in that you seem to be arguing that my efforts to defend myself from unscrupulous lawyers like Roscoe on the one hand, and chronically self-perjuring lawyers like yourself on the other, constitutes anything other than 'harassment' of an ordinary civilian trying to defend my rather innocuous property rights from two deranged, bitter misanthropes who have no business scurrying around Oregon and Montana with law degrees.

I have attached that ethics complaint here, for your convenience, so the Court can determine who is 'harassing' whom.

Where your own character is concerned, Taylor, if even half of the information I have reviewed thus far in the opposition research file I was provided is true, I would be shocked if the Montana State Bar allowed you to continue to practice law once made aware of the same fact pattern, given your rather unsavory history of rank dishonesty, as testimony by those who have understandably parted ways with you have made a matter of public record.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

Exhibit 19 p. 001

## Kai Groenke

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Tuesday, October 3, 2023 12:06 PM |
| **To:** | Kai Groenke |
| **Cc:** | Melissa Smith; Jesse Olsen; jesse.olsen@nike.com |
| **Subject:** | Motion for Sanctions - Cause No. DV-22-605 |
| **Attachments:** | Motion_Sanctions_Groenke_2023-10-03_115627.pdf; Sanctions_Exhibits_2023-10-03_120215.pdf |

Taylor,



Attached please find a copy of the pending Motion for Sanctions, to be brought before Flathead County District Court, absent your complete and unequivocal retraction, correction and proactive withdrawal of your request to stay proceedings in DV-22-605.

Exhibits are unlabeled in this e-mail attachment, but you will soon receive labeled versions via proper service in accordance with MCA Title 25, Ch. 20, Rule 11.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

> On 10/02/2023 6:11 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:
>
>
> All of those records are privileged, Ryan. While those communications are preserved, they are part of my attorney/client file. Absent a valid court order, you will not be receiving any such records.
>
>
> *Kai Groenke*
>
> **Law Office of Kai Groenke, P.C.**
>
>
> **From:** Ryan Gabriel <rgabriel@zurccapital.com>
> **Sent:** Monday, October 2, 2023 12:29 PM
> **To:** Kai Groenke <kai@familylawflathead.com>
> **Cc:** Melissa Smith <melissa@familylawflathead.com>
> **Subject:** Pending Federal Case: 14th Amendment, Section 1 - "Right not to Marry"

1

Exhibit 20 p. 001

Taylor a/k/a 'Kai',

Anticipating that this case will soon be taken up by the Federal courts under Section 1 of the Fourteenth Amendment of the Constitution, please take this a *formal records and documentation preservation demand* regarding all communications that I have not yet been made party to, including any and all correspondence with Roscoe C. Nelson III, Jesse M. Olsen and the courts concerning Case #22DR04942, all correspondence between any third party lawyers including those which I myself may retain or have previously retained, and Roscoe's staff.

As the State of Oregon will likely be named as a defendant in the Federal case, along with Roscoe C. Nelson, III and Jesse M. Olsen, please consider any records and communications relevant to the pending Federal matter subject to future discovery. *Do not destroy any such records.*

Attached is a handy summary of the issues that will be touched upon in the Federal case as it heads, ultimately, to SCOTUS, where we expect the Supreme Court to firmly establish a "right not to marry" to effectively abolish all Oregon case law governing implied domestic partnerships. The Attorney General of the State of Montana may join this Federal suit, and as you know your role in needlessly obstructing the Montana partition claim will also be reviewed by the Montana State Bar Association.

Upon such a ruling, please note that a civil defamation lawsuit may be filed against you, separately, for any false written allegations or claims you have made or will continue to make that I am Jesse's "husband", or any similarly false companion claims.

Cheers,

Ryan D. Gabriel

Zurc Capital, LLC

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

2

Exhibit 20 p. 002

# IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

RYAN DEAN GABRIEL,

    Plaintiff,

  vs.

JESSE MARK OLSEN,

    Defendant

Case No. DV-22-605

## MOTION FOR SANCTIONS

Plaintiff RYAN DEAN GABRIEL ("Mr. Gabriel") hereby moves against Defendant JESSE MARK OLSEN ("Mr. Olsen"), who has been communicating exclusively through his retained counsel, TAYLOR 'KAI' GROENKE ("Ms. Taylor Groenke"), for sanctions in accordance with MCA Title 25, Ch. 20, Rule 11.

## VIOLATIONS OF RULE 11(B)

The above cited statute/code is furnished as follows:

*Rule 11. Signing Pleadings, Motions, and other Papers; Representations to the Court; Sanctions.*

 ...

 *(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:*

  *(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;*

...

*(3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and*

*(4)   the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.*

*(c)   Sanctions.*

*(1)   In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.*

*(2)   Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).*

**1.   Groenke's pre-emptive threats to seek Court-ordered sanctions.**

Counsel for the Defendant, Ms. Taylor Groenke, began threatening Plaintiff Mr. Gabriel with Court sanctions for "harassment" as early as April 27, 2023, before Mr. Gabriel had any knowledge that Mr. Olsen had retained any legal counsel in this instant case, and before Mr. Gabriel had any knowledge that Ms. Taylor Groenke appeared before this Court or even existed, and well before Mr. Gabriel had any knowledge or understanding of MCA Title 25, Ch. 20, Rule 11. In bringing this statutory authority to Mr. Gabriel's attention before its citation and

Exhibit 20 p. 004

enforcement was ever plausible in any respect, Counsel for the Defendant has thus compelled Plaintiff Mr. Gabriel to exercise this same authority in defense of this instant partition claim, and to pre-empt Ms. Taylor Groenke's clear efforts to draw Mr. Gabriel into an unrelated argument using noxious sanctimony and frivolous outrage in the hopes of invoking Rule 11 at some future point, and in her cynical hopes of obfuscating the core, simple issue in dispute. (*See* "Groenke Intro Letter", Exhibit D1 *and* "Premature Invocation of Rule 11", Exhibit D2).

### 2. Undue Influence; knowingly perjurious statements; constructive fraud.

Ms. Taylor Groenke has furnished this Court with knowingly false, pivotal statements as she proceeds to not only interfere with Mr. Gabriel's property rights, but also to draw out Court-ordered sanctions and damages under fraudulent pretenses. Most notably, Groenke self-perjures before this Court with ongoing mutually exclusive and contradictory sets of statements in her own and in her client's sworn written testimony before the Court: a) that Plaintiff Mr. Gabriel "lives" and "currently resides in the home the parties shared in Portland, OR"; b) that Ms. Taylor Groenke attempted in good faith to contact Mr. Gabriel exclusively by snail-mailing (via USPS) Defendant's Motion to Dismiss – along with her threats to seek Court-ordered sanctions for "harassment" – to Mr. Gabriel's Montana address alone, giving Mr. Gabriel a deadline to reply (May 12, 2023) that came and went before Mr. Gabriel had any knowledge that Ms. Groenke had appeared before this Court or indeed even existed. (*See* "List of Groenke's Perjurious Claims"; Exhibit D3 *and* "Groenke Intro Letter", Exhibit D1). In doing so, Groenke fraudulently attempted to draw Court-ordered Sanctions in this instant case – alleging "harassment and intimidation" – before Mr. Gabriel would have had any knowledge of her appearance in this instant lawsuit, assuming her first set of contradictory statements ("Mr. Gabriel lives and currently resides in Portland", etc.) were believed by her to be true.

Taken together, these actions comprise additional statutory violations above and beyond Rule 11(b), involving Plaintiff Mr. Gabriel's contractual property rights governing his ownership of 2000 Blacktail Rd. in Lakeside, MT, as well as his earnest attempt to partition the same property in a non-controversial, lender-approved, legally permissible manner: *'Constructive Fraud'* and *'Undue Influence'*.

**a) Constructive Fraud:**

Per MCA Title 28, Ch. 2, Section 406, behavior constitutes Constructive Fraud: *"Constructive fraud consists of:*

*(1) Any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or*

*(2) Any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.*

**b) Undue Influence:**

Per MCA Title 28. Ch. 2. Section 407. this also constitutes *'Undue Influence'*:

*(1) The use by one in whom a confidence is reposed by another person or who holds a real or apparent authority over the other person of the confidence or authority for the purpose of obtaining an unfair advantage over the other person;*

*(2) Taking an unfair advantage of another person's weakness of mind; or*

*(3) Taking a grossly oppressive and unfair of another person's necessities or distress.*

**c) Perjurious claims with ulterior motives:**

Exhibit 20 p. 006

Counsel for the Defendant Groenke has continued to maintain and has failed to retract her leading perjurious (knowingly false) claims, which her entire Motion to Dismiss or Stay Proceedings revolves around – that "Mr. Gabriel lives and currently resides in Portland" – even after Mr. Gabriel sent her incontrovertible proof of his residency in Lakeside, MT in an e-mail exchange dated June 1, 2023. Remarkably, Defendant Mr. Olsen's Oregon attorney declared in a simultaneous Court filing in Multnomah County that "Mr. Gabriel has abandoned the Portland property" at precisely the same time as Ms. Taylor Groenke argued the opposite. (*See* "Roscoe's Declaration of Abandonment", Exhibit D4). Defendant Mr. Olsen, Counsel for the Defendant Groenke and Mr. Olsen's Oregon attorney have all been in regular communication with each other, knowingly filing false, self-perjuring, contradictory, mutually exclusive statements to the various Courts in these competing lawsuits. Groenke and Defendant Mr. Olsen have now had over 21 days to respond to Mr. Gabriel's corrective proof of residency, which he supplied to them in writing, and have yet failed to withdraw or appropriately correct their Court filings post-notification, choosing instead to proactively file ongoing interparty communications, indicating that Groenke has not simply overlooked this instant lawsuit, nor merely forgotten to correct her knowingly fraudulent claims. (*See* "Proof of Residency Correspondence": Exhibit D5).

What is most remarkable about Ms. Taylor Groenke's failure to document or respond to any communication that would prove to the Court that Defendant's objection to this instant lawsuit is unmerited – or which would require her to retract or correct her (knowingly) fraudulent claims involving Mr. Gabriel's residency – is that Groenke otherwise has meticulously documented all other communication which could obfuscate the core issue in this instant lawsuit (the core issue in dispute in this instant partition claim is Mr. Gabriel's residency, property rights and Fourteenth Amendment, Article One due process and privacy rights under the US Constitution.) (*See also:* "Right not to Marry Correspondence", Exhibit D6).

Indeed, Ms. Taylor Groenke has duplicated certain intraparty communications, over and over again, filing her own photograph no less than three times with the Court in the hopes of turning Groenke herself into the besieged subject of the lawsuit – presumably so that she can draw out claims of "harassment and intimidation" – which she signaled her intention to do from the outset. The colloquial expression for this devious tactic is *'trolling'*, an art form that infamous, equally dreadful public figures such as Taylor Lorenz of the *'New York Times'* have turned into a lucrative career. Here it seems evident that Ms. Taylor Groenke desires to fashion herself into the *'Taylor Lorenz'* of the Montana legal community, to the chagrin of all who reside within the state, for which she can handsomely bill her clients – and destroy the lives of their adversaries – as she rises to become the center of attention in each lawsuit. (*See Glenn Greenwald Article Correspondence, Exhibit C6*).

**CONCLUSION**

WHEREFORE Plaintiff Mr. Gabriel prays for an order for sanctions to be brought by this Court against Defendant and Ms. Taylor "Kai" Groenke for rank violations of MCA Title 25, Ch. 20, Rule 11 (*'Representations to the Court'*), as well as MCA Title 28, Ch. 2, Section 406 (*'Constructive Fraud'*) and MCA Title 28, Ch. 2, Section 407 (*'Undue Influence'*), plus any additional punitive sanctions this Court feels appropriate given Defendant and his counsel's remarkable pattern of self-perjury before this Court.

DATED this 3rd Day of October, 2023.

_____
Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd.
Lakeside, MT 59922

(403) 606-5859
Telephone

**FILED**

10/17/2023
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Rachel Faber
DV-15-2023-0000786-TO
Coffman, Danni
18.00

Hon. Danni Coffman
District Court Judge, Dept. E
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, MT 59901
Phone: (406) 758-5906

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| Ryan Dean Gabriel, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Roscoe C Nelson, )<br><br>Defendant. )<br> _____ ) | Cause No. DV-15-2023-0000786<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Defendant, Roscoe Nelson (Nelson), filed a motion and brief in support asking for dismissal of this action under Mont. R. Civ. Pro. Rule 12(b)(1), Rule 12(b)(2), Rule 12(b)(4) and Rule 12(b)(6). Nelson withdrew the motion for insufficient service as he was properly served in the interim. Plaintiff, Ryan Gabriel's (Gabriel) response, in addition to raising several issues beyond the scope of his complaint, challenged the basis of Nelson's motion.[1]

### FINDINGS OF FACT

Gabriel, a Montana resident, owns property at 2000 Blacktail Rd, Lakeside, Montana. Doc. 1, ¶ 1. On or around April 1, 2021, Gabriel executed an agreement with Zurc Capital (Zurc). *Id.* Pursuant to the contract, Gabriel was to allow Zurc to serve as a property manager for a short-term rental on his property. *Id.* Ex. A. This agreement became effective on April 1, 2021, and terminates upon the sale of the property, or April 1, 2025, whichever occurs first. *Id.* After April 1, 2025, it is subject to an automatic extension for one year without objection from either party. *Id.*

Nelson is an Oregon resident and attorney. Doc. 8. On or around March 15, 2023, Nelson filed a petition in Oregon for a dissolution of domestic partnership on behalf of his client, naming Gabriel as the defendant. *Id.* p. 2:26-28. At some point, correspondence was delivered from

___
[1] Gabriel also referenced several exhibits in his response, none of which have been made available to the Court through the electronic case file.

Exhibit 21 p. 001

Nelson to Gabriel that identified the potential ramifications of a default judgement. Doc. 12, p. 1-2. One of these potential ramifications was the liquidation of any real property, such as the property subject to the Zurc agreement. *Id.*

## I. Lack of Personal Jurisdiction.

Nelson argues that he is not subject to personal jurisdiction in Montana. To exercise personal jurisdiction over a non-resident defendant, the Montana Supreme Court has established a two-part test. Cimmaron Corp. v. Smith, 2003 MT 73, ¶¶ 10-17, 315 Mont. 1, 3-5, 67 P.3d 258, 260-61 (citing Threlkeld v. Colorado, 2000 MT 369, P9, 303 Mont. 432, P9, 16 P.3d 359, P9). "First, the Court must ascertain whether personal jurisdiction exists pursuant to Rule 4(b)(1), M.R.Civ.P." Id. (citing Threlkeld, 2002 MT 369 at 9). Second, it must determine whether exercising jurisdiction is proper within the due process clause. Id. "Therefore, it is axiomatic that if personal jurisdiction does not exist under the first part of the test, further analysis under the second part of the test is unnecessary." Id. (citing Bi-Lo Foods, Inc. v. Alpine Bank, Clifton, 1998 MT 40, P15, 287 Mont. 367, P15, 955 P.2d 154, P15).

Mr. Nelson has denied any physical presence in Montana that subjects him to general jurisdiction under the first sentence of Rule 4(b)(1), M.R.Civ.P. In addition, he has questioned the applicability of specific long-arm jurisdiction under subsections (A) and (B). Subsection (A) of Rule 4(b)(1) covers claims which arise from "the transaction of any business within this state." Subsection (B) pertains to claims which arise from "any act resulting in accrual within Montana of a tort action."

### a. Lack of sufficient business within Montana under Rule 4(b)(1)(A).

In Montana "a non-resident does not subject himself to the jurisdiction of Montana by merely entering into a contract with a resident of Montana." Cimarron, MT 73. ¶ 14. (quoting, Edsall Construction Co., Inc. v. Robinson, 246 Mont. 378, 382, 804 P.2d 1039, 1042 (1991)). "Personal jurisdiction is not acquired through interstate communications made pursuant to a contract that is to be performed in another state." Id. (italics in original) (citing Bird v. Hiller, 270 Mont. 467, 473, 892 P.2d 931, 934 (1995)). However, the requisite business contact with a forum state can be found through purposeful interjection into an interstate contractual relationship where a defendant has a previous relationship. See Nelson v. San Joaquin Helicopters. 228 Mont. 267, 742 P.2d 447 (1987).

Nelson has affirmatively established through his affidavit that he is not licensed in Montana. Doc. 8, ¶ 2. He is an Oregon resident. Doc. 1 ¶ 3(b). His client retained him in Oregon to handle an Oregon suit. The type of conduct he has directed to Montana is strictly limited to the dissolution suit and any professional correspondence between an attorney and an adversarial pro

Exhibit 21 p. 002

se client.  That one aspect of this suit happens to fall within Montana is a type of corollary inter-state relationship that fails to result in a meaningful business transaction.  This falls well short of the minimal contacts necessary to be subject to personal jurisdiction in Montana under Rule 4(b)(1)(A).

### b.  Lack of Tort Accrual Within Montana under Rule 4(b)(1)(B).

When relying on Rule 4(b)(1)(B), jurisdiction is proper where the elements that gave rise to the tort action accrued. Neither the forum where the plaintiff suffered a loss, nor the forum where the plaintiff discovered a loss is proper. Even if that loss is based on the defendant directing some intent or communication into the forum, Montana courts have not held in favor of jurisdiction when the elements that complete the tort occurred in a foreign jurisdiction.

The Montana Supreme Court has thoroughly refined its analysis of specific jurisdiction for tort accrual. The 2014 case of *Tackett v. Duncan* considered the appeal of an order granting summary judgement under Rule 4(b)(1)(B). 2014 MT 253, 376 Mont. 348, 334 P.3d 920. In its analysis of specific jurisdiction that court considered a plethora of jurisprudence: including *Walden v. Fiore*, 568 US 1211, 133 S. Ct. 1493, 185 L. Ed. 2d 547 (2013); *Cimmaron*, 2003 MT 73; *Bi-Lo Foods v. Alpine Bank,* 287 Mont. 367, 955 P2d 154 (1997); *Bird v. Hiller*, 892 P.2d 931 (Mont. 1995); *Threlkeld v. Colo.,* 2000 MT 369, 303 Mont. 432. The court concluded that when "analyzing accrual in each of these cases, we focused on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Id.* at ¶ 31.  A defendant's foreign conduct

In the instant case, the Court will assume for argument's sake a tort has occurred.  The elements of tortious interference are:

(1) An intentional and willful act;
(2) Calculated to cause damage to the plaintiff's business;
(3) With the unlawful purpose of causing damage or loss, without right or
justifiable cause on the part of the actor;
(4) The act results in actual damage or loss.

*Winfield v. Dep't of Pub. Health & Human Servs.*, 2020 MT 120, ¶ 8, 400 Mont. 70, 463 P.3d 452.

The conduct that resulted in tort accrual was the filing of dissolution lawsuit.  That lawsuit was filed in Oregon.  It was then communicated inter-state to Montana.  Even if a tort has occurred, it was (1) was an intentional act in Oregon and (2) calculated in Oregon to cause damage to the Montana business based on an Oregon action.  The factual basis that gave rise to the tort occurred in Oregon.  Therefore, no tort accrual occurred in Montana and personal jurisdiction also fails under Rule 4(b)(1)(B).

Exhibit 21 p. 003

## II.    Failure to State a Claim.

Nelson contends that Gabriel has failed to state a claim because the lawfully pursued petition for dissolution would not have demonstrated the "malice" necessary to be liable for tortious interference.  Gabriel counters that the petition is not lawful.  It amounts to an attempt to force a sale of his property that would have to be shared with Nelson (from legal fees) and his client.

To prevail in a tortious interference suit Gabriel would have to present evidence that Nelson intentionally directed an action that would place the contract with Zurc in jeopardy with unlawful purpose absent a right or justifiable cause.

In other words, Nelson's conduct would have to lack a rightful or justifiable cause under element (3) above.  Gabriel insists that the cause of action no longer has a legal significance in Oregon, which would strip any "rightful" cause from Nelson's conduct.  In support, Gabriel cited to *Stone v. Thompson*, a 2009 case from the Supreme Court of South Carolina that abolished common law marriage within the state.  428 S.C. 79, 833 S.E.2d 266.

It appears that Oregon does not observe common law marriage.  *See, In re Estate of Hildenbrand*, 243 Ore. 117, 410 P.2d 244 (1966).  However, it does set forth provisions for domestic partnerships and their dissolution.  Or. Rev. Stat §§ 106.300, *et seq.*  Furthermore, Nelson has spelled out Gabriel's role in the Oregon case as one of two "parties to a case involving the dissolution of an unregistered partnership."  Doc. 11, p. 1.

Since domestic partnerships are recognized in Oregon, it appears that Nelson is pursuing a legal lawsuit on behalf of his client.  That establishes a "rightful" or "justifiable" purpose.  Gabriel has presented no grounds to challenge the legal sufficiency of this lawsuit beyond blind allegations.  Without such a showing, Gabriel cannot demonstrate Nelson did anything other than commit a lawful act that was directed at settling a dissolution suit.  Since there exists a "rightful" or "justifiable" purpose, Gabriel has failed to sufficiently state a claim.

### ORDER

The motion for dismissal under rules 12(b)(2) and 12(b)(6) is GRANTED.


*ELECTRONICALLY SIGNED AND DATED BELOW*


c:    Ryan Dean Gabriel
      Kevin Ness
      Roscoe C Nelson

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan D. Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Tuesday, October 24, 2023 4:52 PM |
| **To:** | Kai Groenke |
| **Cc:** | Melissa Smith; jesse.m.olsen_gmail.com |
| **Subject:** | Re: Response to Motion for Sanctions |

Kai,

If you do not modify your filings to reflect the matters of fact that I have repeatedly brought to your attention and which prove you are knowingly misleading the Court, I will be within my rights to file for sanctions.

As for the 'motives' for filing a partition claim, it is for the simple purpose of not being evicted from my residence and my home, as the Montana property can be partitioned.

I believe a judge will find it is you who are interfering with the partition in order to harass me, as the partition claim in Oregon was the first-filed action. The Montana partition claim was necessary as a companion filing.

I will give you to the end of the week to amend your claims via an erratum or similar document with the Court. If these points of fact are not corrected by then, I will file my Motion.

Sent via BlackBerry Hub+ Inbox for Android

**From:** kai@familylawflathead.com
**Sent:** October 24, 2023 3:54 PM
**To:** rgabriel@zurccapital.com
**Cc:** melissa@familylawflathead.com; jesse.m.olsen@gmail.com
**Subject:** Response to Motion for Sanctions

Ryan,

In response to your draft motion for sanctions, it appears to me you are claiming I should be sanctions for two reasons:
1. Alleged threats to seek sanctions if you did not cooperate in dismissing the lawsuit; and
2. Alleged misstatements by me regarding your residence.

The statement in my letter that Jesse will seek sanctions for the partition lawsuit is based upon my belief that you filed it for the purpose of harassing Jesse, much like your efforts to threaten and harass him by filing claims against both of his attorneys and threatening additional litigation in federal court. I also believe your partition lawsuit is frivolous based on the undisputed fact that Oregon recognizes domestic partnerships. The State of Oregon has consolidated your Oregon partition action with the domestic partnership dissolution action, thus dismissing the Oregon partition action that you filed. The Oregon court intends to hear the domestic partnership case, which means you have not yet successfully convinced anyone that the domestic relations laws of Oregon do not apply to your pending case in Oregon. I realize you plan to challenge Oregon's domestic partnership laws, but those laws are currently recognized and enforced within the State of Oregon. The Montana partition action is not necessary or warranted when Oregon has jurisdiction to equitably divide your assets and liabilities in the domestic partnership matter. I stand by my request for you to cooperate in dismissing the Montana partition lawsuit or face sanctions based on your filing of a frivolous lawsuit brought for the purpose of harassment.

I have reviewed the court records, public records, and other information. Based on a reasonable review of the information available to me that you are, or were at the time of filing the motion to dismiss, domiciled in the State of

1

EXHIBIT 11

Exhibit 22 p. 001

Oregon.  At best you have an *argument* that your residence is in Montana.  Information also exists to refute this argument.

Neither of these statements rise to the level of sanctionable conduct.  Please note the Montana court may award attorneys' fees and costs to the prevailing party on a motion for sanctions based on Rule 11 of the Montana Rules of Civil Procedure.  In other words, if you file a motion for sanctions and the court denies it, you may be paying Jesse's attorneys' fees and costs.

*Kai Groenke*
**Law Office of Kai Groenke, P.C.**
239 2nd Street West
Kalispell, MT  59901
Tel:  (406)-890-2999
www.familylawflathead.com

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege.  These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication.  This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended.  If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited.  Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email.  Thank you.*

Exhibit 22 p. 002

|                       |     |                                     |
|-----------------------|-----|-------------------------------------|
|                       | )   |                                     |
| RYAN DEAN GABRIEL,    | )   | Civil No. *CV 23-142 - M-DLC-kLD*   |
|                       | )   |                                     |
| Plaintiff,            | )   |                                     |
|                       | )   | **SUMMONS**                         |
| vs.                   | )   |                                     |
|                       | )   |                                     |
| JESSE MARK OLSEN,     | )   |                                     |
|                       | )   |                                     |
| Defendant             | )   |                                     |
| ----------------------| )   |                                     |

To:  Jesse Mark Olsen
     650 S. Gaines St.
     Portland, OR 97239

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Ryan Dean Gabriel
> 2000 Blacktail Road #1140
> Lakeside, MT 59922

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 11/17/27

_Signature of Clerk or Deputy Clerk_

Exhibit 23 p. 001

FILED

NOV 17 2023

Clerk, U S District Court
District Of Montana
Missoula

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA**
**Missoula Division**

)
RYAN DEAN GABRIEL,                )        Civil No. Cv 23-142-M-DLC-KLD
)
            Plaintiff,            )
)                **COMPLAINT AND CLAIM /**
        vs.                       )        **PRAYER FOR DECLARATORY AND**
)                **INJUNCTIVE RELIEF**
JESSE MARK OLSEN,                 )
)
            Defendant             )
)
------------------------------------------)

    Plaintiff Ryan Dean Gabriel brings this Complaint against the above-named Defendant, and states the following in support thereof:

## PRELIMINARY STATEMENT

    1.    On March 22, 2022, Defendant Jesse Mark Olsen ("Mr. Olsen"), by and through his attorney Roscoe C. Nelson, Jr. (III) ("Mr. Nelson"), filed a civil family lawsuit in Multnomah County, Oregon against Plaintiff Ryan Dean Gabriel ("Mr. Gabriel") alleging that Mr. Gabriel and Mr. Olsen had been "married" for 12 years, starting in 2010, seeking a dissolution of the alleged marriage. That lawsuit is pending and the trial date is set for January 17, 2024. Defendant Mr. Olsen through his attorney has since backpedaled these allegations as discovery unfolds, now asserting that Mr. Gabriel and Mr. Olsen were merely in an unregistered domestic partnership per Oregon's controversial *'Beal v. Beal'*[1] case law precedent, even though Oregon is neither a common law marriage state nor a "community property" jurisdiction.

---

[1] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.

Exhibit 23 p. 002

2.     Prior to receipt of Mr. Olsen's Summons, which began with the proclamation, "Your spouse has filed a Petition asking for a dissolution of your marriage", Mr. Gabriel had not ever once considered the viability of anything resembling "unregistered domestic partnership" laws in Oregon, which does not recognize common law marriage, is not a community property state, and in which he does not reside. Mr. Gabriel has been a resident of Montana since Feb. 2021, and prior to that was a resident of Washington State, stretching back to 2001.

3.     Mr. Gabriel has a Montana Drivers' License, files his taxes in Montana, has a Montana vehicle license, and his employers from 2002 onwards have only known him to reside in Washington State and Montana. All payroll taxes and employment-related taxes for Mr. Gabriel have been paid to and recorded in Washington State and Montana since 2002 to present, and Mr. Gabriel has only been eligible for unemployment and other related state benefits in Washington State and Montana since 2002 to present. Additionally, Mr. Gabriel has only ever voted in Washington State and Montana since 2002 and has never held an Oregon State identification card, nor an Oregon vehicle license plate. Mr. Gabriel categorically denies being married to Defendant Mr. Olsen, or ever once signaling his intent to enter into a domestic partnership under Oregon law.

4.     While Mr. Olsen and his attorney Mr. Nelson have not yet cited any specific case law precedent in any of their filings with the Multnomah County Circuit Court, family law judges in Oregon seem to assume that *'Beal v. Beal'* and its progeny comprise the precedent case law which could plausibly support Mr. Olsen's alleged domestic partnership claims. The precedent set by *'Beal v. Beal'* has been from the outset a controversial, activist workaround to enable Oregon courts to break with a previous, longstanding "clean hands" doctrine, giving litigants and judges a *de facto* common law marriage and dissolution construct, even though the litigators in these cases go to great lengths to deny that the parties are involved in any common law marriage.

Exhibit 23 p. 003

5.      Abuse of this controversial Oregon case law has and will continue to have devastating consequences for Mr. Gabriel and any other unwitting party to an alleged claim of implied or unregistered domestic partnership with real property in Oregon. Among other things, disproving such an allegation requires tremendous expense, time, resources, and violations of personal privacy. Specifically, Mr. Olsen through his attorney has stated that his goal is to liquidate Mr. Gabriel's properties, evict Mr. Gabriel from his Montana home, ignore previous inputs, labor, investments and debts, nullify Mr. Gabriel's property management agreement with Zurc Capital, LLC, and divide the proceeds of all liquidated assets equally – which effectively would result in a massive wealth and balance sheet transfer from Mr. Gabriel to Mr. Olsen. Parties such as Mr. Gabriel have had and will have to shoulder the hardship of disruptive and expensive travel to attend ongoing court proceedings in a jurisdiction (Multnomah County, Oregon) where he does not reside, often at the expense of time otherwise spent at work and doing otherwise productive things, and often at great risk and danger (e.g., the drive from Flathead County, Montana to Portland, Oregon is 10.5 hours each way, with icy mountain passes in between).

6.      Mr. Olsen's abuse of this controversial case law not only gravely threatens the financial well-being of Plaintiff Mr. Gabriel; it is also unconstitutional. The construct of 'unregistered domestic partnership' in which one party (Mr. Gabriel) is unwittingly and forcibly entered into a *de facto* marital or domestic partnership contract in a state (Oregon) in which he does not reside and without his consent violates the Due Process Clause of the Fourteenth Amendment to the US Constitution, by depriving Mr. Gabriel his fundamental right to make decisions concerning his life, his future, his property and his residency. In other words, the Due Process Clause of the Fourteenth Amendment gives all adult US citizens the "right not to marry"[2] or **not** to otherwise be conscripted into a related construct (i.e., 'domestic partnership'), foiling

---

[2] Kaiponanea T. Matsumura, *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016). Available at: https://ir.lawnet.fordham.edu/flr/vol84/iss4/11

Exhibit 23 p. 004

any clever workarounds that may have been or may soon be invented by radical attorneys – with the assistance of activist judges – in creative jurisdictions such as Oregon. (Emphasis added.)

## PARTIES

7. Plaintiff, Ryan Dean Gabriel (hereinafter referred to as 'Mr. Gabriel') at all times relevant hereto, is an individual residing at 2000 Blacktail Road, #1140, Lakeside, Montana 59922.

8. Defendant, Jesse Mark Olsen (hereinafter referred to as 'Mr. Olsen') at all times relevant hereto, is an individual residing at 650 S. Gaines St. in Portland, OR 97239.

9. A third party, Zurc Capital, LLC (hereinafter referred to as 'Zurc') at all times relevant hereto, is a duly formed limited liability corporation of the State of Wyoming, located at 20 N. Gould Street, Suite N, Sheridan, Wyoming 82801.

10. A third party, Roscoe C. Nelson, Jr. (hereinafter referred to as 'Mr. Nelson'), doing business as sole proprietorship 'Nelson & Nelson', at all times relevant hereto, is:

    (a)    a non-incorporated business (sole proprietorship) doing business under the laws of the State of Oregon, the name certificate for which was revoked on February 23, 2023.

    (b)    an adult citizen of the State of Oregon who resides at 2903 SW Fairview Boulevard, Portland, Oregon 97205.

## JURISDICTION AND VENUE

11. This action arises under the U.S. Constitution, 42 U.S.C. § 1983.

12. This Court has subject matter jurisdiction pursuant to Article III of the U.S. Constitution and 28 U.S.C. §§ 1331, 1343.

13. This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14. Venue of this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims have and continue to occur in this district.

4    COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 23 p. 005

## FACTUAL BACKGROUND AND ARGUMENTS

### A. The Right Not to Marry

15. In *'Obergefell v. Hodges'*[3] the Court held that "the right to marry is protected by the Constitution" under the Due Process Clause. In its ruling, the majority gave four reasons for this: (1) marriage is "inherent in personal autonomy", (2) marriage is a "union unlike any other in its importance to" the parties, (3) the right to marry connects to the right to make decisions about family, procreation, and childrearing, and (4) marriage is a "keystone of our social order".

16. In the United States, many legal scholars and authorities subscribe to the notion that the U.S. Constitution enshrines certain fundamental rights that arise by its express terms or through implication. Today, the idea of fundamental rights is enforced through Section 1 of the Fourteenth Amendment of the Constitution (*See* U.S. Const. amend. XIV, § 1), which reads:

> "*All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*"

17. The Supreme Court has contributed to this federalization of domestic relations laws by "constitutionalizing" family law. It has repeatedly used the U.S. Constitution, in particular the Fourteenth Amendment, to extend constitutional privacy protections to increasing numbers of persons and to invalidate state laws in areas of law previously thought to be the exclusive province of state legislatures and state courts.

---

[3] *Obergefell v. Hodges*, 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)

Exhibit 23 p. 006

18.     Furthermore, starting with *'Shelley v. Kraemer'*, 334 U.S. 1, 13 (1948), Federal courts have clarified that State actions of a particular character are prohibited. While individual invasion of individual rights is not the subject-matter of the Fourteenth Amendment, it has a deeper and broader scope in that it nullifies and makes void all State legislation, and State action of every kind, including precedent case law, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws.

19.     The U.S. Supreme Court has interpreted the Constitution to recognize the existence of several fundamental rights that were not expressly stated, including an individual's right to marry. As eloquently argued by Kaiponanea T. Matsumura in *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016), "State actions that compel marriage can be seen as falling on a spectrum from minimal interventions, like creating legal incentives for people to marry (for example, by providing favorable inheritance, tax, evidence, and tort rules to married couples), to maximal ones (like requiring marriage between unwilling participants). These actions differ both in terms of the degree of coercion and the nature of state intervention."

20.     Matsumura continues, "Depending on which state actions the right not to marry would prevent, that right can also be understood as falling along a spectrum. For example, the recent framing of the right to marry in terms of "personal choice" and "individual autonomy" (*Obergefell*, 135 S. Ct. at 2597, 2599) leaves little doubt that the Fourteenth Amendment would recognize, at the very least, some right not to marry—it is unlikely that the state could pair off unmarried strangers and deem them legally married over their objection."

21.     Finally, Matsumura writes, "If the right not to marry is thought of as freedom from state-imposed marriage, the autonomy interests become symmetrical with the interests protected by the right to marry. Choosing to marry only takes on meaning because of the freedom to choose

not to marry. Although the state may prefer one choice over the other, the choice in either direction has the same valence from the perspective of self-definition and autonomy."

22.     Under Oregon statutory law, marriage and domestic partnerships are treated identically for the purposes of dissolution (*See* Oregon Revised Statutes, "ORS" Chapter 107 – *'Marital Dissolution, etc.'*), and also as evidenced by the repeated invocation of ORS Chapter 107 by the attorney for Defendant, Mr. Nelson, in his Summons and throughout his originally served lawsuit on March 22, 2022.

23.     In *Zablocki v. Redhail*, 434 U.S. 374, 386 (1978), the court noted the importance of "the decision to enter the relationship that is the foundation of the family in our society"). Thus, the right not to marry (or in the instant case, not to be involuntarily conscripted into an Oregon domestic partnership) is justified by an additional, related value.   In its purest form, the right would entail freedom from state interference in "matters of family life" that are protected by the Due Process Clause.   In safeguarding a range of related "intimate and personal" choices, the Court has noted that "[b]eliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State." This concept of noninterference characterizes the privacy rights recognized under the Due Process Clause.[4]   While the Obergefell majority's theory of autonomy and identity envisions the right to marry moving in the direction of a positive right, a negative right not to marry would still rest on more solid conceptual ground."[5]   All of these arguments apply to some degree or another to the right to enter into a domestic partnership subject to any state's laws, and inversely the right not to.

[4] *See* Cass R. Sunstein, *'The Right to Marry'*, 26 CARDOZO L. REV. 2081, 2089–94 (2005); note 20, at 2094 ("For the ordinary privacy rights with which marriage is associated, the Constitution requires governmental noninterference; it does not require the government to provide money, institutional arrangements, or anything else.")

[5] *See* Matsumura, *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016) notes 127–30 and accompanying text. (concluding that the right to marry protects equal access to whatever rights a state elects to associate with marriage, rather than a positive right to marriage). Available at: https://ir.lawnet.fordham.edu/flr/vol84/iss4/11

## B. State Responses to *'Obergfell'*

24.     Per Matsumura, "Despite their differences, nonmarital relationships—from municipal registries, to state employment benefits, to state alternatives to marriage—all exist in what Professor Douglas NeJaime has called a "dialogical relationship" with marriage[6]; these statuses arose in the shadow of, in imitation of, and sometimes in opposition to, the institution of marriage.[7] The arrival of nationwide marriage equality therefore calls into question their reasons for being and leaves their future existence in jeopardy." Thus, in this instant lawsuit, Plaintiff Mr. Gabriel hereby calls into question the reason for Oregon's *'Beal v. Beal'* and its progeny.

25.     Matsumura continues, "Many jurisdictions have already phased out existing nonmarital statuses like domestic partnerships and civil unions or are moving in that direction.[8] These jurisdictions have not only closed the statuses to future registrants, but have eliminated them altogether." Thus, the reasoning behind the original decision in *'Beal v. Beal'* and subsequent cases in Oregon becomes impossibly thin, post-*Obergefell*, and cannot now withstand a confrontation with the Due Process Clause of the Fourteenth Amendment.

## C. Liberty, Identity, Privacy, Consent and Personal Autonomy

26.     The liberty and personal autonomy arguments surrounding marriage and legal domestic partnerships reached their zenith in the Court's latest discussion of the right to marry in *'Obergefell'*. Justice Kennedy's majority opinion starts from the lofty premise that the "liberty" protected by the Fourteenth Amendment extends to "personal choices central to individual dignity

---

[6] Douglas NeJaime, *'Before Marriage: The Unexplored History of Nonmarital Recognition and Its Relationship to Marriage'*, 102 CAL. L. REV. 87, 111 (2014).
[7] Melissa Murray, *'Paradigms Lost: How Domestic Partnership Went from Innovation to Injury'*, 37 N.Y.U. REV. L. & SOC. CHANGE 291, 294–96 (2013).
[8] *See* generally WASH. REV. CODE § 26.60.010 (2014). *See also* 2012 Wash. Sess. Laws 203 ("[A]ny state registered domestic partnership in which the parties are the same sex, and neither party is sixty-two years of age or older, that has not been dissolved or converted into a marriage by the parties by June 30, 2014, is automatically merged into a marriage and is deemed a marriage as of June 30, 2014." *See also* CONN. GEN. STAT. § 46b-38rr (2009) (converting existing civil unions to marriages after October 1, 2010); *see also* 'Act Implementing the Guarantee of Equal Protection', 2009 Conn. Acts No. 9-13 § 12(a). *See also* DEL. CODE ANN. tit. 13, § 218 (2013); see also '*Civil Marriage Equality and Religious Freedom Act of 2013*', 79 Del. Laws ch. 19, § 6 (2013). *See also* N.H. REV. STAT. ANN. § 457:46 (2010).

8       COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 23 p. 009

1  and autonomy, including intimate choices that define personal identity and beliefs." ('*Obergefell*
2  *v. Hodges*', 135 S. Ct. 2584, 2597 (2015). Several principles explain why the right to marry falls
3  within this concept of liberty. First, the choices "whether and whom to marry" are "among life's
4
5  momentous acts of self-definition." (*Id.* at 2599 (quoting '*Goodridge v. Dep't of Pub. Health*',
6  798 N.E.2d 941, 955 (Mass. 2003)). Thus, because these decisions are "inherent in the concept
7  of individual autonomy"—and, indeed, they "shape an individual's destiny"—they are
8  constitutionally protected. (*Id.*)

9      27.     In '*Obergefell*', the Court tells us that "by the time of the Nation's founding
10  [marriage] was understood to be a voluntary contract." *(Id.)*

11      28.     The same is true of domestic partnerships in Oregon. Under Oregon statutory law
12  governing domestic partnerships, Oregon Revised Statutes (hereafter "ORS") Chapter 106, which
13  spells out Oregon's statutory law governing the establishment of domestic partnerships, in
14  particular 106.325 (5) (d):
15

16          "*(5) On the Declaration of Domestic Partnership, each individual who*
17      *wants to become a partner in a domestic partnership shall:*

18          *(...) (d) State that the individual **consents** to the jurisdiction of the circuit*
19      *courts of Oregon for the purpose of an action to obtain a judgment of dissolution*
20
21      *or annulment of the domestic partnership or for legal separation of the partners*
22      *in a domestic partnership, or for any other proceeding related to the partners'*
23      *rights and obligations, even if one or both partners cease to reside in, or to*
24      *maintain a domicile in, this state; (...)"*
25

26      29.     What is remarkable about this statute is that Oregon law makes it abundantly clear
27  that **consent** is required to enter into a domestic partnership in Oregon, and further suggests that
28  residency is required (i.e., "*cease(s) to reside in* [Oregon]"). (Emphasis added.)

9     COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 23 p. 010

## D. Conscriptive Approaches to Cohabitant Obligations; Fraud; Uncertainty

30.    In *'Is Consent Necessary? An Evaluation of the Emerging Law of Cohabitant Obligation* [9], UCLA legal scholar Marsha Garrison investigates the extent to which adoption of a conscriptive approach to cohabitant obligation would "mar the symmetry of the legal structure" and examines those "considerations of history or custom or policy or justice" that might justify an asymmetrical law of family obligation.    Garrison explains why "our law has relied on commitment as a determinant of marital obligation and evaluates possible justifications for the conscriptive approach", and concludes that "those justifications are clearly inadequate to support conscriptive rules for cohabitants who do not have common children and that, while the case of cohabitants with common children is more complex, conscriptive rules would almost certainly work more harm than good even for this limited group."

31.    Garrison continues, "The contrasting relational perspectives of cohabitants and married couples emerge in many ways, but attitudes toward money are particularly revealing. Blumstein and Schwartz, who conducted a pioneering survey of American couples, analyzed responses to a range of questions on sharing and concluded that "married couples unconsciously assume a commingling of money and... cohabitors assume separate finances." [10].

32.    Garrison then poses the pivotal question, *"Does It Make More Sense to Require Cohabiting Couples to Contract Out or Contract In?"* by devoting an entire chapter to the topic, writing, "The evidence on equivalence establishes that it would be grossly unfair to treat all or even most cases of cohabitation like marriage: despite a small number of marriage-like relationships, cohabitants typically do not see their relationships as marital and do not behave like married couples;" and further, and in particular:

> *"The decline of common law marriage reflects the sad fact that litigation-*

---

[9] 52 UCLA L. Rev. 815 (2005)
[10] *See* PHILIP BLUMSTEIN & PEPPER SCHWARTZ, *'American Couples: Money, Work, Sex'* (1983), 98, at 98.

10    COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 23 p. 011

*based determination of marital commitment "leads to fraud and uncertainty*

*in the most important of human relationships.[11] Unsurprisingly, more complex*

*formulations of the requirements for a common law marriage produce more*

*fraud and uncertainty than simpler ones. Even a five-factor requirement list*

*led appellate Judge Jackson of Utah to expostulate that, "[in litigation[,] each*

*element becomes a source of dispute." Judge Jackson urged "a simpler scheme*

*with fewer elements" if the legislature "wants to keep some form of common-*

*law marriage,"[12] but his clear preference was abolition of the doctrine outright:*

*"Most American states have already experimented with this doctrine. Based*

*on their experience, all but ten have repealed common-law marriage. Utah*

*should not recycle this great experiment."[13]*

33.    In the immediate, pending Oregon domestic partnership dispute between Mr. Gabriel and Mr. Olsen, Mr. Nelson (attorney for Mr. Olsen) hinges his lawsuit on the pivotal claims, promoted heavily in Mr. Olsen's various filings in Multnomah County Circuit Court (State of Oregon) Case No. 22DR04942, including and in particular *'Petitioner's Response to Defendant's Motions to Dismiss'* that "the parties spent years together representing themselves as a marital couple ... to the world and in acquiring property jointly", arguing that the dissolution of the alleged domestic partnership is "no different than any other dissolution of marriage."

34.    On this point, Garrison opines, "The common law marriage "experiment" demands factual inquiry into only two issues, whether there was a present agreement to be married and

---

[11] *See* HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES 48 (2d ed. 1987), note 22, at 59. *See also* Cynthia Grant Bowman, *'A Feminist Proposal to Bring Back Common Law Marriage'*, 75 OR. L.REV. 709, 731-50 (1996). Bowman reviewed historical data and concluded that the abolition of common law marriage reflected the elimination of the "frontier conditions" rationale for informal marriage; fears of fraud in the transmission of property; a desire to protect marriage and the family against alternative forms of sexual unions; racism and eugenics; the movement to maintain vital statistics and enforce various health-related requirements for marriage through the licensing process; and administrative and judicial efficiency.
[12] *'Kelley v. Kelley'*, 9 P.3d 171, 184 (Utah Ct. App. 2000) (Jackson, J., dissenting).
[13] *Id.* at 185 (Jackson, J. dissenting)

11      COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 23 p. 012

1    whether the couple publicly held themselves out as married. If these two facts are so hard to

2    determine that the potential for fraud and uncertainty outweighs the benefit of the doctrine, then

3    one must assume that the "anything relevant to life as a couple" approach of the *'De Facto*

4
5    *Relationships Act of New Zealand'[14]* or 'American Legal Institute Principles'[15] (as examples)

6    would produce even more ***fraud and uncertainty***, with even less offsetting benefit." (Emphasis

7    added).

8    35.    With respect to Garrison's above-referenced point that litigation-based

9    determination of marital or domestic partnership commitment "leads to fraud and uncertainty", it

10   is important to note that if an Oregon court were to decide that Mr. Olsen and Mr. Gabriel were

11   in a domestic partnership subject to dissolution under Oregon law, then Mr. Olsen in particular
12
13   would be potentially found guilty of committing fraud on multiple counts by his lender SNMC,

14   along with all governing authorities with relevant statutes defining mortgage fraud.

15   36.    Per federal mortgage lending regulations guided by FinCEN and as enforced by

16   FERA (Fraud Enforcement and Recovery Act of 2009), so too would possible criminal

17   Department of Justice (hereinafter "DOJ"), Federal Bureau of Investigation (hereinafter "FBI"),

18   Federal Trade Commission (hereinafter "FTC"), Department of Housing and Urban Development
19
     (hereinafter "HUD") and Securities and Exchange Commission ("hereinafter "SEC") probes into
20
21   Defendant Mr. Olsen's written stated denial of the existence of any domestic partnership to his

22   mortgage lender, SNMC, during SNMC's application, underwriting, closing and title recording

23   phase – a lender which then sold the mortgage loan to PNC Bank ("PNC") – statements made all

24   while Mr. Olsen conversely sues Plaintiff Mr. Gabriel using directly contradictory claims.

25

26   ---
     [14] *'Property (Relationships) Amendment Act, 2001'* (N.Z), available at http:///www.legislation.govt.nl. For
27   descriptions of the legislation and its development, *see* Bill Atkin, The Challenge of Unmarried Cohabitation-The
     New Zealand Response, 37 FAM. L.Q. 303 (2003); Virginia Grainer, *'What's Yours Is Mine: Reform of the Property*
28   *Division Regime for Unmarried Couples in New Zealand'*, 11 PAC. RIM L. & POL'Y J. 285 (2002).
     [15] AM. LAW INST., PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND
     RECOMMENDATIONS ch. 6 (2002).

Exhibit 23 p. 013

### E. Venue, Subject Matter Jurisdiction

37.     Beginning with the Warren Court in the mid 1960s, Supreme Court decisions have affected nearly every area of family law, transforming what had been seen as ordinary state-regulated family issues—regulation of marriage, criminal laws on contraception, etc.—into constitutional issues of equality, privacy, and federalism. Over 100 Supreme Court cases have dealt with such issues as establishing and terminating parental status; child abuse and neglect; marriage; jurisdiction for divorce, alimony, division of property, child custody, and child support; family property rights such as homestead, pensions, and insurance proceeds; family living arrangements; child custody and visitation; and child rearing. The Supreme Court has set the framework for examining domicile, jurisdiction, and full faith and credit issues for recognizing sister state divorce decrees.

38.     As argued previously, starting with *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948), Federal courts have clarified that State actions of a particular character is prohibited: "While individual invasion of individual rights is not the subject-matter of the Fourteenth Amendment, it has a deeper and broader scope in that it nullifies and makes void all State legislation, and State action of every kind, including precedent case law, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws."

39.     This ongoing constitutionalization of family law is likely to continue because the Supreme Court appears willing to recognize new rights protected by substantive due process. In addition, the protection is not limited to traditional families. As families become even more diverse and problems more complex, the Supreme Court (hereinafter "SCOTUS") is likely to be the final voice, although lower Federal courts are equally proper venues to hear cases that are not challenged all the way up to SCOTUS, or which are unlikely to be taken up by SCOTUS.

Exhibit 23 p. 014

## F. Implied Intent; Abolition of Common Law Marriage

40.     Here it is important to cite among other national trends the effective abolition of common law marriage via such landmark cases as *PNC Bank Corp. v. W.C.A.B.* (Stamos), 831 A.2d 1269 (Pa. Commw. Ct. 2003) and *Stone v. Thompson*, 428 S.C. 79, 82, 833 S. E.2d 266, 267 (July 24, 2019)[16]. Taken together, these recent rulings and others have effectively abolished common law marriage nationwide, including, as argued in this instant case, such related constructs as implied domestic partnership – particularly following the '*Obergfell v. Hodges'* SCOTUS decision. The legal reasoning of the Courts has consistently been that, following '*Obergfell'* and other statutory and case law revisions governing common law marriage, there is no basis for the Courts to determine implied *intent* of the parties when the avenues for filing for marriage or domestic partnership are readily, easily and cheaply available – and without impediment, in any state – to anyone who intends such an arrangement. (Emphasis added.)

## CAUSES OF ACTION

## COUNT ONE

---

[16] "We find the Pennsylvania court's reasoning and other considerations sufficiently persuasive to adopt a bright-line rule requiring those who wish to be married in South Carolina to obtain a lawful license. Our law contains similar provisions regarding child support, inheritance, and the ceremonial marriage process. *See* S.C. Code Ann. §§ 20-1-210 to -240 (1976); §§ 62-2-101 to -109 (1976 & Supp. 2018); § 63-5-20 (1976 & Supp. 2018). (...) The current case is emblematic of this shift, as the parties' community of friends was wholly unconcerned with their marital status, and indeed several of their witnesses were in similar relationships. Meanwhile, courts struggle mightily to determine if and when parties expressed the requisite intent to be married, which is entirely understandable given its subjective and circumstantial nature. The solemn institution of marriage is thereby reduced to a guessing game with significant ramifications for the individuals involved, as well as any third party dealing with them." *(...)*

"Critically, non-marital cohabitation is exceedingly common and continues to increase among Americans of all age groups. The right to marry is a fundamental constitutional right, *Obergefell v. Hodges* , —— U.S. ——, 135 S. Ct. 2584, 2604-05, 192 L.Ed.2d 609 (2015), which leads us to believe the right to remain unmarried is equally weighty, particularly when combined with our admonitions that a person cannot enter into such a union accidentally or unwittingly, *Callen v. Callen* , 365 S.C. 618, 626, 620 S.E.2d 59, 63 (2005). Further, we must agree with the many observers who have noted that common-law marriage requirements are a mystery to most. The present case is again illustrative. None of the multiple witnesses who were asked understood what was required to constitute a common-law marriage, despite the fact that, as mentioned, several were involved in lengthy cohabitating relationships themselves. Moreover, two of such partners testified in complete opposition to one another, with one reporting they were common-law married, and the other stating emphatically they were not. This further persuades us to reject a mechanism which imposes marital bonds upon an ever-growing number of people who do not even understand its triggers." *Stone v. Thompson*, 428 S.C. 79, 85-86 (S.C. 2019)

14      COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 23 p. 015

**DEFENDANT'S ABUSE OF UNREGISTERED DOMESTIC PARTNERSHIP CASE LAW IN OREGON VIOLATES THE PLAINTIFF'S RIGHTS OF LIBERTY, DIGNITY, PRIVACY, AND PERSONAL AUTONOMY GUARANTEED BY THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE**

41.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 40 as if fully set forth herein.

42.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

43.     As previously articulated by Justice Kennedy's majority opinion in *'Obergefell'*, "liberty" as protected by the Fourteenth Amendment extends to "personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs."

44.     As established herein, SCOTUS further held that several principles explain why the right to marry falls within this concept of liberty (*'Obergefell'*, 135 S. Ct. at 2597, 2599). First, the choices "whether and whom to marry" are "among life's momentous acts of self-definition." Thus, because these decisions are "inherent in the concept of individual autonomy"— and, indeed, they "shape an individual's destiny"—they are constitutionally protected.

45.     As argued herein, the right not to marry or enter into a legal domestic partnership is justified by an additional, related value. In its purest form, the right would entail freedom from state interference in "matters of family life" that are protected by the Due Process Clause.[17]

---

[17] *See 'Zablocki v. Redhail'*, 434 U.S. 374, 386 (1978); see also *id.* (noting the importance of "the decision to enter the relationship that is the foundation of the family in our society").

Exhibit 23 p. 016

46. In safeguarding a range of related "intimate and personal" choices, the Court majority in *'Obergefell'* has noted that "[b]eliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State." This concept of noninterference characterizes the privacy rights recognized under the Due Process Clause.[18]

47. All of these arguments apply to some degree or another to the right to enter into a domestic partnership subject to any state's laws, and inversely the right not to.

48. In *'Obergefell'*, the Court tells us that "by the time of the Nation's founding [marriage] was understood to be a voluntary contract. The same is true of domestic partnerships in Oregon.

49. Defendant Mr. Olsen has abused Oregon case and statutory law in the process of violating Plaintiff Mr. Gabriel's Fourteenth Amendment due process rights.

50. Under Oregon statutory law governing domestic partnerships, ORS Chapter 106, which lays out statutory law governing the establishment of domestic partnerships, in particular 106.325 (5) (d), which requires "*that the individual consents to the jurisdiction of the circuit courts of Oregon for the purpose of an action to obtain a judgment of dissolution or annulment of the domestic partnership or for legal separation of the partners in a domestic partnership, or for any other proceeding related to the partners' rights and obligations, even if one or both partners cease to reside in, or to maintain a domicile in, this state;*" Oregon law makes it abundantly clear that *consent* is required to enter into a domestic partnership in Oregon, and further suggests that residency is required (i.e., "*cease(s) to reside in* [Oregon]"). Plaintiff Mr. Gabriel has never consented to this, and there is no evidence of consent.

51. Accordingly, Plaintiff Mr. Gabriel is entitled to declaratory and injunctive relief.

---

[18] *See* Cass R. Sunstein, *'The Right to Marry'*, 26 CARDOZO L. REV. 2081, 2089–94 (2005); note 20, at 2094 ("For the ordinary privacy rights with which marriage is associated, the Constitution requires governmental noninterference; it does not require the government to provide money, institutional arrangements, or anything else.")

Exhibit 23 p. 017

52.     Without injunctive relief from Mr. Olsen's abuse of Oregon's domestic partnership case law, Plaintiff will continue to suffer irreparable harm, undue burden and expense in the future, and a clear violation of his Fourteenth Amendment due process rights.

## COUNT TWO

### ANY FINDING BY AN OREGON COURT THAT THE PARTIES ARE IN A DOMESTIC PARTNERSHIP WOULD POTENTIALLY IMPLICATE THE PLAINTIFF IN MORTGAGE FRAUD ALONG WITH THE DEFENDANT

53.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 40 as if fully set forth herein.

54.     If an Oregon court were to decide that Mr. Olsen and Mr. Gabriel were in a domestic partnership subject to dissolution under Oregon law, then Mr. Olsen in particular would be potentially found guilty of committing fraud on multiple counts by his lender SNMC, along with all governing authorities with relevant statutes defining mortgage fraud.

55.     Per federal mortgage lending regulations guided by FinCEN and as enforced by FERA (Fraud Enforcement and Recovery Act of 2009), so too would possible criminal Department of Justice (hereinafter "DOJ"), Federal Bureau of Investigation (hereinafter "FBI"), Federal Trade Commission (hereinafter "FTC"), Department of Housing and Urban Development (hereinafter "HUD") and Securities and Exchange Commission ("hereinafter "SEC") probes into Defendant Mr. Olsen's written stated denial of the existence of any domestic partnership to his mortgage lender, SNMC, during SNMC's application, underwriting, closing and title recording phase – a lender which then sold the mortgage loan to PNC Bank ("PNC") – statements made all while Mr. Olsen conversely sues Plaintiff Mr. Gabriel using directly contradictory claims.

56.     Accordingly, Plaintiff Mr. Gabriel is entitled to declaratory and injunctive relief.

57.     Without injunctive relief from Mr. Olsen's abuse of Oregon's domestic partnership case law, Plaintiff will continue to suffer irreparable harm in the future, and possibly

Exhibit 23 p. 018

1  even the Defendant will incur irreparable harm inflicted upon him by his own lawsuit, insofar as

2  his claims are potentially criminally fraudulent and would invoke criminal prosecution.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiff respectively prays that this Court:

5  A. Enter a judgment declaring that Defendant Mr. Olsen's Oregon domestic partnership

7  lawsuit:

8      i.  violates the Due Process Clause of the Fourteenth Amendment by infringing

9          upon Plainiff's fundamental right to liberty, dignity, privacy, and personal

10         autonomy, and is therefore void and unenforceable.

11     ii. jeopardizes Plaintiff by potentially and needlessly implicating both the

12         Plaintiff but also primarily the Defendant in potential criminal mortgage

13         fraud, were an Oregon court to somehow find a domestic partnership does

15         exist in Oregon under *'Beal v. Beal'* and its progeny.

16 B. Issue preliminary and permanent injunctions enjoining Defendant, his legal counsel

17    and those in active concert or participation with him from pursuing his marriage or

18    domestic partnership claim, in any jurisdiction.

19 C. Waive the requirement for the posting of a bond of security for the entry of temporary

20    and preliminary relief;

22 D. Award Plaintiff his costs and expenses, including reasonable attorneys' fees, pursuant

23    to 42 U.S.C. U.S.C. § 1988 and all other applicable statutes and sources of law; and

24 E. Grant such other relief as the Court deems just and proper.

26                              * * *

18    COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 23 p. 019

1

2     DATED this 17ᵗʰ Day of NOVEMBER, 2023.

3

      Respectfully submitted,
4

5

6

7
                                    Plaintiff, *Pro Se* (signature)
8
                                    Ryan D. Gabriel
9                                   2000 Blacktail Rd. #1140
                                    Lakeside, MT 59922
10

11
                                    (403) 606 - 5859
12                                  Telephone

13

14

15    Submitted by Ryan Dean Gabriel, *pro se*
      (206) 391-9886
16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 23 p. 020

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Monday, November 20, 2023 8:12 PM |
| **To:** | Roscoe C. Nelson |
| **Cc:** | Attorneys; Kai Groenke; Melissa Smith; jesse.m.olsen@gmail.com; jesse.olsen@nike.com; pli; Philip Li; aegil2@gmail.com |
| **Subject:** | Re: Federal Civil Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen |

https://youtu.be/exaEt7szfi4?feature=shared    *Account has been terminated*

On 11/20/2023 9:00 PM EST Roscoe C. Nelson <mail@roscoecnelson.com> wrote:

I am on vacation returning on the 22nd. You are and remain a pile of shit.

Sent from my iPad

> On Nov 18, 2023, at 8:17 PM, Ryan Gabriel <rgabriel@zurccapital.com> wrote:
>
> Roscoe,
>
> Further to the below, and for conferral purposes, pursuant to ORCP 53 and/or ORCP 52 I intend to file this week a Motion to Bifurcate Trial (for OR Case # 22DR04942 and OR Case # 22CV10399), or in the alternative to Postpone Trial due to the filing of the below cited Federal lawsuit.
>
> Absent your objection I will file this along with a notification to Judge Henry that the two parties in Case No. 22CV10399 cannot agree to a date for purposes of Stipulated Order setting Trial Date for Case No. 22CV10399.
>
> Cheers,
>
> Ryan D. Gabriel
> Zurc Capital, LLC
> rgabriel@zurccapital.com
>
> **206.391.9886** mobile
> **403.606.5859** office
> **855.488.ZURC** toll free
>
> > On 11/18/2023 12:26 AM EST Ryan Gabriel <rgabriel@zurccapital.com> wrote:
> >
> > Roscoe/Jesse/Taylor ('Kai'),
> >
> > Attached and below please find the Summons, Complaint and Claim for the now-filed Federal Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen.

1

Exhibit 24 p. 001

These will be served upon both known attorneys for Jesse Mark Olsen, absent any new information about newly retained counsel for this Federal case. The Federal court has both Roscoe C. Nelson, Jr. (III) and Taylor ('Kai') Groenke recorded as counsel of record.

I intend to pursue the Federal case as far as it can be pursued, which I anticipate will be the Supreme Court of the United States, absent a complete victory in a lower Federal court overturning 'Beal v. Beal' and its progeny in Oregon once and for all.

If there is no reply to this e-mail, I will order the Portland-based process server to serve these documents to Jesse at his place of employment, which they have ongoing experience performing up to the executive suite at Nike.

Please note that a Motion for Appointment of Counsel is also being filed, as none of you have objected to my conferral attempts regarding the same.

Cheers,

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

206.391.9886 mobile
403.606.5859 office
855.488.ZURC toll free

---------- Original Message ----------
From: MTD_CMECF@mtd.uscourts.gov
To: MTD_CMECF@mtd.uscourts.gov
Date: 11/17/2023 6:49 PM EST
Subject: Activity in Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen PRO SE REGISTRATION FORM

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

2

Exhibit 24 p. 002

However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Montana**

## Notice of Electronic Filing

The following transaction was entered on 11/17/2023 at 4:49 PM MST and filed on 11/17/2023

**Case Name:** Gabriel v. Olsen
**Case Number:** 9:23-cv-00142-DLC-KLD
**Filer:** Ryan D. Gabriel
**Document Number:** 4

Docket Text:
## PRO SE REGISTRATION FORM by Plaintiff Ryan D. Gabriel. (SGN)

**9:23-cv-00142-DLC-KLD Notice has been electronically mailed to:**

**9:23-cv-00142-DLC-KLD Notice has been delivered by other means to:**

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105468959
[Date=11/17/2023] [FileNumber=3025763-
0]
[98a01732848524ff51cf00fed54d692b9b95609c890012
73acb5a04a1918a240e6
3c4e47aff3b00688b7ddd069faf7105a57fc7e44296cbf07
458717430338d8]]

3

Exhibit 24 p. 003

|  |  |
|---|---|
| JESSE MARK OLSEN, ) | Case No. 22DR04942 |
| Petitioner, ) | RESPONDENT/PLAINTIFF'S MOTION TO BIFURCATE TRIAL OR IN THE ALTERNATIVE TO POSTPONE TRIAL DUE TO FILING OF FEDERAL LAWSUIT |
| vs. ) | |
| RYAN DEAN GABRIEL, ) | |
| Respondent ) | PURSUANT TO ORCP 53 OR ORCP 52 |
| -------------------------------------------------------) | |
| RYAN DEAN GABRIEL, an individual, ) | Case No. 22CV10399 |
| Plaintiff, ) | |
| vs. ) | |
| JESSE MARK OLSEN, an individual, ) | |
| Defendant. ) | |

**UTCR 5.050 STATEMENT**

Respondent/Plaintiff requests oral argument and anticipates he will need 90 minutes for oral argument.  Court Reporting Services are requested, if available (FTR).

**UTCR 5.010 COMPLIANCE STATEMENT**

Respondent/Plaintiff attempted to confer in good faith with Petitioner's counsel by e-mail exchange on November 15, 2023, November 18, 2023 and November 19, 2023.  Despite these good faith efforts, the parties were unable to resolve this matter without involving the Court and Petitioner has stated through his counsel that he opposes the instant motions.

1    RESPONDENT/PLAINTIFF'S MOTION TO BIFURCATE TRIAL OR IN THE ALTERNATIVE TO POSTPONE TRIAL DUE TO FILING OF FEDERAL LAWSUIT

Exhibit 25 p. 001

## <u>MOTIONS</u>

Pursuant to ORCP 53 (B) and ORCP 52 (A), Respondent/Plaintiff, Ryan Dean Gabriel ("Mr. Gabriel") respectfully moves this Court for the following orders:

1.  An order to postpone the trial currently set for January 17, 2024 until after a ruling is made – including possible declaratory and injunctive relief – by a Federal Court (District of Montana, Missoula Division) for Federal Civil Case No. 9:23-cv-00142-DLC-KLD '*Gabriel v. Olsen*', filed on November 17, 2023, which challenges '*Beal vs. Beal*'[1] and its progeny, and which alleges that all related implied/unregistered domestic partnership case law is unconstitutional on Fourteenth Amendment (Due Process clause) grounds.[2]

2.  An order to bifurcate the trial currently set for January 17, 2024, into two parts:

    a.  A hearing to determine whether an unregistered domestic partnership can plausibly exist under the laws of the State of Oregon, following an anticipated ruling – including possible declaratory and injunctive relief – by a Federal Court (District of Montana, Missoula Division) for Federal Civil Case No. 9:23-cv-00142-DLC-KLD '*Gabriel v. Olsen*', filed on November 17, 2023, which challenges '*Beal vs. Beal*', and all related implied/unregistered domestic partnership case law as unconstitutional on Fourteenth Amendment (Due Process clause) grounds. *(Id.)*

    b.  A separate hearing to proceed with the partition of assets at issue, which will in turn depend upon the outcome of Federal Civil Case No. 9:23-cv-00142-

---

[1] *See* '*Beal v. Beal*', 282 Or. 115, 577 P.2d 507 (Or. 1978),
[2] *See* U.S. Const. amend. XIV, § 2

2      RESPONDENT/PLAINTIFF'S MOTION TO BIFURCATE TRIAL OR IN THE
       ALTERNATIVE TO POSTPONE TRIAL DUE TO FILING OF FEDERAL LAWSUIT

Exhibit 25 p. 002

DLC-KLD '*Gabriel v. Olsen*'. Any ruling in Respondent/Plaintiff's favor would convert this instant case into a *de facto* partition claim on the Oregon property at 5721 Salmon St., Portland OR 97221 alone, with no other complicating variables (such as the Montana property), thus dramatically reducing the scale and scope of discovery and production of documents as evidence in this hearing.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **FACTUAL BACKGROUND**

Petitioner/Defendant Mr. Olsen through his counsel moved this Court to consolidate Case No. 22CV10399, the first-filed action in this dispute (a partition claim on one piece of residential property, located at 5721 SW Salmon St., Portland OR 97221), into a later-filed domestic relations dissolution lawsuit, Case No. 22DR04942.

This Court later ordered (via Hon. Judge Beth Allen) that all discovery document production in Case No. 22DR04942 be completed (i.e., furnished to either party) by July 5, 2023. However, subpoenas still need to be issued, depositions still need to be taken, and the scope of witness testimony will hinge on whether this Court is hearing a dissolution of domestic partnership claim vs. a simple partition claim involving one piece of property.

A Federal Court (District of Montana, Missoula Division) has now taken up Federal Civil Case No. 9:23-cv-00142-DLC-KLD '*Gabriel v. Olsen*', filed on November 17, 2023, which challenges '*Beal vs. Beal*', and all related implied/unregistered domestic partnership case law as unconstitutional on Fourteenth Amendment (Due Process clause) grounds. *(Id.)* Thus, the scope of this Court's hearings in the instant lawsuit in Oregon will hinge entirely on the outcome of the Federal Civil Case No. 9:23-cv-00142-DLC-KLD '*Gabriel v. Olsen*'.

3       RESPONDENT/PLAINTIFF'S MOTION TO BIFURCATE TRIAL OR IN THE
        ALTERNATIVE TO POSTPONE TRIAL DUE TO FILING OF FEDERAL LAWSUIT

Exhibit 25 p. 003

## II. __ARGUMENT__

A.   Per ORCP 53(B), *Separate trials:* *"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or issues, always preserving inviolate the right of trial by jury as declared by the Oregon Constitution or as given by statute."*

As argued above, should the outcome of Federal Civil Case No. 9:23-cv-00142-DLC-KLD '*Gabriel v. Olsen'* favor Respondent/Plaintiff Mr. Gabriel, the scope and magnitude of this instant case and trial will narrow dramatically, saving this Court and all parties tremendous expense, time and inconvenience.  Thus, a separate hearing to adjudicate whether a domestic partnership is still plausible under Oregon law after the Federal ruling would be in order (or conversely, whether the issues are relegated to the pending partition claim), followed by a second hearing (trial) to adjudicate the separation of jointly owned property.

B.   Per ORCP 52 (A), *Postponement.* *"When a cause is set and called for trial, it shall be tried or dismissed, unless good cause is shown for a postponement. At its discretion, the court may grant a postponement, with or without terms, including requiring any party whose conduct made the postponement necessary to pay expenses incurred by an opposing party."*

Similar to the above argument, should the outcome of Federal Civil Case No. 9:23-cv-00142-DLC-KLD '*Gabriel v. Olsen'* favor Respondent/Plaintiff Mr. Gabriel, it would make sequential sense that the instant case – whether it be bifurcated or remain consolidated – be postponed until after the Federal trial concludes, or until after any potential or pending Federal injunction is lifted.

## III. __CONCLUSION__

RESPONDENT/PLAINTIFF'S MOTION TO BIFURCATE TRIAL OR IN THE
ALTERNATIVE TO POSTPONE TRIAL DUE TO FILING OF FEDERAL LAWSUIT

Exhibit 25 p. 004

Pursuant to ORCP 53 (B) and ORCP 52 (A), Respondent/Plaintiff Mr. Gabriel respectfully moves this Court to postpone the trial currently set for January 17, 2024 until after a ruling is made – including possible declaratory and injunctive relief – by a Federal Court (District of Montana, Missoula Division) for Federal Civil Case No. 9:23-cv-00142-DLC-KLD '*Gabriel v. Olsen*', and/or alternatively to bifurcate the trial currently set for January 17, 2024, into two parts, to avoid unnecessary overcomplication of a case that a Federal court may simplify.

DATED this 19th Day of November, 2023.

_____
Respondent/Plaintiff, Pro Se (signature)

Ryan D. Gabriel

2000 Blacktail Rd. #1140
Lakeside, MT 59922

_____
Telephone

5       RESPONDENT/PLAINTIFF'S MOTION TO BIFURCATE TRIAL OR IN THE
        ALTERNATIVE TO POSTPONE TRIAL DUE TO FILING OF FEDERAL LAWSUIT

Exhibit 25 p. 005

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH
Family Law Department

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | Case Nos.22CV10399, 22DR04942 |
| Ryan Dean Gabriel, | ) | |
| | ) | **ORDER DENYING MOTIONS TO** |
| Plaintiff/Respondent | ) | **BIFURCATE TRIAL TO POSTPONE** |
| | ) | **TRIAL, DEMAND FOR JURY** |
| and | ) | **TRIAL, REQUEST FOR STAY** |
| | ) | **PROCEEDINGS UNTIL JURY IS** |
| Jesse Mark Olsen, | ) | **SELECTED, AND SUMMARY** |
| | ) | **JUDGMENT** |
| Defendant/Petitioner | ) | |

This matter came before the Court on December 27, 2023, on Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial. Plaintiff/Respondent, Ryan D. Gabriel, appeared remotely and was self-represented. Defendant/Petitioner, Jesse Mark Olsen, appeared remotely and was represented by counsel Roscoe Nelson, Bar #732218.

On December 28, 2023, Plaintiff/Respondent filed a Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected in both proceedings.

On December 28, 2023, Plaintiff/Respondent filed a Motion for Summary Judgment in Case No. 22CV10399.

The Court FINDS:

1. On March 27, 2022, Defendant/Petitioner moved to dismiss Case No. 22CV10399 ("the partition case") with prejudice, or in the alternative to consolidate the case with Case No. 22DR04942 (the "domestic relations" case);

2. On June 17, 2022, Plaintiff/Respondent, by and through his attorney, filed a response denying that the partition case should be dismissed, but agreeing that the partition case should be consolidated with the domestic relations case;

3. On August 17, 2022, the Court denied the motion to dismiss but granted the parties' motion to consolidate the cases. The reasons for consolidation of the cases argued by the parties continue to apply. The Court's ruling is the law of the case;

**ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT**

Gabriel v Olsen, Case Nos. 22CV10399, 22DR04942                    Page 1 of 2

**EXHIBIT 5**

Exhibit 26 p. 001

4. An action for partition of jointly held real property brought under ORS 105.205 et seq. is a statutory proceeding in which the legislature did not intend to confer a right to a jury trial. An action for partition is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a partition action under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

5. An action for the division of property of unmarried domestic partners is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a domestic relations proceeding under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

6. It is unlikely that Plaintiff/Respondent will prevail on his motion for injunctive relief in the pending trial in the Federal District of Montana, Missoula Division. There is not a significant risk of the parties being subjected to duplicative trials or conflicting judicial determinations in relation to the matters pending before the Court;

7. These matters have been pending since of March 21, 2022. Delaying this matter without good cause will cause undue prejudice to the Defendant/Petitioner; and

8. Plaintiff/Respondent's Motion for Summary Judgment was not served and filed at least 60 days before trial. *See* ORCP 47C.

It is hereby ORDERED:

1. Plaintiff/Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial is denied;

2. Plaintiff/Respondent's Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected is denied;

3. Plaintiff/Respondent's Motion for Summary Judgment is denied; and

4. The parties shall appear for trial on the partition case and the domestic relations case on January 17, 2024, at 10:00 a.m. in courtroom 4 of the Juvenile Justice Complex before Judge Henry. The Court will hear the domestic relations case first. At the close of the domestic relations case, the Court will proceed with the partition case.

December 29, 2023
Date

Patrick W. Henry, Circuit Court Judge

**ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT**
Gabriel v Olsen, Case Nos. 22CV10399, 22DR04942

Exhibit 26 p. 002

Verified Correct Copy of the Original Made Under Court Administrator's Direction 01/03/2024

**IN THE SUPREME COURT OF THE STATE OF OREGON** JAN 0 2 2024

___SUPREME COURT
___COURT OF APPEALS

RYAN DEAN GABRIEL,

        Relator,

        vs.

JESSE MARK OLSEN,

        Adverse Party.

)
)
)
)
)
)
)
)
)

**Case No. 22CV10399**
Trial Court No.
(Multnomah County Circuit Court)

JAN 0 2 2023

BY: $391.00
CC

-----------------------------------------------------

**PETITION FOR A PEREMTORY WRIT OF MANDAMUS**
*or, in the alternative, for an*
**ALTERNATIVE WRIT OF MANDAMUS**

Relator alleges:

**1.**

Plaintiff-Relator, RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel"), is the plaintiff in Multnomah County Circuit Court Case No. 22CV10399, as well as the respondent in Multnomah County Circuit Court (Family Division) Case No. DR2204942. The aforementioned cases were consolidated by the court and a trial date for both is currently set for January 17, 2024. Mr. Gabriel has not requested counsel to file this Petition.

**2.**

Defendant THE HONORABLE PATRICK W. HENRY is a Multnomah County Circuit Court Judge. Judge Henry is the Presiding Judge and conducted the hearings and signed the Order denying Plaintiff-Relator Mr. Gabriel's claimed right to a jury trial under the Oregon Constitution,

Exhibit 27 p. 001

1    Article 1, Section 17 and pursuant to ORCP 51, ORCP 56. That Order and denial is the subject

2    of this petition for a writ of mandamus.

3                                            **3.**

4         JESSE MARK OLSEN is the Defendant in the civil action (22CV10399) and the

5    Petitioner in the domestic relations action (22DR04942).

6

7                                            **4.**

8         Hon. Patrick W. Henry issued an Order on December 29, 2023 ruling that Plaintiff-Relator

9    Mr. Gabriel's Request and Demand for Jury Trial and Motion to Stay Proceedings Until Jury is

10   Selected is denied. A copy of the foregoing order is attached as Appendix A.

11                                           **5.**

12
          Prior to the filing of Mr. Gabriel's 'Request and Demand for Jury Trial and Motion to
13
     Stay Proceedings Until Jury is Selected', a scheduling conference was held on December 5, 2023.
14
15   In that hearing, Judge Henry acknowledged that the civil case (22CV10399) would ordinarily

16   warrant a jury trial and attempted without success to steer Mr. Roscoe C. Nelson (III), Jr. (herein

17   "Mr. Nelson"), attorney for Defendant/Petitioner Jesse Mark Olsen (herein, "Mr. Olsen"), to

18   argue that no jury trial is warranted - under heavy suggestion - because this matter should be

19   "tried in equity". Mr. Nelson not only did not understand the steering attempts and related talking
20
     points offered by Judge Henry, Mr. Nelson conspicuously failed to give Judge Henry any basis
21
22   to assume this partition claim was exclusively about 'equity', and indeed conspicuously failed to

23   argue – even after heavy prompting – that it should be "tried in equity" as heavily suggested by

24   Judge Henry in an attempt to derail a jury trial as required by law. A copy of the transcript of that

25   hearing is attached as Appendix B (*i.e.*, 'Declaration in Support of Demand for Jury Trial').

26                                           **6.**

27

28

Exhibit 27 p. 002

1    Also during the hearing on December 5, 2023, Judge Henry noted that Mr. Nelson had

2   failed to file an Answer to Mr. Gabriel's original Complaint in Case No. 22CV10399. In spite of

3   this, Judge Henry in his Order of December 29, 2023, denied a Motion for Summary Judgment

4
    filed by Mr. Gabriel while insisting upon a firm trial date of January 17, 2024. Judge Henry used
5
6   the trial date of January 17, 2024, as pretext to deny Mr. Gabriel's Motion for Summary Judgment,

7   even though Defendant Mr. Olsen through his attorney Mr. Nelson *still had not by that time* (i.e,

8   the time of Mr. Gabriel's Motion for Summary Judgment on December 28, 2023, and also

9   presumably the time of Judge Henry's Order of December 29, 2023) filed an Answer to Mr.

10  Gabriel's original Complaint, which itself was originally filed in March of 2022. (Empasis added.)

11
                                                7.
12
13      Application for a writ of mandamus was not made to the Circuit Court because the

14  application relates to the purported "order" of the Circuit Court.

15
                                                8.

16      Application for the writ is timely and is not sought for purposes of delay. No other remedy

17  exists under Oregon law.

18
                                                9.
19
20      Relator respectfully asks this Court for the following:

21      **A.**     That this court exercise its original jurisdiction pursuant to Article VII (Amended),

22  Section 2 of the Oregon Constitution and ORS 34.120(2), or alternately its supervisory powers

23  under said constitutional provision, and issue a peremptory writ of mandamus under seal of this

24  Court directing the Honorable Patrick W. Henry to vacate the Order(s) dismissing Mr. Gabriel's

25  Demand for Jury Trial and Motion for Summary Judgment, and to conduct a hearing to determine

26  the merits of Mr. Gabriel's Demand for Jury Trial and Motion for Summary Judgment.

27

28


        3       PETITION FOR WRIT OF MANDAMUS

Exhibit 27 p. 003

1    **B.**     That this court exercise its original jurisdiction pursuant to Article VII (Amended),

2    Section 2 of the Oregon Constitution, and issue an alternative writ of mandamus under seal of

3    this Court directing the Honorable Judge Patrick W. Henry to show cause why the relief prayed

4    for in prayer paragraph A, ante should not be granted; and

5

6    **C.**     That this court grant such other relief as is just, equitable and proper, such as issue

7    a writ of mandamus under seal of this Court directing the Honorable to convene a Jury Trial in

8    civil matter 22CV10399 as prescribed under the Oregon Constitution, Article 1, Section 17 and

9    pursuant to ORCP 51, ORCP 56.

10                                   **MEMORANDUM OF LAW**

11           When a question regarding the right to a jury trial in civil matters is raised and supported

12   by the Oregon State Constitution, the fair determination of that issue is a necessary predicate to

13   the integrity of this state's cherished due process by law.  Whereas Hon. Judge Henry writes in

14   his Order dated December 29, 2023, "An action for partition of jointly held real property brought

15   under ORS 105.205 et seq. is a statutory proceeding in which the legislature did not intend to

16   confer a right to a jury trial. An action for partition is not "of like nature" to common law actions

17   seeking damages that existed at the time the Oregon Constitution was passed.", Mr. Gabriel has

18   raised a compelling series of argument that the actions in the civil and domestic relations matter

19   constitute a dispute that transcends issues involving mere equity.

20

21           In his declaration attached as Appendix B, Mr. Gabriel wrote: "The matter before the

22   Court in this consolidated Case No. 22CV10399 and 22DR04942 is an issue of fact, not law, and

23   a dispute of fact, and not merely equity.", continuing, "The Plaintiff/Respondent and the

24   Defendant/Petitioner are at odds over the fundamental question of whether there is an implied

25   domestic partnership or *de facto* marriage in this instant case, and the question is not simply one

26

27

28

Exhibit 27 p. 004

of equity – it is a foundational, definitional question and dispute that has arisen between the parties, as I have relentlessly pointed out throughout this case and its pleadings."

Crucially, an issue raised by Mr. Gabriel in his declaration, and not addressed in Hon. Judge Henry's Order, is as follows: "Here I would cite the various pleadings in which I dispute the essence and nature of this action – not merely the division of assets – except that there are virtually *no* pleadings in which I do *not* go to great lengths to dispute the *issue of fact* that Defendant/Petitioner Mr. Olsen and I are not in any way, shape or form married or in any sort of explicit or implicit domestic partnership under Oregon law. (Emphasis added.)" And finally, "To the extent that I must explicitly invoke monetary damages, let it be noted here and now that I intend to recover damages, notwithstanding a previously filed Motion for Sanctions which was partly upheld by this same Hon. Judge Henry, but also the Federal case I have filed[1] which seeks injunctive and declaratory relief to redress the damage caused by Defendant/Petitioner's rank violations of my due process rights under the Fourteenth Amendment of the US Constitution (*See* U.S. Const. amend. XIV, § 1) given that *'Beal v. Beal'*[2] and all subsequent case law in Oregon was instantaneously, substantively … rendered obsolete by the *'Obergefell v. Hodges'* SCOTUS ruling in 2015[3]."

The issues raised by Mr. Gabriel in the foregoing paragraphs and lifted from his previously filed declaration are foundational, definitional, involve monetary damages, involve questions of due process under the Fourteenth Amendment of the US Constitution, and are indeed issues "of like nature" to common law actions seeking damages "at the time the Oregon

---

[1] Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen – Federal District Court of Montana, Missoula Div.
[2] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.
[3] *Obergefell v. Hodges*, 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)

Exhibit 27 p. 005

1  Constitution was passed" and therefore are intended to be heard in a trial by jury under Article 1,

2  Section 17 of the Oregon Constitution, and also pursuant to ORCP 51 and ORCP 56.

3  In addition, the statutory ordering of issues and due process rights to a fair hearing

4  preclude Hon. Patrick W. Henry from ordering the dismissal of Mr. Gabriel's Motion for

5

6  Summary Judgment on the grounds that a trial date is set within 60 days, given that at the time

7  the Motion for Summary Judgment was filed, and apparently even by the time Judge Henry's

8  Order was issued, Defendant/Petitioner Mr. Olsen had still not filed an Answer to Mr. Gabriel's

9  complaint in Case No. 22CV10399. It seems procedurally impossible that a trial date could be

10  properly established for January 17, 2024, with no Answer by the Defendant yet filed as of the

11  time of the December 29, 2023, Order in question, and Hon. Judge Henry's admission on

12

13  December 5, 2023 that: "… it's going to be a struggle to get this heard, and then if the motion is

14  not granted to have the parties prepared to go to hearing, um... in January and given Mr. Nelson

15  what you're saying, I, um... I'm not sure… that if you're going to be ready to proceed to trial in

16  January if you didn't even consider that you needed to file a response to the pending, uh, 22CV

17  case.". This is particularly true when you consider the jury selection rules and timeline, given

18  that none had been selected, convened, nor were any preliminary jury trial procedures followed.

19

20  The lower court ignored the complications posed by the statutory ordering of issues and

21  due process rights to a fair hearing, as shown by the foregoing.

22  As a result, these motions and demand for jury trial should be remanded for a fair hearing,

23  if not outright mandated via writ of this Court.

24  In this case, Hon. Judge Patrick W. Henry authorized the dismissal of Mr. Gabriel's

25  Motion for Summary Judgment only by ignoring that no Answer had been filed to the original

26  Complaint by the Defendant, and then used the pretext of a set trial date to authorize the same.

27  Simultaneously, Honorable jettisoned Mr. Gabriel's due process rights under the Oregon State

28

6     PETITION FOR WRIT OF MANDAMUS

Exhibit 27 p. 006

1  Constitution by falsely assuming no monetary or other damages were being sought in the instant
2  partition claim; Article 1, Section 17 reads: "In all civil cases the right of Trial by Jury shall
3  remain inviolate."

4      This court should therefore grant this petition for a writ of mandamus.

5      DATED this 2nd Day of January, 2024.

_____
Plaintiff, Pro Se (signature)

Ryan D. Gabriel

2000 Blacktail Rd. #1140
Lakeside, MT 59922

Telephone: (206) 391-9886 m.

7      PETITION FOR WRIT OF MANDAMUS

Exhibit 27 p. 007

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH
Family Law Department

| | |
|---|---|
| In the Matter of: | ) |
| | ) Case Nos.22CV10399, 22DR04942 |
| Ryan Dean Gabriel, | ) |
| | ) **ORDER DENYING MOTIONS TO** |
| Plaintiff/Respondent | ) **BIFURCATE TRIAL TO POSTPONE** |
| | ) **TRIAL, DEMAND FOR JURY** |
| and | ) **TRIAL, REQUEST FOR STAY** |
| | ) **PROCEEDINGS UNTIL JURY IS** |
| Jesse Mark Olsen, | ) **SELECTED, AND SUMMARY** |
| | ) **JUDGMENT** |
| Defendant/Petitioner | ) |

This matter came before the Court on December 27, 2023, on Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial. Plaintiff/Respondent, Ryan D. Gabriel, appeared remotely and was self-represented. Defendant/Petitioner, Jesse Mark Olsen, appeared remotely and was represented by counsel Roscoe Nelson, Bar #732218.

On December 28, 2023, Plaintiff/Respondent filed a Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected in both proceedings.

On December 28, 2023, Plaintiff/Respondent filed a Motion for Summary Judgment in Case No. 22CV10399.

The Court FINDS:

1. On March 27, 2022, Defendant/Petitioner moved to dismiss Case No. 22CV10399 ("the partition case") with prejudice, or in the alternative to consolidate the case with Case No. 22DR04942 (the "domestic relations" case);

2. On June 17, 2022, Plaintiff/Respondent, by and through his attorney, filed a response denying that the partition case should be dismissed, but agreeing that the partition case should be consolidated with the domestic relations case;

3. On August 17, 2022, the Court denied the motion to dismiss but granted the parties' motion to consolidate the cases. The reasons for consolidation of the cases argued by the parties continue to apply. The Court's ruling is the law of the case;

**ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT**
Gabriel v Olsen, Case Nos. 22CV10399, 22DR04942                                          Page 1 of 2

Appendix A - Page ___1___ of __2__

Exhibit 27 p. 008

4. An action for partition of jointly held real property brought under ORS 105.205 et seq. is a statutory proceeding in which the legislature did not intend to confer a right to a jury trial. An action for partition is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a partition action under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

5. An action for the division of property of unmarried domestic partners is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a domestic relations proceeding under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

6. It is unlikely that Plaintiff/Respondent will prevail on his motion for injunctive relief in the pending trial in the Federal District of Montana, Missoula Division. There is not a significant risk of the parties being subjected to duplicative trials or conflicting judicial determinations in relation to the matters pending before the Court;

7. These matters have been pending since of March 21, 2022. Delaying this matter without good cause will cause undue prejudice to the Defendant/Petitioner; and

8. Plaintiff/Respondent's Motion for Summary Judgment was not served and filed at least 60 days before trial. *See* ORCP 47C.

It is hereby ORDERED:

1. Plaintiff/Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial is denied;

2. Plaintiff/Respondent's Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected is denied;

3. Plaintiff/Respondent's Motion for Summary Judgment is denied; and

4. The parties shall appear for trial on the partition case and the domestic relations case on January 17, 2024, at 10:00 a.m. in courtroom 4 of the Juvenile Justice Complex before Judge Henry. The Court will hear the domestic relations case first. At the close of the domestic relations case, the Court will proceed with the partition case.

December 29, 2023
Date

Patrick W. Henry, Circuit Court Judge

**ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT**
Gabriel v Olsen, Case Nos. 22CV10399, 22DR04942

Page 2 of 2

Appendix A - Page __2__ of __2__

Exhibit 27 p. 009

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

|  |  |  |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Case No. 22CV10399 |
| Plaintiff, | ) | DECLARATION IN SUPPORT OF PLAINTIFF'S REQUEST AND DEMAND FOR JURY TRIAL |
| | ) | |
| JESSE MARK OLSEN, | ) | PURSUANT TO ORCP 51, ORCP 56 OR. CONST. ARTICLE 1 SECTION 17 |
| Defendant | ) | |

## DECLARATION

Plaintiff/Respondent Mr. Gabriel declares under oath that the following events did transpire as described herein:

1. On December 5, 2023, a scheduling hearing was held presided over by Hon. Judge Patrick Henry of the Circuit Court of Multnomah County, Oregon. The following is a precise transcript of a crucial exchange between the parties involved in this matter which proves a jury trial is in order in Case No. 22CV10399, and which further proves Judge Henry attempted without success to steer Mr. Roscoe C. Nelson (III), Jr. (herein "Mr. Nelson"), attorney for Defendant/Petitioner Jesse Mark Olsen (herein, "Mr. Olsen"), to argue that no jury trial is warranted - under heavy suggestion - because this matter should be "tried in equity".

2. Mr. Nelson not only did not understand the steering prompt and related talking points offered by Judge Henry, Mr. Nelson conspicuously failed to give Judge Henry any basis to assume this partition claim was exclusively about 'equity', and indeed conspicuously failed to argue – even after heavy prompting – that it should be "tried in equity" as mightily suggested by Judge Henry in an attempt to derail a jury trial as required by law.

1

DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 27 p. 010

3.      Hon. Patrick Henry continued to attempt to steer Mr. Nelson towards the filing of a Motion for Summary Judgment or other mechanism to derail Mr. Gabriel's right to a Jury Trial in Case No. 22CV10399, but Mr. Nelson remained oblivious as to the point of the suggestion:

## HEARING TRANSCRIPT (DECEMBER 5, 2023)

**1:57:52pm:** Hon. Judge Patrick Henry: "One of the issues Mr. Nelson which I will point out is there is this pending, um... civil case - civil trial that is the 22CV10399. That may create some challenges as far as being able to proceed with the domestic relations case if these matters were consolidated..."

**1:58:17pm:** Mr. Nelson: "They were consolid - excuse me your Honor - they were consolidated, by um... some time ago."

**1:58:25pm:** Henry: "Ok, and so what would need to happen - one of the issues I wanted to address with all of you - is um... the scheduling of a, um.... *that civil trial that would include a jury,* um... to the extent that the, um... lawsuit involves a claim for monetary damages of course the parties would have the right to have that case heard by a jury. So, Mr. Nelson, or... I'm just open to either party telling me, how long do you think the case - *to the extent that the case is tried to the jury* - how long do you think it might take? Mr. Nelson?" (Emphasis added.)

**1:59:06pm:** Nelson: "Ok, your Honor, I believe the case you're talking about was the first case on the... or, the other case which is a partition, which doesn't make sense when the only properties are two residential houses. And uh, the... uh, it is consolidated with the domestic relations case - the dissolution of the domestic partnership. I don't think it's going to take any more time; I think - I would hope we would be able to try the case to the court and get it resolved on the date currently scheduled."

Exhibit 27 p. 011

1    **1:57:48pm:** Hon. Judge Henry: "So is there a... have you... do you have a plan to

2    file a Motion for Summary Judgment or how do you expect summarily to address

3    the, uh, partition matter?"

4

5    **2:00:00pm:** Roscoe C. Nelson (III), Jr.: "Your Honor, I don't even know, if um...

6    on that one, other than the fact that it is consolidated with this one, I just assumed

7    it was going forward along with this one. I don't believe... um, that it has merit.

8    You can't partition a house."

9    **2:00:21pm:** Henry: "Well it does seem to me that you would need... if it has no,

10    um, merit... it seems that it's, it's potentially, I mean, you could make a motion at

11    the close of the uh, uh... Plaintiff's case, in that case, if you believe your approach

12    would be to seek a directed verdict, but do you have a position regarding whether

13    there's a right to a jury trial, in that partition case, *or are those matters that you*

14

15    *believe are tried in equity?*" (Emphasis added.)

16    **2:00:56pm:** Mr. Nelson: "I don't believe there is a right to a jury trial on that one,

17    I think it's - you know, again - I the... I, I don't know how you partition a house -

18    two houses. You know, there's... those are properties that belong to both of the

19    parties during, and were acquired during their domestic relations, during their

20

21    domestic partnership. And that is over. So that's what needs to be resolved. But

22    the partition doesn't make sense."

23    **2:01:24pm:** Hon. Judge Henry: "Well Mr. Nelson, if there's a pending case - it

24    may not make sense - but a case that doesn't make sense is potentially subject to

25    dismissal at, for a Motion to Dismiss, is potentially subject to a Motion for

26    Summary Judgment. Or if it's meritless, at the close of the plaintiff's case it's

27    subject to a motion for a directed verdict. But it's not as if just... asserting, well

28

Exhibit 27 p. 012

1  that, that case has no merits, and therefore it doesn't make any sense, and therefore
2  we don't need to address it."

3  **2:01:59pm:** Mr. Nelson: "So, because they were consolidated, I didn't feel the
4  need to answer it specifically, but I will get something filed on it right away. Um,
5  and I, I've not seen the other Motion that Mr. Gabriel says he filed."
6

7  **2:02:19pm:** Hon. Judge Henry: "Alright. And that's what I think we need to
8  address. That, and... I need, certainly; [to] give you time to see his motion and
9  response to it. Um... there's fourteen days after the motion is served on the opposing
10 party. Um, so let's just look at our calendars and we'll look at about... um, well, it's
11 going to be a struggle to get this heard, and then if the motion is not granted to have
12 the parties prepared to go to hearing, um... in January and given Mr. Nelson what
13 you're saying, I, um... I'm not sure... that if you're going to be ready to proceed to
14 trial in January if you didn't even consider that you needed to file a response to the
15 pending, uh, 22CV case. Give me a moment."
16

17                    **DECLARATION (CONTINUED)**

18  4.    The above transcript was ordered, paid for, and transcribed by me using FTR court
19  reporting software used by the Court itself. (*See* Exhibit 1).
20

21  5.    The matter before the Court in this consolidated Case No. 22CV10399 and
22  22DR04942 is an issue of fact, not law, and a dispute of fact, and not merely equity.

23  6.    The Plaintiff/Respondent and the Defendant/Petitioner are at odds over the
24  fundamental question of whether there is an implied domestic partnership or *de facto* marriage
25  in this instant case, and the question is not simply one of equity – it is a foundational, definitional
26  question and dispute that has arisen between the parties, as I have relentlessly pointed out
27  throughout this case and its pleadings.
28

Appendix B - Page  4  of  8

4    DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 27 p. 013

7.      Here I would cite the various pleadings in which I dispute the essence and nature of this action – not merely the division of assets – except that there are virtually *no* pleadings in which I do *not* go to great lengths to dispute the *issue of fact* that Defendant/Petitioner Mr. Olsen and I are not in any way, shape or form married or in any sort of explicit or implicit domestic partnership under Oregon law. (Emphasis added.)

8.      To the extent that I must explicitly invoke monetary damages, let it be noted here and now that I intend to recover damages, notwithstanding a previously filed Motion for Sanctions which was partly upheld by this same Hon. Judge Henry, but also the Federal case I have filed[1] which seeks injunctive and declaratory relief to redress the damage caused by Defendant/Petitioner's rank violations of my due process rights under the Fourteenth Amendment of the US Constitution (*See* U.S. Const. amend. XIV, § 1) given that *'Beal v. Beal'*[2] and all subsequent case law in Oregon was instantaneously, substantively and retroactively rendered obsolete by the *'Obergefell v. Hodges'* SCOTUS ruling in 2015[3].

9.      Now, herein, with this Declaration, to this Court, I hereby notify in explicit, unequivocal terms that this dispute is not merely an issue of 'equity' but rather a matter of civil rights under the Fourteenth Amendment due process clause, United States Constitution, and all that implies, including recovery of damages incurred by the domestic relations lawsuit.

DATED this 31st Day of December, 2023.

Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.

---

[1] Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen – Federal District Court of Montana, Missoula Div..
[2] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.
[3] *Obergefell v. Hodges*, 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). Appendix B. Page **5** of **8**

5       DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 27 p. 014

## AUDIO HEARING REQUEST

Case Number: 22CV10399

Plaintiff/Petitioner: RYAN DEAN GABRIEL

Defendant/Respondent: JESSE MARK OLSEN

Judge's Name: PATRICK HENRY

Date(s) of Hearing(s): 12/05/23

Certified: [ ] yes (+ $5)   Delivery: [X] Pick-up $10 per CD [ ] Mail + $3 [ ] E-mail $9

Requested By: RYAN DEAN GABRIEL

Phone Number: (206) 391-9886

Email or Address: rgabriel @ zurccapital.com

Total Fees $ 2023 - 8136 45   Format: [X] Windows Media [ ] Macintosh

(For Staff Use Only) Date 12/28/2023 Accepted By K.L.

**You will need to download the FTR player in able to play the audio this is free, the instructions will be with the audio provided to you**

## AUDIO HEARING REQUEST

Case Number: 22DR04942

Plaintiff/Petitioner: JESSE MARK OLSEN

Defendant/Respondent: RYAN DEAN GABRIEL

Judge's Name: PATRICK HENRY

Date(s) of Hearing(s): 12/27/23, 10/20/23

Certified: [ ] yes (+ $5)   Delivery: [X] Pick-up $10 per CD [ ] Mail + $3 [ ] E-mail $9

Requested By: RYAN DEAN GABRIEL

Phone Number: (206) 391-9886

Email or Address: rgabriel @ zurccapital.com

Total Fees $ 2023 - 8136 45   Format: [X] Windows Media [ ] Macintosh

(For Staff Use Only) Date 12/28/2023 Accepted By K.L.

**You will need to download the FTR player in able to play the audio this is free, the instructions will be with the audio provided to you**

EXHIBIT 1 - PAGE 1 OF 3

Exhibit 27 p. 015

# OFFICIAL RECEIPT
## OREGON JUDICIAL DEPARTMENT
### Payments Accepted Online
### www.courts.oregon.gov Select *OJD Courts E-Pay*

Payor
Ryan D. Gabriel.

Receipt No.
2023-813645

Transaction Date
12/28/2023

| Description | | | Amount Paid |
|---|---|---|---|
| Miscellaneous Payment. | | | |
| | Email Docs/Data Elect Stored | | 20.00 |
| | SUBTOTAL | | 20.00 |

PAYMENT TOTAL | 20.00

Credit/Debit Card (Ref #912509) Tendered | 20.00
Total Tendered | 20.00
Change | 0.00

| 12/28/2023 | Cashier | Audit |
|---|---|---|
| 08:31 AM | Station MULCSH2198 | 280275253 |

## OFFICIAL RECEIPT

MULTNOMAH COURT
1200 SW 1st Ave.
Portland, OR 97204
971-274-0560

MCR

Date: 12/28/2023        08:29:52 AM

CREDIT CARD SALE

MASTERCARD
CARD NUMBER:        **********6702 K

TOTAL AMOUNT:        $20.00

APPROVAL CD:        912509
RECORD #:        000
CLERK ID:        KJL
CASE NUMBER(S): 22CV10399, 22DR04942


Customer Copy

Exhibit 27 p. 017

## CERTIFICATE OF FILING

I certify that on ___JANUARY 2,2024___ [DATE], I filed the original of the petition for judicial review with the Appellate Court Administrator at the following address:

> **ATTN: Records Section**
> **Appellate Court Administrator**
> **Supreme Court Building**
> **1163 State Street**
> **Salem, OR 97301-2563**

by the following method of filing:

**INDICATE METHOD OF FILING**

☐ United States Postal Service, ordinary first class mail.

☐ United States Postal Service, certified or registered mail, return receipt requested.

☒ Hand delivery

☐ Electronic Filing through the court's eFiling system

☐ Other (specify):_____

## CERTIFICATE OF SERVICE

I certify that on ___JANUARY 2, 2024___ (DATE), I served a true copy of the petition for judicial review to the following parties at the addresses set forth below. **NOTE:** If an address is not already provided below then you must fill in the address for each party that you serve. If no address is present then the court will assume that you did not serve that party.

**ATTORNEY GENERAL**, ~~Office of the Solicitor General, 400 Justice Building,~~
~~1162 Court Street NE, Salem, Oregon, 97301~~
**AGENCY/BOARD** NAME AND ADDRESS:_____

**RESPONDENT:** NAME AND ADDRESS ROSCOE C. NELSON, ATTORNEY FOR DEFENDANT JESSE OLSEN
811 SW NAITO PARKWAY, SUITE 200, PORTLAND OR 97204
**OTHER PARTY:** NAME AND ADDRESS HON. JUDGE PATRICK HENRY
MULTNOMAH COUNTY CIRCUIT COURTHOUSE - 1200 SW 1ST AVE., PORTLAND OR 97204

by the following method of service:

**INDICATE METHOD OF SERVICE**

☐ United States Postal Service, ordinary first class mail.

☐ United States Postal Service, certified or registered mail, return receipt requested.

☐ Hand delivery

☒ Electronic Filing through the court's eFiling system

☒ Other (specify): attorneys@ roscoecnelson. com

DATE: 1/2/24      SIGNATURE: _____

Exhibit 27 p. 018

1

# IN THE COURT OF APPEALS OF THE STATE OF OREGON

2

3    RYAN DEAN GABRIEL,                    )

4        Plaintiff-Appellant,             )    **Case No. 22CV10399**
                                          )    (Multnomah County Circuit Court)
5        vs.                              )
                                          )    **NOTICE OF APPEAL**
6    JESSE MARK OLSEN,                     )

7        Defendant-Respondent.            )

8                                          )
     ----------------------------------------------------

9

10                                          **1.**

11       Plaintiff-Appellant, RYAN DEAN GABRIEL hereby gives notice of appeal from the

12   Order(s) entered on January 9, 2024 and December 29, 2023, by Hon. Judge Patrick Henry in the

13   Circuit Court of the County of Multnomah, Oregon, denying, respectively, Plaintiff's Motion to

14   Stay Order pending an Oregon Supreme Court review of his Petition for Writ of Mandamus, and

15   Plaintiff's Motion to Postpone Trial pending jury selection and Demand for Jury Trial.

16                                          **2.**

17       Plaintiff-Appellant, RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel") resides at 2000

18   Blacktail Rd., #1140, Lakeside, MT 59922, whose contact phone # is (206) 391-9886 and whose

19   e-mail address is rgabriel@zurccapital.com, is the plaintiff in Multnomah County Circuit Court

20   Case No. 22CV10399, as well as the respondent in Multnomah County Circuit Court (Family

21   Division) Case No. DR2204942. The aforementioned lawsuits were consolidated by the trial

22   court and a trial date for both is currently set for January 17, 2024. Mr. Gabriel has not requested

23   counsel to file this Appeal and herein represents himself *pro se.*

24

25                                          **3.**

26       Respondent JESSE MARK OLSEN is the Defendant in the civil action (22CV10399) and

27   the petitioner in the domestic relations action (22DR04942) and is represented by Roscoe C.

28   Nelson, Jr. (III), (hereinafter "Mr. Nelson"), Oregon State Bar #732218, with offices located at

     811 SW Naito Pkwy Ste. 200, Portland, OR 97204, and whose contact phone # is #503-222-1081.

1    NOTICE OF APPEAL – Case No. 22CV10399, Multnomah County Circuit Court

Exhibit 28 p. 001

**4.**

THE HONORABLE PATRICK W. HENRY is a Multnomah County Circuit Court Judge. Judge Henry is the Presiding Judge and conducted the hearings and signed the Order denying Plaintiff-Appellant Mr. Gabriel's claimed right to a jury trial under the Oregon Constitution, Article 1, Section 17 and pursuant to ORCP 51, ORCP 56. Subsequently, Plaintiff-Appellant Mr. Gabriel filed a Petition for Writ of Mandamus with the Oregon Supreme Court, followed by a trial court motion to stay proceedings pending review of that petition. Again Hon. Judge Henry denied the motion to stay proceedings on January 9, 2024. That Order and denial, paired with the previous Order and denial of Mr. Gabriel's motion to postpone the January 17, 2024 trial until a jury is selected and demand for a jury trial, is the subject of this instant notice of appeal.

**5.**

Appellant designates the record in its entirety, up to and including the date on which the challenged decisions were entered. Therefore, in addition to the trial court file, appellant designates all exhibits and appendices submitted, and the record of all oral proceedings that occurred, during that same period. Specifically, Hon. Patrick W. Henry issued an Order on December 29, 2023 ruling that Plaintiff-Appellant Mr. Gabriel's Request and Demand for Jury Trial and Motion to Stay Proceedings Until Jury is Selected, along with Mr. Gabriel's Motion for Summary Judgment, is denied. A copy of the foregoing order is attached as Appendix A. In addition to the trial court file, Appellant also designates a copy of Mr. Gabriel's Petition for Writ of Mandamus with the Oregon Supreme Court, which includes a partial transcript of a trial court hearing on December 5, 2023. A copy of the foregoing Petition is attached (*See* Exhibit 2) along with a corresponding Appendix A and Appendix B. Hon. Patrick W. Henry also issued an Order on January 9, 2024 ruling that Plaintiff-Appellant Mr. Gabriel's Motion to Stay Order and Proceedings pending a review of the Petition for Writ of Mandamus is denied. A copy of the foregoing order is attached as Appendix C. Finally, the trial court's Denial of Mr. Gabriel's Motion for Summary Judgment, dated December 28, 2023, is attached as Appendix D.

Exhibit 28 p. 002

# OPENING BRIEF and STATEMENTS OF FACT

**6.**

Prior to the filing of Mr. Gabriel's 'Request and Demand for Jury Trial and Motion to Stay Proceedings Until Jury is Selected', a scheduling conference was held on December 5, 2023. In that hearing, Judge Henry acknowledged that the civil case (22CV10399) would ordinarily warrant a jury trial and attempted without success to steer Mr. Nelson, attorney for Defendant/Petitioner Mr. Olsen, to argue that no jury trial is warranted - under heavy suggestion - because this matter should be "tried in equity". Mr. Nelson not only did not understand the steering attempts and related talking points offered by Judge Henry, Mr. Nelson conspicuously failed to give Judge Henry any basis to assume this partition claim was exclusively about 'equity', and indeed conspicuously failed to argue – even after heavy prompting – that it should be "tried in equity" as heavily suggested by Judge Henry in an attempt to derail a jury trial as required by law. A copy of the transcript of that hearing is attached as Appendix B (*i.e.*, 'Declaration in Support of Demand for Jury Trial').

**6.**

During that hearing on December 5, 2023, Judge Henry noted that Mr. Nelson had failed to file an Answer to Mr. Gabriel's original Complaint in Case No. 22CV10399. In spite of this, Judge Henry in his Order of December 29, 2023, denied a Motion for Summary Judgment filed by Mr. Gabriel while insisting upon a firm trial date of January 17, 2024. Judge Henry used the trial date of January 17, 2024, as pretext to deny Mr. Gabriel's Motion for Summary Judgment, even though Defendant Mr. Olsen through his attorney Mr. Nelson *still had not by that time* (i.e, the time of Mr. Gabriel's Motion for Summary Judgment on December 28, 2023, and also presumably the time of Judge Henry's Order of December 29, 2023) filed an Answer to Mr. Gabriel's original Complaint, which itself was originally filed in March of 2022. (Empasis added.)

**7.**

Exhibit 28 p. 003

1    Application for a notice of appeal was not made to the Circuit Court because the

2    application relates to the purported "orders" of the Circuit Court.

3                                                    **8.**

4    Application for this instant appeal is timely and is not sought for purposes of delay. No

5

6    other remedy for immediate resolution of a right to jury trial exists under Oregon law.

7                                                    **9.**

8    Appellant respectfully asks this Court for the following:

9         **A.**    That this court reverse, remand or vacate either one or the other, or both, of the

10   aforementioned Orders, dated January 9, 2024, and December 29, 2023, of Hon. Judge Henry,

11   including the denial of Mr. Gabriel's motion for summary judgment.

12

13        **B.**    That this court grant such other relief as is just, equitable and proper, such as issue

14   an Order under seal of this Court directing the Honorable to convene a Jury Trial in civil matter

15   22CV10399 as prescribed under the Oregon Constitution, Article 1, Section 17 and pursuant to

16   ORCP 51, ORCP 56.

17                                   **MEMORANDUM OF LAW**

18        When a question regarding the right to a jury trial in civil matters is raised and supported

19   by the Oregon State Constitution, the fair determination of that issue is a necessary predicate to

20
     the integrity of this state's cherished due process by law.
21

22        **Assignment of Error:** Whereas Hon. Judge Henry writes in his Order dated December

23   29, 2023, "An action for partition of jointly held real property brought under ORS 105.205 et seq.

24   is a statutory proceeding in which the legislature did not intend to confer a right to a jury trial.

25   An action for partition is not "of like nature" to common law actions seeking damages that existed

26   at the time the Oregon Constitution was passed.", Mr. Gabriel has raised a compelling series of

27   argument that the actions in the civil and domestic relations matter constitute a dispute that
28
     transcends issues involving mere equity. (*See* "Order" (Appendix A, ¶¶ 1-2.))

Exhibit 28 p. 004

1    **Argument:**    In his declaration attached as Appendix B, Mr. Gabriel wrote: "The matter
2    before the Court in this consolidated Case No. 22CV10399 and 22DR04942 is an issue of fact,
3    not law, and a dispute of fact, and not merely equity.", continuing, "The Plaintiff/Respondent and
4    the Defendant/Petitioner are at odds over the fundamental question of whether there is an implied
5    domestic partnership or *de facto* marriage in this instant case, and the question is not simply one
6    of equity – it is a foundational, definitional question and dispute that has arisen between the
7    parties, as I have relentlessly pointed out throughout this case and its pleadings."
8    

9        Crucially, an issue raised by Mr. Gabriel in his declaration, and not addressed in Hon.
10   Judge Henry's Order, is as follows: "Here I would cite the various pleadings in which I dispute
11   the essence and nature of this action – not merely the division of assets – except that there are
12   virtually *no* pleadings in which I do *not* go to great lengths to dispute the *issue of fact* that
13   Defendant/Petitioner Mr. Olsen and I are not in any way, shape or form married or in any sort of
14   explicit or implicit domestic partnership under Oregon law. (Emphasis added.)"    And finally,
15   "To the extent that I must explicitly invoke monetary damages, let it be noted here and now that
16   
17   I intend to recover damages, notwithstanding a previously filed Motion for Sanctions which was
18   partly upheld by this same Hon. Judge Henry, but also the Federal case I have filed[1] which seeks
19   injunctive and declaratory relief to redress the damage caused by Defendant/Petitioner's rank
20   violations of my due process rights under the Fourteenth Amendment of the US Constitution
21   (*See* U.S. Const. amend. XIV, § 1) given that *'Beal v. Beal'*[2] and all subsequent case law in
22   
23   Oregon was instantaneously, substantively ... rendered obsolete by the *'Obergefell v. Hodges'*
24   SCOTUS ruling in 2015[3]."

25       The issues raised by Mr. Gabriel in the foregoing paragraphs and lifted from his
26   previously filed declaration are foundational, definitional, involve monetary damages, involve
27   
28   
---

[1] Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen – Federal District Court of Montana, Missoula Div.
[2] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.
[3] *Obergefell v. Hodges,* 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)

Exhibit 28 p. 005

1 questions of due process under the Fourteenth Amendment of the US Constitution, and are indeed
2 issues "of like nature" to common law actions seeking damages "at the time the Oregon
3 Constitution was passed" and therefore are intended to be heard in a trial by jury under Article 1,
4
5 Section 17 of the Oregon Constitution, and also pursuant to ORCP 51 and ORCP 56.

6 **Second Assignment of Error.** In addition, the statutory ordering of issues and due
7 process rights to a fair hearing preclude Hon. Patrick W. Henry from ordering the dismissal of
8 Mr. Gabriel's Motion for Summary Judgment on the grounds that a trial date is set within 60 days,
9 given that at the time the Motion for Summary Judgment was filed, and apparently even by the
10 time Judge Henry's Order was issued, Defendant/Petitioner Mr. Olsen had still not filed an
11 Answer to Mr. Gabriel's complaint in Case No. 22CV10399.

12
**Argument for Second Assignment of Error.** It seems procedurally impossible
13 that a trial date could be properly established for January 17, 2024, with no Answer by the
14 Defendant yet filed as of the time of Plaintiff-Appellant's Motion for Summary Judgment filed
15 on December 28, 2023, and the December 29, 2023, Order in question, and Hon. Judge Henry's
16 admission on December 5, 2023 that: "… it's going to be a struggle to get this heard, and then if
17 the motion is not granted to have the parties prepared to go to hearing, um... in January and given
18 Mr. Nelson what you're saying, I, um... I'm not sure... that if you're going to be ready to proceed
19
20 to trial in January if you didn't even consider that you needed to file a response to the pending,
21 uh, 22CV case.". This is particularly true when you consider the jury selection rules and timeline,
22 given that none had been selected, convened, nor were any preliminary jury trial procedures
23
24 followed.

25
## CONCLUSION

26 The lower court ignored the complications posed by the statutory ordering of issues and
27 due process rights to a fair hearing, as shown by the foregoing.
28
As a result, these motions and demand for jury trial should be vacated for a fair hearing,

if not outright mandated via this Court.

Exhibit 28 p. 006

1    In this case, Hon. Judge Patrick W. Henry authorized the dismissal of Mr. Gabriel's

2    Motion for Summary Judgment only by ignoring that no Answer had been filed to the original

3    Complaint by the Defendant, and then used the pretext of a set trial date to authorize the same.

4    Simultaneously, Honorable jettisoned Mr. Gabriel's due process rights under the Oregon State

5    Constitution by falsely assuming no monetary or other damages were being sought in the instant

6    partition claim; Article 1, Section 17 reads: "In all civil cases the right of Trial by Jury shall

7    remain inviolate."

8

9    This court should therefore grant the appellant's prayer to vacate these trial court orders.

10    DATED this 10th Day of January, 2024.

11

12

13    _____
       Plaintiff Appellant, Pro Se (signature)
14

15    Ryan D. Gabriel
       2000 Blacktail Rd. #1140
16    Lakeside, MT 59922

17    Telephone: (206) 391-9886 m.

18

19

20

21

22

23

24

25

26

27

28

Exhibit 28 p. 007

# IN THE SUPREME COURT OF THE STATE OF OREGON

```
                                    )
RYAN DEAN GABRIEL,                  )      Case No. 22CV10399
                                    )      Trial Court No.
          Relator,                  )      (Multnomah County Circuit Court)
                                    )
     vs.                            )      OSC Case No.: S070743
                                    )
JESSE MARK OLSEN,                   )
                                    )
          Adverse Party.            )
                                    )
--------------------------------    )
```

---

## CORRECTED PETITION FOR A PEREMTORY WRIT OF MANDAMUS
*or, in the alternative, for an*
## ALTERNATIVE WRIT OF MANDAMUS

---

### BRIEF AND STATEMENTS OF FACT

**1.**

Relator alleges: Petitioner-Relator, RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel") who resides at 2000 Blacktail Rd., #1140, Lakeside, MT 59922, whose contact phone # is (206) 391-9886 and whose e-mail address is rgabriel@zurccapital.com, is the plaintiff in Multnomah County Circuit Court Case No. 22CV10399, as well as the respondent in Multnomah County Circuit Court (Family Division) Case No. DR2204942. The aforementioned lawsuits were consolidated by the circuit court and a trial date for both is currently set for January 17, 2024. Mr. Gabriel has not requested counsel to file this Petition and herein represents himself *pro se*.

**2.**

Adverse Party JESSE MARK OLSEN is the defendant in the civil action (22CV10399) and the petitioner in the domestic relations action (22DR04942) and is represented by Roscoe C. Nelson, Jr. (III), (hereinafter "Mr. Nelson"), Oregon State Bar #732218, with offices located at 811 SW Naito Pkwy Ste. 200, Portland, OR 97204, and whose contact phone # is #503-222-1081.

Exhibit 2 Page 1 of 7

Exhibit 28 p. 008

**3.**

THE HONORABLE PATRICK W. HENRY is a Multnomah County Circuit Court Judge. Judge Henry is the Presiding Judge and conducted the hearings and signed the Order denying Plaintiff-Relator Mr. Gabriel's claimed right to a jury trial under the Oregon Constitution, Article 1, Section 17 and pursuant to ORCP 51, ORCP 56. That Order and denial is the subject of this petition for a writ of mandamus.

**4.**

Hon. Patrick W. Henry issued an Order on December 29, 2023 ruling that Petitioner-Relator Mr. Gabriel's Request and Demand for Jury Trial and Motion to Stay Proceedings Until Jury is Selected is denied. A copy of the foregoing order is attached as Appendix A.

**5.**

Prior to the filing of Mr. Gabriel's 'Request and Demand for Jury Trial and Motion to Stay Proceedings Until Jury is Selected', a scheduling conference was held on December 5, 2023. In that hearing, Judge Henry acknowledged that the civil case (22CV10399) would ordinarily warrant a jury trial and attempted without success to steer Mr. Nelson, attorney for Defendant/Petitioner Mr. Olsen, to argue that no jury trial is warranted - under heavy suggestion - because this matter should be "tried in equity". Mr. Nelson not only did not understand the steering attempts and related talking points offered by Judge Henry, Mr. Nelson conspicuously failed to give Judge Henry any basis to assume this partition claim was exclusively about 'equity', and indeed conspicuously failed to argue – even after heavy prompting – that it should be "tried in equity" as heavily suggested by Judge Henry in an attempt to derail a jury trial as required by law. A copy of the transcript of that hearing is attached as Appendix B (*i.e.*, 'Declaration in Support of Demand for Jury Trial').

**6.**

1    During that hearing on December 5, 2023, Judge Henry noted that Mr. Nelson had failed

2    to file an Answer to Mr. Gabriel's original Complaint in Case No. 22CV10399. In spite of this,

3    Judge Henry in his Order of December 29, 2023, denied a Motion for Summary Judgment filed

4
5    by Mr. Gabriel while insisting upon a firm trial date of January 17, 2024. Judge Henry used the

6    trial date of January 17, 2024, as pretext to deny Mr. Gabriel's Motion for Summary Judgment,

7    even though Defendant Mr. Olsen through his attorney Mr. Nelson *still had not by that time* (i.e,

8    the time of Mr. Gabriel's Motion for Summary Judgment on December 28, 2023, and also

9    presumably the time of Judge Henry's Order of December 29, 2023) filed an Answer to Mr.

10   Gabriel's original Complaint, which itself was originally filed in March of 2022. (Empasis added.)

11
                                            7.
12

13   Application for a writ of mandamus was not made to the Circuit Court because the

14   application relates to the purported "order" of the Circuit Court.

15                                          8.

16   Application for the writ is timely and is not sought for purposes of delay. No other remedy

17   exists under Oregon law.

18                                          9.

19   Relator respectfully asks this Court for the following:

20
     A.    That this court exercise its original jurisdiction pursuant to Article VII (Amended),
21

22   Section 2 of the Oregon Constitution and ORS 34.120(2), or alternately its supervisory powers

23   under said constitutional provision, and issue a peremptory writ of mandamus under seal of this

24   Court directing the Honorable Patrick W. Henry to vacate the Order(s) dismissing Mr. Gabriel's

25   Demand for Jury Trial and Motion for Summary Judgment, and to conduct a hearing to determine

26   the merits of Mr. Gabriel's Demand for Jury Trial and Motion for Summary Judgment.

27
     B.    That this court exercise its original jurisdiction pursuant to Article VII (Amended),
28

     Section 2 of the Oregon Constitution, and issue an alternative writ of mandamus under seal of

     Exhibit 2 Page  3  of  7

3    PETITION FOR WRIT OF MANDAMUS

Exhibit 28 p. 010

1 | this Court directing the Honorable Judge Patrick W. Henry to show cause why the relief prayed

2 | for in prayer paragraph A, ante should not be granted; and

3 |     C.    That this court grant such other relief as is just, equitable and proper, such as issue

4 |

5 | a writ of mandamus under seal of this Court directing the Honorable to convene a Jury Trial in

6 | civil matter 22CV10399 as prescribed under the Oregon Constitution, Article 1, Section 17 and

7 | pursuant to ORCP 51, ORCP 56.

8 |                                    **MEMORANDUM OF LAW**

9 |     When a question regarding the right to a jury trial in civil matters is raised and supported

10 | by the Oregon State Constitution, the fair determination of that issue is a necessary predicate to

11 | the integrity of this state's cherished due process by law.

12 |

13 |     **Assignment of Error:** Whereas Hon. Judge Henry writes in his Order dated December

14 | 29, 2023, "An action for partition of jointly held real property brought under ORS 105.205 et seq.

15 | is a statutory proceeding in which the legislature did not intend to confer a right to a jury trial.

16 | An action for partition is not "of like nature" to common law actions seeking damages that existed

17 | at the time the Oregon Constitution was passed.", Mr. Gabriel has raised a compelling series of

18 | argument that the actions in the civil and domestic relations matter constitute a dispute that

19 | transcends issues involving mere equity. (*See* "Order" (Appendix A, ¶¶ 1-2.))

20 |

21 |     **Argument:** In his declaration attached as Appendix B, Mr. Gabriel wrote: "The matter

22 | before the Court in this consolidated Case No. 22CV10399 and 22DR04942 is an issue of fact,

23 | not law, and a dispute of fact, and not merely equity.", continuing, "The Plaintiff/Respondent and

24 | the Defendant/Petitioner are at odds over the fundamental question of whether there is an implied

25 | domestic partnership or *de facto* marriage in this instant case, and the question is not simply one

26 | of equity – it is a foundational, definitional question and dispute that has arisen between the

27 | parties, as I have relentlessly pointed out throughout this case and its pleadings."

28 |

1    Crucially, an issue raised by Mr. Gabriel in his declaration, and not addressed in Hon.
2    Judge Henry's Order, is as follows: "Here I would cite the various pleadings in which I dispute
3    the essence and nature of this action – not merely the division of assets – except that there are
4
5    virtually *no* pleadings in which I do *not* go to great lengths to dispute the *issue of fact* that
6    Defendant/Petitioner Mr. Olsen and I are not in any way, shape or form married or in any sort of
7    explicit or implicit domestic partnership under Oregon law. (Emphasis added.)" And finally,
8    "To the extent that I must explicitly invoke monetary damages, let it be noted here and now that
9    I intend to recover damages, notwithstanding a previously filed Motion for Sanctions which was
10   partly upheld by this same Hon. Judge Henry, but also the Federal case I have filed[1] which seeks
11   injunctive and declaratory relief to redress the damage caused by Defendant/Petitioner's rank
12
13   violations of my due process rights under the Fourteenth Amendment of the US Constitution
14   (*See* U.S. Const. amend. XIV, § 1) given that *'Beal v. Beal'*[2] and all subsequent case law in
15   Oregon was instantaneously, substantively ... rendered obsolete by the *'Obergefell v. Hodges'*
16   SCOTUS ruling in 2015[3]."

17       The issues raised by Mr. Gabriel in the foregoing paragraphs and lifted from his
18   previously filed declaration are foundational, definitional, involve monetary damages, involve
19
20   questions of due process under the Fourteenth Amendment of the US Constitution, and are indeed
21   issues "of like nature" to common law actions seeking damages "at the time the Oregon
22   Constitution was passed" and therefore are intended to be heard in a trial by jury under Article 1,
23   Section 17 of the Oregon Constitution, and also pursuant to ORCP 51 and ORCP 56.

24       In addition, the statutory ordering of issues and due process rights to a fair hearing
25   preclude Hon. Patrick W. Henry from ordering the dismissal of Mr. Gabriel's Motion for
26
27

28   [1] Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen – Federal District Court of Montana, Missoula Div.
     [2] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of
     unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or
     possession.
     [3] *Obergefell v. Hodges*, 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)

                                                                    Exhibit 2 Page **5** of **7**

5        PETITION FOR WRIT OF MANDAMUS

Exhibit 28 p. 012

1  Summary Judgment on the grounds that a trial date is set within 60 days, given that at the time

2  the Motion for Summary Judgment was filed, and apparently even by the time Judge Henry's

3  Order was issued, Defendant/Petitioner Mr. Olsen had still not filed an Answer to Mr. Gabriel's

4
5  complaint in Case No. 22CV10399. It seems procedurally impossible that a trial date could be

6  properly established for January 17, 2024, with no Answer by the Defendant yet filed as of the

7  time of the December 29, 2023, Order in question, and Hon. Judge Henry's admission on

8  December 5, 2023 that: "... it's going to be a struggle to get this heard, and then if the motion is

9  not granted to have the parties prepared to go to hearing, um... in January and given Mr. Nelson

10  what you're saying, I, um... I'm not sure... that if you're going to be ready to proceed to trial in

11  January if you didn't even consider that you needed to file a response to the pending, uh, 22CV

12  case.". This is particularly true when you consider the jury selection rules and timeline, given

13
14  that none had been selected, convened, nor were any preliminary jury trial procedures followed.

15                                    **CONCLUSION**

16         The lower court ignored the complications posed by the statutory ordering of issues and

17  due process rights to a fair hearing, as shown by the foregoing.

18         As a result, these motions and demand for jury trial should be remanded for a fair hearing,

19  if not outright mandated via writ of this Court.

20
21         In this case, Hon. Judge Patrick W. Henry authorized the dismissal of Mr. Gabriel's

22  Motion for Summary Judgment only by ignoring that no Answer had been filed to the original

23  Complaint by the Defendant, and then used the pretext of a set trial date to authorize the same.

24  Simultaneously, Honorable jettisoned Mr. Gabriel's due process rights under the Oregon State

25  Constitution by falsely assuming no monetary or other damages were being sought in the instant

26  partition claim; Article 1, Section 17 reads: "In all civil cases the right of Trial by Jury shall

27  remain inviolate."

28
           This court should therefore grant this petition for a writ of mandamus.

DATED this 2nd Day of January, 2024.

Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922

Telephone: (206) 391-9886 m.

Exhibit 2 Page __7__ of __7__

Exhibit 28 p. 014

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR THE COUNTY OF MULTNOMAH
### Family Law Department

| | |
|---|---|
| In the Matter of: | ) |
| | ) Case Nos.22CV10399, 22DR04942 |
| Ryan Dean Gabriel, | ) |
| | ) **ORDER DENYING MOTIONS TO** |
| Plaintiff/Respondent | ) **BIFURCATE TRIAL TO POSTPONE** |
| | ) **TRIAL, DEMAND FOR JURY** |
| and | ) **TRIAL, REQUEST FOR STAY** |
| | ) **PROCEEDINGS UNTIL JURY IS** |
| Jesse Mark Olsen, | ) **SELECTED, AND SUMMARY** |
| | ) **JUDGMENT** |
| Defendant/Petitioner | ) |

This matter came before the Court on December 27, 2023, on Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial. Plaintiff/Respondent, Ryan D. Gabriel, appeared remotely and was self-represented. Defendant/Petitioner, Jesse Mark Olsen, appeared remotely and was represented by counsel Roscoe Nelson, Bar #732218.

On December 28, 2023, Plaintiff/Respondent filed a Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected in both proceedings.

On December 28, 2023, Plaintiff/Respondent filed a Motion for Summary Judgment in Case No. 22CV10399.

The Court FINDS:

1. On March 27, 2022, Defendant/Petitioner moved to dismiss Case No. 22CV10399 ("the partition case") with prejudice, or in the alternative to consolidate the case with Case No. 22DR04942 (the "domestic relations" case);

2. On June 17, 2022, Plaintiff/Respondent, by and through his attorney, filed a response denying that the partition case should be dismissed, but agreeing that the partition case should be consolidated with the domestic relations case;

3. On August 17, 2022, the Court denied the motion to dismiss but granted the parties' motion to consolidate the cases. The reasons for consolidation of the cases argued by the parties continue to apply. The Court's ruling is the law of the case;

**ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT**

Exhibit 28 p. 015

4. An action for partition of jointly held real property brought under ORS 105.205 et seq. is a statutory proceeding in which the legislature did not intend to confer a right to a jury trial. An action for partition is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a partition action under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

5. An action for the division of property of unmarried domestic partners is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a domestic relations proceeding under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

6. It is unlikely that Plaintiff/Respondent will prevail on his motion for injunctive relief in the pending trial in the Federal District of Montana, Missoula Division. There is not a significant risk of the parties being subjected to duplicative trials or conflicting judicial determinations in relation to the matters pending before the Court;

7. These matters have been pending since of March 21, 2022. Delaying this matter without good cause will cause undue prejudice to the Defendant/Petitioner; and

8. Plaintiff/Respondent's Motion for Summary Judgment was not served and filed at least 60 days before trial. *See* ORCP 47C.

It is hereby ORDERED:

1. Plaintiff/Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial is denied;

2. Plaintiff/Respondent's Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected is denied;

3. Plaintiff/Respondent's Motion for Summary Judgment is denied; and

4. The parties shall appear for trial on the partition case and the domestic relations case on January 17, 2024, at 10:00 a.m. in courtroom 4 of the Juvenile Justice Complex before Judge Henry. The Court will hear the domestic relations case first. At the close of the domestic relations case, the Court will proceed with the partition case.

December 29, 2023
Date                                    Patrick W. Henry, Circuit Court Judge

ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT
Gabriel v Olsen, Case Nos. 22CV10399, 22DR04942                                    Page 2 of 2

Appendix A - Page __2__ of __2__

Exhibit 28 p. 016

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

| | | |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Case No. 22CV10399 |
| Plaintiff, | ) | DECLARATION IN SUPPORT OF PLAINTIFF'S REQUEST AND |
| | ) | DEMAND FOR JURY TRIAL |
| JESSE MARK OLSEN, | ) | PURSUANT TO ORCP 51, ORCP 56 |
| | ) | OR. CONST. ARTICLE 1 SECTION 17 |
| Defendant | ) | |

## DECLARATION

Plaintiff/Respondent Mr. Gabriel declares under oath that the following events did transpire as described herein:

1. On December 5, 2023, a scheduling hearing was held presided over by Hon. Judge Patrick Henry of the Circuit Court of Multnomah County, Oregon. The following is a precise transcript of a crucial exchange between the parties involved in this matter which proves a jury trial is in order in Case No. 22CV10399, and which further proves Judge Henry attempted without success to steer Mr. Roscoe C. Nelson (III), Jr. (herein "Mr. Nelson"), attorney for Defendant/Petitioner Jesse Mark Olsen (herein, "Mr. Olsen"), to argue that no jury trial is warranted - under heavy suggestion - because this matter should be "tried in equity".

2. Mr. Nelson not only did not understand the steering prompt and related talking points offered by Judge Henry, Mr. Nelson conspicuously failed to give Judge Henry any basis to assume this partition claim was exclusively about 'equity', and indeed conspicuously failed to argue - even after heavy prompting - that it should be "tried in equity" as mightily suggested by Judge Henry in an attempt to derail a jury trial as required by law.

1
DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 28 p. 017

3. Hon. Patrick Henry continued to attempt to steer Mr. Nelson towards the filing of a Motion for Summary Judgment or other mechanism to derail Mr. Gabriel's right to a Jury Trial in Case No. 22CV10399, but Mr. Nelson remained oblivious as to the point of the suggestion:

## HEARING TRANSCRIPT (DECEMBER 5, 2023)

1:57:52pm: Hon. Judge Patrick Henry: "One of the issues Mr. Nelson which I will point out is there is this pending, um... civil case - civil trial that is the 22CV10399. That may create some challenges as far as being able to proceed with the domestic relations case if these matters were consolidated..."

1:58:17pm: Mr. Nelson: "They were consolid - excuse me your Honor - they were consolidated, by um... some time ago."

1:58:25pm: Henry: "Ok, and so what would need to happen - one of the issues I wanted to address with all of you - is um... the scheduling of a, um.... *that civil trial that would include a jury*, um... to the extent that the, um.... lawsuit involves a claim for monetary damages of course the parties would have the right to have that case heard by a jury. So, Mr. Nelson, or... I'm just open to either party telling me, how long do you think the case - *to the extent that the case is tried to the jury* - how long do you think it might take? Mr. Nelson?" (Emphasis added.)

1:59:06pm: Nelson: "Ok, your Honor, I believe the case you're talking about was the first case on the... or, the other case which is a partition, which doesn't make sense when the only properties are two residential houses. And uh, the... uh, it is consolidated with the domestic relations case - the dissolution of the domestic partnership. I don't think it's going to take any more time, I think - I would hope we would be able to try the case to the court and get it resolved on the date currently scheduled."

DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 28 p. 018

1     1:57:48pm: Hon. Judge Henry: "So is there a... have you... do you have a plan to
2     file a Motion for Summary Judgment or how do you expect summarily to address
3     the, uh, partition matter?"
4

5     2:00:00pm: Roscoe C. Nelson (III), Jr.: "Your Honor, I don't even know, if um...
6     on that one, other than the fact that it is consolidated with this one, I just assumed
7     it was going forward along with this one. I don't believe... um, that it has merit.
8     You can't partition a house."

9     2:00:21pm: Henry: "Well it does seem to me that you would need... if it has no,
10     um, merit... it seems that it's, it's potentially, I mean, you could make a motion at
11     the close of the uh, uh... Plaintiff's case, in that case, if you believe your approach
12
13     would be to seek a directed verdict, but do you have a position regarding whether
14     there's a right to a jury trial, in that partition case, *or are those matters that you*
15     *believe are tried in equity?*" (Emphasis added.)

16     2:00:56pm: Mr. Nelson: "I don't believe there is a right to a jury trial on that one,
17     I think it's - you know, again - I the... I, I don't know how you partition a house -
18     two houses. You know, there's... those are properties that belong to both of the
19
20     parties during, and were acquired during their domestic relations, during their
21     domestic partnership. And that is over. So that's what needs to be resolved. But
22     the partition doesn't make sense."

23     2:01:24pm: Hon. Judge Henry: "Well Mr. Nelson, if there's a pending case - it
24     may not make sense - but a case that doesn't make sense is potentially subject to
25     dismissal at, for a Motion to Dismiss, is potentially subject to a Motion for
26     Summary Judgment. Or if it's meritless, at the close of the plaintiff's case it's
27     subject to a motion for a directed verdict. But it's not as if just... asserting, well
28

DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 28 p. 019

1  that, that case has no merits, and therefore it doesn't make any sense, and therefore
2  we don't need to address it."
3  2:01:59pm: Mr. Nelson: "So, because they were consolidated, I didn't feel the
4  need to answer it specifically, but I will get something filed on it right away. Um,
5  and I, I've not seen the other Motion that Mr. Gabriel says he filed."
6
7  2:02:19pm: Hon. Judge Henry: "Alright. And that's what I think we need to
8  address. That, and... I need, certainly, [to] give you time to see his motion and
9  response to it. Um... there's fourteen days after the motion is served on the opposing
10  party. Um, so let's just look at our calendars and we'll look at about... um, well, it's
11  going to be a struggle to get this heard, and then if the motion is not granted to have
12  the parties prepared to go to hearing, um... in January and given Mr. Nelson what
13  you're saying, I, um... I'm not sure... that if you're going to be ready to proceed to
14  trial in January if you didn't even consider that you needed to file a response to the
15  pending, uh, 22CV case. Give me a moment."
16
17  ### DECLARATION (CONTINUED)
18
19  4.      The above transcript was ordered, paid for, and transcribed by me using FTR court
   reporting software used by the Court itself. (*See* Exhibit 1).
20
21  5.      The matter before the Court in this consolidated Case No. 22CV10399 and
22  22DR04942 is an issue of fact, not law, and a dispute of fact, and not merely equity.
23  6.      The Plaintiff/Respondent and the Defendant/Petitioner are at odds over the
24  fundamental question of whether there is an implied domestic partnership or *de facto* marriage
25  in this instant case, and the question is not simply one of equity – it is a foundational, definitional
26  question and dispute that has arisen between the parties, as I have relentlessly pointed out
27  throughout this case and its pleadings.
28

Appendix B - Page  4  of  8

Exhibit 28 p. 020

7. Here I would cite the various pleadings in which I dispute the essence and nature of this action – not merely the division of assets – except that there are virtually *no* pleadings in which I do *not* go to great lengths to dispute the *issue of fact* that Defendant/Petitioner Mr. Olsen and I are not in any way, shape or form married or in any sort of explicit or implicit domestic partnership under Oregon law. (Emphasis added.)

8. To the extent that I must explicitly invoke monetary damages, let it be noted here and now that I intend to recover damages, notwithstanding a previously filed Motion for Sanctions which was partly upheld by this same Hon. Judge Henry, but also the Federal case I have filed[1] which seeks injunctive and declaratory relief to redress the damage caused by Defendant/Petitioner's rank violations of my due process rights under the Fourteenth Amendment of the US Constitution (*See* U.S. Const. amend. XIV, § 1) given that *'Beal v. Beal'*[2] and all subsequent case law in Oregon was instantaneously, substantively and retroactively rendered obsolete by the *'Obergefell v. Hodges'* SCOTUS ruling in 2015[3].

9. Now, herein, with this Declaration, to this Court, I hereby notify in explicit, unequivocal terms that this dispute is not merely an issue of 'equity' but rather a matter of civil rights under the Fourteenth Amendment due process clause, United States Constitution, and all that implies, including recovery of damages incurred by the domestic relations lawsuit.

DATED this 31st Day of December, 2023.

Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.

---

[1] Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen – Federal District Court of Montana, Missoula Div.
[2] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.
[3] *Obergefell v. Hodges*, 576 U.S. ___, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). Page ≤ of ≤

5        DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 28 p. 021

59922

Case Number _____ 22CV10399

Plaintiff/Petitioner _____ RYAN DEAN GABRIEL

Defendant/Respondent _____ JESSE MARK OLSEN

Judge's Name _____ PATRICK HENRY

Date(s) of Hearing(s) _____ 12/05/23

Certified: ☐ yes (+ $5)    Delivery: ☒ Pick-up $10 per CD ☐ Mail + $3 ☐ E-mail $9

Requested By _____ RYAN DEAN GABRIEL

Phone Number _____ (206) 391- 9886

Email or Address _____ & rgabriel @ zurccapital . com

Total Fees $ 2023 - 813645    Format: ☒ Windows Media ☐ Macintosh

(For Staff Use Only) Date 12|28|2023 Accepted By K.L.

You will need to download the FTR player in able to play the audio this is free, the instructions will be with the audio provided to you

---

Case Number _____ 22DRO4942

Plaintiff/Petitioner _____ JESSE MARK OLSEN

Defendant/Respondent _____ RYAN DEAN GABRIEL

Judge's Name _____ PATRICK HENRY

Date(s) of Hearing(s) _____ 12/27/23 , 10/20/23

Certified: ☐ yes (+ $5)    Delivery: ☒ Pick-up $10 per CD ☐ Mail + $3 ☐ E-mail $9

Requested By _____ RYAN DEAN GABRIEL

Phone Number _____ (206) 391 - 9886

Email or Address _____ rgabriel @ zurccapital. com

Total Fees $ 2023 - 813645    Format: ☒ Windows Media ☐ Macintosh

(For Staff Use Only) Date 12|28|2023 Accepted By K.L.

You will need to download the FTR player in able to play the audio this is free, the instructions will be with the audio provided to you

EXHIBIT L - PAGE 1 OF 3

Exhibit 28 p. 022

# CERTIFICATE OF SERVICE

I, Susan G. Ridgeway, hereby certify that I have served true and accurate copies of the foregoing Notice - Notice to the following on 11-19-2024:

Alan F. McCormick (Attorney)
PO Box 7909
350 Ryman St.
Missoula MT 59807
Representing: Frederick J Groenke
Service Method: eService

Kevin Scott Jones (Attorney)
2625 Dearborn Ave., Ste. 102A
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Remy James Orrantia (Attorney)
2625 Dearborn Ave., Ste. 102
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Joseph David Houston (Attorney)
2625 Dearborn Avenue, Ste. 102A
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Ryan Dean Gabriel (Petitioner)
2000 Blacktail Rd. Box 1140
Lakeside MT 59922
Service Method: Email

Electronically signed by Donna Allen on behalf of Susan G. Ridgeway
Dated: 11-19-2024

FILED

11/19/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Maria Albarran
DV-15-2024-0001197-TO
Allison, Robert B
38.2

## OFFICIAL RECEIPT
### OREGON JUDICIAL DEPARTMENT
**Payments Accepted Online**
**www.courts.oregon.gov** Select *OJD Courts E-Pay*

Payor
Ryan D. Gabriel

Receipt No.
**2023-813645**

Transaction Date
12/28/2023

| Description | | Amount Paid |
|---|---|---|
| Miscellaneous Payment | | |
| | Email Docs/Data Elect Stored | 20.00 |
| | SUBTOTAL | 20.00 |

**PAYMENT TOTAL** | **20.00**

Credit/Debit Card (Ref #912509) Tendered | 20.00
Total Tendered | 20.00
Change | 0.00

12/28/2023
08:31 AM

Cashier
Station MULCSH2198

Audit
280275253

## OFFICIAL RECEIPT

Appendix B - Page __7__ of __8__

EXHIBIT 1 - PAGE 2 OF 3

Exhibit 28 p. 023

MULTNOMAH COURT
1200 SW 1st Ave
Portland, OR 97204
971-274-0560

MCR

Date: 12/28/2023          08:29:52 AM

CREDIT CARD SALE

MASTERCARD
CARD NUMBER:          **********6702 K

TOTAL AMOUNT:          $20.00

APPROVAL CD:          912509
RECORD #:             000
CLERK ID:             KJL
CASE NUMBER(S): 22CV18399, 22DR04942

Customer Copy

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

# FOR THE COUNTY OF MULTNOMAH

RYAN DEAN GABRIEL,

             Plaintiff,

vs.

JESSE MARK OLSEN,

             Defendant.

)
)
)
)
)
)
)
)

Case No. 22CV10399

**ORDER RE:** MOTION TO STAY ORDER AND PROCEEDINGS PENDING OREGON SUPREME COURT PETITION FOR WRIT OF MANDAMUS

PURSUANT TO ORS 19.350

Respondent/Plaintiff Mr. Gabriel herein moves this court to stay its Order denying Mr. Gabriel's previous motion to bifurcate trial, to postpone the currently scheduled trial date of January 17, 2024, and to demand a jury trial.

IT IS HEREBY ORDERED:

[   ] Pursuant to ORS § 19.350, this Court will stay its previous Order of December 29, 2023 and related proceedings, pending an Oregon Supreme Court review of Respondent's Petition for Writ of Mandamus.

Denied

DATED this ___9___ Day of ___January___ 2024.

Honorable Judge **PATRICK W. HENRY**
Multnomah County Civil/Family Court

Submitted by Ryan Dean Gabriel, *pro se*
(206) 391-9886

Appendix C Page __1__ of __4__

1    ORDER RE: PLAINTIFF/RESPONDENT'S MOTION TO STAY ORDER AND
PROCEEDINGS PENDING OSC PETITION FOR WRIT OF MANDAMUS

Exhibit 28 p. 025

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

|  |  |  |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Case No. 22CV10399 |
| Plaintiff, | ) | MOTION TO STAY ORDER AND PROCEEDINGS PENDING OREGON |
| vs. | ) | SUPREME COURT PETITION FOR WRIT OF MANDAMUS |
| JESSE MARK OLSEN, | ) | |
| Defendant. | ) | PURSUANT TO ORS 19.350 |
| ------------------------------------- | -) | |

## UTCR 5.050 STATEMENT

Respondent/Plaintiff requests oral argument and anticipates he will need 40 minutes for oral argument. Court Reporting Services are requested, if available (FTR).

## UTCR 5.010 COMPLIANCE STATEMENT

Respondent/Plaintiff conferred in good faith with Petitioner/Defendant's counsel by teleconference on December 27, 2023, by e-mail exchange concerning issues related to this motion on January 2, 2023, January 6, 2023, January 7, 2023, January 8, 2023 and January 9, 2023.

## MOTION

Respondent/Plaintiff Mr. Gabriel herein moves this court to stay its Order denying Mr. Gabriel's previous motion to bifurcate trial, to postpone the currently scheduled trial date of January 17, 2024, and to demand a jury trial.

Pursuant to ORS § 19.350 (1), "a party may seek a stay of judgment pending a decision on appeal in the manner provided by this section…" and (2), "… a party seeking a stay under the provisions of this section must first request a stay from the trial court. The trial court may

Appendix C Page __2__ of __4__

PLAINTIFF/RESPONDENT'S MOTION TO STAY ORDER AND PROCEEDINGS

Exhibit 28 p. 026

1   act on a request for a stay before or after a notice of appeal is filed.", and (3) The trial court shall

2   consider the following factors in deciding whether to grant a stay under this section, in addition

3   to such other factors as the trial court considers important:

4

5         a) The likelihood of the appellant prevailing on appeal.

6         (b) Whether the appeal is taken in good faith and not for the purpose of delay.

7         (c) Whether there is any support in fact or in law for the appeal.

8         (d) The nature of the harm to the appellant, to other parties, to other persons and to the

9   public that will likely result from the grant or denial of a stay."

10

### BACKGROUND

11

12         This court via Hon. Patrick W. Henry issued an Order on December 29, 2023 ruling that

13   Mr. Gabriel's Request and Demand for Jury Trial and Motion to Stay Proceedings Until Jury is

14   Selected is denied.

15         Plaintiff/Respondent Mr. Gabriel on January 2, 2024 filed a Petition for a Peremtory Writ

16   of Mandamus or, in the alternative, for an Alternative Writ of Mandamus (*See* Exhibit 2,

17   attached), asking the Oregon Supreme Court to:

18         A.     Exercise its original jurisdiction pursuant to Article VII (Amended), Section 2 of

19   the Oregon Constitution and ORS 34.120(2), or alternately its supervisory powers under said

20

21   constitutional provision, and issue a peremptory writ of mandamus under seal of this Court

22   directing the Honorable Patrick W. Henry to vacate the Order(s) dismissing Mr. Gabriel's Demand

23   for Jury Trial and Motion for Summary Judgment, and to conduct a hearing to determine the

24   merits of Mr. Gabriel's Demand for Jury Trial and Motion for Summary Judgment.

25         B.     Exercise its original jurisdiction pursuant to Article VII (Amended), Section 2 of

26   the Oregon Constitution, and issue an alternative writ of mandamus under seal of this Court

27

28   directing the Honorable Judge Patrick W. Henry to show cause why the relief prayed for in prayer

  paragraph A, ante should not be granted; and        Appendix C Page  **3**  of  **4**

1     **C.**     Grant such other relief as is just, equitable and proper, such as issue a writ of

2 mandamus under seal of this Court directing the Honorable Judge Henry to convene a Jury Trial

3 in civil matter 22CV10399 as prescribed under the Oregon Constitution, Article 1, Section 17 and

4 pursuant to ORCP 51, ORCP 56.

5

6                                    **ARGUMENT**

7      In the interests of avoiding an appellate review of this Order, and in the interests of

8 preventing a retrial, order for a new trial or an order declaring a mistrial, should the trial date of

9 January 17, 2024 remain unchanged, and should the Oregon Supreme Court exercise the

10 powers requested in the Petition for Writ of Mandamus or otherwise grant the relief requested

11 by Mr. Gabriel, this Court should grant this Motion to Stay Order and Proceedings. Such a

12

13 stay of order and proceedings would also prevent undue and unnecessary harm and expense to

14 both parties in this action, to the extent that a botched trial and a new trial would involve twice

15 the expense and twice the commitment of time and energy.

16                                   **CONCLUSION**

17      Respondent/Plaintiff Mr. Gabriel herein moves this court to stay its Order denying Mr.

18 Gabriel's previous motion to bifurcate trial, to postpone the currently scheduled trial date of

19 January 17, 2024, and to demand a jury trial, pursuant to ORS § 19.350.

20

21      DATED this 9th Day of January, 2024.

22

23                                     Plaintiff, Pro se (signature)

24                                     Ryan D. Gabriel

25                                     2000 Blacktail Rd. #1140
                                    Lakeside, MT 59922

26

27                                     Telephone: (206) 391-9886 m.

28

   3        PLAINTIFF/RESPONDENT'S MOTION TO STAY ORDER AND PROCEEDINGS

Exhibit 28 p. 028

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR THE COUNTY OF MULTNOMAH
### Family Law Department

| | |
|---|---|
| In the Matter of: | ) |
| | ) Case Nos.22CV10399, 22DR04942 |
| Ryan Dean Gabriel, | ) |
| | ) **ORDER DENYING MOTIONS TO** |
| Plaintiff/Respondent | ) **BIFURCATE TRIAL TO POSTPONE** |
| | ) **TRIAL, DEMAND FOR JURY** |
| and | ) **TRIAL, REQUEST FOR STAY** |
| | ) **PROCEEDINGS UNTIL JURY IS** |
| Jesse Mark Olsen, | ) **SELECTED, AND SUMMARY** |
| | ) **JUDGMENT** |
| Defendant/Petitioner | ) |

This matter came before the Court on December 27, 2023, on Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial. Plaintiff/Respondent, Ryan D. Gabriel, appeared remotely and was self-represented. Defendant/Petitioner, Jesse Mark Olsen, appeared remotely and was represented by counsel Roscoe Nelson, Bar #732218.

On December 28, 2023, Plaintiff/Respondent filed a Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected in both proceedings.

On December 28, 2023, Plaintiff/Respondent filed a Motion for Summary Judgment in Case No. 22CV10399.

The Court FINDS:

1. On March 27, 2022, Defendant/Petitioner moved to dismiss Case No. 22CV10399 ("the partition case") with prejudice, or in the alternative to consolidate the case with Case No. 22DR04942 (the "domestic relations" case);

2. On June 17, 2022, Plaintiff/Respondent, by and through his attorney, filed a response denying that the partition case should be dismissed, but agreeing that the partition case should be consolidated with the domestic relations case;

3. On August 17, 2022, the Court denied the motion to dismiss but granted the parties' motion to consolidate the cases. The reasons for consolidation of the cases argued by the parties continue to apply. The Court's ruling is the law of the case;

**ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT**   Appendix D Page ___1___ of __6__

Gabriel v Olsen, Case Nos. 22CV10399, 22DR04942                                    Page 1 of 2

Exhibit 28 p. 029

4. An action for partition of jointly held real property brought under ORS 105.205 et seq. is a statutory proceeding in which the legislature did not intend to confer a right to a jury trial. An action for partition is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a partition action under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

5. An action for the division of property of unmarried domestic partners is not "of like nature" to common law actions seeking damages that existed at the time the Oregon Constitution was passed. There is no right to a jury trial in a domestic relations proceeding under Article I, § 17 of the Oregon Constitution or under the statutes of Oregon;

6. It is unlikely that Plaintiff/Respondent will prevail on his motion for injunctive relief in the pending trial in the Federal District of Montana, Missoula Division. There is not a significant risk of the parties being subjected to duplicative trials or conflicting judicial determinations in relation to the matters pending before the Court;

7. These matters have been pending since of March 21, 2022. Delaying this matter without good cause will cause undue prejudice to the Defendant/Petitioner; and

8. Plaintiff/Respondent's Motion for Summary Judgment was not served and filed at least 60 days before trial. *See* ORCP 47C.

It is hereby ORDERED:

1. Plaintiff/Respondent's Motion to Bifurcate Trial or In the Alternative to Postpone Trial Due to Filing of Federal Lawsuit and Demand for Jury Trial is denied;

2. Plaintiff/Respondent's Request and Demand for Jury Trial and a Motion to Stay Proceedings Until Jury is Selected is denied;

3. Plaintiff/Respondent's Motion for Summary Judgment is denied; and

4. The parties shall appear for trial on the partition case and the domestic relations case on January 17, 2024, at 10:00 a.m. in courtroom 4 of the Juvenile Justice Complex before Judge Henry. The Court will hear the domestic relations case first. At the close of the domestic relations case, the Court will proceed with the partition case.

December 29, 2023
Date

Patrick W. Henry, Circuit Court Judge

ORDER DENYING MOTIONS TO BIFURCATE TRIAL TO POSTPONE TRIAL, DEMAND FOR JURY TRIAL, AND REQUEST FOR STAY PROCEEDINGS UNTIL JURY IS SELECTED AND SUMARY JUDGMENT
Appendix D Page 2 of 6

Gabriel v Olsen, Case Nos. 22CV10399, 22DR04942
Page 2 of 2

Exhibit 28 p. 030

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

)

RYAN DEAN GABRIEL,         )    Case No. 22CV10399

       Plaintiff,      )    MOTION FOR SUMMARY
                                 )    JUDGMENT
        vs.           )
                                 )    PURSUANT TO ORCP 47 and ORCP 15

JESSE MARK OLSEN,      )

       Defendant    )

-----------------------------------------------------)

## UTCR 5.050 STATEMENT

Respondent/Plaintiff requests oral argument and anticipates he will need 40 minutes for oral argument. Court Reporting Services are requested, if available (FTR).

## UTCR 5.010 COMPLIANCE STATEMENT

Plaintiff conferred in good faith with Defendant's counsel by e-mail exchange on April 10, 2023, April 14, 2023, April 17, 2023, May 30, 2023, June 2, 2023 and July 4, 2023, and also by phone on June 29, 2023.

## MOTIONS

Plaintiff Mr. Gabriel herein moves this court to issue a Summary Judgement in this instant lawsuit for partition and sale of property, pursuant to ORCP 47 (A), ORCP 15 (A) and by extension ORCP 7 C(2).

Per ORCP 15 (A): "Time for filing motions and pleadings. An answer to a complaint or to a third-party complaint, or a motion responsive to either pleading, must be filed with the clerk within the time required by Rule 7 C(2) to appear and defend."

Appendix D Page __3__ of __6__

Exhibit 28 p. 031

1    Per Local Rule 7 (C) (2): "Time for response. If the summons is served by any manner
2    other than publication, the defendant shall appear and defend within 30 days from the day of
3    service."

4
5    Per ORCP 47 (A): "Motion for Summary Judgement for claimant: A party seeking to
6    recover on any type of claim or to obtain a declaratory judgment may, at any time after the
7    expiration of 20 days from the commencement of the action or after service of a motion for
8    summary judgment by the adverse party, move, with or without supporting affidavits or
9    declarations, for a summary judgment in that party's favor as to all or any part of any claim or
10   defense."

11
12   As this court noted in yesterday's hearing, Defendant Mr. Olsen and his attorney Mr.
13   Nelson have conspicuously failed to provide an Answer to the partition claim served upon Mr.
14   Olsen on April 18, 2022. Plaintiff Mr. Gabriel therefore moves this Court to order a sale and
15   partition of the property located at 5721 SW Salmon Street, in Portland, OR 97221, with equal
16   proceeds of the sale distributed 50/50 to Plaintiff Mr. Gabriel and Defendant Mr. Olsen, thus
17   dramatically simplifying the underlying dispute.

18
19
20           DATED this 27th Day of December, 2023.
21
22                                            Plaintiff, Pro Se (signature)
23                                            Ryan D. Gabriel
24                                            2000 Blacktail Rd. #1140
25                                            Lakeside, MT 59922
26                                            Telephone: (206) 391-9886 m.
27
28

                                                          Appendix D Page __4__ of __6__

Exhibit 28 p. 032

1
2
3
4

# IN THE DISTRICT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

7                                                    )
8   RYAN DEAN GABRIEL,                  )   Case No. 22CV10399
9               Plaintiff,                         )   **ORDER RE:**
                                                     )   PLAINTIFF'S MOTION FOR
10                                                   )   SUMMARY JUDGMENT
11          vs.                                      )
                                                     )   PURSUANT TO ORCP 47 and ORCP 15
12  JESSE MARK OLSEN,                    )
13                                                   )
14              Defendant                      )
15  -------------------------------------------)
16

17          Pursuant to ORCP 53 (B) and ORCP 52 (A), Plaintiff Ryan Dean Gabriel ("Mr.

18  Gabriel") respectfully moves this court to issue a Summary Judgement in this instant lawsuit

19  for partition and sale of property, pursuant to ORCP 47 (A), ORCP 15 (A) and by extension

20  ORCP 7 C(2);

21

22

23          [ ]     An order a sale and partition of the property located at 5721 SW Salmon Street,

24  in Portland, OR 97221, with equal proceeds of the sale distributed 50/50 (equally) to Plaintiff

25  Mr. Gabriel and Defendant Mr. Olsen

26

27          DATED this _____ Day of _____, 2023.

28

Appendix D Page _5_ of _6_
**ORDER RE:** PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Exhibit 28 p. 033

1

2

3

4                                   Hon. Presiding Judge Henry
                                  Multnomah County Civil/Family Court

5 Submitted by Ryan Dean Gabriel, *pro se*
   (206) 391-9886

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2    ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    Appendix D Page __6__ of __6__

Exhibit 28 p. 034

IN THE OREGON COURT OF APPEALS OF THE STATE OF OREGON

Ryan Dean Gabriel,
Plaintiff-Appellant,

v.

Jesse Mark Olsen,
Defendant-Respondent.

Multnomah County Circuit Court No. 22CV10399

Court of Appeals No. A183215

**ORDER DISMISSING APPEAL; DENYING MOTION TO STAY
TRIAL COURT PROCEEDINGS**

In this civil case, appellant (plaintiff) filed a notice of appeal from the two trial court orders. Under ORS 19.205(1), a trial court judgment is appealable. However, in this case, plaintiff does not appeal a judgment and no judgment has been entered by the trial court in the underlying proceedings. *See also* ORS 19.205(3) (providing for appeal of post-general-judgment orders that affect a substantial right). Under ORS 19.205(2), an appeal may be taken from "an order in an action that affects a substantial right, and that effectively determines the action so as to prevent a judgment in the action." Here, the orders that plaintiff seeks to appeal are (1) an order denying plaintiff's motion to stay trial court proceedings pending "an Oregon Supreme Court review of [plaintiff's] Petition for Writ of Mandamus," and (2) an order denying motions to bifurcate trial, to postpone trial, demand for jury trial, request to stay proceedings until jury is selected, and summary judgment. Neither of those orders effectively determines the action so as to prevent a judgment. Therefore, the pre-judgment orders from which plaintiff has taken this appeal are not appealable and this court lacks jurisdiction.

For that reason, the appeal is dismissed.

In light of the dismissal of the appeal, plaintiff's motion to stay proceedings in the trial court is denied as moot.

Theresa Kidd
Appellate Commissioner
1/22/2024

ORDER DISMISSING APPEAL; DENYING MOTION TO STAY TRIAL COURT PROCEEDINGS
Appellate Court Administrator, Appellate Court Records Section
1163 State Street, Salem, Oregon 97301-2563
Page 1 of 2

Exhibit 29 p. 001

**DESIGNATION OF PREVAILING PARTY AND AWARD OF COSTS**

Prevailing party: Respondent          Costs:  No costs allowed

c:  Ryan Gabriel

   Roscoe C Nelson III

Exhibit 29 p. 002

# IN THE SUPREME COURT OF THE STATE OF OREGON

RYAN DEAN GABRIEL,

    Relator,

vs.

JESSE MARK OLSEN,

    Adverse Party.

)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 22CV10399**
(Multnomah County Circuit Court)

**OSC Case No.: S070743**

**RELATOR'S EMERGENCY MOTION TO STAY PROCEEDINGS IN TRIAL COURT PENDING RELATOR'S PETITION FOR WRIT OF MANDAMUS, PER ORS 7.35**

## UTCR 5.010 COMPLIANCE STATEMENT

Relator conferred in good faith with Adverse Party's counsel by teleconference on December 27, 2023, e-mail exchange on December 28, 2023 and also January 18, 2024.

## MOTION

### 1.

Comes now Relator RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel") in the above matter, who moves this Court to immediately Stay Proceedings in the Multnomah County Circuit Court of Oregon under consolidated Case Nos. 22CV10399 and 22DR04942, pending Relator's instant Petition to this Court for a Peremptory Writ of Mandamus or, in the alternative, an Alternative Writ of Mandamus, pursuant to ORS Rule 7.35.

## BACKGROUND

### 2.

Petitioner-Relator, RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel") who resides at 2000 Blacktail Rd., #1140, Lakeside, MT 59922, whose contact phone # is (206) 391-9886 and whose e-mail address is rgabriel@zurccapital.com, is the plaintiff in Multnomah County Circuit Court Case No. 22CV10399, as well as the respondent in Multnomah County Circuit Court (Family Division) Case No. DR2204942. The aforementioned lawsuits were consolidated by the

Exhibit 30 p. 001

1  circuit court and a trial date for both is currently set for January 26, 2024. Mr. Gabriel has not

2  requested counsel to file this Petition and herein represents himself *pro se*.

3  **3.**

4
5      Adverse Party JESSE MARK OLSEN is the defendant in the civil action (22CV10399)

6  and the petitioner in the domestic relations action (22DR04942) and is represented by Roscoe C.

7  Nelson, Jr. (III), (hereinafter "Mr. Nelson"), Oregon State Bar #732218, with offices located at

8  811 SW Naito Pkwy Ste. 200, Portland, OR 97204, and whose contact phone # is #503-222-1081.

9  **4.**

10     THE HONORABLE PATRICK W. HENRY is a Multnomah County Circuit Court Judge.

11  Judge Henry is the Presiding Judge and conducted the hearings and signed the Order denying

12  Plaintiff-Relator Mr. Gabriel's claimed right to a jury trial under the Oregon Constitution, Article

13
14  1, Section 17 and pursuant to ORCP 51, ORCP 56. That Order and denial is the subject of this

15  petition for a writ of mandamus.

16  **5.**

17     Hon. Patrick W. Henry issued an Order on December 29, 2023 ruling that Petitioner-

18  Relator Mr. Gabriel's Request and Demand for Jury Trial and Motion to Stay Proceedings Until

19  Jury is Selected is denied.

20
21  **6.**

22     Relator Mr. Gabriel filed a Petition for a Peremptory Writ of Mandamus or, in the

23  alternative, an Alternative Writ of Mandamus, with this Court, on January 2, 2024. That petition

24  is currently before this Court and pending judicial review.

25  **7.**

26     With the consolidated trial court Case Nos. 22CV10399 and 22DR04942 set for trial on

27  January 26, 2024, with no jury convened or even basic steps taken to convene a jury, Relator

28  Mr. Gabriel is concerned about the costs and hardship of holding a trial twice – the first being a

Exhibit 30 p. 002

trial by judge only in violation of the Oregon state Constitution, Article 1, Section 17 and pursuant to ORCP 51, ORCP 56, which Relator Mr. Gabriel believes will be declared a mistrial or remanded for retrial for lack of a duly convened jury and other issues raised by Mr. Gabriel in his petition for writ of mandamus. Namely, and as lifted from Mr. Gabriel's petition:

*"The issues raised by Mr. Gabriel in the foregoing paragraphs ... are foundational, definitional, involve monetary damages, involve questions of due process under the Fourteenth Amendment of the US Constitution, and are indeed issues "of like nature" to common law actions seeking damages "at the time the Oregon Constitution was passed" and therefore are intended to be heard in a trial by jury under Article 1, Section 17 of the Oregon Constitution, and also pursuant to ORCP 51 and ORCP 56.*

*"In addition, the statutory ordering of issues and due process rights to a fair hearing preclude Hon. Patrick W. Henry from ordering the dismissal of Mr. Gabriel's Motion for Summary Judgment on the grounds that a trial date is set within 60 days, given that at the time the Motion for Summary Judgment was filed, and apparently even by the time Judge Henry's Order was issued, Defendant/Petitioner Mr. Olsen had still not filed an Answer to Mr. Gabriel's complaint in Case No. 22CV10399. It seems procedurally impossible that a trial date could be properly established for January 17, 2024, with no Answer by the Defendant yet filed as of the time of the December 29, 2023, Order in question, and Hon. Judge Henry's admission on December 5, 2023 that: "... it's going to be a struggle to get this heard, and then if the motion is not granted to have the parties prepared to go to hearing, um... in January and given Mr. Nelson what you're saying, I, um... I'm not sure... that if you're going to be ready to proceed to trial in January if you didn't even consider that you needed to file a response to the pending, uh, 22CV case.". This is particularly true when you consider the jury selection rules*

Exhibit 30 p. 003

1    *and timeline, given that none had been selected, convened, nor were any preliminary*

2    *jury trial procedures followed."*

3                              **POINTS AND AUTHORITIES**

4                                         **8.**

5

6    The legal standard for the Court of Appeals granting a stay is similar to that of a preliminary

7    injunction. Pursuant to ORS 19.350(5), the court will normally consider the following: (a) the

8    likelihood of the appellant prevailing on appeal; (b) whether the appeal is taken in good faith and

9    not for the purpose of delay; (c) whether there is any support in fact or in law for the appeal; and

10   (d) the nature of the harm to the appellant, to other parties, to other persons, and to the public

11   that will likely result from the grant or denial of a stay.

12

13                                        **9.**

14   **(A) The Petitioner (Relator) has a high likelihood of prevailing on appeal.**

15   When a question regarding the right to a jury trial in civil matters is raised and supported by

16   the Oregon State Constitution, the fair determination of that issue is a necessary predicate to the

17   integrity of this state's cherished due process by law.

18                                        **10.**

19
     **Assignment of Error:**  Whereas Hon. Judge Henry writes in his Order dated December
20
     29, 2023, "An action for partition of jointly held real property brought under ORS 105.205 et seq.
21
22   is a statutory proceeding in which the legislature did not intend to confer a right to a jury trial.

23   An action for partition is not "of like nature" to common law actions seeking damages that existed

24   at the time the Oregon Constitution was passed.", Mr. Gabriel has raised a compelling series of

25   argument that the actions in the civil and domestic relations matter constitute a dispute that

26   transcends issues involving mere equity.

27
                                          **11.**
28

Exhibit 30 p. 004

1    **Argument:** In his declaration attached herewith, Mr. Gabriel wrote: "The matter
2    before the Court in this consolidated Case No. 22CV10399 and 22DR04942 is an issue of fact,
3    not law, and a dispute of fact, and not merely equity.", continuing, "The Plaintiff/Respondent and
4    the Defendant/Petitioner are at odds over the fundamental question of whether there is an implied
5    domestic partnership or *de facto* marriage in this instant case, and the question is not simply one
6    of equity – it is a foundational, definitional question and dispute that has arisen between the
7    parties, as I have relentlessly pointed out throughout this case and its pleadings."

**12.**

10   The issues raised by Mr. Gabriel in the foregoing paragraphs and lifted from his
11   previously filed declaration are foundational, definitional, involve monetary damages, involve
12   questions of due process under the Fourteenth Amendment of the US Constitution, and are indeed
13   issues "of like nature" to common law actions seeking damages "at the time the Oregon
14   Constitution was passed" and therefore are intended to be heard in a trial by jury under Article 1,
15   Section 17 of the Oregon Constitution, and also pursuant to ORCP 51 and ORCP 56.

**13.**

18   **Second Assignment of Error.** In addition, the statutory ordering of issues and due
19   process rights to a fair hearing preclude Hon. Patrick W. Henry from ordering the dismissal of
20   Mr. Gabriel's Motion for Summary Judgment on the grounds that a trial date is set within 60 days,
22   given that at the time the Motion for Summary Judgment was filed, and apparently even by the
23   time Judge Henry's Order was issued, Defendant/Petitioner Mr. Olsen had still not filed an
24   Answer to Mr. Gabriel's complaint in Case No. 22CV10399.

**14.**

26   **Argument for Second Assignment of Error.**    It seems procedurally impossible
27   that a trial date could be properly established for January 26, 2024, with no Answer by the
28   Defendant yet filed as of the time of Plaintiff-Appellant's Motion for Summary Judgment filed

Exhibit 30 p. 005

on December 28, 2023, and the December 29, 2023, Order in question, and Hon. Judge Henry's admission on December 5, 2023 that: "… it's going to be a struggle to get this heard, and then if the motion is not granted to have the parties prepared to go to hearing, um... in January and given Mr. Nelson what you're saying, I, um... I'm not sure… that if you're going to be ready to proceed to trial in January if you didn't even consider that you needed to file a response to the pending, uh, 22CV case.". This is particularly true when you consider the jury selection rules and timeline, given that none had been selected, convened, nor were any preliminary jury trial procedures followed. The harm to the parties which would follow any obligations for a retrial or new trial with a properly convened jury – particularly under the specter of a Federal case challenging the underlying case law in the domestic relations element of this instant dispute under Fourteenth Amendment due process and privacy grounds – would make a forced and possibly moot trial on January 26, 2024 an expensive and unnecessary tragedy creating undue burden upon all parties involved in this case, including Adverse Party Mr. Olsen.

## CONCLUSION

### 15.

The lower court ignored the complications posed by the statutory ordering of issues and due process rights to a fair hearing, as shown by the foregoing. As a result, Relator Mr. Gabriel has sought in his petition that this Court vacate or remand the trial court's orders on these motions and grant his demand for jury trial or order that the same should remanded for a fair hearing.

### 16.

In this case, Hon. Judge Patrick W. Henry authorized the dismissal of Mr. Gabriel's Motion for Summary Judgment only by ignoring that no Answer had been filed to the original Complaint by the Relator-Defendant Mr. Gabriel, and then used the pretext of a set trial date to authorize the same. Simultaneously, Honorable jettisoned Mr. Gabriel's due process rights under the Oregon State Constitution by falsely assuming no monetary or other damages were

Exhibit 30 p. 006

1    being sought in the instant partition claim; Article 1, Section 17 reads: "In all civil cases the

2    right of Trial by Jury shall remain inviolate."

3                                    **17.**

4
     Thus, Relator Mr. Gabriel moves this Court for an emergency order to immediately Stay
5
6    Proceedings in the Multnomah County Circuit Court of Oregon under consolidated Case Nos.

7    22CV10399 and 22DR04942, pending Relator's instant Petition to this Court for a Peremptory

8    Writ of Mandamus or, in the alternative, an Alternative Writ of Mandamus, pursuant to ORS

9    Rule 7.35.

10

11        DATED this 19th Day of January, 2024.

12

13

14                              Plaintiff, Pro Se (signature)

15                              Ryan D. Gabriel
16                              2000 Blacktail Rd. #1140
                                Lakeside, MT 59922
17
                                Telephone: (206) 391-9886 m.
18

19

20

21

22

23

24

25

26

27

28

Exhibit 30 p. 007

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

|  |  |  |
|---|---|---|
| | ) | |
| RYAN DEAN GABRIEL, | ) | Case No. 22CV10399 |
| Plaintiff, | ) | DECLARATION IN SUPPORT OF PLAINTIFF'S REQUEST AND |
| | ) | DEMAND FOR JURY TRIAL |
| JESSE MARK OLSEN, | ) | PURSUANT TO ORCP 51, ORCP 56 |
| | ) | OR. CONST. ARTICLE 1 SECTION 17 |
| Defendant | ) | |
| -------------------------------------------------------) | | |

## **DECLARATION**

Plaintiff/Respondent Mr. Gabriel declares under oath that the following events did transpire as described herein:

1.    On December 5, 2023, a scheduling hearing was held presided over by Hon. Judge Patrick Henry of the Circuit Court of Multnomah County, Oregon. The following is a precise transcript of a crucial exchange between the parties involved in this matter which proves a jury trial is in order in Case No. 22CV10399, and which further proves Judge Henry attempted without success to steer Mr. Roscoe C. Nelson (III), Jr. (herein "Mr. Nelson"), attorney for Defendant/Petitioner Jesse Mark Olsen (herein, "Mr. Olsen"), to argue that no jury trial is warranted - under heavy suggestion - because this matter should be "tried in equity".

2.    Mr. Nelson not only did not understand the steering prompt and related talking points offered by Judge Henry, Mr. Nelson conspicuously failed to give Judge Henry any basis to assume this partition claim was exclusively about 'equity', and indeed conspicuously failed to argue – even after heavy prompting – that it should be "tried in equity" as mightily suggested by Judge Henry in an attempt to derail a jury trial as required by law.

Exhibit 30 p. 008

3.      Hon. Patrick Henry continued to attempt to steer Mr. Nelson towards the filing of a Motion for Summary Judgment or other mechanism to derail Mr. Gabriel's right to a Jury Trial in Case No. 22CV10399, but Mr. Nelson remained oblivious as to the point of the suggestion:

### HEARING TRANSCRIPT (DECEMBER 5, 2023)

**1:57:52pm:**    Hon. Judge Patrick Henry: "One of the issues Mr. Nelson which I will point out is there is this pending, um... civil case - civil trial that is the 22CV10399. That may create some challenges as far as being able to proceed with the domestic relations case if these matters were consolidated..."

**1:58:17pm:**    Mr. Nelson: "They were consolid - excuse me your Honor - they were consolidated, by um... some time ago."

**1:58:25pm:** Henry: "Ok, and so what would need to happen - one of the issues I wanted to address with all of you - is um... the scheduling of a, um.... *that civil trial that would include a jury*, um... to the extent that the, um... lawsuit involves a claim for monetary damages of course the parties would have the right to have that case heard by a jury. So, Mr. Nelson, or... I'm just open to either party telling me, how long do you think the case - *to the extent that the case is tried to the jury* - how long do you think it might take? Mr. Nelson?" (Emphasis added.)

**1:59:06pm:** Nelson: "Ok, your Honor, I believe the case you're talking about was the first case on the... or, the other case which is a partition, which doesn't make sense when the only properties are two residential houses. And uh, the... uh, it is consolidated with the domestic relations case - the dissolution of the domestic partnership. I don't think it's going to take any more time, I think - I would hope we would be able to try the case to the court and get it resolved on the date currently scheduled."

1    **1:57:48pm:** Hon. Judge Henry: "So is there a... have you... do you have a plan to

2

3    file a Motion for Summary Judgment or how do you expect summarily to address

    the, uh, partition matter?"

4

5    **2:00:00pm:** Roscoe C. Nelson (III), Jr.: "Your Honor, I don't even know, if um...

6    on that one, other than the fact that it is consolidated with this one, I just assumed

7    it was going forward along with this one. I don't believe... um, that it has merit.

8    You can't partition a house."

9    **2:00:21pm:** Henry: "Well it does seem to me that you would need... if it has no,

10    um, merit... it seems that it's, it's potentially, I mean, you could make a motion at

11

12    the close of the uh, uh... Plaintiff's case, in that case, if you believe your approach

13    would be to seek a directed verdict, but do you have a position regarding whether

14    there's a right to a jury trial, in that partition case, *or are those matters that you*

15    *believe are tried in equity?*" (Emphasis added.)

16    **2:00:56pm:** Mr. Nelson: "I don't believe there is a right to a jury trial on that one,

17    I think it's - you know, again - I the... I, I don't know how you partition a house -

18    two houses. You know, there's... those are properties that belong to both of the

19

20    parties during, and were acquired during their domestic relations, during their

21    domestic partnership. And that is over. So that's what needs to be resolved. But

22    the partition doesn't make sense."

23    **2:01:24pm:** Hon. Judge Henry: "Well Mr. Nelson, if there's a pending case - it

24    may not make sense - but a case that doesn't make sense is potentially subject to

25    dismissal at, for a Motion to Dismiss, is potentially subject to a Motion for

26    Summary Judgment. Or if it's meritless, at the close of the plaintiff's case it's

27    subject to a motion for a directed verdict. But it's not as if just... asserting, well

28

Exhibit 30 p. 010

1  that, that case has no merits, and therefore it doesn't make any sense, and therefore
2  we don't need to address it."

3  **2:01:59pm:** Mr. Nelson: "So, because they were consolidated, I didn't feel the
4  need to answer it specifically, but I will get something filed on it right away. Um,
5
6  and I, I've not seen the other Motion that Mr. Gabriel says he filed."

7  **2:02:19pm:** Hon. Judge Henry: "Alright. And that's what I think we need to
8  address. That, and... I need, certainly, [to] give you time to see his motion and
9  response to it. Um... there's fourteen days after the motion is served on the opposing
10 party. Um, so let's just look at our calendars and we'll look at about... um, well, it's
11 going to be a struggle to get this heard, and then if the motion is not granted to have
12
13 the parties prepared to go to hearing, um... in January and given Mr. Nelson what
14 you're saying, I, um... I'm not sure... that if you're going to be ready to proceed to
15 trial in January if you didn't even consider that you needed to file a response to the
16 pending, uh, 22CV case. Give me a moment."

17                    **DECLARATION (CONTINUED)**

18 4.      The above transcript was ordered, paid for, and transcribed by me using FTR court
19 reporting software used by the Court itself. (*See* Exhibit 1).
20
21 5.      The matter before the Court in this consolidated Case No. 22CV10399 and
22 22DR04942 is an issue of fact, not law, and a dispute of fact, and not merely equity.

23 6.      The Plaintiff/Respondent and the Defendant/Petitioner are at odds over the
24 fundamental question of whether there is an implied domestic partnership or *de facto* marriage
25 in this instant case, and the question is not simply one of equity – it is a foundational, definitional
26 question and dispute that has arisen between the parties, as I have relentlessly pointed out
27 throughout this case and its pleadings.
28

4        DECLARATION IN SUPPORT - PLAINTIFF/RESPONDENT'S DEMAND FOR JURY TRIAL

Exhibit 30 p. 011

7.     Here I would cite the various pleadings in which I dispute the essence and nature of this action – not merely the division of assets – except that there are virtually *no* pleadings in which I do *not* go to great lengths to dispute the *issue of fact* that Defendant/Petitioner Mr. Olsen and I are not in any way, shape or form married or in any sort of explicit or implicit domestic partnership under Oregon law. (Emphasis added.)

8.     To the extent that I must explicitly invoke monetary damages, let it be noted here and now that I intend to recover damages, notwithstanding a previously filed Motion for Sanctions which was partly upheld by this same Hon. Judge Henry, but also the Federal case I have filed[1] which seeks injunctive and declaratory relief to redress the damage caused by Defendant/Petitioner's rank violations of my due process rights under the Fourteenth Amendment of the US Constitution (*See* U.S. Const. amend. XIV, § 1) given that *'Beal v. Beal'*[2] and all subsequent case law in Oregon was instantaneously, substantively and retroactively rendered obsolete by the *'Obergefell v. Hodges'* SCOTUS ruling in 2015[3].

9.     Now, herein, with this Declaration, to this Court, I hereby notify in explicit, unequivocal terms that this dispute is not merely an issue of 'equity' but rather a matter of civil rights under the Fourteenth Amendment due process clause, United States Constitution, and all that implies, including recovery of damages incurred by the domestic relations lawsuit.

DATED this 31st Day of December, 2023.

_____
Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.

---

[1] Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen – Federal District Court of Montana, Missoula Div.
[2] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.
[3] *Obergefell v. Hodges*, 576 U.S. —, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)

Exhibit 30 p. 012

## IN THE SUPREME COURT OF THE STATE OF OREGON

|  |  |  |
|---|---|---|
| | ) | |
| RYAN DEAN GABRIEL, | ) | **Case No. 22CV10399** |
| | | (Multnomah County Circuit Court) |
| Relator, | ) | |
| | ) | |
| vs. | ) | **OSC Case No.: S070743** |
| | ) | |
| JESSE MARK OLSEN, | ) | |
| | | **CERTIFICATE OF SERVICE** |
| Adverse Party. | ) | |
| | ) | |
| ----------------------------------------------- | -) | |

I hereby certify that I served the foregoing ***Relator's Emergency Motion to Stay Proceedings in Trial Court Pending Relator's Petition for Writ of Mandamus, Per ORS 7.35***, and this ***Certificate of Service*** on the following party:

> Attn: Hon. Judge Patrick Henry
> Multnomah County Courthouse
> 1200 SW 1st Avenue
> Portland, OR 97204
> maryjane.simpson@ojd.state.or.us

By the following method or methods:

_____ by causing full, true and correct copies thereof to be hand delivered to the attorney(s) at the attorney(s) last known office address listed above on the date set forth below. An affidavit of service from the process server will follow.

__X__ by mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing address shown above, sent via USPS certified mail with signature receipt.

DATED this ___19th___ day of January 2024.

By: _____

Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922

___(206) 391 - 9886___
Telephone

Exhibit 30 p. 013

## IN THE SUPREME COURT OF THE STATE OF OREGON

|  |  |  |
|---|---|---|
| | ) | |
| RYAN DEAN GABRIEL, | ) | **Case No. 22CV10399** |
| | | (Multnomah County Circuit Court) |
| Relator, | ) | |
| | | |
| vs. | ) | **OSC Case No.: S070743** |
| | | |
| JESSE MARK OLSEN, | ) | |
| | | **CERTIFICATE OF SERVICE** |
| Adverse Party. | ) | |
| | | |

I hereby certify that I served the foregoing ***Relator's Emergency Motion to Stay Proceedings in Trial Court Pending Relator's Petition for Writ of Mandamus, Per ORS 7.35***, and this ***Certificate of Service*** on the following party:

> Roscoe C. Nelson
> Nelson & Nelson
> 811 SW Naito Parkway, Suite 200
> Portland, OR 97204
> mail@roscoecnelson.com
> Of Attorneys for Petitioner

By the following method or methods:

_____ by causing full, true and correct copies thereof to be hand delivered to the attorney(s) at the attorney(s) last known office address listed above on the date set forth below. An affidavit of service from the process server will follow.

___✗___ by mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing address shown above, sent via USPS certified mail with signature receipt.

DATED this ___19ᵗʰ___ day of January 2024.

By: _____

Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922

__(206) 391-9886__
Telephone

Exhibit 30 p. 014

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RYAN D. GABRIEL,<br><br>                 Plaintiff,<br><br>  vs.<br><br>JESSE MARK OLSEN,<br><br>                Defendant. | CV 23-142-M-DLC-KLD<br><br><br>FINDINGS AND<br>RECOMMENDATION |

This matter comes before the Court on Plaintiff Ryan D. Gabriel's Motion for a Preliminary Injunction. (Doc. 25). For the reasons stated below, Gabriel's motion should be denied and this matter should be dismissed based on the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).

## I.     Background

On November 17, 2023, Gabriel, who is proceeding pro se, paid the civil filing fee and filed this 42 U.S.C. § 1983 action against Defendant Jesse Mark Olsen. (Doc. 1). In March 2022, Defendant Jesse Mark Olson apparently filed a civil action against Gabriel in the Circuit Court for Multnomah County, Oregon for dissolution of a domestic partnership. (Doc. 1 at 1, Doc 25 at 1). According to Gabriel, that domestic partnership lawsuit is still pending and is scheduled to go to

1

Exhibit 31 p. 001

trial this Friday, January 26, 2024. (Doc. 25 at 2).

Gabriel's Complaint and Claim/Prayer for Declaratory and Injunctive Relief challenges the constitutionality of Oregon's domestic partnership statutes and alleges constitutional violations arising from the domestic partnership dissolution proceedings pending in Oregon state court. (Doc. 1). The Complaint identifies two causes of action: (1) Olsen's "abuse of unregistered domestic partnership caselaw in Oregon violates [Gabriel's] rights of liberty, dignity, privacy, and personal autonomy guaranteed by the Fourteenth Amendment's Due Process Clause"; and (2) any finding by an Oregon court that the parties are in a domestic partnership would potentially implicate [Gabriel] in mortgage fraud along with [Olsen]." (Doc. 1 at 15, 17) (capitalization removed).

Gabriel seeks a declaratory judgment that Olsen's domestic partnership lawsuit violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and jeopardizes Gabriel by implicating both of them "in potential criminal mortgage fraud, were an Oregon court to somehow find a domestic partnership does exist" under Oregon law. (Doc. 1 at 18). Gabriel's Complaint also includes a request for relief in the form of "preliminary and permanent injunctions enjoining [Olsen], his legal counsel and those in active concert or participation with him from pursuing his marriage or domestic partnership claim, in any jurisdiction." (Doc. 1 at 18). The Complaint does not

Exhibit 31 p. 002

request monetary damages. (Doc. 1 at 18).

Olsen's responsive pleading is due this Friday, January 26, 2024 – the same day that the trial in the Oregon domestic partnership lawsuit is apparently set to begin. On January 20, 2024, Gabriel filed the pending motion for a preliminary injunction. (Doc. 25). Gabriel asks the Court to issue a preliminary injunction prohibiting Olsen from advancing his claims in the Oregon domestic partnership dissolution proceedings until this Court has issued a final judgment on the merits in this § 1983 case. (Doc. 25 at 1).

The abstention doctrine recognized in *Younger* provides a narrow exception to the "virtually unflagging" obligation of federal courts to exercise jurisdiction where it exists. *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018). "*Younger* cautions against federal interference with ongoing state criminal, civil, and administrative proceedings." *Arevalo*, 882 at 765. A federal court may raise the *Younger* abstention doctrine sua sponte. *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000).

*Younger* abstention applies when: "(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo*, 882 F.3d at 765 (citing *ReadyLink*

Exhibit 31 p. 003

*Healthcare, Inc. v. State Comp. Ins. Fund,* 754 F.3d 754, 758 (9th Cir. 2014)

(internal quotation marks removed).

All four *Younger* abstention factors are satisfied here. First, as alleged in

Gabriel's complaint, the Oregon state court domestic partnership proceedings are

ongoing. Second, those proceedings implicate important state interests in domestic

and family relations. "Family relations are a traditional area of state concern," and

"a state has a vital interest in protecting the authority of the judicial system, so that

its orders and judgments are not rendered nugatory." *H.C. ex rel. Gordon*, 203 F.3d

at 613 (quotation marks and citations omitted). "This is a particularly appropriate

admonition in the field of domestic relationship, over which federal courts have no

general jurisdiction." *H.C. ex rel. Gordon*, 203 F.3d at 613 (finding that a § 1983

action challenging pending state child custody proceedings implicated important

state interests). Third, there is nothing preventing Gabriel from bringing the

constitutional claims he raises here in the Oregon proceedings. *See Cannon v.*

*Gomez*, 2018 WL 3344372, at *3 (N.C. Cal. July 9, 2018) (citing *Martinez v*

*California*, 444 U.S. 277, 283 n. 7 (1980) for the proposition that a plaintiff may

assert a 42 U.S.C. § 1983 claim in state court). Finally, the Complaint in this case

seeks relief in the form of a preliminary and permanent injunction enjoining Olsen

and his counsel from "pursuing his marriage or domestic partnership claim, in any

jurisdiction." (Doc. 1 at 18). And in his motion for a preliminary injunction,

Exhibit 31 p. 004

Gabriel is expressly asking this Court to enjoin Olsen from advancing his claims in the Oregon domestic partnership dissolution proceedings pending a final judgment in this § 1983 case. (Doc. 25 at 1).  As in *H.C. ex rel. Gordon,* Gabriel is seeking a "wholesale federal intervention into an ongoing state domestic dispute," which "is precisely the type of case suited to *Younger* abstention." *H.C. ex rel. Gordon*, 203 F.3d at 613.

Where, as here, *Younger* abstention is "appropriate as to a request for declaratory or injunctive relief, the court may not retain jurisdiction and must dismiss the action." *Cannon*, 2018 WL 3344372, at *2 (citing *Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988)). For these reasons,

IT IS RECOMMENDED that Plaintiff's Motion for a Preliminary Injunction with or without Temporary Restraining (Doc. 26) be DENIED and this case be DISMISSED based on *Younger* abstention.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

//

//

//

//

5

Exhibit 31 p. 005

//

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel on or before January 25, 2024, or objection is waived.[1]

DATED this 23rd day of January, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge

---

[1] *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full time period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

Exhibit 31 p. 006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RYAN D. GABRIEL, | CV 23–142–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| JESSE MARK OLSEN, | |
| Defendant. | |

United States Magistrate Judge Kathleen L. DeSoto issued her Findings and Recommendation in this case on January 23, 2024, recommending that the Court deny Gabriel's Motion for a Preliminary Injunction (Docs. 25, 26) and dismiss the matter based on the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).  (Doc. 27 at 5.)  The Court adopts Judge DeSoto's Findings and Recommendation in part.

Plaintiff timely filed objections to the Findings and Recommendation.  (Doc. 32.)  Consequently, Plaintiff is entitled to *de novo* review of those findings and recommendations to which he has specifically objected.  28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Absent objection, this Court reviews findings and recommendations for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).  Clear error exists if the Court is left with a "definite and firm

–1–

Exhibit 32 p. 001

conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

Plaintiff, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 against Defendant Jesse Mark Olsen.  (Doc. 1.)  Plaintiff and Defendant are currently engaged in domestic partnership dissolution proceedings in the state of Oregon.  (*Id.* at 1.)  Plaintiff identifies two causes of action: (1) Defendant's "abuse of unregistered domestic partnership caselaw in Oregon violates [Plaintiff's] rights of liberty dignity, privacy, and personal autonomy guaranteed by the Fourteenth Amendment's Due Process Clause," (*id.* at 15); and (2) "any finding by an Oregon court that the parties are in a domestic partnership would potentially implicate the Plaintiff in mortgage fraud along with the Defendant," (*id.* at 17).  Plaintiff seeks a judgment declaring that Defendant's domestic partnership lawsuit violates the Due Process clause of the Fourteenth Amendment and "jeopardizes Plaintiff by potentially and needlessly implicating both [parties] in potential criminal mortgage fraud."  (*Id.* at 18.)  Plaintiff also seeks "a preliminary and permanent injunction enjoining Defendant . . . from pursuing his marriage or domestic partnership claim."  (*Id.*)

Trial in the Oregon state court matter is set to begin today, January 26, 2024. Plaintiff's requested relief would prohibit Defendant from advancing his claims in the state court proceedings until this Court has resolved Plaintiff's § 1983 claims.

–2–

Exhibit 32 p. 002

As such, Judge DeSoto concluded that the abstention doctrine recognized in *Younger* requires the Court to dismiss the § 1983 action.  (Doc. 27 at 3–5.) Plaintiff raises two "objections" to Judge DeSoto's findings and recommendation: (1) he attempts to withhold consent to adjudication by a magistrate judge in this matter; and (2) he argues that Judge DeSoto erroneously applied *Younger*'s abstention doctrine.  (Doc. 32 at 3.)

First, federal law permits a district judge to "designate a magistrate judge to hear and determine any pretrial matter pending before the court" and to issue findings and recommendations on any of those matters that happen to be dispositive.  28 U.S.C. § 636(b)(1); *see also* D. Mont. L.R. CV 72.1 (Dec. 1, 2023) ("Each United States magistrate judge appointed by this court is authorized and designated by the Article III judges of the court to exercise all powers and perform all duties described by 28 U.S.C. § 636 and by federal rules and other federal law and may perform any additional duty that is not inconsistent with the Constitution or laws of the United States or with these rules.").  A district judge's referral to a magistrate judge under § 636(b)(1) does not require the parties' consent. *Cf.* 28 U.S.C. § 636(c)(1) (permitting parties to consent to allowing a magistrate judge to "conduct any or all proceedings in a jury or nonjury civil matter and to order the entry of judgment in the case").  Rather, the "nonconsensual referral[] of pretrial but case-dispositive matters under § 636(b)(1)" leaves the district judge "free to do

–3–

Exhibit 32 p. 003

as it sees fit with the magistrate judge's recommendations[.]" *Roell v. Withrow*, 538 U.S. 580, 585 (2003).  Put simply, the undersigned has the authority to refer the case to Judge DeSoto, as was done in this matter, without Plaintiff's consent to do so.  Judge DeSoto is authorized to issue findings and recommendations as to case dispositive matters and Plaintiff's "objection" to the referral of this case is therefore meritless.

Next, Plaintiff's second objection raises a general challenge to Judge DeSoto's application of *Younger* in lieu of ruling on Plaintiff's Motion for Preliminary Injunction.  (*See* Doc. 32 at 3.)  Due to the broad nature of Plaintiff's objection, the Court will review the application of *Younger de novo*.

*Younger* stands for the proposition that federal courts should avoid interfering with ongoing state criminal, civil, and administrative proceedings.  *See Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) ("*Younger* cautions against federal interference with ongoing state criminal, civil, and administrative proceedings.")  *Younger* abstention in civil cases "is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges."  *Cook v. Harding*, 879 F.3d 1035, 1039 (9th Cir. 2018).  Where these factors are met, *Younger* provides an exception to this Court's typical obligation to

–4–

Exhibit 32 p. 004

exercise jurisdiction where it exists. *Arevalo*, 882 F.3d at 765. The Court may raise the abstention doctrine *sua sponte*. *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000).

Applying the above factors, the Court finds that *Younger* abstention does not apply. The first, third, and fourth factors are all met in this case. The Oregon state court dissolution proceedings are ongoing. Oregon has a strong interest in matters of family relations—a "traditional area of state concern," over which the state "has a vital interest in protecting the authority of the judicial system." *H.C. ex rel. Gordon*, 203 F.3d at 613. And Plaintiff could raise the same challenges to the domestic partnership proceedings in the course of the state court matter. *See Martinez v. California*, 444 U.S. 277, 283 n.7 (1980) (42 U.S.C. § 1983 action brought in state court); *Cook*, 879 F.3d at 1038 (same).

Regarding the second factor, the Ninth Circuit has made clear that "*Younger* abstention is improper in civil cases outside of . . . two limited categories"—quasi-criminal enforcement actions or actions involving a state's interest in enforcing the orders and judgments of its courts—"regardless of the subject matter or the importance of the state interest." *Id.* at 1039. The Ninth Circuit has further explained that "federal courts cannot ignore [these] strict limitations on *Younger* abstention simply because states have an undeniable interest in family law." *Id.* at 1040.

–5–

Exhibit 32 p. 005

The Oregon state court action is not quasi-criminal;[1] however, the question of whether the case implicates Oregon's interest in enforcing the orders and judgments of its courts is a closer question.  "The Supreme Court and [Ninth Circuit] have held that this [second category] is geared to ensuring that federal courts do not interfere in the procedures by which states administer their judicial system and ensure compliance with their judgments."  *Rynearson v. Ferguson*, 903 F.3d 920, 926 (9th Cir. 2018).  The Ninth Circuit has repeatedly cautioned against applying *Younger* abstention except in "extraordinary and narrow" circumstances. *See, e.g.*, *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017).

For example, in *Cook*, the Ninth Circuit reversed the district court's application of *Younger* abstention in the context of constitutional challenges to Cal. Fam. Code § 7962 raised simultaneously in both state and federal court proceedings.  879 F.3d at 1038.  The court reasoned that "an argument regarding the state courts' power to apply its laws in subsequent proceedings and the state's interest in its interrelated family laws . . . do[] not relate to the state courts' ability to enforce compliance with judgments *already made*."  *Id.* at 1041 (emphasis

---

[1] The Oregon action is a civil action for dissolution of a domestic partnership and has none of the indicia of a "quasi-criminal" action—e.g., initiated to sanction a defendant for some wrongful conduct; involve a state actor as a party to the proceeding; involve investigations culminating in the filing of a formal complaint or charges.  *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013).

–6–

Exhibit 32 p. 006

added).  Here, the Oregon action does not relate to the state courts' ability to enforce compliance with judgements already made and Plaintiff does not challenge "the *processes* by which the State compels *compliance*" with the judgments of its courts.  *Cook*, 879 F.3d at 1041 (emphasis added); *see also Sloatman v. Housewright*, No. 2:21-cv-08235-WLH (MAA), 2023 WL 8852375, at *6 (C.D. Cal. Nov. 17, 2023) (concluding that a "divorce action does not fall into one of the two "exceptional categories" of civil cases warranting *Younger* abstention").

Accordingly, the Court concludes that *Younger*'s abstention doctrine does not apply in this matter and, therefore, declines to adopt that portion Judge DeSoto's Findings and Recommendation.  Nonetheless, the Court finds that Plaintiff's complaint must be dismissed for failure to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

A federal court may dismiss a claim *sua sponte*, and without notice, for failure to state a claim under Rule 12(b)(6), particularly if it is clear that the claimant cannot possibly win relief.  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the claimant cannot possibly win relief." (internal citation omitted)); *see also LaForge v. Gets Down*, No. CV 17-48-BLG-BMM-TJC, 2019 WL 4044093, at *2 (D. Mont. May 28, 2019), *report and recommendation adopted,* No. CV-17-48-BLG-BMM, 2019 WL

Exhibit 32 p. 007

2762896 (D. Mont. July 2, 2019) (*sua sponte* dismissing § 1983 claim for failure to state a claim where defendant was not a state actor).

Section 1983 creates a civil cause of action against "a person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "By the plain terms of § 1983, a cause of action will lie where a plaintiff proves that: (1) a person acting under color of State law; (2) subjects or causes to be subjected to deprivation; (3) a U.S. citizen or person in the jurisdiction of the United States; (4) of a right, privilege, or immunity secured by the Constitution and laws." *Chaudhry v. Aragón*, 68 F.4th 1161, 1169 (9th Cir. 2023).

Plaintiff's claim fails at the first element. Defendant is a private individual and is not acting under the color of any state or federal law merely by virtue of bringing a domestic partnership dissolution action. *See LaForge*, 2019 WL 4044093, at *2 ("In the present case, [defendant], a private party, was not, by mere virtue of being a party to a divorce proceeding in tribal court, acting under color of state or federal law."). Accordingly, the Court finds that Plaintiff cannot state a viable claim for the violation of any due process right against Defendant stemming from the Oregon state court action. The Court further finds that amendment of the

-8-

Exhibit 32 p. 008

complaint would be futile. *Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987) ("A pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment.").

Therefore, the Court adopts Judge DeSoto's recommendation to dismiss this matter; however, the Court reaches this determination on different grounds.

Accordingly, IT IS ORDERED:

1. Judge DeSoto's Findings and Recommendation (Doc. 27) are ADOPTED IN PART;

2. Plaintiff's Motion for a Preliminary Injunction (Docs. 25, 26) is DENIED AS MOOT.

3. This matter is DISMISSED WITH PREJUDICE for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

4. The Clerk of Court shall enter judgment of dismissal by separate document.

DATED this 26th day of January, 2024.

Dana L. Christensen, District Judge
United States District Court

-9-

Exhibit 32 p. 009

IN THE SUPREME COURT OF THE STATE OF OREGON

Ryan Dean Gabriel,
Plaintiff-Relator,

v.

Jesse Mark Olsen,
Defendant-Adverse Party.


Multnomah County Circuit Court
22CV10399

S070743

**ORDER DENYING PETITION FOR WRIT OF MANDAMUS
AND DISMISSING MOTIONS TO STAY AND TO DISMISS**

Upon consideration by the court.

The petition for writ of mandamus is denied. The motion to stay and motion to dismiss
are dismissed as moot.


_____
Meagan A. Flynn
Chief Justice, Supreme Court
February 01, 2024


_____
**DESIGNATION OF PREVAILING PARTY AND AWARD OF COSTS**
Prevailing party: Adverse Party                    [ X ] No costs allowed
_____


c:      Ryan Dean Gabriel
        Roscoe C Nelson III
        Hon Patrick W. Henry




**ORDER DENYING PETITION FOR WRIT OF MANDAMUS AND DISMISSING
MOTIONS TO STAY AND TO DISMISS**
_____

Exhibit 33 p. 001

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**

**FOR THE COUNTY OF MULTNOMAH**

|  |  |
|---|---|
| )  | |
| RYAN DEAN GABRIEL, ) | Case No. 22DR04942 |
|  ) | Case No. 22CV10399 |
| Respondent/Plaintiff, ) | **RESPONDENT/PLAINTIFF'S TRIAL** |
|  ) | **CLOSING ARGUMENTS** |
| ) | |
| JESSE MARK OLSEN, ) | Due Date: 3/27/2024 |
|  ) | **[ CORRECTED ]** |
| Petitioner/Defendant. ) | |
| -------------------------------------------------------) | |

<u>**CLOSING ARGUMENTS**</u>

**1.**

Respondent/Plaintiff Ryan Dean Gabriel ( Mr. Gabriel ) herein closes his testimony and preceding evidence presented both at trial and throughout the various motions, pleadings, and documentation filed into the consolidated case (hererinafter  The Case Record ), and herein offers the following closing arguments.

**2.**

<u>**A.      Core Issues**</u>

This case is ultimately about three things:

i) Whether or not the  dissolution  case infringes upon the Respondent s Fourteenth Amendment (*See* U.S. Const. amend. XIV,    1) rights and is therefore unconstitutional;

ii) Whether or not an equally viable resolution    the sale and partition of the Portland property in Multnomah County, followed by a separate partition by referee under Montana law of the property in Montana    is less damaging to all parties whilst having an approximate (though not identical) equitable outcome, lowering the stakes for all involved; and

iii) Whether or not *'Beal v. Beal'* has meaningful limiting principles, as determined by whether the local court feels bound by its fuzzy, ever-morphing precedent strongly enough to find that there is, in fact, a domestic partnership between the parties potentially to their detriment   in spite of both parties  written declarations to the contrary, and in spite of 100   of all third-party witness testimony received into evidence categorically denying the existence of any domestic partnership, and in spite of no third-party witness testimony whatsoever supporting such a specific claim.   In other words, would the court presume to will into existence a contract that was never signed and previously existed only in the Petitioner s imagination and contrary to his own written statements and testimony, and thereby forcibly conscript the unwitting Respondent involuntarily into that contract, thus potentially implicating all parties in criminal mortgage fraud    ORS 106.315 ( Prohibited and void domestic partnerships ) states:  2.  When either party to a domestic partnership is incapable of making the civil contract or **consenting to the contract** for want of legal age **or sufficient understanding**, or **when the consent of either party is obtained by force or fraud**, the domestic partnership is void from the time it is so declared by a judgement of a court having jurisdiction of the domestic partnership.  2007 c.99  4; 2009 c.561  2; 2015 c.629  10 . Surely this statute, by extension, would apply to the period before the court s ruling if such a contract was  created  by fraud and without the unwitting party s consent and understanding.

**3.**

If the local court finds that there is a domestic partnership between the parties    which would require the court to rely entirely on inference, hints, optics and supposition, and given that all unequivocal, objective evidence produced at trial directly contradicts this finding    it would thereby propel *'Beal v. Beal'* case law precedent into uncharted legal territory until it is inevitably overturned by a Federal Court, the appellate court, or the Supreme Court of Oregon.

**4.**

Exhibit 34 p. 002

If the local court finds that there was not specifically a domestic partnership but rather some other previously undefined familial entity that can nonetheless be dissolved under *'Beal v. Beal'*, then it will have willed into existence a revolutionary new subcategory of implied familial contract subject to ORS 106-107 and therefore newly established under Oregon law. At the conclusion of trial, Judge Patrick Henry implored the parties to label their final exhibits, respectively, R-E-S-P and E-C-T . *'Beal v. Beal'* in and of itself **disrespects** logic, reason, practicality, reasonability, privacy, liberty, and even basic human agency. (Emphasis added.)

**5.**

**B.     The Evidence Presented**

The local court heard the following evidence and testimony:

i)     FTR   Court   Record    HenryP_20240126-0938_01da503b623f7770    dated **1/26/2024** time stamp **9:40:19am – 9:43:14am**):   Plaintiff/Respondent Mr. Gabriel stated at trial that the principal reason for wanting the local court to treat the Portland matter as a partition and sale of one piece of property under ORS 105 is because he  lives in the Montana property  and thus doesn t want the Montana property  just rolled up with the Oregon property , with an Oregon court ordering that both properties be sold, which in turn would result in Mr. Gabriel being forcibly evicted from his Montana home.  Mr. Gabriel explained that the Montana property can actually be partitioned without selling the entire property, given that it consists of 5.95 acres, there are no zoning restrictions, and it consists of two fully autonomous cabins with two separate driveways and separate electrical systems, arguing that it makes far more sense for a local court in Montana   which better understands the nature of the area that the Montana property is situated in    to rule on the partition of that property under local rules.  Mr. Gabriel thus explained why a mere sale and partition of the **Oregon property only** by the local court made more practical sense, and Judge Henry observed that at least where the Oregon property is concerned, both sides seem largely in agreement.  (Emphasis

added.)  The parties  disagreement largely revolves around their differing views about whether it is fair, legally appropriate or practical that the Montana property should be adjudicated in an Oregon family law court.

ii)     FTR   Court   Record    HenryP 20240126-0943 01da503c1514de80    dated **1/26/2024** time stamp **9:40:19am – 9:44:17am**):  Plaintiff/Respondent Mr. Gabriel stated at trial that he wanted to avoid  being involuntarily conscripted into what is basically considered a marriage with a gay man; I don t want that on my record; I don t want to have to go around the rest of my life saying I ve effectively been divorced, because I ve never been married. The local Court then suggested that Mr. Gabriel  could have avoided all of this  by settling, apparently not considering that a better way to avoid a *de facto* divorce is to not be married or in a domestic partnership in the first place.  As Mr. Gabriel has exhaustively argued throughout this case, the parties are not married, Oregon is not a common law marriage state, and both parties have in writing repeatedly stated that there is no domestic partnership.   Thus, the proposition of settling under a false premise (domestic partnership) seems absurd on its face. As an analogy:  A person being forcibly robbed of or coerced from their property (theft) should be under no obligation to settle with the thief who is attempting to steal from them; rather, it is the thief that is being unreasonable by expecting a settlement under a false premise (i.e., the premise that they have a claim to the other party s property).  Ideologically, ***'Beal v. Beal' is not at all unlike court-enforced burglary or conscripted, forced marriage.*** (Emphasis added.) Regardless, Mr. Gabriel testified that he did in fact attempt to settle on a multitude of occasions under the auspices of a partition claim on each property, to keep the issue confined to real estate alone, leaving all the personal and human agency questions off the table and not the subject of any settlement.

iii)     FTR   Court   Record    HenryP 20240126-0953 01da503d7abf8590    dated **1/26/2024** time stamp **9:53:57am – 9:57:52am**):  Expert witness Robin Weirich ( Mrs.

4     PLAINTIFF/RESPONDENT S TRIAL CLOSING ARGUMENTS

Exhibit 34 p. 004

Weirich ) testified that she has been a licensed mortgage lender, broker and consultant for 28 years, and an employee of Security National Mortgage Corporation (hereinafter SNMC ) as it relates to her interactions with parties Mr. Gabriel and Mr. Olsen in the process of applying, underwriting and closing all the various mortgages now in question in this instant case[1]. Mrs. Weirich stated that she has been a facilitator of the transactions that you and Jesse have purchased together for about nine years now, I think in four transactions. Mrs. Weirich testified that she is licensed to practice mortgage lending in nineteen states, including Oregon and Montana. Mrs. Weirich testified that when Mr. Olsen and Mr. Gabriel applied for these mortgages, the parties supplied their financial documents, and made warranties and representations to the bank, and further that, If a person were to put incorrect information, false information or knowingly withhold information, that s loan fraud. , clarifying that this means mortgage fraud, and that these representations made by applicants in the process of applying and closing the loans carry legal weight.

iv)     FTR Court Record HenryP 20240126-0958 01da503e2d953ac0 dated **1/26/2024** time stamp **9:58:16am – 9:58:42am**): Mrs. Weirich further testified that All of the parties documents when you applied online and when you applied individually have you as unmarried men, and not in a domestic relationship. Oregon state has a form that, um, you would have completed that you re in a domestic relationship and that form has never been completed.

v)      FTR Court Record HenryP 20240126-1003 01da503ee069de80 dated **1/26/2024** time stamp **10:04:00am – 10:07:45am**): Mrs. Weirich then authenticated Exhibit 18, which was received into evidence in its entirety by the trial court, reading aloud page 2 of

---

[1] SNMC Loan  000647339 for  416,250 dated 6/12/2014;
SNMC Loan  000997232 for  472,000 dated 6/19/2020;
SNMC Loan  001053983 for  548,000 dated 12/21/2020;
SNMC Loan  001104467 for  548,250 dated 9/22/2021.

Exhibit 34 p. 005

Exhibit 18: Oregon Addendum to a Real Estate Mortgage Application , completed by Mr. Olsen and signed by Mr. Olsen on 6/15/2020. Mrs. Weirich testified that the purpose of this document in Oregon is to allow any parties potentially in a domestic relationship to fill this form out and declare as much. Then Mrs. Weirich read a portion of the contents of the document, following the question of whether the parties are in a domestic partnership (in which the parties answered  no ) the following sub-question:  Can anyone other than you claim a homestead interest, community property interest, survivorship right, any spousal rights or other interest in the property to secure a repayment of the loan  And it says  no . Finally, Mrs. Weirich testified that she was involved in the closing of all four mortgage loans executed by parties Mr. Olsen and Mr. Nelson  So Salmon St. Oregon property purchase, two refinances of Salmon St., and the Montana property purchase. This testimony alone should have spelled the end of the Petitioner s domestic partnership lawsuit under *'Beal v. Beal'* or any other related case law precedent in Oregon. Just as in *In re Baker*[2], Mr. Olsen s past communications and representations  on stark display throughout the documents admitted into evidence under Exhibit 18  preclude a finding of domestic partnership. Most notably, and as detailed while refinancing the Portland Property solely under his own name in June of 2020 and July of 2021, Mr. Olsen repeatedly issued unequivocal statements to lender SNMC, declaring that the parties are  not in a domestic partnership ,  single ,  unmarried , and answering  NO  when asked,  Can anyone, other than you, claim a homestead interest,

---

[2] *In re the Domestic Partnership of Baker*, 232 Or App 646, 649 (2009), after the parties 24-year relationship ended, the petitioner filed a complaint alleging the parties intended to have a domestic partnership and demanded an equitable division of the house they had cohabited. At trial, the petitioner testified that she and defendant were in an intimate relationship, that the defendant introduced her as his wife to others, and that she had contributed to the property s down payment. *Id.* The court ultimately denied plaintiff s claim for domestic partnership, relying heavily on evidence that the plaintiff had previously filed an application for Social Security disability where she made sworn statements that she did not consider herself an owner of the property and had contributed significantly less money towards the property compared to the defendant. *Id. at 650.* Considering these prior statements, the trial court found defendant to be more credible than plaintiff and further found the plaintiff had "virtually zero" credibility. Because the plaintiff s inconsistent prior statements regarding the property were wholly inconsistent with her trial testimony, the trial court found there was no credible evidence supporting her claim for domestic partnership.

Exhibit 34 p. 006

community property interest, survivorship right, any spousal rights, or other interest, in the property that will secure repayment of the loan

      vi)     FTR Court Record HenryP 20240126-1008 01da503f933f93b0 dated **1/26/2024** time stamp **10:10:00am – 10:11:47am**): Mrs. Weirich authenticated Exhibit 16 specifically the portion of Exhibit 16 (*See* 5-14) also labeled Exhibit V by identifying the document as an e-mail exchange that she recognizes from July 29, 2021, and that portion of Exhibit 16 was received into the trial court record.

      vii)     FTR Court Record HenryP 20240126-1023 01da5041abbf53b0 dated **1/26/2024** time stamp **10:24:16am – 10:27:42am**): Judge Henry asks Mrs. Weirich to confirm Does Mr. Olsen affirmatively state that we are not in a domestic partnership under Exhibit 16 (*See* 5-14.), also labeled Exhibit V . After substantial back-and-forth Mrs. Weirich confirms (at time stamp **10:26:10am**) that, Mr. Olsen does state that he is not in a domestic relationship. , and then corrected herself, partnership, correct. , and then Mrs. Weirich affirmed that she stated in the e-mail exchange, in response to Mr. Olsen, because you are not in a domestic partnership, ; Mrs. Weirich replied: Correct. And finally, when asked to confirm, So at no point have Jesse and I said to you that we are in a domestic partnership. , Mrs. Weirich replied, Correct. This testimony, combined with the above cited Exhibit 16, along with Exhibit 18 (*See* Exhibit 18, 2, etc.) proves that the parties did not believe they were in a domestic partnership, and the only third party and expert witness Mrs. Weirich with intimate knowledge of the legal status of the relationship between the parties along with the documents contained in Exhibit 18 testified that she did not believe Mr. Olsen and Mr. Gabriel were in a legal domestic partnership. (Emphasis added.)

      viii)    As testified by Mrs. Weirich, the salient exchange in Exhibit 16 (*See* 5-14.), also labeled Exhibit V , dated July 29, 2021, explicitly reads:

Exhibit 34 p. 007

**Mr. Olsen:** "Robin, If you could please get back to me on that one question from last night regarding if Ryan should be listed on the page titled the Oregon Addendum to Residential Mortgage *even though we're not in a domestic partnership*, then I can complete the e-signing of all the paperwork. . . . "

**Ms. Weirich:** " Hi Jesse, You do not need to list Ryan on the homestead act because you are not in a domestic partnership   he will again go on title to be protected at closing as we did last time. . . ."

**Mr. Olsen:** "Thanks Robin  I m adding Ryan to the thread so he can directly provide his feedback." (emphasis added).

**Estoppel Affirmative Defense.**   Mr. Olsen s statement that "we re not in a domestic partnership" is detrimental to his affirmative claims seeking dissolution of the parties "domestic partnership".  Mr. Olsen s statement not only seriously undermines his credibility, it also directly contradicts his Complaint which alleges "Petitioner and Respondent began a domestic partnership in April, 2010."   Moreover, Mr. Olsen s claim cannot overcome an estoppel affirmative defense on the grounds he is *estopped* from claiming domestic partnership where Mr. Gabriel relied on Mr. Olsen s representations to his detriment.[3] (Emphasis added.) Here it is important to note that affirmative defenses are permitted in civil trials, and the first-filed case is 22CV10399, a claim for sale and partition of real property.  *By relying on Mr. Olsen's sworn, repeated, written, notarized statements to his mortgage lender, in written applications, throughout underwriting, and all the way to closing and title recording – on four separate mortgage loans underwritten by SNMC – Mr. Gabriel could not possibly have*

---

[3] *See  Bramwell v. Rowland'*, 123 Or. 33, 44-45 (Or. 1927):   In determining who can invoke the doctrine of estoppel and the circumstances under which it comes into operation, the law of estoppel seizes upon elements which are quite similar to those of fraud but stops short of embracing all of the elements of fraud.  A necessary element of fraud is that the party was injured by relying upon the representation. In estoppel it must appear that the representee relied so far upon the representation that it would be inequitable to permit the representor to shift the position which his representation announced.

Exhibit 34 p. 008

*understood the parties to be in a domestic partnership from 2014-2022.* (Emphasis added.) Therefore, the only resolution available to the trial Court to adjudicate this real estate dispute is to consider it through the lens of a sale and partition under ORS 105, which would thereby limit any judgement to the Portland property alone.

ix) FTR Court Record HenryP 20240126-1033 01da50431169d3b0 dated **1/26/2024** time stamp **10:34:59am – 10:38:14am**): In this exchange, the attorney for Petitioner Mr. Olsen, Mr. Roscoe C. Nelson ( Mr. Nelson ), attempted to steer the sole, solitary third-party witness who attended the trial, also an expert witness Mrs. Weirich and per Judge Henry an adverse witness to Mr. Olsen, to agree with the claim that the title paperwork one which states that the Oregon property is held with rights of survivorship , the other which states the Montana property is held as tenants in common might suggest that a right of survivorship in particular is very much like a marital statement. , to which Mrs. Weirich flatly stated, No. , but added she wasn t entirely sure what implications this had on the domestic partnership question.

x) FTR Court Record HenryP 20240126-1038 01da5043c43ec590 dated **1/26/2024** time stamp **10:39:28am – 10:39:45am**): Mr. Gabriel posed the question to Mrs. Weirich: Would it appear that the documents in Exhibit 18 that the Portland property was refinanced in June of 2020 , and Mrs. Weirich answered affirmatively, while not being able to remember the precise closing date. However, this closing date is indicated on Exhibit 19 (*See* Exhibit 18, 12-34) in the closing documents ( Note , Mortgage Rider and Compliance Agreement ) which were executed, signed, dated by Mr. Olsen and notarized on June 15, 2020.

xi) FTR Court Record HenryP 20240126-1043 01da504477140590 dated **1/26/2024** time stamp **10:47:00am – 10:47:59am**): Mrs. Weirich authenticated all pages of Exhibit 19 except for the first page, and Judge Henry admitted into evidence the same.

xii) FTR Court Record HenryP 20240126-1048 01da504529e9bac0 dated 1/26/2024 time stamp **10:48:15am – 10:52:12am**): Mrs. Weirich confirmed that the parties closed on the Montana property mortgage in February 2021 , 8 months after the refinancing of the Portland property ; to Mrs. Weirich replied, Correct. Then Mrs. Weirich authenticated Exhibit 20 in its entirety and agreed with the statement that, The Montana property was purchased eight months after the first refinance of the Portland property, and eight months prior to the second refinance of the Portland property. Finally, at time stamp 10:51:30am, Mr. Gabriel asked Mrs. Weirich, Would it be fair to say Mrs. Weirich that you re not 100 sure, just off the top of your head, how we came up with the money to purchase the Montana property , to which Mrs. Weirich replied, Correct.

xiii) FTR Court Record HenryP 20240126-1146 01da504d5047fd50 dated 1/26/2024 time stamp **11:48:50am – 11:49:09am**): Mr. Olsen through his attorney Mr. Nelson moved to admit into evidence the last page of Exhibit 107 (*See* Exhibit 107, final page), an unsigned Mortgage and Mortgage Tax Deductible Interest Agreement which both parties acknowledge was drafted, but for which no signed copy exists. This evidence shows two things. The first is that the parties explored ways in which the finances of both parties could remain separated for tax and accounting purposes, and to also to account for separate contributions and payments made by each party to the Portland mortgage for tax and accounting purposes. The second thing it proves is that there is no evidence the parties signed this document, which is consistent with Mr. Gabriel s testimony at trial that the document was never signed because an alternate agreement was ultimately struck and which accounted for Mr. Gabriel s lopsided financial and labor-intensive contributions to both the Portland property, which Mr. Gabriel considered to be an investment, and the Montana property, which Mr. Gabriel considered to be his home starting in February of 2021.

Exhibit 34 p. 010

xiv)   FTR   Court   Record   HenryP 20240214-0910 01da5f25a72eecf0   dated **2/14/2024** time stamp **9:13:40am – 9:14:30am**):  Exhibit 11 was authenticated by Mr. Olsen and received into evidence.  From Exhibit 11, Mr. Olsen read aloud his own remarks,  Hey Travis, my business partner, Ryan, forwarded me the e-mail chain below that you guys started regarding the replacement of one of our door window panes. .  Mr. Olsen then acknowledged that this e-mail relates to the Montana property that constitutes a portion of what Mr. Olsen is alleging is a domestic partnership, and was asked,  Would you say that a business partner is the same thing as a domestic partner  , to which Mr. Olsen replied,  No.

xv)   FTR   Court   Record   HenryP 20240214-0915 01da5f265a042cf0   dated **2/14/2024** time stamp **9:15:28am – 9:15:48am**):  Exhibit 14 was authenticated by Mr. Olsen and received into evidence.  Mr. Olsen was asked to describe the contents of Exhibit 14, which he described as a  life insurance  policy with  my brother, Michael Olsen  listed as the beneficiary.  If there was a domestic partnership between the parties as Mr. Olsen alleges, it seems reasonable to assume that it is Mr. Gabriel who would be listed as the beneficiary, as opposed to Mr. Olsen s brother.  This evidence dovetails with the fact   pointed out repeatedly by Respondent Mr. Gabriel and his attorneys throughout the trial and all preceding pleadings filed into the case   that the parties have no formal written documentation to suggest that the parties are married or domestic partners; the parties ***have no joint accounts, credit, savings, checking or otherwise, of any kind***, aside from ***one single*** SNMC mortgage on the Montana property;  all of the parties  mortgage applications with SNMC indicate that the parties are both single men, not in a domestic partnership, showing Mr. Olsen s primary residency in Portland, OR, and that location as Mr. Gabriel s secondary or investment property; the parties have no had no commitment ceremonies, and no registration of any kind to suggest that the parties are married or domestic partners; never once have the parties claimed anything other than  single  on any form, tax form, application or filing; and finally, the parties have not designated each

Exhibit 34 p. 011

other as a beneficiary **on any** retirement, savings or life insurance policy. (Emphasis added.) In light of this fact pattern, it is astonishing that this case has been allowed to proceed in any capacity and for any duration.

xvi)  FTR  Court  Record  HenryP 20240214-0915 01da5f265a042cf0  dated **2/14/2024** time stamp **9:17:00am – 9:20:00am**):  Exhibit 22 was received into evidence after being authenticated by Mr. Olsen, the *'As-served Summons and Petition for Dissolution of Domestic Partnership'*.  Mr. Olsen read aloud the contents,  Your spouse has filed a petition asking for a dissolution of your marriage and possibly related relief. , and  A judgment for attorney fees can be entered against you as provided in ORS Chapter 107   . Mr. Olsen then testified that prior to serving these papers in this instant lawsuit, he had never previously referred to Mr. Gabriel as his  spouse , and had never referred to the parties as  married , nor as members of  a marriage .

xvii)  FTR  Court  Record  HenryP 20240214-0930 01da5f2872839ed0  dated **2/14/2024** time stamp **9:30:28am – 9:35:28am**):  Portions of Exhibit 25 (pages 7-11) was authenticated by Mr. Olsen and entered into the record.  Mr. Olsen conceded that many if not most of his colleagues at Nike were unaware that Mr. Olsen was in a marriage or domestic partnership, including colleagues of his that sent him personal, birthday and holiday greetings at his home address in Portland, and in spite of Mr. Olsen s previous claims, promoted heavily in Mr. Olsen s various filings in Multnomah County Circuit Court (State of Oregon) Case No. 22DR04942, including and in particular *'Petitioner's Response to Defendant's Motions to Dismiss'* that  the parties spent years together representing themselves as a marital couple to the world and in acquiring property jointly , arguing that the dissolution of the alleged domestic partnership is  no different than any other dissolution of marriage.   Mr. Olsen also acknowledged the portions of Exhibit 25 concerning the registration and ownership of two beagles registered under his name only with a dog boarding facility used during the term of the

Exhibit 34 p. 012

alleged domestic partnership, and stated, I was the primary caretaker of the dogs, I bought the dogs, I raised the dogs. Mr. Olsen then claimed that he would ***not*** expect that Mr. Gabriel would be on the intake form for a dog boarding facility, despite Mr. Olsen s claims the parties were in a domestic partnership at the time. (Emphasis added.)

xviii) FTR Court Record HenryP 20240214-0945 01da5f2a8b0310b0 dated **2/14/2024** time stamp **9:45:28am – 9:50:28am**): Mr. Olsen was asked how he reconciles his statement to his mortgage lender, SNMC, in writing (*See* Exhibit 16): Even though we re not in a domestic partnership , with Mr. Olsen s instant lawsuit, which is predicated on the claim that the parties are in a domestic partnership. Specifically, at FTR time stamp **9:47:06am**, Mr. Olsen stated:

> **Mr. Olsen:** I did not realize that Oregon would recognize what we have filed, which is a dissolution of an unregistered domestic partnership, because my understanding of a domestic partnership at the time was based off of all of the tax documents and mortgage documents that exclusively referred to the term registered domestic partnership , ***which led to my understanding that to be in a domestic partnership, one must be registered. We never registered anything.*** So on July 29, 2021, I didn t understand that we were in a that Oregon would see it as a domestic partnership, because we never registered anything. (Emphasis added.)

This testimony kills Mr. Olsen s underlying case outright. It undeniably proves, beyond any doubt and Mr. Olsen directly testifies that ***Mr. Olsen did not believe at the time of this writing that the parties were in a domestic partnership***. (Emphasis added). This understanding and this belief would have carried through all four of the joint SNMC mortgage applications all the way through underwriting and closing that the parties were not in a domestic partnership, because the parties ***never registered anything"***. (Emphasis added.)

PLAINTIFF/RESPONDENT S TRIAL CLOSING ARGUMENTS

Exhibit 34 p. 013

Those four SNMC loans closed on the following dates: a) SNMC Loan 000647339 for 416,250 dated **6/12/2014**; b) SNMC Loan 000997232 for 472,000 dated **6/19/2020**; c) SNMC Loan 001053983 for 548,000 dated **12/21/2020**; d) SNMC Loan 001104467 for 548,250 dated **9/22/2021**. What this means is that Mr. Olsen ***would have believed that the parties were not in a domestic partnership at the time of the closing of each of these loans***, which directly contradicts the underlying claim without which there is no valid dissolution option that the parties were in a domestic relationship from 2010-2022. (Emphasis added.) And as already extensively documented and testified, the Court knows that Mr. Gabriel did not believe that at any time the parties were in a domestic partnership. In other words, both parties have unequivocally stated in writing and admitted during sworn court testimony that neither of them had the understanding they were in a domestic partnership, at least until Mr. Olsen had a change of either heart or belief at or around the time of his dissolution filing. This testimony of Mr. Olsen alone, and/or taken with all the other written objective evidence, outright kills the instant domestic partnership case under any sane interpretation of the evidence.

xix) FTR Court Record HenryP 20240214-1010 01da5f2e092d9ed0 dated **2/14/2024** time stamp **10:11:43am – 10:15:28am**): A remarkable exchange regarding Exhibit 19 (which was previously authenticated and entered into evidence) occurs here between Judge Henry and Mr. Gabriel, in which Judge Henry states:

> **Judge Henry:** Because asking him isn t helpful for two reasons. He isn t the one who is going to make the decision. I am. And two, he will ***never*** give you helpful testimony about that domestic partnership , because his position, ***committed*** position, is that you in fact had one. And I don t know if there s something you believe, from reading something or seeing something that leads you to believe that you will crush him in this cross-examination and he will end up admitting, for me, that no, we in fact were not in a domestic partnership . ***It isn't going to happen***. (Emphasis added.)

Exhibit 34 p. 014

With all due respect to Judge Henry, as referenced in Section xviii) above, at time stamp **9:47:06am**, Mr. Gabriel s cross-examination of Mr. Olsen did in fact yield a confession and testimony from Mr. Olsen that ***he did not believe*** at the time of his writing a certain e-mail dated July 29, 2021 ***that the parties were in a domestic partnership under Oregon law***. (Emphasis added.) The eventuality that Judge Henry asserted would not happen did in fact actually happen, and Mr. Gabriel should have been allowed to make additional attempts at drawing out contradictory testimony from Mr. Olsen that directly undermined his core claim. These exacting standards applied to Mr. Gabriel which were rarely if ever applied to Mr. Nelson and Mr. Olsen also constitute further grounds for a New Trial under ORCP 64C.

xx) FTR Court Record HenryP 20240214-1015 01da5f2ebc032cf0 dated **2/14/2024** time stamp **10:16:38am – 10:20:28am**): Exhibit 20 was authenticated by Mr. Olsen and it was entered into the trial record. Mr. Olsen admitted that he completed a form during an application process entitled Residential Loan Application Unmarried Addendum (*See* Exhibit 20, 17) in which he indicated, If you selected unmarried in Section 1, is there a person who is not your legal spouse but who has property rights similar to those of a legal spouse. If yes, indicate the type of the relationship and the state in which the relationship was formed, for example indicate if you are in a civil union, ***domestic partnership***, registered reciprocated beneficiary relationship, or other relationship recognized by the state in which you currently reside or where the property is located. (Emphasis added.) Mr. Olsen conceded that he would presume that he would have completed these documents , in reference to this page. This addendum, which was executed by Mr. Olsen in the process of closing SNMC Loan 001104467 for 548,250 dated 9/22/2021, means that as recently as September of 2021, Mr. Olsen had the opportunity to declare that he was party to a domestic partnership ***not merely "unregistered domestic partnership" but rather a generic "domestic partnership"*** or any number of alternative domestic relationships, and still elected to declare in his mortgage

application and up until closing on 9/22/21 that he is single, unmarried, and ***not in a domestic partnership***. (Emphasis added.)

xxi) FTR Court Record HenryP 20240214-1020 01da5f2f6ed8bb10 dated **2/14/2024** time stamp **10:20:28am – 10:22:28am**): Exhibit 31 was authenticated by Mr. Olsen and it was received into evidence. Mr. Olsen testified that he has previously seen some version of the Standard form FBI Notice of Mortgage Fraud. The document is the FBI s warning of the consequences of mortgage fraud, which Mr. Gabriel argues Mr. Olsen and his attorney Mr. Nelson are not taking seriously in bringing this domestic partnership claim.

xxii) FTR Court Record HenryP 20240214-1025 01da5f3021adacf0 dated **2/14/2024** time stamp **10:25:28am – 10:28:00am**): Judge Henry ruled that Exhibit 38 is received into the court record but not received as evidence in the trial, on the grounds that the trial court in the instant case cannot factor into its decision that, If I find there is a domestic partnership, that will put Mr. Olsen at risk legally for making representations on his mortgage application That s not the question I am being asked to answer today. If that conclusion causes legal problems outside of my decision that has no relevance in this case. Here Mr. Gabriel simply argues that it ought to be a factor in the decision for the parties and the Court to strongly prefer to adjudicate, mediate or otherwise settle this dispute as a partition claim only, in order to avoid any potential for criminal mortgage fraud charges to be brought against the parties an unnecessary tragedy given that the simple, lower-stakes alternative (sale and partition of the Portland property only) is staring everyone right in the face.

xxiii) FTR Court Record HenryP 20240214-1025 01da5f3021adacf0 dated **2/14/2024** time stamp **10:28:15am – 10:30:28am**) combined with FTR HenryP 20240214-1030 01da5f30d4831400 dated **2/14/2024** time stamp **10:30:28am – 10:33:27am**): Mr. Gabriel brought up the topic of pooling financial resources, and Exhibit 12 was authenticated by Mr. Olsen, although Mr. Nelson objected to the ***characterization*** of its contents. It is unclear

whether Judge Henry ruled that it would be received into evidence at trial, although he seemed to suggest that everything in Exhibit 12 starting with page 6 would be received as evidence. If it wasn t received into evidence, **given that pages 6-21 of Exhibit 12 were produced by Mr. Olsen**, then this would be grounds for a New Trial under ORCP 64C, given that Mr. Olsen authenticated and recognized its contents, including the portions generated by Mr. Olsen. Judge Henry stated, So, let me just did you create all of the documents attached, behind the e-mail , to which Mr. Gabriel replied, No, Mr. Olsen did. , to which Judge Henry replied, Ok, so you can certainly ask about that. I will, to the extent the, first page, I mean, if you just want to have him testify that he received this document, or but again, the fact that he received it on April 8, 2020, alright. So just to clarify, you referred earlier that he created the entire document but you would say you sent this e-mail to Mr. Olsen. , to which Mr. Gabriel replied, Yeah, let me clarify that. So, everything behind starting with the pages, page 6, starting with 1 2020 summary, in parentheses (1.1-3.31) **everything including this and behind it is produced by Jesse** and in fact he provided it to me as part of his discovery file. Mr. Olsen was then asked to testify about the contents that **he created himself and authenticated** at trial, and because Mr. Nelson s objection was **not** with respect to the admissibility of Exhibit 12, Mr. Gabriel assumes it was ultimately admitted (perhaps except for Pages 1-5). (Emphasis added.) Mr. Olsen testified, among other things, And this is evidence of us discussing, and you alleging, that you pay for everything This is a series of e-mails that we exchanged back and forth showing things that we had spent on for the Salmon Home. The contents of the attachments, in particular pages 6-21 of Exhibit 12 were **detailed Excel spreadsheets created by Mr. Olsen and furnished to Mr. Gabriel, in which he itemized all of his contributions to the Portland property** not unlike what Mr. Olsen produced near the close of trial, received as Exhibit 112 and PET Exhibit 1-13 in which Mr. Olsen itemizes as ledger entries every single expenditure stretching a span of three (3) months in 2020 that he wished to apply to Mr. Gabriel s itemized

calculations for the same period. (Emphasis added.) *These admissions made at trial by Mr. Olsen directly contradict his statements* made on 2/14/2024 at time stamp 11:25:55, in which Mr. Olsen testified: *We never through the 12 years sat down and itemized every single expense."* (Emphasis added.) However, "Exhibit 12" specifically covers a 3 month period in the summer of 2020, generated by Mr. Olsen and Mr. Gabriel, and *directly contradicts Mr. Olsen's sworn testimony*. (Emphasis added.) Respondent Mr. Gabriel previously testified and now maintains in his closing arguments that this "Exhibit 12" demonstrates that the parties intended to *separate their expenses* and *itemize individually incurred costs* related to the upkeep of the properties—in this instance the Portland property—just like generic or business co-owners of property invariably do, and *the parties did this from the moment the Portland property was purchased until the present*. (Emphasis added.)

xxiv) FTR Court Record—HenryP_20240214-1035_01da5f31875805e0—dated **2/14/2024** time stamp **10:38:00am – 10:39:40am**): Subsequently, Mr. Olsen authenticated Exhibit 9 but they were not received into evidence in the trial. Mr. Olsen then testified that he filed as "single" in every year as a resident of Oregon during the alleged domestic partnership. Judge Henry then told Mr. Gabriel that the returns and W-2s in Exhibit 9 were not necessary to enter into evidence, because "You've established that fact" that Mr. Olsen has filed as a single person every year and in the State of Oregon only". Mr. Olsen then testified that he has never filed his taxes in the State of Montana or the State of Washington. As Mr. Gabriel has testified and claimed previously and repeatedly, all of Mr. Gabriel's taxes have been filed in Washington State and Montana only from 2002-2023, and never in Oregon, and always as "single".

xxv) FTR Court Record—HenryP_20240214-1040_01da5f323a2d9400—dated **2/14/2024** time stamp **10:40:28am – 10:40:50am**): Judge Henry posed the question to Mr. Olsen, "Can you answer the question" The question he indicated was there's no joint accounts, no retirements, no accounts of any kind with securities or otherwise that are in your joint

names. , to which Mr. Olsen replied,  The only things in our joint names are our  mortgage titles and the mortgage in Montana.   This evidence speaks volumes about the existence of any hypothetical domestic partnership, or a  committed domestic relationship , presumably in which finances would have been co-mingled, joint savings accounts and/or checking accounts would have been established, basic living expenses would be shared by default, and monetary resources would be pooled   other than those required for the purchase and financing of the real estate in question (like any two parties who co-buy real property for business reasons).  In other words, there was clearly no domestic partnership anywhere near equivalent to marriage.

xxvi) FTR   Court   Record   HenryP 20240214-1052 01da5f33ee6e5570   dated **2/14/2024** time stamp **10:52:45am – 10:56:27am**):  Mr. Olsen authenticated Exhibit  13, and read the title,  Tax Agreement   5721 .  It appears that this was entered into evidence using exhibits from Mr. Olsen s evidence binder, because it is something both parties preserved for their evidence folders.  Mr. Gabriel argues that there is no particular reason a tax agreement in which the parties would go to such lengths to itemize mortgage interest deductions, expenses, inputs, etc. would be struck if there were joint finances, and the parties wouldn t bother to draft such an agreement if finances were co-mingled or otherwise pooled.  While this particular tax agreement was not signed, it along with Exhibit  12 combine to show the attempts the parties made to delineate expenditures made separately, and to measure them against each other to ensure that the parties were receiving credit for their individual contributions to the properties.

xxvii) FTR   Court   Record   HenryP 20240214-1057 01da5f34a15ce9d0   dated **2/14/2024** time stamp **10:57:41am – 11:02:41am**):  Mr. Olsen was directed to observe title documents previously received into the trial court record, and confirmed that the Portland property was held with  rights of survivorship  whereas the Montana property was held  as tenants in common .  Mr. Olsen was asked,  Do you think that the distinction between these categories has any material impact on whether or not we are in a domestic partnership  , to

which he answered, I don t have that knowledge, I m not an expert. This is significant in that all parties testifying, including Mrs. Weirich, the Petitioner and the Defendant all seem to agree that they do not fully understand why these titles were recorded as such, or whether it has any impact on the question of domestic partnership. Subsequently, Mr. Olsen authenticated Exhibit 19, Page 1, and Mr. Olsen agreed that November 29, 2020, was when the parties discovered the Montana property for the first time, eight full months after the Portland property was refinanced, testifying, I would agree that generally around this period of time is when you found the Montana home that was available for sale. This is significant testimony because previously, Mr. Olsen and Mr. Nelson had claimed that proceeds from the refinancing of the Portland property were used to purchase the Montana property. Mr. Gabriel testified later at trial, and still maintains in his closing arguments, that the proceeds from the June 2020 refinance of the Portland property was spent well before the discovery of the Montana property, and that those proceeds went to their written stated, intended uses: Paying off Jesse s credit cards, installing a brand new roof, gutters and downspouts for the Portland home, improvements to the plumbing in the kitchen, the building of a massive dog run and recreation enclosure for the dogs that Mr. Olsen claims were his and his alone all of which were installed in the summer of 2020 and invested into the Portland property.

xxviii) FTR Court Record HenryP 20240214-1102 01da5f35543250e0 dated **2/14/2024** time stamp **11:02:41am – 11:06:45am**): Mr. Olsen testified about the sources and uses of the Portland property refinancing in June 2020, and the sources and uses of his 401(k) withdrawal of 109,000 eight months later, which he testified was used for the down payment on the purchase of the Montana property. As the accounting shows in Exhibit RESP00003, RESP01123, and RESP01127, Mr. Gabriel also pulled 102,500 out of his 401(k) at the time of closing the Montana property, which constituted the vast majority (95 ) of the funds used to purchase the Montana property by both parties. Mr. Olsen at trial used the word

substantial , never admitting that it was the  vast majority  of funds, but no other significant funds were applied to the closing of the Montana property aside what was furnished by SNMC as part of the mortgage financing.  Thus, there is zero evidence to support Mr. Nelson s suggestion that the Portland property was refinanced  for the purpose  of acquiring the Montana property, a point which was repeatedly contested by Mr. Gabriel, and a point which, in the end, Mrs. Weirich conceded.  (*See* Section xii above, *Id.* FTR time stamp 10:51:30am): Mr. Gabriel asked Mrs. Weirich,  Would it be fair to say Mrs. Weirich that you re not 100 sure, just off the top of your head, how we came up with the money to purchase the Montana property , to which Mrs. Weirich replied,  Correct.

    xxix)  FTR  Court  Record   HenryP 20240214-1107 01da5f360707b7f0   dated **2/14/2024** time stamp **11:10:50am – 11:12:41am**):  Mr. Olsen testified that Mr. Gabriel provided scant information and accounting about the earnings of the AirBNB that is managed by  urc Capital, LLC.  Mr. Gabriel stated throughout trial, and still maintains, that  urc Capital, LLC, received all income from the AirBNB, and incurred any expenses used to maintain the AirBNB venture, including housekeeping, handymen, repairs, and general maintenance of the property during guest stays.  Mr. Gabriel testified at trial that he has repeatedly furnished this information to Mr. Olsen and Mr. Nelson upon request, most recently in the form of Exhibit  s RESP00001-RESP00007, and RESP00500-RESP01128, which meticulously detail the receipts and accounting entries for both the income (**$87,760.92**)  urc Capital, LLC, derived from the rental, as well as the expenses incurred (**$108,607.01**).  Mr. Gabriel testified at trial and the evidence shows that  urc Capital, LLC incurred a net loss from the AirBNB venture, to date, of  (**-$20,846.07**).  To the extent that Mr. Olsen demands his equitable share of the income, he would also therefore owe one half of the net losses of (**-$20,846.07**) to Mr. Gabriel, or (**-$10,423.04**).  Beyond that, there are significant time and labor costs incurred by Mr. Gabriel in maintaining the AirBNB in partnership with  urc Capital,

LLC, half of which Mr. Gabriel would estimate to be worth something in the vicinity of **$18,000**, for which Mr. Olsen would also be liable if the AirBNB costs and revenue were to be equally split.  Thus, if Mr. Olsen were entitled to half of the revenue from the AirBNB, he should be liable for half of the costs of running the AirBNB, including Mr. Gabriel s time and labor, which means that Mr. Olsen would owe Mr. Gabriel a total of (**-$28,423.04**).  Here it is important to note that one of the purposeful benefits of  urc Capital s management of the AirBNB is to absorb many of the costs of keeping the Montana property in top shape, thus preserving its value    all of which can be attributed to the efforts of Mr. Gabriel alone.

xxx)  FTR  Court  Record    HenryP 20240126-1531 01da506ccced1330    dated **1/26/2024** time stamp **3:31:58pm – 3:36:40pm**):  Judge Henry and Mr. Gabriel exchanged some significant, self-explanatory dialogue at trial in which Judge Henry establishes that it has been demonstrated that the parties  alleged domestic partnership was not monogamous or committed in any monogamous fashion:   You ve elicited some testimony that some  sexting occurred   , to which Mr. Gabriel responds,  So  Mr. Olsen s  insinuation that we were in a monogamous  committed  domestic  relationship  from  2010-2023  is  not  compromised  by the   , at point Judge Henry interrupts,  Yeah, you ve elicited it   If  Mr. Olsen  is having an interaction with Mr. Webb that had some sexual contact  you elicited that.  He admitted it.

But *he's not seeking damages for emotional distress*, so it s not relevant to anything I have to decide today    so this isn t a name clearing hearing. , at which point Mr. Gabriel interrupts,  Ok, yeah the reason I brought it up is because they spent a lot of time talking about  emotional distress  that I m supposedly inflicting upon Mr. Olsen.  Judge Henry replied,  Actually you just borrowed a term I used; that *they are not seeking damages for emotional distress*   I would say that there was some limited testimony at the end of Mr. Olsen s testimony in which he expressed some frustration about your motivations, and *he's going to have some difficulty at the end of this case explaining to me why it's relevant, even if you*

**have bad motivations**.  (Emphasis added.) Mr. Gabriel hereby argues that this exchange has two major implications:  a) It adds to the previous testimony by Mr. Gabriel that there was no committed , exclusive or otherwise monogamous relationship, undermining the domestic partnership narrative; and b) That the fees and costs invoked in Mr. Olsen s  Petitioner s Trial Closing Arguments  described under Section 4, page 3 (i.e.,  Mr. Gabriel should also be surcharged the cost, incurred by Mr. Olsen in rent due to Mr. Gabriel s behavior  of approximately **$50,000**,  Jesse s rent  and costs of defense of the spurious lawsuits in the amount of **$92,563.04**  ) are therefore unwarranted, per the above remarks by Judge Henry.

xxxi) FTR   Court   Record   HenryP 20240126-1531 01da506ccced1330   dated **2/14/2024** time stamp **2:23:30pm – 2:24:24pm**):  Judge Henry confirms that Mr. Gabriel had previously furnished evidence (and complied with Judge Allen s Order) which shows that the AirBNB income, Montana property expenses, and back-up documentation were sent previously to Mr. Nelson and Mr. Olsen as of July 3, 2023, contrary to the repeated testimony of Mr. Olsen and Mr. Nelson that they had  never received it .  This seriously undermines the credibility of Petitioner Mr. Olsen and his attorney, Mr. Nelson, generally speaking.  Mr. Gabriel had only just recently forwarded these e-mails at trial in the preceding hour to the court Clerk, who printed out proof of their transmission to Mr. Nelson and Mr. Olsen ( Exhibit 39 ).  Judge Henry acknowledged as much and referred to the exhaustive accounting and ledger entry data covering both the Montana and the Portland properties brought by Mr. Gabriel to trial as  Exhibit 36  and received it into evidence.

xxxii) FTR   Court   Record   HenryP 20240214-1437 01da5f53499b9bf0   dated **2/14/2024** time stamp **2:38:20pm – 2:42:08pm**):  Mr. Gabriel then authenticated  Exhibit 32 , which was received into evidence, and which is a detailed, extensive schedule of all of Mr. Gabriel s visits to the Seattle Cancer Care Alliance (herein  SCCA ), stretching from March 29, 2012, when Mr. Gabriel was first diagnosed with Stage 4 (considered terminal at the time)

colorectal cancer, to his final visit on July 26, 2022, when he was officially  restaged  as Stage 0 and discharged from the SCCA by his 10-year lead oncologist, Dr. Veena Shankaran.  This document shows that Mr. Gabriel had intensive treatment at the Seattle Cancer Care Alliance and the University of Washington hospital in Seattle, including chemotherapy infusion, surgeries, lab tests, blood draws, CT scans, colonoscopies, in-person visits, etc., on an extremely frequent basis stretching from 2012 to 2018, and then dwindling in frequency from 2019-2022 until his final discharge.  This is at odds with Mr. Olsen s testimony that Mr. Gabriel  lived  with him at the Portland property at least from 2014-2018, considering the frequency of the SCCA visits.  In particular, these records show, as testified at trial by Mr. Gabriel,  It also shows that my cryopreservation and surrogacy was all done through the Seattle Cancer Care Alliance and doctors in Seattle. , and further,  If you turn to *page 14 of Exhibit 32, you can see in particular where my cryopreservation and andrology lab work was done, and the specialist was Mark McCabe*. (Emphasis added.)  And I assure you, Jesse  Mr. Olsen  had nothing to do with any of those proceedings.   Mr. Gabriel further testified,  And I would just note that to my knowledge Jesse himself has not undergone any cryopreservation or andrology lab testing or undertakings of any kind, otherwise I think he would have submitted this into the trial by this point.  This process, like most of the endeavors that I have engaged in since 2010 have been entirely on my own.  The surrogacy process is entirely an interest of mine alone; it s 100   separate from Jesse, and in fact Jesse has explicitly stated over and over again that he doesn t have any interest in kids.  And that s my testimony.

xxxiii) Starting with FTR Court Record  HenryP 20240214-1442 01da5f53fc719f40 dated **2/14/2024** time stamp **2:42:08pm    2:46:16pm**):  The next 30 minutes of trial testimony was Mr. Gabriel s case in chief, in which  Exhibit 2  was authenticated and received into evidence and showed Mr. Gabriel s  residency in Montana from February of 2021 onwards.  Exhibit 2  shows Mr. Gabriel s voter identification card in Montana, along with election mail

received by Mr. Gabriel at his Montana address.  Per Mr. Gabriel at trial,  Prior to 2021, I was registered to vote only in Washington; never have I been registered to vote in Oregon.  Exhibit 2  also included Flathead County electrical usage, real estate records and Montana tax returns showing that Mr. Gabriel has resided in Montana from February of 2021 onwards.  Exhibit 3  was then authenticated and received as evidence into the trial.   Exhibit 3  includes Montana real estate records, property tax records, and a diagram of the Montana property itself which would be materially relevant to the partition of the property.

xxxiv) Starting with FTR Court Record  HenryP 20240214-1442 01da5f53fc719f40 dated **2/14/2024** time stamp **2:52:08pm      2:55:57pm**):  Mr. Gabriel furnished powerful testimony as to why Mr. Olsen agreed to become the sole debtor on the Portland mortgage:

> **Mr. Gabriel:**   Whenever I had to come down and stay at the property, I noticed that nothing was being improved on the property; nothing was being done.  And anything that needed to be done on the property, it seemed that I was paying for all of it.  So whether it be the carpet, whether it be these improvements that I ve itemized, whether it be painting the place by hand, painting the exterior    at one point I pressure washed the whole entire exterior    all of this labor and all of these improvements was coming from me.
>
> And I was documenting it the whole time on purpose.  And to address that mismatch, Jesse eventually agreed to refinance the property in his own name.  Also because, if you look at  Mr. Olsen s   Letter of Intent (*See*  Exhibit 18 , Page 1    dated 6/15/2020) he wanted to pay off some credit cards, improve the roof, which was ultimately done, the roof was redone, refurbish the kitchen, the plumbing was redone in many, many portions of the house, and to sort of **equalize** the contributions that we were making into the property **using the cost method of accounting**, which is my approach from the beginning because I never considered us to be in a domestic partnership.

Exhibit 34 p. 025

*To me it was always a real estate transaction.*  And that s   to me, this is a real estate dispute.  It never occurred to me that there would be any such thing as *'Beal v. Beal'*; I still find *'Beal v. Beal'* shocking in retrospect.  I think anybody would be shocked if they found out that there was this case law lurking out there which is obsolete and which nobody thinks is   no ordinary people walking around think it s possible to sue someone you re just cohabitating with in a state that isn t even a common law marriage state.  Yeah, I think *if 'Beal v. Beal' were to be publicized properly, there'd be a civil war in Oregon, followed by an exodus*.  Like, I don t think people would tolerate, if they knew what *'Beal v. Beal'* was   to me it s shocking that it still exists.  And it s a relic of a bygone era.  This was like a workaround   apparently   to deal with one income holder, and maybe he would have a live-in girlfriend who is managing the kids and didn t have her own income.

*None of those things apply here.  Jesse is very well employed, he has his own job, there's no co-dependency of any kind*.  The only thing that Jesse needed me for was to purchase the house, because he didn t make enough money at the time to buy it on his own.  All the houses that were available to him to move into in Portland were just too small or too crummy on his income, so he invited me to purchase this house with him.  And I just thought,  Why not, it s an investment.   And I really didn t think much beyond that.  And ditto with the Montana property.  I actually didn t even intend to move to Montana, it s just that as soon as I got there I realized I really want to stay here, like I never want to leave.  And that was during the Covid lockdowns.  And they continued, even after we purchased that property they got worse and worse in Seattle and Portland.  In Montana, people were walking around as if Covid didn t exist.  So, as soon as I got there I just thought, this is pretty good.  Going back to the Portland property, I had no intention of creating a domestic partnership.  It was literally an investment and a way to get Jesse into a nicer house, because he couldn t afford a nice house on his own.  *And this is why I say I've been conscripted into, you know, a phony marriage.  It just wasn't my intent at all*.  (Emphasis added.)

Exhibit 34 p. 026

xxxv) Starting with FTR Court Record  HenryP  20240214-1457  01da5f5614f18650 dated **2/14/2024** time stamp **2:57:08pm    3:02:08pm**):   Exhibit 4  was authenticated and received into evidence, which per Mr. Gabriel s testimony  shows  proof that all of Mr. Gabriel s income is based in Montana and Washington and shows Montana and Washington residency exclusively from 2010 to present, including all related tax records.   Subsequently,  Exhibit 5  was authenticated and received into evidence, and per Mr. Gabriel s testimony,  Which is a signed notarized Affidavit of Washington Residency on 1/29/21    the last known date of my Washington residency before moving to Montana on February 1, 2021.    Mr. Gabriel argues that this proves there is no  gap  in between his Washington residency and Montana in which he could conceivably be  residing  in Oregon.  Subsequently,  Exhibit 6  was authenticated and received into evidence, and which included Mr. Gabriel s tax returns, payroll records, etc.    all showing Washington State residency from 2011 to 2022.  Subsequently,  Exhibit 7  was authenticated and received into evidence.  Next,  Exhibit 8  was authenticated and received into evidence, which showed that Mr. Olsen is the sole debtor on the mortgage for the Portland property.   Judge Henry then established that Mr. Olsen had testified that he filed all his taxes from 2010-2022 as a single man in the state of Oregon.

xxxvi) Starting with FTR Court Record  HenryP  20240214-1502  01da5f56c7c65120 dated **2/14/2024** time stamp **3:02:08pm    3:07:08pm**):   Exhibit 10  was authenticated and received into evidence at trial.  Per Mr. Gabriel s testimony,   Which shows that the sole joint account    the Montana mortgage belonging to Mr. Olsen and Mr. Gabriel (myself).   Aside from this mortgage, there are no other joint accounts of any kind, including all other types of financial accounts    which in many respects, if you think about it, *is kind of a miracle that there's nothing else, aside from this [mortgage] if there were a so-called domestic partnership.*  If it were a domestic partnership, it would have been nearly impossible to achieve that outcome.  It would have been unlikely; *if we had intended to pool assets, you would think*

Exhibit 34 p. 027

*there would be some other joint account, some joint savings, some life insurance policy, some – anything, and there's literally nothing*, there s this  Montana mortgage .  (Emphasis added.)  Subsequently,  Exhibit 17  was authenticated and received.  Next,  Exhibit 21  was authenticated and Judge Henry made a judicial notice of the fact that the Multnomah County partition claim (Case No. 22CV10399) was the first-filed action in the consolidated case.  Mr. Gabriel has previously argued this should have blocked the domestic relations case from being filed, given that the dissolution action was predicated on the claim that *"3.  No other domestic relation suit or other court proceeding is pending in any other court of this state or any other state."*  (Emphasis added.)  This may have implications re:  ORCP 64C Motion for New Trial.

xxxvii) Starting with FTR Court Record  HenryP  20240214-1507  01da5f577a9bdf40 dated **2/14/2024** time stamp **3:08:41pm    3:12:08pm**):  Mr. Gabriel authenticates  Exhibit 27 and then Mr. Gabriel testified,

> **Mr. Gabriel:**  Which shows Mr. Nelson making claims which directly contradict Mr. Olsen s attorney in Montana.  Who at the same time as this document was filed with this Court, Mr. Olsen s attorney in Montana was simultaneously arguing that I lived in the Portland property.  So this document here, says on page 2 of 4,  Respondent has vacated the NW Salmon St. home in Portland, Oregon, ceased to pay any of the utility or upkeep costs associated with homeownership.  So I get this at roughly the same time that I get an angry letter from Mr. Olsen s attorney in Montana, telling me that I m living in the Portland property and testifying as much to the court in Montana.  To me, this is just par for the course, where throughout this case I m getting conflicting claims   they change over time, there s no consistency, Mr. Olsen s attorneys are claiming totally contradictory things.  *It dovetails with the claims that Mr. Olsen made to the mortgage company that 'we are not in a domestic partnership' while simultaneously suing [me] saying that we are.*  This has just been going on and on since this lawsuit was filed.  And to me it s a major credibility issue. (Emphasis added.)

Exhibit 34 p. 028

xxxviii) FTR Court Record  HenryP 20240214-1512 01da5f582d70f830 dated **2/14/2024** time stamp **3:12:32pm – 3:17:08pm**):  From Mr. Gabriel s perspective, perhaps the most alarming point in the consolidated trial came when Hon. Judge Henry stated on 2/14/2024, upon having repeatedly witnessed often incontrovertible evidence that both parties did not believe there existed any domestic partnership:

> **Hon. Judge Henry**:  it doesn t prove whether or not you were in a domestic partnership. ***And if you're hung up on that term ['domestic partnership'*** , then it s the  question is whether you had  a mutually supportive relationship in which you ve agreed to  due to a committed relationship  had an agreement to mutually benefit each other financially.

Mr. Gabriel hereby argues:  If it isn t a marriage and it isn t a domestic partnership, what is it that is being  dissolved , and how does an Oregon family law court presume to extend it to real property in Montana   It would appear from this comment that even though Hon. Judge Henry might accept that there is no implied marriage and no implied domestic partnership, he nevertheless seems prepared to stretch or interpret the scope of *'Beal v. Beal'* to encompass any sort of human relationship ***of any kind****,* with no clear limiting principles, yielding a grotesque precedent that enables even temporary cohabitors in Oregon to sue for half of the others  assets wherever in the world they are located, encouraging vexatious lawfare on a scale never before imaginable. (Emphasis added.)  Subsequently, Mr. Gabriel testified that  Exhibit 27  should be admitted because the issue of the locks being changed was discussed and answered properly in the e-mail exchanges in  Exhibit 27 .  Unbelievably, Judge Henry did not receive this crucial  Exhibit 27  documentation into evidence even though it clearly helps to refute Mr. Olsen s argument that he was barred access from the Oregon property, allowing only Mr. Gabriel s testimony about its contents into the trial record.  This admission error may also be grounds for a ORCP 64 C Motion for New Trial.

xxxix) FTR Court Record HenryP 20240214-1517 01da5f58e0468650 dated **2/14/2024** time stamp **3:17:08pm – 3:22:08pm**): Mr. Gabriel testified further about the contents of Exhibit 27 which shows that Mr. Olsen was not barred access from the Portland property in any way. Mr. Olsen throughout the trial and in his various court filings has argued that Mr. Gabriel has harassed and threatened Mr. Olsen through threatening behavior, which he argues was most distressing in particular as it related to Mr. Gabriel s allegations of potential criminal penalties for Mr. Olsen (e.g., mortgage fraud). Mr. Olsen eventually filed for an *ex parte* FAPA (Family Abuse Prevention Act) restraining order, under Case 24PO00918, but it was challenged by Mr. Gabriel and ultimately dismissed in a separate hearing. This dismissal, however, is significant in that it proves that Mr. Olsen was not so substantially threatened that he could credibly believe that his safety was in jeopardy. Mr. Gabriel had previously testified at trial that the real reason Mr. Olsen took out a separate apartment lease is because there was a dispute about the ownership of one of the dogs, which Mr. Olsen wanted to prevent Mr. Gabriel from accessing because of the nature of custody wherever pets are concerned. ***Thus, Mr. Gabriel argues that any rental expenses incurred by Mr. Olsen were voluntarily assumed by Mr. Olsen*** for his own purposes, in particular with respect to the dogs. (Emphasis added.) Subsequently, Mr. Gabriel authenticated Exhibit 35 and it was received into evidence. Exhibit 35 included tax returns that Mr. Gabriel filed in Montana, helping to further advance Mr. Gabriel s narrative that he has always been a resident of either Montana or Washington State from 2010-present.

xxxx) FTR Court Record HenryP 20240214-1527 01da5f5a45f10650 dated **2/14/2024** time stamp **3:29:30pm – onward**): Mr. Gabriel authenticates and attempts to admit into evidence Exhibit 23, in particular the partition claim that Mr. Gabriel filed in Montana (District Court of Montana, Flathead County) in Case No. DV-22-605. Judge Henry allows Mr. Gabriel to describe its contents but doesn t admit the evidence. Mr. Gabriel hereby argues that

Exhibit 34 p. 030

this is particularly unfortunate, because the two partition claims constitute by far the easiest solution to what is effectively a real estate dispute   and this distinction is what this case is really all about.  During this part of the trial, Judge Henry advised,  ***If there is an approach to addressing the properties that you own that would be more economically beneficial to the parties that is clear, you can certainly provide me with the evidence about why partitioning rather than selling the properties is more beneficial to both of you.***  (Emphasis added.)  To this, as argued in the conclusion to Mr. Gabriel s closing arguments below, Mr. Gabriel would propose one potential solution, which may or may not be legally feasible, might be to simply treat ***both*** the Portland and the Montana properties ***as a single partition claim but not as components of a domestic partnership***, with or without the coordination of the Montana court, and divide the properties by awarding Mr. Olsen the Portland property, and awarding Mr. Gabriel the Montana property, using a cost/input method of accounting to determine any residual balance owed by one party to the other for any resulting imbalance of equity. (Emphasis added.)  This alternate solution would enable both low-interest mortgages to stay intact and prevent the rushed liquidation of both the properties, though it would still allow Mr. Olsen the ability to sell the Portland property on his own terms and his own schedule.

**6.**

**C.**     **Objections to the Evidence Presented**

i)     FTR  Court  Record   HenryP 20240126-1121 01da5049d21de460   dated **1/26/2024** time stamp **11:25:25am – 11:25:38am**):  Mr. Gabriel stated that he objected to the admissibility of  Exhibit 103  on the basis that  Judge Allen ordered that  these documents  be produced by July  3rd  .  Per Judge Beth A. Allen s unequivocal, exceptionally crisp, clear Order (hereinafter  Judge Allen s Order ) dated June 30, 2023,  Both parties are obligated to provide the other party any documents on which they intend to rely at trial related to claims made for the two homes at issue. , concluding,  All documents are to be provided no later than

Exhibit 34 p. 031

5pm on July 3, 2023.   Mr. Gabriel invoked Judge Allen s order here and again repeatedly at trial, as Judge Allen s Order would preclude the admissibility of evidence at trial that was not produced in spite of the Order, deliberately concealed until trial, and then produced for the first time at trial itself. (*See*  Order, Granting Motion to Compel ) filed into Case No. 22DR04942, dated June 30, 2023.)

ii)    FTR   Court   Record    HenryP 20240126-1126 01da504a84f2d640    dated **1/26/2024** time stamp **11:31:00am – 11:31:34am**):  Mr. Gabriel stated that he objected to the admissibility of  Exhibit 104  on the basis that  This should have been produced according to Judge Allen s instructions. . (*See Id.*  Judge Allen s Order  dated June 30, 2023.)

iii)    FTR   Court   Record    HenryP 20240126-1407 01da50610099cc20    dated **1/26/2024** time stamp **2:14:12pm – 2:15:30pm**):  Mr. Gabriel reinforced his objections to the admissibility of  Exhibit 103  and  Exhibit 104 , in which Mr. Gabriel read aloud Judge Allen s   Order, Granting Motion to Compel  (hereinafter  Judge Allen s order ), and cited Requests for Production  22,  23,  24 and  17, as they relate to  evidence supporting allegations and perceptions of domestic partnership, stressing that Judge Allen s Order stated ***Both parties are obligated to provide the other party any documents on which they intend to rely at trial related to claims made for the two homes at issue.”***, concluding, ***“All documents are to be provided no later than 5pm on July 3, 2023.”*** (Emphasis added.) Mr. Olsen and Mr. Nelson s defense as to why these documents were not produced, quoting Mr. Nelson directly, was,  I can tell you that whatever we had, we gave him  referring to  Exhibit  103  and  Exhibit  104 . If we had these, we would have given it to him.  I don t remember, it s quite some time ago, when we turned over all of the documentation, but as sure as I can be, we both Jesse and I worked hard to make sure that everything that was asked for was delivered and transferred to him.   Mr. Olsen countered if not disputed his attorney s statement at trial by taking the position that Exhibit  103  and  Exhibit  104  were not ***technically*** responsive to

specific RFPs cited in Judge Allen s Order, suggesting that they were ***not*** actually provided in response to Judge Allen s Order. (Emphasis added.)  Notwithstanding that Mr. Nelson seems to agree with Mr. Gabriel    and not with Mr. Olsen    that these documents should have been previously furnished, Mr. Gabriel s objection is centered on the core phrase, ***"any documents on which they intend to rely at trial"***.  (Emphasis added.)  There is absolutely no question that Mr. Olsen and Mr. Nelson are ***heavily relying*** on Exhibit  103 and Exhibit  104 at trial, given that Mr. Olsen s domestic partnership claim hinges entirely on inference, hints, suggestion, optics and supposition, and given that all unequivocal, objective, explicit, financial and math-based evidence produced at trial directly contradicts this finding. (Emphasis added.)

iv.)    FTR Court Record    HenryP 20240126-1417 01da50626643fe00    dated **1/26/2024** time stamp **2:17:33pm – 2:18:20pm**):  Mr. Gabriel again objected to  Exhibit  103  and  Exhibit  104  on the grounds that, if these had been produced in a timely manner and per the instructions of Judge Allen, Mr. Gabriel would have had been compelled to assemble some countervailing evidence of the same nature.   It seems a grave violation of justice that Mr. Gabriel would be penalized by Judge Henry for taking Judge Allen s order at face value, and then held to an impossible burden of anticipating the admission of previously undisclosed and previously existing evidence that Judge Allen specifically ordered be provided to Mr. Gabriel, and then furnished only on the day of trial, well after Judge Allen s July 3, 2023 deadline had passed.  The error committed is stark, as Judge Henry at FTR time stamp 2:14:58 states:

> **Judge Henry:**   I will interpret the judge s order in that regard as relating to a person s obligation under the rules of discovery to provide documentary evidence in response to a request for discovery.  And in that light, there was no violation of that order given the nature of the documents that are being presented in  Exhibit   103 and Exhibit   104.  So your objection to those documents is overruled.

However, Judge Allen s order flatly contradicts Judge Henry s interpretation. As Judge Allen s order goes on to elaborate: *Additionally*, and specifically, Petitioner is to provide documents responsive to Respondent s First RFP requests 17 . 21 through 24 . The word *Additionally* clearly precludes any interpretation that Judge Allen s prior statement within the *'Order'* was conditioned in the way Judge Henry characterized it at trial; the Order s opening statement states: Both parties are obligated to provide the other party ***any documents on which they intend to rely at trial*** related to claims made for the two homes at issue. Given these clear instructions, Mr. Gabriel could not have anticipated, for example, that random photos of social events with Mr. Olsen and Mr. Gabriel would be newly produced at trial that Mr. Gabriel would have to somehow predict he would need to countervail as suggested by Judge Henry at trial by assembling (for example) an equal or even greater number of random photos of Mr. Gabriel at various social events situated with other random people to overwhelm the ***newly produced*** circumstantial evidence that was not previously disclosed. (Emphasis added.) The sheer scale and magnitude of Mr. Gabriel s burden as proposed by Judge Henry (i.e., that Mr. Gabriel would need to foresee additional evidence admitted on the day of trial that would otherwise be precluded by Judge Allen s order) in the process of directly contradicting the Court s previous orders is absurd, unjust, unrealistic and impractical, and further compounds this trial s pre-existing violations of Mr. Gabriel s due process and privacy rights under the Fourteenth Amendment to the US Constitution as argued in Mr. Gabriel s Trial Brief in this instant case. (*See* U.S. Const. amend. XIV, 1).

v.) FTR Court Record HenryP 20231020-1439 01da036335add000 and HenryP 20231020-1444 01da0363e882c1e0 dated **10/20/2023** time stamp **2:43:00pm – 2:48:13pm**): In this pivotal exchange from Mr. Gabriel s Motion for Sanctions , a hearing for which was held on October 20, 2023, Mr. Nelson stated the following on the record, regarding

Judge Allen's previous "Order Granting Motion to Compel Discovery": "We gave him absolutely everything we had" in a timely manner, based on Judge Allen's ruling. ***There isn't anything else that we have***. (Emphasis added.) These statements and warranties, combined with the explicit ruling of Judge Allen, who as argued in paragraphs C. 7. (i), (ii), (iii) and (iv) above, elaborated in her Order: *Additionally*, and specifically, Petitioner is to provide documents responsive to Respondent's First RFP requests 17 "." 21 through 24 "." The word "*Additionally*" clearly implies that the initial statement of the Order "Both parties are obligated to provide the other party ***any documents on which they intend to rely at trial*** related to claims made for the two homes at issue." is intended as a standalone ruling within Judge Allen's Order. (Emphasis added.)

   vi)   FTR Court Record "HenryP 20231020-1439 01da036335add000" dated **10/20/2023** time stamp **2:56:50pm – 2:57:46pm**): Judge Henry states for the record in Mr. Gabriel's "Motion for Sanctions" (re: Judge Allen's "Order Granting Motion to Compel Discovery") dated October 20, 2023, addressing Mr. Olsen: "This is a document that you created in response to the request for production. Which is something I should note, parties are not required to do that. They're required to produce documents that *exist*. (Emphasis added.) Mr. Olsen then agrees with Mr. Gabriel's argument that the documents produced regarding Mr. Olsen's expenditures on the jointly owned properties are not legible (*See* "Exhibit J1" as filed into the "Motion for Sanctions"). Judge Henry concluded the hearing by ordering that Mr. Olsen furnish Mr. Gabriel with a legible copy of "Exhibit J1" in a timely manner ahead of trial. However, Mr. Olsen and Mr. Nelson both conspicuously failed to produce this prior to trial in spite of Mr. Gabriel's repeated requests, and thus openly defied Judge Henry's order choosing instead to conceal this data until the 2nd day of trial, on February 14, 2024, unbelievably, just moments before the close of that day's hearing. Mr. Gabriel then objected to the admission of this evidence repeatedly at trial as it was specifically a part of Judge Allen's prior Order as

Exhibit 34 p. 035

well as Judge Henry s prior Order   and yet Mr. Olsen and Mr. Nelson failed to produce it until that very moment in the last moments of the trial.   Mr. Gabriel s objections can be heard via FTR Court Record   HenryP 20240214-1622 01da5f61f51b3b80  dated **2/14/2024** time stamp **4:22:08pm,** in which he pointed out that Petitioner s attempt to admit, at the 11th hour, what would soon be admitted as  Exhibit 112  and  PET Exhibit 1-13 , and which was ***previously ordered to be produced in advance of trial to Mr. Gabriel explicitly by Judge Henry,*** on October 20, 2023, at the  Motion for Sanctions  hearing. (Emphasis added).

vii)   FTR  Court  Record   HenryP 20231020-1419 01da03606a591e20   dated **10/20/2023** time stamp **2:19:19pm – 2:19:59pm**):  Related to the above point made in Section C. 7. (paragraph vi.), Judge Henry offered a prelude in this  Motion for Sanctions  hearing, advising Mr. Gabriel as to when he would be able to object to newly produced documentation that Mr. Olsen had failed to produce prior to trial   such as  Exhibit J1  (now transformed into  PET Exhibit 1-13 , admitted after the trial hearings concluded), which Judge Henry ordered Mr. Olsen to produce prior to trial in a legible format    and per the explicit orders of Judge Allen and Judge Henry.  Judge Henry stated that the time to bring this up was ***at trial***:

> **Judge Henry:**      And you re not getting what you think is out there in response to that request.  You can say  I know it s out there , but that is a matter that is going to have to be demonstrated at trial with evidence, not speculation.  And by not getting any correspondence in response   or very limited correspondence   in the other party s possession, do you see the use of that to you is that it s a ***building block***.  You ve created a scenario where ***they can't come in later with a raft of communication that's responsive***.  (Emphasis added.)

Unbelievably, the Court defied its own prior instructions by admitting  Exhibit 112  and  PET Exhibit 1-13 , along with the spreadsheet that it corresponds to   newly admitted at trial in the very final hour of the trial hearing   over Mr. Gabriel s repeated objections.

viii) FTR Court Record HenryP 20240214-1622 01da5f61f51b3b80 dated **10/20/2023** time stamp **4:22:08pm – 4:27:08pm**): Judge Henry observes that what was previously known as Exhibit J1 in the Motion for Sanctions hearing on October 20, 2023, was ordered to be produced by Judge Henry on that date, in a legible format, and had not been produced to Mr. Gabriel per the instructions of Judge Allen. Fast forward to the trial on February 14, 2024: After much back and forth and over Mr. Gabriel s objections, Judge Henry eventually permits Mr. Olsen more time to produce this documentation in spite of Mr. Gabriel s repeated attempts during discovery and through his Motion to Compel and Motion for Sanctions to obtain this very documentation, in spite of Judge Henry s previous instructions to Mr. Gabriel that ***at trial would be the time"*** to object to the admission of such newly produced documentation. (*See* above, Section C, (paragraph vii).)

(ix) FTR Court Record HenryP 20240214-1617 01da5f614245ad60 dated **2/14/2024** time stamp **4:17:18pm – 4:22:08am,** and FTR Court Record HenryP 20240214-1622 01da5f61f51b3b80 dated **2/14/2024** time stamp **4:22:08pm – 4:23:50pm**): Mr. Olsen tries to explain at trial why he and his attorney, Mr. Nelson, were never able to comply with Judge Henry s Order following Mr. Gabriel s Motion for Sanctions , which followed Judge Allen s Order, Granting Motion to Compel Discovery . Amidst some back-and-forth, Mr. Olsen effectively blamed Mr. Nelson for not transmitting the documents previously ordered by Judge Allen and Judge Henry to be produced to Mr. Gabriel. During this span of 6-7 minutes of confusion regarding the required expense documentation, Mr. Gabriel objected several times to the admissibility of this evidence, and expressed frustration that this was the entire point of his Motion to Compel Production and Motion for Sanctions both of which were granted in part by Judge Allen and Judge Henry. Yet these documents were never transmitted to Mr. Gabriel part of an ongoing pattern of Petitioner Mr. Olsen, through his attorney, concealing information they knew should have been produced during discovery revealing it only at the 11th hour at

trial, knowing that Mr. Gabriel would have scant opportunity to scrutinize and respond effectively to the previously concealed evidence. Mr. Gabriel hereby argues that these discovery antics by Mr. Olsen and Mr. Nelson alone are so outrageous as to be grounds for an ORCP 64 C Motion for New Trial.

(x) FTR Court Record HenryP 20240214-1632 01da5f635ac56d60 dated **2/14/2024** time stamp **4:32:55pm – 4:34:21pm**): Mr. Gabriel objects, again, to the admissibility of evidence (previously Exhibit J1 in the Motion for Sanctions hearing on October 20, 2023, and now assigned Exhibit 112 and PET Exhibit 1-13 ) that was explicitly subject to both Judge Allen s Order, Granting Motion to Compel and Judge Henry s Order following Mr. Gabriel s Motion for Sanctions, now being introduced for the very first time by Mr. Olsen at the 11th Hour, 30 minutes before the close of the final trial hearing. Judge Henry states to Mr. Gabriel: You seem to have the sense that this is completely absurd, but you ve produced for the first time today a document that details what you re purporting are expenditures you ve made at the Montana and the Portland property , at which point Mr. Gabriel interrupted, Not for the first time, and that s why I sent all that documentation to Mariana Urdaneta, the Court Clerk . Mr. Henry then replies, Their testimony is it s the first time they ve received it. However, the Court *had just received into evidence*, earlier in the trial that same day, on February 14, 2:14pm and 2:20pm admitted into evidence as Exhibit 39 the forwarded live e-mail proof (with all the relevant attachments) that Mr. Gabriel had in fact transmitted the vast majority of this discovery documentation previously to Mr. Nelson and Mr. Olsen both, by the discovery deadline set by Judge Beth Allen. (Emphasis added.) Thus, the trial Court had already obtained incontrovertible evidence that Mr. Gabriel had made his discovery burden as it pertains to the expenditure documentation, and had already obtained incontrovertible evidence that Mr. Olsen had not only missed Judge Allen s discovery deadline of July 3, 2023, but also subsequently defied Judge Henry s Order regarding the same

expenditure documentation.  Therefore, the Court should have ruled that the expenditure evidence from Mr. Olsen produced for the first time at trial (specifically Exhibit 112 and PET Exhibit 1-13 ) should not have been admissible *per Judge Henry's own ORCP guidance* from the  Motion for Sanctions  hearing on October 20, 2023. (Emphasis added.)  To the extent that the trial court finds that expenditure evidence is admissible provided it was furnished to Mr. Gabriel by the February 28, 2024, deadline, then it stands to reason that anything Mr. Gabriel submitted to Mr. Nelson and the trial Court by the February 28, 2024 deadline meant to mirror Exhibit 112    specifically an updated spreadsheet reflecting his own mortgage payments on the Portland property   should also be admitted, along with Mr. Gabriel s testimony at trial (FTR Time Stamp 4:37:41pm) that the mortgage payments on the Portland property  up until  Mr. Olsen  assumed the mortgage were  split 50/50 . In addition, Mr. Gabriel should be awarded the sanctions he sought in his original  Motion for Sanctions  in the amount of **$11,091.25**, per Judge Henry s prior  Order Re: Motion for Sanctions , which states:   5.  To the extent that Petitioner attempts to admit documents that were in existence at the time of Respondent s request that were not produced in response to the Request for Production, *Respondent may request the imposition of sanctions at that time*.

(xii)    FTR   Court   Record    HenryP 20240214-1117 01da5f376cb25f00   dated **2/14/2024** time stamp **11:19:40am – 11:23:26am**):  Mr. Olsen newly argues he has been excluded from the Portland property, and attempts to pin approximately  50,000 of rental costs Mr. Olsen voluntarily incurred onto Mr. Gabriel, citing  threatening language  that included  threats for criminal penalties , and were otherwise vague.  Mr. Gabriel objected to this testimony on the grounds that these newly raised issues (i.e,  the exclusion from these properties ) were not raised previously in direct examination.

xiii)    To the extent that  Exhibit 112  and  PET Exhibit 1-13  remain admissible, Mr. Gabriel herein objects to all ledger entries denoted as  Withdrawal ACH Wells Fargo Card ,

Exhibit 34 p. 039

Withdrawal by Check , Withdrawal Credit Card and Withdrawal Debit Card which are not simultaneously denoted as related to any particular purpose. For example, on PET Exhibit 1-13, PET Page 118 , a ledger entry states only: 3/29 Withdrawal by Check, 300.00 with no other identifying information, and it does not appear to represent of any SNMC mortgage payment as would be denoted by an amount in the vicinity of 1200- 1500. These ledger entries throughout Exhibit 112 and PET Exhibit 1-13 add up to a grand total of **$26,743** and which should be subtracted from the itemization.

**7.**

**D.     Objections made in prior Motion to Conform to Evidence (ORCP 23 B)**

In Mr. Gabriel s previously filed Motion to Conform to Evidence under ORCP 23 B, several additional objections were filed into the court record, requesting that the parties conform to evidence prior to the close of the court record. These objections, made anew here in Mr. Gabriel s closing arguments, were as follows:

i)       the claim that Petitioner/Defendant Jesse Mark Olsen ( Mr. Olsen ) made approximately 122,650 in mortgage payments to lenders Wells Fargo Home Mortgage and Security National Mortgage Company from 2014-2020, after which point Mr. Olsen assumed sole responsibility for the Portland property mortgage (located at 5721 SW Salmon St., Portland OR 97221; hereinafter Portland property mortgage ). This newly made claim at trial conflicts with the evidence brought by Respondent Mr. Gabriel to trial in the form of bank statements from this period, which upon examination prove it was indeed Mr. Gabriel who made the overwhelmimg majority of these payments directly from his bank account to these respective mortgage lenders - payments which totaled approximately 217,712.51 from 2014-2020. Thus, Mr. Gabriel moved the Court to order the parties to conform to evidence; and,

ii)      the new claim made at trial that Petitioner Mr. Olsen was never provided access to the residential property located at 5721 SW Salmon St., Portland, OR 97221 (hereinafter

Exhibit 34 p. 040

the Portland property ) by Mr. Gabriel at any time from March 1, 2022 until the present trial beginning on January 27, 2024. The implications of these newly made claims by Mr. Olsen at trial seem to be aimed at recovering rental costs voluntarily assumed by Mr. Olsen after he abandoned the Portland property on or around March 1, 2022. Mr. Gabriel moved the Court to order the parties to conform to evidence that Mr. Olsen was not substantively barred entry from the Portland property throughout this period, during which the vast majority of Mr. Olsen s rental expenses were incurred.

**8.**

### E.      ORCP 23 (B) – Amendments to conform to evidence

i)      ORCP 23 (B) states:   When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

ii)      While this Court had previously ordered evidence (in the form of what would soon become  Exhibit RESP  and  Exhibit PET ) to serve as substantiation (i.e.,  back-up ) to the claims Mr. Olsen had newly furnished in the form of a spreadsheet produced at trial on February 14, 2024, Mr. Gabriel will be seeing this evidence for the first time on February 28, 2024. Thus, Mr. Gabriel could not have anticipated an argument or suggestion made just prior

to the close of trial that these were payments assumed by Mr. Olsen.  Nor could Mr. Gabriel have anticipated what form Mr. Olsen might argue those payments were issued.  At trial, Mr. Gabriel stated for the record that  roughly half  the Portland mortgage had been paid by Mr. Gabriel, but would have had no ability to calculate Mr. Olsen s spreadsheet and contrast it to the unlabeled accounting evidence brought by Mr. Gabriel within the allotted time at trial. Because the newly labeled, previously assembled evidence Mr. Gabriel is presenting in Exhibit 113-RESP on February 28, 2024, directly contradicts Mr. Olsen s eleventh-hour spreadsheet admitted at close of trial on February 14, 2024, both parties will need an opportunity to cure the spreadsheets to account for the apparently contradictory evidence furnished in Mr. Olsen s February 14, 2024, spreadsheet   furnished as it was with no  back-up  documentation.

       iii)     At the trial hearing on February 14, 2024, Mr. Nelson alleged newly and repeatedly that Mr. Olsen had never been given keys or codes by Mr. Gabriel to allow him access to the Portland property ever since Mr. Olsen abandoned the property on or around March 1, 2022. Mr. Olsen claimed to have initially vacated the property because the construction noise and dust made the property unsuitable to reside in during the renovation and unsafe for his dogs due to construction dust.  Mr. Gabriel testified that Mr. Olsen had also previously accused him of  abandoning  the Portland property and argued that Mr. Gabriel showed negligent disinterest in properly assisting with the repairs (following the flood damage from a burst pipe), after which point Mr. Gabriel agreed to return to Portland to assist with the reconstruction efforts.  Mr. Gabriel testified he did return to the Portland property in the second week of March 2022, and stayed there to oversee the construction until its completion on or around August of 2022.  Mr. Nelson alleged at trial that the locks were changed by Mr. Gabriel without Mr. Olsen s knowledge during or after this period.  Mr. Gabriel acknowledged the new locks were installed after the last of the contractors had finished their work and stated that this was done at a time in which Mr. Gabriel and Mr. Olsen s attorneys had directed both parties

not to communicate directly with one another, a claim supported by the attached e-mail exchanges between the parties. Starting with an exchange on April 29, 2022, between Mr. Gabriel s attorney at the time (Amy Fassler) in response to Mr. Nelson s paralegal (Jessica Edmiston), lawyers for both parties did instruct Mr. Gabriel and Mr. Olsen to funnel any and all communications through the attorneys on a go-forward basis (*See* Exhibit 201,     1-2., *'Respondent's Motion to Conform to Evidence'*).

iv)      Judge Patrick Henry at trial stated that he found Mr. Gabriel s claims on this topic and timeline  odd . Judge Henry at trial inquired as to what specific dates Mr. Gabriel offered or furnished the codes and keys to Mr. Nelson and/or Mr. Olsen, to which Mr. Gabriel replied he wasn t entirely certain, estimating the dates of these exchanges between the parties only roughly. Mr. Gabriel claimed repeatedly in response to Judge Henry s queries that he had in fact furnished the keys and codes, in addition to communicating that Mr. Olsen had uninterrupted access, at least  four times  to Mr. Olsen, either through his attorney Mr. Nelson or to Mr. Olsen directly. Mr. Gabriel s claims are clearly supported by the attached e-mail exchanges, in which Mr. Gabriel did indeed provide Mr. Olsen and Mr. Nelson the requested access  at least four times . (*See* Exhibit 201,     3-15., *'Respondent's Motion to Conform to Evidence.'*).

v)      Notably, on Monday, March 6, 2023, Mr. Gabriel conveyed the code for the new locks in response to Mr. Olsen s latest inquiry on the topic, and further clarified that the old keys still worked on the old locks:  The code for the new locks is 8080. The old keys still work on the old locks. I m here with my dogs, who have never seen Jesse, so if he s coming to get his things, a heads up would be appreciated   . Mr. Gabriel was staying at the Portland property during this time given that Mr. Gabriel s motion to strike, the original trial date itself, and various in-person hearings were originally scheduled at the Multnomah County Courthouse for March and April 2023 and required his physical presence. This was the first

Exhibit 34 p. 043

occasion wherein keys or codes were specifically requested by Mr. Olsen or Mr. Nelson. (*See* Exhibit 201, 8-10., *'Respondent's Motion to Conform to Evidence.'*).

      vi)    Previously, sometime at the beginning of January of 2023, while Mr. Gabriel was in Montana, a windstorm apparently blew open one of the French doors in the front of the Portland house and tripped the security alarm, after which point Mr. Olsen was notified by Xfinity Home Security and he appeared at the house to investigate. Mr. Olsen claimed through his attorney Mr. Nelson that this is when Mr. Olsen first noticed the new locks. Mr. Gabriel also received notification of the tripped alarm and returned shortly thereafter to Portland to investigate, which is documented in the attached e-mail exchange between Mr. Gabriel and his attorney at the time, Kelsie Peddie. (*See* Exhibit 201, 11-13., *'Respondent's Motion to Conform to Evidence.'*). Mr. Gabriel explained the new locks as first observed by Mr. Olsen and their purpose, e.g., Doors were replaced, and at one point we had so many contractors coming and going that we did add new locks, and some of the doors had to be resurfaced and the hardware replaced. This response was furnished immediately upon request to Mr. Nelson through Mr. Gabriel s attorneys at the time, as the attached exhibit shows. Mr. Gabriel in that exchange clarified further, Jesse has full access, anytime he wants. But because Roscoe forbids any communication, Jesse has never asked, nor has Roscoe asked, nor has he expressed any interest in any of his own belongings, which are sitting in boxes (they were packed up by the restoration company and returned after the restoration was complete at Jesse s own instructions). (*See* Exhibit 201, 11-13., *'Respondent's Motion to Conform to Evidence.'*).

      vii)    Prior to this, the issue of Mr. Olsen s access to the property was first raised on May 2, 2022, before any locks were changed and before any new locks were added, to which Mr. Gabriel through his attorney Amy Fassler conveyed, He has full key access to the house at any time, there are no security obstructions whatsoever except those to prevent general burglary, and I have absolutely no problem with him coming and going freely and at his

complete leisure while I continue to manage the contractors and subcontractors. Jesse has his own separate bedroom, his own separate full bathroom and his own separate bed as has always been the case. Mr. Gabriel continued, Far from damaging the property, I have spent the last month and a half working diligently to restore the property, as our contractor and all of his subcontractors can personally testify (and as Jesse knows perfectly well). The baseless theory of Mr. Gabriel potentially damaging the property was raised by Mr. Nelson s paralegal at the time, Jessica Edmiston. (*See* Exhibit 201, 4-6., *'Respondent's Motion to Conform to Evidence.'*).

   viii)   Finally, in an e-mail exchange dated August 12, 2023, following Mr. Nelson s fourth attempt to pretend there was any issue with Mr. Olsen s access to the property, Mr. Gabriel wrote directly to Mr. Olsen and Cc d Mr. Nelson, Jesse, Yesterday I sent the key codes and a spare house key for the new locks to your address at 650 Gaines St. in Portland, OR, and sent a spare copy to Val Arne s house on Orchid St. via UPS overnight, scheduled to arrive on Monday. The spare is not really needed to open the locks; only the code is necessary unless the batteries on the locks wear out. In with the keys and codes I included a copy of an e-mail from Kelsey Peddie on March 6, 2023, whereby she relayed the codes to Roscoe, which means you have had uninterrupted access to the Portland house since the first time this question was posed. The UPS delivery receipt and verification is the next-to-last page of the attached exhibit (*See* Exhibit 201, 3-4 *and* 14., *'Respondent's Motion to Conform to Evidence.'*).

   ix)   Some number of weeks after Mr. Olsen received the new keys and codes sent to him directly by Mr. Gabriel, Mr. Olsen did finally appear at the Portland property with a moving crew to retrieve the majority of his belongings without incident or obstruction, leaving only a small handful of possessions behind at the property. At the February 14, 2023, trial, both Mr. Nelson and Mr. Olsen conspicuously failed to mention this fact.

x)    As shown in the evidence included with in "Respondent's Motion to Conform to Evidence", both Mr. Olsen and Mr. Nelson knew perfectly well at trial that Mr. Gabriel had furnished keys and codes, and that Mr. Gabriel had clarified repeatedly to all parties that there was absolutely nothing stopping Mr. Olsen from accessing the Portland property at any time. Despite this knowledge, both Mr. Olsen and Mr. Nelson repeatedly denied under oath to this court ever having been in receipt of any codes or keys to the Portland property from Mr. Gabriel. Furthermore, Mr. Nelson alleged in "Petitioner's Initial Request for Admissions Document Production" on December 1, 2022, that he and Mr. Olsen believed that Mr. Gabriel had "vacated" the Portland property, all while pretending Mr. Olsen was being denied access. (**See** "Petitioner's Initial Request for Admissions — Document Production", 7.) These knowingly false claims at trial made by Mr. Nelson and Mr. Olsen not only constitute perjury under oath, they further suggest that Mr. Olsen's lack of interest in residing at the property had more to do with maintaining the illusion of barred access than any substantive belief of limited or barred access by Mr. Olsen.

xi)    The perjurious claims made by Mr. Olsen and Mr. Nelson at trial on February 14, 2024 are part of a pattern in which both have made knowingly false claims to this court, starting with the perjurious claim at the start of the domestic partnership lawsuit, in which Mr. Olsen through his attorney Mr. Nelson wrote in their initial Petition, "No other domestic relation suit *or other court proceeding is pending in any other court of this state or any other state*". (**See** "Petition for Dissolution of Domestic Partnership", 1.). (Emphasis added.) In fact, at the time Mr. Olsen and Mr. Nelson filed their domestic relations petition, Mr. Gabriel's first-filed partition claim (22CV10399) had already been filed with the Multnomah County Circuit Court, and this partition lawsuit had been previously discussed actively by all parties by phone, by text message, and by e-mail exchange, including between Mr. Nelson and Mr. Gabriel, and between Mr. Nelson and Mr. Gabriel's real estate attorney, Kelsey Peddie. At minimum, this

Exhibit 34 p. 046

pattern of making knowingly false statements to this Court should be taken into account when considering the credibility of Mr. Olsen and Mr. Nelson. At maximum, they should be considered criminal acts of perjury before this Court under oath.

**9.**

### F.      Conclusion & Recommendations

a)      FTR Court Record HenryP 20240214-1117 01da5f376cb25f00 dated **2/14/2024** time stamp **11:18:36am – 11:19:40am**):  Mr. Nelson asks Mr. Olsen to testify as to what his preferred outcome in the consolidated case is:   Is it your position that both parcels should be sold and the equity divided as the court believes to be fair. , to which Mr. Olsen replies,  Yes, I do not know how to resolve these matters any other way.   Judge Henry asks to clarify further that this would involve paying off the mortgages incurred, and accounting for costs contributed by both properties.

b)      Conversely, Mr. Gabriel hereby proposes   and has repeatedly proposed in settlement negotiations with Mr. Olsen and Mr. Nelson   selling the Portland property via partition and sale under ORS 105, splitting the equity between the two parties for whatever purpose the parties require, and then hiring an appraiser and perhaps a referee under a partition framework under Montana local rules to provide a valuation of the Montana property.  *A cost/input method of accounting should be used to determine the share of equity assigned to each party upon sale*, with Mr. Gabriel contributing approximately 70   (between the parties) of all improvement, sweat equity and inputs into the Portland property since its purchase in 2014, as evidenced by the exhibits (*See* Exhibit  s RESP00010, RESP00011, RESP00012, RESP00013 *and* RESP02000   RESP05293). (Emphasis added.)

c)      Mr. Gabriel can then use his equity proceeds from the sale of the Portland property to buy out Jesse s remaining equity in the Montana property, and then the Court or a referee can either allow Mr. Gabriel a 6-12 month window to refinance the mortgage on the

Montana property (mortgage rates are predicted to fall over the next 12 months) in his own name, or alternately to partition the property under the guidance of a Montana court-appointed referee.

d) Mr. Gabriel s preferred scenario would avert the worst-case scenario of all, which is Mr. Gabriel s forced eviction from his Montana home, where he has resided almost exclusively from February 2021 until present. Mr. Gabriel argues that the only reason Mr. Olsen and Mr. Nelson have declined Mr. Gabriel s resolution framework is because they know their greatest negotiating leverage arises from Mr. Gabriel s ***overwhelming fear of eviction from his beloved Montana home***. (Emphasis added.) Mr. Olsen and Mr. Nelson have heavily relied on this fear-based leverage (or conversely, the local Oregon trial court s controversial *'Beal v. Beal'* framework) to try and one way or another effectively put Mr. Gabriel back onto the hook for the Portland mortgage, which was previously put into Mr. Olsen s name alone to account for the massive disparity in contributions to the two parties both financially and via sweat equity. Mr. Gabriel rejects this idea, given that he has contributed the vast majority ( 90 between the parties) to the improvement of the Montana property (See Exhibit s RESP00001-RESP00007 *and* RESP00500-RESP01128) and with Mr. Gabriel contributing approximately 70 (between the parties) of all improvement, sweat equity and inputs into the Portland property since its purchase in 2014, as evidenced by the exhibits (*See* Exhibit s RESP00010, RESP00011, RESP00012, RESP00013 *and* RESP02000 RESP05293). In other words, any valuation of the two properties will be substantially elevated thanks to the clear majority of improvements to the properties having been paid and performed by Mr. Gabriel. This should be accounted for in any determination made by this Court or any other court.

e) ***An alternate solution***, which may or may not be legally feasible, would be to simply treat ***both*** the Portland and the Montana properties ***as a single partition claim but not as components of a domestic partnership***, with or without the coordination of the Montana

Exhibit 34 p. 048

court, and divide the properties by awarding Mr. Olsen the Portland property, and awarding Mr. Gabriel the Montana property, using a cost/input method of accounting to determine any residual balance owed by one party to the other for any resulting imbalance of equity. (Emphasis added.) This alternate solution would enable both low-interest mortgages to stay intact and prevent the rushed liquidation of both the properties, though it would still allow Mr. Olsen the ability to sell the Portland property on his own terms and his own schedule. Additionally, Mr. Gabriel would be granted a three (3) month window to retrieve his furniture from the Portland property. To the extent that Mr. Olsen would remain on the Montana property mortgage loan with its companion obligations, Mr. Gabriel could be given an eighteen (18) month window to complete a refinancing of that particular mortgage under his own name and as mortgage lending rates subside. This might have the added benefit of eliminating any urgent need for the parties to appeal the judgment in this instant case or move for a New Trial under ORCP 64C, while at the same time closing out the Montana partition claim with no knock-on effects, and eliminating the need for a Federal court intervention over the *'Beal v. Beal'* Fourteenth Amendment issues now raised.

f) In Mr. Olsen s Petitioner s Trial Closing Arguments , the Petitioner asserts a number of expenses have been incurred litigating this case. It is Mr. Gabriel s position that taking the forcible conscription approach of *'Beal v. Beal'* is what has complicated a relatively straightforward real estate dispute and unnecessarily escalated it into a convoluted, whole-of-life, existential crisis with Fourteenth Amendment questions of constitutionality. This was a tactic proactively and cynically chosen by Petitioner Mr. Olsen, after the first-filed claim (Respondent/Plaintiff s complaint requesting a sale and partition under ORS 105) had already been filed and discussed by all parties. Thus, to the extent that legal costs should be awarded, Mr. Gabriel should be reimbursed by Mr. Olsen the **$48,765.23** in direct legal expenses incurred by Mr. Gabriel, including legal and filing fees. To the extent that Mr. Olsen seeks to share in

the profit and loss of the AirBNB property, Mr. Gabriel should be reimbursed by Mr. Olsen in the amount **$28,423.04**, the accounting for which is spelled out above (*See* Section B, paragraph xxix).  Furthermore, as spelled out above (See Section C, paragraph xiii), potentially improper ledger entries throughout Mr. Olsen s  Exhibit   112  and  PET Exhibit 1-13  add up to a grand total of **$26,743** and should be subtracted from the itemization.  Finally, as spelled out above (*See* Section C, paragraph x), Mr. Gabriel should be awarded the sanctions he sought in his original  Motion for Sanctions  in the amount of **$11,091.25**, per Judge Henry s prior  Order Re: Motion for Sanctions .

Respectfully submitted.

DATED this 27th Day of March, 2024.

Respondent/Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd.   1140
Lakeside, MT 59922

Telephone:  (206) 391-9886 m.

Exhibit 34 p. 050



State of Oregon
County of Multnomah

I certify that this is a true and correct copy
of a document in the possession of the
court administrator for Multnomah County

Dated: 5/22/2024

Court Administrator for Multnomah County
or designee:

Sarah Schultz



22DR04942
OR
Order
17950354

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH
Family Law Department

Verified Correct Copy of Original 4/18/20

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | Case No. 22DR04942; 22CV10399 |
| JESSE MARK OLSEN, | ) | |
| | ) | ORDER RE DISSOLUTION OF |
| Petitioner, | ) | DOMESTIC PARTNERSHIP AND |
| | ) | PARTITION CLAIM |
| and | ) | |
| | ) | |
| RYAN DEAN GABRIEL, | ) | |
| | ) | |
| Respondent | ) | |

The above-entitled matter having come before the Court for trial on January 26, 2024, and February 14, 2024, upon a Petition seeking a dissolution of domestic partnership, the following persons being present:

Petitioner appeared and was represented by attorney Roscoe Nelson, Bar No. 732218. Respondent appeared and was self-represented.

**THE COURT FINDS:**

1. Existence of a domestic partnership.

The Court finds that Petitioner was credible in his description of the nature of the parties' relationship and Respondent was not. Though they were not married, the parties had a committed, mutually supportive, romantic relationship for a period of approximately twelve years. The parties pooled their financial resources to acquire property together, made decisions together regarding the maintenance and improvement of their property, and each committed a degree of "sweat equity" to the properties' maintenance and improvement. Like other couples in a domestic partnership, the parties considered starting a family together. Though their work required them to reside apart for significant periods, they cohabitated whenever they were not separated by work.

Respondent argues that the true nature of the parties' relationship was a business partnership that existed to acquire investment properties. However, the overwhelming evidence adduced at trial contradicts Respondent's position. Respondent's testimony was not credible that he "could not remember" sending loving, affectionate cards and letters to Petitioner, that he could not recognize his own writing in those letters, and that his expression of love and affection

ORDER RE DISSOLUTION OF DOMESTIC PARTNERSHIP AND PARTITION CLAIM
Olsen v. Gabriel, Case No. 22DR04942 and 22CV10399

Exhibit 35 p. 001

_Verified Correct Copy of Original 4/18/2024._

for Petitioner was consistent with the way he addressed his other friends and family. After he testified that he "didn't know" if the parties broke up in 2022, he corrected himself that they "broke up as friends." Respondent admitted that the parties had a sexual relationship, but he claimed that when he resided in Portland at the parties' home, he and Petitioner slept on different rooms. Respondent's memory was selective, and his testimony was conflicting, inconsistent, and unbelievable. The Court finds that Respondent was an unreliable witness.

Petitioner's testimony regarding the parties' history was detailed, credible and supports a finding that the parties enjoyed a decade long relationship that had all the hallmarks of a marriage. On the other hand, Respondent's attempt to create an alternative reality in which the parties were "friends with benefits" who pooled their resources solely to advance their commercial and financial interests was implausible and not supported by the evidence.

The Court finds that the parties were in a domestic partnership.

2. Property Division

As indicated above, the Court finds that the parties were in a domestic partnership that lasted from 2011 to 2022. In a domestic partnership case, the court must determine the parties' intent and whether the parties explicitly or implicitly agreed to share assets equally at the time they established their partnership. The court must then determine an equitable division of the assets. *Beal and Beal*, 282 Or 115 (1978).

a. *Personal Property and Debts*

Neither party presented evidence of any personal property or debts, other than the mortgages discussed below, that require equitable division. The Court makes no orders other than those indicated below in relation to the parties' real property.

b. *Real Property*

Over the course of their domestic partnership, the parties jointly acquired two properties, one in Oregon ("Salmon Street property"), which was acquired in 2014, and one in Montana ("Blacktail Road property"), which was acquired in 2021. There is no evidence that the parties had an express agreement regarding the division of property in the event of the dissolution of their domestic partnership. Where there is no express agreement of the parties regarding the division of their property in the event of dissolution of their domestic partnership, courts "closely examine the facts in evidence to determine what the parties implicitly agreed upon." *Beal,* 282 Or at 122.

Though it is not dispositive, the fact that the parties held title to both properties jointly demonstrates their desire to pool their resources and share equally in the benefits of the property ownership. There was no evidence other than that the joint acquisition of the properties was for their mutual benefit. The resources of both parties were used to acquire, improve, and maintain

Verified Correct Copy of Original 4/18/2024.

both properties. The parties shared equally in the household expenses, particularly in the payment of the mortgage. Both parties contributed "sweat equity" to the properties. The parties' living arrangement also demonstrates their desire to pool their resources for their mutual benefit. The Court finds that parties were equal co-tenants of the partnership properties.

Respondent argues that an equitable division of the parties' assets would involve Petitioner becoming solely liable for the new mortgage on the Salmon Street property. In 2020, the parties refinanced the Salmon Street property to acquire the Blacktail Road property. While it is true that Petitioner became solely liable for the mortgage on the Salmon Street property, his testimony was credible that the parties' purpose in removing Respondent's name from the mortgage was to maximize the "cash out" at closing for the down payment on the Blacktail Road property. Petitioner's testimony is supported by the contract that the parties entered providing for joint responsibility for the Salmon Street mortgage. The Court finds that it is equitable for both parties to share in the responsibility for the debt on the Salmon Street property.

Respondent argues that he should be credited with the long half of the equity in the property given the imbalance in the parties' contribution in labor and financial resources to the upkeep and maintenance of the properties. There is some support for Respondent's position in the record. On the other hand, as a co-tenant of the Blacktail Road property, Petitioner is entitled to one-half of the short-term rental income that Respondent received for that property. Respondent did not provide an adequate accounting to Petitioner of these rental proceeds. Though the record does not permit the Court to establish an exact value for the financial contribution and benefits that both parties received in relation to the properties, it is not surprising that parties to a mutually beneficial relationship would engage in informal record keeping. The Court cannot identify a principled basis for awarding either party a credit in relation to the property division.

The Court finds that it is equitable for the parties to share equally in the equity and debt of the properties and to receive equal shares of the proceeds of the sale of the properties, without an equalizing judgment from or to either party.

c.  *Sale of the Properties*

In the course of this litigation, Respondent has demonstrated an aggressive attitude, uncooperative behaviors, and time-wasting and costly tactics. He cannot be trusted to arrange for the sale of the parties' property in an efficient and equitable manner. The Court adopts Petitioner's proposal for the sale of property found in Paragraph 2 on page 2 of Petitioner's Closing Argument.

d.  *Equalizing Judgment and Surcharge of the Parties.*

The Court denies both parties' requests for an award of equalizing judgment or surcharge against the other party.

ORDER RE DISSOLUTION OF DOMESTIC PARTNERSHIP AND PARTITION CLAIM
Olsen v. Gabriel, Case No. 22DR04942 and 22CV10399

Exhibit 35 p. 003

Verified Correct Copy of Original 4/18/2024._

    *e. Respondent's partition action in relation to the Salmon Street property.*

Because the Court has fully addressed the issues in relation to the ownership and distribution of the Salmon Street property in the domestic relations case, 22DR04942, Respondent's claim for relief in the partition action, 22CV10399, is moot.

## THE COURT ORDERS:

1. The real property of the parties shall be sold in accordance with the terms described above and the parties shall receive equal shares of the proceeds of the sale of the properties, without an equalizing judgment from or to either party;

2. Case No. 22CV10399 is dismissed; and

3. Mr. Nelson shall prepare a form of general judgment consistent with this opinion.

April 17, 2024

Patrick W. Henry, Circuit Court Judge

22CV10399

State of Oregon
County of Multnomah

I certify that this is a true and correct copy
of a document in the possession of the
court administrator for Multnomah County

Dated: 5/22/2024

Court Administrator for Multnomah County
or designee:

Sarah Schultz

1

2

3

4

5        IN THE CIRCUIT COURT OF THE STATE OF OREGON

6            FOR THE COUNTY OF MUTLNOMAH

7                Family Law Department

8    **JESSE MARK OLSEN,**            )  Case No. 22DR04943
                                      )            22CV10399
9            Petitioner,              )
                                      )
10        v.                          )  **GENERAL JUDGEMENT**
                                      )
11   **RYAN DEAN GABRIEL,**           )
                                      )
12           Respondent.              )
     _____)

13

14        This matter having come on before the Honorable Patrick W. Henry, Judge of the above-

15   referenced Court for trial on January 26, 2024, and February 14, 2024, upon a Petition seeking a

16   dissolution of domestic partnership, Petitioner appearing in person with his attorney, Roscoe C.

17   Nelson, Jr., Respondent appearing and representing himself, the Court having heard testimony of

18   the parties and reviewed the evidence received makes the following findings:

19                      1.

20        Parties were in a domestic partnership from 2011 through 2022.

21                      2.

22        Parties acquired properties which should be equitably divided.

23   / / / / /

24        Therefore, it is hereby ORDERED AND ADJUDGED as follows:

25            1.    Case No. 22CV10399 is dismissed.

26

Page 1 – **GENERAL JUDGMENT RE**                    Nelson & Nelson
        **DISSOLUTION OF DOMESTIC**          811 SW Naito Parkway, Suite 200
        **PARTNERSHIP**                      Portland, OR  97204 • (503) 222-1081
                                             attorneys@roscoecnelson.com

Exhibit 36 p. 001

1      2.        With respect to the sale of the properties, it is appropriate that Mr. Olsen

2    oversee the listings for sale of both properties (Portland and Montana Properties)

3    exclusively, to support real estate showings to potential buyers- and both property realtor's

4    having complete access without Mr. Gabriel undoubtedly doing what he can to not

5    cooperate.

6        a.    Petitioner shall select the realtors to market both the properties.

7        b.    Do a quick sale on both properties and sell the properties as soon as

8               possible.

9        c.    Both properties to go on the market 30 days after the court Judgment in

10             this matter.

11        d.    Both parties will have a say in the sale prices of both properties.

12        e.    Both parties will have a say in the acceptance of offers of both properties

13             (Portland and Montana).

14        f.    If a decision can't be reached to the sale price and acceptance offers on

15             both Properties (Portland and Montana), Mr. Olsen will have final say for

16             listing prices, and purchase amounts.

17        g.    Realtor's will have complete access to show properties, 2 hours in advance

18             notice. This will occur between 9am and 8pm on all days.

19        h.    Respondent is prohibited from interfering with the sale process.

20        3.    Case No. 22CV10399 is dismissed.

21

22    Dated this _____ day of _____, 202___.

23                       5/2/2024 3:53:49 PM

24

25                   _____

26                   Circuit Court Judge Patrick W. Henry

Page 2 – **GENERAL JUDGMENT RE**
      **DISSOLUTION OF DOMESTIC**
      **PARTNERSHIP**

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 36 p. 002

1

2

3

4
Respectfully submitted by:

5
Attorney for Petitioner:
Roscoe C. Nelson, Jr., OSB #732218
6
811 SW Naito Parkway, Suite 200
Portland, OR  97204
7
Telephone: (503) 222-1081
Fax:  (503) 222-6441
8
E-mail:  mail@roscoecnelson.com

9
Petitioner:
Jesse Mark Olsen
10
5721 SW Salmon Street
Portland, OR 97221
11
Jesse.m.olsen@gmail.com
(801)-710-2231
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 3 – **GENERAL JUDGMENT RE**
**DISSOLUTION OF DOMESTIC**
**PARTNERSHIP**

**CERTIFICATE OF READINESS FOR SUBMISSION**

This proposed order or judgment is ready for judicial signature because:

1. ☐Each opposing party affected by this order or judgment has stipulated to the order or judgment, as shown by each opposing party's signature on the document being submitted.

2. ☐Each opposing party affected by this order or judgment has approved the order or judgment, as shown by signature on the document being submitted or written confirmation of approval sent to me.

3. ☒I have served a copy of this order or judgment on all parties entitled to service and;

    (a) ☒No objection has been served on me.

    (b) ☐I received objections that I could not resolve with the opposing party despite reasonable efforts to do so. I have filed a copy of the objections I received and indicated which objections remain unresolved.

    (c) ☐After conferring about objections, role and name of opposing party agreed to independently file any remaining objection.

4. ☐The relief sought is against an opposing party who has been found in default.

5. ☐An order of default is being requested with this proposed judgment.

6. ☐Service is not required pursuant to UTCR 5.100(3), or by statute, rule or otherwise.

7. ☐This is a proposed judgment that includes an award of punitive damages and notice has been served on the Director of Crime Victims' Assistance Section as required by subsection (4) of this rule.

    DATED this 1st day of May 2024.

                s/ Roscoe C. Nelson, Jr.
                ROSCOE C. NELSON, JR., OSB #732218
                attorneys@roscoecnelson.com
                Attorney for Petitioner

Exhibit 36 p. 004

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (403) 606-5859 m.
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

FILED 3 MAY '24 10:27 USDC-ORP

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

RYAN DEAN GABRIEL,               )     Civil No. 3:24-cv-754-JR

          Plaintiff,             )

                                 )     **COMPLAINT AND CLAIM /**
     vs.                         )     **PRAYER FOR DECLARATORY AND**
                                 )     **INJUNCTIVE RELIEF**
TINA KOTEK, in her official capacity as     )
Governor of the State of Oregon, ELLEN      )
ROSENBLUM, in her official capacity as      )
Attorney General of the State of Oregon,    )
and MEAGAN AILEEN FLYNN, in her             )
capacity as Chief Justice presiding over    )
Oregon Judicial Department,                 )

          Defendants.            )

-------------------------------------------------------)

    Plaintiff Ryan Dean Gabriel brings this Complaint against the above-named Defendant, and states the following in support thereof:

### PRELIMINARY STATEMENT

    1.    On March 22, 2022, Oregon resident Jesse Mark Olsen ("Mr. Olsen"), by and through his attorney Roscoe C. Nelson, Jr. (III) ("Mr. Nelson"), filed a civil family lawsuit in Multnomah County, Oregon (Case No. 22DR04942), against Plaintiff Ryan Dean Gabriel ("Mr. Gabriel") alleging that Mr. Gabriel and Mr. Olsen had been in an implied "domestic partnership" or "marriage" for 12 years starting in 2010, seeking dissolution of the alleged unregistered domestic partnership.

    2.    That lawsuit is pending, and the injuries created by the lawsuit are ongoing. The initiation of injuries substantially began when Plaintiff Mr. Gabriel's *'Motion to Dismiss'* was

#106860    1    COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 37 p. 001

1  denied by the local Circuit Court on August 16, 2022, and injuries became more acute and

2  compounded when Plaintiff Mr. Gabriel's *'Special Motion to Strike'* was denied by the local

3  Circuit Court on April 19, 2023.  Trial was held on January 26, 2024, and February 14, 2024, an

4  Order was issued by the trial Court on April 17, 2024 (judgment pending) and will be appealed.

5

6      3.    Mr. Olsen through his attorney has since backpedaled these allegations as

7  discovery and the trial has unfolded, now asserting that Mr. Gabriel and Mr. Olsen were merely

8  in an unregistered domestic partnership per Oregon's controversial *'Beal v. Beal'*[1] case law

9  precedent, even though Oregon is neither a common law marriage state nor a "community

10  property" jurisdiction.  The local court under Hon. Judge Patrick Henry appeared to walk the

11  core claims back yet further, suggesting that mere temporary cohabitation may be the central

12  question, stating to Mr. Gabriel at trial, "You seem to be preoccupied with the term 'domestic

13  partnership'.", but still ruled that the parties were in an unregistered domestic partnership.

14

15      4.    Prior to receipt of Mr. Olsen's *'Summons'*, which began with the proclamation,

16  "Your spouse has filed a Petition asking for a dissolution of your marriage", Mr. Gabriel had

17  not ever once considered the viability of anything resembling "unregistered domestic

18  partnership" laws in Oregon, which does not recognize common law marriage, is not a

19  community property state, and in which he does not reside.  Mr. Gabriel has been a resident of

20  Montana since Feb. 2021, and prior to that was a resident of Washington State, stretching back

21  to 2001.

22

23      5.    Mr. Gabriel has a Montana Drivers' License, files his taxes in Montana, has a

24  Montana vehicle license, and his employers from 2002 onwards have only known him to reside

25  in Washington State and Montana.  All payroll taxes and employment-related taxes for Mr.

26  Gabriel have been paid to and recorded in Washington State and Montana since 2002 to present,

27

28  ─────────────────

[1] In '*Beal v. Beal*', 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.

Exhibit 37 p. 002

1    and Mr. Gabriel has only been eligible for unemployment and other related state benefits in

2    Washington State and Montana since 2002 to present.  Additionally, Mr. Gabriel has only ever

3    voted in Washington State and Montana since 2002 and has never held an Oregon State

4    identification card, nor an Oregon vehicle license plate.  Mr. Gabriel categorically denies being

5    married to Mr. Olsen, nor ever once signaling his intent to enter into a domestic partnership

6    under Oregon law, including *'Beal v. Beal' Id.,* which appears to have no limiting principles.

7

8        6.      While Mr. Olsen and his attorney Mr. Nelson have not yet cited any specific case

9    law precedent in any of their filings with the Multnomah County Circuit Court, the trial Court

10    (Hon. Judge Henry) cited *'Beal v. Beal'* and its progeny comprise the precedent case law which

11    could plausibly support Mr. Olsen's alleged domestic partnership claims.  The precedent set by

12    *'Beal v. Beal'* has been from the outset a controversial, activist workaround to enable Oregon

13    courts to break with a previous, longstanding "clean hands" doctrine, giving litigants and judges

14    a *de facto* common law marriage and dissolution construct, even though the litigators in these

15    cases go to great lengths to deny that the parties are involved in any common law marriage.

16

17        7.      Abuse of this controversial Oregon case law by the Oregon courts and its

18    licensed trial lawyers has and will continue to have devastating consequences for Mr. Gabriel

19    and any other unwitting party to an alleged claim of implied or unregistered domestic

20    partnership with real property in Oregon.  Among other things, disproving such an allegation

21    requires tremendous expense, time, resources, and outrageous violations of personal privacy.

22

23        8.      Specifically, Mr. Olsen through his attorney has stated that his goals are to: a)

24    liquidate Mr. Gabriel's properties; b) evict Mr. Gabriel from his Montana home; c) swirl

25    together the parties' previous real property contributions, inputs, labor, investments and

26    incurred debts for purposes of 'dissolution'; d) nullify Mr. Gabriel's property management

27    agreement with Zurc Capital, LLC, which affords Mr. Gabriel limited vacation rental income

28    while he is traveling for work; and e) place Mr. Olsen in sole custody of two jointly owned

3        COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 37 p. 003

properties while arranging their sale, including Mr. Gabriel's Montana residence; and f) divide the proceeds of all liquidated assets unequally and to the financial advantage of Mr. Olsen, which effectively would result in a massive wealth and balance sheet transfer from Mr. Gabriel to Mr. Olsen.

9.    Parties such as Mr. Gabriel have had and will continue to have to shoulder the hardship of disruptive and expensive travel to attend ongoing court proceedings in a jurisdiction (Multnomah County, Oregon) where he does not reside, often at the expense of time otherwise spent at work and doing otherwise productive things, and often at great risk and danger (e.g., the drive from Flathead County, Montana to Portland, Oregon is 10.5 hours each way, with icy mountain passes in between).

10.    The State of Oregon's abuse of this controversial case law through its judicial division, the Oregon Judicial Department – acting through its circuit courts and therefore under the color of law – not only gravely threatens the financial well-being of Plaintiff Mr. Gabriel; it is also unconstitutional.  The construct of 'unregistered domestic partnership' in which one party (Mr. Gabriel) is unwittingly and forcibly conscripted into a *de facto* marital or domestic partnership contract in a state (Oregon) in which he does not reside and without his consent violates the Due Process Clause of the Fourteenth Amendment to the US Constitution, by depriving Mr. Gabriel his fundamental right to make decisions concerning his life, his future, his property and his residency.  In other words, the Due Process Clause of the Fourteenth Amendment gives all adult US citizens the "right not to marry"[2] via substantive due process, or ***not*** to otherwise be conscripted into a related construct (i.e., 'domestic partnership'), foiling any clever workarounds that may have been or may soon be invented by radical attorneys – with the assistance of activist judges – in creative jurisdictions such as Oregon. (Emphasis added.)

---

[2] Kaiponanea T. Matsumura, *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016).  Available at: https://ir.lawnet.fordham.edu/flr/vol84/iss4/11

Exhibit 37 p. 004

**PARTIES**

11.     Plaintiff, Ryan Dean Gabriel (hereinafter referred to as 'Mr. Gabriel') at all times relevant hereto, is an individual residing at 2000 Blacktail Road, Lakeside, Montana 59922.

12.     Defendant, the State of Oregon (the "State"), acting through its judicial division, the Oregon Judicial Department, is subject to the personal jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(2)(A) and (B).  At all times relevant hereto, the State and its courts are/were acting under color of law.

13.     Defendant, Tina Kotek, is Governor of the State of Oregon, and is ultimately responsible for enforcing *'Beal v. Beal'* and ORS 106.

14.     Defendant, Ellen Rosembaum, is the Attorney General of the State of Oregon and is responsible for enforcing *'Beal v. Beal',* its case law progeny, and ORS 106.

15.     Defendant, Meagan Aileen Flynn, is being named in her capacity as Chief Justice of the Oregon Judicial Department, and is ultimately responsible for upholding *'Beal v. Beal'*.

16.     A third party, Zurc Capital, LLC (hereinafter referred to as 'Zurc') at all times relevant hereto, is a duly formed limited liability corporation of the State of Wyoming, located at 20 N. Gould Street, Suite N, Sheridan, Wyoming 82801.

**JURISDICTION AND VENUE**

17.     This action arises under the U.S. Constitution, 42 U.S.C. § 1983.

18.     This Court has subject matter jurisdiction pursuant to Article III of the U.S. Constitution and 28 U.S.C. §§ 1331, because this case arises under the Fourteenth Amendment to the United States Constitution and because Plaintiff Mr. Gabriel seeks redress of his civil rights under 28 U.S.C. § 1343.

19.     This Court is empowered by 28 U.S.C. §§ 2201 and 2202 to grant declaratory as well as other forms of relief, including permanent injunctive relief, necessary to remedy the alleged constitutional violations.

Exhibit 37 p. 005

20.    This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

21.    Venue of this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims have and continue to occur in this district and Defendant is the State of Oregon.  Assignment to the Portland Division is proper because Defendant is substantially located in Multnomah County among other counties in Oregon.

## FACTUAL BACKGROUND AND ARGUMENTS

### A.    The Right Not to Marry

22.    In *'Obergefell v. Hodges'*[3] the Court held that "the right to marry is protected by the Constitution" under the Due Process Clause. In its ruling, the majority gave four reasons for this: (1) marriage is "inherent in personal autonomy", (2) marriage is a "union unlike any other in its importance to" the parties, (3) the right to marry connects to the right to make decisions about family, procreation, and childrearing, and (4) marriage is a "keystone of our social order".

23.    In the United States, many legal scholars and authorities subscribe to the notion that the U.S. Constitution enshrines certain fundamental rights that arise by its express terms or through implication. Today, the idea of fundamental rights is enforced through Section 1 of the Fourteenth Amendment of the Constitution (*See* U.S. Const. amend. XIV, § 1), which reads:

> "*All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*"

24.    The Supreme Court has contributed to this federalization of domestic relations laws by "constitutionalizing" family law. It has repeatedly used the U.S. Constitution, in particular the Fourteenth Amendment, to extend constitutional privacy protections to increasing

---

[3] *Obergefell v. Hodges*, 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)

Exhibit 37 p. 006

numbers of persons and to invalidate state laws in areas of law previously thought to be the exclusive province of state legislatures and state courts.

25.    Furthermore, starting with '*Shelley v. Kraemer*', 334 U.S. 1, 13 (1948), Federal courts have clarified that State actions of a particular character are prohibited. While individual invasion of individual rights is not the subject-matter of the Fourteenth Amendment, it has a deeper and broader scope in that it nullifies and makes void all State legislation, and State action of every kind, including precedent case law, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws.

26.    The U.S. Supreme Court has interpreted the Constitution to recognize the existence of several fundamental rights that were not expressly stated, including an individual's right to marry. As eloquently argued by Kaiponanea T. Matsumura in *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016), "State actions that compel marriage can be seen as falling on a spectrum from minimal interventions, like creating legal incentives for people to marry (for example, by providing favorable inheritance, tax, evidence, and tort rules to married couples), to maximal ones (like requiring marriage between unwilling participants). These actions differ both in terms of the degree of coercion and the nature of state intervention."

27.    Matsumura continues, "Depending on which state actions the right not to marry would prevent, that right can also be understood as falling along a spectrum. For example, the recent framing of the right to marry in terms of "personal choice" and "individual autonomy" (*Obergefell*, 135 S. Ct. at 2597, 2599) leaves little doubt that the Fourteenth Amendment would recognize, at the very least, some right not to marry—it is unlikely that the state could pair off unmarried strangers and deem them legally married over their objection."

28.    Finally, Matsumura writes, "If the right not to marry is thought of as freedom from state-imposed marriage, the autonomy interests become symmetrical with the interests

Exhibit 37 p. 007

protected by the right to marry. Choosing to marry only takes on meaning because of the freedom to choose not to marry. Although the state may prefer one choice over the other, the choice in either direction has the same valence from the perspective of self-definition and autonomy."

29.    Under Oregon statutory law, marriage and domestic partnerships are treated identically for the purposes of dissolution (*See* Oregon Revised Statutes, "ORS" Chapter 107 – '*Marital Dissolution, etc.*'), and also as evidenced by the repeated invocation of ORS Chapter 107 by the attorney for Mr. Olsen, Mr. Nelson, in his *'Summons'* and throughout his originally served lawsuit on March 22, 2022.

30.    In *Zablocki v. Redhail*, 434 U.S. 374, 386 (1978), the court noted the importance of "the decision to enter the relationship that is the foundation of the family in our society"). Thus, the right not to marry (or in the instant case, not to be involuntarily conscripted into an Oregon domestic partnership) is justified by an additional, related value.   In its purest form, the right would entail freedom from state interference in "matters of family life" that are protected by the Due Process Clause.  In safeguarding a range of related "intimate and personal" choices, the Court has noted that "[b]eliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State." This concept of noninterference characterizes the privacy rights recognized under the Due Process Clause.[4]    While the Obergefell majority's theory of autonomy and identity envisions the right to marry moving in the direction of a positive right, a negative right not to marry would still rest on more solid

---

[4] *See* Cass R. Sunstein, *'The Right to Marry'*, 26 CARDOZO L. REV. 2081, 2089–94 (2005); note 20, at 2094 ("For the ordinary privacy rights with which marriage is associated, the Constitution requires governmental noninterference; it does not require the government to provide money, institutional arrangements, or anything else.")

Exhibit 37 p. 008

conceptual ground."[5]  All of these arguments apply to some degree or another to the right to enter into a domestic partnership subject to any state's laws, and inversely the right not to.

**B.**    **State Responses to *'Obergfell'***

31.    Per Matsumura, "Despite their differences, nonmarital relationships—from municipal registries, to state employment benefits, to state alternatives to marriage—all exist in what Professor Douglas NeJaime has called a "dialogical relationship" with marriage[6]; these statuses arose in the shadow of, in imitation of, and sometimes in opposition to, the institution of marriage.[7] The arrival of nationwide marriage equality therefore calls into question their reasons for being and leaves their future existence in jeopardy." Thus, in this instant lawsuit, Plaintiff Mr. Gabriel hereby calls into question the reason for Oregon's *'Beal v. Beal'* and its progeny.

32.    Matsumura continues, "Many jurisdictions have already phased out existing nonmarital statuses like domestic partnerships and civil unions or are moving in that direction.[8] These jurisdictions have not only closed the statuses to future registrants, but have eliminated them altogether." Thus, the reasoning behind the original decision in *'Beal v. Beal'* and subsequent cases in Oregon becomes impossibly thin, post-*Obergefell*, and cannot now withstand a confrontation with the Due Process Clause of the Fourteenth Amendment.

---

[5] *See* Matsumura, *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016) notes 127–30 and accompanying text. (concluding that the right to marry protects equal access to whatever rights a state elects to associate with marriage, rather than a positive right to marriage). Available at: https://ir.lawnet.fordham.edu/flr/vol84/iss4/11
[6] Douglas NeJaime, *'Before Marriage: The Unexplored History of Nonmarital Recognition and Its Relationship to Marriage'*, 102 CAL. L. REV. 87, 111 (2014).
[7] Melissa Murray, *'Paradigms Lost: How Domestic Partnership Went from Innovation to Injury'*, 37 N.Y.U. REV. L. & SOC. CHANGE 291, 294–96 (2013).
[8] *See* generally WASH. REV. CODE § 26.60.010 (2014). *See also* 2012 Wash. Sess. Laws 203 ("[A]ny state registered domestic partnership in which the parties are the same sex, and neither party is sixty-two years of age or older, that has not been dissolved or converted into a marriage by the parties by June 30, 2014, is automatically merged into a marriage and is deemed a marriage as of June 30, 2014." *See also* CONN. GEN. STAT. § 46b-38rr (2009) (converting existing civil unions to marriages after October 1, 2010); *see also* 'Act Implementing the Guarantee of Equal Protection', 2009 Conn. Acts No. 9-13 § 12(a). *See also* DEL. CODE ANN. tit. 13, § 218 (2013); see also '*Civil Marriage Equality and Religious Freedom Act of 2013*', 79 Del. Laws ch. 19, § 6 (2013). *See also* N.H. REV. STAT. ANN. § 457:46 (2010).

9    COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 37 p. 009

C.    Liberty, Identity, Privacy, Dignity, Consent and Personal Autonomy

33.    The liberty and personal autonomy arguments surrounding marriage and legal domestic partnerships reached their zenith in the Court's latest discussion of the right to marry in *'Obergefell'*.  Justice Kennedy's majority opinion starts from the lofty premise that the "liberty" protected by the Fourteenth Amendment extends to "personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." (*'Obergefell v. Hodges'*, 135 S. Ct. 2584, 2597 (2015).  Several principles explain why the right to marry falls within this concept of liberty.  First, the choices "whether and whom to marry" are "among life's momentous acts of self-definition." (*Id.* at 2599 (quoting *'Goodridge v. Dep't of Pub. Health'*, 798 N.E.2d 941, 955 (Mass. 2003)).  Thus, because these decisions are "inherent in the concept of individual autonomy"—and, indeed, they "shape an individual's destiny"—they are constitutionally protected. (*Id.*)

34.    In *'Obergfell'*, the Court tells us that "by the time of the Nation's founding [marriage] was understood to be a voluntary contract." *(Id.)*

35.    The same is true of domestic partnerships in Oregon.  Under Oregon statutory law governing domestic partnerships, Oregon Revised Statutes (hereafter "ORS") Chapter 106, which spells out Oregon's statutory law governing the establishment of domestic partnerships, in particular 106.325 (5) (d):

> *"(5) On the Declaration of Domestic Partnership, each individual who wants to become a partner in a domestic partnership shall:*
>
> *(...) (d) State that the individual **consents** to the jurisdiction of the circuit courts of Oregon for the purpose of an action to obtain a judgment of dissolution or annulment of the domestic partnership or for legal separation of the partners in a domestic partnership, or for any other proceeding related to the partners' rights and obligations, even if one or both partners cease to reside in, or to maintain a domicile in, this state; (...)"*

Exhibit 37 p. 010

36.    What is remarkable about this statute is that Oregon law makes it abundantly clear that *consent* is required to enter into a domestic partnership in Oregon, and further suggests that residency is required (i.e., "*cease(s) to reside in* [Oregon]"). (Emphasis added.)

37.    ORS 106.315 ('Prohibited and void domestic partnerships') also states: "2. When either party to a domestic partnership is incapable of making the civil contract or *consenting to the contract* for want of legal age *or sufficient understanding*, or *when the consent of either party is obtained by force or fraud*, the domestic partnership is void from the time it is so declared by a judgement of a court having jurisdiction of the domestic partnership. [2007 c.99 §4; 2009 c.561 §2; 2015 c.629 §10]." (Emphasis added.)  Surely this statute, by extension, would apply to the period before the court's ruling if such a contract was "created" by fraud and without the unwitting party's consent and understanding.

**D.    Conscriptive Approaches to Cohabitant Obligations; Fraud; Uncertainty**

38.    In *'Is Consent Necessary? An Evaluation of the Emerging Law of Cohabitant Obligation*[9], UCLA legal scholar Marsha Garrison investigates the extent to which adoption of a conscriptive approach to cohabitant obligation would "mar the symmetry of the legal structure" and examines those "considerations of history or custom or policy or justice" that might justify an asymmetrical law of family obligation.  Garrison explains why "our law has relied on commitment as a determinant of marital obligation and evaluates possible justifications for the conscriptive approach", and concludes that "those justifications are clearly inadequate to support conscriptive rules for cohabitants who do not have common children and that, while the case of cohabitants with common children is more complex, conscriptive rules would almost certainly work more harm than good even for this limited group."

39.    Garrison continues, "The contrasting relational perspectives of cohabitants and married couples emerge in many ways, but attitudes toward money are particularly revealing.

---

[9] 52 UCLA L. Rev. 815 (2005)

Exhibit 37 p. 011

Blumstein and Schwartz, who conducted a pioneering survey of American couples, analyzed responses to a range of questions on sharing and concluded that "married couples unconsciously assume a commingling of money and... cohabitors assume separate finances."[10].

40.     Garrison then poses the pivotal question, *"Does It Make More Sense to Require Cohabiting Couples to Contract Out or Contract In?"* by devoting an entire chapter to the topic, writing, "The evidence on equivalence establishes that it would be grossly unfair to treat all or even most cases of cohabitation like marriage: despite a small number of marriage-like relationships, cohabitants typically do not see their relationships as marital and do not behave like married couples;" and further, and in particular:

> *"The decline of common law marriage reflects the sad fact that litigation based determination of marital commitment "leads to fraud and uncertainty in the most important of human relationships.[11] Unsurprisingly, more complex formulations of the requirements for a common law marriage produce more fraud and uncertainty than simpler ones. Even a five-factor requirement list led appellate Judge Jackson of Utah to expostulate that, "[in litigation[,] each element becomes a source of dispute." Judge Jackson urged "a simpler scheme with fewer elements" if the legislature "wants to keep some form of common-law marriage,"[12] but his clear preference was abolition of the doctrine outright: "Most American states have already experimented with this doctrine. Based on their experience, all but ten have repealed common-law marriage. Utah should not recycle this great experiment."[13]*

---

[10] *See* PHILIP BLUMSTEIN & PEPPER SCHWARTZ, *'American Couples: Money, Work, Sex'* (1983), 98, at 98.
[11] *See* HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES 48 (2d ed. 1987), note 22, at 59. *See also* Cynthia Grant Bowman, *'A Feminist Proposal to Bring Back Common Law Marriage'*, 75 OR. L.REV. 709, 731-50 (1996). Bowman reviewed historical data and concluded that the abolition of common law marriage reflected the elimination of the "frontier conditions" rationale for informal marriage; fears of fraud in the transmission of property; a desire to protect marriage and the family against alternative forms of sexual unions; racism and eugenics; the movement to maintain vital statistics and enforce various health-related requirements for marriage through the licensing process; and administrative and judicial efficiency.
[12] *'Kelley v. Kelley'*, 9 P.3d 171, 184 (Utah Ct. App. 2000) (Jackson, J., dissenting).
[13] *Id.* at 185 (Jackson, J. dissenting)

Exhibit 37 p. 012

41.     In the immediate, pending Oregon domestic partnership dispute between Mr. Gabriel and Mr. Olsen, Mr. Nelson (attorney for Mr. Olsen) hinges his lawsuit on the pivotal claims, promoted heavily in Mr. Olsen's various filings in Multnomah County Circuit Court (State of Oregon) Case No. 22DR04942, including and in particular *'Petitioner's Response to Defendant's Motions to Dismiss'* that "the parties spent years together representing themselves as a marital couple … to the world and in acquiring property jointly", arguing that the dissolution of the alleged domestic partnership is "no different than any other dissolution of marriage."

42.     On this point, Garrison opines, "The common law marriage "experiment" demands factual inquiry into only two issues, whether there was a present agreement to be married and whether the couple publicly held themselves out as married. If these two facts are so hard to determine that the potential for fraud and uncertainty outweighs the benefit of the doctrine, then one must assume that the "anything relevant to life as a couple" approach of the *'De Facto Relationships Act of New Zealand'*[14] or 'American Legal Institute Principles'[15] (as examples) would produce even more ***fraud and uncertainty***, with even less offsetting benefit." (Emphasis added).

43.     With respect to Garrison's above-referenced point that litigation-based determination of marital or domestic partnership commitment "leads to fraud and uncertainty", it is important to note that if an Oregon court were to decide that Mr. Olsen and Mr. Gabriel were in a domestic partnership subject to dissolution under Oregon law, then Mr. Olsen in particular would be potentially found guilty of committing fraud on multiple counts by his

---

[14] *'Property (Relationships) Amendment Act, 2001'* (N.Z), available at http:///www.legislation.govt.nl. For descriptions of the legislation and its development, *see* Bill Atkin, The Challenge of Unmarried Cohabitation-The New Zealand Response, 37 FAM. L.Q. 303 (2003); Virginia Grainer, *'What's Yours Is Mine: Reform of the Property Division Regime for Unmarried Couples in New Zealand'*, 11 PAC. RIM L. & POL'Y J. 285 (2002).
[15] AM. LAW INST., PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS ch. 6 (2002).

Exhibit 37 p. 013

1  lender SNMC, along with all governing authorities with relevant statutes defining mortgage

2  fraud.

3      44.    Per federal mortgage lending regulations guided by FinCEN and as enforced by

4
   FERA (Fraud Enforcement and Recovery Act of 2009), so too could be initiated criminal
5
   Department of Justice (hereinafter "DOJ"), Federal Bureau of Investigation (hereinafter "FBI"),
6
7  Federal Trade Commission (hereinafter "FTC"), Department of Housing and Urban

8  Development (hereinafter "HUD") and Securities and Exchange Commission ("hereinafter

9  "SEC") probes into Mr. Olsen's written stated denial of the existence of any domestic

10 partnership to his mortgage lender, SNMC, during SNMC's application, underwriting, closing

11
   and title recording phase – a lender which then sold the mortgage loan to PNC Bank ("PNC") –
12
   statements made all while Mr. Olsen conversely sues Plaintiff Mr. Gabriel using directly
13
14 contradictory claims.

15      **E.    Federal Court Venue, Subject Matter Jurisdiction**

16      45.    Beginning with the Warren Court in the mid 1960s, Supreme Court decisions

17 have affected nearly every area of family law, transforming what had been seen as ordinary

18
   state-regulated family issues—regulation of marriage, criminal laws on contraception, etc.—
19
   into constitutional issues of equality, privacy, and federalism. Over 100 Supreme Court cases
20
21 have dealt with such issues as establishing and terminating parental status; child abuse and

22 neglect; marriage; jurisdiction for divorce, alimony, division of property, child custody, and

23 child support; family property rights such as homestead, pensions, and insurance proceeds;

24 family living arrangements; child custody and visitation; and child rearing. The Supreme Court

25 has set the framework for examining domicile, jurisdiction, and full faith and credit issues for

26
   recognizing sister state divorce decrees.
27
       46.    As argued previously, starting with *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948),
28
   Federal courts have clarified that State actions of a particular character is prohibited: "While

Exhibit 37 p. 014

1  individual invasion of individual rights is not the subject-matter of the Fourteenth Amendment,

2  it has a deeper and broader scope in that it nullifies and makes void all State legislation, and

3  State action of every kind, including precedent case law, which impairs the privileges and

4  immunities of citizens of the United States, or which injures them in life, liberty or property

5  without due process of law, or which denies to any of them the equal protection of the laws."

6

7  47.    This ongoing constitutionalization of family law is likely to continue because the

8  Supreme Court appears willing to recognize new rights protected by substantive due process. In

9  addition, the protection is not limited to traditional families. As families become even more

10  diverse and problems more complex, the Supreme Court (hereinafter "SCOTUS") is likely to be

11  the final voice, although lower Federal courts are equally proper venues to hear cases that are

12  not challenged all the way up to SCOTUS, or which are unlikely to be taken up by SCOTUS.

13

14  **F.    Implied Intent; Abolition of Common Law Marriage**

15  48.    Here it is important to cite among other national trends the effective abolition of

16  common law marriage via such landmark cases as *PNC Bank Corp. v. W.C.A.B.* (Stamos), 831

17  A.2d 1269 (Pa. Commw. Ct. 2003) and *Stone v. Thompson*, 428 S.C. 79, 82, 833 S. E.2d 266,

18  267 (July 24, 2019)[16].    Taken together, these recent rulings and others have effectively

19

20  [16] "We find the Pennsylvania court's reasoning and other considerations sufficiently persuasive to adopt a bright-line rule requiring those who wish to be married in South Carolina to obtain a lawful license. Our law contains

21  similar provisions regarding child support, inheritance, and the ceremonial marriage process. *See* S.C. Code Ann. §§ 20-1-210 to -240 (1976); §§ 62-2-101 to -109 (1976 & Supp. 2018); § 63-5-20 (1976 & Supp. 2018). (…) The

22  current case is emblematic of this shift, as the parties' community of friends was wholly unconcerned with their marital status, and indeed several of their witnesses were in similar relationships. Meanwhile, courts struggle

23  mightily to determine if and when parties expressed the requisite intent to be married, which is entirely understandable given its subjective and circumstantial nature. The solemn institution of marriage is thereby reduced

24  to a guessing game with significant ramifications for the individuals involved, as well as any third party dealing with them." *(...)*

25  "Critically, non-marital cohabitation is exceedingly common and continues to increase among Americans of all age groups. The right to marry is a fundamental constitutional right, *Obergefell v. Hodges* , — U.S. —, 135 S.

26  Ct. 2584, 2604-05, 192 L.Ed.2d 609 (2015), which leads us to believe the right to remain unmarried is equally weighty, particularly when combined with our admonitions that a person cannot enter into such a union

27  accidentally or unwittingly, *Callen v. Callen* , 365 S.C. 618, 626, 620 S.E.2d 59, 63 (2005). Further, we must agree with the many observers who have noted that common-law marriage requirements are a mystery to

28  most. The present case is again illustrative. None of the multiple witnesses who were asked understood what was required to constitute a common-law marriage, despite the fact that, as mentioned, several were involved in lengthy cohabitating relationships themselves. Moreover, two of such partners testified in complete opposition to one another, with one reporting they were common-law married, and the other stating emphatically they were not.

Exhibit 37 p. 015

1  abolished common law marriage nationwide, including, as argued in this instant case, such

2  related constructs as implied domestic partnership – particularly following the '*Obergfell v.*

3  *Hodges'* SCOTUS decision.   The legal reasoning of the Courts has consistently been that,

4  following '*Obergfell'* and other statutory and case law revisions governing common law

5

6  marriage, there is no basis for the Courts to determine implied ***intent*** of the parties when the

7  avenues for filing for marriage or domestic partnership are readily, easily and cheaply available

8  – and without impediment, in any state – to anyone who intends such an arrangement.

9  (Emphasis added.)

10        **G.        Federal Court Intervention and the '*Younger'* Abstention.**

11        49.   The following paragraphs are lifted from Hon. Judge Dana L. Christensen's

12  thoughtful opinion supporting a Federal court Order dated January 26, 2024, in a related, now-

13  dismissed, somewhat analogous lawsuit brought by Plaintiff Mr. Gabriel against Mr. Olsen as

14  an individual.   *See* Case No. CV 23-142-M-DLC (US District Court, Montana – Missoula

15

16  Division): "Younger stands for the proposition that federal courts should avoid interfering with

17  ongoing state criminal, civil, and administrative proceedings." *See* Arevalo v. Hennessy, 882

18  F.3d 763, 765 (9th Cir. 2018) ("Younger cautions against federal interference with ongoing

19  state criminal, civil, and administrative proceedings.").   Younger abstention in civil cases "is

20  appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal

21

22  enforcement actions or involve a state's interest in enforcing the orders and judgments of its

23  courts, (3) implicate an important state interest, and (4) allow litigants to raise federal

24  challenges." *See* Cook v. Harding, 879 F.3d 1035, 1039 (9th Cir. 2018). Where these factors are

25  met, Younger provides an exception to this Court's typical obligation to exercise jurisdiction

26

27

28  This further persuades us to reject a mechanism which imposes marital bonds upon an ever-growing number of
    people who do not even understand its triggers." *Stone v. Thompson*, 428 S.C. 79, 85-86 (S.C. 2019)

Exhibit 37 p. 016

1    where it exists. *See* Arevalo, 882 F.3d at 765. The Court may raise the abstention doctrine sua

2    sponte. *See* H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000).

3        50.    Again quoting Hon. Judge Dana Christensen: "Applying the above factors, the

4    Younger abstention ***does not apply*** (Emphasis added.)  The first, third, and fourth factors are all

5    met in this case.  The Oregon state court dissolution proceedings are ongoing.  Oregon has a

6    strong interest in matters of family relations—a "traditional area of state concern," over which

7    the state "has a vital interest in protecting the authority of the judicial system." *See* H.C. ex rel.

8    Gordon, 203 F.3d at 613.   And Plaintiff could raise the same challenges to the domestic

9    partnership proceedings in the course of the state court matter. *See* Martinez v. California, 444

10   U.S. 277, 283 n.7 (1980) (42 U.S.C. § 1983 action brought in state court); Cook, 879 F.3d at

11   1038 (same).  Regarding the second factor, the Ninth Circuit has made clear that "Younger

12   abstention is improper in civil cases outside of . . . two limited categories" – quasicriminal

13

14   enforcement actions or actions involving a state's interest in enforcing the orders and judgments

15   of its courts – "regardless of the subject matter or the importance of the state interest." *Id.* at

16   1039. The Ninth Circuit has further explained that "federal courts cannot ignore [these] strict

17   limitations on Younger abstention simply because states have an undeniable interest in family

18   law." *Id.* at 1040.

19

20       51.    *(Continued from Judge Christensen's Order):* "The Oregon state court action is

21   not quasi-criminal; however, the question of whether the case implicates Oregon's interest in

22   enforcing the orders and judgments of its courts is a closer question. "The Supreme Court and

23   [Ninth Circuit] have held that this [second category] is geared to ensuring that federal courts do

24   not interfere in the procedures by which states administer their judicial system and ensure

25   compliance with their judgments." *See* Rynearson v. Ferguson, 903 F.3d 920, 926 (9th Cir.

26   2018). The Ninth Circuit has repeatedly cautioned against applying Younger abstention except

27

28   in "extraordinary and narrow" circumstances. *See*, e.g., Nationwide Biweekly Admin., Inc. v.

Exhibit 37 p. 017

1   Owen, 873 F.3d 716, 727 (9th Cir. 2017). For example, in Cook, the Ninth Circuit reversed the

2   district court's application of Younger abstention in the context of constitutional challenges to

3   Cal. Fam. Code § 7962 raised simultaneously in both state and federal court proceedings. 879

4
    F.3d at 1038. The court reasoned that "an argument regarding the state courts' power to apply
5
    its laws in subsequent proceedings and the state's interest in its interrelated family laws . . . do[]
6
7   not relate to the state courts' ability to enforce compliance with judgments already made." *Id.* at

8   1041. Here, the Oregon action does not relate to the state courts' ability to enforce compliance

9   with judgments already made and Plaintiff does not challenge "the processes by which the State

10  compels compliance" with the judgments of its courts. *See* Cook, 879 F.3d at 1041 (emphasis

11  added); *see also* Sloatman v. Housewright, No. 2:21-cv-08235-WLH (MAA), 2023 WL
12
    8852375, at *6 (C.D. Cal. Nov. 17, 2023) (concluding that a "divorce action does not fall into
13
14  one of the two "exceptional categories" of civil cases warranting Younger abstention"").

15  Accordingly, the Court concludes that Younger's abstention doctrine does not apply in this

16  matter."

17                                **FIRST CLAIM FOR RELIEF**

18        **Defendant's enforcement of domestic partnership case law in Oregon**
19          **violates the Plaintiff's substantive due process rights, rights of liberty,**
            **dignity, privacy and autonomy guaranteed by the Fourteenth Amendment**
20
21        52.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs
22  1 through 51 as if fully set forth herein.

23        53.    The Due Process Clause of the Fourteenth Amendment to the United States

24  Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that "no State shall make or

25  enforce any law which shall abridge the privileges or immunities of citizens of the United

26  States; nor shall any State deprive any person of life, liberty, or property, without due process of
27
    law; nor deny to any person within its jurisdiction the equal protection of the laws."
28

        18     COMPLAINT AND CLAIM / PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Exhibit 37 p. 018

54.     As previously articulated by Justice Kennedy's majority opinion in *'Obergefell'*, "liberty" as protected by the Fourteenth Amendment extends to "personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs."

55.     As established herein, SCOTUS further held that several principles explain why the right to marry falls within this concept of liberty (*'Obergefell'*, 135 S. Ct. at 2597, 2599). First, the choices "whether and whom to marry" are "among life's momentous acts of self-definition."     Thus, because these decisions are "inherent in the concept of individual autonomy"—and, indeed, they "shape an individual's destiny"—they are constitutionally protected.

56.     As argued herein, the right not to marry or enter into a legal domestic partnership is justified by an additional, related value. In its purest form, the right would entail freedom from state interference in "matters of family life" that are protected by the Due Process Clause.[17]

57.     In safeguarding a range of related "intimate and personal" choices, the Court majority in *'Obergefell'* has noted that "[b]eliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."     This concept of noninterference characterizes the privacy rights recognized under the Fourteenth Amendment.[18]

58.     All of these arguments apply to some degree or another to the right to enter into a domestic partnership subject to any state's laws, and inversely the right not to.

59.     In *'Obergfell'*, the Court tells us that "by the time of the Nation's founding [marriage] was understood to be a voluntary contract".     The same is true of domestic

---

[17] *See 'Zablocki v. Redhail'*, 434 U.S. 374, 386 (1978); see also *id.* (noting the importance of "the decision to enter the relationship that is the foundation of the family in our society").

[18] *See* Cass R. Sunstein, *'The Right to Marry'*, 26 CARDOZO L. REV. 2081, 2089–94 (2005); note 20, at 2094 ("For the ordinary privacy rights with which marriage is associated, the Constitution requires governmental noninterference; it does not require the government to provide money, institutional arrangements, or anything else.")

Exhibit 37 p. 019

1   partnerships in Oregon.  The Oregon trial court's ruling under *'Beal v. Beal'* would forcibly

2   conscript Plaintiff Mr. Gabriel into a domestic partnership resembling a *de facto* marriage

3   starting in 2011, against his will and without his prior knowledge, thus depriving Mr. Gabriel

4   of basic human agency.

5

6   60.    The State of Oregon, by refusing to dismiss Mr. Olsen's domestic partnership

7   claims under the overreaching *'Beal v. Beal'* precedent and its progeny, thereby underwrites

8   Mr. Olsen's abuse of controversial Oregon case law and precedent in the process of violating

9   Plaintiff Mr. Gabriel's substantive due process rights under the Fourteenth Amendment[19].

10   61.    Under Oregon Statutory Law (hereinafter, "ORS") governing domestic

11   partnerships, ORS Chapter 106, which lays out statutory law governing the establishment of

12   domestic partnerships, in particular 106.325 (5) (d), which requires *"that the individual*

13   *consents to the jurisdiction of the circuit courts of Oregon for the purpose of an action to*

14   *obtain a judgment of dissolution or annulment of the domestic partnership or for legal*

15   *separation of the partners in a domestic partnership, or for any other proceeding related to the*

16   *partners' rights and obligations, even if one or both partners cease to reside in, or to maintain*

17   *a domicile in, this state;"*  Oregon law makes it abundantly clear that *consent* is required to

18   enter into a domestic partnership in Oregon, and further suggests that residency is required

19   (i.e., *"cease(s) to reside in* [Oregon]"); Plaintiff Mr. Gabriel has never consented to this, and

20   there is no evidence of consent. (Emphasis added.)

21

22

23

24   [19] In footnote 4 of *U.S. v. Carolene Products, 304 U.S. 144 (1938)*, the Supreme Court indicated that substantive

25   due process would apply to: "rights enumerated in and derived from the first Eight Amendments to the
Constitution, the right to participate in the political process, such as the rights of voting, association, and free

26   speech, and the rights of 'discrete and insular minorities.'" Following *Carolene Products*, the U.S. Supreme Court
has determined that fundamental rights protected by substantive due process are those deeply rooted in U.S.

27   history and tradition, viewed in light of evolving social norms. These rights are not explicitly listed in the Bill of
Rights, but rather are the penumbra of certain amendments that refer to or assume the existence of such rights.

28   This has led the Supreme Court to find that personal and relational rights, as opposed to economic rights, are
fundamental and protected.

Exhibit 37 p. 020

62.    To the extent that the trial Court's Order runs afoul of ORS 106.315 ('Prohibited and void domestic partnerships'), this would preclude the Court from conscripting Mr. Gabriel into a domestic partnership against his will and without his knowledge.    ORS 106.315 states: "2.  When either party to a domestic partnership is incapable of making the civil contract or ***consenting to the contract*** for want of legal age ***or sufficient understanding***, or ***when the consent of either party is obtained by force or fraud***, the domestic partnership is void from the time it is so declared by a judgement of a court having jurisdiction of the domestic partnership. [2007 c.99 §4; 2009 c.561 §2; 2015 c.629 §10]."  Surely this statute, by extension, would apply to the period before the court's ruling if such a contract was "created" by fraud and without the unwitting party's consent and understanding. (Emphasis added.)

63.    Accordingly,  Plaintiff Mr. Gabriel is entitled to declaratory and injunctive relief.

64.    Without injunctive relief from the State of Oregon's unconstitutional domestic partnership case law (e.g., *'Beal v. Beal'*), Plaintiff will continue to suffer irreparable harm, undue burden and expense in the future, and a clear violation of his substantive due process rights under the Fourteenth Amendment of the United States Constitution.

### SECOND CLAIM FOR RELIEF

**Violation of the Contracts Clause, Art. I, section 10
of the United States Constitution as incorporated and made
applicable to states by the Fourteenth Amendment**

65.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 64 as if fully set forth herein.

66.    Plaintiffs' property management contract with Zurc Capital, LLC (hereinafter "Zurc Capital") and Zurc Capital's 'AirBNB' rental relationships with its tenants are controlled by contracts, including rental agreements (the "Contracts"), all of which are enforceable contracts within the meaning of Article I, section 10. 35. The Contracts obligate Zurc Capital's short-term vacation renters to pay lodging and other related expenses in exchange for the right

Exhibit 37 p. 021

to occupy portions of Plaintiffs' premises while he travels for business. The Contracts also provide for various means of enforcing that payment obligation, including the imposition of late fees and penalties and right to terminate the tenancy and recover possession of the premises.

67.     Oregon's misuse of its family law courts to ensnare real property and adjudicate real property disputes in territories outside of Oregon – specifically, Mr. Gabriel's residence in Montana, which is comprised of 6 acres and two autonomous cabins – substantially impairs Plaintiffs' contractual obligations with Zurc Capital, LLC, and by extension servicers such as 'AirBNB' (an e-commerce facilitation platform for vacation rentals) and thereby blocks, impairs or encumbers Mr. Gabriel's proper access to the revenue created by these contractual obligations.

68.     Further compounding pre-existing contractual matters, if an Oregon court were to conclude, even upon appeal, that Mr. Olsen and Mr. Gabriel were in a domestic partnership subject to dissolution under Oregon law, then Mr. Olsen (in particular) and also possibly Plaintiff Mr. Gabriel could be accused of committing mortgage fraud on multiple counts by his lender SNMC (Security National Mortgage Corporation), along with servicer PNC Bank, which purchased the loans from SNMC by relying on warranties made by SNMC and which contradict the fundamental, core claims supporting Mr. Olsen's domestic partnership lawsuit.

69.     Per federal mortgage lending regulations guided by FinCEN and as enforced by FERA (Fraud Enforcement and Recovery Act of 2009), so too could be initiated possible criminal Department of Justice (hereinafter "DOJ"), Federal Bureau of Investigation (hereinafter "FBI"), Federal Trade Commission (hereinafter "FTC"), Department of Housing and Urban Development (hereinafter "HUD") and Securities and Exchange Commission ("hereinafter "SEC") probes into Defendant Mr. Olsen's written stated denial of the existence of any domestic partnership to his mortgage lender, SNMC, during SNMC's application, underwriting, closing and title recording phase – a lender which then sold the mortgage loan to

Exhibit 37 p. 022

1   PNC Bank ("PNC") – statements made all while Mr. Olsen conversely sues Plaintiff Mr.
2   Gabriel using directly contradictory claims.

3      70.    Without injunctive relief from the State of Oregon's unconstitutional domestic
4
    partnership case law (e.g., *'Beal v. Beal'*), Plaintiff will continue to suffer irreparable harm in
5
    the future, and possibly even Mr. Olsen will incur irreparable harm inflicted upon him by his
6
7   own lawsuit, insofar as his claims are potentially criminally fraudulent and would invoke
8   criminal prosecution.

9      71.    The above violations of the United States Constitution give rise to both
10   declaratory and injunctive remedies under the Federal Civil Rights Act, 42 U.S.C. § 1983.

11     72.    Plaintiff Mr. Gabriel is entitled to a declaration from this Court that the *'Beal v.*
12
    *Beal'*, *etc.* case law precedents cited above and now invoked in Multnomah County Circuit
13
    Court Case No. 22DR04942 violate Article I, section 10, of the United States Constitution.
14

15     73.    Plaintiff Mr. Gabriel is entitled to an injunction directed to Defendant prohibiting
16   any enforcement or implementation of *'Beal v. Beal'* or any similar Oregon case law precedent
17   governing so-called 'unregistered domestic partnerships' in Oregon.

18     74.    Plaintiff Mr. Gabriel is entitled to recover his reasonable costs and attorney fees
19
    incurred in bringing this action pursuant to 42 U.S.C. § 1988.
20

21                            **PRAYER FOR RELIEF**
22      WHEREFORE, Plaintiff respectively prays that this Court:

23   A. Enter a judgment declaring that Defendant, the State of Oregon and its courts, has
24         overreached in its enablement of Mr. Olsen's Oregon domestic partnership lawsuit,
25         in particular that it:
26            i.   violates the Due Process Clause of the Fourteenth Amendment by infringing
27                 upon Plainiff's fundamental right to liberty, dignity, privacy, and personal
28                 autonomy, and is therefore void and unenforceable.

Exhibit 37 p. 023

1

2          ii. jeopardizes Plaintiff by potentially and needlessly implicating both the

3              Plaintiff but also primarily Mr. Olsen in potential criminal mortgage fraud,

              were an Oregon court to conclude after appeal that a domestic partnership

4

5              does exist in Oregon under *'Beal v. Beal'* and its progeny.

6    B. Issue preliminary and permanent injunctions enjoining Defendant, its courts, its legal

7       counsel and those in active concert or participation with the State from pursuing or

8       enforcing Mr. Olsen's marriage or domestic partnership claim, in any jurisdiction.

9    C. Waive the requirement for the posting of a bond of security for the entry of

10      temporary and preliminary relief;

11

12    D. Award Plaintiff his costs and expenses, including reasonable attorneys' fees,

13      pursuant to 42 U.S.C. U.S.C. § 1988 and all other applicable statutes and sources of

14      law; and

15    E. Grant such other relief as the Court deems just and proper.

16                               * * *

17    DATED this 26th Day of April, 2024.

18    Respectfully submitted,

19

20

21                  Plaintiff, *Pro Se* (signature)

22

23                  Ryan D. Gabriel
                    2000 Blacktail Rd. #1140

24                  Lakeside, MT 59922
                    Tel: (403) 606-5859 m.

25  Submitted by Ryan Dean Gabriel, *pro se*
    (206) 391-9886

26

27

28

Exhibit 37 p. 024

JS 44  (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| RYAN DEAN GABRIEL | STATE OF OREGON, et. al |

3:24-CV-754-JR

| **(b)** County of Residence of First Listed Plaintiff  **FLATHEAD** | County of Residence of First Listed Defendant  **MULTNOMAH** |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Pro Se; 2000 Blacktail Rd. $1140 | |
| Lakeside, MT 59922 | |

| II. **BASIS OF JURISDICTION** *(Place an "X" in One Box Only)* | III. **CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* |
|---|---|

*(For Diversity Cases Only)*

| II. BASIS OF JURISDICTION | | | | |
|---|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* | |

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | | 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | 820 Copyrights | 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal | | 830 Patent | 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| | ☐ 345 Marine Product Liability | | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | Relations | 861 HIA (1395ff) | 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | 862 Black Lung (923) | Exchange |
| | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| | | | | 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | 865 RSI (405(g)) | 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |
|---|---|---|---|---|---|---|

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. § 1983. |
|---|---|
| | Brief description of cause: COMPLAINT AND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF |

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | **DEMAND $** | CHECK YES only if demanded in complaint: |
|---|---|---|---|
| | | | **JURY DEMAND:**  ☐ Yes  ☒ No |

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE  Hon. Judge Patrick Henry | DOCKET NUMBER  Oregon Mult. Co. 22DR04942 |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 4/28/2024 | Ryan D. Gabriel, Pro Se |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

Exhibit 37 p. 025

Oregon Supreme Court and Oregon Court of Appeals

# Case View  Olsen and Gabriel

---

### OREGON COURT OF APPEALS

In the Matter of the Domestic Partnership of

Jesse Mark Olsen,
Petitioner-Respondent,

and

Ryan Dean Gabriel,
Respondent-Appellant.

CASE NUMBER
A184337

| | |
|---|---|
| CLASSIFICATION | Appeal - Civil - Domestic Relations |
| FILED DATE | 05/10/2024 11:39 AM |
| ORIGINATING COURT | Multnomah County Circuit Court 22DR04942 |

---

### PARTIES

Shows the first few parties on the case.

| | | |
|---|---|---|
| Ryan Dean Gabriel | Andrew Newsom | |
| APPELLANT | REPRESENTATION | |
| Ryan Dean Gabriel | Andrew Newsom | |
| APPELLANT | REPRESENTATION | |
| Jesse Mark Olsen | George Kelly | |
| RESPONDENT | REPRESENTATION | |

---

### FUTURE HEARINGS

*No future hearings were found.*

---

### DOCKET ENTRIES

| Filed Date | Type | Subtype | Description | Submitted By | View |
|---|---|---|---|---|---|
| 11/07/2024 1:36 PM | Motion for Extension of Time | File Opening Brief | File Opening Brief | Gabriel, Ryan Dean Gabriel, Ryan Dean | 📄 |

Exhibit 38 p. 001

| Filed Date | Type | Subtype | Description | Submitted By | View |
|---|---|---|---|---|---|
| 10/14/2024 10:40 AM | Order on Motion/Petition/Other | Allowing MOET | Allowing MOET | | 📄 |
| 10/11/2024 2:57 PM | Motion for Extension of Time | File Opening Brief | File Opening Brief | Gabriel, Ryan Dean | 📄 |
| 09/09/2024 3:52 PM | Order on Motion/Petition/Other | Allowing MOET | Allowing MOET | | 📄 |
| 09/09/2024 2:24 PM | Motion for Extension of Time | File Opening Brief | File Opening Brief | Gabriel, Ryan Dean | 📄 |
| 08/08/2024 8:38 AM | Record | Received - eTranscript | Received - eTranscript/ shared drive | Knittle, Elizabeth | 📄 |
| 07/30/2024 9:52 AM | Action | Transcript Deemed Settled | Transcript Deemed Settled | | 📄 |
| 07/15/2024 10:28 AM | Notice Received | Transcript - Proof of Filing | Transcript - Proof of Filing | Knittle, Elizabeth | 📄 |
| 07/10/2024 4:17 PM | Notice Received | Representation | Representation | Gabriel, Ryan Dean Gabriel, Ryan Dean | 📄 |
| 07/08/2024 3:12 PM | Order on Motion/Petition/Other | Allowing MOET | Allowing MOET | | 📄 |
| 06/25/2024 5:37 PM | Record | Received - File | shared drive (1489 pages) (17 pages) confidential shared drive (21 pages) (17 pages) | Trial Court Administrator, Multnomah County | |
| 06/25/2024 2:31 PM | Notice Received | Representation | Representation | Olsen, Jesse Mark | 📄 |
| 06/25/2024 10:13 AM | Order on Motion/Petition/Other | Denying | Denying Stay | | 📄 |
| 06/24/2024 3:16 PM | Order on Court's Own Motion | Reactivating Case | Reactivating Case | | 📄 |
| 06/24/2024 1:06 PM | Order on Motion/Petition/Other | Allowing MOET | Allowing MOET | | 📄 |
| 06/21/2024 3:25 PM | Record | Received - Exhibits | 1 exhibit envelope | Trial Court Administrator, | |

Exhibit 38 p. 002

| Filed Date | Type | Subtype | Description | Submitted By | View |
|---|---|---|---|---|---|
| | | | | Multnomah County | |
| 06/20/2024 4:24 PM | Record | Received - Exhibits | 2 exhibit boxes (3 binders); see case notes | | |
| 06/18/2024 1:44 PM | Motion | Stay Previous Judgment/Order | Stay Previous Judgment/Order | Gabriel, Ryan Dean | 📄 |
| 06/12/2024 2:56 PM | Notice Generated | Request for Record/Exhibits | Request for Record/Exhibits | | 📄 |
| 06/12/2024 2:47 PM | Motion for Extension of Time | File Transcript | File Transcript | Transcript Coordinator, Multnomah County | 📄 |
| 06/12/2024 2:45 PM | Notice Received | Transcriptionist/Reporter Assigned | Transcriptionist/Reporter Assigned | Transcript Coordinator, Multnomah County | 📄 |
| 05/29/2024 8:09 PM | Initiating Document | Notice of Appeal | Notice of Appeal | | 📄 |
| 05/21/2024 4:00 PM | Order on Court's Own Motion | Giving Trial Court Leave to Enter Judgment & Holding in Abeyance | Giving Trial Court Leave to Enter Judgment & Holding in Abeyance | | 📄 |
| 05/10/2024 11:39 AM | Initiating Document | Notice of Appeal | Notice of Appeal | | 📄 |
| | | | | | 1 to 24 of 24 |

## PARTIES

| Role | Name | Status | Representation |
|---|---|---|---|
| Appellant | Gabriel, Ryan Dean | Active | Newsom, Andrew |
| Appellant | Gabriel, Ryan Dean | Active | Newsom, Andrew |
| Respondent | Olsen, Jesse Mark | Active | Kelly, George |
| Judge | Henry, Patrick | Active | |
| TCA | Trial Court Administrator, Multnomah County | Active | |

Exhibit 38 p. 003

| Role | Name | Status | Representation |
|------|------|--------|---------------|
| Transcriber | Knittle, Elizabeth | Active | |
| Transcript Coordinator | Transcript Coordinator, Multnomah County | Active | |
| | | | 1 to 7 of 7 |

## HEARINGS

| Hearing Date | Location / Room | Type | Status | Assignment | Video Streaming Link |
|--------------|-----------------|------|--------|------------|---------------------|
| | | | No records were found. | | |

## TICKLERS

| Due Date | Type | Status | Docket Entry | Due From |
|----------|------|--------|--------------|----------|
| 07/02/2024 | Response/Objection | Satisfied | Motion - Stay Previous Judgment/Order | |
| 07/12/2024 | Records/Exhibits | Satisfied | Notice Generated - Request for Record/Exhibits | |
| 07/17/2024 | Records/Exhibits | Satisfied | Notice Generated - Request for Record/Exhibits | |
| 07/24/2024 | Transcript | Satisfied | Initiating Document - Notice of Appeal | Knittle, Elizabeth |
| 07/30/2024 | Deemed Settled | Satisfied | Notice Received - Transcript - Proof of Filing | |
| 08/20/2024 | eTranscript | Satisfied | Action - Transcript Deemed Settled | |
| 11/12/2024 | Opening Brief | Open | | |
| 11/21/2024 | Response/Objection | Open | | |
| | | | | 1 to 8 of 8 |

Exhibit 38 p. 004

22DR04942

**FILED**
07/02/2024
*Peg L. Allison*
CLERK

Flathead County District Court
State of Oregon STATE OF MONTANA
County of Multnomah
By: Rachael Parra

I certify that this is a true copy JF
of a document in the possession of the
court administrator for Multnomah County

6/28/2024 1.00

Dated:

Court Administrator for Multnomah County
or designee:

Kevin Dougherty



1

2

3

4

5    IN THE CIRCUIT COURT OF THE STATE OF OREGON

6    FOR THE COUNTY OF MULTNOMAH

7    Family Law Department

8  **JESSE MARK OLSEN,**              ) Case No. 22DR04942
                                      )          22CV10399
9       Petitioner,                   )
                                      ) **AMENDED GENERAL JUDGEMENT**
10      v.                            )
    **RYAN DEAN GABRIEL,**            )
11                                    )
        Respondent.                   )
12  _____    )

13

14      This matter having come on before the Honorable Patrick W. Henry, Judge of the above-

15  referenced Court for trial on January 26, 2024, and February 14, 2024, upon a Petition seeking a

16  dissolution of domestic partnership, Petitioner appearing in person with his attorney, Roscoe C.

17  Nelson, Jr., Respondent appearing and representing himself, the Court having heard testimony of

18  the parties and reviewed the evidence received makes the following findings:

19                                    1.

20      Parties were in a domestic partnership from 2011 through 2022. The domestic partnership

21  shall be dissolved.

22                                    2.

23      Parties acquired properties which shall be equally and equitably divided.

24  / / / / /

25      Therefore, it is hereby ORDERED AND ADJUDGED as follows:

26

Page 1 – **AMENDED GENERAL JUDGMENT**                    Nelson & Nelson
                                                         811 SW Naito Parkway, Suite 200
                                                         Portland, OR 97204 • (503) 222-1081
                                                         attorneys@roscoecnelson.com



EXHIBIT 15

Exhibit 39 p. 001

1       1.     Case No. 22CV10399 is dismissed and the domestic partnership is hereby

2            dissolved.

3       2.     With respect to the sale of the real properties, Mr. Olsen shall have final

4 decision-making authority over all aspects of the sale process, without any interference

5 from Mr. Gabriel who shall completely cooperate in the listing, marketing and selling of

6 the real properties (the "Portland property" being located at 5721 SW Salmon St., Portland,

7 OR 97221; and the "Montana property" being located at 2000 Blacktail Rd., Lakeside, MT

8 59922, Tax Assessor No. 980159 ). To support real estate showings to potential buyers and

9 all realtors, including but not limited to the listing agent shall have complete and

10 unobstructed access without any interference from Mr. Gabriel.

11       a.     Mr. Olsen (Petitioner) shall select the realtors to market both the properties

12            (5721 SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd.

13            Lakeside, MT, 59922, Tax Assessor No. 980159).

14       b.     Mr. Olsen (Petitioner) shall have rights to authority over all aspects,

15            including, but not limited to signing listings contracts, acceptance of offers,

16            and paperwork for closing with respect to the properties (5721 SW Salmon

17            St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, 59922, Tax

18            Assessor No. 980159).

19       c.     Both properties may be sold as soon as possible, including through a quick

20            sale.

21       d.     Both properties shall go on the market within 30 days after the entry of this

22            Judgment in this matter.

23       e.     The opinion of both parties shall be taken into account for the sale prices

24            for both of the properties (5721 SW Salmon St., Portland, OR 97221; and

25            2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

26

Page 2 – **AMENDED GENERAL JUDGMENT**

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 39 p. 002

1       f.      The opinion of both parties shall be taken into account for the acceptance

2                 of offers for both properties (5721 SW Salmon St., Portland, OR 97221; and

3                 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

4       g.      If an agreement regarding E and F above, cannot be reached within 3 days

5                 on either or both properties (5721 SW Salmon St., Portland, OR 97221; and

6                 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159), Mr.

7                 Olsen will have final decision-making rights.

8       h.      Realtors will have complete access to show properties, within 2 hours

9                 advance notice. Showings will occur between 9am and 8pm on all days.

10      i.      Mr. Gabriel (Respondent) is prohibited from interfering with the sale

11                process.

12      j.      Mr. Olsen (Petitioner) and Mr. Gabriel (Respondent) have equal (50/50)

13               responsibility for all necessary and essential home repairs related to the sale

14               of both properties, (5721 SW Salmon St., Portland, OR 97221; and 2000

15               Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159) including

16               any insurance deductibles and mortgage payments. If either party shall fail

17               to pay his equal (50/50) share the other party shall be entitled a credit to be

18               paid from the balance of the equity of the properties.

19      k.      Neither party shall injure, destroy, or lay waste to either real property (5721

20               SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT,

21               59922, Tax Assessor No. 980159) including out buildings, fences, signage

22               and any surrounding lot or acreage.

23   ////

24   ////

25   ////

26   ////

Page 3 – **AMENDED GENERAL JUDGMENT**

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 39 p. 003

1        1.    Violations of any conditions of this judgement shall be subject to attorney

2        fees, sanctions and costs.

Dated this _____ day of _____, 202___.

**6/21/2024 4:24:35 PM**

*Patrick W. Henry*
_____
Circuit Court Judge Patrick W. Henry

Respectfully submitted by:

<u>Attorney for Petitioner:</u>
Roscoe C. Nelson, Jr., OSB #732218
811 SW Naito Parkway, Suite 200
Portland, OR  97204
Telephone: (503) 222-1081
Fax:  (503) 222-6441
E-mail:  mail@roscoecnelson.com

<u>Petitioner:</u>
Jesse Mark Olsen
5721 SW Salmon Street
Portland, OR 97221
Jesse.m.olsen@gmail.com
(801)-710-2231

Page 4 – **AMENDED GENERAL JUDGMENT**

Exhibit 39 p. 004

IN THE COURT OF APPEALS OF THE STATE OF OREGON

In the Matter of the Domestic Partnership of

Jesse Mark Olsen,
Petitioner-Respondent,

and

Ryan Dean Gabriel,
Respondent-Appellant.

Multnomah County Circuit Court No. 22DR04942

Court of Appeals No. A184337

**ORDER DENYING MOTION FOR STAY**

Appellant, who appeals a general judgment of dissolution of domestic partnership, which, among other things, orders liquidation and sale of two properties, moves to stay enforcement of the judgment pending this appeal. The motion for stay is denied.

In the motion, appellant cites both ORS 19.335 and ORS 19.350. To the extent that any portion of the judgment is subject to stay under ORS 19.335, a discretionary stay of that provision of the judgment may not be granted. For example, under ORS 19.335(2), if a judgment requires transfer or delivery of possession of real property, a supersedeas undertaking filed with the trial court and supported by sufficient security acts to stay the judgment if it "provides that the appellant will not commit waste or allow waste to be committed on the property while the appellant possesses the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed." And ORS 19.350, in turn, provides that a party may seek a discretionary stay "only if the judgment may not be stayed under the provisions of ORS 19.335 * * *." *See also* 19.355(2) (a provision of a domestic relations judgment may be stayed only if the specific provision is subject to stay under the provisions of the stay statutes and all requirements of the stay statutes for a stay of the provision are satisfied). Thus, to the extent that any part of the judgment is subject to stay by filing a supersedeas undertaking with the trial court, appellant must do so and may not obtain a discretionary stay of that provision of the judgment. Furthermore, to

**ORDER DENYING MOTION FOR STAY**
Appellate Court Administrator, Appellate Court Records Section
1163 State Street, Salem, Oregon 97301-2563
Page 1 of 2

Exhibit 41 p. 001

the extent that any portion of the judgment is subject to a discretionary stay, under ORS 19.350, generally a party seeking a discretionary stay must first file a motion seeking relief in the trial court.  *See* ORS 19.350(2).  Appellant has not done so, and also has not established that the filing of a request in the trial court would be futile or that the trial court is unable or unwilling to act on such a request within a reasonable time.  *See* ORS 19.350(5).

For those reasons, appellant's motion for stay is denied.


Theresa Kidd
Appellate Commissioner
6/25/2024

c:  Ryan Dean Gabriel

Roscoe C Nelson III

**ORDER DENYING MOTION FOR STAY**
Appellate Court Administrator, Appellate Court Records Section
1163 State Street, Salem, Oregon 97301-2563
Page 2 of 2

Exhibit 41 p. 002

FILED
07/02/2024
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Rachael Parra
DR-15-2024-0000394-JF
Coffman, Danni
2.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
kai@familylawflathead.com

Attorney for Plaintiff

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FALTHEAD COUNTY

| | |
|---|---|
| JESSE OLSEN,<br><br>         **Plaintiff,**<br><br> and<br><br>RYAN GABRIEL,<br><br>         **Defendant.** | **NOTICE OF FILING FOREIGN JUDGMENT** |

**TO: DEFENDANT, RYAN GABRIEL**

NOTICE IS HEREBY GIVEN that the undersigned has filed with this Court the Amended General Judgement [sic] entered in Circuit Court of the State of Oregon for the County of Multnomah, on June 21, 2024, in Case No. 22DR04942. A true and correct copy of said Judgment and of the Affidavit for Filing Foreign Judgment filed therewith are provided with this Notice and hereby served upon you in accordance with Mont. Code Ann. § 25-9-504(2) (2023).

Contact information for Plaintiff and his attorney of record are as follows:

Jesse Olsen       Kai Groenke
5924 SW Orchid Dr.    239 2nd Street West
Portland, OR 97219     Kalispell, MT 59901

ELECTRONICALLY signed and dated this 2nd day of July, 2024.

LAW OFFICE OF KAI GROENKE, P.C.

By: */s/ Kai Groenke*
   Attorney for Plaintiff

Exhibit 42 p. 001

F I L E D
07/02/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Rachael Parra
DR-15-2024-0000394-JF
Coffman, Danni
3.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT  59901
Telephone: (406) 890-2999
Email:   kai@familylawflathead.com

Attorney for Plaintiff

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| JESSE OLSEN,<br><br>                                   Plaintiff,<br><br>and<br><br>RYAN GABRIEL,<br><br>                                   Defendant. | **AFFIDAVIT FOR FILING FOREIGN JUDGMENT** |

KAI GROENKE deposes and says:

1.      I am an attorney representing Plaintiff, Jesse Olsen, in this matter and this Affidavit is submitted pursuant to Mont. Code Ann. § 25-9-504 (2023).

2.      Submitted contemporaneously herewith is a copy of the Amended General Judgement [sic], which has been certified in accordance with the statutes of this state, entered by the Circuit Court of the State of Oregon for the County of Multnomah, in Case No. 22DR04942 on June 21, 2024.

3.      Plaintiff Jesse Olsen's current mailing address is 5942 SW Orchid Dr., Portland Oregon, 97219.

4.      Defendant Ryan Gabriel's last known address is 2000 Blacktail Rd., Box 1140, Lakeside, Montana, 59922.

Exhibit 42 p. 002

5.    The Amended General Judgement [sic] is valid and enforceable and has not been satisfied.

Further your Affiant sayeth not.

I, Kai Groenke, declare under penalty of perjury and under the laws of the state of Montana that the foregoing is true and correct and that to the best of my knowledge and belief, the Amended General Judgement [sic] provided herewith has not been modified.

DATED this 2nd day of July, 2024.


*/s/ Kai Groenke*
Signed at: Kalispell, MT

Exhibit 42 p. 003



**Dad**

Tuesday 11:14 AM

Fritz, apparently you were not only trespassing and broke the electronic gate, but you told my guests false information about a pending lawsuit on appeal.

This exposes you to four types of potential lawsuits: Trespassing, tortious interference (with a contract), defamation and intimidation.

Pull the stunt you did today again on my property without my explicit consent and you can expect to be hit on all counts and with all charges.

Also, your low-talent daughter tried to pull off her own besieged 'Taylor Lorenz' moment and failed spectacularly.

Everyone already knows her as the 'Taylor Lorenz of the Montana Legal Community':

https://greenwald.substack.com/p/your-top-priority-is-the-emotional

And you'll be known as an old guy so desperate for business you keep breaking everyone's electronic gate

＋ Text Message

---



**Dad**

And you'll be known as an old guy so desperate for business you keep breaking everyone's electronic gate trying to close a sale, ostensibly because you can't earn it the old fashioned way.

*Daughter, neice, adopted, etc.

Still gathering the genealogy data. If she isn't the direct genetic offspring of whomever everyone in your family thinks she is, I will enjoy figuring out the legal disclosure options I may have.

There seems to be a lot of undisclosed infidelity in the Groenke family genome, that much is becoming abundantly clear.

Also, Fredrick, please advise whether I can serve legal papers to this address:

246 Flathead Lake Pl.
Bigfork, MT 59911

Ok thanks for your response Ryan. Will share this with Jesse since he has engaged me to list the property for sale. Thought that would benefit

＋ Text Message

---



**Dad**

Ok thanks for your response Ryan. Will share this with Jesse since he has engaged me to list the property for sale. Thought that would benefit you both. Don't want to make it a hassel for you or him. Please don't threaten me with violence by shooting me in the face. I am just trying to do my job. I am filling a restraining order against you since you have threatened me with physical harm. This is not beneficial to the process of selling the property. Cooperation is your gain in this process.
Thanks for your communications.
Fritz

Before I file against you please let me know in 48 hours if you will reconsider your position.

Good luck with the restraining order - it's well within my rights to tell you not to trespass on my property.

You came onto my property today knowing that there is an appeal pending, harassed my guest and disclosed false and defamatory information.

You don't get a restraining order if

＋ Text Message

---



**Dad**

Good luck with the restraining order - it's well within my rights to tell you not to trespass on my property.

You came onto my property today knowing that there is an appeal pending, harassed my guest and disclosed false and defamatory information.

You don't get a restraining order if someone simply tells you not to return.

Please confirm whether the tortious interference (with a contract) should be served to the address I specified.

The genealogy data is public, on the other hand.

You also damaged the electric gate by trying to force it open.

Given the above fact pattern, I can actually probably get a restraining order on you, actually.

Also, ensnarement and racketeering are federal felonies, particularly when the criminal activity crosses state lines.

I will not hesitate to put a Trump DOJ on the budding Groenke case

＋ Text Message

---



**Dad**

I will not hesitate to put a Trump DOJ on the budding Groenke case.

I think you can also safely assume that if I sue you for tortious interference, I can only win the damages I seek if you're alive.

So to the extent that you are now more valuable to me intact, no, I won't shoot you in the face.

That said: Don't ever come on my property without my explicit permission.

As we move forward with the tortious interference and racketeering litigation, always remember: You came to me.

Also ask the 'Taylor Lorenz of the Montana Legal Community' what she thinks of this particular 'boon'.

Personally, I think it is relatively unbecoming but perhaps she will have a second opinion:



＋ Text Message

---



**Dad**



Valplay gets made into Genoblio
ending scene | Hellraiser (2022)
youtu.be



It's really hard... 6

＋ Text Message






---

Pg 10

Exhibit 43 p. 001



Exhibit 43 p. 002

| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
|---|---|
| **Sent:** | Tuesday, July 16, 2024 6:23 PM |
| **To:** | Kai Groenke; mtreg@cyberport.net |
| **Subject:** | Re: Threats |

Further to the below, bottom line is this:



Leave me alone and you will both be fine.  There appears to be a settlement on the table regarding the Montana property and if you continue to try and stir up trouble for me, that (apparently public) geneology data - once it gets out - would have everyone named Groenke at each others' throats.

On 07/16/2024 3:16 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Further to the below, if (as you claim) there is a US Marshall "looking into" this, it's curious that they haven't simply called me.  I am quite sure that in one single conversation, I could quickly redirect their interest to focus on the Groenke Crime Cartel.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/16/2024 3:05 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Taylor,



It is you and Fritz who are harassing me, and you are vividly aware of that fact.  You seem to be operating an ensnarement and extortion racket, and if so, you will be aggressively pursued by a Trump DOJ or possibly the Montana AG's office as I am thoroughly documenting everything the two of you have done to this point.

I didn't even know you had children, which begs the question of whether Fritz has comprehension issues.

There were no threats made against any federal judge - this is total nonsense.  Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to.

Jesse does not have clearance to sell the Lakeside property - there is an appeal in place and under a worst case scenario a supersedeas bond will be posted to secure a temporary stay of Judge Henry's order while the case is on appeal.  Even Jesse's Portland attorney concedes that process will likely take 24 months or so.

Exhibit 44 p. 001

In the interim, do not step foot on my property. The geneology data I have received on the Groenke family could make life very uncomfortable for all of you - and the best part is that it appears to be public data.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

> On 07/16/2024 2:13 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

> Ryan,

> I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will be interested in hearing you continue to threaten people. Do not _ever_ threaten my children.

> You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale.

> *Kai Groenke*

> **Law Office of Kai Groenke, P.C.**

> 239 2nd Street West

> Kalispell, MT 59901

> Tel: (406)-890-2999

> www.familylawflathead.com

Exhibit 44 p. 002

Name Taylor Kai Groenke
Address (withheld)
City, State, Zip
Telephone No. 406-890-2999

IN THE _____ **JUSTICE** _____ COURT

STATE OF MONTANA

COUNTY OF **FLATHEAD** _____

| | | |
|---|---|---|
| **TAYLOR KAI GROENKE**, | ) | No. CN-2024-1010-OP |
| | ) | |
| Petitioner, | ) | |
| | ) | **SWORN PETITION FOR** |
| v. | ) | **TEMPORARY** |
| | ) | **ORDER OF PROTECTION** |
| | ) | **AND REQUEST FOR HEARING** |
| **RYAN D. GABRIEL**, | ) | |
| | ) | |
| Respondent. | ) | |

The law requires that Respondent be given a copy of this completed form and all attachments.

1. **Request for Temporary Order of Protection.** Under oath and as provided by Mont. Code Ann. § 40-15-201, I request that the Court issue a Temporary Order of Protection against Respondent. I believe I am in danger of harm if the court does not issue a Temporary Order of Protection immediately.

2. **Protected Person/s.** I am seeking an Order of Protection for *(check all that apply):*
   ☑ Myself
   ☑ The following minor child/ren:

| Child/ren | Age | How child is related to: You | Respondent | Who does child live with? |
|---|---|---|---|---|
| Groenke child 1 (identity withheld) | 10 | Biological | No relation | Petitioner and child's father |
| Groenke Child 2 (identity withheld) | 10 | Biological | No relation | Petitioner and child's father |
| | | | | |
| | | | | |

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 1 of 9

Exhibit 45 p. 001

☑ Other people you would like to be protected *(first and last names and relationship to both you and Respondent)*: Frederick "Fritz" Groenke _____

_____

_____

3. **Residence.** I live or am staying in the City of Kalispell _____,
County of Flathead _____, State of Montana _____.

The Respondent lives in the City of Lakeside and/or Seattle _____,
County of Flathead and/or King _____, State of Montana and/or Washington

The abuse happened in the City of Kalispell _____,
County of Flathead _____, State of Montana _____.

*(Check all that apply).*

☑ The Respondent does not live with me.

☐ I live with the Respondent at _____

☐ I have left a residence where I lived with the Respondent. I want to return:
  ☐ to live at that residence
  ☐ to get personal belongings
  ☐ other *(describe)*: _____

☐ A business is run from the home.
Type of business *(describe)*: Financial _____
The business is run by: ☐ me  ☐ Respondent  ☐ both me and Respondent

4. **Relationship.** *(Please check all that apply to the relationship between the Respondent (the person you want restrained) and you or the person(s) for whom you are seeking protection)*

☐ I (or the person I want protected) have/has a relationship with Respondent as follows:
  ☐ Married
  ☐ Were married, but are now separated
  ☐ Divorced
  ☐ Are currently dating or having an ongoing intimate relationship
  ☐ Live together
  ☐ Lived together in the past
  ☐ Have a child and/or children together
  ☐ Is a family member or a former family member of Respondent
  ☐ Dated or had an ongoing intimate relationship in the past

Exhibit 45 p. 002

If a dating relationship please describe:

Nature of relationship_____

Length of time of the dating relationship _____

How often saw each other _____

Time since relationship ended_____

☑ Victim of Sexual Assault/ Stalking/ Other: *(describe how you know Respondent)*

I am the attorney for Ryan Gabriel's former domestic partner, Jesse Olsen. Ryan Gabriel is self-represented

in lawsuits pending in Flathead County District Court - Cause No. DV-22-605 (Gabriel v. Olsen); Cause No.

DR-24-394(E) (Olsen v. Gabriel).

☐ I am the parent, guardian or other person supervising the welfare of a child
less than 16 years of age and request that Respondent, who is a person over 18 years of age
and who has no legal right of supervision or control over the child, to stop contacting the child
because I believe that the contact is not in the child's best interests as set forth in MCA § 45-5-
622 (4).

5. **Information about the violence.** Please explain what the Respondent did to you (and/or the
person you want protected). Be specific. Write down places and dates as well as you can
remember. It does not matter when the abuse happened or whether you reported it to the police.
But you must tell the judge why you are afraid now.

A. RECENT ABUSE

Date of the most recent abuse: July 16, 2024

Who was there? Jesse Olsen, Fritz Groenke

Where did it take place? Via emails, text messages and voicemail

What did the Respondent do or say that made you (and/or the person you want protected)
afraid? Threatened me, my family, and my children.

Did the Respondent use or threaten to use a gun or other weapon? If yes, list how: _____

He threatened to shoot my father Fritz Groenke in the face. He send a video of a horror movie

clip showing someone getting shot in the face while referencing my family. He made references

to "geneology data" he received on the Groenke family that "could make life very uncomfortable for all of you."

Describe any injuries: No physical injuries.

Did the police come? ☐ Yes  ☑ No

Exhibit 45 p. 003

## B. PAST ABUSE

Describe any past abuse. Explain what happened in past situations. Be sure to explain when the abuse occurred, where it happened, and who was there. Explain why you (and/or the person you want protected) are afraid now. Ryan Gabriel has not ceased harassing me or threatening me since I undertook to represent his former partner, Jesse Olsen, in a lawsuit Ryan filed frivolously in Flathead County. In July 2024, Jesse obtained an Order from a trial court in Multnomah County, Oregon (Portland) dissolving the parties' domestic partnership and giving Jesse the exclusive right to sell the real property owned by the parties in Lakeside, Flathead County, Montana. I registered the Oregon judgment as a foreign judgment for the purpose of enforcement with the expectation of interference by Ryan. As soon as Jesse sent a realtor (Fritz Groenke) to the property in Lakeside for the purpose of marketing and listing same, Ryan began to escalate his threats, including making threats against my family and children. All threats have been via email, text message, and voicemail, but more recently have involved violence. Previously threats and harassment were more personal in nature, suggesting I am stupid, ugly, incompetent, a liar, that I should be disbarred and Ryan will make sure to report me, etc. His threats previously suggested he has researched me online, including my former marriage, my family, and my full name. Although I go by "Kai Groenke" professionally, Ryan insists on referring to me as "Taylor" or as "the Taylor Lorenz of the Montana legal community" referencing a former Washington Post journalist accused of having "often weaponized [journalism] to destroy the lives of many powerless people including teenagers..." Ironically, Ryan has threatened to use the legal process to delve into my personal life and gather evidence to seek to have me disbarred and to destroy my life, repeatedly threatening my business and livelihood. Ryan has a history of harassment of Jesse's attorney in Oregon, Roscoe Nelson, and he was reported for making a threat against a federal judge in the District of Montana wherein he threatened, "I would rather commit murder than succumb to forcibly conscripted marriage...anything that would prevent that will happen...anything and everything...God help you all if the US Constitution does not prevail." Ryan has emailed and sent text messages of YouTube videos with suggestive meaning, including to my paralegal suggesting she should sue me, and more recently showing a horror movie clip showing someone being shot in the head while referencing "geneology data" he obtained about my family. He has threatened to "make life very uncomfortable for all of you" while referencing my "geneology data." Ryan similarly harassed Christopher Gillette, an attorney hired by Jesse to defend against the federal lawsuit filed by Ryan in Missoula, which included similar threats and harassment of Mr. Gillette and his son.

☒ Check here if you need more space to write. Attach a sheet of 8 ½ x 11 paper and write: "Explanation of What Happened" at the top. Do **NOT** use the back of this form. See attached emails with explanation

## 6. Firearms *(Check all that apply)*

To the best of your knowledge, does Respondent currently possess firearms?

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 4 of 9

Exhibit 45 p. 004

☐ No  ☑ Yes

Where are the firearms located? Presumably in Montana, as he has threatened to shoot my father

in the face if he comes onto the property owned by Jesse and Ryan in Lakeside, Montana, to assist

Jesse in marketing and selling the property (as has been ordered by the Oregon court).

**7. Other Court Cases** *(Check all that apply)*

☐ A divorce, legal separation or custody case between me (and/or the person I want protected) and Respondent has been filed in _____ County, State of _____

Is the family law case listed above still pending?  ☐ Yes  ☐ No

Did the Court issue a parenting plan?  ☐ Yes  ☐ No

☐ A criminal charge of _____ was filed against me or Respondent in _____ Court in _____ County, State of _____

☑ List any other cases that you (and/or the person you want protected) or Respondent are or have been involved in: _____

See above - 11th Judicial District Court, Flathead County Cause No. DV-22-605 (Gabriel v. Olsen); Cause No. DR-24-394(E) (Olsen v. Gabriel).

**I ask the Court to Order the Following:**

1. ☑ Respondent shall not commit or threaten to commit acts of violence against me (and/or the person I want protected) and the following people including family members: _____
David D. (husband); Groenke Child 1; Groenke Child 2 (identities withheld for protection of minors)
(David Dowell — Kalispell Probation + Parole)

2. ☑ Respondent shall not harass, annoy, disturb the peace of, telephone, email, contact, or otherwise communicate, directly or indirectly, with me (or the person I want protected), and the following family members, other victims of the abuse, or witnesses to the abuse:
David D. (husband); Groenke Child 1; Groenke Child 2 (identities withheld for protection of minors)

3. ☐ Respondent shall not take the following child/ren out of this County or State:

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 5 of 9

Exhibit 45 p. 005

4. ☑ *(List the distance, up to 1500 feet, that you want Respondent to stay away from you and/or the person you want protected and the places you check below).*

Respondent shall stay at least  2,500  feet from:
☑ Me (Petitioner)
☑ Minor child/ren  Groenke child 1 (identity withheld); Groenke child 2 (identity withheld)

☑ Other people:  David D. (husband)

☑ My home (if you want the location of your home to be secret, do not list) Creston Hatchery Road, Kalispell
☑ My job or workplace:  239 2nd Street West, Kalispell, Montana
☑ My vehicle:  2017 Honda Pilot
☑ The child/ren's school and/or child care:  All elementary schools in Flathead County, Montana
to protect my children's identities, and because Respondent has no minor children in or around Flathead Co.

☑ Other places (describe):  2000 Blacktail Road, Lakeside, Montana (currently owned by Jesse Olsen
and Ryan Gabriel); Logan Health Medical Fitness Center, Kalispell;  Kalispell  Probation + Parole
~~if he comes onto the property, even though legally authorized to do so~~ by Jesse Olsen and a Court order.  unless required to report there by Court order.

5. ☑ Respondent used or threatened me with firearms. Respondent shall not possess these firearms
*(describe):*  All firearms, bows, arrows, or other objects capable of shooting a projectile.

6. ☐ Respondent shall not take, hide, sell, damage or dispose of property belonging to me (and/or the person who I want protected) or Respondent or both of us.

7. ☑ Respondent shall give me (or the person I want protected) possession or use of the following items (items may include the residence, automobile and other essential personal property no matter who owns it):  Unobstructed access to the property at 2000 Blacktail Road, Lakeside, Montana as instructed
by Jesse Olsen, who has exclusive right to sell the property.

8. ☑ I (and/or the person I want protected) need a peace officer to help get possession of the property listed in Number 7, or I request that a peace officer come with Respondent when picking up his/her property or belongings.

9. ☑ The Court should order Respondent to complete violence counseling, which may include alcohol or chemical dependency counseling or treatment, if appropriate.

10. ☑ The Court should order the following to provide for the safety and welfare of me and/or the person I want protected, and family:  Ryan may only contact me by email at kai@familylawflathead.com
and the topics of discussion shall be limited to BRIEF discussions of the two cases pending in Flathead County, MT.
Ryan may not post or discuss any information about me or my family online, via email, or by any other electronic means.

Exhibit 45 p. 006

11. Parenting of Child/ren

**Note:** Justice and City and Municipal Courts can protect minor children by listing them on the Order of Protection. Although these courts can provide short term visitation plans, they cannot make parenting plans. If you need a parenting plan, you need to file an action in your local District or Tribal Court.

*(Choose one)*

☑ Parenting of children does not apply in this case.

☐ The protections I have asked for in Paragraph 2 will keep Respondent away from the children. Therefore a visitation schedule is unnecessary.

☐ I want the children listed in Appendix A to have parenting time with Respondent. I am attaching Appendix A that says what visitation schedule I want. *(Fill in and attach Appendix A).*

12. Other Relief: The Court should order other protection as it deems just and proper.

**I SWEAR UNDER OATH OR AFFIRM I HAVE READ THIS APPLICATION, OR HAVE HAD IT READ TO ME, AND THE FACTS STATED IN THIS APPLICATION ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I ALSO UNDERSTAND THAT PROVIDING FALSE INFORMATION IS A CRIME.**

Date: 7/18/2024          Signed: _____
                                              Petitioner

7/19/2024

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 7 of 9

Exhibit 45 p. 007

**NOTARY SEAL OR JUDGE'S SIGNATURE**

STATE OF MONTANA )
                : ss.
County of Flathead )

SUBSCRIBED AND SWORN to before me this 19th day of July , 20 24 .

_____
JUDGE/CLERK/NOTARY

(For use by notary)

_____ (signed)

Name _____ (printed)
Notary Public for the State of Montana.
Residing at _____
My Commission Expires_____

Exhibit 45 p. 008

# FURTHER EXPLANATION OF WHAT HAPPENED:

Summary/Timeline of Harassment, Threats, Intimidation and Stalking by Ryan Gabriel:

When I use the terms "harassment," "threat/threaten," "intimidation," or "stalking" within this document, I am using the definitions of these terms as understood under the Montana Code Annotated and the Merriam Webster dictionary, as follows:

## Harass/Harassment (dictionary definition):

(1)(a) : Exhaust, fatigue
(1)(b)(1) : to annoy persistently
(1)(b)(2) : to create an unpleasant or hostile situation for especially by uninvited and unwelcome verbal or physical conduct
(2) : to worry and impede by repeated raids

## Threat (as defined by Montana law):

(1) "Threat" means a menace, however communicated, to:
> (a) inflict physical harm on the person threatened or any other person or on property;
> (b) subject any person to physical confinement or restraint;
> (c) commit a criminal offense;
> (d) accuse a person of a criminal offense;
> (e) expose a person to hatred, contempt, or ridicule;
> (f) harm the credit or business repute of a person;
> (g) reveal information sought to be concealed by the person threatened;
> (h) take action as an official against anyone or anything, withhold official action, or cause the action or withholding;
> (i) bring about or continue a strike, boycott, or other similar collective action if the person making the threat demands or receives property that is not for the benefit of groups that the person purports to represent; or
> (j) testify or provide information or withhold testimony or information with respect to another's legal claim or defense.

## Intimidation (as defined by Montana law):

(1) A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, the person communicates to another, under circumstances that reasonably tend to produce a fear that it will be carried out, a threat to perform without lawful authority any of the following acts:
> (a) inflict physical harm on the person threatened or any other person;
> (b) subject any person to physical confinement or restraint; or
> (c) commit any felony.

(2) A person commits the offense of intimidation if the person knowingly communicates a threat or false report of a pending fire, explosion, or disaster that would endanger life or property.

## Stalking (as defined by Montana law):

1) A person commits the offense of stalking if the person purposely or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person to:
> (a) fear for the person's own safety or the safety of a third person; or

(b) suffer other substantial emotional distress.

(2) For the purposes of this section, the following definitions apply:

(a) "Course of conduct" means two or more acts, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property.

(b) "Monitors" includes the use of any electronic, digital, or global positioning device or similar technological means.

(c) "Reasonable person" means a reasonable person under similar circumstances as the victim. This is an objective standard.

(d) "Substantial emotional distress" means significant mental suffering or distress that may but does not necessarily require medical or other professional treatment or counseling.

---

**3/21/2022:**
- Jesse Olsen files a petition for dissolution of domestic partnership in the Circuit Court for the State of Oregon, Multnomah County (Portland), Case No. 22DR04942, styled *Jesse Mark Olsen, Petitioner, v. Ryan Dean Gabriel, Respondent.*
- Ryan Gabriel files a separate partition action seeking the division or sale of their real property (i.e. real estate only) in Multnomah County, Case No. 22CV10399, styled *Ryan Dean Gabriel, Plaintiff v. Jesse Mark Olsen, Defendant.*

**3/26/2022:**
- Ryan is personally served with the Oregon dissolution of domestic partnership action.

**4/17/2022:**
- Jesse is personally served with the Oregon partition action.

**6/6/2022:**
- Ryan files a partition action in the Montana Eleventh Judicial District Court, Flathead County, Cause No. DV-22-605(B), styled *Ryan Dean Gabriel, Plaintiff v. Jesse Mark Olsen, Defendant.*
- Jesse was never personally served with the Summons in this case, but became aware of it through his Oregon attorney, Roscoe Nelson, in or around April 2023.

**4/27/2023:**
- Jesse hired me (Kai Groenke) to seek dismissal of the Flathead County case as it was unnecessary and duplicative. The same issues would be decided in the Oregon domestic partnership case. I sent a letter to Ryan at his address of record which is 2000 Blacktail Road, Lakeside. The letter was later returned as undeliverable.

**5/9/2023:**
- I filed a Notice of Appearance in the Flathead County case DV-22-605(B), along with a motion seeking to dismiss the case. As a courtesy, I had my paralegal reach out to Ryan by to notify him of my involvement and to confirm his current mailing address.

*pg 2*

Exhibit 45 p. 010

**5/10/2023:**

- Ryan sends me two emails containing threats. The first is attached as **Exhibit 1**, containing a threat to embroil me in numerous lawsuits in federal court, and in Washington, Utah and Wyoming. The second is attached as **Exhibit 2**, which contains personal insults regarding my appearance and professionalism which were solely for the purpose of harassment and intimidation.

**5/15/2023:**

- Ryan sends me numerous emails between 3:48 p.m. and 7:44 p.m. These emails are attached as **Exhibit 3**. In the first email, he threatens my law license, stating, "absent a suitable conferral outcome," he will report me to the State Bar of Montana "proposing disbarment and/or other sanctions." See Exhibit 3, page 4. In his second email, he alludes to my stupidity (harassment/intimidation) and threatens to sue me for tortious interference, stating "I strongly encourage you to consider the implications of this [i.e., remaining as counsel for Jesse], and your obligations as Jesse's counsel to do the same [i.e., withdraw from the case]." See Exhibit 3, page 2. In the third email, he again insults my intelligence (harassment/intimidation). See Exhibit 3, page 2. In the fourth and fifth emails, he again threatens disbarment and/or punitive sanctions. See Exhibit 3, page 1.

**6/1/2023:**

- Ryan sends me three emails accusing me of committing criminal acts, perjury, calling me a liar, and being unscrupulous, threatening to bring these claims to the District Court's attention and repeating his threat of bringing a tortious interference lawsuit against me. In the third email sent at 9:39 p.m., he calls me remarkably insecure, suggests I should be evaluated by a psychiatrist, mentions my substantial "intellectual incompetence" and starts calling me the Taylor Lorenz of the Montana legal community. He included a link to a website regarding Taylor Lorenz, a journalist who purportedly inappropriately uses her journalism to personally attack and victimize others. These emails are attached as **Exhibit 4** and **Exhibit 5**. Notably, Ryan referring to me at Taylor Lorenz continues throughout his communication to me from this point forward. This reference is clearly intended as harassment and intimidation.

**6/30/2023:**

- Ryan sends me an unsolicited email that begins, "FYI. You're next." The email is attached as **Exhibit 6**. The email includes a meme of Merrick Garland, the United States Attorney General, depicted as a hideous, toothy creature in a business suit. In the email, Ryan again threatens to sue me for tortious interference, to file a RICO suit against me "for all unscrupulous, opportunistic attorneys who have no earthly idea what they are getting themselves into, yet who will bill handsomely for their frivolous decadence." He concludes the email with, "Savor the opportunity, and the expense." The last line is clearly a threat to cost me money by suing me.

**9/7/2023:**

- Ryan sends a response to an email I sent him in May 2023, along with two additional unsolicited emails demonstrating he has been researching me online and has uncovered



Exhibit 45 p. 011

personal information about me, and is "looking forward" to perjury hearings, which is a threat since no charges of perjury against me exist or existed. The emails are attached as **Exhibit 7**. He states, "Oof. This dossier is thick…I look forward to sorting out the contents." He ends the email with "Good luck, Taylor." Since I go by my middle name of "Kai," and I only use "Taylor" on legal documents and personal documents, by referring to me as "Taylor," Ryan is clearly indicating that he has been stalking me online and has obtained personal information about me that he believes would be embarrassing if made public.

(Note, Ryan sent other emails after 9/7/2023 that were similar in nature to the foregoing and following examples. I have not included all of them due to the volume of paper that would be required.)

9/8/2023:
- I sent Ryan an email as follows:

   Ryan,

   Your efforts to find information about me by searching public records is concerning. You are clearly engaging in harassment, threats and intimidation. You have no business looking into my personal life; it is not relevant to the litigation. The Montana litigation is on hold, so there is nothing more for us to talk about unless the stay of proceedings is vacated.

   Do not communicate with me about anything other than the case currently pending in Montana.

   Thanks,

   Kai Groenke
   Law Office of Kai Groenke, P.C.

9/9/2023:
- Ryan responds to my email, again accusing me of "a historical pattern of deception and misrepresentation on your part," perjury, and threatening to seek sanctions against me and my disbarment. Notably, Ryan claims the personal information he obtained about me came from "opposition research that my associate was able to compile on you and kindly furnished to me" knowing that his actions would likely fit the definition of criminal stalking. The email from me to Ryan on 9/8 and his response and further threats, harassment, intimidation and admissions of stalking are attached as **Exhibit 8.**

9/26/2023:
- Ryan sends me an unsolicited email accusing me of having the "psychiatric condition" of "malignant vulnerable narcissism" and again comparing me to Taylor Lorenz. He attaches a copy of an actual ethics complaint he filed against Roscoe Nelson, Jesse's

Pg 4

Exhibit 45 p. 012

attorney in Oregon, which he admits is intended as a threat. He mentions "chronically self-perjuring lawyers like yourself" and calls Roscoe and me "two deranged, bitter misanthropes who have no business scurrying around Oregon and Montana with law degrees." He again mentions "the information I have reviewed thus far in the opposition research file I was provided" and threatens disbarment would be likely if such information was made public. He accuses me of having "a rather unsavory history of rank dishonesty." The email is attached hereto as **Exhibit 9**.

10/3/2023:
- Ryan sends an unsolicited email with a draft Motion for Sanctions dated 10/3/2023 and signed by Ryan, seeking sanctions against me for alleged misrepresentations to the Court, fraud, undue influence, and "additional punitive sanctions this Court feels appropriate given Defendant and his counsel's remarkable patter of self-perjury before this Court." The email is attached hereto as **Exhibit 10**. I have attached only the Motion referenced in the email; the attachments thereto are dozens of pages of documents that are irrelevant to establishing Ryan's ongoing and continuous harassment of me. Notably, the Motion for Sanctions was never filed with the District Court, demonstrating that Ryan's comments were meant solely to threaten, harass, and intimidate.

10/24/2023:
- In an effort to discourage Ryan from filing his frivolous Motion for Sanctions and wasting my time and the Court's time, I responded to the allegations in his Motion.
- Ryan responded within an hour's time, doubling down on his threat to file for sanctions against me unless I file "an erratum or similar document with the Court" correcting purported false statements on my part as alleged in the draft Motion for Sanctions. Ryan also accuses me of harassing him by representing Jesse in seeking to dismiss the partition claim in Montana.
- These emails are attached hereto as **Exhibit 11**.

11/18/2023 – 11/20/2023:
- Ryan sends an unsolicited email notifying me of a federal lawsuit he has initiated in the United States District Court for the District of Montana against Jesse Olsen. He followed up on 11/20/2023 with a link to some sort of YouTube video that I admittedly never watched. However, notably, the link now shows the YouTube account has been terminated (most likely for violent or inappropriate content). The emails are attached as **Exhibit 12**.

1/2/2024:
- Ryan sends an email in response to receiving a document I had filed in Flathead County District Court updating the Court as to the status of the Oregon proceedings (as ordered by the District Court). His response reminds me of the "action for sanctions and fees already drafted in prepared response to anything you might file (which you have already received a copy of)." His reference is to the Motion for Sanctions he emailed me in October 2023, thus demonstrating the purpose of that Motion was purely to threaten, harass and intimidate. This email is attached as **Exhibit 13**.



Exhibit 45 p. 013

1/29/2024:

- I received an email from Christopher Gillette, the Montana attorney who Jesse hired to defend against the lawsuit filed by Ryan in the United States District Court (which has been dismissed but which Ryan states he will appear to the United States Supreme Court), noting that Ryan had similarly harassed him. He states that Ryan contacted his son, who works with Chris, "and told him he needed to get a paternity test as the results would be 'sordid' and would establish that I have 'no heir.'" Chris expressed outrage at such a violation of his personal privacy and thankfulness that his stepson, Van, was already aware that he is not Chris's biological son, although, Chris posits, "But what if he hadn't? What an incredible asshole." Chris also mentions receiving threats by Ryan to sue him, file criminal charges, etc. which he notes he "can shrug off" but of concern to Chris is Ryan's statements of violence. The emails referenced in this paragraph are attached as **Exhibit 14**.

- In an email dated January 27, 2024, Ryan makes the following statements to Chris Gillette:
  I would note, to your ultimate point, that **I would rather commit murder** than succumb to forcibly conscripted marriage.
  Conscripted marriage will not happen to me.
  **Anything that would prevent that will happen.**
  **Anything and everything.**
  Hopefully, that 'anything' will be a Fourteenth Amendment prohibition against conscripted, involuntary marriage.
  **God help you all if the US Constitution does not prevail**.
      (Emphasis added). See Exhibit 14, pages 4 and 5.

- Ryan's statements were viewed as a threat toward a federal judge, and were certainly intended as a threat against Chris, Jesse, and everyone else copied on the email. The United States Marshal's Office opened an investigation. The US Marshal conducting the investigation can be reached at 406-317-0403 to verify this information.

(Ryan was mostly quiet in early 2024 as the Oregon case was proceeding to trial on January 26 and February 14, 2024, with closing arguments—a summary document each party is allowed to file following trial in Oregon—in March 2024).

5/2/2024:

- The Oregon Court determined Jesse and Ryan were in a domestic partnership and that the real property in Montana, which is the subject of the partition action that Jesse hired me to defend, should be sold. Ryan's partition action pending in Oregon was dismissed.

6/20/2024:

- An Amended General Judgment was entered by the Oregon court. The Amended Judgment dissolved the domestic partnership and ordered the real property located at 2000 Blacktail Road, Lakeside, Montana to be sold. The Amended Judgment provided that "the listing agent shall have complete and unobstructed access without any

*Pg 6*

Exhibit 45 p. 014

interference from Mr. Gabriel" and that "Mr. Gabriel (Respondent) is prohibited from interfering with the sale process." A certified copy of same is attached as **Exhibit 15**.

7/2/2024:
- Jesse had hired me to register the Amended Judgment as a foreign judgment in the Flathead County District Court to make it enforceable as if it were an order of the Flathead County District Court. After obtaining a certified copy of the Amended Judgment, on 7/2/2024, I filed the Amended Judgment from the Oregon Court as a foreign judgment in Cause No. DR-24-394(E), styled *Jesse Olsen, Plaintiff, v. Ryan Gabriel, Defendant.*
- Jesse also hired Fritz Groenke, who is my father and an experienced real estate broker located in Bigfork with expertise and skill in putting together difficult real estate transactions. It was Jesse's belief that Fritz would be able to handle the expected harassment and onslaught from Ryan. I was not expecting the level of violence and significant escalation of Ryan's harassment following Jesse's efforts to market and sell the property in Lakeside.

7/16/2024:
- Jesse and I received an email from Fritz that he visited the Lakeside property the afternoon of 7/16 and summarizing his impressions. He mentioned having received one correspondence from Ryan stating Ryan was living in the Seattle area. The email is attached as **Exhibit 16.**

Soon after receiving the email from Fritz, I received numerous text messages forwarded from Fritz that he received from Ryan. Additionally, Fritz played a voicemail recording from Ryan identifying himself and **telling Fritz that if he sets foot on Ryan's property again, "I will shoot you in the face."** The text messages are below. Fritz Groenke has the voicemail recorded on his phone and is planning to provide a copy to law enforcement considering the threat of violence with a weapon. These include a graphic video that includes a content warning before playing it showing a movie clip from Hellraiser (2022) involving someone having their skin peeled off, including the skin from their mouth, and large pins or nails being inserted, while being strapped down with his arms stretched out, as in a crucifixion. The image is substantially disturbing. The other YouTube video sent by Ryan involves a television interview of Taylor Lorenz that has been doctored to show Joe Biden's face and voice instead of Taylor Lorenz's, but using her words. In the interview, she is visibly upset while stating, "any information that gets out on you [on the Internet] will be used by the worst people on the internet to destroy your life."

The reference to Taylor Lorenz is clearly a reference to me, along with a thinly veiled threat to "destroy my life" by putting information out on the Internet about me and my family. The text messages and videos caused me to fear for my safety and the safety of my family, including my father, my husband and my two children. I am afraid Ryan is going to use the Internet to harass me and my family, as he has threatened to do. Until July 16, 2024, Ryan did not directly threaten me or anyone in my family with physical violence. The escalation and threats of violence have caused me substantial emotional distress, and have caused me to lose work while I

*pg 7*

Exhibit 45 p. 015

take steps to protect myself and my family, including gathering and putting together information for a protective order.

The links to the YouTube videos referenced above are attached as **Exhibit 17** and **Exhibit 18**.

When you click the Hellraiser video, you receive the following content warning:



Below is a still shot from the video showing a person's skin being peeled off and pins being inserted into their body:





Pg 8

Exhibit 45 p. 016

Below is a clip from closer to the end of the Hellraiser video showing the person with peeled skin as being crucified, and shows how graphic and disgusting the video clip was, as the video showed the person's skin being peeled off in strips:



On the next two pages are screenshots of the messages Ryan sent to Fritz, referencing his "genealogy" (i.e., his family). Note, Fritz had Jesse's permission and instruction to go to the property and did not damage any gate as alleged by Ryan.

pg 9

Exhibit 45 p. 017

Tuesday 10:24 AM

Fritz, apparently you were not only trespassing and broke the electronic gate, but you told my guests false information about a pending lawsuit on appeal.

This exposes you to four types of potential lawsuits: Trespassing, tortious interference (with a contract), defamation and intimidation.

Pull the stunt you did today again on my property without my explicit consent and you can expect to be hit on all counts and with all charges.

Also, your low-talent daughter tried to pull off her own besieged 'Taylor Lorenz' moment and failed spectacularly.

Everyone already knows her as the 'Taylor Lorenz of the Montana Legal Community'*:

https://greenwald.substack.com/o/your-top-priority-is-the-emotional

And you'll be known as an old guy so desperate for business you keep breaking everyone's electronic gate

---

And you'll be known as an old guy so desperate for business you keep breaking everyone's electronic gate trying to close a sale, ostensibly because you can't earn it the old fashioned way.

*Daughter, neice, adopted, etc.

Still gathering the genealogy data. If she isn't the direct genetic offspring of whomever everyone in your family thinks she is, I will enjoy figuring out the legal disclosure options I may have.

There seems to be a lot of undisclosed infidelity in the Groenke family genome, that much is becoming abundantly clear.

Also, Fredrick, please advise whether I can serve legal papers to this address:

246 Flathead Lake Pl.
Bigfork, MT 59911

Ok thanks for your response Ryan. Will share this with Jesse since he has engaged me to list the property for sale. Thought that would benefit

---

Ok thanks for your response Ryan. Will share this with Jesse since he has engaged me to list the property for sale. Thought that would benefit you both. Don't want to make it a hassel for you or him. Please don't threaten me with violence by shooting me in the face. I am just trying to do my job. I am filing a restraining order against you since you have threatened me with physical harm. This is not beneficial to the process of selling the property. Cooperation is your gain in this process.
Thanks for your communications.
Fritz

Before I file against you please let me know in 48 hours if you will reconsider your position.

Good luck with the restraining order - it's well within my rights to tell you not to trespass on my property.

You came onto my property today knowing that there is an appeal pending, harassed my guest and disclosed false and defamatory information.

You don't get a restraining order if

---

Good luck with the restraining order - it's well within my rights to tell you not to trespass on my property.

You came onto my property today knowing that there is an appeal pending, harassed my guest and disclosed false and defamatory information.

You don't get a restraining order if someone simply tells you not to return.

Please confirm whether the tortious interference (with a contract) should be served to the address I specified.

The genealogy data is public, on the other hand.

You also damaged the electric gate by trying to force it open.

Given the above fact pattern, I can actually probably get a restraining order on you, actually.

Also, ensnarement and racketeering are federal felonies, particularly when the criminal activity crosses state lines.

I will not hesitate to put a Trump DOJ on the budding Groenke case

---

I will not hesitate to put a Trump DOJ on the budding Groenke case.

I think you can also safely assume that if I sue you for tortious interference, I can only win the damages I seek if you're alive.

So to the extent that you are now more valuable to me intact, no, I won't shoot you in the face.

That said: Don't ever come on my property without my explicit permission.

As we move forward with the tortious interference and racketeering litigation, always remember: You came to me.

Also ask the 'Taylor Lorenz of the Montana Legal Community' what she thinks of this particular 'boon'.

Personally, I think it is relatively unbecoming but perhaps she will have a second opinion.



---






---



7/16/2024:

- I emailed Ryan that his threats against me and my family will not be taken lightly and that he should not <u>ever</u> threaten my children.
- In response to my email, Ryan sent me three emails. My emails and his responses are attached as **Exhibit 19**. In his responses, Ryan accuses me of "operating an ensnarement and extortion racket" and if so, will be aggressively pursued "by a Trump DOJ or possibly the Montana AG's office as I am thoroughly documenting everything the two of you have done to this point."
- In Ryan's email to me on July 16, 2024 at 6:23 pm (Exhibit 19, page 1) is perhaps the most poignant evidence of the purpose of his harassment, intimidation, and threats. In that email he says if I leave him alone and stop stirring up trouble for him, "you will both be fine."

> Further to the below, bottom line is this:
>
> Leave me alone and you will both be fine. There appears to be a settlement on the table regarding the Montana property and if you continue to try and stir up trouble for me, that (apparently public) geneology data - once it gets out - would have everyone named Groenke at each others' throats.

*pg 11*

Exhibit 45 p. 019

- As further evidence of Ryan's stalking behavior, he mentions the research he has done about my genealogy, thus threatening my family. I am afraid for my children's safety as Ryan is clearly unhinged, desperate and willing to use violence, as he has threatened Jesse, Chris Gillette, a federal court judge, and now me and my father.
- In continuation of his efforts to stalk, harass, intimidate and threaten me, Ryan sent another email on 7/16/2024 which is attached as Exhibit 20, threatening again my law license, protracted litigation, tortious interference lawsuits, that I have committed crimes, and that I will be "prosecuted vigorously" if I take any further action "to interfere with my use of my property." While he disclaims any hint of physical threat, he cannot deny the fact that he threatened to shoot Fritz in the face and sent graphic video depicting a hideous scene of someone having their skin peeled off, while referencing the Groenke family.

Ryan has harassed me, intimidated me, threatened me, demeaned me, and has clearly stalked me on an ongoing basis since March 2022. Now that he has brought the threat of exposing my family members to harassment, intimidation, embarrassment, humiliation, and legal action, and has threatened my law license which is a direct threat to my ability to provide for my family, I have had enough. As Chris Gillette said in his email, a lawyer can let certain things roll off their back, but when a person threatens, stalks, and harasses their family, especially minor children who are completely innocent and do not deserve to have a sociopathic stalker trolling them on the Internet, at school, or anywhere they might go in the Flathead Valley.

I have no idea when Ryan might decide to show up in Kalispell and act out his threats of violence against my family. I have no idea when he might decide to move forward with his threats of reporting me to the state bar, filing lawsuits, or attempting to publicly humiliate me or ruin my reputation, none of which he has to leave his computer to accomplish. He claims he resides in Lakeside, Montana as his primary residence, and therefore it is appropriate for a protective order to be entered against him in Flathead County, Montana.

Ryan has added a layer of stress, emotional distress, and fear to my life that cause me to fear that he might harm me, especially since the property he owns is going to be sold, whether he likes it or not. This fact makes him dangerous, as he has nothing to lose in committing acts of violence against me or my family. Ryan is a serious threat and a serial stalker. I would like protection from further harassment by him.

pg 12

Exhibit 45 p. 020

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Wednesday, May 10, 2023 5:56 PM |
| **To:** | Melissa Smith |
| **Cc:** | Kai Groenke; jesse.m.olsen@nike.com; info_nsdlawfirm.com    ; jessica@roscoecnelson.com |
| **Subject:** | Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605 |

Thank you, Melissa.

Kindly note that my 2021 and 2022 taxes were filed as a resident of Montana. Prior to that, I was a resident of Washington State.

As such, this is now effectively an appellate and/or Federal case unless Jesse withdraws/settles. A detailed settlement offer has been furnished by my previous attorneys in Oregon.

Please minimize your time on this case for your client's financial benefit, unless you are also licensed to practice in Washington, Utah and Wyoming (where there are parties soon to be joining the case, along with a forthcoming tortious interference lawsuit being filed by Zurc Capital, LLC, a multi-member Wyoming corporation).

Sent via BlackBerry Hub+ Inbox for Android

> **From:** melissa@familylawflathead.com
> **Sent:** May 10, 2023 3:22 PM
> **To:** rgabriel@zurccapital.com
> **Cc:** kai@familylawflathead.com
> **Subject:** Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Dear Ryan,

Kindly be advised that this firm represents Jesse relating to the partition action you filed in the Flathead County District Court. Attached, please find a letter that was originally mailed to you on April 27th. This letter was mailed to your address on file with the Clerk of Court but was returned to us as undeliverable. Also attached you will find copies of the Motion and supporting documents we filed with the Court yesterday. These documents were mailed to the same address as we are required to do so. Would you please provide us with your correct mailing address?

Kind regards,

*Melissa C. Smith*
*Paralegal*
**Law Office of Kai Groenke, P.C.**
239 2nd Street West
Kalispell, MT  59901
Tel: (406)-890-2999
Fax: (406)-755-1918
www.familylawflathead.com

Click here to send me a secure email

1

*Exhibit 1*

Exhibit 45 p. 021

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

Exhibit 45 p. 022

# Kai Groenke

**From:**            Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:**            Wednesday, May 10, 2023 9:48 PM
**To:**              Melissa Smith
**Cc:**              Kai Groenke; Jessica Edmiston; jesse.olsen@nike.com
**Subject:**         Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605
**Attachments:**     Capturekai.JPG  *photo of me attached*

**Follow Up Flag:**  Follow up
**Flag Status:**     Flagged

Oh, Kai... sweetie.

Oof.

Where to begin?  Kindly refer me to your digital media alterations team, whom I can only assume are either in Nigeria, Sri Lanka or the Philippines.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

> On 05/10/2023 11:06 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:
>
> Christian,
>
> Please disregard.
>
> Your firm's contact information was accidentally switched for a different firm.
>
> Ryan D. Gabriel
> Zurc Capital, LLC
> rgabriel@zurccapital.com
>
> **206.391.9886** mobile
> **403.606.5859** office
> **855.488.ZURC** toll free

>> On 05/10/2023 10:58 PM EDT Christian Dietrich <christian@nsdlawfirm.com> wrote:
>>
>> Hello Mr. Gabriel et al,

*Exhibit 2*

1

Exhibit 45 p. 023

Could you please advise why our firm was included on this email? On first glance, we do not appear to have any record of this matter.

Thank you,
Christian Dietrich
Neilson, Swanson, Dietrich, PLLC

---

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Wednesday, May 10, 2023, 5:59 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Cc:** Kai Groenke <kai@familylawflathead.com>; jesse.m.olsen@nike.com <jesse.m.olsen@nike.com>; info@nsdlawfirm.com <info@nsdlawfirm.com>; Jessica Edmiston <jessica@roscoecnelson.com>
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Also please note that 2000 Blacktail Rd. in Lakeside, MT is a rural address and the US Postal Service does not deliver to wilderness addresses.
You will need to send any paper correspondence via courier, UPS, DHL or FedEx to be delivered to the front door.
Sent via BlackBerry Hub+ Inbox for Android

**From:** rgabriel@zurccapital.com
**Sent:** May 10, 2023 5:56 PM
**To:** melissa@familylawflathead.com
**Cc:** kai@familylawflathead.com; jesse.m.olsen@nike.com; info@nsdlawfirm.com; jessica@roscoecnelson.com
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605
Thank you, Melissa.
Kindly note that my 2021 and 2022 taxes were filed as a resident of Montana. Prior to that, I was a resident of Washington State.
As such, this is now effectively an appellate and/or Federal case unless Jesse withdraws/settles. A detailed settlement offer has been furnished by my previous attorneys in Oregon.
Please minimize your time on this case for your client's financial benefit, unless you are also licensed to practice in Washington, Utah and Wyoming (where there are parties soon to be joining the case, along with a forthcoming tortious interference lawsuit being filed by Zurc Capital, LLC, a multi-member Wyoming corporation).
Sent via BlackBerry Hub+ Inbox for Android

**From:** melissa@familylawflathead.com
**Sent:** May 10, 2023 3:22 PM
**To:** rgabriel@zurccapital.com
**Cc:** kai@familylawflathead.com
**Subject:** Gabriel v. Olsen; Flathead County Cause No. DV-22-605
Dear Ryan,

Kindly be advised that this firm represents Jesse relating to the partition action you filed in the Flathead County District Court. Attached, please find a letter that was originally mailed to you on April 27th. This letter was mailed to your address on file with the Clerk of Court but was returned to us as undeliverable. Also attached you will find copies of the Motion and supporting documents we filed with the Court yesterday. These

Exhibit 45 p. 024

documents were mailed to the same address as we are required to do so. Would you please provide us with your correct mailing address?

Kind regards,

*Melissa C. Smith*
*Paralegal*
**Law Office of Kai Groenke, P.C.**
239 2nd Street West
Kalispell, MT 59901
Tel: (406)-890-2999
Fax: (406)-755-1918
www.familylawflathead.com

Click here to send me a secure email

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

Exhibit 45 p. 025



**See more of Law Office of Kai Groenke, P.C. on Facebook**

Log In or Create new account

Exhibit 45 p. 026

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Monday, May 15, 2023 7:44 PM |
| **To:** | Kai Groenke; Melissa Smith |
| **Cc:** | jesse.m.olsen@gmail.com; Roscoe C. Nelson; jesse.olsen@nike.com |
| **Subject:** | RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605 |
| **Attachments:** | Exhibit_B_2023-03-29_155804.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

One further attachment (Exhibit B).

On 05/15/2023 9:41 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kai/Melissa,

Attached please find the below promised exhibits (Exhibit Y was sent in a previous e-mail), in particular those exhibits which unequivocally demonstrate the pretext under which Kai Goenke may/will be disbarred and/or face punitive sanctions by the State Bar Association of Montana.

Cheers,

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/15/2023 7:57 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kai,

Further to the below, what follows is the text of Federal Rule 7.1(c), lifted directly from the 2022 UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA Local Rules of Procedure:

Civil Rule 7. Motions and Other Papers
7.1 Motions.
(a) Scope. Except for pleadings under Fed. R. Civ. P. 7(a), pleadings in proceedings under 28 U.S.C. §§ 2241, 2254, or 2255, or applications for a temporary restraining order, Rules 7.1 and 7.2 apply to all written requests that the court take or refrain from taking a particular action, except where another rule provides otherwise.
(b) Timeliness. All motions must be made sufficiently in advance of trial to comply with the time periods set forth in this rule or other order of the court and to avoid any delays in the trial.

1

EXHIBIT 3

Exhibit 45 p. 027

(c) Prerequisites to Filing a Motion.
(1) The text of a non-dispositive motion must state that other parties have
been contacted and state whether any party objects to the motion.
Parties that have not yet appeared in the action or whose default has
been entered need not be contacted. This Rule 7.1(c)(1) does not
apply to any party in a case filed by a self-represented prisoner.
(2) When a motion is unopposed, the word "unopposed" must appear in
the title of the motion.
(3) Proposed Orders. Except as otherwise provided in these rules or by
order, a proposed order is required and permitted only with a motion
for extension of time or with an unopposed motion. All proposed
orders must:
(A) be attached to the motion in PDF format as an exhibit, so that
the order, as proposed, is filed in the electronic record of the
case;
(B) be e-mailed to the judge in WordPerfect, Word, or a
compatible program, so that the judge may alter it;
(C) use 14-point font;



You and Roscoe are hopelessly outmatched, and totally out of your depth - squaring off
with a *pro se* litigant, no less.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/15/2023 7:47 PM EDT Ryan Gabriel <rgabriel@zurccapital.com>
wrote:

Kai,

As I have stated previously, this case is ultimately headed for an
appellate and/or Federal court.  A game plan has been sketched out
nearly a year ago by the NY-LA-Baltimore national firm I have retained
to research the and map out the final outcome.



I strongly encourage you to consider the implications of this, and your
obligations as Jesse's counsel to do the same.

If you are not up to the challenge - which your astonishing
misinterpretation of Oregon Circuit Court Judge Francis G. Troy II's
denial of Roscoe's error-strewn Motion for Protective Order (re:
attorneys' fees) puts on stark display - then you may have a legal

obligation to withdraw from the case, notwithstanding any subsequent
tortious interference lawsuit that may be forthcoming.

Ryan D. Gabriel
Zurc Capital, LLC

2

Exhibit 45 p. 028

rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/15/2023 7:18 PM EDT Kai Groenke
<kai@familylawflathead.com> wrote:

Ryan,

Montana Rules of Civil Procedure control in Montana
District Courts over the Federal Rules of Civil
Procedure. There is no meet and confer requirement
under the Montana rules. Furthermore, there is no
Rule 7.1(c) in the Federal Rules. If you wish to negotiate
the outcome of property disposition attendant to your
relationship with Jesse, you will need to get in touch
with Roscoe Nelson who represents Jesse in that
capacity.

Your claim that I committed perjury is
unfounded. Under Rule 11 of the Montana Rules of
Civil Procedure, if you file a document with the Court
that presented for an improper purpose, such as to
harass or needlessly increase the cost of litigation or
make factual contentions that do not have evidentiary
support, the District Court can impose sanctions against
you. However, in this case instead of imposing
sanctions, I would expect the Court to at minimum stay
the partition action pending the outcome of the Oregon
dissolution.

The State Bar of Montana is not going to disbar
me. Your baseless threat is noted, however, and your
email communications will be used to show that your
childlike threats are imposed solely for the purpose of
harassment.

Sincerely,

3

Exhibit 45 p. 029

*Kai Groenke*

**Law Office of Kai Groenke, P.C.**

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Monday, May 15, 2023 3:48 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Cc:** Kai Groenke <kai@familylawflathead.com>;
jesse.olsen@nike.com; jesse.m.olsen@gmail.com
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause
No. DV-22-605

Kai/Melissa,

For conferral purposes, please see an initial draft of my
proposed/intended Response to Mr. Olsen's Motion to
Dismiss or in the Alternative Stay Proceedings, along
with relevant exhibits.

More exhibits to follow in a separate e-mail due to
attachment size limitations.

 Absent a suitable conferral outcome, the final edited
version will be filed with the court later this week, along
with a proposed order, requested sanctions, and
referral of M/r/s. Groenke to the Montana State Bar
Association proposing disbarment and/or other
sanctions.

Ryan D. Gabriel

Zurc Capital, LLC

rgabriel@zurccapital.com

4

Exhibit 45 p. 030

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

---

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Wednesday, May 10, 2023, 5:59 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Cc:** Kai Groenke <kai@familylawflathead.com>;
jesse.m.olsen@nike.com <jesse.m.olsen@nike.com>;
info@nsdlawfirm.com <info@nsdlawfirm.com>; Jessica
Edmiston <jessica@roscoecnelson.com>
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause
No. DV-22-605

Also please note that 2000 Blacktail Rd. in Lakeside,
MT is a rural address and the US Postal Service does
not deliver to wilderness addresses.

You will need to send any paper correspondence via
courier, UPS, DHL or FedEx to be delivered to the
front door.

Sent via BlackBerry Hub+ Inbox for Android

---

**From:** rgabriel@zurccapital.com

**Sent:** May 10, 2023 5:56 PM

**To:** melissa@familylawflathead.com

**Cc:** kai@familylawflathead.com; jesse.m.olsen@nike.com; info@nsdlawfirm.com; jessica@rosc

**Subject:** Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Thank you, Melissa.

Kindly note that my 2021 and 2022 taxes were filed
as a resident of Montana. Prior to that, I was a
resident of Washington State.

As such, this is now effectively an appellate and/or
Federal case unless Jesse withdraws/settles. A

5

Exhibit 45 p. 031

detailed settlement offer has been furnished by my previous attorneys in Oregon.

Please minimize your time on this case for your client's financial benefit, unless you are also licensed to practice in Washington, Utah and Wyoming (where there are parties soon to be joining the case, along with a forthcoming tortious interference lawsuit being filed by Zurc Capital, LLC, a multi-member Wyoming corporation).

Sent via BlackBerry Hub+ Inbox for Android

---

**From:** melissa@familylawflathead.com

**Sent:** May 10, 2023 3:22 PM

**To:** rgabriel@zurccapital.com

**Cc:** kai@familylawflathead.com

**Subject:** Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Dear Ryan,


Kindly be advised that this firm represents Jesse relating to the partition action you filed in the Flathead County District Court. Attached, please find a letter that was originally mailed to you on April 27th. This letter was mailed to your address on file with the Clerk of Court but was returned to us as undeliverable. Also attached you will find copies of the Motion and supporting documents we filed with the Court yesterday. These documents were mailed to the same address as we are required to do so. Would you please provide us with your correct mailing address?



Kind regards,



*Melissa C. Smith*

*Paralegal*

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

6

Exhibit 45 p. 032

Kalispell, MT  59901

Tel:  (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com

Click here to send me a secure email

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege.  These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if  any privilege is otherwise applicable to this communication.  This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended.  If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited.  Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email.  Thank you.*

Exhibit 45 p. 033

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Thursday, June 1, 2023 3:21 PM |
| **To:** | Melissa Smith; Kai Groenke |
| **Cc:** | jesse.olsen@nike.com; jesse.m.olsen@gmail.com |
| **Subject:** | Re: Gabriel / Olsen; Flathead County, MT |
| **Attachments:** | Flathead Electric Cooperative SmartHub - Usage Explorer.pdf; Flathead_Electric_2023_01_5_1825014.pdf |

Further to the below, attached are bills and usage readings from Flathead Electric.

 Before you choose which crime (/perjurious statement) you have committed that will cause the revocation of your license to practice law in Montana, and which perjurious statement will serve as the predicate for a forthcoming tortious interference lawsuit brought by Zurc Capital, LLC - a multi-member Wyoming LLC - against your practice, you ought to contemplate the implications of these energy usage bills.

Personally, if I were you, I would recommend admitting the perjurious claims that Ryan Gabriel "lives" in Portland, OR is a knowing lie, given how much time and energy you have spent billing Jesse and his ailing mother to demonstrate the importance of 'comity' and 'good faith' in the context of your vexatious, unscrupulous lawfare tactics.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 06/01/2023 4:31 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kai,'

In the same legal filing you are declaring under oath:

a) Ryan Gabriel lives in Portland

b) Kai Groenke attempted in good faith to confer with Ryan Gabriel via USPS snail mail using the Montana address

Which mutually exclusive statement would you prefer I select to argue you have committed perjury before the court?

Forgive me for the awkward question, but I can only argue one of the two is a knowing lie, and only you can tell me which one.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

1

EXHIBIT 4

Exhibit 45 p. 034

**2**06.391.**9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/31/2023 5:13 PM EDT Melissa Smith <melissa@familylawflathead.com> wrote:

Hi Ryan,

We filed the attached Reply Brief with the Court today and mailed a copy to your Lakeside address as the Rules of Civil Procedure requires of us. The attached copy is being provided to you as a courtesy. If you wish to receive all correspondence from this office, including copies of documents filed with the Court, exclusively by email, please respond to this email confirming same.

Thanks,

*Melissa C. Smith*

*Paralegal*

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT 59901

Tel: (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com

Click here to send me a secure email

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the*

2

Exhibit 45 p. 035

*attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

Exhibit 45 p. 036

# Kai Groenke

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Thursday, June 1, 2023 9:39 PM |
| **To:** | Melissa Smith; Kai Groenke |
| **Cc:** | jesse.olsen@nike.com; jesse.m.olsen@gmail.com |
| **Subject:** | Re: Gabriel / Olsen; Flathead County, MT |

Kai,

Further to the below, I just noticed this curious and amusing inclusion in your recent court filing:

"In his email, Ryan disparages the undersigned's physical appearance and professionalism while copying Jesse and paralegals from the Law Office of Kai Groenke and Nelson & Nelson law firm in Oregon. He also "accidentally" copied an attorney from another law firm."

...

"On page 10 of his Answer Brief, Ryan rails on about "Defendant's wholly unqualified attorneys, who seem to have no ability to properly interpret what they are reviewing, and ultimately have no business practicing law in any jurisdiction for law of intellectual capability, and more importantly, lack of personal and professional integrity.""

...

Here it is noteworthy that the object of my critique is your digital photo editor, which could only be made possible by the assumption there was nothing objectively wrong with subject of the photograph as taken (you).

But your projected insecurities are remarkable, and once noticed they cannot be un-noticed - even by a judge.

Typically, a professional would not bill a paying client to ease their own internal emotional struggles. Instead, a professional would typically hire a qualified psychiatrist, and the psychiatrist would in turn invoice the professional.

What is even more remarkable is that this acute error of observation and logic on your part was made in the context of offense taken at my entirely appropriate assertion of your intellectual incompetence, which is highlighted in painfully vivid color in the above quoted paragraph.

I dare say, here you are setting yourself up to be the Taylor Lorenz of the Montana legal community to their endless entertainment, and therefore the moniker is sure to stick:

https://greenwald.substack.com/p/your-top-priority-is-the-emotional

From the above, a selected caption: "The front-page reporter, Taylor Lorenz, recently of *The New York Times* and now *The Washington Post*, uses the skills she learned growing up in Old Greenwich, Connecticut and while being educated at Greenwich High School and absolutely lovely boarding schools in the Swiss Alps to express, on NBC News' *Meet the Press Daily*, the trauma and victimization she endures from critics of her journalism: journalism which she has often weaponized to destroy the lives of many powerless people including teenagers, on April 1, 2022 (credit: MSNBC)"

EXHIBIT 5

1

Exhibit 45 p. 037

Cheers,

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

> On 06/01/2023 5:20 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:
>
> Further to the below, attached are bills and usage readings from Flathead Electric.
>
> Before you choose which crime (/perjurious statement) you have committed that will cause the revocation of your license to practice law in Montana, and which perjurious statement will serve as the predicate for a forthcoming tortious interference lawsuit brought by Zurc Capital, LLC - a multi-member Wyoming LLC - against your practice, you ought to contemplate the implications of these energy usage bills.
>
> Personally, if I were you, I would recommend admitting the perjurious claims that Ryan Gabriel "lives" in Portland, OR is a knowing lie, given how much time and energy you have spent billing Jesse and his ailing mother to demonstrate the importance of 'comity' and 'good faith' in the context of your vexatious, unscrupulous lawfare tactics.
>
> Ryan D. Gabriel
> Zurc Capital, LLC
> rgabriel@zurccapital.com
>
> **206.391.9886** mobile
> **403.606.5859** office
> **855.488.ZURC** toll free
>
> > On 06/01/2023 4:31 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:
> >
> > Kai,'
> >
> > In the same legal filing you are declaring under oath:
> >
> > a) Ryan Gabriel lives in Portland
> >
> > b) Kai Groenke attempted in good faith to confer with Ryan Gabriel via USPS snail mail using the Montana address
> >
> > Which mutually exclusive statement would you prefer I select to argue you have committed perjury before the court?

2

Exhibit 45 p. 038

Forgive me for the awkward question, but I can only argue one of the two is a knowing lie, and only you can tell me which one.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 05/31/2023 5:13 PM EDT Melissa Smith <melissa@familylawflathead.com> wrote:

Hi Ryan,

We filed the attached Reply Brief with the Court today and mailed a copy to your Lakeside address as the Rules of Civil Procedure requires of us. The attached copy is being provided to you as a courtesy. If you wish to receive all correspondence from this office, including copies of documents filed with the Court, exclusively by email, please respond to this email confirming same.

Thanks,

*Melissa C. Smith*

*Paralegal*

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT 59901

Tel: (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com

3

Exhibit 45 p. 039

[Click here to send me a secure email](#)

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

Exhibit 45 p. 040

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Friday, June 30, 2023 8:25 PM |
| **To:** | Kai Groenke; Melissa Smith |
| **Cc:** | jesse.olsen@nike.com; jesse.m.olsen@gmail.com |
| **Subject:** | Fwd: Olsen v. Gabriel 22DR04942 |
| **Attachments:** | Order Granting Motion from 63023 hearing.pdf; SvetkeyS_20230620-0945_ 01d9a35bf6a1a380.trm; SvetkeyS_20230620-0950_01d9a35ca97731a0.trm; Merrick_Garland.jpg |

Kai,

FYI.

You're next.

The forthcoming tortious interference (with a contract) lawsuits, filed in Wyoming, are going to be something you should start considering.

Then, appeals court, then SCOTUS to overturn Beal v. Beal and its demented, activist progeny.

Then, RICO civil suits for all unscrupulous, opportunistic attorneys who have no earthly idea what they are getting themselves into, yet who bill handsomely for their frivolous decadence. You may have read the news today.

My national attorneys, licensed to practice in Washington, California, Maryland, New York and Washington, DC, have mapped this all out.

Savor the opportunity, and the expense.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

---------- Original Message ----------
From: Philip Li <admin@zurccapital.com>
To: "attorneys@roscoecnelson.com" <attorneys@roscoecnelson.com>, "jesse.olsen@nike.com" <jesse.olsen@nike.com>, "jesse.m.olsen@nike.com" <jesse.m.olsen@nike.com>
Cc: Ryan Gabriel <rgabriel@zurccapital.com>
Date: 06/30/2023 8:31 PM EDT
Subject: Fwd: Olsen v. Gabriel 22DR04942

Roscoe,

1

EXHIBIT 6

Exhibit 45 p. 041

Attached please find recordings from the June 20, 2023 Trial Assignment hearing in which Judge Svetkey agrees a Motion to Compel Discovery will necessitate additional time prior to trial.

I have transcribed the relevant portions. Jesse ought to listen to these, in particular Roscoe's insistence that today's Motion to Compel Discovery "is meritless", and make some elementary calculations as to the effectiveness of his legal counsel:

**9:01:14 a.m.: Ryan Gabriel:** "Assuming that the court allows the Motion to Compel Discovery to proceed, there wouldn't be sufficient time in between tomorrow, June 20, and the currently scheduled trial date of July 6 for the Petitioner to produce responsive documents and depositions to be taken and properly summarized in preparation for trial..."

**9:04:37 a.m.: Judge Svetkey:** "Sure"

**9:04:40 a.m.: Ryan Gabriel:** "So, so that is going to need to be moved out, too."

[ Judge Svetkey subsequently moves our request to the end of the Trial Assignment hearing ]

**9:50:23 a.m.: Judge Svetkey:** "This is a motion to compel discovery, Ryan Gabriel is asking for, it's his motion, he is asking that it to be set over to the July 5 or 6 Trial Assignment date and then to reset the dissolution of the domestic partnership trial over as well, *and of course it makes sense that there be time in between the Motion to Compel Hearing and the Trial itself.* And Roscoe Nelson you're opposed to setting over both of those?"

**9:51:15 a.m.: Roscoe Nelson:** "Every single motion that counsel has filed has been denied. This one is meritless as well. Discovery took place quite some time ago."

**9:51:30 a.m.: Roscoe Nelson:** "There's no merit to this motion as per the prior ones as well."

**9:51:35 a.m.: Judge Svetkey:** "Well, that's the ultimate question that a judge will have to decide, this is just in terms of scheduling."

Then, attached observe today's ruling in my favor, won as a pro se litigant with no legal counsel whatsoever.

In light of these developments, Roscoe, I invite you to confer to propose alternate trial dates.

Also, five (5) court-issued civil subpoenas for depositions were delivered in person today by the process server, and have been notarized for processing by the Clerk.

You also ought to assume that I have lined up a very well known Oregon attorney who has agreed to appear in the immediate period prior to trial - one that you know rather well, and one who has outright defeated you in every single solitary previous instance.

10 guesses as to whom I refer.

Ryan Gabriel
rgabriel@zurccapital.com

2

Exhibit 45 p. 042

403.606.5859 m.

---------- Forwarded message ----------
From: **Vicky M. Chalfant** <Vicky.M.CHALFANT@ojd.state.or.us>
Date: Fri, Jun 30, 2023 at 5:27 PM
Subject: Olsen v. Gabriel 22DR04942
To: attorneys@roscoecnelson.com <attorneys@roscoecnelson.com>, Ryan Gabriel <aegil2@gmail.com>
Cc: Valerie L. Nguyen <Valerie.L.Nguyen@ojd.state.or.us>, Ryan E. Fahlman-Katler <Ryan.E.Fahlman-Katler@ojd.state.or.us>


Please find attached a copy of Judge Allen's ruling from today.


Vicky M. Chalfant

*She/Her*

Judicial Assistant to the Honorable Beth A. Allen

Email: vicky.m.chalfant@ojd.state.or.us

Phone: 971-274-0686


*Multnomah County Circuit Court*

*East County Courthouse*

*18480 SE Stark Street*

*Portland, Oregon 97233*

3

Exhibit 45 p. 043

## IN THE CIRCUIT COURT FOR THE STATE OF OREGON
## FOR MULTNOMAH COUNTY

Family Law Department

**Jesse Mark Olsen,**

Case No. 22DR04942

**ORDER, GRANTING MOTION TO COMPEL**

Petitioner,

And

**Ryan Dean Gabriel,**

Respondent

This matter came before the court on **06/30/2023.**
The following persons appeared and received a copy of this order:
[ ] Petitioner        [X] Petitioner's Attorney : Roscoe C. Nelson III
[X] Respondent     [ ] Respondent's Attorney: _____
[ ] Other: _____
[ ] No parties because no hearing was scheduled.

**Courts Findings:**

Parties came before Judge Allen for Motion to Compel. Petitioner has not provided necessary documents pursuant to the First and Second RFPs.

**Now therefore it is hereby order as follows:**

Both parties are obligated to provide the other party any documents on which they intend to rely at trial related to claims made for the two homes at issue. Petitioner need not make himself available for deposition because no request was made pursuant to rules. Additionally, and specifically, Petitioner is to provide documents responsive to Respondent's First RFP requests 17 (as to an alleged domestic partnership), 21 through 24 and as to the Second RFP request, Petitioner is to supply the names of any persons he intends to call as a witness to support his allegation that the parties were in a domestic relationship, as opposed to a mere friendship or a business relationship.

All documents are to be provided no later than 5pm on July 3, 2023.

_____6-30-2023_____                    _____Ben A. Allen_____
Date                                                      Circuit Court Judge

Exhibit 45 p. 044



MERRICK GARLAND

Exhibit 45 p. 045

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Thursday, September 7, 2023 10:23 PM |
| **To:** | Kai Groenke; Melissa Smith |
| **Cc:** | jesse.m.olsen@gmail.com; jesse.olsen@nike.com |
| **Subject:** | RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605 |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Perhaps as a lawyer, you can advise:

 Is it morally or ethically *wrong* to look forward to the depositions during the perjury hearings, according to Montana rules of civil procecure?

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 09/08/2023 12:15 AM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

 Oof. This dossier is thick.

Brian Dale Lee

David C. Dowell

Groenke 1997 Grandchildrens Trust

 Oh, my - there's a lot to unpack here. I look forward to sorting out the contents.

 Good luck, Taylor.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 09/07/2023 11:47 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

1

EXHIBIT 7

Exhibit 45 p. 046

Kai,

I absolutely think you should pursue sanctions.

In light of the evidence I have assembled that you have knowingly committed perjury before this (Flathead County) Court and Judge Coffman regarding my residency, I 100% agree this remedy under Rule 11 must be further explored.

Beyond the above, a brief review of the dossier detailing your sordid personal background (actual divorces are a hoot!) would yield compelling evidence of the same pattern of misrepresentation.

Please be sure to aggressively pursue the sanctions you have promised.

Cheers,

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
403.606.5859 office
**855.488.ZURC** toll free


On 05/15/2023 7:18 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:


Ryan,


Montana Rules of Civil Procedure control in Montana District Courts over the Federal Rules of Civil Procedure. There is no meet and confer requirement under the Montana rules. Furthermore, there is no Rule 7.1(c) in the Federal Rules. If you wish to negotiate the outcome of property disposition attendant to your relationship with Jesse, you will need to get in touch with Roscoe Nelson who represents Jesse in that capacity.


Your claim that I committed perjury is unfounded. Under Rule 11 of the Montana Rules of Civil Procedure, if you file a document with the Court that presented for an improper purpose, such as to harass or needlessly increase the cost of litigation or make factual contentions that do not have evidentiary support, the District Court can impose sanctions against you. However, in this case instead of imposing sanctions, I

2

Exhibit 45 p. 047

would expect the Court to at minimum stay the partition action pending the outcome of the Oregon dissolution.

The State Bar of Montana is not going to disbar me. Your baseless threat is noted, however, and your email communications will be used to show that your childlike threats are imposed solely for the purpose of harassment.

Sincerely,

*Kai Groenke*

**Law Office of Kai Groenke, P.C.**

---

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Monday, May 15, 2023 3:48 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Cc:** Kai Groenke <kai@familylawflathead.com>; jesse.olsen@nike.com; jesse.m.olsen@gmail.com
**Subject:** Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Kai/Melissa,

For conferral purposes, please see an initial draft of my proposed/intended Response to Mr. Olsen's Motion to Dismiss or in the Alternative Stay Proceedings, along with relevant exhibits.

More exhibits to follow in a separate e-mail due to attachment size limitations.

Absent a suitable conferral outcome, the final edited version will be filed with the court later this week, along with a proposed order, requested sanctions, and referral of M/r/s. Groenke to the Montana State Bar Association proposing disbarment and/or other sanctions.

3

Exhibit 45 p. 048

Ryan D. Gabriel

Zurc Capital, LLC

rgabriel@zurccapital.com


206.391.9886 mobile

403.606.5859 office

855.488.ZURC toll free

---

From: Ryan Gabriel <rgabriel@zurccapital.com>
Sent: Wednesday, May 10, 2023, 5:59 PM
To: Melissa Smith <melissa@familylawflathead.com>
Cc: Kai Groenke <kai@familylawflathead.com>;
jesse.m.olsen@nike.com <jesse.m.olsen@nike.com>;
info@nsdlawfirm.com <info@nsdlawfirm.com>; Jessica Edmiston
<jessica@roscoecnelson.com>
Subject: Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605


Also please note that 2000 Blacktail Rd. in Lakeside, MT is a rural
address and the US Postal Service does not deliver to wilderness
addresses.

You will need to send any paper correspondence via courier, UPS,
DHL or FedEx to be delivered to the front door.

Sent via BlackBerry Hub+ Inbox for Android

---

From: rgabriel@zurccapital.com

Sent: May 10, 2023 5:56 PM

To: melissa@familylawflathead.com

Cc: kai@familylawflathead.com; jesse.m.olsen@nike.com; info@nsdlawfirm.com; jessica@roscoecnelso

Subject: Re: Gabriel v. Olsen; Flathead County Cause No. DV-22-605

4

Exhibit 45 p. 049

Thank you, Melissa.

Kindly note that my 2021 and 2022 taxes were filed as a resident of Montana. Prior to that, I was a resident of Washington State.

As such, this is now effectively an appellate and/or Federal case unless Jesse withdraws/settles. A detailed settlement offer has been furnished by my previous attorneys in Oregon.

Please minimize your time on this case for your client's financial benefit, unless you are also licensed to practice in Washington, Utah and Wyoming (where there are parties soon to be joining the case, along with a forthcoming tortious interference lawsuit being filed by Zurc Capital, LLC, a multi-member Wyoming corporation).

Sent via BlackBerry Hub+ Inbox for Android

**From:** melissa@familylawflathead.com

**Sent:** May 10, 2023 3:22 PM

**To:** rgabriel@zurccapital.com

**Cc:** kai@familylawflathead.com

**Subject:** Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Dear Ryan,


Kindly be advised that this firm represents Jesse relating to the partition action you filed in the Flathead County District Court. Attached, please find a letter that was originally mailed to you on April 27th. This letter was mailed to your address on file with the Clerk of Court but was returned to us as undeliverable. Also attached you will find copies of the Motion and supporting documents we filed with the Court yesterday. These documents were mailed to the same address as we are required to do so. Would you please provide us with your correct mailing address?



Kind regards,



*Melissa C. Smith*

*Paralegal*

**Law Office of Kai Groenke, P.C.**

5

Exhibit 45 p. 050

239 2nd Street West

Kalispell, MT  59901

Tel:  (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com


Click here to send me a secure email


*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege.  These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication.  This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended.  If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited.  Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email.  Thank you.*

Exhibit 45 p. 051

# Kai Groenke

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Saturday, September 9, 2023 1:30 PM |
| **To:** | Kai Groenke; Melissa Smith |
| **Cc:** | jesse.m.olsen@gmail.com; jesse.olsen@nike.com |
| **Subject:** | RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605 |
| **Attachments:** | Exhibit_V_2023-03-29_141137.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Taylor,

I am 100% within my rights to document and establish a historical pattern of deception and misrepresentation on your part, as I proceed to prove to the Court that you have knowingly committed perjury where my residency is concerned for the purposes of intervening in a garden variety partition claim (on a property that can easily be partitioned with no hardship to any party, no less).

The Montana litigation will proceed when I file my objection to the stay with the court, showing this document (attached - Exhibit V) in which Jesse swears under oath and in writing during a mortgage underwriting process in 2020 that "we are not in a domestic partnership", to which our mortgage lender replies, "as you are not in a domestic partnership".

Now that you have proof of my Montana residency, which I have sent to you previously, and now that you have proof there is no domestic partnership, you have two options:  You can amend your filings and retract claims you know to be false in light of this information, or I can challenge your filings as knowingly misleading to the court and tribunal, seeking not only sanctions but also your disbarment.

The disbarment effort will require that I show a historical pattern of deceptive behavior on your part, and the opposition research that my associate was able to compile on you and kindly furnished to me offers an abundance of such material to work with.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.**ZURC toll free

On 09/08/2023 3:23 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

Ryan,

*EXHIBIT 8*

Exhibit 45 p. 052

Your efforts to find information about me by searching public records is concerning. You are clearly engaging in harassment, threats and intimidation. You have no business looking into my personal life; it is not relevant to the litigation. The Montana litigation is on hold, so there is nothing more for us to talk about unless the stay of proceedings is vacated.

Do not communicate with me about anything other than the case currently pending in Montana.

Thanks,

*Kai Groenke*

**Law Office of Kai Groenke, P.C.**

---

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Thursday, September 7, 2023 10:15 PM
**To:** Kai Groenke <kai@familylawflathead.com>; Melissa Smith <melissa@familylawflathead.com>
**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com
**Subject:** RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Oof. This dossier is thick.

Brian Dale Lee

David C. Dowell

Groenke 1997 Grandchildrens Trust

Oh, my - there's a lot to unpack here. I look forward to sorting out the contents.

Good luck, Taylor.

Exhibit 45 p. 053

# Kai Groenke

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Tuesday, September 26, 2023 6:15 PM
**To:** Kai Groenke; Melissa Smith
**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com
**Subject:** RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605
**Attachments:** Roscoe_C_Nelson_Ethics_Complaint_2023-09-09_161423.pdf

**Importance:** High

Taylor,

I am in receipt of your latest filing, 'Defendant's First Status Report'.

While I wouldn't normally recommend someone with a clinical psychiatric condition such as yours (malignant vulnerable narcissism) position their own persona at the very center of a very simple partition claim - on a property that can be easily partitioned without controversy, no less - I appreciate that someone with your disabling condition probably cannot help themselves.

Since you are absolutely determined to make this lawsuit about you - in which you are the star - and not the case at hand, you ought to be fair and include the previous e-mail contrasting your behavior with a brilliant character study of your most famous avatar - Taylor Lorenz, as reported by the outstanding Glenn Greenwald - as an exhibit. If you don't get around to it, I am happy to include this as an exhibit in my reply to the Court.

Also, you might also want to include as an exhibit the actual ethics complaint I filed against Roscoe C. Nelson, Jr. with the Oregon State Bar, in that you seem to be arguing that my efforts to defend myself from unscrupulous lawyers like Roscoe on the one hand, and chronically self-perjuring lawyers like yourself on the other, constitutes anything other than 'harassment' of an ordinary civilian trying to defend my rather innocuous property rights from two deranged, bitter misanthropes who have no business scurrying around Oregon and Montana with law degrees.

I have attached that ethics complaint here, for your convenience, so the Court can determine who is 'harassing' whom.

Where your own character is concerned, Taylor, if even half of the information I have reviewed thus far in the opposition research file I was provided is true, I would be shocked if the Montana State Bar allowed you to continue to practice law once made aware of the same fact pattern, given your rather unsavory history of rank dishonesty, as testimony by those who have understandably parted ways with you have made a matter of public record.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

206.391.9886 mobile
403.606.5859 office
855.488.ZURC toll free

On 09/08/2023 3:23 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

EXHIBIT 9

1

Exhibit 45 p. 054

Ryan,

Your efforts to find information about me by searching public records is concerning. You are clearly engaging in harassment, threats and intimidation. You have no business looking into my personal life; it is not relevant to the litigation. The Montana litigation is on hold, so there is nothing more for us to talk about unless the stay of proceedings is vacated.

Do not communicate with me about anything other than the case currently pending in Montana.

Thanks,

*Kai Groenke*

**Law Office of Kai Groenke, P.C.**

---

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Thursday, September 7, 2023 10:15 PM
**To:** Kai Groenke <kai@familylawflathead.com>; Melissa Smith <melissa@familylawflathead.com>
**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com
**Subject:** RE: Gabriel v. Olsen; Flathead County Cause No. DV-22-605

Oof. This dossier is thick.

Brian Dale Lee

David C. Dowell

Groenke 1997 Grandchildrens Trust

Oh, my - there's a lot to unpack here. I look forward to sorting out the contents.

2

Exhibit 45 p. 055

239 2nd Street West

Kalispell, MT  59901

Tel:  (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com


Click here to send me a secure email


*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege.  These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if  any privilege is otherwise applicable to this communication.  This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended.  If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited.  Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email.  Thank you.*

Exhibit 45 p. 056

# Kai Groenke

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Tuesday, October 3, 2023 12:06 PM
**To:** Kai Groenke
**Cc:** Melissa Smith; Jesse Olsen; jesse.olsen@nike.com
**Subject:** Motion for Sanctions - Cause No. DV-22-605
**Attachments:** Motion_Sanctions_Groenke_2023-10-03_115627.pdf; Sanctions_Exhibits_2023-10-03_120215.pdf

Taylor,



Attached please find a copy of the pending Motion for Sanctions, to be brought before Flathead County District Court, absent your complete and unequivocal retraction, correction and proactive withdrawal of your request to stay proceedings in DV-22-605.

Exhibits are unlabeled in this e-mail attachment, but you will soon receive labeled versions via proper service in accordance with MCA Title 25, Ch. 20, Rule 11.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

> On 10/02/2023 6:11 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:
>
>
> All of those records are privileged, Ryan. While those communications are preserved, they are part of my attorney/client file. Absent a valid court order, you will not be receiving any such records.
>
>
> *Kai Groenke*
>
> **Law Office of Kai Groenke, P.C.**
>
>
> **From:** Ryan Gabriel <rgabriel@zurccapital.com>
> **Sent:** Monday, October 2, 2023 12:29 PM
> **To:** Kai Groenke <kai@familylawflathead.com>
> **Cc:** Melissa Smith <melissa@familylawflathead.com>
> **Subject:** Pending Federal Case: 14th Amendment, Section 1 - "Right not to Marry"

1

EXHIBIT 10

Exhibit 45 p. 057

Taylor a/k/a 'Kai',

Anticipating that this case will soon be taken up by the Federal courts under Section 1 of the Fourteenth Amendment of the Constitution, please take this a **_formal records and documentation preservation demand_** regarding all communications that I have not yet been made party to, including any and all correspondence with Roscoe C. Nelson III, Jesse M. Olsen and the courts concerning Case #22DR04942, all correspondence between any third party lawyers including those which I myself may retain or have previously retained, and Roscoe's staff.

As the State of Oregon will likely be named as a defendant in the Federal case, along with Roscoe C. Nelson, III and Jesse M. Olsen, please consider any records and communications relevant to the pending Federal matter subject to future discovery. **_Do not destroy any such records._**

Attached is a handy summary of the issues that will be touched upon in the Federal case as it heads, ultimately, to SCOTUS, where we expect the Supreme Court to firmly establish a "right not to marry" to effectively abolish all Oregon case law governing implied domestic partnerships. The Attorney General of the State of Montana may join this Federal suit, and as you know your role in needlessly obstructing the Montana partition claim will also be reviewed by the Montana State Bar Association.

Upon such a ruling, please note that a civil defamation lawsuit may be filed against you, separately, for any false written allegations or claims you have made or will continue to make that I am Jesse's "husband", or any similarly false companion claims.

Cheers,

Ryan D. Gabriel

**Zurc Capital, LLC**

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

2

Exhibit 45 p. 058

3

Exhibit 45 p. 059

# IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

RYAN DEAN GABRIEL,              )       Case No. DV-22-605

        Plaintiff,          )

vs.                            )       **MOTION FOR SANCTIONS**

JESSE MARK OLSEN,               )

        Defendant          )

Plaintiff RYAN DEAN GABRIEL ("Mr. Gabriel") hereby moves against Defendant JESSE MARK OLSEN ("Mr. Olsen"), who has been communicating exclusively through his retained counsel, TAYLOR 'KAI' GROENKE ("Ms. Taylor Groenke"), for sanctions in accordance with MCA Title 25, Ch. 20, Rule 11.

## VIOLATIONS OF RULE 11(B)

The above cited statute/code is furnished as follows:

*Rule 11.   Signing Pleadings, Motions, and other Papers; Representations to the Court; Sanctions.*

*...*

*(b)   Representations to the Court. By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:*

*(1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;*

Exhibit 45 p. 060

...

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

(c) *Sanctions.*

(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).

1. **Groenke's pre-emptive threats to seek Court-ordered sanctions.**

Counsel for the Defendant, Ms. Taylor Groenke, began threatening Plaintiff Mr. Gabriel with Court sanctions for "harassment" as early as April 27, 2023, before Mr. Gabriel had any knowledge that Mr. Olsen had retained any legal counsel in this instant case, and before Mr. Gabriel had any knowledge that Ms. Taylor Groenke appeared before this Court or even existed, and well before Mr. Gabriel had any knowledge or understanding of MCA Title 25, Ch. 20, Rule 11. In bringing this statutory authority to Mr. Gabriel's attention before its citation and

Exhibit 45 p. 061

1   enforcement was ever plausible in any respect, Counsel for the Defendant has thus compelled

2   Plaintiff Mr. Gabriel to exercise this same authority in defense of this instant partition claim, and

3   to pre-empt Ms. Taylor Groenke's clear efforts to draw Mr. Gabriel into an unrelated argument

4   using noxious sanctimony and frivolous outrage in the hopes of invoking Rule 11 at some future

5   point, and in her cynical hopes of obfuscating the core, simple issue in dispute. (*See* "Groenke

6   Intro Letter", Exhibit D1 *and* "Premature Invocation of Rule 11", Exhibit D2).

7

8       **2.  Undue Influence; knowingly perjurious statements; constructive fraud.**

9       Ms. Taylor Groenke has furnished this Court with knowingly false, pivotal statements as

10  she proceeds to not only interfere with Mr. Gabriel's property rights, but also to draw out Court-

11  ordered sanctions and damages under fraudulent pretenses.  Most notably, Groenke self-perjures

12  before this Court with ongoing mutually exclusive and contradictory sets of statements in her

13  own and in her client's sworn written testimony before the Court:  a) that Plaintiff Mr. Gabriel

14  "lives" and "currently resides in the home the parties shared in Portland, OR"; b) that Ms. Taylor

15  Groenke attempted in good faith to contact Mr. Gabriel exclusively by snail-mailing (via USPS)

16  Defendant's Motion to Dismiss – along with her threats to seek Court-ordered sanctions for

17  "harassment" – to Mr. Gabriel's Montana address alone, giving Mr. Gabriel a deadline to reply

18  (May 12, 2023) that came and went before Mr. Gabriel had any knowledge that Ms. Groenke had

19  appeared before this Court or indeed even existed. (*See* "List of Groenke's Perjurious Claims";

20  Exhibit D3 *and* "Groenke Intro Letter", Exhibit D1).  In doing so, Groenke fraudulently

21  attempted to draw Court-ordered Sanctions in this instant case – alleging "harassment and

22  intimidation" – before Mr. Gabriel would have had any knowledge of her appearance in this

23  instant lawsuit, assuming her first set of contradictory statements ("Mr. Gabriel lives and

24  currently resides in Portland", etc.) were believed by her to be true.

25

26

27

28

Exhibit 45 p. 062

Taken together, these actions comprise additional statutory violations above and beyond Rule 11(b), involving Plaintiff Mr. Gabriel's contractual property rights governing his ownership of 2000 Blacktail Rd. in Lakeside, MT, as well as his earnest attempt to partition the same property in a non-controversial, lender-approved, legally permissible manner: *'Constructive Fraud'* and *'Undue Influence'*.

    **a) Constructive Fraud:**

        Per MCA Title 28, Ch. 2, Section 406, behavior constitutes Constructive Fraud: *"Constructive fraud consists of:*

            *(1) Any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or*

            *(2) Any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.*

    **b) Undue Influence:**

        Per MCA Title 28, Ch. 2, Section 407, this also constitutes *'Undue Influence'*:

            *(1) The use by one in whom a confidence is reposed by another person or who holds a real or apparent authority over the other person of the confidence or authority for the purpose of obtaining an unfair advantage over the other person;*

            *(2) Taking an unfair advantage of another person's weakness of mind; or*

            *(3) Taking a grossly oppressive and unfair of another person's necessities or distress.*

    **c) Perjurious claims with ulterior motives:**

Exhibit 45 p. 063

1    Counsel for the Defendant Groenke has continued to maintain and has failed to retract her

2    leading perjurious (knowingly false) claims, which her entire Motion to Dismiss or Stay

3    Proceedings revolves around – that "Mr. Gabriel lives and currently resides in Portland" – even

4    after Mr. Gabriel sent her incontrovertible proof of his residency in Lakeside, MT in an e-mail

5    exchange dated June 1, 2023. Remarkably, Defendant Mr. Olsen's Oregon attorney declared in a

6    simultaneous Court filing in Multnomah County that "Mr. Gabriel has abandoned the Portland

7    property" at precisely the same time as Ms. Taylor Groenke argued the opposite. (*See* "Roscoe's

8    Declaration of Abandonment", Exhibit D4). Defendant Mr. Olsen, Counsel for the Defendant

9    Groenke and Mr. Olsen's Oregon attorney have all been in regular communication with each

10   other, knowingly filing false, self-perjuring, contradictory, mutually exclusive statements to the

11   various Courts in these competing lawsuits. Groenke and Defendant Mr. Olsen have now had

12   over 21 days to respond to Mr. Gabriel's corrective proof of residency, which he supplied to

13   them in writing, and have yet failed to withdraw or appropriately correct their Court filings post-

14   notification, choosing instead to proactively file ongoing interparty communications, indicating

15   that Groenke has not simply overlooked this instant lawsuit, nor merely forgotten to correct her

16   knowingly fraudulent claims. (*See* "Proof of Residency Correspondence": Exhibit D5).

17        What is most remarkable about Ms. Taylor Groenke's failure to document or respond to

18   any communication that would prove to the Court that Defendant's objection to this instant

19   lawsuit is unmerited – or which would require her to retract or correct her (knowingly)

20   fraudulent claims involving Mr. Gabriel's residency – is that Groenke otherwise has

21   meticulously documented all other communication which could obfuscate the core issue in this

22   instant lawsuit (the core issue in dispute in this instant partition claim is Mr. Gabriel's residency,

23   property rights and Fourteenth Amendment, Article One due process and privacy rights under the

24   US Constitution.) (*See also:* "Right not to Marry Correspondence", Exhibit D6).

Exhibit 45 p. 064

Indeed, Ms. Taylor Groenke has duplicated certain intraparty communications, over and over again, filing her own photograph no less than three times with the Court in the hopes of turning Groenke herself into the besieged subject of the lawsuit – presumably so that she can draw out claims of "harassment and intimidation" – which she signaled her intention to do from the outset. The colloquial expression for this devious tactic is *'trolling'*, an art form that infamous, equally dreadful public figures such as Taylor Lorenz of the *'New York Times'* have turned into a lucrative career. Here it seems evident that Ms. Taylor Groenke desires to fashion herself into the *'Taylor Lorenz'* of the Montana legal community, to the chagrin of all who reside within the state, for which she can handsomely bill her clients – and destroy the lives of their adversaries – as she rises to become the center of attention in each lawsuit. (*See Glenn Greenwald Article Correspondence, Exhibit C6*).

## CONCLUSION

WHEREFORE Plaintiff Mr. Gabriel prays for an order for sanctions to be brought by this Court against Defendant and Ms. Taylor "Kai" Groenke for rank violations of MCA Title 25, Ch. 20, Rule 11 (*'Representations to the Court'*), as well as MCA Title 28, Ch. 2, Section 406 (*'Constructive Fraud'*) and MCA Title 28, Ch. 2, Section 407 (*'Undue Influence'*), plus any additional punitive sanctions this Court feels appropriate given Defendant and his counsel's remarkable pattern of self-perjury before this Court.

DATED this 3rd Day of October, 2023.

Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd.
Lakeside, MT 59922

(403) 606-5259
Telephone

6     MOTION FOR SANCTIONS 11th Judicial District – *Pro se* Civil Motion

Exhibit 45 p. 065

# Kai Groenke

| | |
|---|---|
| **From:** | Ryan D. Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Tuesday, October 24, 2023 4:52 PM |
| **To:** | Kai Groenke |
| **Cc:** | Melissa Smith; jesse.m.olsen_gmail.com |
| **Subject:** | Re: Response to Motion for Sanctions |

Kai,

If you do not modify your filings to reflect the matters of fact that I have repeatedly brought to your attention and which prove you are knowingly misleading the Court, I will be within my rights to file for sanctions.

As for the 'motives' for filing a partition claim, it is for the simple purpose of not being evicted from my residence and my home, as the Montana property can be partitioned.

I believe a judge will find it is you who are interfering with the partition in order to harass me, as the partition claim in Oregon was the first-filed action. The Montana partition claim was necessary as a companion filing.

I will give you to the end of the week to amend your claims via an erratum or similar document with the Court. If these points of fact are not corrected by then, I will file my Motion.

Sent via BlackBerry Hub+ Inbox for Android

**From:** kai@familylawflathead.com
**Sent:** October 24, 2023 3:54 PM
**To:** rgabriel@zurccapital.com
**Cc:** melissa@familylawflathead.com; jesse.m.olsen@gmail.com
**Subject:** Response to Motion for Sanctions

Ryan,

In response to your draft motion for sanctions, it appears to me you are claiming I should be sanctions for two reasons:

1. Alleged threats to seek sanctions if you did not cooperate in dismissing the lawsuit; and
2. Alleged misstatements by me regarding your residence.

The statement in my letter that Jesse will seek sanctions for the partition lawsuit is based upon my belief that you filed it for the purpose of harassing Jesse, much like your efforts to threaten and harass him by filing claims against both of his attorneys and threatening additional litigation in federal court. I also believe your partition lawsuit is frivolous based on the undisputed fact that Oregon recognizes domestic partnerships. The State of Oregon has consolidated your Oregon partition action with the domestic partnership dissolution action, thus dismissing the Oregon partition action that you filed. The Oregon court intends to hear the domestic partnership case, which means you have not yet successfully convinced anyone that the domestic relations laws of Oregon do not apply to your pending case in Oregon. I realize you plan to challenge Oregon's domestic partnership laws, but those laws are currently recognized and enforced within the State of Oregon. The Montana partition action is not necessary or warranted when Oregon has jurisdiction to equitably divide your assets and liabilities in the domestic partnership matter. I stand by my request for you to cooperate in dismissing the Montana partition lawsuit or face sanctions based on your filing of a frivolous lawsuit brought for the purpose of harassment.

I have reviewed the court records, public records, and other information. Based on a reasonable review of the information available to me that you are, or were at the time of filing the motion to dismiss, domiciled in the State of

1

EXHIBIT 11

Exhibit 45 p. 066

Oregon. At best you have an *argument* that your residence is in Montana. Information also exists to refute this argument.

Neither of these statements rise to the level of sanctionable conduct. Please note the Montana court may award attorneys' fees and costs to the prevailing party on a motion for sanctions based on Rule 11 of the Montana Rules of Civil Procedure. In other words, if you file a motion for sanctions and the court denies it, you may be paying Jesse's attorneys' fees and costs.

*Kai Groenke*
**Law Office of Kai Groenke, P.C.**
239 2nd Street West
Kalispell, MT 59901
Tel: (406)-890-2999
www.familylawflathead.com

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

Exhibit 45 p. 067

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Monday, November 20, 2023 8:12 PM |
| **To:** | Roscoe C. Nelson |
| **Cc:** | Attorneys; Kai Groenke; Melissa Smith; jesse.m.olsen@gmail.com; jesse.olsen@nike.com; pli; Philip Li; aegil2@gmail.com |
| **Subject:** | Re: Federal Civil Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen |

https://youtu.be/exaEt7szfi4?feature=shared   *Account has been terminated*

On 11/20/2023 9:00 PM EST Roscoe C. Nelson <mail@roscoecnelson.com> wrote:

I am on vacation returning on the 22nd. You are and remain a pile of shit.

Sent from my iPad

> On Nov 18, 2023, at 8:17 PM, Ryan Gabriel <rgabriel@zurccapital.com> wrote:
>
> Roscoe,
>
> Further to the below, and for conferral purposes, pursuant to ORCP 53 and/or ORCP 52 I intend to file this week a Motion to Bifurcate Trial (for OR Case # 22DR04942 and OR Case # 22CV10399), or in the alternative to Postpone Trial due to the filing of the below cited Federal lawsuit.
>
> Absent your objection I will file this along with a notification to Judge Henry that the two parties in Case No. 22CV10399 cannot agree to a date for purposes of Stipulated Order setting Trial Date for Case No. 22CV10399.
>
> Cheers,
>
> Ryan D. Gabriel
> **Zurc Capital, LLC**
> rgabriel@zurccapital.com
>
> **206.391.9886** mobile
> **403.606.5859** office
> **855.488.ZURC** toll free
>
>> On 11/18/2023 12:26 AM EST Ryan Gabriel <rgabriel@zurccapital.com> wrote:
>>
>> Roscoe/Jesse/Taylor ('Kai'),
>>
>> Attached and below please find the Summons, Complaint and Claim for the now-filed Federal Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen.

1

*EXHIBIT 12*

Exhibit 45 p. 068

These will be served upon both known attorneys for Jesse Mark Olsen, absent any new information about newly retained counsel for this Federal case. The Federal court has both Roscoe C. Nelson, Jr. (III) and Taylor ('Kai') Groenke recorded as counsel of record.

I intend to pursue the Federal case as far as it can be pursued, which I anticipate will be the Supreme Court of the United States, absent a complete victory in a lower Federal court overturning 'Beal v. Beal' and its progeny in Oregon once and for all.

If there is no reply to this e-mail, I will order the Portland-based process server to serve these documents to Jesse at his place of employment, which they have ongoing experience performing up to the executive suite at Nike.

Please note that a Motion for Appointment of Counsel is also being filed, as none of you have objected to my conferral attempts regarding the same.

Cheers,

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

206.391.9886 mobile
403.606.5859 office
855.488.ZURC toll free

---------- Original Message ----------
From: MTD_CMECF@mtd.uscourts.gov
To: MTD_CMECF@mtd.uscourts.gov
Date: 11/17/2023 6:49 PM EST
Subject: Activity in Case 9:23-cv-00142-DLC-KLD Gabriel v. Olsen PRO SE REGISTRATION FORM

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended. ***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

Exhibit 45 p. 069

However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Montana**

## Notice of Electronic Filing

The following transaction was entered on 11/17/2023 at 4:49 PM MST and filed on 11/17/2023

| | |
|---|---|
| **Case Name:** | Gabriel v. Olsen |
| **Case Number:** | 9:23-cv-00142-DLC-KLD |
| **Filer:** | Ryan D. Gabriel |
| **Document Number:** 4 | |

**Docket Text:**
## PRO SE REGISTRATION FORM by Plaintiff Ryan D. Gabriel. (SGN)

**9:23-cv-00142-DLC-KLD Notice has been electronically mailed to:**

**9:23-cv-00142-DLC-KLD Notice has been delivered by other means to:**

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105468959
[Date=11/17/2023] [FileNumber=3025763-0]
[98a01732848524ff51cf00fed54d692b9b95609c890012
73acb5a04a1918a240e6
3c4e47aff3b00688b7ddd069faf7105a57fc7e44296cbf07
458717430338d8]]

3

Exhibit 45 p. 070

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Tuesday, January 2, 2024 6:02 PM |
| **To:** | Melissa Smith; Kai Groenke |
| **Cc:** | jesse.olsen@nike.com; jesse.m.olsen@gmail.com |
| **Subject:** | Re: Olsen / Gabriel; Flathead County Cause No. DV-22-605 |
| **Attachments:** | Petition_Writ_Mandamus_2024-01-02_175049.pdf |

Taylor,

Before you devour *all* of the carpet in your office - frothing at the mouth in frenzied anticipation of something that will never happen as the Federal case moves toward SCOTUS - you might want to include the attached filing in your status updates/fever dreams with the Court.

Also remember that I have an action for sanctions and fees already drafted in prepared response to anything you might file (which you have already received a copy of).

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 01/02/2024 5:15 PM EST Melissa Smith <melissa@familylawflathead.com> wrote:

Ryan,

Attached, please find a courtesy copy of Defendant's Second Supplemental Status Report filed with the Court this afternoon. Hard copy to follow.

Thanks,

*Melissa C. Smith*

*Paralegal*

**Law Office of Kai Groenke, P.C.**

1

EXHIBIT 13

Exhibit 45 p. 071

239 2nd Street West

Kalispell, MT  59901

Tel:  (406)-890-2999

Fax: (406)-755-1918

www.familylawflathead.com


Click here to send me a secure email


*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege.  These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication.  This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended.  If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited.  Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email.  Thank you.*

Exhibit 45 p. 072

**Kai Groenke**

| | |
|---|---|
| **From:** | Chris Gillette <Chris@cjgillettelaw.com> |
| **Sent:** | Monday, January 29, 2024 5:10 PM |
| **To:** | Roscoe C. Nelson; Kai Groenke; Jesse Olsen; Van Gillette; Admin; Sara Davis |
| **Cc:** | Melissa Smith |
| **Subject:** | RE: FW: Olsen: Documents Filed |

 Well, similar to Kai's experience, he sunk so low as to contact my son Van (who works with me) and told him he needed to get a paternity test as the results would be "sordid" and would establish that I have "no heir". Of course, Van is biologically my stepson and he obviously knows that. But what if he hadn't? What an incredible asshole.

 He has threatened to sue me, file criminal charges, etc., etc., all of which I can shrug off. But none of us can afford to gloss over (very) thinly veiled threats of murder. I believe the US Marshal's office is taking this quite seriously as have already received two calls and emails about it. *See pgs 4 & 5*

Jesse, glad you got the OOP. Let me know if you need anything from me. My job is largely done, I suspect.

C



**Christopher J. Gillette**
**The Law Office of Christopher J. Gillette**

406.582.7918 | www.cjgillettelaw.com

chris@cjgillettelaw.com

11 E Main Street, Suite C, Bozeman MT 59715

---

IMPORTANT. The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

---

.

**From:** Roscoe C. Nelson <mail@roscoecnelson.com>
**Sent:** Monday, January 29, 2024 4:15 PM
**To:** Kai Groenke <kai@familylawflathead.com>; Chris Gillette <Chris@cjgillettelaw.com>; Jesse Olsen <jesse.m.olsen@gmail.com>; Van Gillette <van@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Sara Davis <sara@roscoecnelson.com>
**Cc:** Melissa Smith <melissa@familylawflathead.com>
**Subject:** RE: FW: Olsen: Documents Filed

In more than 50 years of practice, I have dealt with noone lower than Ryan. He stops a nothing and thinks he is all knowing.

**From:** Kai Groenke <kai@familylawflathead.com>
**Sent:** Monday, January 29, 2024 3:07 PM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Jesse Olsen <jesse.m.olsen@gmail.com>; Van Gillette <van@cjgillettelaw.com>; Roscoe C. Nelson <mail@roscoecnelson.com>; Admin <admin@cjgillettelaw.com>; Sara Davis

EXHIBIT 14

Exhibit 45 p. 073

<sara@roscoecnelson.com>
**Cc:** Melissa Smith <melissa@familylawflathead.com>
**Subject:** RE: FW: Olsen: Documents Filed

Hi Chris,

He claims his residence to be 2000 Blacktail Road, Lakeside, Montana, 59922 (which is the physical address of the property he owns with Jesse Olsen). According to Jesse, the Blacktail Road property is often rented out (it's an AirBNB or VRBO) and during those times Ryan stays at the residence he formerly shared with Jesse in Portland, Oregon. My research shows he works at TAB Bank – see website https://www.tabbank.com/sales-team/

Ryan has been adamant in documents he has filed with the Court his primary residence is in Montana. See attached Complaint. He argues his position regarding his residence on pgs 5-6 of his Answer Brief, also attached. Don't bother trying to wade through any more of the Answer Brief than those two pages unless you are a glutton for punishment. He threatened to report me to the State Bar for saying he resides primarily in Oregon which he argued was a lie punishable by disbarment.

I'm honestly not convinced his "Zurc Capital" business is anything more than a front https://www.zurccapital.com/about-us - notice that the "team" is all avatars while only Ryan's photo is of an actual human. I received an email not long ago from a "Philip Li" telling me what an idiot I am which had the same tone and format as the emails I've received from Ryan. If I had to bet money, I would guess it was from Ryan posing as his Li person. I would be surprised if any of the Zurc "team" are actual people, or if they're all just Ryan. If true, that does not seem to be above board for a company offering financial services.

For the record, he did some "digging" about my past relationships which was unnerving because he had to dig pretty deep to find it. He threatened to "let the world know" about my sordid past because of my 1 prior marriage from when I was in my early 20s. I was worried he might find information on my husband and children which made me feel threatened. I'm sure that was his intent.

Hope this helps,

*Kai Groenke*
**Law Office of Kai Groenke, P.C.**

---

**From:** Chris Gillette <Chris@cjgillettelaw.com>
**Sent:** Monday, January 29, 2024 3:24 PM
**To:** Jesse Olsen <jesse.m.olsen@gmail.com>; Van Gillette <van@cjgillettelaw.com>; Roscoe C. Nelson <mail@roscoecnelson.com>; Admin <admin@cjgillettelaw.com>; Sara Davis <sara@roscoecnelson.com>; Kai Groenke <kai@familylawflathead.com>
**Subject:** RE: FW: Olsen: Documents Filed

All –

Does Ryan actually live in Missoula? And what bank does he work for? The US Marshall wants to know.

**Christopher J. Gillette**
**The Law Office of Christopher J. Gillette**

406.582.7918 | www.cjgillettelaw.com
chris@cjgillettelaw.com

2

Exhibit 45 p. 074

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

▫

**From:** Jesse Olsen <jesse.m.olsen@gmail.com>
**Sent:** Saturday, January 27, 2024 10:43 AM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>; Roscoe C. Nelson <mail@roscoecnelson.com>; Admin <admin@cjgillettelaw.com>; Sara Davis <sara@roscoecnelson.com>; Kai Groenke <kai@familylawflathead.com>
**Subject:** Re: FW: Olsen: Documents Filed

Chris,

Thank you for the update. Please note that my personal email was not correct in that message. It's Jesse.m.olsen@gmail.com. Additionally, I'm adding Kai to the thread as well.

If you're available right now can you please call me? Great news on the matter being dismissed with prejudice. I am obviously deeply concerned about Ryan's threat to commit murder and need advice on how I can best protect my physical safety in the immediate term.

We did not conclude the trial yesterday and the matter will continue on 2/14. Ryan lied from start to finish and came across as very dishonest and unserious. Ryan did little to help his case while doing significant damage to his credibility in my opinion, but I'll let Roscoe expand on that from a legal point of view as he sees necessary.

Thank you,

Jesse

8017102231

On Sat, Jan 27, 2024 at 9:32 AM Olsen, Jesse < Jesse.Olsen@nike.com> wrote:

**From:** Chris Gillette <Chris@cjgillettelaw.com>
**Date:** Saturday, January 27, 2024 at 7:32 AM
**To:** "jesse.m.olsen_gmail.com " <jesse.m.olsen@gmail.com>, Jesse Olsen <Jesse.Olsen@nike.com>, "Roscoe C. Nelson" <mail@roscoecnelson.com>
**Cc:** Van Gillette <van@cjgillettelaw.com>, Admin <admin@cjgillettelaw.com>
**Subject:** [External] RE: Olsen: Documents Filed

Jesse and Roscoe –

3

Exhibit 45 p. 075

A few things. First, as you can likely gather from the email chains, as of last night the federal case has been dismissed with prejudice. I suspect that he will try to file something else, but it will go nowhere. And he has delusions that he's going to argue this in front of SCOTUS, so it seems that he will start the appeal process at some point soon.

I would appreciate a quick update on the Oregon proceedings when you have a moment.

As to the email below, that is most certainly a threat to commit murder. While I think he's just spinning out in a fit of cognitive dissonance, I would report this email to the Oregon judge. Roscoe, do you need anything from me at this point for the Oregon action?

C

**Christopher J. Gillette**
**The Law Office of Christopher J. Gillette**

406.582.7918 | www.cjgillettelaw.com
chris@cjgillettelaw.com
11 E Main Street, Suite C, Bozeman MT 59715

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Ryan D. Gabriel <rgabriel@zurccapital.com>
**Sent:** Saturday, January 27, 2024 12:27 AM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>; Office GilletteLaw <office@cjgillettelaw.com>
**Cc:** jesse.m.olsen_gmail.com <jesse.m.olsen@gmail.com>; jesse.olsen_nike.com <jesse.olsen@nike.com>; Roscoe C. Nelson <mail@roscoecnelson.com>
**Subject:** Re: Olsen: Documents Filed

 I would note, to your ultimate point, that I would rather commit murder than succumb to forcibly conscripted marriage.

4

Exhibit 45 p. 076

 Conscripted marriage will not happen to me.

 Anything that would prevent that will happen.

 Anything and everything.

 Hopefully, that 'anything' will be a Fourteenth Amendment prohibition against conscripted, involuntary marriage.

 God help you all if the US Constitution does not prevail.

Sent via BlackBerry Hub+ Inbox for Android

---

**From:** rgabriel@zurccapital.com

**Sent:** January 26, 2024 11:11 PM

**To:** Chris@cjgillettelaw.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com; mail@roscoecnelson.com

**Subject:** Re: Olsen: Documents Filed

I am only threatening their intellectual security.

At the same time, in a physical match there is no contest, which is why I would never challenge any of them to a duel. It would be outright gauche.

Asa I said, this is a very good position for someone like myself to be in.

Sent via BlackBerry Hub+ Inbox for Android

5

Exhibit 45 p. 077

**From:** Chris@cjgillettelaw.com

**Sent:** January 26, 2024 10:55 PM

**To:** rgabriel@zurccapital.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com; mail@roscoecnelson.com

**Subject:** Re: Olsen: Documents Filed

That sound's an awful lot like threatening a federal court judge. Not the brightest idea. I'm guessing that's not going to go over too well.

Get Outlook for iOS

---

**From:** Ryan D. Gabriel <rgabriel@zurccapital.com>
**Sent:** Friday, January 26, 2024 11:48:59 PM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>; Office GilletteLaw <office@cjgillettelaw.com>
**Cc:** jesse.m.olsen_gmail.com <jesse.m.olsen@gmail.com>; jesse.olsen_nike.com <jesse.olsen@nike.com>; Roscoe C. Nelson <mail@roscoecnelson.com>
**Subject:** Re: Olsen: Documents Filed

On and up the court ladder to SCOTUS, as per the original plan. The presiding judge's case citation ('Eldridge v. Block') is even more transparently and laughably flimsy than the now-dismissed 'Younger' citation.

At some point it occurs to a certain kind of pro se litigant that judges have no intellectual authority whatsoever aside from the servants who starch their robes.

That's a bad position for the technocratic clerisy to find itself in.

On the flip side, I can do their jobs better on the first round, and hunt them down for bushmeat (in a pinch - though of course I would never think to do this) simultaneously. That's a very good position to be in.

6

Exhibit 45 p. 078

I am glad that I don't need to prosecute a blind dude with no valid heirs.

It is a moral relief, at minimum.

Sent via BlackBerry Hub+ Inbox for Android

**From:** Chris@cjgillettelaw.com

**Sent:** January 26, 2024 10:26 PM

**To:** rgabriel@zurccapital.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com; mail@roscoecnelson.com

**Subject:** Re: Olsen: Documents Filed

Perhaps you need to reread the order. But you believe what you want to believe. Motion denied as moot. Matter dismissed with prejudice.

Have a nice night.

Get Outlook for iOS

---

**From:** Ryan D. Gabriel <rgabriel@zurccapital.com>
**Sent:** Friday, January 26, 2024 11:21:13 PM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>; Office GilletteLaw <office@cjgillettelaw.com>
**Cc:** jesse.m.olsen_gmail.com <jesse.m.olsen@gmail.com>; jesse.olsen_nike.com <jesse.olsen@nike.com>; Roscoe C. Nelson <mail@roscoecnelson.com>
**Subject:** Re: Olsen: Documents Filed

"Craven Chris"

7

Exhibit 45 p. 079

For the legal advice I have just now offered to you, an oblivious beneficiary of such, I am going to bill you $2,341.00.

Sent via BlackBerry Hub+ Inbox for Android

**From:** rgabriel@zurccapital.com

**Sent:** January 26, 2024 10:18 PM

**To:** Chris@cjgillettelaw.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com; mail@roscoecnelson.com

**Subject:** Re: Olsen: Documents Filed

The motion for preliminary was dismissed, not the complaint itself.

There's a reason for that.

Jesse, your attorneys are not only power-starved, they are complete imbeciles.

Sent via BlackBerry Hub+ Inbox for Android

**From:** Chris@cjgillettelaw.com

**Sent:** January 26, 2024 10:03 PM

**To:** rgabriel@zurccapital.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com; mail@roscoecnelson.com

**Subject:** Re: Olsen: Documents Filed

Ok, Ryan. Your complaint was dismissed with prejudice. I'm sorry you're so angry about this and feel the need to lash out at someone. I wish you wouldn't, but I understand. It's obvious that you are passionate about the subject and this was a pretty big loss for you. I get it and can forgive the nastiness you feel compelled to direct at me.

Exhibit 45 p. 080

However, given the Court's ruling, I really do not see the need for continued dialog on the subject and I have no interest in continuing to be the object of your misguided abuse.

Have a nice night and I wish you the best of luck in the future.

C

Get Outlook for iOS

---

**From:** Ryan D. Gabriel <rgabriel@zurccapital.com>
**Sent:** Friday, January 26, 2024 10:24:16 PM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>; Office GilletteLaw <office@cjgillettelaw.com>
**Cc:** jesse.m.olsen_gmail.com <jesse.m.olsen@gmail.com>; jesse.olsen_nike.com <jesse.olsen@nike.com>; Roscoe C. Nelson <mail@roscoecnelson.com>
**Subject:** Re: Olsen: Documents Filed

Chris,

Your new nickname is 'Power-Starved Chris'.

Or as Trump might call you, "Craven Chris".

I would also note that the presiding judge today: a) Totally dismissed nearly all of Judge DeSoto's legal reasoning at my prodding:

" Accordingly, the Court concludes that Younger's abstention doctrine does not apply in this matter and, therefore, declines to adopt that portion Judge DeSoto's Findings and Recommendations" while resting on a technical snafu in my Motion for Temporary Injunction. ('Younger' comprised 95% of DeSoto's legal analysis).

... While at the same time, not dismissing the broader complaint.

9

Exhibit 45 p. 081

I am sniffing, and sniffing, and I am getting closer and closer to the source of the rot.

Rest assured, I will find it, and I will ferret it out.

Sent via BlackBerry Hub+ Inbox for Android

---

**From:** rgabriel@zurccapital.com

**Sent:** January 26, 2024 7:51 PM

**To:** Chris@cjgillettelaw.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Cc:** jesse.m.olsen@gmail.com; jesse.olsen@nike.com; mail@roscoecnelson.com

**Subject:** Re: Olsen: Documents Filed

The fact that you are a craven, power-starved family lawyer has been your nasty reality since the day you swore vengeance on the boys and girls in middle school who made you feel jealous and powerless, which I have to assume was an overwhelming majority.

A life spent on depraved revenge is a life spent in hell.

I see you.

Sent via BlackBerry Hub+ Inbox for Android

---

**From:** Chris@cjgillettelaw.com

**Sent:** January 26, 2024 4:03 PM

**To:** rgabriel@zurccapital.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Subject:** Re: Olsen: Documents Filed

Oh. Ok. Thanks, Ryan. Glad you have such clarity and hope you had a good day.

Exhibit 45 p. 082

C

Get Outlook for iOS

**From:** Ryan D. Gabriel <rgabriel@zurccapital.com>
**Sent:** Friday, January 26, 2024 2:26:59 PM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>; Office GilletteLaw <office@cjgillettelaw.com>
**Subject:** Re: Olsen: Documents Filed

You're not a nice person, so you have no business evaluating anyone in that regard. My evidence is that you are a family law attorney who doesn't want to lose the unconstitutional power that conscripted (i.e., 'common law marriage') affords your practice, even to the point of entry into this case which is a rank, craven conflict of interest.

I have always viscerally hated power-starved busybodies, and you are no exception.

Sent via BlackBerry Hub+ Inbox for Android

**From:** Chris@cjgillettelaw.com

**Sent:** January 26, 2024 8:16 AM

**To:** rgabriel@zurccapital.com; admin@cjgillettelaw.com; van@cjgillettelaw.com; office@cjgillettelaw.com

**Subject:** RE: Olsen: Documents Filed

I trust you mean the unsavory fact that Van is not my biological child, that I love him so much that I have raised him as my own, that he took my name because he wanted to, and that he is every bit my son? You mean those unsavory and sordid facts? Your efforts at personal attacks are not only ineffectual, but truly beneath you. I'm sure somewhere under all of this hatred you are a nice person.

Have a good day, Ryan.

Exhibit 45 p. 083

C

**Christopher J. Gillette**
**The Law Office of Christopher J. Gillette**

406.582.7918 | www.cjgillettelaw.com

chris@cjgillettelaw.com

11 E Main Street, Suite C, Bozeman MT 59715

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof.

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Friday, January 26, 2024 8:00 AM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>
**Subject:** Re: Olsen: Documents Filed

For proving the point that you lie so reflexively that Van's genetic test is 100% certain to reveal unsavory if not sordid information?

I don't doubt it!

> On 01/26/2024 8:56 AM EST Chris Gillette <chris@cjgillettelaw.com> wrote:

> Thank you for so succinctly proving my point.

> C

> Get Outlook for iOS

12

Exhibit 45 p. 084

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Thursday, January 25, 2024 10:29:07 PM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>; Van Gillette <van@cjgillettelaw.com>
**Subject:** Re: Olsen: Documents Filed

Oh, and not to put too fine a point on it, but:

Van - yes you, Van Gillette.

Go to 23andMe.com or Ancestry.com and order a paternity/maternity test.

You'll thank me for it later.

Ryan D. Gabriel

Zurc Capital, LLC

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

On 01/26/2024 12:24 AM EST Ryan Gabriel <rgabriel@zurccapital.com> wrote:

You absolutely have.

13

Exhibit 45 p. 085

This is remarkable testimony as to the level of rank, reflexive dishonesty that you have become accustomed to.

On 01/25/2024 11:50 PM EST Chris Gillette <chris@cjgillettelaw.com> wrote:

Ok, Ryan. Please enlighten me as to the communication I've had with Judge DeSoto. Since I've had none, this should be interesting.

Seriously, Ryan - get help.

C

Get Outlook for iOS

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Thursday, January 25, 2024 9:35:42 PM
**To:** Chris Gillette <Chris@cjgillettelaw.com>; Admin <admin@cjgillettelaw.com>
**Subject:** RE: Olsen: Documents Filed

Chris,

Further to the below, because I have a direct window into your communications with Judge DeSoto, I would note:

I've never seen someone in such a position of power and authority so simultaneously starved for it, almost as if on a salivating, fevered quest for vengeance on a certain subset of the American population.

Ryan D. Gabriel

14

Exhibit 45 p. 086

Zurc Capital, LLC

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

On 01/25/2024 7:58 PM EST Ryan Gabriel
<rgabriel@zurccapital.com> wrote:

Chris,

The attached was filed into the case today.

Ryan D. Gabriel

Zurc Capital, LLC

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

On 01/25/2024 2:24 PM EST Chris
Gillette <chris@cjgillettelaw.com>
wrote:

15

Exhibit 45 p. 087

Ok, Ryan, do whatever you think is appropriate. Thanks again for the head's up.

C

**Christopher J. Gillette**
**The Law Office of Christopher J. Gillette**

406.582.7918 | www.cjgillettelaw.com

chris@cjgillettelaw.com

11 E Main Street, Suite C, Bozeman MT 59715

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named r
email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copie

**From:** Ryan Gabriel
<rgabriel@zurccapital.com>
**Sent:** Thursday, January 25, 2024
12:22 PM
**To:** Admin
<admin@cjgillettelaw.com>; Chris
Gillette <Chris@cjgillettelaw.com>
**Subject:** Re: Olsen: Documents Filed

Chris,

You do realize, of course, that even if the outcome/ruling in the Oregon court is 100% satisfactory to me, I am

16

Exhibit 45 p. 088

still going to pursue this Federal case for damages incurred and with the intent of proceeding to overturn 'Beal v. Beal' and all related common law marriage case law everywhere in the US.

In other words, you're going to be fighting the Federal case for a long time, whether I win or lose the Oregon case. I don't give up until I win on every count, and until every last penny I have spent is reimbursed.

Ryan D. Gabriel

Zurc Capital, LLC

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

On 01/25/2024 1:12 PM EST Admin <admin@cjgillettelaw.com> wrote:

Hello Ryan,

Please see attached documents filed with the court today.

17

Exhibit 45 p. 089

Best regards,

**Sonny Munden**
**Legal Administrative Assistant, The Law Office of Chris**

406.582.7918 | www.cjgillettelaw.com

admin@cjgillettelaw.com

11 E Main Street, Suite C, Bozeman MT 59715

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for th
email by mistake, please notify the sender immediately and do not disclose the contents to anyone or n

Exhibit 45 p. 090

22DR04942



FILED
07/02/2024
Peg L. Allison
CLERK
Flathead County District Court
State of Oregon STATE OF MONTANA
County of Multnomah
By: Rachael Parra
I certify that the DR04942-0006994JF
of a document in the possession of the
court administrator for Multnomah County
Dated: 6/28/2024 1.00

Court Administrator for Multnomah County
or designee

Kevin Dougherty



1
2
3
4
5   IN THE CIRCUIT COURT OF THE STATE OF OREGON
6   FOR THE COUNTY OF MULTNOMAH
7   Family Law Department

8   JESSE MARK OLSEN,                    )   Case No. 22DR04942
9                                        )              22CV10399
        Petitioner,                      )
10                                       )   AMENDED GENERAL JUDGEMENT
        v.                               )
11  RYAN DEAN GABRIEL,                   )
                                         )
12      Respondent.                      )
    _____   )

13

14      This matter having come on before the Honorable Patrick W. Henry, Judge of the above-

15  referenced Court for trial on January 26, 2024, and February 14, 2024, upon a Petition seeking a

16  dissolution of domestic partnership, Petitioner appearing in person with his attorney, Roscoe C.

17  Nelson, Jr., Respondent appearing and representing himself, the Court having heard testimony of

18  the parties and reviewed the evidence received makes the following findings:

19                                       1.

20      Parties were in a domestic partnership from 2011 through 2022. The domestic partnership

21  shall be dissolved.

22                                       2.

23      Parties acquired properties which shall be equally and equitably divided.

24  / / / / /

25      Therefore, it is hereby ORDERED AND ADJUDGED as follows:

26

Page 1 – **AMENDED GENERAL JUDGMENT**

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

EXHIBIT 15

Exhibit 45 p. 091

1.    Case No. 22CV10399 is dismissed and the domestic partnership is hereby dissolved.

2.    With respect to the sale of the real properties, Mr. Olsen shall have final decision-making authority over all aspects of the sale process, without any interference from Mr. Gabriel who shall completely cooperate in the listing, marketing and selling of the real properties (the "Portland property" being located at 5721 SW Salmon St., Portland, OR 97221; and the "Montana property" being located at 2000 Blacktail Rd., Lakeside, MT 59922, Tax Assessor No. 980159 ). To support real estate showings to potential buyers and all realtors, including but not limited to the listing agent shall have complete and unobstructed access without any interference from Mr. Gabriel.

    a.    Mr. Olsen (Petitioner) shall select the realtors to market both the properties (5721 SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

    b.    Mr. Olsen (Petitioner) shall have rights to authority over all aspects, including, but not limited to signing listings contracts, acceptance of offers, and paperwork for closing with respect to the properties (5721 SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

    c.    Both properties may be sold as soon as possible, including through a quick sale.

    d.    Both properties shall go on the market within 30 days after the entry of this Judgment in this matter.

    e.    The opinion of both parties shall be taken into account for the sale prices for both of the properties (5721 SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 45 p. 092

| | | |
|---|---|---|
| 1 | f. | The opinion of both parties shall be taken into account for the acceptance |
| 2 | | of offers for both properties (5721 SW Salmon St., Portland, OR 97221; and |
| 3 | | 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159). |
| 4 | g. | If an agreement regarding E and F above, cannot be reached within 3 days |
| 5 | | on either or both properties (5721 SW Salmon St., Portland, OR 97221; and |
| 6 | | 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159), Mr. |
| 7 | | Olsen will have final decision-making rights. |
| 8 | h. | Realtors will have complete access to show properties, within 2 hours |
| 9 | | advance notice. Showings will occur between 9am and 8pm on all days. |
| 10 | i. | Mr. Gabriel (Respondent) is prohibited from interfering with the sale |
| 11 | | process. |
| 12 | j. | Mr. Olsen (Petitioner) and Mr. Gabriel (Respondent) have equal (50/50) |
| 13 | | responsibility for all necessary and essential home repairs related to the sale |
| 14 | | of both properties, (5721 SW Salmon St., Portland, OR 97221; and 2000 |
| 15 | | Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159) including |
| 16 | | any insurance deductibles and mortgage payments. If either party shall fail |
| 17 | | to pay his equal (50/50) share the other party shall be entitled a credit to be |
| 18 | | paid from the balance of the equity of the properties. |
| 19 | k. | Neither party shall injure, destroy, or lay waste to either real property (5721 |
| 20 | | SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, |
| 21 | | 59922, Tax Assessor No. 980159) including out buildings, fences, signage |
| 22 | | and any surrounding lot or acreage. |
| 23 | //// | |
| 24 | //// | |
| 25 | //// | |
| 26 | //// | |

Page 3 – **AMENDED GENERAL JUDGMENT**

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 45 p. 093

1          1.      Violations of any conditions of this judgement shall be subject to attorney

2                   fees, sanctions and costs.

3

4

5      Dated this _____ day of _____, 202___.

6

                               **6/21/2024 4:24:35 PM**

7

8                             **Circuit Court Judge Patrick W. Henry**

9

10

11  Respectfully submitted by:

12  <u>Attorney for Petitioner:</u>
     Roscoe C. Nelson, Jr., OSB #732218
13  811 SW Naito Parkway, Suite 200
     Portland, OR  97204
14  Telephone: (503) 222-1081
     Fax:  (503) 222-6441
15  E-mail:  mail@roscoecnelson.com

16

17  <u>Petitioner:</u>
     Jesse Mark Olsen
     5721 SW Salmon Street
18  Portland, OR 97221
     Jesse.m.olsen@gmail.com
19  (801)-710-2231

20

21

22

23

24

25

26

Page 4 – **AMENDED GENERAL JUDGMENT**

Exhibit 45 p. 094

## CERTIFICATE OF READINESS FOR SUBMISSION

This proposed order or judgment is ready for judicial signature because:

1.　　☐Each opposing party affected by this order or judgment has stipulated to the order or judgment, as shown by each opposing party's signature on the document being submitted.

2.　　☐Each opposing party affected by this order or judgment has approved the order or judgment, as shown by signature on the document being submitted or written confirmation of approval sent to me.

3.　　☒I have served a copy of this order or judgment on all parties entitled to service and;

　　　(a)　　☒No objection has been served on me.

　　　(b)　　☐I received objections that I could not resolve with the opposing party despite reasonable efforts to do so. I have filed a copy of the objections I received and indicated which objections remain unresolved.

　　　(c)　　☐After conferring about objections, role and name of opposing party agreed to independently file any remaining objection.

4.　　☐The relief sought is against an opposing party who has been found in default.

5.　　☐An order of default is being requested with this proposed judgment.

6.　　☐Service is not required pursuant to UTCR 5.100(3), or by statute, rule or otherwise.

7.　　☐This is a proposed judgment that includes an award of punitive damages and notice has been served on the Director of Crime Victims' Assistance Section as required by subsection (4) of this rule.

　　　DATED this 18th day of June 2024.

　　　　　　　　　　s/ Roscoe C. Nelson, Jr.
　　　　　　　　　　ROSCOE C. NELSON, JR., OSB #732218
　　　　　　　　　　attorneys@roscoecnelson.com
　　　　　　　　　　Attorney for Petitioner

Exhibit 45 p. 095

## Kai Groenke

| | |
|---|---|
| **From:** | Montana Real Estate Group <mtreg@cyberport.net> |
| **Sent:** | Monday, July 15, 2024 4:58 PM |
| **To:** | Kai Groenke; 'Jesse Olsen' |
| **Subject:** | RE: FW: 2000 Blacktail Road Lakeside, MT |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hello Jesse and Kai,

I visited the property this afternoon. Place is looking good. Grass mowed, no trash and well maintained structures. There are two locked gates however one was open and I noticed walking up to the two "cabins" there were windows open and air conditioners running. While taking pictures of the outside of the cabins an AirB&B tenant came out and we talked. He said he was renting short term for the week with his family members of 7 total and paying just under $10,000. He invited me inside both cabins and I have a good idea of what we are selling now. I will come up with a figure for listing price tomorrow Jesse. The interiors were in clean condition and operational. I saw no damage. The renters had their personal stuff scattered all over the place and I declined to take any pictures for marketing purposes. There were no certified mail notices or stickers for mail on the doors or gates to the property. I did not notice a mail box there either. I understood from Ryan's one correspondence he was living in Seattle area and still working at Zurc Capital LLC. Thought to mention that is case he could be served there or if you need me to post the notice on the property I can do that.

This still leaves the issue of access to the property. I will need the Air B&B schedule and renters contacts info, gate padlock key, door lock punch codes and Ryan's cooperation on his schedule occupying the property to arrange showings for prospective buyers. We cannot arrive at the property with buyer clients and run into occupants that have not been notified or are hostile to our efforts. That of course would be for showings at the price point of fair market value. If you want us to obtain offers for sight unseen prospects we could try at a price point that is in the wholesale territory. One idea would be to have the prospects book a short term stay if they could fit into the schedule which I am sure could be booked for several months in advance or we instruct them to do drive by or walk around looks and solicit offers with inspection contingency period for when it can be arranged to get them inside. There is still no response from Ryan to my last email and Jesse may consider having the locks changed or recoded and given to us for access. This may solve the short term renter issue as well. This situation is difficult but solvable in which I will need your advice and directions. We are ready to go to work and can assist you with how we move forward from here.

Fritz

Montana Real Estate Group
(406) 250-5151 Fritz Cell
(406) 837-6000 Office



**REAL ESTATE GROUP**

**From:** Kai Groenke [mailto:kai@familylawflathead.com]
**Sent:** Monday, July 15, 2024 1:24 PM
**To:** Fritz Groenke <mtreg@cyberport.net>; 'Jesse Olsen' <jesse.m.olsen@gmail.com>
**Subject:** RE: FW: 2000 Blacktail Road Lakeside, MT

1

EXHIBIT 16

Exhibit 45 p. 096

**Kai Groenke**

| | |
|---|---|
| **From:** | Kai Groenke <taylorkai@hotmail.com> |
| **Sent:** | Thursday, July 18, 2024 2:01 PM |
| **To:** | Kai Groenke |

https://youtu.be/FyK4bPfFMF8?si=O6Y2XZlmt5Ah2J_R

Kai

EXHIBIT 17

Exhibit 45 p. 097

**Kai Groenke**

| | |
|---|---|
| **From:** | Kai Groenke <taylorkai@hotmail.com> |
| **Sent:** | Thursday, July 18, 2024 2:01 PM |
| **To:** | Kai Groenke |

https://youtube.com/shorts/9mMIHgEeM14?si=xGjoLjaoUJ5nOtrZ
Kai

1

EXHIBIT 18

Exhibit 45 p. 098

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Tuesday, July 16, 2024 6:23 PM |
| **To:** | Kai Groenke; mtreg@cyberport.net |
| **Subject:** | Re: Threats |

Further to the below, bottom line is this:



Leave me alone and you will both be fine. There appears to be a settlement on the table regarding the Montana property and if you continue to try and stir up trouble for me, that (apparently public) geneology data - once it gets out - would have everyone named Groenke at each others' throats.

On 07/16/2024 3:16 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Further to the below, if (as you claim) there is a US Marshall "looking into" this, it's curious that they haven't simply called me. I am quite sure that in one single conversation, I could quickly redirect their interest to focus on the Groenke Crime Cartel.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/16/2024 3:05 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Taylor,



It is you and Fritz who are harassing me, and you are vividly aware of that fact. You seem to be operating an ensnarement and extortion racket, and if so, you will be aggressively pursued by a Trump DOJ or possibly the Montana AG's office as I am thoroughly documenting everything the two of you have done to this point.

I didn't even know you had children, which begs the question of whether Fritz has comprehension issues.

There were no threats made against any federal judge - this is total nonsense. Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to.

Jesse does not have clearance to sell the Lakeside property - there is an appeal in place and under a worst case scenario a supersedeas bond will be posted to secure a temporary stay of Judge Henry's order while the case is on appeal. Even Jesse's Portland attorney concedes that process will likely take 24 months or so.

1

EXHIBIT 19

Exhibit 45 p. 099

In the interim, do not step foot on my property. The geneology data I have received on the Groenke family could make life very uncomfortable for all of you - and the best part is that it appears to be public data.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/16/2024 2:13 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

Ryan,

I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will be interested in hearing you continue to threaten people. Do not _ever_ threaten my children.

You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale.

*Kai Groenke*

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT 59901

Tel: (406)-890-2999

www.familylawflathead.com

2

Exhibit 45 p. 100

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

Exhibit 45 p. 101

**Kai Groenke**

| | |
|---|---|
| **From:** | Ryan Gabriel <rgabriel@zurccapital.com> |
| **Sent:** | Tuesday, July 16, 2024 8:11 PM |
| **To:** | Kai Groenke; mtreg@cyberport.net |
| **Cc:** | Philip Li |
| **Subject:** | Re: Threats |

Taylor (/Fritz),



I just realized that you have confirmed and exposed (with this e-mail) a pretty severe conflict of interest under the Montana State Bar association rules.

If you: a) believe Fritz to be your father (biological or not), and you b) prodded him in some fashion to intrude on the property yesterday to set off a firestorm of events - in which he gave my guest false and defamatory information - and you c) are simultaneously representing Jesse Olsen in the local Flathead County partition claim, in which you sought a stay in that case for the financial benefit of someone you believe to be your father, and you d) misrepresented the motive for seeking a stay to the local Court, I can get a lot of mileage out of that with a separate lawsuit against you, Fritz, or both which would subsequently require the production of discovery documents.



For that effort, I really would hire a prominent lawyer to assist in a suit for tortious interference with a contract - because getting to the bottom of the financial arrangements between you and Fritz (and Jesse) would pretty much unpack what appears to be a criminal scheme that would probably also get you disbarred.

You are hereby instructed to preserve all documentation, financial and otherwise, between you and Fritz on this matter, including any communications you had with Jesse and Fritz leading up to his forced entry and trespass onto my property.



Any further action you or Fritz take to interfere with my use of my property will be prosecuted vigorously. And to be clear, there is no hint of physical threat in any of this, to either of you, by me.



Instead, I will be pursuing legal remedies which are now rather remarkable.

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/16/2024 3:05 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Taylor,

It is you and Fritz who are harassing me, and you are vividly aware of that fact. You seem to be operating an ensnarement and extortion racket, and if so, you will be aggressively pursued by a Trump DOJ or possibly the Montana AG's office as I am thoroughly documenting everything the two of you have done to this point.

1

EXHIBIT 20

Exhibit 45 p. 102

Ryan's Contact information:

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

Exhibit 45 p. 103



Exhibit 45 p. 104

## IN THE JUSTICE COURT OF THE STATE OF MONTANA
## IN AND FOR THE COUNTY OF FLATHEAD
## BEFORE PAUL SULLIVAN, JUSTICE OF THE PEACE
## 935 1ST AVE WEST KALISPELL, MT 59901
## (406) 758-5643

| | |
|---|---|
| **Order of Protection** | **Case No:** CV-385-2024-0001021-OP |
| Order Effective Until: **08/22/2026** | **Petitioning on behalf of:**<br>And/or on behalf of minor family member(s)<br>(list name, relationship): |
| Fritz Groenke ,<br> ·       Petitioner,<br><br>vs.<br><br>Ryan Dean Gabriel ,<br>    Respondent.<br><br> · | Federal Firearm Disqualification Criteria:<br>☒ Hearing/actual notice with opportunity to participate<br>☐ Intimate partner (married/divorced/common child/cohabitates or has cohabitated.<br> · ☐ Order includes condition 1 or 2<br>☒ Order finds credible threat or prohibits use, attempted use, or threatened use of physical force<br>**Caution:**<br>☐ Weapon Involved<br>☐ Weapon on Property |

**THE COURT HEREBY FINDS:**

- ☐ The Petitioner is in danger of harm. This Court acts without notice to the Respondent because harm may result to the Petitioner if the Order of Protection is not issued immediately.
- ☒ This Court has jurisdiction over the parties and subject matter, and the Respondent has been provided with reasonable notice and opportunity to be heard.
- ☐ The parties stipulate, without hearing or finding of fact, to the Order of Protection.
  Additional findings of this order are set forth below.

**THE COURT HEREBY ORDERS:**

- ☒ That the above named Respondent be restrained from committing further acts of violence or threats of violence.
- ☒ That the above named Respondent **shall stay at least 1500 feet away from** Petitioner's
  ✓ person, ✓ home, ✓ workplace, ✓ vehicle, ___ children's school/daycare,
  ___ other: _____
  Additional terms of this order are set forth below.

### WARNINGS TO RESPONDENT:

**This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced on Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal**

Exhibit 46 p. 001

imprisonment (18 U.S.C. Section 2262). **Federal law provides penalties for possessing, transporting, shipping, or receiving and firearm or ammunition (18 U.S.C. Section 922(g)(8). Only the court can change this order.**

**THE COURT FINDS** from the Petition that the Petitioner is in danger of harm. This Court acts without notice to the Respondent because harm may result to the Petitioner if the Order of Protection is not issued immediately.

1. Respondent is restrained from assaulting, threatening, abusing, harassing, following, or stalking the Petitioner. Respondent must not harass, annoy, or disturb the peace or do any of those things to the following people (may include family members, witnesses to the offense, or other victims of the offense.): **NA**

2. Respondent must not threaten to commit or commit acts of violence against Petitioner or other person listed in #1 above.

3. The following applies to Petitioner's present residence:

   a. Petitioner's current location is a secret and will remain confidential.
   **-OR-**
   b. Respondent must stay away from Petitioner's residence below **or** wherever Petitioner may reside: **NA**

4. Respondent must not telephone, email, text message, social network, write, contact, or otherwise communicate, directly or indirectly or through a third party with Petitioner or the following people (may include family members, witnesses to the offense, or other victims of the offense.): **Same as #1 above.**

5. Respondent must not take the following child(ren) out of this county: **NA**

6. Respondent used or threatened Petitioner with a firearm. Respondent is prohibited from owning, possessing and/or purchasing a firearm. **PDS** ( **Check only if applicable**)

7. Other civil or criminal actions pending involving the parties include: **NA.**

8. Respondent must not take, hide, sell, damage or dispose of Petitioner's property.

9. Respondent must give Petitioner possession or use of the following items (items may include the residence, automobile, and other essential personal property regardless of ownership): **NA**

10. A peace officer is directed to accompany Petitioner/Respondent to the residence to ensure Petitioner/Respondent safely obtains possession or removal of the property listed above.

**\*\*PETITIONER/RESPONDENT MAY REMOVE WORK TOOLS, ESSENTIAL CLOTHING, AND PERSONAL EFFECTS FROM THE HOME IN THE PRESENCE OF A PEACE OFFICER AND AT THE OFFICER'S DISCRETION. \*\***

Exhibit 46 p. 002

11. The Court orders the following additional relief to provide for the safety and welfare of the Petitioner or other family members: **NA.**

**This Order of Protection shall continue in full force and effect until 08/22/2026.**
**Petitioner should immediately report any violation of this order to law enforcement.**

# WARNING

**Violation of this Order is a criminal offense under Montana Code Annotated § 45-5-220 or § 45-5-626 and may carry penalties of up to $10,000.00 in fines and up to a 5 year jail sentence.**
**This Order is issued by the Court and the Respondent is forbidden to do any act listed in the Order, even if invited by the Petitioner or another person. This Order may be amended only by further order of this Court or another court that assumes jurisdiction over this matter.**

The Sheriff is hereby directed to serve, without cost to Petitioner, a copy of this Temporary Order of Protection together with a copy of Petitioner's petition upon Respondent and to file a return of service with the clerk of this court. This service will be as soon as possible and before the date of the hearing.

ISSUED this August 22, 2024.

_____
Paul Sullivan
Justice of the Peace

Exhibit 46 p. 003

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR MULTNOMAH COUNTY

| | | |
|---|---|---|
| JESSE MARK OLSEN, | ) | No. 22DR04942 |
| Petitioner, | ) | |
| | ) | ORDER DENYING |
| and | ) | STAY MOTIONS AND |
| | ) | SUSTAINING OBJECTIONS |
| RYAN DEAN GABRIEL, | ) | TO UNDERTAKING |
| | ) | |
| Respondent. | ) | |

This matter was presented to the court at a July 24, 2024 telephonic hearing.

George Kelly (attorney for petitioner), Andrew Newsom (attorney for respondent),

and respondent, personally, were present. The hearing was held to resolve the

petitioner's objections to the respondent's July 1, 2024 "Supersedeas Undertaking

Pursuant to ORS 19.335, 19.555," his July 1, 2024 "Motion to Stay Execution of

Amended Judgment Pending Appeal," his July 2, 2024 "Motion to Stay Execution

of Amended Judgment Pending Appeal," his July 2 "Undertaking on Appeal

Pursuant to ORS 19.300," his July 6, 2024 "Supersedeas Undertaking Pursuant to

ORS 19.335, 19.355," and his July 8, 2024 "Motion to Stay Execution of

Amended Judgment Pending Appeal." The court heard arguments and accepted

the parties' agreement that the reasonable value of the use and occupation of their

Exhibit 47 p. 001

1   Montana home came to $4,318 monthly and that, because respondent is a half

2   owner, the posting that will effect a stay is 24 times half of that amount (*i.e.,* a

3   posting of $51,816). It then ruled that respondent's undertakings were insufficient

4   on account of respondent's failure to post a bond, letter of credit, or cash in support

5   of them.

6          Therefore, it is now ORDERED that petitioner's objections are sustained,

7   respondent's stay motions are denied, and there is presently no stay of the

8   provisions of the court's Amended General Judgment.

9

10                                                    8/14/2024 3:39:54 PM

11

12                                                    _Patrick W. Henry_

                                                      **Circuit Court Judge Patrick W. Henry**

13

14   Submitted by:

15   _George W. Kelly (822980)_
     George W. Kelly (822980)
16   Attorney for Respondent
     Date: 8/8/24

17   Approved as to form:

18

19   _____ August 7, 2024
20   Andrew Newsom (096119)
     Attorney for Petitioner
21

George W. Kelly (822980) * 303 West 10th Avenue, Eugene, OR 97401 * (541) 343-1884          PAGE 2

Exhibit 47 p. 002

## CERTIFICATE OF READINESS

The proposed order is ready for judicial signature as shown by the signature of

the parties' attorney, which is set out on the document.

George W. Kelly (822980)
Dated: 8/8/24
Attorney for Jesse Olsen

Exhibit 47 p. 003

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

IN THE DISTRICT COURT OF THE STATE OF MONTANA
FOR THE COUNTY OF FLATHEAD

| | | |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | No. _____ |
| Petitioner, | ) | **SWORN PETITION FOR TEMPORARY ORDER OF** |
| vs. | ) | **PROTECTION AND REQUEST FOR HEARING BY HON. JUDGE ALLISON** |
| | ) | |
| JESSE MARK OLSEN | ) | **(PER STANDING ORDER DIRECTING FILING OF ORDERS OF** |
| Respondent. | ) | **PROTECTION DATED JAN. 25, 2023)** |

The law requires that Respondent be given a copy of this completed form ('Petition for Temporary Order of Protection and Request for Hearing – AGO Form OVS 3 – Revised 02/11) and all attachments (see attached).

1.  **Request for Temporary Order of Protection.** Under oath and as provided by Mont. Code Ann. §40-15-201, and per the standing 'ORDER DIRECTING FILING OF ORDERS OF PROTECTION' dated January 25th, 2023[1], I hereby request that the Court issue a Temporary Order of Protection against the Respondent(s). I believe I am in danger of imminent harm if the court does not issue a Temporary Order of protection immediately. Respondent JESSE MARK OLSEN is a party "to a pending (already filed with an assigned case number [No. DV-22-605]) … case involving … a party located outside Montana). Respondent JESSE MARK OLSEN is an Oregon citizen, permanently residing in Oregon since 2009. Respondent JESSE MARK OLSEN is Defendant in Case No. DV-22-605, currently pending under Judge Robert B. Allison.

2.  **Protected Person/s.** Myself, Petitioner/Plaintiff RYAN DEAN GABRIEL.

---

[1] *See* attached **Exhibit 1,** Standing 'ORDER DIRECTING FILING OF ORDERS OF PROTECTION' (Signed by Hon. Amy Eddy, Hon. Robert B. Allison, Hon. Heidi J. Ulbricht, Hon. Dan Wilson and Hon. Danni Coffman, District Court Judges – Montana Eleventh Judicial Court, Flathead County) – Dated January 25, 2023.

Exhibit 48 p. 001

Name  Ryan Dean Gabriel
Address  2000 Blacktail Rd. #1140
City, State, Zip  Lakeside, MT 59922
Telephone No.  (403) 606-5859
(206) 391-9886

IN THE _ELEVENTH JUDICIAL DISTRICT_ COURT

STATE OF MONTANA

COUNTY OF _FLATHEAD_

| | | |
|---|---|---|
| RYAN DEAN GABRIEL , | ) | No. _____ |
| Petitioner | )<br>)<br>) | |
| | )<br>) | **SWORN PETITION FOR**<br>**TEMPORARY** |
| | )<br>) | **ORDER OF PROTECTION**<br>**AND REQUEST FOR HEARING** |
| JESSE MARK OLSEN | )<br>) | |
| Respondent | ) | |

The law requires that Respondent be given a copy of this completed form and all attachments.

1. **Request for Temporary Order of Protection.** Under oath and as provided by Mont. Code Ann. § 40-15-201, I request that the Court issue a Temporary Order of Protection against Respondent. I believe I am in danger of harm if the court does not issue a Temporary Order of Protection immediately.

2. **Protected Person/s.** I am seeking an Order of Protection for *(check all that apply):*
   ☒ Myself
   ☐ The following minor child/ren:

| Child/ren | Age | How child is related to: | | Who does child live with? |
|---|---|---|---|---|
| | | You | Respondent | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 1 of 9

Exhibit 48 p. 002

☐ Other people you would like to be protected *(first and last names and relationship to both you and Respondent)*: _____
_____
_____

3. **Residence.** I live or am staying in the City of __LAKESIDE__,
County of __FLATHEAD__, State of __MONTANA__.
The Respondent lives in the City of __PORTLAND, KALISPELL and BIGFORK__,
County of __MULTNOMAH and FLATHEAD__, State of __OREGON and MONTANA__
The abuse happened in the City of __LAKESIDE__,
County of __FLATHEAD__, State of __MONTANA__.
*(Check all that apply).*

☐ The Respondent does not live with me.
☑ I live with the Respondent at __2000 Blacktail Rd., Lakeside MT 59922__
☑ I have left a residence where I lived with the Respondent. I want to return: __* Fritz Groenke, previously Jesse Olsen__
  ☑ to live at that residence
  ☑ to get personal belongings
  ☑ other *(describe):* __Respondents have each taken aggressive, illegal and violent__
☑ A business is run from the home. __actions to try and make it unsafe for me to live__
Type of business *(describe):* __Various.__ __in my own permanent residence (which I own).__
The business is run by: ☑ me  ☐ Respondent  ☐ both me and Respondent

4. **Relationship.** *(Please check all that apply to the relationship between the Respondent (the person you want restrained) and you or the person(s) for whom you are seeking protection)*

☑ I (or the person I want protected) have/has a relationship with Respondent as follows:
  ☐ Married
  ☐ Were married, but are now separated
  ☐ Divorced
  ☐ Are currently dating or having an ongoing intimate relationship
  ☑ Live together *(Fritz Groenke claims he has 24/7 authorization to manage my home).*
  ☑ Lived together in the past *(Jesse Mark Olsen claims we lived together previously).*
  ☐ Have a child and/or children together
  ☐ Is a family member or a former family member of Respondent
  ☑ Dated or had an ongoing intimate relationship in the past *(Jesse Olsen claims as much)*
  ☑ Has filed for a Protective Order that would preclude me from living in or accessing my own home/residence within a radius of 2500 feet. (Kai Groenke). thus far, that Protective Order has not been signed. Scheduled for hearing on 8/8/24. Requesting the Petition be transferred to this District Court per the Standing " ORDER DIRECTING FILING OF ORDERS OF PROTECTION" signed by Judge Allison (1/25/2023).*

* See attached Exhibit 1.

Exhibit 48 p. 003

If a dating relationship please describe:

Nature of relationship _Jesse Mark Olsen claims it was a 'domestic partnership.'_

Length of time of the dating relationship _Respondent claims it stretched from 2010-2022._

How often saw each other _Respondents claim the majority of that time frame._

Time since relationship ended _Respondents claim it 'ended' in March 2022._

☑ Victim of Sexual Assault/ Stalking/ Other: *(describe how you know Respondent)*

_Frederick "Fritz" Groenke broke into my house, vandalized and destroyed my electronic entrance gate, harassed my guests and illegally trespassed on my property. Taylor "Kai" Groenke is his daughter. She instructed him to do this to provoke a reaction that she is now trying to leverage into a de facto eviction of me from my own home._

☐ I am the parent, guardian or other person supervising the welfare of a child less than 16 years of age and request that Respondent, who is a person over 18 years of age and who has no legal right of supervision or control over the child, to stop contacting the child because I believe that the contact is not in the child's best interests as set forth in MCA § 45-5-622 (4).

5. **Information about the violence.** Please explain what the Respondent did to you (and/or the person you want protected). Be specific. Write down places and dates as well as you can remember. It does not matter when the abuse happened or whether you reported it to the police. But you must tell the judge why you are afraid now.

A. RECENT ABUSE

Date of the most recent abuse: _July 19, 2024_

Who was there? _Taylor "Kai" Groenke_

Where did it take place? _Kai Groenke filed a Petition for Protective Order in the wrong court (the Justice Court via Paul Sullivan) and served it to me.*_

What did the Respondent do or say that made you (and/or the person you want protected) afraid? _In Kai Groenke's Petition for Protective Order, she seeks my eviction from_

Did the Respondent use or threaten to use a gun or other weapon? If yes, list how: _my own home._

_Taylor "Kai" Groenke is misappropriating her license to practice law and her connections in law enforcement to essentially scare me out_

Describe any injuries: _None yet, except for a vandalized/broken_ of my own home. _electronic security gate at my home._

Did the police come? ☐ Yes   ☐ No

_* Served it to me at my neighbor's entrance gate via armed security. Kai Groenke's latest romantic partner, David C. Dowell, also happens to be a probation and patrol officer who works adjacent to the Justice Court via Paul Sullivan. This entire sequence of events reeks of conflicts of interest._

Exhibit 48 p. 004

B. PAST ABUSE

Describe any past abuse. Explain what happened in past situations. Be sure to explain when the abuse occurred, where it happened, and who was there. Explain why you (and/or the person you want protected) are afraid now.

*Need more space to write - please see attached "Explanation of What Happened".*

☑ Check here if you need more space to write. Attach a sheet of 8 ½ x 11 paper and write: "Explanation of What Happened" at the top. Do **NOT** use the back of this form.

6. **Firearms** *(Check all that apply)*

To the best of your knowledge, does Respondent currently possess firearms?

Exhibit 48 p. 005

# *Explanation of What Happened*

**B.** PAST ABUSE

   **"Describe any past abuse.** Explain what happened in past situations. Be sure to explain when the abuse occurred, where it happened, and who was there. Explain why you (and/or the person you want protected) are afraid now."

   *Starting with the most recent event, going back in time:*

   **July 23, 2024:** Respondent Frederick "Fritz" Groenke, a notorious local realtor, listed my permanent residential home and my own real property without my consent on Zillow.com, Redfin.com, Realtor.com, via the Montana MLS (among other avenues), by invoking an Oregon lower court judgement which was the subject of a temporary Stay by Supersedeas Undertaking at the time of its listing, and which is currently pending appeal in the Oregon Court of Appeals. (*See* **Exhibit 2**, attached). In other words, Fredrick "Fritz" Groenke did not have legal authorization to list the property at the time of its listing; he was advised as much by my Oregon attorney (Andrew Newsom, Partner – Holtey Law Firm), and he listed it anyway, in active coordination with his alleged biological daughter, Taylor "Kai" Groenke. (*See* **Exhibit 3**, attached). That same day, I also witnessed the electronic gate that Respondent Frederick "Fritz" Groenke forcibly broke by forcing his way through it, along with the unauthorized listing of my property, accompanied by the copyrighted, misleading and far-outdated photos that "Fritz" illegally used in his listing – photos that still belong to Cecil Waatti, another local realtor. (*See* **Exhibit 11**, attached).

   **Friday, July 19, 2024:** Respondent Taylor "Kai" Groenke filed a Petition for Protective Order with the Justice Court of the State of Montana (Flathead) before Hon. Paul Sullivan, Justice of the Peace. Kai Groenke currently represents Jesse Mark Olsen in Case No. DV-22-605, which per the Standing 'ORDER' (*See* **Exhibit 1**, attached), signed by the Hon. Judge Allison, shows that she is attempting to circumvent the District Court's Order and use the connections of her latest romantic partner and alleged "husband", David C. Dowell, to endorse her quasi-extralegal, now sought after Protective Order. In this

Exhibit 48 p. 006

Protective Order, Taylor "Kai" Groenke seeks a ruling that I, Petitioner/Plaintiff Ryan Dean Gabriel, "shall stay at least 2,500 feet from … 2000 Blacktail Road, Lakeside MT 59922" – which happens to be my permanent residence and home, and which I own and live in. In other words, Respondent Taylor "Kai" Groenke is trying to use her alleged husband's connections under Hon. Paul Sullivan, Justice of the Peace, to evict me from my own home ostensibly so that her father, Frederick "Fritz" Groenke (a realtor) can sell it out from underneath me for some undisclosed commission. (*See* **Exhibit 4**, attached).

**Thursday, July 18, 2024:** In her petition, which was notably signed on July 18, 2024, Taylor "Kai" Groenke makes several brazenly false and substantively dishonest claims, such as "He [Petitioner/Plaintiff Ryan Dean Gabriel] sent a video of a horror movie clip showing someone getting shot in the face while referencing my family." The video in question does not show anyone getting shot in the face, and the fact that "Fritz" Groenke is her alleged biological father – whom she knowingly sent to illegally trespass (per Montana Penal Code 45-6-203) on my property – is by Taylor "Kai" Groenke's own design. (*See* **Exhibit 5**, attached). Per local consensus, this well-rehearsed sequence of events comprises a methodical system that Respondents "Kai" and "Fritz" Groenke (hereinafter, "the Groenkes") have deployed in the past to provoke and ensnare other less capable and/or more vulnerable local residents and constituents of this very Court. The "genealogy data" that "Kai" Groenke cites repeatedly in her own Petition for Protective Order is largely public information that is heavily suggestive of widespread infidelity within the Groenke family, mostly in relation to the older Groenke generations (i.e., I, Petitioner/Plaintiff Ryan Dean Gabriel, had previously no knowledge of Taylor "Kai" Groenke's new claims that she herself has children; I only learned this upon receipt of her Petition for Protective Order). (*See* **Exhibit 6**, attached). Respondent Taylor "Kai" Groenke submitted her own sought-after Petition for Protective Order along with approximately 101 pages of documentation, most of which is hastily assembled and surprisingly exculpatory of me (the instant Petitioner) in the context of her allegations of harassment in Case No. DV-22-605. In fact, the 101 pages she filed with her own Petition for Protective Order appears to be a "data dump" of her entire legal file in Case No. DV-22-605, much if not most of which probably violates my personal privacy and her confidentiality obligations to her client, Respondent Jesse Mark Olsen. Moreover, this frantic "data dump" seems to implicate both "Kai" and "Fritz" Groenke

**PAGE 2 OF 5**

Exhibit 48 p. 007

in a wide range of probable criminal felony acts, including trespassing, ensnarement, racketeering, vandalism, and conspiracy to commit fraud, along with various conflicts of interest wherever their professional licenses are concerned.

**Tuesday, July 16, 2024:** Respondent Taylor "Kai" Groenke self-incriminates and reveals via e-mail that she coordinated her father's unlawful trespass onto my residential property. In her rushed e-mail exchange, which attempted to re-frame the events from Monday, July 15, 2024, Taylor "Kai" Groenke alleged that the US Marshall's office was "looking for" me – a completely false claim that I was able to verify with the US Marshall's office – which indicates that she also likely tried to "report" me to the US Marshall's office using false, misleading and/or defamatory information (*See* **Exhibit 7**, attached). Beyond this, "Kai" Groenke's e-mail reveals proactive coordination between herself and her alleged biological father, Frederick "Fritz" Groenke. Prior to receipt of this e-mail from "Kai" Groenke, I was unsure of the exact connection between "Fritz" and "Kai" Groenke, but she exposed the nature of that connection with this statement which she issued in response to my brief text exchange with "Fritz" Groenke the previous day: *"Ryan, I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will be interested in hearing you continue to threaten people. Do not ever threaten my children. You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale."* (*See* **Exhibit 8**, attached). As established previously, here "Kai" Groenke is referring to the now-invoked Oregon lower court judgement which was the subject of a temporary Stay by Supersedeas Undertaking at the time of its listing, and which is currently pending appeal in the Oregon Court of Appeals. (*See* **Exhibit 9**, attached). To her e-mail, I also replied, "Taylor, It is you and Fritz who are harassing me, and you are vividly aware of that fact. (…) I didn't even know you had children, which begs the question of whether Fritz has comprehension issues. There were no threats made against any federal judge - this is total nonsense. Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to. (*See* **Exhibit 10**, attached)." I continued, "Jesse does not have clearance to

Exhibit 48 p. 008

sell the Lakeside property - there is an appeal in place (...) Even Jesse's Portland attorney concedes that process will likely take 24 months or so. In the interim, do not step foot on my property." (*See* **Exhibit 7**, attached).

**Monday, July 15, 2024:** "Fritz" Groenke sent an e-mail apparently dictated by "Kai" Groenke (I base this upon his syntax from our text exchange later in the day), in which "Kai" Groenke conspicuously omits the rest of the thread/exchange. Later in the day, I received a series of notifications from my guest at my residence from "Albert", a guest of mine staying at the property. (*See* **Exhibit 12**, attached). Guest "Albert" said Respondent "Fritz" Groenke busted the electronic security gate by trying to force it open, and then walked onto the property unannounced (to me or anyone) and conveyed to my guest "Albert" highly inappropriate and potentially defamatory private information about me, Petitioner/Plaintiff Ryan Dean Gabriel, in an attempt to intimidate and harass myself and my guests. Andrew Newsom, an appellate attorney and partner of a law firm (Holtey Law) who I have retained in Oregon for that local appellate case, has advised me that "Fritz" Groenke was not authorized to intrude on the property because there was a Stay on a motion in the case in question -- along with a pending appeal to a legal outcome that Fritz is hoping transpires, but which has not yet transpired and which is unlikely to transpire. Andrew Newsom's office # is 503.224.9878 and his e-mail is anewsom@holteylaw.com. (*See* **Exhibit 3**, attached).

**March 13, 2024:** Respondent Jesse Mark Olsen attempts to use the same exact e-mail thread cited above by "Kai" Groenke to attempt to obtain a Protective/Restraining Order under Oregon's "Family Abuse and Prevention Act" ("FAPA") against me, Petitioner Ryan Dean Gabriel. Respondent Jesse Mark Olsen's Oregon FAPA Petition is flatly denied by the Multnomah County Judge on this date (*See* **Exhibit 10**, attached). I am unsure if this repeated use of the same event constitutes some type of "double jeopardy", as I am not sure if these are criminal or quasi-criminal proceedings (Protective and Restraining Orders), and I have never previously been a party to any criminal action that I am aware of, in any jurisdiction. In other words, I (Petitioner/Plaintiff Ryan Dean Gabriel) have a spotless record; I've never been arrested for anything, ever, or accused of anything ever, until this latest volley of Petitions for Orders of Protection by the instant Respondents ("the Groenkes") and Respondent/Defendant Jesse Mark Olsen.

PAGE 4 OF 5

Exhibit 48 p. 009

1   That said, between the Respondents Jesse Mark Olsen and his lawyer, Taylor "Kai" Groenke, this latest

2   Petition for Order of Protection (via Hon. Paul Sullivan's Justice of the Peace office, Multnomah County)

3   is now the *fourth* attempt in *four different courts* to obtain similar protective orders against me,

4   Petitioner/Plaintiff Ryan Dean Gabriel, using the same documentation. (Emphasis added.) All three prior

5   attempts for the same Petitions against me, the instant Petitioner/Plaintiff, were flatly denied by the

6   respective judges in those Petitions (*See* **Exhibit 13**, attached). Conversely, this is my (Petitioner/Plaintiff

7   Ryan Dean Gabriel) *first* attempt *in any court* to obtain any Protective Order against any of the

8   Respondents named in this Petition. (Emphasis added.)

9

10      Quite frankly, after this relentless sequence of legal shenanigans by the Respondents, it is my

11  opinion at this point that Respondent Taylor "Kai" Groenke ought to be referred by this Court to the

12  Montana State Bar for disbarment or other sanctions, and sanctions should be also applied by Hon. Judge

13  Allison to Respondent Jesse Mark Olsen in the instant case, **No. DV-22-605.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAGE 5 OF 5

Exhibit 48 p. 010

☐ No ☑ Yes

Where are the firearms located? _Presumably scattered around their_
_various residences. They are constantly embroiled in litigation and law_
_enforcement controversies. Most would be in Big Fork + Kalispell._

7. **Other Court Cases** *(Check all that apply)*

☐ A divorce, legal separation or custody case between me (and/or the person I want protected)
and Respondent has been filed in _____ County, State of

_____

Is the family law case listed above still pending? ☐ Yes ☐ No
Did the Court issue a parenting plan? ☐ Yes ☐ No

☐ A criminal charge of _____ was filed
against me or Respondent in _____ Court in
_____ County, State of _____

☑ List any other cases that you (and/or the person you want protected) or Respondent are or
have been involved in: _The instant Case No. DV-22-605, in addition to_
_Taylor "Kai" Groenke's newly filed Petition for Protective order, improperly_
_filed with Hon. Paul Sullivan, Justice of the Peace, in Kalispell._

## I ask the Court to Order the Following:

1. ☑ Respondent shall not commit or threaten to commit acts of violence against me (and/or the
person I want protected) and the following people including family members: _____
_* This includes in particular, criminal trespass on my residential_
_property located at 7000 Blacktail Rd., Lakeside MT 59922, and vandalism_
_⤷ (Excludes Respondent Jesse Mark Olsen)._          _of the same._

2. ☑ Respondent shall not harass, annoy, disturb the peace of, telephone, email, contact, or
otherwise communicate, directly or indirectly, with me (or the person I want protected), and the
following family members, other victims of the abuse, or witnesses to the abuse:
_* Any guest of mine staying at my property at my invitation; that_
_property being 7000 Blacktail Rd., Lakeside, MT 59922._
_⤷ (Excludes Respondent Jesse Mark Olsen)._

3. ☐ Respondent shall not take the following child/ren out of this County or State:

_____

_____

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 5 of 9

Exhibit 48 p. 011

4. ☑ *(List the distance, up to 1500 feet, that you want Respondent to stay away from you and/or the person you want protected and the places you check below).*

Respondent shall stay at least __2500__ feet from:
☑ Me (Petitioner)
☐ Minor child/ren _____

☐ Other people: _____
_____

☑ My home (if you want the location of your home to be secret, do not list)
☑ My job or workplace: *(I work for a national bank HQ'd in Utah).*
☑ My vehicle: *A dark gray 2018 BMW X4 with Montana plates.*
☐ The child/ren's school and/or child care: _____

☐ Other places (describe): _____
_____

5. ☐ Respondent used or threatened me with firearms. Respondent shall not possess these firearms *(describe):* _

6. ☑ Respondent shall not take, hide, sell, damage or dispose of property belonging to me (and/or the person who I want protected) or Respondent or both of us.

7. ☑ Respondent shall give me (or the person I want protected) possession or use of the following items (items may include the residence, automobile and other essential personal property no matter who owns it): *2000 Blacktail Rd., Lakeside, MT 59922 (my home).*
_____
_____

8. ☐ I (and/or the person I want protected) need a peace officer to help get possession of the property listed in Number 7, or I request that a peace officer come with Respondent when picking up his/her property or belongings.

9. ☐ The Court should order Respondent to complete violence counseling, which may include alcohol or chemical dependency counseling or treatment, if appropriate.

10. ☐ The Court should order the following to provide for the safety and welfare of me and/or the person I want protected, and family: _____
_____
_____
_____
_____

Exhibit 48 p. 012

11. Parenting of Child/ren

**Note:** Justice and City and Municipal Courts can protect minor children by listing them on the Order of Protection. Although these courts can provide short term visitation plans, they cannot make parenting plans. If you need a parenting plan, you need to file an action in your local District or Tribal Court.

*(Choose one)*

☑ Parenting of children does not apply in this case.

☐ The protections I have asked for in Paragraph 2 will keep Respondent away from the children. Therefore a visitation schedule is unnecessary.

☐ I want the children listed in Appendix A to have parenting time with Respondent. I am attaching Appendix A that says what visitation schedule I want. *(Fill in and attach Appendix A).*

12. Other Relief: The Court should order other protection as it deems just and proper.

Respondants, collectively, must be ordered to end their 3-year campaign to evict me from my own home and sell it out from under me without my consent.
↳ 2000 Blacktail Rd.
Lakeside, MT 59922

**I SWEAR UNDER OATH OR AFFIRM I HAVE READ THIS APPLICATION, OR HAVE HAD IT READ TO ME, AND THE FACTS STATED IN THIS APPLICATION ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I ALSO UNDERSTAND THAT PROVIDING FALSE INFORMATION IS A CRIME.**

Date: 8/3/24                    Signed: _____
                                              Petitioner

Exhibit 48 p. 013

**NOTARY SEAL OR JUDGE'S SIGNATURE**

STATE OF MONTANA    )
                   : ss.
County of _____ )

SUBSCRIBED AND SWORN to before me this ___ day of _____, 20____.

_____
JUDGE/CLERK/NOTARY

(For use by notary)

_____ (signed)

Name _____ (printed)

Notary Public for the State of Montana.

Residing at _____

My Commission Expires_____

Exhibit 48 p. 014

## APPENDIX A

In this form, you will tell the Judge how the temporary visitation will take place under safe and peaceful conditions. You must have a very good reason before the Judge will deny the Respondent visitation. The visitation schedule will be temporary. For permanent parenting arrangements, you must file an action with your local District or Tribal Court.

Parenting schedules generally include:

- visits that take place on a regular basis;
- visits that vary in length depending on the ages and needs of the children.

Children *(List all children, whether or not you have asked that they be protected by the Order of Protection):*

| Children | Age | How child is related to You Respondent | | Who does child live with? | State(s) where child lived in the last 6 months? |
|----------|-----|------|------|------|------|
| N/A | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

CHECK the visitation option that you want.

☐ I request the following visitation schedule:

_____
_____
_____
_____

☐ Supervised visits *(List why, and supervised by whom):* _____
_____
_____
_____

☐ Neutral drop off and pick up location: _____
☐ Transportation provided by: _____
☐ I request the Respondent have no visitation with the children because: _____
_____
_____
_____

Exhibit 48 p. 015

**FILED**

08/09/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Anissa Neils
DR-15-2024-0000475-OR
Eddy, Amy
2.00

Robert B. Allison
District Court Judge
Flathead County District Court
920 South Main Street, Ste 300
Kalispell, MT 59901
(406) 758-5870

## MONTANA 11TH JUDICIAL DISTRICT
## FLATHEAD COUNTY

| | |
|---|---|
| **Ryan Dean Gabriel** <br>  Petitioner, <br><br> vs <br><br> **Jesse Mark Olsen** <br>  Respondent. | **Case No:**   **DR-15-2024-0000475-OR** <br><br><br> **ORDER DENYING TEMPORARY ORDER OF PROTECTION** |

This matter was assigned by the Clerk to Judge Amy Eddy who is presently unavailable, thus it is being addressed at this time by the undersigned, and not because Petitioner has so requested.  The matter fails to meet criteria for a Temporary Order of Protection for the following reasons:

1.  There is no "relationship" pled, as required, in that Petitioner, in each relationship provision in his Petition, references what others may have claimed, but makes no claims of his own.  In addition, he adds a box creating a new category of his own.

2.  Petitioner references other litigation which is not subject to a temporary order of protection.

3.  Petitioner has a long list of complaints and grievances against Taylor Kai Groenke and Frederick Fritz Groenke, but his petition is against Jesse Mark Olsen whom he has not alleged to be a domestic partner, only said that Mr. Olsen has alleged same against him, and has made no reference to threats of harm or violence from Respondent Olsen against Petitioner Gabriel.  Rather, Petitioner complains about a "relentless sequence of legal shenanigans by the Respondent".

4.  That the purpose of a Temporary Order of Protection is generally to prevent domestic violence against a petitioner by a family member or intimate partner, unless exceptions exist based on statutory provisions relating to threats or commissions of certain crimes of violence by non-related parties.  Here, it appears that there is litigation between the parties hereto relative to a dispute over real property.  The Court also understands that TOP proceedings have been conducted in Justice Court, Flathead County.  However, the instant Petition is deficient for the aforementioned reasons as it fails to meet basic criteria for a TOP.

Exhibit 49 p. 001

NOW, THEREFORE,

IT IS HEREBY ORDERED that this matter is DISMISSED.

DATED and electronically signed below.

Electronically Signed By:
Hon. Judge Robert B. Allison
On Behalf Of:
Hon. Judge Amy Eddy
Fri, Aug 09 2024 04:12 PM

Exhibit 49 p. 002



**Peg L. Allison**
**Clerk of District Court**

Eleventh Judicial
District

Flathead County
920 South Main, Ste 300
Kalispell, MT 59901
(406) 758-5870
*pallison@flathead.mt.gov*

August 12, 2024

Ryan Gabriel
2000 Blacktail Road #1140
Lakeside MT 59922

RE:    **DV-2022-605   Ryan Gabriel v Jesse Olson**

Dear Mr. Gabriel,

The enclosed document entitled *Sworn Petition for Temporary Order of Protection...*
received for filing on August 5, 2024 has been rejected by the court pursuant to the enclosed
Local Standing Order regarding order of protection cases.  All standing orders can be viewed
at https://flathead.mt.gov/department-directory/clerk_of_court/district-court-orders.

Cordially,

Peg L. Allison
Clerk of Court

Encl.

ec:    Kai Groenke

Exhibit 50 p. 001

Amy Eddy
Robert B. Allison
Heidi J. Ulbricht
Dan Wilson
Danni Coffman
DISTRICT COURT JUDGES
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, Montana 59901
(406) 758-5906

## THE MONTANA ELEVENTH JUDICIAL DISTRICT COURT
## FLATHEAD COUNTY

| | |
|---|---|
| IN RE MONTANA ELEVENTH JUDICIAL DISTRICT RULES OF PRACTICE | ORDER DIRECTING FILING OF ORDERS OF PROTECTION |

Effective February 25, 2020, Petitions for Temporary Orders of Protection will be heard by District Court Judges in cases involving parties to a pending (already filed with an assigned case number) dissolution, parenting, or paternity case, or cases involving an alleged victim in a pending felony criminal matter or involving a party located outside Montana.

All other parties seeking an order of protection should contact Flathead County Justice Court, Kalispell Municipal Court, Whitefish Municipal Court, or Columbia Falls City Court for filing.

DATED this 25th day of January, 2023.

_____
Amy Eddy, District Court Judge

_____
Robert B. Allison, District Court Judge

_____
Heidi J. Ulbricht, District Court Judge

_____
Dan Wilson, District Court Judge

_____
Danni Coffman, District Court Judge

1

Exhibit 50 p. 002

**Ryan Dean Gabriel, *Pro Se***
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

CLERK OF DISTRICT COURT

2024 AUG -5 PM 3:23

FILED

REJECTED

THE MONTANA ELEVENTH JUDICIAL DISTRICT COURT
FOR THE COUNTY OF FLATHEAD

| | | |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | No. __DV-22-605__ |
| Petitioner/Plaintiff, | ) | **SWORN PETITION FOR** |
| | | **TEMPORARY ORDER OF** |
| vs. | ) | **PROTECTION AND REQUEST FOR** |
| | | **HEARING BY HON. JUDGE ALLISON** |
| JESSE MARK OLSEN, TAYLOR "KAI" | ) | **IN CASE NO. DV-22-605** |
| GROENKE and FREDERICK "FRITZ" | | |
| JOHN GROENKE | ) | **(PER STANDING ORDER** |
| | | **DIRECTING FILING OF ORDERS OF** |
| Respondents/Defendant. | ) | **PROTECTION DATED JAN. 25, 2023)** |

The law requires that Respondent be given a copy of this completed form ('Petition for Temporary Order of Protection and Request for Hearing – AGO Form OVS 3 – Revised 02/11) and all attachments (see attached).

1. **Request for Temporary Order of Protection.** Under oath and as provided by Mont. Code Ann. §40-15-201, and per the standing 'ORDER DIRECTING FILING OF ORDERS OF PROTECTION' dated January 25th, 2023[1], I hereby request that the Court issue a Temporary Order of Protection against the Respondent(s). I believe I am in danger of imminent harm if the court does not issue a Temporary Order of protection immediately. Respondent JESSE MARK OLSEN is a party "to a pending (already filed with an assigned case number [No. DV-22-605]) … case involving … a party located outside Montana)." Respondent JESSE MARK OLSEN is an Oregon citizen, permanently residing in Oregon since 2009. Respondent JESSE MARK OLSEN is Defendant in Case No. DV-22-605, currently pending under Judge Robert B. Allison.

2. **Protected Person/s.** Myself, Petitioner/Plaintiff RYAN DEAN GABRIEL.

---

[1] *See* attached **Exhibit 1**, Standing 'ORDER DIRECTING FILING OF ORDERS OF PROTECTION' (Signed by Hon. Amy Eddy, Hon. Robert B. Allison, Hon. Heidi J. Ulbricht, Hon. Dan Wilson and Hon. Danni Coffman, District Court Judges – Montana Eleventh Judicial Court, Flathead County) – Dated January 25, 2023.

Exhibit 50 p. 003

Name Ryan Dean Gabriel
Address 2000 Blacktail Rd. #1140
City, State, Zip Lakeside, MT 59922
Telephone No. (403) 606-5859
(206) 391-9886

IN THE <u>ELEVENTH JUDICIAL DISTRICT</u> COURT

STATE OF MONTANA

COUNTY OF <u>FLATHEAD</u>

<table>
<tr><td><u>RYAN DEAN GABRIEL</u>,<br>Petitioner/Plaintiff<br><br>v.<br><br>JESSE MARK OLSEN, TAYLOR "KAI"<br>GROENKE and FREDERICK "FRITZ"<br>JOHN GROENKE,<br>Respondents/Defendant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>No. <u>DV-22-605</u><br><br>SWORN PETITION FOR<br>TEMPORARY<br>ORDER OF PROTECTION<br>AND REQUEST FOR HEARING BY HON.<br>JUDGE ALLISON IN CASE No. DV-22-605<br>(Per Standing ORDER DIRECTING FILING<br>OF ORDERS OF PROTECTION - JAN. 25, 2023)</td></tr>
</table>

The law requires that Respondent be given a copy of this completed form and all attachments.

1. **Request for Temporary Order of Protection.** Under oath and as provided by Mont. Code Ann. § 40-15-201, I request that the Court issue a Temporary Order of Protection against Respondent. I believe I am in danger of harm if the court does not issue a Temporary Order of Protection immediately. *(Please see previous accompanying caption/cover page).*

2. **Protected Person/s.** I am seeking an Order of Protection for *(check all that apply):*
   ☒ Myself
   ☐ The following minor child/ren:

<table>
<tr><td rowspan="2">Child/ren</td><td rowspan="2">Age</td><td colspan="2">How child is related to:</td><td rowspan="2">Who does child live with?</td></tr>
<tr><td>You</td><td>Respondent</td></tr>
<tr><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td></tr>
</table>

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 1 of 9

Exhibit 50 p. 004

☐ Other people you would like to be protected *(first and last names and relationship to both you and Respondent):* _____

_____

_____

3. **Residence.** I live or am staying in the City of <u>LAKESIDE</u>,
County of <u>FLATHEAD</u>, State of <u>MONTANA</u>.
The Respondent lives in the City of <u>PORTLAND, KALISPELL and BIGFORK</u>,
County of <u>MULTNOMAH and FLATHEAD</u>, State of <u>OREGON and MONTANA</u>
The abuse happened in the City of <u>LAKESIDE</u>,
County of <u>FLATHEAD</u>, State of <u>MONTANA</u>.
*(Check all that apply).*
☐ The Respondent does not live with me.
☑ I live with the Respondent at <u>2000 Blacktail RD., Lakeside MT 59922</u>
☑ I have left a residence where I lived with the Respondent. I want to return: *Fritz Groenke previously Jesse Olsen*
  ☑ to live at that residence
  ☑ to get personal belongings
  ☑ other *(describe):* <u>Respondents have each taken aggressive, illegal and violent</u>
☑ A business is run from the home. *actions to try and make it unsafe for me to live in my own permanent residence (which I own).*
Type of business *(describe):* <u>Various.</u>
The business is run by: ☑ me   ☐ Respondent   ☐ both me and Respondent

4. **Relationship.** *(Please check all that apply to the relationship between the Respondent (the person you want restrained) and you or the person(s) for whom you are seeking protection)*
☑ I (or the person I want protected) have/has a relationship with Respondent as follows:
  ☐ Married
  ☐ Were married, but are now separated
  ☐ Divorced
  ☐ Are currently dating or having an ongoing intimate relationship
  ☑ Live together *(Fritz Groenke claims he has 24/7 authorization to manage my home)*
  ☑ Lived together in the past *(Jesse Mark Olsen claims we lived together previously)*
  ☐ Have a child and/or children together
  ☐ Is a family member or a former family member of Respondent
  ☑ Dated or had an ongoing intimate relationship in the past *(Jesse Olsen claims as much)*
  ☑ Has filed for a Protective Order that would preclude me from living in or accessing my own home/residence within a radius of 2500 feet. (Kai Groenke). thus far, that Protective Order has not been signed. Scheduled for hearing on 8/8/24. Requesting the Petition be transferred to this District Court per the Standing "ORDER DIRECTING FILING OF ORDERS OF PROTECTION" signed by Judge Allison (1/25/2023).*

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11

* See attached Exhibit 1.

Exhibit 50 p. 005

If a dating relationship please describe:

Nature of relationship _Jesse Mark Olsen claims it was a 'domestic partnership'_

Length of time of the dating relationship _Respondent claims it stretched from 2010-2022._

How often saw each other _Respondents claim the majority of that timeframe._

Time since relationship ended _Respondents claim it 'ended' in March 2022._

☑ Victim of Sexual Assault/ Stalking/ Other: *(describe how you know Respondent)*

_Frederick "Fritz" Groenke broke into my house, vandalized and destroyed my electronic entrance gate, harassed my guests and illegally trespassed on my property. Taylor "Kai" Groenke is his daughter. She instructed him to do this to provoke a reaction that she is now trying to leverage into a de facto eviction_

☐ I am the parent, guardian or other person supervising the welfare of a child _of me from my own home._ less than 16 years of age and request that Respondent, who is a person over 18 years of age and who has no legal right of supervision or control over the child, to stop contacting the child because I believe that the contact is not in the child's best interests as set forth in MCA § 45-5-622 (4).

5. **Information about the violence.** Please explain what the Respondent did to you (and/or the person you want protected). Be specific. Write down places and dates as well as you can remember. It does not matter when the abuse happened or whether you reported it to the police. But you must tell the judge why you are afraid now.

A. RECENT ABUSE

Date of the most recent abuse: _July 19, 2024_

Who was there? _Taylor "Kai" Groenke_

Where did it take place? _Kai Groenke filed a Petition for Protective Order in the wrong Court (the Justice Court via Paul Sullivan) and served it to me.*_

What did the Respondent do or say that made you (and/or the person you want protected) afraid? _In Kai Groenke's Petition for Protective Order, she seeks my eviction from_

Did the Respondent use or threaten to use a gun or other weapon? If yes, list how: _my own home_

_Taylor "Kai" Groenke is misappropriating her license to practice law and her connections in law enforcement to essentially scare me out_

Describe any injuries: _None yet, except for a vandalized/broken_ _of my own home._ _electronic security gate at my home._

Did the police come? ☐ Yes    ☐ No

_* Served it to me at my neighbor's entrance gate via armed security. Kai Groenke's latest romantic partner, David C. Dowell, also happens to be a probation and parole officer who works adjacent to the Justice Court via Paul Sullivan. This entire sequence of events reeks of conflicts of interest._

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11

Page 3 of 9

Exhibit 50 p. 006

B. **PAST ABUSE**

Describe any past abuse. Explain what happened in past situations. Be sure to explain when the abuse occurred, where it happened, and who was there. Explain why you (and/or the person you want protected) are afraid now._____

_____ *Need more space to write - please see_____

_____ attached "Explanation of What Happened"._____

☑ Check here if you need more space to write. Attach a sheet of 8 ½ x 11 paper and write: "Explanation of What Happened" at the top. Do **NOT** use the back of this form.

6. **Firearms** *(Check all that apply)*

To the best of your knowledge, does Respondent currently possess firearms?

Exhibit 50 p. 007

1

### _Explanation of What Happened_

2

3    **B.** PAST ABUSE

4    **"Describe any past abuse.** Explain what happened in past situations. Be sure to explain

5    when the abuse occurred, where it happened, and who was there. Explain why you (and/or the

6    person you want protected) are afraid now."

7

8

9    _Starting with the most recent event, going back in time:_

10   **July 23, 2024:** Respondent Frederick "Fritz" Groenke, a notorious local realtor, listed my

11   permanent residential home and my own real property without my consent on Zillow.com, Redfin.com,

12   Realtor.com, via the Montana MLS (among other avenues), by invoking an Oregon lower court judgement

13   which was the subject of a temporary Stay by Supersedeas Undertaking at the time of its listing, and which

14   is currently pending appeal in the Oregon Court of Appeals. (_See_ **Exhibit 2,** attached). In other words,

15   Fredrick "Fritz" Groenke did not have legal authorization to list the property at the time of its listing; he

16   was advised as much by my Oregon attorney (Andrew Newsom, Partner – Holtey Law Firm), and he listed

17   it anyway, in active coordination with his alleged biological daughter, Taylor "Kai" Groenke. (_See_ **Exhibit**

18   **3,** attached). That same day, I also witnessed the electronic gate that Respondent Frederick "Fritz"

19   Groenke forcibly broke by forcing his way through it, along with the unauthorized listing of my property,

20   accompanied by the copyrighted, misleading and far-outdated photos that "Fritz" illegally used in his

21   listing – photos that still belong to Cecil Waatti, another local realtor. (_See_ **Exhibit 11,** attached).

22

23   **Friday, July 19, 2024:** Respondent Taylor "Kai" Groenke filed a Petition for Protective Order

24   with the Justice Court of the State of Montana (Flathead) before Hon. Paul Sullivan, Justice of the Peace.

25   Kai Groenke currently represents Jesse Mark Olsen in Case No. DV-22-605, which per the Standing

26   'ORDER' (_See_ **Exhibit 1,** attached), signed by the Hon. Judge Allison, shows that she is attempting to

27   circumvent the District Court's Order and use the connections of her latest romantic partner and alleged

28   "husband", David C. Dowell, to endorse her quasi-extralegal, now sought after Protective Order. In this

Exhibit 50 p. 008

Protective Order, Taylor "Kai" Groenke seeks a ruling that I, Petitioner/Plaintiff Ryan Dean Gabriel, "shall stay at least 2,500 feet from … 2000 Blacktail Road, Lakeside MT 59922" – which happens to be my permanent residence and home, and which I own and live in. In other words, Respondent Taylor "Kai" Groenke is trying to use her alleged husband's connections under Hon. Paul Sullivan, Justice of the Peace, to evict me from my own home ostensibly so that her father, Frederick "Fritz" Groenke (a realtor) can sell it out from underneath me for some undisclosed commission. (*See* **Exhibit 4**, attached).

**Thursday, July 18, 2024:** In her petition, which was notably signed on July 18, 2024, Taylor "Kai" Groenke makes several brazenly false and substantively dishonest claims, such as "He [Petitioner/Plaintiff Ryan Dean Gabriel] sent a video of a horror movie clip showing someone getting shot in the face while referencing my family." The video in question does not show anyone getting shot in the face, and the fact that "Fritz" Groenke is her alleged biological father – whom she knowingly sent to illegally trespass (per Montana Penal Code 45-6-203) on my property – is by Taylor "Kai" Groenke's own design. (*See* **Exhibit 5**, attached). Per local consensus, this well-rehearsed sequence of events comprises a methodical system that Respondents "Kai" and "Fritz" Groenke (hereinafter, "the Groenkes") have deployed in the past to provoke and ensnare other less capable and/or more vulnerable local residents and constituents of this very Court. The "genealogy data" that "Kai" Groenke cites repeatedly in her own Petition for Protective Order is largely public information that is heavily suggestive of widespread infidelity within the Groenke family, mostly in relation to the older Groenke generations (i.e., I, Petitioner/Plaintiff Ryan Dean Gabriel, had previously no knowledge of Taylor "Kai" Groenke's new claims that she herself has children; I only learned this upon receipt of her Petition for Protective Order). (*See* **Exhibit 6**, attached). Respondent Taylor "Kai" Groenke submitted her own sought-after Petition for Protective Order along with approximately 101 pages of documentation, most of which is hastily assembled and surprisingly exculpatory of me (the instant Petitioner) in the context of her allegations of harassment in Case No. DV-22-605. In fact, the 101 pages she filed with her own Petition for Protective Order appears to be a "data dump" of her entire legal file in Case No. DV-22-605, much if not most of which probably violates my personal privacy and her confidentiality obligations to her client, Respondent Jesse Mark Olsen. Moreover, this frantic "data dump" seems to implicate both "Kai" and "Fritz" Groenke

PAGE 2 OF 5

Exhibit 50 p. 009

in a wide range of probable criminal felony acts, including trespassing, ensnarement, racketeering, vandalism, and conspiracy to commit fraud, along with various conflicts of interest wherever their professional licenses are concerned.

**Tuesday, July 16, 2024:** Respondent Taylor "Kai" Groenke self-incriminates and reveals via e-mail that she coordinated her father's unlawful trespass onto my residential property. In her rushed e-mail exchange, which attempted to re-frame the events from Monday, July 15, 2024, Taylor "Kai" Groenke alleged that the US Marshall's office was "looking for" me – a completely false claim that I was able to verify with the US Marshall's office – which indicates that she also likely tried to "report" me to the US Marshall's office using false, misleading and/or defamatory information (*See* **Exhibit 7**, attached). Beyond this, "Kai" Groenke's e-mail reveals proactive coordination between herself and her alleged biological father, Frederick "Fritz" Groenke. Prior to receipt of this e-mail from "Kai" Groenke, I was unsure of the exact connection between "Fritz" and "Kai" Groenke, but she exposed the nature of that connection with this statement which she issued in response to my brief text exchange with "Fritz" Groenke the previous day: ***"Ryan, I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will be interested in hearing you continue to threaten people. Do not ever threaten my children. You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale."*** (*See* **Exhibit 8**, attached). As established previously, here "Kai" Groenke is referring to the now-invoked Oregon lower court judgement which was the subject of a temporary Stay by Supersedeas Undertaking at the time of its listing, and which is currently pending appeal in the Oregon Court of Appeals. (*See* **Exhibit 9**, attached). To her e-mail, I also replied, "Taylor, It is you and Fritz who are harassing me, and you are vividly aware of that fact. (…) I didn't even know you had children, which begs the question of whether Fritz has comprehension issues. There were no threats made against any federal judge - this is total nonsense. Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to. (*See* **Exhibit 10**, attached)." I continued, "Jesse does not have clearance to

PAGE 3 OF 5

Exhibit 50 p. 010

sell the Lakeside property - there is an appeal in place (...) Even Jesse's Portland attorney concedes that process will likely take 24 months or so. In the interim, do not step foot on my property." (*See* **Exhibit 7**, attached).

**Monday, July 15, 2024:** "Fritz" Groenke sent an e-mail apparently dictated by "Kai" Groenke (I base this upon his syntax from our text exchange later in the day), in which "Kai" Groenke conspicuously omits the rest of the thread/exchange. Later in the day, I received a series of notifications from my guest at my residence from "Albert", a guest of mine staying at the property. (*See* **Exhibit 12**, attached). Guest "Albert" said Respondent "Fritz" Groenke busted the electronic security gate by trying to force it open, and then walked onto the property unannounced (to me or anyone) and conveyed to my guest "Albert" highly inappropriate and potentially defamatory private information about me, Petitioner/Plaintiff Ryan Dean Gabriel, in an attempt to intimidate and harass myself and my guests. Andrew Newsom, an appellate attorney and partner of a law firm (Holtey Law) who I have retained in Oregon for that local appellate case, has advised me that "Fritz" Groenke was not authorized to intrude on the property because there was a Stay on a motion in the case in question – along with a pending appeal to a legal outcome that Fritz is hoping transpires, but which has not yet transpired and which is unlikely to transpire. Andrew Newsom's office # is 503.224.9878 and his e-mail is anewsom@holteylaw.com. (*See* **Exhibit 3**, attached).

**March 13, 2024:** Respondent Jesse Mark Olsen attempts to use the same exact e-mail thread cited above by "Kai" Groenke to attempt to obtain a Protective/Restraining Order under Oregon's "Family Abuse and Prevention Act" ("FAPA") against me, Petitioner Ryan Dean Gabriel. Respondent Jesse Mark Olsen's Oregon FAPA Petition is flatly denied by the Multnomah County Judge on this date (*See* **Exhibit 10**, attached). I am unsure if this repeated use of the same event constitutes some type of "double jeopardy", as I am not sure if these are criminal or quasi-criminal proceedings (Protective and Restraining Orders), and I have never previously been a party to any criminal action that I am aware of, in any jurisdiction. In other words, I (Petitioner/Plaintiff Ryan Dean Gabriel) have a spotless record; I've never been arrested for anything, ever, or accused of anything ever, until this latest volley of Petitions for Orders of Protection by the instant Respondents ("the Groenkes") and Respondent/Defendant Jesse Mark Olsen.

PAGE 4 OF 5

Exhibit 50 p. 011

1  That said, between the Respondents Jesse Mark Olsen and his lawyer, Taylor "Kai" Groenke, this latest

2  Petition for Order of Protection (via Hon. Paul Sullivan's Justice of the Peace office, Multnomah County)

3  is now the *fourth* attempt in *four different courts* to obtain similar protective orders against me,

4  Petitioner/Plaintiff Ryan Dean Gabriel, using the same documentation. (Emphasis added.) All three prior

5  attempts for the same Petitions against me, the instant Petitioner/Plaintiff, were flatly denied by the

6  respective judges in those Petitions (*See* **Exhibit 13**, attached). Conversely, this is my (Petitioner/Plaintiff

7  Ryan Dean Gabriel) *first* attempt *in any court* to obtain any Protective Order against any of the

8  Respondents named in this Petition. (Emphasis added.)

9

10      Quite frankly, after this relentless sequence of legal shenanigans by the Respondents, it is my

11  opinion at this point that Respondent Taylor "Kai" Groenke ought to be referred by this Court to the

12  Montana State Bar for disbarment or other sanctions, and sanctions should be also applied by Hon. Judge

13  Allison to Respondent Jesse Mark Olsen in the instant case, **No. DV-22-605**.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

☐ No  ☑ Yes

Where are the firearms located? _Presumably scattered around their various residences. They are constantly embroiled in litigation and law enforcement controversies. Most would be in Big Fork + Kalispell._

## 7. Other Court Cases (Check all that apply)

☐ A divorce, legal separation or custody case between me (and/or the person I want protected) and Respondent has been filed in _____ County, State of

_____

Is the family law case listed above still pending? ☐ Yes  ☐ No

Did the Court issue a parenting plan? ☐ Yes  ☐ No

☐ A criminal charge of _____ was filed against me or Respondent in _____ Court in _____ County, State of _____

☑ List any other cases that you (and/or the person you want protected) or Respondent are or have been involved in: _The instant Case No. DV-22-605, in addition to Taylor "Kai" Groenke's newly filed Petition for Protective Order, improperly filed with Hon. Paul Sullivan, Justice of the Peace, in Kalispell._

## I ask the Court to Order the Following:

1. ☑ Respondent shall not commit or threaten to commit acts of violence against me (and/or the person I want protected) and the following people including family members: _* This includes in particular, criminal trespass on my residential property located at 2000 Blacktail Rd., Lakeside MT 59922, and vandalism of the same. ⟶ (Excludes Respondent Jesse Mark Olsen)._

2. ☑ Respondent shall not harass, annoy, disturb the peace of, telephone, email, contact, or otherwise communicate, directly or indirectly, with me (or the person I want protected), and the following family members, other victims of the abuse, or witnesses to the abuse: _* Any guest of mine staying at my property at my invitation; that property being 2000 Blacktail Rd., Lakeside, MT 59922. ⟶ (Excludes Respondent Jesse Mark Olsen)._

3. ☐ Respondent shall not take the following child/ren out of this County or State:

_____

_____

Exhibit 50 p. 013

4. ☑ (List the distance, up to 1500 feet, that you want Respondent to stay away from you and/or the person you want protected and the places you check below).

Respondent shall stay at least __2500__ feet from:
☑ Me (Petitioner)
☐ Minor child/ren _____
_____

☐ Other people: _____
_____

☑ My home (if you want the location of your home to be secret, do not list)
☑ My job or workplace: _(I work for a national bank HQ'd in Utah)._
☑ My vehicle: _A dark gray 2018 BMW X4 with Montana plates._
☐ The child/ren's school and/or child care: _____
_____

☐ Other places (describe): _____
_____

5. ☐ Respondent used or threatened me with firearms. Respondent shall not possess these firearms (describe): _

6. ☑ Respondent shall not take, hide, sell, damage or dispose of property belonging to me (and/or the person who I want protected) or Respondent or both of us.

7. ☑ Respondent shall give me (or the person I want protected) possession or use of the following items (items may include the residence, automobile and other essential personal property no matter who owns it): _2000 Blacktail Rd., Lakeside, MT 59922 (my home)._
_____

8. ☐ I (and/or the person I want protected) need a peace officer to help get possession of the property listed in Number 7, or I request that a peace officer come with Respondent when picking up his/her property or belongings.

9. ☐ The Court should order Respondent to complete violence counseling, which may include alcohol or chemical dependency counseling or treatment, if appropriate.

10. ☐ The Court should order the following to provide for the safety and welfare of me and/or the person I want protected, and family: _____
_____
_____
_____

Exhibit 50 p. 014

11. Parenting of Child/ren

**Note:** Justice and City and Municipal Courts can protect minor children by listing them on the Order of Protection. Although these courts can provide short term visitation plans, they cannot make parenting plans. If you need a parenting plan, you need to file an action in your local District or Tribal Court.

*(Choose one)*

☑ Parenting of children does not apply in this case.

☐ The protections I have asked for in Paragraph 2 will keep Respondent away from the children. Therefore a visitation schedule is unnecessary.

☐ I want the children listed in Appendix A to have parenting time with Respondent. I am attaching Appendix A that says what visitation schedule I want. *(Fill in and attach Appendix A)*.

12. Other Relief: The Court should order other protection as it deems just and proper.

Respondents, collectively, must be ordered to end their 3-year campaign to evict me from my own home and sell it out from under me without my consent. ⟶ 2000 Blacktail Rd. Lakeside, MT 59922

**I SWEAR UNDER OATH OR AFFIRM I HAVE READ THIS APPLICATION, OR HAVE HAD IT READ TO ME, AND THE FACTS STATED IN THIS APPLICATION ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I ALSO UNDERSTAND THAT PROVIDING FALSE INFORMATION IS A CRIME.**

Date: 8/3/24          Signed: _____
                              Petitioner

Exhibit 50 p. 015

**NOTARY SEAL OR JUDGE'S SIGNATURE**

STATE OF MONTANA )
                     : ss.
County of _____ )

SUBSCRIBED AND SWORN to before me this ___ day of _____, 20____.

_____
JUDGE/CLERK/NOTARY

(For use by notary)

_____(signed)
Name _____(printed)
Notary Public for the State of Montana.
Residing at _____
My Commission Expires_____

Exhibit 50 p. 016

## Certificate of Service

I do hereby certify that on the __3ᴿᴰ__ day of __August__ ,
20 _24_ ,

I served a true and correct copy of

this "Sworn Petition for Temporary Order of Protection
and Request for Hearing by Hon. Judge Allison in Case No. DV-22-605"
_✓_ upon the following interested person(s) by the method and at the address set forth
below:

__JESSE MARK OLSEN__          [✓] U.S. Mail/first class postage prepaid
Name

__650 S. GAINES STREET, UNIT 1914__   [✓] Hand Delivery
Address

__PORTLAND  OR   97239__       [ ] Other _____
City      State      Zip Code

_____
Signature

__RYAN D. GABRIEL__
Printed Name

Exhibit 50 p. 017

## Certificate of Service

I do hereby certify that on the __3ʳᵈ__ day of __August__ ,
20 _24_ ,

I served a true and correct copy of

this "Sworn Petition for Temporary Order of Protection
and Request for Hearing by Hon. Judge Allison in Case No. DV-22-605 "
✓ upon the following interested person(s) by the method and at the address set forth
below:

__Taylor "Kai" Groenke__          [✓] U.S. Mail/first class postage prepaid
Name
__239 2ⁿᵈ Street West__          [✓] Hand Delivery
Address
__Kalispell, MT    59901__          [ ] Other _____
City       State       Zip Code

_____
Signature

__Ryan D. Gabriel__
Printed Name

**Motion For Substitution of Judge**                    10/1/2015

Exhibit 50 p. 018

## Certificate of Service

I do hereby certify that on the __3ᵉᴰ__ day of __AUGUST__ ,
20 __24__ ,
I served a true and correct copy of
_This "Sworn Petition for Temporary Order of Protection_
_and Request for Hearing by Hon. Judge Allison in Case No. DV-22-605"_
✓ upon the following interested person(s) by the method and at the address set forth
below:

__FREDERICK "FRITZ" GROENKE__     [✓] U.S. Mail/first class postage prepaid
Name
__553 ELECTRIC AVE (BOX 216)__     [✓] Hand Delivery
Address
__BIGFORK    MT    59911__     [ ] Other _____
City        State        Zip Code

_____
Signature

_____
Printed Name

Exhibit 50 p. 019

**APPENDIX A**

In this form, you will tell the Judge how the temporary visitation will take place under safe and peaceful conditions. You must have a very good reason before the Judge will deny the Respondent visitation. The visitation schedule will be temporary. For permanent parenting arrangements, you must file an action with your local District or Tribal Court.

Parenting schedules generally include:

- visits that take place on a regular basis;
- visits that vary in length depending on the ages and needs of the children.

Children *(List all children, whether or not you have asked that they be protected by the Order of Protection):*

| Children | Age | How child is related to You    Respondent | | Who does child live with? | State(s) where child lived in the last 6 months? |
|----------|-----|-------|-------|------|------|
| N/A |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

CHECK the visitation option that you want.

☐ I request the following visitation schedule:

_____

_____

_____

_____

☐ Supervised visits *(List why, and supervised by whom):* _____

_____

_____

_____

☐ Neutral drop off and pick up location: _____

☐ Transportation provided by: _____

☐ I request the Respondent have no visitation with the children because: _____

_____

_____

_____

Petition for Temporary Order of Protection and Request for Hearing– AGO Form OVS 3 – Revised 02/11
Page 9 of 9

Exhibit 50 p. 020

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

CLERK OF DISTRICT COURT

2024 AUG -8 PM 3: 31

FILED

BY _____ DEPUTY

# IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

RYAN DEAN GABRIEL,

             Plaintiff,

    vs.

JESSE MARK OLSEN,

             Defendant.

)
)
)
)
)
)
)
)

Case No. DV-22-605 (B)

**MOTION TO LIFT STAY OF
PROCEEDINGS AND SCHEDULE
HEARING FOR PLAINTIFF'S
SWORN PETITION FOR ORDER OF
PROTECTION**

    **COMES NOW** Plaintiff RYAN DEAN GABRIEL ("Mr. Gabriel"), who hereby moves this Court to lift this Court's prior Order staying proceedings, dated August 1, 2023, in the instant lawsuit against Defendant JESSE MARK OLSEN ("Mr. Olsen"), who has been communicating through his retained counsel, TAYLOR 'KAI' GROENKE ("M/r/s. Taylor Groenke").

## <u>BRIEF IN SUPPORT OF MOTION</u>

    Plaintiff requests the Stay of the matter be lifted by this Court, and that the case be unsuspended by Plaintiff's 'Motion for Expedited Consideration' filed herein, because:

    a)    Defendant Mr. Olsen through his counsel has defied this Court's 'Order Staying Proceedings' by failing to file quarterly updates into the case since January 29, 2024, now more than six (6) months ago. This Court's Order of August 1, 2023, states that **"<u>Defendant's Motion to Stay Proceedings is GRANTED so long as quarterly updates regarding [Circuit Court of the State of Oregon, County of Multnomah Case No. 22DR04942] are received by this</u>**

*16*

Exhibit 51 p. 001

1  **Court beginning October 1, 2023. Exhibits of court orders shall accompany said updates**

2  **when necessary. Should either party wish to lift this STAY, the moving party shall file a**

3  **motion requesting as much.**"

4

5      b)    Defendant's counsel M/r/s. Groenke attempted to circumvent this Court's

6  standing 'ORDER DIRECTING FILING OF ORDERS OF PROTECTION' dated January 25,

7  2023[1] by herself filing a 'Sworn Petition for Temporary Order of Protection and Request for

8  Hearing' with the Justice of the Peace, Hon. Dan Sullivan, in the Justice Court, State of Montana

9  (Case No. CV-2024-1010-OOP), against Plaintiff Mr. Gabriel, with M/r/s. Groenke as the

10 Petitioner. However, Plaintiff Mr. Olsen in the instant case (No. DV-22-605) is a party "to a

11 pending (…) case involving (…) a party located outside Montana." Defendant Mr. Olsen is an

12 Oregon citizen, permanently residing in Oregon since 2009. **In her Petition with the Justice**

13 **Court, M/r/s. Groenke seeks to evict Plaintiff Mr. Gabriel from his permanent residence**

14 **and home by requesting a Protective Order which would bar Plaintiff Mr. Gabriel from**

15 **coming within 2500 feet of his own property in Lakeside, MT, allegedly for M/r/s/.**

16 **Groenke's own safety.** (Emphasis added). To Plaintiff Mr. Gabriel's knowledge, M/r/s.

17 Groenke lives over 5-10 miles away from his property, located at 2000 Blacktail Rd. in Lakeside,

18 MT. **The resultant Temporary Order signed by Hon. Dan Sullivan sets a hearing date for**

19 **August 8, 2024.** M/r/s. Groenke's alleged biological father (per her own testimony) is Frederick

20 "Fritz" Groenke, who illegally listed Plaintiff Mr. Gabriel's permanent residence for sale on or

21 around January 20, 2024, in defiance of an Oregon trial court Stay (supersedeas undertaking

22 under Oregon Statutory Law ORS 19.335 (2)), currently pending Appeal (No. A184337).

23     c)    Compounding the issue, M/r/s. Groenke's alleged "husband" (per her own

24 testimony) is David C. Dowell, a probation and parole officer who helps supervise Kalispell-

---

[1] See attached Exhibit 1, Standing 'ORDER DIRECTING FILING OF ORDERS OF PROTECTION' (Signed by Hon. Amy Eddy, Hon. Robert B. Allison, Hon. Heidi J. Ulbricht, Hon. Dan Wilson and Hon. Danni Coffman, District Court Judges – Montana Eleventh Judicial Court, Flathead County) – dated January 25, 2023.

Exhibit 51 p. 002

area detention facilities in active coordination with Hon. Dan Sullivan's Justice Court. Plaintiff Mr. Gabriel learned of these connections just last week, and therefore seeks an emergency Motion ('Motion for Expedited Consideration') unsuspending the instant case, setting a hearing in advance of August 8, 2024 – or in the alternative, transferring and/or consolidating the matter of the dueling Petitions for Protective Order – with this District Court (per this Court's own standing 'Order' dated January 25, 2023) to resolve these rank conflicts of interest surrounding M/r/s. Groenke, counsel for the Defendant Mr. Olsen in this instant case (No. DV-22-605 (B)).

## DOCUMENTS IN SUPPORT

This Motion is supported by the Affidavit of Plaintiff RYAN DEAN GABRIEL, the attached **Exhibit 1** and the above Brief in Support filed contemporaneously herewith, and the attached **Exhibit 2** (previously-served 'Summons' to Defendant Mr. Olsen, along with the process server's 'Affadavit' of Service).

Also filed herewith is:

a)  Mr. Gabriel's 'Sworn Petition for Temporary Order of Protection';

b)  a 'Proposed Order' for the Court's signature to lift Stay and schedule Hearing on the dueling Petitions for Protective Order(s) in this instant case (No. DV-22-605 (B)), or in the alternative to Transfer and/or Consolidate Petitions with the instant case;

c)  a 'Motion for Expedited Consideration' of this instant Motion;

d)  a 'Certificate' of Service for the instant Motions;

e)  Self-addressed, stamped envelopes for all parties.

\*\*\*

DATED this 5th Day of August, 2024.

_(signature)_

3    MOTION TO LIFT STAY OF PROCEEDINGS, BRIEF IN SUPPORT and CERTIFICATE OF SERVICE
11th Judicial District – *Pro se* Civil Motion

Exhibit 51 p. 003

Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Phone #:  (403) 606-5859 m.

***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing Motion, any referenced Affidavit, and other documents indicated above filed as attachments to this Motion were served upon the opposing parties on this 5th Day of August, 2024, by the method an at the address as indicated below:

> Kai Groenke
> Law Office of Kai Groenke, P.C.
> 239 Second Street West
> Kalispell, MT 59901
> kai@familylawflathead.com
> Attorney for Defendant Mr. Olsen

____X____  by e-mailing to the attorney(s) at the attorney(s) last known e-mail address listed above on the date set forth below.

____X____  by express mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing address shown above, sent via USPS Priority Express with signature receipt.

DATED this 5th day of August, 2024.

_____
Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.

Exhibit 51 p. 004

# IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

|   |   |   |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Case No. DV-22-605 |
| Petitioner, | ) | |
| vs. | ) | **SUMMONS** |
| | ) | Judge Robert B Allison |
| JESSE MARK OLSEN, | ) | |
| Defendant | ) | |

**TO THE ABOVE-NAMED DEFENDANT:**

A lawsuit has been filed against you.

Within 21 days after service of this summons on you, you must serve the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Montana Rules of Civil Procedure. Do not include the day you were served in your calculation of time. The answer or motion must be served on the plaintiff or plaintiff's attorney, if plaintiff is represented by an attorney, whose name and address are:

> Ryan Dean Gabriel
> 2000 Blacktail Rd.
> Lakeside, MT 59922

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.

You must also file your answer or motion with the court.

Date: <u>April 18, 2023</u>

Peg L. Allison
Clerk of the District Court

[SEAL: ELEVENTH JUDICIAL DISTRICT — FLATHEAD COUNTY — MONTANA]

By: _____
Deputy Clerk

EXHIBIT 2 PAGE 1 OF 2

Exhibit 51 p. 005

Civil Action No.

## PROOF OF SERVICE

This summons for **Jesse M. Olsen**
was recieved by me on **12/06/2023:**

[X] I personally served the summons on the individual at **650 S Gaines Street, Unit 1914, Portland , OR 97239** on **12/06/2023 at 6:19 PM;** or

[ ] I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and discretion who resides there, on , and mailed a copy to the individual's last known address; or

[ ] I served the summons on *(name of individual)* , who is designated by law to accept service of process on behalf of *(name of organization);* or

[ ] I returned the summons unexecuted because ; or

[ ] Other *(specify)*

My fees are $ 0 for travel and $ **160.00** for services, for a total of $ **160.00.**

I declare under penalty of perjury that this information is true.

Date:  12/06/2023

_____
Server's signature

**Kyle Berg**
Printed name and title

**4628 N. Congress Ave**
**Portland, OR 97217**

_____
Server's address

Additional information regarding attempted service, etc:

**I delivered the documents to Jesse M. Olsen with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 5'8"-5'10" tall and weighing 160-180 lbs.**

EXHIBIT 2 PAGE 2 OF 2

Tracking # 0119583893



<span style="color:red">Exhibit 51 p. 006</span>

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

1
2
3
4
5

### IN THE DISTRICT COURT OF THE STATE OF MONTANA

6

### FOR THE COUNTY OF FLATHEAD

7

8   RYAN DEAN GABRIEL,                )        Case No. DV-22-605 (B)

9              Plaintiff,             )

10          vs.                       )        **MOTION FOR EXPEDITED**
                                      )        **CONSIDERATION OF MOTION**
11                                    )        **TO LIFT STAY OF PROCEEDINGS**
     JESSE MARK OLSEN,                )        **AND SCHEDULE HEARING, ETC.**
12                                    )
13            Defendant.             )

14

15

16      **COMES NOW** Plaintiff RYAN DEAN GABRIEL ("Mr. Gabriel"), who hereby moves

17  this Court for expedited (emergency) consideration of the contemporaneously filed motion to lift

18  this Court's prior Order to Stay proceedings, dated August 1, 2023, in the instant lawsuit against

19  Defendant JESSE MARK OLSEN ("Mr. Olsen"), who has been communicating through his

20  retained counsel, TAYLOR 'KAI' GROENKE ("M/r/s. Taylor Groenke").

21              **BRIEF IN SUPPORT OF MOTION**

22      Plaintiff requests the instant motion for expedited consideration because it is *prima facie*

23  urgent, as described in the companion motion to lift this Court's instant pending Stay, *et cetera.*

24              **DOCUMENTS IN SUPPORT**

25      This Motion is supported by the Affidavit of Plaintiff RYAN DEAN GABRIEL and the

26  above Brief in Support filed contemporaneously herewith.

27      Also filed herewith is:

28

*15*

Exhibit 51 p. 007

a) Mr. Gabriel's 'Sworn Petition for Temporary Order of Protection';

b) a 'Proposed Order' for the Court's signature to lift Stay and schedule Hearing on the dueling Petitions for Protective Order(s) in this instant case (No. DV-22-605 (B)), or in the alternative to Transfer and/or Consolidate Petitions with the instant case;

c) a 'Motion to Lift Stay of Proceedings and Schedule Hearing (...)';

d) a 'Certificate of Service' for the instant Motions;

e) Previously served 'Summons' to Defendant Mr. Olsen with server's 'Affidavit'.

f) Self-addressed, stamped envelopes for all parties.


\*\*\*


DATED this 5th Day of August, 2024.


Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Phone #: (403) 606-5859 m.


\*\*\*


## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Motion, any referenced Affidavit, and other documents indicated above filed as attachments to this Motion were served upon the opposing parties on this 5th Day of August, 2024, by the method an at the address as indicated below:

Exhibit 51 p. 008

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
kai@familylawflathead.com
Attorney for Defendant Mr. Olsen

____X____ by e-mailing to the attorney(s) at the attorney(s) last known e-mail address listed above on the date set forth below.

____X____ by express mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing address shown above, sent via USPS Priority Express with signature receipt.

DATED this 5th day of August, 2024.

_____
Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.

Exhibit 51 p. 009

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

CLERK OF DISTRICT COURT

2024 AUG 16  PM 4: 15

BY _____

## IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

|  |  |  |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Cause No. DV-22-605 (B) |
| Plaintiff, | ) | BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS |
| vs. | ) | |
| JESSE MARK OLSEN, | ) | |
| Defendant. | ) | Judge Robert B Allison |

COMES NOW the Plaintiff Ryan Dean GABRIEL ("Mr. Gabriel"), and hereby submits this Brief in Support of Plaintiff's Motion to Lift Stay of Proceedings.

The Multnomah County Circuit Court has a stay issued on an Amended General Judgment that began on July 8, 2024, and is still in effect as of today, August 13, 2024, by way of a supersedeas undertaking pursuant to Oregon Statute (ORS) 19.335 (2). Under Oregon law, ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed. The value of the use and occupation during the period of possession must be stated in the undertaking." (*See* **Exhibit 3**).

Exhibit 52 p. 001

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

CLERK OF DISTRICT COURT

2024 AUG 19 AM 10: 08

FILED
BY _____ mm
DEPUTY

## IN THE DISTRICT COURT OF THE STATE OF MONTANA

## FOR THE COUNTY OF FLATHEAD

| | | |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Cause No. DV-22-605 (B) |
| Plaintiff, | ) | **BRIEF IN SUPPORT OF PLAINTIFF'S** |
| | ) | **MOTION TO LIFT STAY OF** |
| vs. | ) | **PROCEEDINGS** |
| JESSE MARK OLSEN | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff RYAN DEAN GABRIEL ("Mr. Gabriel"), and hereby

submits this Brief in Support of Plaintiff's Motion to Lift Stay of Proceedings.

### BRIEF AND STATEMENT OF FACTS

1. The Multnomah County Circuit Court has a stay issued on an Amended General

Judgment that began on July 8, 2024, and is still in effect as of today, August 13, 2024, by way

of a supersedeas undertaking pursuant to Oregon Statute (ORS) 19.335 (2). Under Oregon law,

ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession of real property,

a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant

will not commit waste or allow waste to be committed on the real property while the appellant

possesses the property, and the appellant will pay the value of the use and occupation of the

property for the period of possession if the judgment is affirmed. The value of the use and

occupation during the period of possession must be stated in the undertaking." (*See* **Exhibit 3,**

attached).

21

Exhibit 52 p. 002

1    2.    Mr. Gabriel currently has an appeal pending in Multnomah County Circuit Court

2    Case No. 22DR04942. The Court of Appeals case number is A184337. (*See* **Exhibit 2,**

3    attached).

4    3.    Mr. Gabriel filed supersedeas undertakings in the trial court file on July 2 and July

5    7, 2024. The undertakings include the following language: "appellant will not commit waste or

6    allow waste to be committed on the real property while the appellant possesses and has access

7    to the property, and the appellant will pay the value of the use and occupation of the property, in

8    addition to half of the maintenance costs, for the period of possession if the judgment is

9    affirmed." The undertakings also stated a proposed value for the use/occupation of the property.

10   Under Oregon law, ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession

11   of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides

12   that the appellant will not commit waste or allow waste to be committed on the real property

13   while the appellant possesses the property, and the appellant will pay the value of the use and

14   occupation of the property for the period of possession if the judgment is affirmed. The value of

15   the use and occupation during the period of possession must be stated in the undertaking." (*See*

16   **Exhibit 17** *and* **Exhibit 3**, attached).

17   4.    Accordingly, the Oregon judgment is automatically stayed by the filing of the

18   supersedeas undertakings, and no one has authority to list the Montana residence for sale during

19   the period in which the supersedeas undertaking Stay is in place. (*See* **Exhibit 17**, attached).

20   5.    On or around July 23, 2023, Frederick "Fritz" Groenke, a notorious local realtor

21   and alleged biological father of Taylor "Kai" Groenke, attorney for Defendant JESSE MARK

22   OLSEN ("Mr. Olsen"), listed Plaintiff Mr. Gabriel's permanent residential home and own real

23   property at 2000 Blacktail Rd. in Lakeside, MT 59922 – without his consent – on Zillow.com,

24   Redfin.com, Realtor.com and elsewhere, via Defendant Montana Regional MLS, LLC (among

2    BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS

Exhibit 52 p. 003

other avenues), by invoking an Oregon lower court judgment. This Amended General Judgment has been the subject of an Oregon trial court Stay by Supersedeas Undertaking since prior to the time of the listing in question, and which is currently pending in the Oregon Court of Appeals. (*See* **Exhibit 2**, attached).

6. Frederick "Fritz" Groenke ("Mr. Groenke") did not have legal authorization to list the property at the time of its listing on July 23, 2024, nor at the time of the subsequent temporary withdrawal and re-listing weeks later, and he was advised as much by Plaintiff Mr. Gabriel's Oregon attorney (Andrew Newsom, Partner – Holtey Law Firm). Mr. Groenke listed it anyway, in active coordination with his alleged biological daughter, Taylor "Kai" Groenke (M/r/s. Groenke). (*See* **Exhibit 3**, attached).

7. That same day, Plaintiff Mr. Gabriel also witnessed the electronic gate that Mr. Groenke forcibly broke by forcing his way through it, along with the unauthorized listing of Mr. Gabriel's property, accompanied by the misleading and far-outdated photos from 2019 that Mr. Groenke illegally used in his listing – photos that still belong to Cecil Waati, another local realtor. (*See* **Exhibit 11**, attached).

8. According to Taylor "Kai" Groenke, her client, Defendant Mr. Olsen, had previously hired Frederick "Fritz" Groenke, the alleged biological father of Defendant Taylor "Kai" Groenke, to attempt to sell Plaintiff Mr. Gabriel's permanent residence. At Mr. Groenke's request, Montana Regional MLS, LLC, then listed the real property at 2000 Blacktail Road, Lakeside, MT 59922 for sale and the property is now under contract, as of August 9, 2023. This was done without Plaintiff Mr. Gabriel's consent, and with the lower court Stay (Supersedeas Undertaking) still in place. (*See* **Exhibit 26** *and* **Exhibit 3**, attached).

9. Compounding the illegal and/or extralegal listing of Plaintiff Mr. Gabriel's property and permanent residence (2000 Blacktail Road, Lakeside, MT 59922) Frederick "Fritz"

3     BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS

Exhibit 52 p. 004

Groenke, illegally impersonated another realtor (Michelle Thomson), deliberately using her signature and then substituting her 'Reply' address ('michellethomson.bigfork@gmail.com') with his own ('mtreg@cyberport.net'). **Mr. Groenke then attempted to walk back the attempted fraudulent conveyance, actions described by Kaaren Winkler, MPA, RCE, CAE and Chief Executive Officer of the Montana Association of REALTORS as "serious", "troubling" and "severe".** (Emphasis added.) (*See* **Exhibit 1** and **Exhibit 19**, attached).

10.     In other words, on August 3, 2024, at approximately 4pm MST, Frederick "Fritz" Groenke impersonated another realtor, Michelle Thomson (a federal, state and local crime), in the process of committing numerous other felonies, including illegal trespass (under Montana Penal Code 45-6-203), vandalism, breaking and entering and harassment, among other crimes. These actions also constitute rank violations of Article 1 & Article 3 of the National Association of Realtors (NAR) Code of Ethics: Unauthorized Access to Property, SOP 1-16 and 3-9. (*See* **Exhibit 1** *and* **Exhibit 18**, attached).

11.     Mr. Groenke is also illegally using misleading and outdated photographs that are owned by another local realtor, Cecil Waati, for which he did not receive permission and which wildly misrepresent the property in its present state. For example, the entire kitchen in the 2nd cabin is being gutted by a restoration company for an insurance claim caused by leaking fittings underneath the kitchen sink and adjacent bathroom sink. The entire floor is torn out, along with the kitchen cabinetry and appliances, and that project is not scheduled to be completed until early November 2024 (photos attached of the mitigation underway). In addition, the mitigation company has tested for mold and the entire sub-floor between the kitchen in the 2nd Cabin and the property's garage was plastered with toxic mold, and so the entire lower ceiling has been gutted and will be drying out for weeks. (*See* **Exhibit 14**, attached).

Exhibit 52 p. 005

12. Compounding matters, the insurance company has stated it will not continue to reimburse any repairs or claims that stem from the water leakage incident if the property is pending a contractual sale. Beyond these issues, insurance coverage for the property was dropped in January 2024 due to the water leakage incident, and so any prospective buyer will not have continuity of insurance coverage as a result of these damages, dramatically lowering the purchase/sale price of the property under the current conditions (leaving aside the fact that Plaintiff Mr. Gabriel currently resides at the property and it is his permanent home). (*See* **Exhibit 15**, attached).

13. Furthermore, the aerial photos published on Mr. Groenke's listing are fraudulent in the sense that the 'wilderness' photos are now fully developed properties. Finally, there is a 3' X 3' square hole in the pump house ceiling which was cut to allow a crane to access and fix the well pump. (*See* **Exhibit 14**, attached).

14. Not only does this act constitute substantive fraud and misrepresentation, but the listing is also a clear violation of the National Association of Realtors (NAR) Code of Ethics Article 12: Displays of Competitor's Content and Listings. (*See* **Exhibit 1**, attached).

15. Michael Ponton, CEO of the Montana Regional MLS, was made aware of the correspondence from my Oregon attorney, Andrew Newsom, which stated that at the time of the listing in question an active Court stay (supersedeas undertaking) was in place on a judgment that Fritz Groenke purported to rely on to justify the illegal listing. That listing has never been taken down, and the court stay is still in place. (*See* **Exhibit 3**, attached).

16. The full forwarded e-mail exchange incriminating Mr. Groenke in the above is attached as Exhibit 1. (*See* **Exhibit 1**).

17. Previously, on Friday, July 19, 2024, counsel for Defendant Mr. Olsen, Taylor "Kai" Groenke ("M/r/s. Groenke") filed for a Temporary Petition for Protective Order with the

5 BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS

Exhibit 52 p. 006

Justice Court of the State of Montana (Flathead) before Hon. Paul Sullivan, Justice of the Peace. In this Protective Order, Taylor "Kai" Groenke sought a ruling that would require Plaintiff Mr. Gabriel "shall stay at least 2,500 feet from … 2000 Blacktail Road, Lakeside, MT 59922" – which happens to be Mr. Gabriel's permanent residence and home, and which he owns, has title to, and lives in. (*See* **Exhibit 4, page 2**, attached). M/r/s. Groenke's husband is David C. Dowell, who happens to work for the Flathead County Probation and Parole office, which in turn works closely with Hon. Paul Sullivan's Justice Court. In other words, M/r/s. Groenke is trying to use her husband's connections adjacent to Hon. Paul Sullivan, Justice of the Peace, and the Flathead County Justice Court, to evict Plaintiff Mr. Gabriel from his own home ostensibly so that her father, Frederick "Fritz" Groenke (a realtor) can sell it out from underneath Mr. Gabriel for some undisclosed commission. (*See* **Exhibit 4**, attached).

18.     In M/r/s. Groenke's Petition for temporary protective order, which was notably signed on July 18, 2024, Taylor "Kai" Groenke makes several brazenly false and substantively dishonest claims, such as "He [Petitioner/Plaintiff Ryan Dean Gabriel] sent a video of a horror movie clip showing someone getting shot in the face while referencing my family." The video in question does not show anyone getting shot in the face, and the fact that "Fritz" Groenke is her alleged biological father – whom she knowingly sent to illegally trespass (per Montana Penal Code 45-6-203) on my property – is by Taylor "Kai" Groenke's own design. (*See* **Exhibit 5**, attached).

19.     Per widespread local consensus, this well-rehearsed sequence of events comprises a methodical system that "Kai" and "Fritz" Groenke (hereinafter, "the Groenke Cartel") have deployed in the past to provoke and ensnare other less capable and/or more vulnerable local residents and constituents of this very Court. The "genealogy data" that "Kai" Groenke cites repeatedly in her own Petition for Protective Order is largely public information

Exhibit 52 p. 007

that is heavily suggestive of widespread infidelity within the Groenke family, mostly in relation to the older Groenke generations (i.e., Plaintiff Mr. Gabriel had previously no knowledge of Taylor "Kai" Groenke's new claims that she herself has children; Mr. Gabriel only learned this upon receipt of M/r/s. Groenke's Petition for Protective Order). (*See* **Exhibit 6**, attached).

20.      M/r/s. Groenke's own sought-after Petition for Protective Order was filed along with approximately 101 pages of documentation, most of which was hastily assembled and surprisingly exculpatory of Plaintiff Mr. Gabriel in the context of her allegations of harassment in the instant partition claim still pending in Flathead County, Montana (Case No. DV-22-605). In fact, the 101 pages M/r/s. Groenke filed with her own Petition for Protective Order appears to be a "data dump" of her entire legal file in Case No. DV-22-605, much if not most of which probably violates Plaintiff Mr. Gabriel's personal privacy and her confidentiality obligations to her client, Defendant Jesse Mark Olsen. Moreover, this frantic "data dump" seems to implicate both "Kai" and "Fritz" Groenke in a wide range of probable criminal felony acts, including trespassing, ensnarement, racketeering, vandalism, and conspiracy to commit fraud, along with various conflicts of interest wherever their professional licenses are concerned. (*See* **CV-2024-1010-OP**, Flathead County Justice Court, State of Montana, **pages** 1-101).

21.      On Tuesday, July 16, 2024, M/r/s. Groenke self-incriminates and reveals via e-mail that she coordinated her father's unlawful trespass onto Mr. Gabriel's residential property. In her rushed e-mail exchange, which attempted to re-frame the events from Monday, July 15, 2024, Taylor "Kai" Groenke alleged that the US Marshall's office was "looking for" Mr. Gabriel – a completely false claim that Plaintiff was able to verify with the US Marshall's office – which indicates that she also likely tried to "report" Mr. Gabriel to the US Marshall's office using false, misleading and/or defamatory information (*See* **Exhibit 7**, attached).

Exhibit 52 p. 008

22.     Beyond this, "Kai" Groenke's e-mail reveals proactive coordination between herself and her alleged biological father, Frederick "Fritz" Groenke. Prior to receipt of this e-mail from "Kai" Groenke, Plaintiff Mr. Gabriel was unsure of the exact connection between "Fritz" and "Kai" Groenke, but M/r/s. Groenke exposed the nature of that connection with this statement which she issued in response to a brief text exchange between Plaintiff Mr. Gabriel and Defendant "Fritz" Groenke the previous day: ***"Ryan, I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will be interested in hearing you continue to threaten people. Do not ever threaten my children. You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale."*** (*See* **Exhibit 8**, attached).

23.     As established previously, here "Kai" Groenke is referring to the now-invoked Oregon lower court judgement which was the subject of a temporary Stay by Supersedeas Undertaking at the time of its listing, and which is currently pending appeal in the Oregon Court of Appeals. (*See* **Exhibit 9**, attached).

24.     To M/r/s. Groenke's e-mail of July 16, 2024, Plaintiff Mr. Gabriel replied, "Taylor, It is you and Fritz who are harassing me, and you are vividly aware of that fact. (...) I didn't even know you had children, which begs the question of whether Fritz has comprehension issues. There were no threats made against any federal judge - this is total nonsense. Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to." (*See* **Exhibit 10**, attached).

Exhibit 52 p. 009

25.     Plaintiff Mr. Gabriel continued, "Jesse does not have clearance to sell the Lakeside property - there is an appeal in place (...) Even Jesse's Portland attorney concedes that process will likely take 24 months or so. In the interim, do not step foot on my property." (*See* **Exhibit 7**, attached).

26.     Previously, on Monday, July 15, 2024, "Fritz" Groenke had sent an e-mail apparently dictated by "Kai" Groenke (Plaintiff Mr. Gabriel bases this observation upon Mr. Groenke's differing grammar, style and syntax from a text exchange between the two later in the day), in which "Kai" Groenke conspicuously omits the rest of the thread/exchange. (*See* **Exhibit 3, page 4**, attached). Later in that same day, Mr. Gabriel received a series of notifications from his guest at his residence (2000 Blacktail Rd. in Lakeside, MT) from "Albert", a guest of his staying at the property. (*See* **Exhibit 12**, attached).

27.     Guest "Albert" told Mr. Gabriel that Frederick "Fritz" Groenke busted the electronic security gate by trying to force it open, and then walked onto the property unannounced (to Mr. Gabriel or to anyone) and conveyed to his guest "Albert" highly inappropriate and potentially defamatory private information about Plaintiff Mr. Gabriel in an attempt to intimidate and harass Mr. Gabriel and his guests.  Andrew Newsom, an appellate attorney and partner of a law firm (Holtey Law) who Mr. Gabriel has retained in Oregon for that local appellate case, has advised Mr. Gabriel that "Fritz" Groenke was not authorized to intrude on the property because there was a Stay on a motion in the case in question – along with a pending appeal to a legal outcome that Mr. Groenke is hoping transpires, but which has not yet transpired and which is unlikely to transpire.  Andrew Newsom's office # is 503.224.9878 and his e-mail is anewsom@holteylaw.com. (*See* **Exhibit 3**, attached).

28.     Previously, on March 13, 2024, Defendant Jesse Mark Olsen ("Mr. Olsen") attempted to use the same exact e-mail thread cited above by "Kai" Groenke to attempt to obtain

Exhibit 52 p. 010

a Protective/Restraining Order under Oregon's "Family Abuse and Prevention Act" ("FAPA") against Plaintiff Mr. Gabriel. Mr. Olsen's Oregon FAPA Petition is flatly denied by the Multnomah County Judge on this date (*See* **Exhibit 10**, attached).

29. Plaintiff Mr. Gabriel has never previously been a party to any criminal or quasi-criminal action that he is aware of, in any jurisdiction. In other words, Plaintiff Mr. Gabriel has a spotless record; he has never been arrested for anything, ever, or accused of anything ever, until this latest volley of civil Petitions for Orders of Protection by Defendant Mr. Olsen, his legal counsel (Taylor "Kai" Groenke), and M/r/s. Groenke's alleged biological father, Frederick "Fritz" Groenke, who himself filed his own Petition for Temporary Order of Protection in an attempt to oust Plaintiff Mr. Gabriel from his own home and permanent residence (*See* **Exhibit 16**, attached).

30. The hearing date for Mr. "Fritz" Groenke's Petition with the Flathead County Justice Court is currently set for August 22, 2024. Between Defendant Mr. Olsen, his counsel, Taylor "Kai" Groenke, and Federick "Fritz" Groenke, this latest Petition for Order of Protection (via Hon. Paul Sullivan's Justice of the Peace office, Flathead County) is now the *fifth* attempt in *five different courts* to obtain similar protective orders against Plaintiff Mr. Gabriel, using the same documentation. (Emphasis added.) Three prior attempts for the same Petitions against Plaintiff Mr. Gabriel, were flatly denied by the respective judges in those Petitions (*See* **Exhibit 13**, attached).

31. The fourth attempt, filed by Taylor "Kai" Groenke, was partially granted with most of her requests denied or since withdrawn, and that limited Order on M/r/s. Groenke's Petition is currently pending appeal. (*See* **CV-2024-1010-OP**, Flathead County Justice Court, State of Montana).

Exhibit 52 p. 011

32.     Quite frankly, after this relentless sequence of legal shenanigans by the Defendant and his legal counsel, it is my opinion that Taylor "Kai" Groenke, counsel for Defendant Mr. Olsen, ought to be referred by this Court to the Montana State Bar Association for disbarment or other sanctions, and sanctions should also be applied by Hon. Judge Allison to Defendant Mr. Olsen in the instant case, No. DV-22-605.

DATED this 13ᵗʰ Day of August, 2024.

_____
Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Phone #:  (403) 606-5859 m.

\*\*\*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Motion, any referenced Affidavit, and other documents indicated above filed as attachments to this Motion were served upon the opposing parties on this 13ᵗʰ Day of August, 2024, by the method an at the address as indicated below:

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
kai@familylawflathead.com
Attorney for Defendants

11      BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO LIFT STAY OF PROCEEDINGS

Exhibit 52 p. 012

1 ____X____ by regular mailing full, true, and correct copies thereof to the attorney(s) at the

2 physical mailing address shown above, sent via USPS Priority Express with signature receipt.

3 DATED this 13th day of August, 2024.

_____

Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.

Exhibit 52 p. 013

IN THE JUSTICE COURT OF THE STATE OF MONTANA
IN AND FOR THE COUNTY OF FLATHEAD
BEFORE PAUL SULLIVAN, JUSTICE OF THE PEACE
935 1ST AVE WEST KALISPELL, MT 59901
(406) 758-5643

# Order of Protection

Order Effective Until: **08/08/2034**

Taylor Kai Groenke ,

             Petitioner,

vs.

Ryan Dean Gabriel ,

             Respondent.

**Case No:** CV-385-2024-0001010-OP

**Petitioning on behalf of:**
And/or on behalf of minor family member(s)
(list name, relationship):

Federal Firearm Disqualification Criteria:
- ☒ Hearing/actual notice with opportunity to participate
- ☐ Intimate partner (married/divorced/common child/cohabitates or has cohabitated.
- ☐ Order includes condition 1 or 2
- ☒ Order finds credible threat or prohibits use, attempted use, or threatened use of physical force

Caution:
- ☐ Weapon Involved
- ☒ Weapon on Property

## THE COURT HEREBY FINDS:

- ☐ The Petitioner is in danger of harm. This Court acts without notice to the Respondent because harm may result to the Petitioner if the Order of Protection is not issued immediately.
- ☒ This Court has jurisdiction over the parties and subject matter, and the Respondent has been provided with reasonable notice and opportunity to be heard.
- ☐ The parties stipulate, without hearing or finding of fact, to the Order of Protection. Additional findings of this order are set forth below.

## THE COURT HEREBY ORDERS:

- ☒ That the above named Respondent be restrained from committing further acts of violence or threats of violence.
- ☒ That the above named Respondent **shall stay at least 2,500 feet away from** Petitioner's
  ✓ person, ✓ home, ✓ workplace, ✓ vehicle, ✓ children's school/daycare,
  ___ other: _____
  Additional terms of this order are set forth below.

### WARNINGS TO RESPONDENT:

**This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced on Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal**

Exhibit 53 p. 001

imprisonment (18 U.S.C. Section 2262). Federal law provides penalties for possessing, transporting, shipping, or receiving and firearm or ammunition (18 U.S.C. Section 922(g)(8). Only the court can change this order.

**THE COURT FINDS** from the Petition that the Petitioner is in danger of harm. This Court acts without notice to the Respondent because harm may result to the Petitioner if the Order of Protection is not issued immediately.

1. Respondent is restrained from assaulting, threatening, abusing, harassing, following, or stalking the Petitioner. Respondent must not harass, annoy, or disturb the peace or do any of those things to the following people (may include family members, witnesses to the offense, or other victims of the offense.): **David Dowell, Petitioner's minor child(ren)**

2. Respondent must not threaten to commit or commit acts of violence against Petitioner or other person listed in #1 above.

3. The following applies to Petitioner's present residence:

   a. Petitioner's current location is a secret and will remain confidential.
   ### -OR-
   b. Respondent must stay away from Petitioner's residence below **or** wherever Petitioner may reside: **Lake Blaine Rd., Creston Hatchery Rd.**

4. Respondent must stay 2500 feet from Petitioner's residence, and Patitioner's place of employment at 239 2nd Street West, Kalispell; Kalispell Probation and Parole, as well as Logan Health Medical Fitness Center.

5. Respondent must not telephone, email, text message, social network, write, contact, or otherwise communicate, directly or indirectly or through a third party with Petitioner or the following people (may include family members, witnesses to the offense, or other victims of the offense.): **Same as #1 above.**

6. Respondent must not take the following child(ren) out of this county: **NA**

7. Respondent used or threatened Petitioner with a firearm. Respondent is prohibited from owning, possessing and/or purchasing a firearm. _____ ( **Check only if applicable**)

8. Other civil or criminal actions pending involving the parties include: **NA.**

9. Respondent must not take, hide, sell, damage or dispose of Petitioner's property.

10. Respondent must give Petitioner possession or use of the following items (items may include the residence, automobile, and other essential personal property regardless of ownership): **NA**

11. A peace officer is directed to accompany Petitioner/Respondent to the residence to ensure Petitioner/Respondent safely obtains possession or removal of the property listed above.

Exhibit 53 p. 002

**PETITIONER/RESPONDENT MAY REMOVE WORK TOOLS, ESSENTIAL CLOTHING, AND PERSONAL EFFECTS FROM THE HOME IN THE PRESENCE OF A PEACE OFFICER AND AT THE OFFICER'S DISCRETION. **

12. The Court orders the following additional relief to provide for the safety and welfare of the Petitioner or other family members: **NA.**

**This Order of Protection shall continue in full force and effect until 08/08/2034.
Petitioner should immediately report any violation of this order to law enforcement.**

# WARNING

**Violation of this Order is a criminal offense under Montana Code Annotated § 45-5-220 or § 45-5-626 and may carry penalties of up to $10,000.00 in fines and up to a 5 year jail sentence.**

**This Order is issued by the Court and the Respondent is forbidden to do any act listed in the Order, even if invited by the Petitioner or another person. This Order may be amended only by further order of this Court or another court that assumes jurisdiction over this matter.**

The Sheriff is hereby directed to serve, without cost to Petitioner, a copy of this Order of Protection upon Respondent and to file a return of service with the clerk of this court.

ISSUED this August 9, 2024.

Paul Sullivan
Justice of the Peace

Exhibit 53 p. 003

**Form #E-1**

Northwest Montana Association of REALTORS, Inc.

Board or State Association

| 110 Cooperative Way | Kalispell | MT | 59901 |
|---|---|---|---|
| Address | City | State | Zip |

### Ethics Complaint

To the **Grievance Committee** of the ___Northwest Montana Association of REALTORS, Inc.___

Board or State Association

Filed __August 15__, 20 __24__

Ryan Dean Gabriel                          Frederick "Fritz" Groenke

2000 Blacktail Rd., Lakeside MT 59    Montana Real Estate Group

Complainant(s)                                    Respondent(s)

Complainant(s) charge(s):

An alleged violation of Article(s) __Article 1 & Article 3, (SOP 1-16, 3-9), Article 2__ of the Code of Ethics or other membership duty as set

forth in the bylaws of the Board in __Article VII, Sections 2, 3 & 4__ and alleges that the above charge(s)

Article, Section

(is/are) supported by the attached statement, which is signed and dated by the complainant(s).

This complaint is true and correct to the best knowledge and belief of the undersigned and is filed within one hundred eighty (180) days after the facts constituting the matter complained of could have been known in the exercise of reasonable diligence or within one hundred eighty (180) days after the conclusion of the transaction, whichever is later.

I (we) declare that to the best of my (our) knowledge and belief, my (our) allegations in this complaint are true.

Are the circumstances giving rise to this ethics complaint involved in civil or criminal litigation or in any proceeding before the state real estate licensing authority or any other state or federal regulatory or administrative agency?

◯ Yes  ◯ No

You may file an ethics complaint in any jurisdiction where a REALTOR® is a member or MLS participant. Note that the REALTORS® Code of Ethics, Standard of Practice 14-1 provides, in relevant part, "REALTORS® shall not be subject to disciplinary proceeding in more than one Board of REALTORS® . . . with respect to alleged violations of the Code of Ethics relating to the same transaction or event."

Have you filed, or do you intend to file, a similar or related complaint with another Association(s) of REALTORS®?

◉ Yes  ◯ No

If so, name of other Association(s): __Board of Realty Regulation__      Date(s) filed: __8/15/2024__

I understand that should the Grievance Committee dismiss this ethics complaint in part or in total, that I have twenty (20) days from transmittal of the dismissal notice to appeal the dismissal to the Board of Directors.

Complainant(s):

Ryan Dean Gabriel

Type/Print Name                                          Signature

Type/Print Name                                          Signature

Address

(403) 606-5859                                      rgabriel@zurccapital.com

Phone                                                        Email

*(Revised 11/14)*

*Code of Ethics and Arbitration Manual*          88

Exhibit 54 p. 001

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Thursday, August 15, 2024 9:28 AM
**To:** Jeri Moon <jmoon@nmar.com>
**Cc:** kaaren@montanarealtors.org
**Subject:** Fwd: Re: 2000 Blacktail Road || Montana Regional MLS, LLC || Frederick "Fritz" Groenke

You don't often get email from rgabriel@zurccapital.com. Learn why this is important

Jerry,

I was referred to you by Kaaren Winkler, CEO of the Montana Realtors Association, and left you a voice mail message just now.

Please see below and the attached complaint Form #E-1 issued by the Northwest Montana Association of REALTORS, Inc.  The realtor in question is Frederick "Fritz" Groenke of Montana Real Estate Group.  #RRE-BRO-LIC-1437.

Please don't hesitate to call or e-mail with any questions.  The matter is urgent.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free


---------- Original Message ----------
From: Kaaren Winkler <kaaren@montanarealtors.org>
To: Ryan Gabriel <rgabriel@zurccapital.com>
Date: 08/12/2024 9:33 AM EDT
Subject: Re: 2000 Blacktail Road || Montana Regional MLS, LLC || Frederick "Fritz" Groenke

Given the severity of these allegations, I strongly encourage you to file a formal complaint with the Northwest Montana Association of REALTORS and the Board of Realty Regulation. This will ensure that the matter is investigated thoroughly and that necessary actions are taken to address any violations.

Please do not hesitate to reach out if you need any further assistance or guidance in navigating this process.

Sincerely,

Kaaren Winkler, MPA, RCE, CAE
Chief Executive Officer
Montana Association of REALTORS

Exhibit 54 p. 002

On Aug 10, 2024, at 6:59 PM, Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kaaren, Brenda and Courtney,

It has come to my attention that you three sit on the Board of Directors and/or comprise senior leadership at the Montana Association of REALTORS, Brenda Miller is Regional Ambassador - Western MT, and that Kaaren Winkler is CEO of the same.

Please see the below correspondence regarding an illegal and/or extralegal listing of my property and permanent residence - 2000 Blacktail Road, Lakeside, MT 59922 - in which the realtor, Frederick "Fritz" Groenke, has illegally impersonated another realtor (Michelle Thomson), deliberately using her signature and then substituting her regular 'Reply' address ('michellethomson.bigfork@gmail.com') with his own ('mtreg@cyberport.net').

Fritz Groenke then attempted to walk back the attempted fraudulent conveyance, as you can see from the forwarded exchange below.

In other words, on August 8, 2024, at approximately 4pm MST, Frederick "Fritz" Groenke impersonated another realtor, Michelle Thomson (a federal, state and local crime), in the process of committing numerous other felonies, including illegal trespass (under Montana Penal Code 45-6-203), vandalism, breaking and entering and harassment, among other crimes.

These actions also constitute rank violations of **Article 1 & Article 3 of the NAR Code of Ethics: Unauthorized Access to Property, SOP 1-16 and 3-9**.

Mr. Groenke is also illegally using misleading and outdated photographs that are owned by another local realtor, Cecil Waati, for which he did not receive permission and which wildly misrepresent the property in its present state.

Not only does this constitute substantive fraud and misrepresentation, this is also a clear violation of **NAR Code of Ethics Article 12: Displays of Competitor's Content and Listings**.

Michael Ponton, CEO of the Montana Regional MLS, was made aware of the correspondence from my Oregon attorney, Andrew Newsom, which stated that at the time of the listing in question an active Court stay (supersedeas undertaking) was in place on a judgment that Fritz Groenke purported to rely on to justify the illegal listing. That listing has never been taken down, and the court stay is still in place.

Please see below and the attached.

Any actions taken by Montana Real Estate Group and Frederick "Fritz" Groenke under that illegal listing will also be vigorously litigated in the pending tortious interference lawsuit (Eleventh District Court, State of Montana, Flathead County) now being served upon the parties. The lawsuit will soon potentially expand to include Montana Regional MLS, LLC, Compass South Land Sales, and the Montana Association of REALTORS, given that it is that latter organization's template under which an extralegal, imminent Buy/Sell Agreement was issued.

Exhibit 54 p. 003

I have Cc'd Justin Ponton on this e-mail thread, and will be forwarding the same to the entire board of directors of the Montana Association of Realtors.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

---------- Original Message ----------
From: Fritz Groenke <mtreg@cyberport.net>
To: 'Ryan Gabriel' <rgabriel@zurccapital.com>, michellethomson.bigfork@gmail.com
Cc: jesse.m.olsen@gmail.com, justin@406mls.com
Date: 08/03/2024 8:42 PM EDT
Subject: RE: Re: 2000 Blacktail Road

Hello Ryan,

I sent the email to you requesting the showing for Blacktail and Michelle's contact info under my signature was inadvertent. She was not asking for the showing appointment I was. We will not be showing the property because you have refused the appointment to do so. If you change your mind please let me know and we will see if the prospects can be re contacted and view the property.

Fritz

Montana Real Estate Group

(406) 837-6000 Office

(406) 250-5151 Fritz Cell

<image001.jpg>

From: Ryan Gabriel [mailto:rgabriel@zurccapital.com]
Sent: Saturday, August 03, 2024 6:05 PM

Exhibit 54 p. 004

To: michellethomson.bigfork@gmail.com
Cc: mtreg@cyberport.net
Subject: Fwd: Re: 2000 Blacktail Road

FYI

---------- Original Message ----------

From: Ryan Gabriel <rgabriel@zurccapital.com>

To: Montana Real Estate Group <mtreg@cyberport.net>

Cc: "justin@406mls.com" <justin@406mls.com>

Date: 08/03/2024 7:57 PM EDT

Subject: Re: 2000 Blacktail Road

Michelle,

 Montana Real Estate Group is now the subject of a tortious interference litigation lawsuit in which I am a Plaintiff (Eleventh Judicial District Court, State of Montana).

 Montana Real Estate Group, Frederick "Fritz" Groenke, Justin Ponton, CEO of Montana Regional MLS, and Montana Regional MLS are all named Defendants in that tortious interference litigation.  The process servers are presently delivering that lawsuit in person to the parties named above.

 Montana Real Estate Group and Frederick "Fritz" Groenke, via Montana Regional MLS, illegally listed the property in question (2000 Blacktail Rd., Lakeside, MT 59922) on or before July 23, 2024, while there was an active Court stay (supersedeas undertaking) in Multnomah County Court Case 22DR04942 on the very judgment cited by Fritz Groenke to justify listing the property.

 Because the listing was never removed when the above-named Defendants were notified of the stay, it remains an illegal listing, and any criminal trespassing that stems from that illegal MLS listing will be subject to criminal prosecution under Montana Penal Code 45-6-203.

 Any actions taken by Montana Real Estate Group and Frederick "Fritz" Groenke under that illegal listing will also be vigorously litigated in the tortious interference lawsuit now being served upon the parties.

 I would note that you are sending this to me at 5:51pm on a Saturday evening (August 3, 2024), to inquire about a Sunday morning intrusion onto the property the very next day (August 4, 2024).

 This almost certainly constitutes harassment in the context of the pending litigation and in the context of the illegal listing filed during a stay of the court.

 Ryan D. Gabriel

Exhibit 54 p. 005

**Zurc Capital, LLC**

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

On 08/03/2024 3:44 PM EDT Montana Real Estate Group <mtreg@cyberport.net> wrote:

We have a request from cooperating broker to show the property Sunday tomorrow at 9 AM. Can we make that appointment to show the property?

Thank you for your earliest response the agent is waiting to hear back for the appointment.

Fritz

Michelle Thomson

*Real Estate Advisor*

Cell 406.270.0802

Office 406.837.6000

553 Electric Avenue

Bigfork, MT 59911

mtreg@cyberport.net

michellethomson.bigfork@gmail.com

<image002.jpg>

<Professional Email_ Olsen and Gabriel - Stay of Judgment Printout.pdf>

Exhibit 54 p. 006

**Andrew Newsom <anewsom@holteylaw.com>**                                   7/23/2024 6:41 PM

# Olsen and Gabriel - Stay of Judgment

To justin@406mls.com   Copy Amy Turenhout <aturenhout@holteylaw.com> •
Ryan Gabriel <rgabriel@zurccapital.com>

Dear Mr. Ponton:

I represent Mr. Ryan Gabriel in an appeal pending in Multnomah County Circuit Court Case No.
22DR04942. The Court of Appeals case number is A184337. I understand that MLS has listed the real
property at 2000 Blacktail Road, Lakeside, MT 59922 for sale. This was done without Mr. Gabriel's
consent and apparently at the direction of the opposing party in the litigation (Mr. Jesse Olsen).

Mr. Gabriel filed supersedeas undertakings in the trial court file on July 2 and 7, 2024. The
undertakings include the following language: "appellant will not commit waste or allow waste to be
committed on the real property while the appellant possesses and has access to the property, and the
appellant will pay the value of the use and occupation of the property, in addition to half of the
maintenance costs, for the period of possession if the judgment is affirmed." The undertakings also
stated a proposed value for the use/occupation of the property.

Under Oregon law, ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession of
real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that
the appellant will not commit waste or allow waste to be committed on the real property while the
appellant possesses the property, and the appellant will pay the value of the use and occupation of
the property for the period of possession if the judgment is affirmed. The value of the use and
occupation during the period of possession must be stated in the undertaking."

Accordingly, the Oregon judgment is automatically stayed by the filing of the supersedeas
undertakings, and no one has authority to list the Montana residence for sale. Please remove the
listing from MLS until further notice. We have a court appearance tomorrow morning and are likely to
learn more at that time.

Thank you,

Andrew

**Andrew W. Newsom** | *Partner*
**Holtey Law LLC** | www.holteylaw.com
1140 SW 11th Avenue, 4th Floor | Portland, OR 97205
T. 503.224.9878 | teamnewsom@holteylaw.com

Confidentiality Notice: This e-mail transmission may contain confidential and privileged information.  Unless you are
the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone
the message or any information contained in the message.  If you have received this message by mistake, please
advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a
digital or electronic signature that can be used to authenticate a contract or other legal document.  Thank you.

Exhibit 54 p. 007

Please note that our office no longer sends or receives faxes

Exhibit 54 p. 008



# CODE OF ETHICS AND
# STANDARDS OF PRACTICE
## OF THE NATIONAL ASSOCIATION OF REALTORS®
*Effective January 1, 2024*

Where the word REALTORS® is used in this Code and Preamble, it shall be deemed to include REALTOR ASSOCIATE®s.

While the Code of Ethics establishes obligations that may be higher than those mandated by law, in any instance where the Code of Ethics and the law conflict, the obligations of the law must take precedence.

## Preamble

Under all is the land. Upon its wise utilization and widely allocated ownership depend the survival and growth of free institutions and of our civilization. REALTORS® should recognize that the interests of the nation and its citizens require the highest and best use of the land and the widest distribution of land ownership. They require the creation of adequate housing, the building of functioning cities, the development of productive industries and farms, and the preservation of a healthful environment.

Such interests impose obligations beyond those of ordinary commerce. They impose grave social responsibility and a patriotic duty to which REALTORS® should dedicate themselves, and for which they should be diligent in preparing themselves. REALTORS®, therefore, are zealous to maintain and improve the standards of their calling and share with their fellow REALTORS® a common responsibility for its integrity and honor.

In recognition and appreciation of their obligations to clients, customers, the public, and each other, REALTORS® continuously strive to become and remain informed on issues affecting real estate and, as knowledgeable professionals, they willingly share the fruit of their experience and study with others. They identify and take steps, through enforcement of this Code of Ethics and by assisting appropriate regulatory bodies, to eliminate practices which may damage the public or which might discredit or bring dishonor to the real estate profession. REALTORS® having direct personal knowledge of conduct that may violate the Code of Ethics involving misappropriation of client or customer funds or property, willful discrimination, or fraud resulting in substantial economic harm, bring such matters to the attention of the appropriate Board or Association of REALTORS®. (Amended 1/00)

Realizing that cooperation with other real estate professionals promotes the best interests of those who utilize their services, REALTORS® urge exclusive representation of clients; do not attempt to gain any unfair advantage over their competitors; and they refrain from making unsolicited comments about other practitioners. In instances where their opinion is sought, or where REALTORS® believe that comment is necessary, their opinion is offered in an objective, professional manner, uninfluenced by any personal motivation or potential advantage or gain.

The term REALTOR® has come to connote competency, fairness, and high integrity resulting from adherence to a lofty ideal of moral conduct in business relations. No inducement of profit and no instruction from clients ever can justify departure from this ideal.

In the interpretation of this obligation, REALTORS® can take no safer guide than that which has been handed down through the centuries, embodied in the Golden Rule, "Whatsoever ye would that others should do to you, do ye even so to them."

Accepting this standard as their own, REALTORS® pledge to observe its spirit in all of their activities whether conducted personally, through associates or others, or via technological means, and to conduct their business in accordance with the tenets set forth below. (Amended 1/07)

## Duties to Clients and Customers

## Article 1

When representing a buyer, seller, landlord, tenant, or other client as an agent, REALTORS® pledge themselves to protect and promote the interests of their client. This obligation to the client is primary, but it does not relieve REALTORS® of their obligation to treat all parties honestly. When serving a buyer, seller, landlord, tenant or other party in a non-agency capacity, REALTORS® remain obligated to treat all parties honestly. (Amended 1/01)

- **Standard of Practice 1-1**
  REALTORS®, when acting as principals in a real estate transaction, remain obligated by the duties imposed by the Code of Ethics. (Amended 1/93)

- **Standard of Practice 1-2**
  The duties imposed by the Code of Ethics encompass all real estate-related activities and transactions whether conducted in person, electronically, or through any other means.

  The duties the Code of Ethics imposes are applicable whether REALTORS® are acting as agents or in legally recognized non-agency capacities except that any duty imposed exclusively on agents by law or regulation shall not be imposed by this Code of Ethics on REALTORS® acting in non-agency capacities.

  As used in this Code of Ethics, "client" means the person(s) or entity(ies) with whom a REALTOR® or a REALTOR®'s firm has an agency or legally recognized non-agency relationship; "customer" means a party to a real estate transaction who receives information, services, or benefits but has no contractual relationship with the REALTOR® or the REALTOR®'s firm; "prospect" means a purchaser, seller, tenant, or landlord who is not subject to a representation relationship with the REALTOR® or REALTOR®'s firm; "agent" means a real estate licensee (including brokers and sales associates) acting in an agency relationship as defined by state law or regulation; and "broker" means a real estate licensee (including brokers and sales associates) acting as an agent or in a legally recognized non-agency capacity. (Adopted 1/95, Amended 1/07)

- **Standard of Practice 1-3**
  REALTORS®, in attempting to secure a listing, shall not deliberately mislead the owner as to market value.



Exhibit 54 p. 009

- **Standard of Practice 1-4**
  REALTORS®, when seeking to become a buyer/tenant representative, shall not mislead buyers or tenants as to savings or other benefits that might be realized through use of the REALTOR®'s services. (Amended 1/93)

- **Standard of Practice 1-5**
  REALTORS® may represent the seller/landlord and buyer/tenant in the same transaction only after full disclosure to and with informed consent of both parties. (Adopted 1/93)

- **Standard of Practice 1-6**
  REALTORS® shall submit offers and counter-offers objectively and as quickly as possible. (Adopted 1/93, Amended 1/95)

- **Standard of Practice 1-7**
  When acting as listing brokers, REALTORS® shall continue to submit to the seller/landlord all offers and counter-offers until closing or execution of a lease unless the seller/landlord has waived this obligation in writing. Upon the written request of a cooperating broker who submits an offer to the listing broker, the listing broker shall provide, as soon as practical, a written affirmation to the cooperating broker stating that the offer has been submitted to the seller/landlord, or a written notification that the seller/landlord has waived the obligation to have the offer presented. REALTORS® shall not be obligated to continue to market the property after an offer has been accepted by the seller/landlord. REALTORS® shall recommend that sellers/landlords obtain the advice of legal counsel prior to acceptance of a subsequent offer except where the acceptance is contingent on the termination of the pre-existing purchase contract or lease. (Amended 1/20)

- **Standard of Practice 1-8**
  REALTORS®, acting as agents or brokers of buyers/tenants, shall submit to buyers/tenants all offers and counter-offers until acceptance but have no obligation to continue to show properties to their clients after an offer has been accepted unless otherwise agreed in writing. Upon the written request of the listing broker who submits a counter-offer to the buyer's/tenant's broker, the buyer's/tenant's broker shall provide, as soon as practical, a written affirmation to the listing broker stating that the counter-offer has been submitted to the buyers/tenants, or a written notification that the buyers/tenants have waived the obligation to have the counter-offer presented. REALTORS®, acting as agents or brokers of buyers/tenants, shall recommend that buyers/tenants obtain the advice of legal counsel if there is a question as to whether a pre-existing contract has been terminated. (Adopted 1/93, Amended 1/22)

- **Standard of Practice 1-9**
  The obligation of REALTORS® to preserve confidential information (as defined by state law) provided by their clients in the course of any agency relationship or non-agency relationship recognized by law continues after termination of agency relationships or any non-agency relationships recognized by law. REALTORS® shall not knowingly, during or following the termination of professional relationships with their clients:

  1) reveal confidential information of clients; or
  2) use confidential information of clients to the disadvantage of clients; or
  3) use confidential information of clients for the REALTOR®'s advantage or the advantage of third parties unless:
     a) clients consent after full disclosure; or
     b) REALTORS® are required by court order; or
     c) it is the intention of a client to commit a crime and the information is necessary to prevent the crime; or
     d) it is necessary to defend a REALTOR® or the REALTOR®'s employees or associates against an accusation of wrongful conduct.

  Information concerning latent material defects is not considered confidential information under this Code of Ethics. (Adopted 1/93, Amended 1/01)

- **Standard of Practice 1-10**
  REALTORS® shall, consistent with the terms and conditions of their real estate licensure and their property management agreement, competently manage the property of clients with due regard for the rights, safety and health of tenants and others lawfully on the premises. (Adopted 1/95, Amended 1/00)

- **Standard of Practice 1-11**
  REALTORS® who are employed to maintain or manage a client's property shall exercise due diligence and make reasonable efforts to protect it against reasonably foreseeable contingencies and losses. (Adopted 1/95)

- **Standard of Practice 1-12**
  When entering into listing contracts, REALTORS® must advise sellers/landlords of:

  1) the REALTOR®'s company policies regarding cooperation and the amount(s) of any compensation that will be offered to subagents, buyer/tenant agents, and/or brokers acting in legally recognized non-agency capacities;
  2) the fact that buyer/tenant agents or brokers, even if compensated by listing brokers, or by sellers/landlords may represent the interests of buyers/tenants; and
  3) any potential for listing brokers to act as disclosed dual agents, e.g., buyer/tenant agents. (Adopted 1/93, Renumbered 1/98, Amended 1/03)

- **Standard of Practice 1-13**
  When entering into buyer/tenant agreements, REALTORS® must advise potential clients of:

  1) the REALTOR®'s company policies regarding cooperation;
  2) the amount of compensation to be paid by the client;
  3) the potential for additional or offsetting compensation from other brokers, from the seller or landlord, or from other parties;
  4) any potential for the buyer/tenant representative to act as a disclosed dual agent, e.g., listing broker, subagent, landlord's agent, etc.; and
  5) the possibility that sellers or sellers' representatives may not treat the existence, terms, or conditions of offers as confidential unless confidentiality is required by law, regulation, or by any confidentiality agreement between the parties. (Adopted 1/93, Renumbered 1/98, Amended 1/06)

- **Standard of Practice 1-14**
  Fees for preparing appraisals or other valuations shall not be contingent upon the amount of the appraisal or valuation. (Adopted 1/02)

- **Standard of Practice 1-15**
  REALTORS®, in response to inquiries from buyers or cooperating brokers shall, with the sellers' approval, disclose the existence of offers on the property. Where disclosure is authorized, REALTORS® shall also disclose, if asked, whether offers were obtained by the listing licensee, another licensee in the listing firm, or by a cooperating broker. (Adopted 1/03, Amended 1/09)

- **Standard of Practice 1-16**
  REALTORS® shall not access or use, or permit or enable others to access or use, listed or managed property on terms or conditions other than those authorized by the owner or seller. (Adopted 1/12)

## Article 2

REALTORS® shall avoid exaggeration, misrepresentation, or concealment of pertinent facts relating to the property or the transaction. REALTORS® shall not, however, be obligated to discover latent defects in the property, to advise on matters outside the scope of their real estate license, or to disclose facts which are confidential under the scope of agency or non-agency relationships as defined by state law. (Amended 1/00)

Exhibit 54 p. 010

- **Standard of Practice 2-1**
  REALTORS® shall only be obligated to discover and disclose adverse factors reasonably apparent to someone with expertise in those areas required by their real estate licensing authority. Article 2 does not impose upon the REALTOR® the obligation of expertise in other professional or technical disciplines. (Amended 1/96)

- **Standard of Practice 2-2**
  (Renumbered as Standard of Practice 1-12 1/98)

- **Standard of Practice 2-3**
  (Renumbered as Standard of Practice 1-13 1/98)

- **Standard of Practice 2-4**
  REALTORS® shall not be parties to the naming of a false consideration in any document, unless it be the naming of an obviously nominal consideration.

- **Standard of Practice 2-5**
  Factors defined as "non-material" by law or regulation or which are expressly referenced in law or regulation as not being subject to disclosure are considered not "pertinent" for purposes of Article 2. (Adopted 1/93)

## Article 3

REALTORS® shall cooperate with other brokers except when cooperation is not in the client's best interest. The obligation to cooperate does not include the obligation to share commissions, fees, or to otherwise compensate another broker. (Amended 1/95)

- **Standard of Practice 3-1**
  REALTORS®, acting as exclusive agents or brokers of sellers/landlords, establish the terms and conditions of offers to cooperate. Unless expressly indicated in offers to cooperate, cooperating brokers may not assume that the offer of cooperation includes an offer of compensation. Terms of compensation, if any, shall be ascertained by cooperating brokers before beginning efforts to accept the offer of cooperation. (Amended 1/99)

- **Standard of Practice 3-2**
  Any change in compensation offered for cooperative services must be communicated to the other REALTOR® prior to the time that REALTOR® submits an offer to purchase/lease the property. After a REALTOR® has submitted an offer to purchase or lease property, the listing broker may not attempt to unilaterally modify the offered compensation with respect to that cooperative transaction. (Amended 1/14)

- **Standard of Practice 3-3**
  Standard of Practice 3-2 does not preclude the listing broker and cooperating broker from entering into an agreement to change cooperative compensation. (Adopted 1/94)

- **Standard of Practice 3-4**
  REALTORS®, acting as listing brokers, have an affirmative obligation to disclose the existence of dual or variable rate commission arrangements (i.e., listings where one amount of commission is payable if the listing broker's firm is the procuring cause of sale/lease and a different amount of commission is payable if the sale/lease results through the efforts of the seller/landlord or a cooperating broker). The listing broker shall, as soon as practical, disclose the existence of such arrangements to potential cooperating brokers and shall, in response to inquiries from cooperating brokers, disclose the differential that would result in a cooperative transaction or in a sale/lease that results through the efforts of the seller/landlord. If the cooperating broker is a buyer/tenant representative, the buyer/tenant representative must disclose such information to their client before the client makes an offer to purchase or lease. (Amended 1/02)

- **Standard of Practice 3-5**
  It is the obligation of subagents to promptly disclose all pertinent facts to the principal's agent prior to as well as after a purchase or lease agreement is executed. (Amended 1/93)

- **Standard of Practice 3-6**
  REALTORS® shall disclose the existence of accepted offers, including offers with unresolved contingencies, to any broker seeking cooperation. (Adopted 5/86, Amended 1/04)

- **Standard of Practice 3-7**
  When seeking information from another REALTOR® concerning property under a management or listing agreement, REALTORS® shall disclose their REALTOR® status and whether their interest is personal or on behalf of a client and, if on behalf of a client, their relationship with the client. (Amended 1/11)

- **Standard of Practice 3-8**
  REALTORS® shall not misrepresent the availability of access to show or inspect a listed property. (Amended 11/87)

- **Standard of Practice 3-9**
  REALTORS® shall not provide access to listed property on terms other than those established by the owner or the seller. (Adopted 1/10, Amended 1/23)

- **Standard of Practice 3-10**
  The duty to cooperate established in Article 3 relates to the obligation to share information on listed property, and to make property available to other brokers for showing to prospective purchasers/tenants when it is in the best interests of sellers/landlords. (Adopted 1/11)

- **Standard of Practice 3-11**
  REALTORS® may not refuse to cooperate on the basis of a broker's race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity. (Adopted 1/20, Amended 1/23)

## Article 4

REALTORS® shall not acquire an interest in or buy or present offers from themselves, any member of their immediate families, their firms or any member thereof, or any entities in which they have any ownership interest, any real property without making their true position known to the owner or the owner's agent or broker. In selling property they own, or in which they have any interest, REALTORS® shall reveal their ownership or interest in writing to the purchaser or the purchaser's representative. (Amended 1/00)

- **Standard of Practice 4-1**
  For the protection of all parties, the disclosures required by Article 4 shall be in writing and provided by REALTORS® prior to the signing of any contract. (Adopted 2/86)

## Article 5

REALTORS® shall not undertake to provide professional services concerning a property or its value where they have a present or contemplated interest unless such interest is specifically disclosed to all affected parties.

## Article 6

REALTORS® shall not accept any commission, rebate, or profit on expenditures made for their client, without the client's knowledge and consent.

When recommending real estate products or services (e.g., homeowner's insurance, warranty programs, mortgage financing, title insurance, etc.), REALTORS® shall disclose to the client or customer to whom the recommendation is made any financial benefits or fees, other than real estate referral fees, the REALTOR® or REALTOR®'s firm may receive as a direct result of such recommendation. (Amended 1/99)

- **Standard of Practice 6-1**
  REALTORS® shall not recommend or suggest to a client or a customer the use of services of another organization or business entity in which they have a direct interest without disclosing such interest at the time of the recommendation or suggestion. (Amended 5/88)

## Article 7

In a transaction, REALTORS® shall not accept compensation from more than one party, even if permitted by law, without disclosure

Exhibit 54 p. 011

to all parties and the informed consent of the REALTOR®'s client or clients. (Amended 1/93)

## Article 8

REALTORS® shall keep in a special account in an appropriate financial institution, separated from their own funds, monies coming into their possession in trust for other persons, such as escrows, trust funds, clients' monies, and other like items.

## Article 9

REALTORS®, for the protection of all parties, shall assure whenever possible that all agreements related to real estate transactions including, but not limited to, listing and representation agreements, purchase contracts, and leases are in writing in clear and understandable language expressing the specific terms, conditions, obligations and commitments of the parties. A copy of each agreement shall be furnished to each party to such agreements upon their signing or initialing. (Amended 1/04)

- **Standard of Practice 9-1**
  For the protection of all parties, REALTORS® shall use reasonable care to ensure that documents pertaining to the purchase, sale, or lease of real estate are kept current through the use of written extensions or amendments. (Amended 1/93)

- **Standard of Practice 9-2**
  When assisting or enabling a client or customer in establishing a contractual relationship (e.g., listing and representation agreements, purchase agreements, leases, etc.) electronically, REALTORS® shall make reasonable efforts to explain the nature and disclose the specific terms of the contractual relationship being established prior to it being agreed to by a contracting party. (Adopted 1/07)

### Duties to the Public

## Article 10

REALTORS® shall not deny equal professional services to any person for reasons of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity. REALTORS® shall not be parties to any plan or agreement to discriminate against a person or persons on the basis of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity. (Amended 1/23)

REALTORS®, in their real estate employment practices, shall not discriminate against any person or persons on the basis of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity. (Amended 1/23)

- **Standard of Practice 10-1**
  When involved in the sale or lease of a residence, REALTORS® shall not volunteer information regarding the racial, religious or ethnic composition of any neighborhood nor shall they engage in any activity which may result in panic selling, however, REALTORS® may provide other demographic information. (Adopted 1/94, Amended 1/06)

- **Standard of Practice 10-2**
  When not involved in the sale or lease of a residence, REALTORS® may provide demographic information related to a property, transaction or professional assignment to a party if such demographic information is (a) deemed by the REALTOR® to be needed to assist with or complete, in a manner consistent with Article 10, a real estate transaction or professional assignment and (b) is obtained or derived from a recognized, reliable, independent, and impartial source. The source of such information and any additions, deletions, modifications, interpretations, or other changes shall be disclosed in reasonable detail. (Adopted 1/05, Renumbered 1/06)

- **Standard of Practice 10-3**
  REALTORS® shall not print, display or circulate any statement or advertisement with respect to selling or renting of a property that indicates any preference, limitations or discrimination based on race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity. (Adopted 1/94, Renumbered 1/05 and 1/06, Amended 1/23)

- **Standard of Practice 10-4**
  As used in Article 10 "real estate employment practices" relates to employees and independent contractors providing real estate-related services and the administrative and clerical staff directly supporting those individuals. (Adopted 1/00, Renumbered 1/05 and 1/06)

- **Standard of Practice 10-5**
  REALTORS® must not use harassing speech, hate speech, epithets, or slurs based on race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity. (Adopted and effective November 13, 2020, Amended 1/23)

## Article 11

The services which REALTORS® provide to their clients and customers shall conform to the standards of practice and competence which are reasonably expected in the specific real estate disciplines in which they engage; specifically, residential real estate brokerage, real property management, commercial and industrial real estate brokerage, land brokerage, real estate appraisal, real estate counseling, real estate syndication, real estate auction, and international real estate.

REALTORS® shall not undertake to provide specialized professional services concerning a type of property or service that is outside their field of competence unless they engage the assistance of one who is competent on such types of property or service, or unless the facts are fully disclosed to the client. Any persons engaged to provide such assistance shall be so identified to the client and their contribution to the assignment should be set forth. (Amended 1/10)

- **Standard of Practice 11-1**
  When REALTORS® prepare opinions of real property value or price they must:

  1) be knowledgeable about the type of property being valued,

  2) have access to the information and resources necessary to formulate an accurate opinion, and

  3) be familiar with the area where the subject property is located

  unless lack of any of these is disclosed to the party requesting the opinion in advance.

  When an opinion of value or price is prepared other than in pursuit of a listing or to assist a potential purchaser in formulating a purchase offer, the opinion shall include the following unless the party requesting the opinion requires a specific type of report or different data set:

  1) identification of the subject property

  2) date prepared

  3) defined value or price

  4) limiting conditions, including statements of purpose(s) and intended user(s)

  5) any present or contemplated interest, including the possibility of representing the seller/landlord or buyers/ tenants

  6) basis for the opinion, including applicable market data

  7) if the opinion is not an appraisal, a statement to that effect

  8) disclosure of whether and when a physical inspection of the property's exterior was conducted

  9) disclosure of whether and when a physical inspection of the property's interior was conducted

  10) disclosure of whether the REALTOR® has any conflicts of interest (Amended 1/14)

- **Standard of Practice 11-2**
  The obligations of the Code of Ethics in respect of real estate disciplines other than appraisal shall be interpreted and applied in accordance with the standards of competence and practice which

Exhibit 54 p. 012

clients and the public reasonably require to protect their rights and interests considering the complexity of the transaction, the availability of expert assistance, and, where the REALTOR® is an agent or subagent, the obligations of a fiduciary. (Adopted 1/95)

- **Standard of Practice 11-3**
  When REALTORS® provide consultive services to clients which involve advice or counsel for a fee (not a commission), such advice shall be rendered in an objective manner and the fee shall not be contingent on the substance of the advice or counsel given. If brokerage or transaction services are to be provided in addition to consultive services, a separate compensation may be paid with prior agreement between the client and REALTOR®. (Adopted 1/96)

- **Standard of Practice 11-4**
  The competency required by Article 11 relates to services contracted for between REALTORS® and their clients or customers; the duties expressly imposed by the Code of Ethics; and the duties imposed by law or regulation. (Adopted 1/02)

## Article 12

REALTORS® shall be honest and truthful in their real estate communications and shall present a true picture in their advertising, marketing, and other representations. REALTORS® shall ensure that their status as real estate professionals is readily apparent in their advertising, marketing, and other representations, and that the recipients of all real estate communications are, or have been, notified that those communications are from a real estate professional. (Amended 1/08)

- **Standard of Practice 12-1**
  REALTORS® must not represent that their brokerage services to a client or customer are free or available at no cost to their clients, unless the REALTOR® will receive no financial compensation from any source for those services. (Amended 1/22)

- **Standard of Practice 12-2**
  (Deleted 1/20)

- **Standard of Practice 12-3**
  The offering of premiums, prizes, merchandise discounts or other inducements to list, sell, purchase, or lease is not, in itself, unethical even if receipt of the benefit is contingent on listing, selling, purchasing, or leasing through the REALTOR® making the offer. However, REALTORS® must exercise care and candor in any such advertising or other public or private representations so that any party interested in receiving or otherwise benefiting from the REALTOR®'s offer will have clear, thorough, advance understanding of all the terms and conditions of the offer. The offering of any inducements to do business is subject to the limitations and restrictions of state law and the ethical obligations established by any applicable Standard of Practice. (Amended 1/95)

- **Standard of Practice 12-4**
  REALTORS® shall not offer for sale/lease or advertise property without authority. When acting as listing brokers or as subagents, REALTORS® shall not quote a price different from that agreed upon with the seller/landlord. (Amended 1/93)

- **Standard of Practice 12-5**
  REALTORS® shall not advertise nor permit any person employed by or affiliated with them to advertise real estate services or listed property in any medium (e.g., electronically, print, radio, television, etc.) without disclosing the name of that REALTOR®'s firm in a reasonable and readily apparent manner either in the advertisement or in electronic advertising via a link to a display with all required disclosures. (Adopted 11/86, Amended 1/16)

- **Standard of Practice 12-6**
  REALTORS®, when advertising unlisted real property for sale/lease in which they have an ownership interest, shall disclose their status as both owners/landlords and as REALTORS® or real estate licensees. (Amended 1/93)

- **Standard of Practice 12-7**
  Only REALTORS® who participated in the transaction as the listing broker or cooperating broker (selling broker) may claim to have "sold" the property. Prior to closing, a cooperating broker may post a "sold" sign only with the consent of the listing broker. (Amended 1/96)

- **Standard of Practice 12-8**
  The obligation to present a true picture in representations to the public includes information presented, provided, or displayed on REALTORS®' websites. REALTORS® shall use reasonable efforts to ensure that information on their websites is current. When it becomes apparent that information on a REALTOR®'s website is no longer current or accurate, REALTORS® shall promptly take corrective action. (Adopted 1/07)

- **Standard of Practice 12-9**
  REALTOR® firm websites shall disclose the firm's name and state(s) of licensure in a reasonable and readily apparent manner.

  Websites of REALTORS® and non-member licensees affiliated with a REALTOR® firm shall disclose the firm's name and that REALTOR®'s or non-member licensee's state(s) of licensure in a reasonable and readily apparent manner. (Adopted 1/07)

- **Standard of Practice 12-10**
  REALTORS®' obligation to present a true picture in their advertising and representations to the public includes Internet content, images, and the URLs and domain names they use, and prohibits REALTORS® from:

  1) engaging in deceptive or unauthorized framing of real estate brokerage websites;

  2) manipulating (e.g., presenting content developed by others) listing and other content in any way that produces a deceptive or misleading result;

  3) deceptively using metatags, keywords or other devices/ methods to direct, drive, or divert Internet traffic; or

  4) presenting content developed by others without either attribution or without permission; or

  5) otherwise misleading consumers, including use of misleading images. (Adopted 1/07, Amended 1/18)

- **Standard of Practice 12-11**
  REALTORS® intending to share or sell consumer information gathered via the Internet shall disclose that possibility in a reasonable and readily apparent manner. (Adopted 1/07)

- **Standard of Practice 12-12**
  REALTORS® shall not:

  1) use URLs or domain names that present less than a true picture, or

  2) register URLs or domain names which, if used, would present less than a true picture. (Adopted 1/08)

- **Standard of Practice 12-13**
  The obligation to present a true picture in advertising, marketing, and representations allows REALTORS® to use and display only professional designations, certifications, and other credentials to which they are legitimately entitled. (Adopted 1/08)

## Article 13

REALTORS® shall not engage in activities that constitute the unauthorized practice of law and shall recommend that legal counsel be obtained when the interest of any party to the transaction requires it.

## Article 14

If charged with unethical practice or asked to present evidence or to cooperate in any other way, in any professional standards proceeding or investigation, REALTORS® shall place all pertinent facts before the proper tribunals of the Member Board or affiliated institute, society, or council in which membership is held and shall take no action to disrupt or obstruct such processes. (Amended 1/99)

Exhibit 54 p. 013

- **Standard of Practice 14-1**
  REALTORS® shall not be subject to disciplinary proceedings in more than one Board of REALTORS® or affiliated institute, society, or council in which they hold membership with respect to alleged violations of the Code of Ethics relating to the same transaction or event. (Amended 1/95)

- **Standard of Practice 14-2**
  REALTORS® shall not make any unauthorized disclosure or dissemination of the allegations, findings, or decision developed in connection with an ethics hearing or appeal or in connection with an arbitration hearing or procedural review. (Amended 1/92)

- **Standard of Practice 14-3**
  REALTORS® shall not obstruct the Board's investigative or professional standards proceedings by instituting or threatening to institute actions for libel, slander, or defamation against any party to a professional standards proceeding or their witnesses based on the filing of an arbitration request, an ethics complaint, or testimony given before any tribunal. (Adopted 11/87, Amended 1/99)

- **Standard of Practice 14-4**
  REALTORS® shall not intentionally impede the Board's investigative or disciplinary proceedings by filing multiple ethics complaints based on the same event or transaction. (Adopted 11/88)

## Duties to REALTORS®

## Article 15

REALTORS® shall not knowingly or recklessly make false or misleading statements about other real estate professionals, their businesses, or their business practices. (Amended 1/12)

- **Standard of Practice 15-1**
  REALTORS® shall not knowingly or recklessly file false or unfounded ethics complaints. (Adopted 1/00)

- **Standard of Practice 15-2**
  The obligation to refrain from making false or misleading statements about other real estate professionals, their businesses, and their business practices includes the duty to not knowingly or recklessly publish, repeat, retransmit, or republish false or misleading statements made by others. This duty applies whether false or misleading statements are repeated in person, in writing, by technological means (e.g., the Internet), or by any other means. (Adopted 1/07, Amended 1/12)

- **Standard of Practice 15-3**
  The obligation to refrain from making false or misleading statements about other real estate professionals, their businesses, and their business practices includes the duty to publish a clarification about or to remove statements made by others on electronic media the REALTOR® controls once the REALTOR® knows the statement is false or misleading. (Adopted 1/10, Amended 1/12)

## Article 16

REALTORS® shall not engage in any practice or take any action inconsistent with exclusive representation or exclusive brokerage relationship agreements that other REALTORS® have with clients. (Amended 1/04)

- **Standard of Practice 16-1**
  Article 16 is not intended to prohibit aggressive or innovative business practices which are otherwise ethical and does not prohibit disagreements with other REALTORS® involving commission, fees, compensation or other forms of payment or expenses. (Adopted 1/93, Amended 1/95)

- **Standard of Practice 16-2**
  Article 16 does not preclude REALTORS® from making general announcements to prospects describing their services and the terms of their availability even though some recipients may have entered into agency agreements or other exclusive relationships with another REALTOR®. A general telephone canvass, general mailing or distribution addressed to all prospects in a given geographical area or in a given profession, business, club, or organization, or other classification or group is deemed "general" for purposes of this standard. (Amended 1/04)

Article 16 is intended to recognize as unethical two basic types of solicitations:

First, telephone or personal solicitations of property owners who have been identified by a real estate sign, multiple listing compilation, or other information service as having exclusively listed their property with another REALTOR® and

Second, mail or other forms of written solicitations of prospects whose properties are exclusively listed with another REALTOR® when such solicitations are not part of a general mailing but are directed specifically to property owners identified through compilations of current listings, "for sale" or "for rent" signs, or other sources of information required by Article 3 and Multiple Listing Service rules to be made available to other REALTORS® under offers of subagency or cooperation. (Amended 1/04)

- **Standard of Practice 16-3**
  Article 16 does not preclude REALTORS® from contacting the client of another broker for the purpose of offering to provide, or entering into a contract to provide, a different type of real estate service unrelated to the type of service currently being provided (e.g., property management as opposed to brokerage) or from offering the same type of service for property not subject to other brokers' exclusive agreements. However, information received through a Multiple Listing Service or any other offer of cooperation may not be used to target clients of other REALTORS® to whom such offers to provide services may be made. (Amended 1/04)

- **Standard of Practice 16-4**
  REALTORS® shall not solicit a listing which is currently listed exclusively with another broker. However, if the listing broker, when asked by the REALTOR®, refuses to disclose the expiration date and nature of such listing, i.e., an exclusive right to sell, an exclusive agency, open listing, or other form of contractual agreement between the listing broker and the client, the REALTOR® may contact the owner to secure such information and may discuss the terms upon which the REALTOR® might take a future listing or, alternatively, may take a listing to become effective upon expiration of any existing exclusive listing. (Amended 1/94)

- **Standard of Practice 16-5**
  REALTORS® shall not solicit buyer/tenant agreements from buyers/ tenants who are subject to exclusive buyer/tenant agreements. However, if asked by a REALTOR®, the broker refuses to disclose the expiration date of the exclusive buyer/ tenant agreement, the REALTOR® may contact the buyer/tenant to secure such information and may discuss the terms upon which the REALTOR® might enter into a future buyer/tenant agreement or, alternatively, may enter into a buyer/tenant agreement to become effective upon the expiration of any existing exclusive buyer/tenant agreement. (Adopted 1/94, Amended 1/98)

- **Standard of Practice 16-6**
  When REALTORS® are contacted by the client of another REALTOR® regarding the creation of an exclusive relationship to provide the same type of service, and REALTORS® have not directly or indirectly initiated such discussions, they may discuss the terms upon which they might enter into a future agreement or, alternatively, may enter into an agreement which becomes effective upon expiration of any existing exclusive agreement. (Amended 1/98)

- **Standard of Practice 16-7**
  The fact that a prospect has retained a REALTOR® as an exclusive representative or exclusive broker in one or more past transactions does not preclude other REALTORS® from seeking such prospect's future business. (Amended 1/04)

Exhibit 54 p. 014

- **Standard of Practice 16-8**
  The fact that an exclusive agreement has been entered into with a REALTOR® shall not preclude or inhibit any other REALTOR® from entering into a similar agreement after the expiration of the prior agreement. (Amended 1/98)

- **Standard of Practice 16-9**
  REALTORS®, prior to entering into a representation agreement, have an affirmative obligation to make reasonable efforts to determine whether the prospect is subject to a current, valid exclusive agreement to provide the same type of real estate service. (Amended 1/04)

- **Standard of Practice 16-10**
  REALTORS®, acting as buyer or tenant representatives or brokers, shall disclose that relationship to the seller/landlord's representative or broker at first contact and shall provide written confirmation of that disclosure to the seller/landlord's representative or broker not later than execution of a purchase agreement or lease. (Amended 1/04)

- **Standard of Practice 16-11**
  On unlisted property, REALTORS® acting as buyer/tenant representatives or brokers shall disclose that relationship to the seller/landlord at first contact for that buyer/tenant and shall provide written confirmation of such disclosure to the seller/landlord not later than execution of any purchase or lease agreement. (Amended 1/04)

  REALTORS® shall make any request for anticipated compensation from the seller/landlord at first contact. (Amended 1/98)

- **Standard of Practice 16-12**
  REALTORS®, acting as representatives or brokers of sellers/landlords or as subagents of listing brokers, shall disclose that relationship to buyers/tenants as soon as practicable and shall provide written confirmation of such disclosure to buyers/tenants not later than execution of any purchase or lease agreement. (Amended 1/04)

- **Standard of Practice 16-13**
  All dealings concerning property exclusively listed, or with buyer/tenants who are subject to an exclusive agreement shall be carried on with the client's representative or broker, and not with the client, except with the consent of the client's representative or broker or except where such dealings are initiated by the client.

  Before providing substantive services (such as writing a purchase offer or presenting a CMA) to prospects, REALTORS® shall ask prospects whether they are a party to any exclusive representation agreement. REALTORS® shall not knowingly provide substantive services concerning a prospective transaction to prospects who are parties to exclusive representation agreements, except with the consent of the prospects' exclusive representatives or at the direction of prospects. (Adopted 1/93, Amended 1/04)

- **Standard of Practice 16-14**
  REALTORS® are free to enter into contractual relationships or to negotiate with sellers/landlords, buyers/tenants or others who are not subject to an exclusive agreement but shall not knowingly obligate them to pay more than one commission except with their informed consent. (Amended 1/98)

- **Standard of Practice 16-15**
  In cooperative transactions REALTORS® shall compensate cooperating REALTORS® (principal brokers) and shall not compensate nor offer to compensate, directly or indirectly, any of the sales licensees employed by or affiliated with other REALTORS® without the prior express knowledge and consent of the cooperating broker.

- **Standard of Practice 16-16**
  REALTORS®, acting as subagents or buyer/tenant representatives or brokers, shall not use the terms of an offer to purchase/lease to attempt to modify the listing broker's offer of compensation to subagents or buyer/tenant representatives or brokers nor make the submission of an executed offer to purchase/lease

contingent on the listing broker's agreement to modify the offer of compensation. (Amended 1/04)

- **Standard of Practice 16-17**
  REALTORS®, acting as subagents or as buyer/tenant representatives or brokers, shall not attempt to extend a listing broker's offer of cooperation and/or compensation to other brokers without the consent of the listing broker. (Amended 1/04)

- **Standard of Practice 16-18**
  REALTORS® shall not use information obtained from listing brokers through offers to cooperate made through multiple listing services or through other offers of cooperation to refer listing brokers' clients to other brokers or to create buyer/tenant relationships with listing brokers' clients, unless such use is authorized by listing brokers. (Amended 1/02)

- **Standard of Practice 16-19**
  Signs giving notice of property for sale, rent, lease, or exchange shall not be placed on property without consent of the seller/landlord. (Amended 1/93)

- **Standard of Practice 16-20**
  REALTORS®, prior to or after their relationship with their current firm is terminated, shall not induce clients of their current firm to cancel exclusive contractual agreements between the client and that firm. This does not preclude REALTORS® (principals) from establishing agreements with their associated licensees governing assignability of exclusive agreements. (Adopted 1/98, Amended 1/10)

## Article 17

In the event of contractual disputes or specific non-contractual disputes as defined in Standard of Practice 17-4 between REALTORS® (principals) associated with different firms, arising out of their relationship as REALTORS®, the REALTORS® shall mediate the dispute if the Board requires its members to mediate. If the dispute is not resolved through mediation, or if mediation is not required, REALTORS® shall submit the dispute to arbitration in accordance with the policies of the Board rather than litigate the matter.

In the event clients of REALTORS® wish to mediate or arbitrate contractual disputes arising out of real estate transactions, REALTORS® shall mediate or arbitrate those disputes in accordance with the policies of the Board, provided the clients agree to be bound by any resulting agreement or award.

The obligation to participate in mediation and arbitration contemplated by this Article includes the obligation of REALTORS® (principals) to cause their firms to mediate and arbitrate and be bound by any resulting agreement or award. (Amended 1/12)

- **Standard of Practice 17-1**
  The filing of litigation and refusal to withdraw from it by REALTORS® in an arbitrable matter constitutes a refusal to arbitrate. (Adopted 2/86)

- **Standard of Practice 17-2**
  Article 17 does not require REALTORS® to mediate in those circumstances when all parties to the dispute advise the Board in writing that they choose not to mediate through the Board's facilities. The fact that all parties decline to participate in mediation does not relieve REALTORS® of the duty to arbitrate.

  Article 17 does not require REALTORS® to arbitrate in those circumstances when all parties to the dispute advise the Board in writing that they choose not to arbitrate before the Board. (Amended 1/12)

- **Standard of Practice 17-3**
  REALTORS®, when acting solely as principals in a real estate transaction, are not obligated to arbitrate disputes with other REALTORS® absent a specific written agreement to the contrary. (Adopted 1/96)

- **Standard of Practice 17-4**
  Specific non-contractual disputes that are subject to arbitration pursuant to Article 17 are:

Exhibit 54 p. 015

1) Where a listing broker has compensated a cooperating broker and another cooperating broker subsequently claims to be the procuring cause of the sale or lease. In such cases the complainant may name the first cooperating broker as respondent and arbitration may proceed without the listing broker being named as a respondent. When arbitration occurs between two (or more) cooperating brokers and where the listing broker is not a party, the amount in dispute and the amount of any potential resulting award is limited to the amount paid to the respondent by the listing broker and any amount credited or paid to a party to the transaction at the direction of the respondent. Alternatively, if the complaint is brought against the listing broker, the listing broker may name the first cooperating broker as a third-party respondent. In either instance the decision of the hearing panel as to procuring cause shall be conclusive with respect to all current or subsequent claims of the parties for compensation arising out of the underlying cooperative transaction. (Adopted 1/97, Amended 1/07)

2) Where a buyer or tenant representative is compensated by the seller or landlord, and not by the listing broker, the listing broker, as a result, reduces the commission owed by the seller or landlord and, subsequent to such actions, another cooperating broker claims to be the procuring cause of sale or lease. In such cases the complainant may name the first cooperating broker as respondent and arbitration may proceed without the listing broker being named as a respondent. When arbitration occurs between two (or more) cooperating brokers and where the listing broker is not a party, the amount in dispute and the amount of any potential resulting award is limited to the amount paid to the respondent by the seller or landlord and any amount credited or paid to a party to the transaction at the direction of the respondent. Alternatively, if the complaint is brought against the listing broker, the listing broker may name the first cooperating broker as a third-party respondent. In either instance the decision of the hearing panel as to procuring cause shall be conclusive with respect to all current or subsequent claims of the parties for compensation arising out of the underlying cooperative transaction. (Adopted 1/97, Amended 1/07)

3) Where a buyer or tenant representative is compensated by the buyer or tenant and, as a result, the listing broker reduces the commission owed by the seller or landlord and, subsequent to such actions, another cooperating broker claims to be the procuring cause of sale or lease. In such cases the complainant may name the first cooperating broker as respondent and arbitration may proceed without the listing broker being named as a respondent. Alternatively, if the complaint is brought against the listing broker, the listing broker may name the first cooperating broker as a third-party respondent. In either instance the decision of

the hearing panel as to procuring cause shall be conclusive with respect to all current or subsequent claims of the parties for compensation arising out of the underlying cooperative transaction. (Adopted 1/97)

4) Where two or more listing brokers claim entitlement to compensation pursuant to open listings with a seller or landlord who agrees to participate in arbitration (or who requests arbitration) and who agrees to be bound by the decision. In cases where one of the listing brokers has been compensated by the seller or landlord, the other listing broker, as complainant, may name the first listing broker as respondent and arbitration may proceed between the brokers. (Adopted 1/97)

5) Where a buyer or tenant representative is compensated by the seller or landlord, and not by the listing broker, and the listing broker, as a result, reduces the commission owed by the seller or landlord and, subsequent to such actions, claims to be the procuring cause of sale or lease. In such cases arbitration shall be between the listing broker and the buyer or tenant representative and the amount in dispute is limited to the amount of the reduction of commission to which the listing broker agreed. (Adopted 1/05)

- **Standard of Practice 17-5**
  The obligation to arbitrate established in Article 17 includes disputes between REALTORS® (principals) in different states in instances where, absent an established inter-association arbitration agreement, the REALTOR® (principal) requesting arbitration agrees to submit to the jurisdiction of, travel to, participate in, and be bound by any resulting award rendered in arbitration conducted by the respondent(s) REALTOR®'s association, in instances where the respondent(s) REALTOR®'s association determines that an arbitrable issue exists. (Adopted 1/07)

## Explanatory Notes

The reader should be aware of the following policies which have been approved by the Board of Directors of the National Association:

In filing a charge of an alleged violation of the Code of Ethics by a REALTOR®, the charge must read as an alleged violation of one or more Articles of the Code. Standards of Practice may be cited in support of the charge.

The Standards of Practice serve to clarify the ethical obligations imposed by the various Articles and supplement, and do not substitute for, the Case Interpretations in Interpretations of the Code of Ethics.

Modifications to existing Standards of Practice and additional new Standards of Practice are approved from time to time. Readers are cautioned to ensure that the most recent publications are utilized.



430 North Michigan Avenue | Chicago, IL 60611-4087
800.874.6500 | www.nar.realtor

©2024 NATIONAL ASSOCIATION OF REALTORS®

166-288-24 (01/24 E3)



Exhibit 54 p. 016



406-837-6000
FAX 406-837-1166

**REAL ESTATE GROUP**

P.O. Box 216
553 Electric Avenue
Bigfork, MT 59911

August 26, 2024

Code of Ethics Reply

Dear Jeri,

Here is my response to your requests. Please see background information in Exhibit #1, #2, and #3 and following reply to COE 1-16 and 3-9.

I was hired by Jesse Olsen to evaluate, list and sell his property at 2000 Blacktail Road that he owns in tenants in common with his previous domestic partner Ryan Gabriel. Jesse supplied me with court orders granting him authority to sell the property after I questioned him on the ownership. Jesse invited me to visit the property and ask me to help him sell the property in order for me to do my job. I contacted Ryan Gabriel before listing the property by phone and email (Exhibit #4, #5, #6) to introduce myself and ask for access to the property. He never replied. After I informed Jesse Olsen who lives out of state he asked me to go to the property and let him know what was going on and to allow me to get the information for marketing it which I did. After my visit to the property Ryan Gabriel called me and started physical threats to me for going to the property. I now have an Order of Protection against Ryan. He also distributed false, slanderous and defamatory information about me to my employees, Realtors in Northwest Montana and Association members, Bankers, title company people, and first and second position buyers and their brokers one of which has the property presently under contract to purchase. Ryan Gabriel has illegally interfered with the sale of the property and violated court orders to do so and he has made me and many others fearful of his actions to keep the property from being sold. This includes filing complaints with NMAR, MAR, Board of Realty Regulation, Regional MLS, Flathead Justice Court, and now a case in District Court which is now pending.

Code of Ethics Answer to Article 12

Pictures of the property were authorized by seller (Exhibit #7) with additional phone call from Jesse Olsen asking if we could use the listing photos from when he purchased it in 2022. I called Matt Waatti asked him to use his pics on my new listing and he said sure for permission to use them. Matt's pictures of the property looked relatively the same as what I saw in a quick walkthrough of the property. All inquiries for showing the property I have from Buyers and Buyers Brokers were honestly replied to that access to the property was restricted because of a

Exhibit 55 p. 001

dispute with owners and Airbnb guests. I suggested to them we wait for future dates to view the property and inspect it to their satisfaction when it was available. Megan Warren at Next Home NW Real Estate is a witness to this.

Please let me know if you have any further questions.

Sincerely,

Fritz Groenke

Exhibit 55 p. 002

**Form #E-3**

## Northwest Montana Association of REALTORS®

Board or State Association

| 110 Cooperative Way | Kalispell | Montana | 59901 |
|---|---|---|---|
| Address | City | State | Zip |

### Reply (Ethics)

To the **Professional Standards**                                         **Committee** of the

Northwest Montana Association of REALTORS, Inc.
Board or State Association

Filed  August 15                                         , 20 24

 Ryan Dean Gabriel                                         Frederick "Fritz" Groenke

Complainant(s)                                                        Respondent(s)

in a matter of alleged violation of the Code of Ethics or other membership duty as set forth in the bylaws of this Board.

Respondent(s) replies and substantiates such reply by the following facts and/or attached statement:

This is true and correct to the best knowledge and belief of the undersigned. I (we) declare that to the best of my (our) knowledge and belief, the statements contained in this Reply are true and correct.

Boards or Associations of REALTORS® where I hold or have held membership in the preceding three (3) years:

I understand that, if found in violation of the Code of Ethics or other membership duty, a respondent will be assessed an administrative processing fee of___*.

Respondent(s):

 Frederick "Fritz" Groenke
Type/Print Name                                                        Signature

 553 ELECTRIC AVE  BIGFORK, MT. 59911
Address

 406-837-6000                                          MTAFG @ CYBERPORT. NET
Phone                                                                 Email


Type/Print Name                                                        Signature


Address


Phone                                                                 Email

*(Revised 1116)*

*Fee not to exceed $500 and may not be assessed unless the Board of Directors has established policy to assess this fee against respondents found in violation of the Code of Ethics or other membership duty.

*Code of Ethics and Arbitration Manual*        92

Exhibit 55 p. 003

*Exhibit #1*

Exhibit 55 p. 004

1

2

3

4

5              IN THE CIRCUIT COURT OF THE STATE OF OREGON

6                       FOR THE COUNTY OF MULTNOMAH

7                            Family Law Department

8   **JESSE MARK OLSEN,**              )   Case No. 22DR04942
                                       )            22CV10399
9            Petitioner,               )
                                       )   **AMENDED GENERAL JUDGEMENT**
10      v.                             )
    **RYAN DEAN GABRIEL,**             )
11                                     )
             Respondent.               )
12   _____  )

13

14          This matter having come on before the Honorable Patrick W. Henry, Judge of the above-

15   referenced Court for trial on January 26, 2024, and February 14, 2024, upon a Petition seeking a

16   dissolution of domestic partnership, Petitioner appearing in person with his attorney, Roscoe C.

17   Nelson, Jr., Respondent appearing and representing himself, the Court having heard testimony of

18   the parties and reviewed the evidence received makes the following findings:

19                                        1.

20          Parties were in a domestic partnership from 2011 through 2022. The domestic partnership

21   shall be dissolved.

22                                        2.

23          Parties acquired properties which shall be equally and equitably divided.

24   / / / / /

25          Therefore, it is hereby ORDERED AND ADJUDGED as follows:

26

Page 1 – **AMENDED GENERAL JUDGMENT**

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

1.    Case No. 22CV10399 is dismissed and the domestic partnership is hereby dissolved.

2.    With respect to the sale of the real properties, Mr. Olsen shall have final decision-making authority over all aspects of the sale process, without any interference from Mr. Gabriel who shall completely cooperate in the listing, marketing and selling of the real properties (the "Portland property" being located at 5721 SW Salmon St., Portland, OR 97221; and the "Montana property" being located at 2000 Blacktail Rd., Lakeside, MT 59922, Tax Assessor No. 980159 ). To support real estate showings to potential buyers and all realtors, including but not limited to the listing agent shall have complete and unobstructed access without any interference from Mr. Gabriel.

    a.    Mr. Olsen (Petitioner) shall select the realtors to market both the properties (5721 SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

    b.    Mr. Olsen (Petitioner) shall have rights to authority over all aspects, including, but not limited to signing listings contracts, acceptance of offers, and paperwork for closing with respect to the properties (5721 SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

    c.    Both properties may be sold as soon as possible, including through a quick sale.

    d.    Both properties shall go on the market within 30 days after the entry of this Judgment in this matter.

    e.    The opinion of both parties shall be taken into account for the sale prices for both of the properties (5721 SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159).

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 55 p. 005

| | | |
|---|---|---|
| 1 | f. | The opinion of both parties shall be taken into account for the acceptance |
| 2 | | of offers for both properties (5721 SW Salmon St., Portland, OR 97221; and |
| 3 | | 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159). |
| 4 | g. | If an agreement regarding E and F above, cannot be reached within 3 days |
| 5 | | on either or both properties (5721 SW Salmon St., Portland, OR 97221; and |
| 6 | | 2000 Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159), Mr. |
| 7 | | Olsen will have final decision-making rights. |
| 8 | h. | Realtors will have complete access to show properties, within 2 hours |
| 9 | | advance notice. Showings will occur between 9am and 8pm on all days. |
| 10 | i. | Mr. Gabriel (Respondent) is prohibited from interfering with the sale |
| 11 | | process. |
| 12 | j. | Mr. Olsen (Petitioner) and Mr. Gabriel (Respondent) have equal (50/50) |
| 13 | | responsibility for all necessary and essential home repairs related to the sale |
| 14 | | of both properties, (5721 SW Salmon St., Portland, OR 97221; and 2000 |
| 15 | | Blacktail Rd. Lakeside, MT, 59922, Tax Assessor No. 980159) including |
| 16 | | any insurance deductibles and mortgage payments. If either party shall fail |
| 17 | | to pay his equal (50/50) share the other party shall be entitled a credit to be |
| 18 | | paid from the balance of the equity of the properties. |
| 19 | k. | Neither party shall injure, destroy, or lay waste to either real property (5721 |
| 20 | | SW Salmon St., Portland, OR 97221; and 2000 Blacktail Rd. Lakeside, MT, |
| 21 | | 59922, Tax Assessor No. 980159) including out buildings, fences, signage |
| 22 | | and any surrounding lot or acreage. |
| 23 | l. | Violations of any conditions of this judgement shall be subject to attorney |
| 24 | | fees, sanctions and costs. |
| 25 | | |
| 26 | | |

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 • (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 55 p. 006

1      Dated this _____ day of _____, 202___.

2

**6/20/2024 9:32:59 AM**

3

*Patrick W. Henry*

4 _____

**Circuit Court Judge Patrick W. Henry**

5

6

7 Respectfully submitted by:

8 Attorney for Petitioner:
   Roscoe C. Nelson, Jr., OSB #732218
9    811 SW Naito Parkway, Suite 200
   Portland, OR 97204
10    Telephone: (503) 222-1081
   Fax: (503) 222-6441
11    E-mail: mail@roscoecnelson.com

12

13 Petitioner:
   Jesse Mark Olsen
   5721 SW Salmon Street
14    Portland, OR 97221
   Jesse.m.olsen@gmail.com
15    (801)-710-2231

16

17

18

19

20

21

22

23

24

25

26

Page 4 – **AMENDED GENERAL JUDGMENT**

Exhibit 55 p. 007

**CERTIFICATE OF READINESS FOR SUBMISSION**

This proposed order or judgment is ready for judicial signature because:

1.　　☐Each opposing party affected by this order or judgment has stipulated to the order or judgment, as shown by each opposing party's signature on the document being submitted.

2.　　☐Each opposing party affected by this order or judgment has approved the order or judgment, as shown by signature on the document being submitted or written confirmation of approval sent to me.

3.　　☒I have served a copy of this order or judgment on all parties entitled to service and;

      (a)　　☒No objection has been served on me.

      (b)　　☐I received objections that I could not resolve with the opposing party despite reasonable efforts to do so. I have filed a copy of the objections I received and indicated which objections remain unresolved.

      (c)　　☐After conferring about objections, role and name of opposing party agreed to independently file any remaining objection.

4.　　☐The relief sought is against an opposing party who has been found in default.

5.　　☐An order of default is being requested with this proposed judgment.

6.　　☐Service is not required pursuant to UTCR 5.100(3), or by statute, rule or otherwise.

7.　　☐This is a proposed judgment that includes an award of punitive damages and notice has been served on the Director of Crime Victims' Assistance Section as required by subsection (4) of this rule.

      DATED this 11th day of June 2024.

                        s/ Roscoe C. Nelson, Jr.
                        ROSCOE C. NELSON, JR., OSB #732218
                        attorneys@roscoecnelson.com
                        Attorney for Petitioner

Exhibit 55 p. 008

*Exhibit #2*

F I L E D
07/02/2024
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Rachael Parra
DR-15-2024-0000394-JF
Coffman, Danni
2.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
kai@familylawflathead.com

Attorney for Plaintiff

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FALTHEAD COUNTY

|  |  |
|---|---|
| JESSE OLSEN,<br><br>    Plaintiff,<br><br>and<br><br>RYAN GABRIEL,<br><br>    Defendant. | **NOTICE OF FILING FOREIGN JUDGMENT** |

**TO: DEFENDANT, RYAN GABRIEL**

NOTICE IS HEREBY GIVEN that the undersigned has filed with this Court the Amended General Judgement [sic] entered in Circuit Court of the State of Oregon for the County of Multnomah, on June 21, 2024, in Case No. 22DR04942. A true and correct copy of said Judgment and of the Affidavit for Filing Foreign Judgment filed therewith are provided with this Notice and hereby served upon you in accordance with Mont. Code Ann. § 25-9-504(2) (2023).

Contact information for Plaintiff and his attorney of record are as follows:

> Jesse Olsen                    Kai Groenke
> 5924 SW Orchid Dr.        239 2nd Street West
> Portland, OR 97219        Kalispell, MT 59901

ELECTRONICALLY signed and dated this 2nd day of July, 2024.

LAW OFFICE OF KAI GROENKE, P.C.

By: */s/ Kai Groenke*
    Attorney for Plaintiff

Page 1

Exhibit 55 p. 009

**FILED**
07/02/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Rachael Parra
DR-15-2024-0000394-JF
Coffman, Danni
3.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
Email: kai@familylawflathead.com

Attorney for Plaintiff

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| JESSE OLSEN,<br><br>Plaintiff,<br><br>and<br><br>RYAN GABRIEL,<br><br>Defendant. | **AFFIDAVIT FOR FILING FOREIGN JUDGMENT** |

KAI GROENKE deposes and says:

1.  I am an attorney representing Plaintiff, Jesse Olsen, in this matter and this Affidavit is submitted pursuant to Mont. Code Ann. § 25-9-504 (2023).

2.  Submitted contemporaneously herewith is a copy of the Amended General Judgement [sic], which has been certified in accordance with the statutes of this state, entered by the Circuit Court of the State of Oregon for the County of Multnomah, in Case No. 22DR04942 on June 21, 2024.

3.  Plaintiff Jesse Olsen's current mailing address is 5942 SW Orchid Dr., Portland Oregon, 97219.

4.  Defendant Ryan Gabriel's last known address is 2000 Blacktail Rd., Box 1140, Lakeside, Montana, 59922.

Exhibit 55 p. 010

5.    The Amended General Judgement [sic] is valid and enforceable and has not been

satisfied.

Further your Affiant sayeth not.

I, Kai Groenke, declare under penalty of perjury and under the laws of the state of

Montana that the foregoing is true and correct and that to the best of my knowledge and belief,

the Amended General Judgement [sic] provided herewith has not been modified.

DATED this 2nd day of July, 2024.


*/s/ Kai Groenke*
Signed at: Kalispell, MT

Exhibit 55 p. 011

*Exhibit #3*

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR MULTNOMAH COUNTY

JESSE MARK OLSEN, )
                          ) No. 22DR04942
    Petitioner, )
                          ) **ORDER DENYING**
    and )   **STAY MOTIONS** AND
                          ) SUSTAINING OBJECTIONS
RYAN DEAN GABRIEL, )   TO UNDERTAKING
                          )
    Respondent. )

*THERE HAS NEVER BEEN A STAY ORDERED IN THIS CASE. INFO FROM JESSE OLSEN ATTORNEYS*

This matter was presented to the court at a July 24, 2024 telephonic hearing.

George Kelly (attorney for petitioner), Andrew Newsom (attorney for respondent),

and respondent, personally, were present. The hearing was held to resolve the

petitioner's objections to the respondent's July 1, 2024 "Supersedeas Undertaking

Pursuant to ORS 19.335, 19.555," his July 1, 2024 "Motion to Stay Execution of

Amended Judgment Pending Appeal," his July 2, 2024 "Motion to Stay Execution

of Amended Judgment Pending Appeal," his July 2 "Undertaking on Appeal

Pursuant to ORS 19.300," his July 6, 2024 "Supersedeas Undertaking Pursuant to

ORS 19.335, 19.355," and his July 8, 2024 "Motion to Stay Execution of

Amended Judgment Pending Appeal." The court heard arguments and accepted

the parties' agreement that the reasonable value of the use and occupation of their

Exhibit 55 p. 012

1  Montana home came to $4,318 monthly and that, because respondent is a half

2  owner, the posting that will effect a stay is 24 times half of that amount (*i.e.,* a

3  posting of $51,816). It then ruled that respondent's undertakings were insufficient

4  on account of respondent's failure to post a bond, letter of credit, or cash in support

5  of them.

6      Therefore, it is now ORDERED that petitioner's objections are sustained,

7  respondent's stay motions are denied, and there is presently no stay of the

8  provisions of the court's Amended General Judgment.

9

10                                             8/14/2024 3:39:54 PM

11

12                                             Circuit Court Judge Patrick W. Henry

13  Submitted by:

14

15  George W. Kelly (822980)
    Attorney for Respondent
16  Date: 8/8/24

17  Approved as to form:

18

19  _____ August 7, 2024
20  Andrew Newsom (096119)
    Attorney for Petitioner
21

Exhibit 55 p. 013

## CERTIFICATE OF READINESS

The proposed order is ready for judicial signature as shown by the signature of

the parties' attorney, which is set out on the document.

George W. Kelly (822980)
Dated: 8/8/24
Attorney for Jesse Olsen

Exhibit 55 p. 014

*Exhibit #4*

# Montana Real Estate Group

| From: | Montana Real Estate Group <mtreg@cyberport.net> |
| Sent: | Monday, July 08, 2024 10:09 AM |
| To: | 'rgabriel@zurccapital.com' |
| Subject: | 2000 Blacktail Road Lakeside, MT |

Hello Ryan,

In follow up to our phone call last week I am requesting a visit to the property in preparation of listing it for sale. Jesse has engaged me show the property to potential buyers and bring any offers to purchase that may be submitted. I will need unrestricted access with a 24 hour notice to be able to complete this task. If you have any personal property at the place that you would like to offer to potential buyers after a negotiation and completed purchase contract of the real property please let me know and I can assist with that. Jesse is offering that option as well with most of the furnishing. Please let me know when it would be convenient for me to visit the property. If there is a gate code or keys for access you need to provide to me I would appreciate your assistance. I am looking forward to working with you and Jesse on this project as soon as possible. We are in a busy seasonal real estate market here and it is important to take advantage of it.

Regards,

Fritz



**MONTANA**
**REAL ESTATE GROUP**
406-837-6000 off
406-250-5151 cell

1

Exhibit 55 p. 015

**Fritz Groenke**

 EXHIBIT #5

| | |
|---|---|
| **From:** | Fritz Groenke <mtreg@cyberport.net> |
| **Sent:** | Monday, July 15, 2024 12:56 PM |
| **To:** | 'Kai Groenke'; 'Jesse Olsen' |
| **Subject:** | RE: FW: 2000 Blacktail Road Lakeside, MT |

Will do Kai. I am going over to the property today to see who may be occupying it and condition of things. I ended up with clients all weekend and could not make until today. Will let you and Jesse know what I find out. Ryan still has not returned my request for information by any means.
Fritz

Montana Real Estate Group
(406) 837-6000 Office
(406) 250-5151 Fritz Cell



REAL ESTATE GROUP

**From:** Kai Groenke [mailto:kai@familylawflathead.com]
**Sent:** Monday, July 15, 2024 12:09 PM
**To:** Jesse Olsen; Montana Real Estate Group
**Subject:** RE: FW: 2000 Blacktail Road Lakeside, MT

Hi Jesse,

I apologize, I was out of the office on Friday. Let me know if you encountered any difficulty or non-cooperation on Ryan's part when you went to the property, Fritz. I would be happy to notify Ryan that we plan to enforce the Oregon order if he interferes in any way with the marketing and sale of the property. Please update me as to status of your efforts to list the property.

Thanks,

*Kai Groenke*
**Law Office of Kai Groenke, P.C.**

**From:** Jesse Olsen <jesse.m.olsen@gmail.com>
**Sent:** Friday, July 12, 2024 12:08 PM
**To:** Montana Real Estate Group <mtreg@cyberport.net>
**Cc:** Kai Groenke <kai@familylawflathead.com>
**Subject:** Re: FW: 2000 Blacktail Road Lakeside, MT

Thanks for the update, Fritz.

Kai,

1

Exhibit 55 p. 016

*Exhibit #7*

# Montana Real Estate Group

| | |
|---|---|
| **From:** | Jesse Olsen <jesse.m.olsen@gmail.com> |
| **Sent:** | Saturday, July 20, 2024 3:16 PM |
| **To:** | Fritz Groenke |
| **Subject:** | Re: Blacktail |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

I would recommend that we use the photos from the AirBnB listing and then I can send a few others if/as needed.

Please let me know if that works for you!

And thank you for the note on the short term rental license, I'll get that taken care of one way or another.

Thanks!

On Jul 19, 2024, at 1:09 PM, Fritz Groenke <mtreg@cyberport.net> wrote:

Hi Jesse,

Thanks for the signed listing back to me. We are preparing to go live with it on MLS and numerous web sites. I am wondering if you have any pictures of the place inside and out. I have a few outside but hastily taken on my first visit not knowing who was occupying the place. The Airbnb tenant came out and invited me inside however it was not picked up and pics no go. If you have any pictures please send them over please.

Thanks,
Fritz

Montana Real Estate Group
(406) 837-6000 Office
(406) 250-5151 Fritz Cell
<image001.jpg>

*then after a phone call from Jesse Olsen asking if the old listing photos could be used. Permission granted by Matt/Wrath for Fritz to use his photos.*

1

---------- Original Message ----------
From: Jeri Moon <jmoon@nmar.com>
To: Ryan Gabriel <rgabriel@zurccapital.com>, Fritz Groenke
<fritz.montana@gmail.com>, Montana Real Estate Group
<mtreg@cyberport.net>
Date: 09/06/2024 12:11 PM EDT
Subject: NMAR: Response and Abeyance


Hello!

Attached is Mr. Groenke's response to the complaint.

Because litigation surrounding this dispute is taking place, the Hearing Chair
consulted with NMAR's legal counsel. The Chair has made the decision to
put this case on abeyance, which is a hold until the litigation is over.  This
happens when an Ethics case might interfere with legal matters or vice
versa. It is up to either party to notify me when the litigation case has closed,
and we can resume the Ethics complaint at that time.

If you have any questions, feel free to reach out to me.

Thank you! Jeri



**Jeri Moon**, RCE, AHWD, C2EX, e-PRO®
Association Executive | Professional Standards Administrator
Northwest Montana Association of REALTORS®
110 Cooperative Way | Kalispell, MT 59901
Cell: 406.202.0807  |  Office: 406.752.4313x4
Email: jmoon@nmar.com

Exhibit 56 p. 001



Montana Department of
**LABOR & INDUSTRY**

August 15, 2024

Fritz Groenke
PO Box 216
Bigfork, MT 59911

RE:     Case No. 2024-RRE-09243/Groenke, Fritz

Dear Fritz Groenke:

Our office has received additional information regarding the complaint which was filed against your professional license. Please submit a written response to the allegations contained in the addendum enclosed within 15 calendar days of the date of this letter. Failure to respond may constitute unprofessional conduct under board rule and a decision without your input. Your response may be sent by mail to P.O. Box 200514, Helena, MT 59620-0514 or by email to DLIBSDComplaints@mt.gov. With your response, please include: copies of relevant documentation, the name, address and phone number of each person who may have personal knowledge related to the complaint, a description of each person's knowledge, or other relevant information.

Again, the complaint process may take several months or longer to complete. We will notify you when a decision is made to dismiss the complaint or pursue formal disciplinary action and issue you a Notice of Proposed Board Action and Opportunity for Hearing. Please notify our office immediately of any change in your contact information so we may contact you if additional information is needed.

For more information about the complaint process, visit our website at www.bsd.dli.mt.gov. If you have questions, email DLIBSDComplaints@mt.gov or call 406-841-2300.

Sincerely,

**Jeremy Rothenbuhler**
Compliance Specialist

Enc.     Addendum Information

Exhibit 57 p. 001



**Montana Department of**
**LABOR & INDUSTRY**

www.bsd.dli.mt.gov

October 7, 2024

Fritz Groenke
PO Box 216
Bigfork, MT 59911

RE:    Complaint No. 2024-RRE-09243/Groenke, Fritz

Dear Fritz Groenke:

The Screening Panel of the RRE - Board of Realty Regulation will consider the above-referenced complaint on October 21, 2024, at 8:30 AM via Audio Video Conferencing. If you would like to attend via audio or video, please email me at jeremy.rothenbuhler@mt.gov at least three business days before the meeting for instructions to attend by phone or video conference.

The Screening Panel complaint review meeting is not a hearing. No evidence or additional information will be gathered during the meeting. The Screening Panel members will review information gathered by staff to decide whether disciplinary action is warranted. You should not expect to make statements to the Panel, present arguments, call witnesses, or provide other evidence at this time. You may be excluded from portions of the meeting that involve privileged or confidential information.

The Screening Panel may dismiss the complaint if it determines that disciplinary action against your professional license is unwarranted. Alternatively, the Panel may find reasonable cause that you have engaged in unprofessional conduct that warrants disciplinary action, and a contested administrative case will begin.

We will notify you in writing of the Screening Panel's decision. If the Screening Panel initiates a contested administrative case you will receive formal Notice that you have a right to a contested case hearing at which you may present your case, or you may negotiate a Stipulation with the Board to settle your case and resolve the complaint.

For more information about the complaint process, visit our website at www.bsd.dli.mt.gov. If you have questions, please contact me at jeremy.rothenbuhler@mt.gov or 406-841-2091.

Sincerely,

Jeremy Rothenbuhler
Compliance Specialist

A8 SP Meeting Notice - Resp - LIC.docx rev. 09092020

Exhibit 57 p. 002



Montana Department of
**LABOR & INDUSTRY**

www.bsd.dli.mt.gov

October 22, 2024

Fritz Groenke
PO Box 216
Bigfork, MT 59911

RE:    Complaint No. 2024-RRE-09243/Groenke, Fritz

Dear Fritz Groenke:

The Screening Panel of the RRE - Board of Realty Regulation met on October 21, 2024. After considering the complaint, your response to the complaint, and the staff's investigation, the Screening Panel voted to dismiss the complaint. The complaint against you is now closed.

For more information about the complaint process, visit our website at www.bsd.dli.mt.gov. If you have questions, please contact us at jeremy.rothenbuhler@mt.gov or 406-841-2091.

Sincerely,

Jeremy Rothenbuhler
Compliance Specialist

A11 Dismissed_Resp.docx rev. 09092020

Exhibit 58 p. 001

F I L E D
09/30/2024
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Amanda Hess
DR-15-2024-0000510-AP
Allison, Robert B
11.00

1  Robert B. Allison
   District Court Judge, Department 2
2  Flathead County Justice Center
   920 South Main Street, Suite 310
3  Kalispell, MT 59901
   Telephone: (406) 758-5906
4

5              MONTANA ELEVENTH JUDICIAL DISTRICT COURT
6                          FLATHEAD COUNTY

7  TAYLOR KAI GROENKE,                )        Cause No. DR-24-510 (B)
                                      )
8             Plaintiff/Respondent,   )        ORDER
                                      )
9  v.                                 )        ON
                                      )
10 RYAN DEAN GABRIEL,                 )        APPEAL
                                      )
11            Defendant/Appellant.    )
                                      )
12

13

14

15        This matter is on appeal by Appellant from an Order of Protection issued by the Justice

16 Court of Flathead County, Montana on August 9, 2024 following a hearing the preceding day.

17 This Court has listened to the electronic recording of the August 8, 2024 hearing and considered

   the exhibits accepted into evidence. The Court has also reviewed the Petition for Temporary
18
   Order of Protection, and Temporary Order of protection both issued by the Justice Court on July
19
   19, 2024.

20        In an appeal such as this, the district court functions as an appellate court; the appeal is

21 confined to a review of the record and questions of law. A trial court's findings of fact are

22 reviewed to determine whether they are clearly erroneous. *State v. Berger,* 2017 MT 229, ¶6;

23 *Bridger Del Sol, Inc. v. Vincent View, LLC,* 2017 MT 293, ¶8; § 3-10-115(1) MCA.

          The Order of Protection in this case is based upon a basic conclusion of law entered by the
24
   Justice Court:
25
                    This Court has jurisdiction over the parties and subject matter, and the
26
                    Appellant has been provided with reasonable notice and opportunity
27
                    to be heard. A credible threat of the use of physical force against
28
                    Respondent exists.

   As stated in *Bridger Del Sol, supra*

                                         1

Exhibit 59 p. 001

A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or, if after reviewing the record, the reviewing court is left with a firm conviction that a mistake has been made. A trial court's conclusions of law are reviewed for correctness. *Valley Bank v. Hughes,* 2006 MT 285, ¶15.

In this case, the trial court accepted as true the version of the facts presented by Respondent, and rejected those of Appellant. The acceptance of those facts supports the aforementioned conclusion of law. A trial court is in a better position than an appellate court to observe the credibility and demeanor of witnesses. *Double AA Corp. v. Newland & Co.,* 273 Mont. 486, 494 (1995). Following review of all aspects of this appeal, this Court cannot say the conclusion of the Justice Court was incorrect.

During the Court's consideration of this appeal, Appellant filed two motions seeking a hearing on charges of perjury, contempt of court, and stalking by Respondent largely based on statements made in Respondent's Brief. These motions are found in Docs. 7 and 9. The Court has reviewed these motions closely and concluded neither of them is part of the appeal of the Order of Protection , issued by Judge Sullivan on August 8, 2024. If the contentions found in Docs. 7 and 9 are to be litigated, the appeal arena is not the forum in which to do so. As stated at 3-10-115 (3) MCA:

The district court may affirm, reverse, or amend any appealed order or judgment and may direct the proper order or judgment to be entered or direct that a new trial or further proceeding be had *in the court from which the appeal was taken.*

Emphasis added.

**ACCORDINGLY,** the decision of the Justice Court to enter an Order of Protection is **AFFIRMED.** The motions referenced *supra* in Docs 7 and 9 are **DENIED.**

**ELECTRONICALLY dated and signed below.**

2

Electronically Signed By:
Hon. Judge Robert B. Allison
Mon, Sep 30 2024 02:47:50 PM

Exhibit 59 p. 002

FILED
08/19/2024
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Kristen Skees
DR-15-2024-0000394-JF
Coffman, Danni
6.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
kai@familylawflathead.com

Attorney for Plaintiff

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FALTHEAD COUNTY

| | |
|---|---|
| JESSE OLSEN,<br><br>          Plaintiff,<br><br> and<br><br>RYAN GABRIEL,<br><br>          Defendant. | Cause No. DR-2024-394(E)<br><br>**MOTION TO ENFORCE FOREIGN JUDGMENT AND PETITION FOR CONTEMPT, STATEMENT OF CHARGE, AND REQUEST FOR ATTORNEYS' FEES** |

COMES NOW, the Plaintiff, by and through his undersigned counsel, and hereby moves the Court for an order enforcing the Amended General Judgement [sic] entered in Circuit Court of the State of Oregon for the County of Multnomah, on June 21, 2024, in Case No. 22DR04942 which is the foreign judgment registered in this matter for enforcement (Dkt. #1) (hereinafter "Judgment"). Plaintiff further petitions this Court for an order finding Defendant in contempt of the Judgment which is a lawful order of the Circuit Court properly registered in this Court for enforcement. Plaintiff requests a hearing regarding the contempt charges pursuant to Mont. Code Ann. § 3-1-518 and following a hearing, for the imposition upon Defendant of criminal sanctions, including but not limited to incarceration, a fine in an amount not to exceed $500, or both. Petitioner further requests his reasonable attorneys' fees and costs as a sanction for Defendant's deliberate and knowing contempt of the lawful judgment and order registered in this matter.

Exhibit 60 p. 001

<u>STATEMENT OF CHARGE</u>

<u>Count 1</u>:  Failure of Defendant to completely cooperate in the listing, marketing and selling of the real properties (including the property located at 2000 Blacktail Road, Lakeside, Montana) in violation of ¶ 2 of the Judgment.

<u>Count 2</u>:  Failure of Defendant to allow realtors complete access to show the property in Lakeside, within two hours' advance notice in violation of ¶ 2.h. of the Judgment.

<u>Counts 3+</u>:  Interfering with the sale process in violation of ¶ 2.i. of the Judgment (multiple instances).

<u>FACTS SUPPORTING MOTION AND STATEMENT OF CHARGE / PROCEDURAL HISTORY</u>

The facts supporting this Motion to Enforce and Petition for Contempt are set forth in the Affidavit of Jesse Olsen and the Affidavit of Kai Groenke filed herewith.

The Defendant, Ryan Gabriel ("Ryan") is the Respondent in Case No. 22DR04942 filed in the Circuit Court of the State of Oregon, County of Multnomah.  Affidavit of Jesse Olsen, ¶ 4 (Aug. 19, 2024).  Jesse is the Petitioner in the Oregon case, an action for dissolution of a domestic partnership.  Aff. Jesse, ¶ 4.  Oregon law treats a domestic partnership largely the same as a dissolution of marriage.  Aff. Jesse, ¶ 4.

A trial was held in the Oregon case on January 26 and February 14, 2024.  Aff. Jesse, ¶ 15.  Following trial, the Court entered its Judgment finding the parties to have been in a domestic partnership from 2011 until 2022, dissolving the partnership, and ordering the real properties owned by the parties in Oregon and Montana to be sold.  Aff. Jesse, ¶ 16.  The Judgment is filed in this matter as Document #1 in the Court's docket.  The Judgment contains specific terms related to the marketing and sale of the real property owned by the parties at 2000 Blacktail Road, Lakeside, Montana.

Exhibit 60 p. 002

Ryan has appealed the Judgment, which is currently on appeal before the Oregon Court of Appeals. Aff. Jesse, ¶ 17. Ryan unsuccessfully sought a stay of execution of the Judgment in the Oregon Court of Appeals. Aff. Jesse, ¶ 17. He then sought a stay in the Circuit Court (the trial court). Aff. Jesse, ¶ 17.

On July 24, 2024, the Circuit Court of Multnomah County held a hearing in Case No. 22DR04942 regarding various motions filed by Ryan related to his desire to stay the execution of the Judgment. Aff. Jesse, ¶ 17. Jesse and Ryan were each represented by an attorney at the hearing. Aff. Jesse, ¶ 17. The motions generally sought a stay of the proceedings pending appeal and a request to stay the appeal based upon a supersedeas bond posted by Ryan. Aff. Jesse, ¶ 17. Jesse objected to the stay and to the bond as being inadequate. Aff. Jesse, ¶ 17. The Circuit Court denied the motion for stay of proceedings and further sustained Jesse's objection to the bond amount being inadequate. Aff. Jesse, ¶ 17. A true and correct copy of the Order Denying Stay Motions and Sustaining Objections to Undertaking, signed by the attorney for each party, is attached hereto as **Exhibit 1**. Affidavit of Kai Groenke, ¶ 3 (Aug. 15, 2024). There is currently no order in place staying the execution of the Judgment, nor is there expected to be any such order in the future.

Ryan is not cooperating with the marketing and sale of the real property located at 2000 Blacktail Road, Lakeside, Montana. He is refusing to allow realtors access. He is deliberately and intentionally interfering with and actively obstructing the marketing and sale of the property in violation of the terms of the Judgment. Ryan has obstructed and interfered with the marketing and sale of the property by harassing Jesse, the realtor he hired to sell the property, Jesse's attorneys, and even the title company. Aff. Jesse, ¶ 2. It appears Ryan's sole purpose is obstructing, interfering with, prolonging, and ultimately preventing the sale of the property. Aff. Jesse, ¶ 2. Ryan has even resorted to threats of violence (i.e., threatening to shoot the realtor in

Exhibit 60 p. 003

the face) in an effort to obstruct the execution of the Judgment. Aff. Jesse, ¶ 21. Jesse has entered into a Buy-Sell Agreement with a potential buyer and requires Ryan's cooperation as required by the Judgment. Aff. Jesse, ¶¶ 26-27. Jesse also requires access to the property and other necessary actions pursuant to the marketing of the property, negotiations pursuant to a purchase and sale agreement and any actions necessary for closing, all of which Ryan is currently actively and deliberately obstructing. Aff. Jesse, ¶¶ 21-30.

Regarding the contempt charges, Ryan refused to cooperate in the listing of the property and further refused to cooperate in marketing and selling of the real property. In early July 2024, Jesse entered into a listing agreement with Montana Real Estate Group, with broker Fritz Groenke ("Fritz") as listing agent. Aff. Jesse, ¶ 18. Fritz communicated with Ryan by telephone during the first week of July to introduce himself and notify Ryan of the listing. Aff. Jesse, ¶ 19. On July 8, 2024, Fritz sent Ryan an email requesting his cooperation. Aff. Jesse, ¶ 20. On July 12, Fritz informed Jesse that Ryan did not respond to the email so Jesse gave him permission and authorization to visit and inspect the property for the purpose of assessing the property before listing it. Aff. Jesse, ¶ 20. A true and correct copy of the emails referenced in this paragraph is attached hereto as **Exhibit 2**.

On Monday, July 15, 2024, Fritz visited the property and talked to the AirBNB renters who were occupying the two cabins on the property. Aff. Jesse, ¶ 21. Following Fritz's visit to the property, the phrase "all hell broke loose" hardly does justice to the describe string of events that followed. Aff. Jesse, ¶ 21.

Ryan immediately began text messaging Fritz with threatening messages. Aff. Jesse, ¶¶ 21-23. He left Fritz a voicemail message that if he comes onto the property again, Ryan will shoot Fritz in the face. Aff. Jesse, ¶ 23. Ryan reported Fritz to the Montana Regional MLS Board of Governors for purportedly "illegally" listing his property. Aff. Jesse, ¶ 23. The MLS

Exhibit 60 p. 004

Board became involved and requested an explanation and documentation from Fritz. Aff. Jesse, ¶ 23. Ryan also threatened Fritz with a lawsuit and to investigate and expose his family to humiliation and harassment. Aff. Jesse, ¶ 23. He contacted Fritz's associate, Michelle Thompson to tell her that she will "own" everything Fritz has if she receives information allegedly possessed by Ryan. Aff. Jesse, ¶ 23. Ryan also reported Fritz to the Montana Board of Realty Regulation, and now Fritz is having to defend against those frivolous allegations as well. Aff. Jesse, ¶ 23. Aff. Kai, ¶ 4. Ryan's motive for the harassment is made clear in an email to Fritz and the undersigned dated July 16, 2024 stating, "Leave me alone and you will both be fine." He clearly wanted to interfere with the marketing and sale of the property by any means necessary, including causing fear and emotional distress. Fritz obtained a Temporary Order of Protection against Ryan in the Flathead County Justice Court to stop the constant harassment, intimidation, and threats from Ryan. A true and correct copy of the Temporary Order of Protection is attached hereto as **Exhibit 3**.

Ryan also escalated his attacks upon the undersigned in July and August 2024, including but not limited to threatening to expose the undersigned's private information with the intent of subjecting the undersigned to public humiliation by publishing allegedly salacious details he had uncovered through cyber stalking; trolling and threatening to have others troll the undersigned; making thinly veiled threats against the undersigned's family including suggesting he will expose the family to public ridicule, embarrassment and harassment; suggesting Fritz is not the undersigned's biological father; threatening the undersigned's law license; threatening to sue the undersigned; suggesting the undersigned is a "felon" and contacting the undersigned's paralegal to tell her that her boss is a felon and she should keep all the information he sends her because she will "own" the undersigned once the information allegedly possessed by Ryan is exposed.

Exhibit 60 p. 005

Ryan's harassment is well-documented in Flathead County Justice Court Cause No. CV-2024-1010-OP.

Feeling very threatened and harassed to the point of developing shingles due to stress, the undersigned sought and obtained a Temporary Order of Protection against Ryan in Flathead County Justice Court. Following a half-day hearing on August 8, 2024, Justice of the Peace Paul Sullivan granted a 10-year Protective Order against Ryan in favor of the undersigned.

Despite the two protective orders, Ryan continues to threaten and harass any person involved in the marketing and sale of the property. On August 9, 2024, Jesse accepted a bona fide and reasonable offer to purchase the property with a closing date of September 16, 2024. Aff. Jesse, ¶ 26. There is also a backup offer on the property, should the first offer fall through. Aff. Jesse, ¶ 26.

Knowing of the offers and of Jesse's acceptance of the first offer, Ryan contacted Insured Titles on or around August 13 wanting to know if the property was under contract and the names of the selling agents and brokerage. Aff. Jesse, ¶¶ 27-28. When the title agent denied Ryan's fishing expedition for information, he became verbally abusive and threatened the title company with all sorts of legal action. Aff. Jesse, ¶ 28. A true and correct copy of an email from Dorinda Gray at Insured Titles to Montana Real Estate Group, forwarded to the undersigned by Montana Real Estate Group, is attached hereto as **Exhibit 4**. On August 14, 2024, Insured Titles notified Montana Real Estate Group that they "deem [Ryan] to be a safety risk" based upon his abusive behavior and threats, and that the title company is "unwilling to move forward with transaction without the allocation of proceeds and a quiet title action from the courts removing Ryan judicially from the property." Aff. Jesse, ¶ 29. A true and correct copy of the foregoing email from Dorinda Gray at Insured Titles to Montana Real Estate Group, forwarded to the undersigned by Montana Real Estate Group, is attached hereto as **Exhibit 5**. On August 10,

Exhibit 60 p. 006

2024, Ryan reported Fritz to the Montana Association of Realtors, threatening his professional license under false and frivolous pretenses, again with the sole intention and goal of interfering with the sale of the real property by any means available.  Aff. Kai, ¶ 4.

Despite plenty of warning that his actions are obstructive, abusive, and contrary to the directives of the Oregon Judgment, Ryan continues to engage in a pattern of recklessly using baseless and unwarranted threats, harassment, and intimidation in a deliberate and intentional effort to obstruct and interfere with the sale of the property.

<u>LEGAL AUTHORITY AND REQUESTED RELIEF</u>

This Court has the authority to compel obedience to its official orders.  Mont. Code Ann. § 3-1-402 (2023).  A foreign judgment properly authenticated and filed in this Court has the same status as a judgment of this Court and may be enforced or satisfied in like manner.  Mont. Code Ann. § 25-9-503.  A District Court has the responsibility to enforce its own orders (including foreign judgments registered in the Court).  *In re Marriage of Baer*, 1998 MT 29, ¶ 45, 287 Mont. 322, 954 P.2d 1125.  "There are two purposes of a contempt order—to vindicate the dignity of the court's authority and to persuade the contemnor to do what the law requires." *Malee v. Dist. Court for the Second Judicial Dist.*, 275 Mont. 72, 911 P.2d 831, 832 (1996), citing *Goodover v. Lindey's, Inc.*, 257 Mont. 38, 41, 847 P.2d 699, 700 (1993).  In family law cases, "the best remedy to insure respect for the law and the orderly progress of relations between family members split by dissolution is to give effect to the contempt powers of the District Court." *Milanovich v. Milanovich*, 201 Mont. 332, 336, 655 P.2d 963, 965 (1982); see also *Lee*, ¶ 29.

A contempt can be civil or criminal, and direct or indirect.  A contempt is civil if the sanction imposed seeks to force the contemnor's compliance with a court order.  Mont. Code Ann. § 3-1-501(3).  A contempt is criminal "if the court's purpose in imposing the penalty is to

Exhibit 60 p. 007

punish the contemnor for a specific act and to vindicate the authority of the court." Mont. Code Ann. § 3-1-501(3). If the penalty imposed is incarceration, a fine, or both, the contempt is civil if the contemnor can end the incarceration or avoid the fine by complying with a court order, and is criminal if the contemnor cannot end the incarceration or avoid the fine by complying with a court order. *Id*. A person commits the offense of criminal contempt when the person knowingly engages in purposely disobeying or refusing any lawful process or other mandate of a court. Mont. Code Ann. § 45-7-309(1)(c). Section 3-1-501(3) directs that a criminal contempt is punishable as set forth in Mont. Code Ann. § 45-7-309. A person convicted of the offense of criminal contempt shall be fined not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both. Mont. Code Ann. § 45-7-309(2).

Indirect contempt "is contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor." *Malee*, 275 Mont. at [pinpoint cite unavailable], 911 P.2d at 833 (1996), citing *United States v. Marshall*, 451 F.2d 372, 373 (9th Cir. 1971). In the case of indirect contempt, an affidavit of the facts constituting the contempt shall be presented to the court or judge. Mont. Code Ann. § 3-5-312. A person charged with indirect contempt of court must be advised of the charges against him, have reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. *Malee*, 275 Mont. at [pinpoint cite not available], 911 P.2d at 833, citing *In re Marriage of Prescott*, 259 Mont. 293, 296, 856 P.2d 229, 231 (1993). A person committing indirect contempt "is entitled to the full due process hearing traditionally associated with indirect contempt, a finding, in instances in which criminal punishment is a consequence, that the evidence establishes the contemnor's guilt beyond a reasonable doubt, and a hearing in front of an unbiased court other

Exhibit 60 p. 008

than that in which the misconduct occurred." *Guns v. Eighth Judicial District Court*, ¶ 15, 2017 MT 144, 387 Mont. 525, 396 P.3d 133, citing *Kaufman v. Mont. Twenty-First Judicial Dist. Ct.*, ¶ 31, 1998 MT 239, 291 Mont. 122, 966 P.2d 715. Criminal penalties may be imposed if the person subjected thereto has been afforded due process and has been found guilty beyond a reasonable doubt. *El Dorado Heights Homeowners' Ass'n v. Dewitt*, 2008 MT 199, ¶ 25, 344 Mont. 77, 186 P.3d 1249.

The Amended General Judgment entered by the Circuit Court in Oregon is a lawful court order. The Court has the authority to enforce the Judgment since it has been properly registered in this action. Ryan has violated the Judgment in numerous ways as described in the Statement of Charge. Ryan was on notice well in advance of the listing of the property that his interference with the sale process would lead to sanctions; the Judgment issued by Judge Henry includes a specific warning regarding sanctions for noncompliance. Jesse is not seeking Ryan's compliance; compliance appears to be beyond Ryan's ability or inclination. Jesse is seeking criminal sanctions for Ryan's ongoing and deliberate disregard for lawful court orders.

An award of attorneys' fees and costs to Jesse is available on any of four possible grounds. First, the Judgment itself provides: "Violations of any conditions of this judgment shall be subject to attorney fees, sanctions and costs." Additionally, Montana law provides: "An attorney *or party* to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct." (Emphasis added). Mont. Code Ann. § 37-61-421. Third, attorneys' fees are available as a criminal sanction for contempt when a party is found guilty beyond a reasonable doubt. *Dewitt*, ¶ 25. Finally, the Court can utilize its equitable powers to impose a sanction of

Exhibit 60 p. 009

fees and costs against a party pursuant to *Foy v. Anderson* when a prevailing party has been forced to defend against frivolous or malicious action. *Dewitt*, ¶ 25.

Ryan continues to violate lawful court orders, unreasonably multiplying these proceedings and substantially increasing the attorneys' fees and costs incurred by Jesse. He filed a meritless partition action in Flathead County District Court, Cause No. DR-2022-605(B) which Jesse was required to defend by hiring counsel. He has filed several meritless and vexatious motions in that matter. He has threatened to file meritless and vexatious lawsuits against every individual directly and indirectly involved with this case. Ryan has conducted himself in a despicable manner by using harassment and threats to prevent opposition to his actions, costing Jesse thousands of dollars and causing others to experience emotional distress. Ryan engaged in unreasonable, vexatious, and purposeful harassment and threats directed at Jesse, his attorneys, his realtor, and now the title company for the sole purpose of interfering with the sale of property and thwarting Jesse's efforts to carry out the directives of the Oregon Judgment. Ryan should be responsible for Jesse's attorneys' fees and costs incurred in connection with this action.

The Court should issue an order pursuant to Mont. Code Ann. § 3-1-513 requiring Ryan to appear before the Court to answer the foregoing charges. Ryan is entitled to a due process hearing pursuant to Mont. Code Ann. § 3-1-518 for the presentation of evidence related to the charges of contempt and to a finding of guilt beyond a reasonable doubt. Jesse has submitted contemporaneously herewith a proposed Order to Show Cause setting a hearing for Ryan to appear and notify the Court whether he contests the contempt charges.

The Court should impose criminal sanctions upon Ryan, including incarceration, for the protection of the public, Jesse, his attorneys, the realtors, potential buyers, the home inspectors, and any other person who may need access to the real property or is otherwise involved in the

Exhibit 60 p. 010

marketing and sale of the property. Furthermore, the Court should order Ryan to pay Jesse's reasonable attorneys' fees pursuant to the terms of the Oregon Judgment, as a criminal sanction for multiplying the proceedings unreasonably and vexatiously, or as an equitable award pursuant to *Foy* for forcing Jesse to defend against frivolous and malicious action. He has been repeatedly given clear warnings and directives as to the consequences of his conduct, yet he continues to engage in deliberate, purposeful, and knowing conduct directly violative of Court orders.

Ryan should be incarcerated until such time as the sale of the property closes. This is the only way the individuals involved in carrying out the sale of the property can be protected and feel safe enough to do their work. Incarceration will also reduce the harassment, intimidation, and threats that Ryan has engaged in regarding every person involved in this matter and each of the other legal matters involving Ryan. Furthermore, incarceration will ensure Ryan remains available in Flathead County to sign any documents necessary to close the sale of the property. Should it become necessary for the Court to enter a court-ordered deed transferring the property solely to Jesse to close the sale, such relief will be requested through an appropriate motion. Finally, Ryan will be more easily served with process and documents as a resident of the Flathead County Jail until the transaction can be completely closed.

ELECTRONICALLY signed and dated this 19th day of August, 2024.

LAW OFFICE OF KAI GROENKE, P.C.

By: */s/ Kai Groenke*
    Attorney for Plaintiff

Exhibit 60 p. 011

1

2

3　　　IN THE CIRCUIT COURT OF THE STATE OF OREGON
　　　　　　　　FOR MULTNOMAH COUNTY

4

JESSE MARK OLSEN,　　　　　　　)
5　　　　　　　　　　　　　　　　　)　　No. 22DR04942
　　　Petitioner,　　　　　　　　　)
6　　　　　　　　　　　　　　　　　)　　ORDER DENYING
　　　and　　　　　　　　　　　　　)　　STAY MOTIONS AND
7　　　　　　　　　　　　　　　　　)　　SUSTAINING OBJECTIONS
RYAN DEAN GABRIEL,　　　　　　　)　　TO UNDERTAKING
8　　　　　　　　　　　　　　　　　)
　　　Respondent.　　　　　　　　　)
9

10　　　　　　This matter was presented to the court at a July 24, 2024 telephonic hearing.

11　George Kelly (attorney for petitioner), Andrew Newsom (attorney for respondent),

12　and respondent, personally, were present. The hearing was held to resolve the

13　petitioner's objections to the respondent's July 1, 2024 "Supersedeas Undertaking

14　Pursuant to ORS 19.335, 19.555," his July 1, 2024 "Motion to Stay Execution of

15　Amended Judgment Pending Appeal," his July 2, 2024 "Motion to Stay Execution

16　of Amended Judgment Pending Appeal," his July 2 "Undertaking on Appeal

17　Pursuant to ORS 19.300," his July 6, 2024 "Supersedeas Undertaking Pursuant to

18　ORS 19.335, 19.355," and his July 8, 2024 "Motion to Stay Execution of

19　Amended Judgment Pending Appeal." The court heard arguments and accepted

20
　　　the parties' agreement that the reasonable value of the use and occupation of their
21

George W. Kelly (822980) * 303 West 10th Avenue, Eugene, OR 97401 * (541) 343-1884　　　　PAGE 1

EXHIBIT 1

Exhibit 60 p. 012

1    Montana home came to $4,318 monthly and that, because respondent is a half

2    owner, the posting that will effect a stay is 24 times half of that amount (*i.e.,* a

3    posting of $51,816). It then ruled that respondent's undertakings were insufficient

4    on account of respondent's failure to post a bond, letter of credit, or cash in support

5    of them.

6         Therefore, it is now ORDERED that petitioner's objections are sustained,

7    respondent's stay motions are denied, and there is presently no stay of the

8    provisions of the court's Amended General Judgment.

9

10                                         8/14/2024 3:39:54 PM

11                                         *Patrick W. Henry*

12                                         **Circuit Court Judge Patrick W. Henry**

13   Submitted by:

14   *George W. Kelly*

15   George W. Kelly (822980)
     Attorney for Respondent

16   Date: 8/8/24

17   Approved as to form:

18

19   _____ August 7, 2024

20   Andrew Newsom (096119)
     Attorney for Petitioner

21

George W. Kelly (822980) * 303 West 10ᵗʰ Avenue, Eugene, OR 97401 * (541) 343-1884          PAGE 2

Exhibit 60 p. 013

## CERTIFICATE OF READINESS

The proposed order is ready for judicial signature as shown by the signature of

the parties' attorney, which is set out on the document.

George W. Kelly (822980)
Dated: 8/8/21
Attorney for Jesse Olsen

Exhibit 60 p. 014

Good morning Jesse and Kai,

This is the email I last sent to Ryan and have not heard back from him.  I will drive over to the home this weekend to take a look at the property and see if anyone is around.  Will be in touch if I hear more.

Thanks,

Fritz Groenke
*Broker*

Cell 406.250.5151
Office 406.837.6000
553 Electric Avenue
Bigfork, MT 59911
mtreg@cyberport.net
www.mtreg.com



---

**From:** Montana Real Estate Group [mailto:mtreg@cyberport.net]
**Sent:** Monday, July 08, 2024 10:09 AM
**To:** 'rgabriel@zurccapital.com' <rgabriel@zurccapital.com>
**Subject:** 2000 Blacktail Road Lakeside, MT

Hello Ryan,
In follow up to our phone call last week I am requesting a visit to the property in preparation of listing it for sale.  Jesse has engaged me show the property to potential buyers and bring any offers to purchase that may be submitted. I will need unrestricted access with a 24 hour notice to be able to complete this task. If you have any personal property at the place that you would like to offer to potential buyers after a negotiation and completed purchase contract of the real property please let me know and I can assist with that. Jesse is offering that option as well with most of the furnishing. Please let me know when it would be convenient for me to visit the property. If there is a gate code or keys for access you need to provide to me I would appreciate your assistance.  I am looking forward to working with you and Jesse on this project as soon as possible. We are in a busy seasonal real estate market here and it is important to take advantage of it.

Regards,

EXHIBIT 2

Exhibit 60 p. 015

Fritz



406-837-6000 off

406-250-5151 cell

Exhibit 60 p. 016



IN THE JUSTICE COURT OF THE STATE OF MONTANA
IN AND FOR THE COUNTY OF FLATHEAD
BEFORE PAUL SULLIVAN, JUSTICE OF THE PEACE
935 1ST AVE WEST KALISPELL, MT 59901
(406) 758-5643

| **Temporary Order of Protection** | **Case No:** CV-385-2024-0001021-OP |
|---|---|
| Order Effective Until: **08/22/2024 or hearing** | **Hearing Date:** 08/22/2024<br>**Hearing Time:** 9:00 AM |
| Fritz Groenke , <br>            Petitioner,<br><br>      vs.<br><br>Ryan Dean Gabriel , <br>            Respondent. | **Petitioning on behalf of:**<br>And/or on behalf of minor family member(s)<br>(list name, relationship):<br><br>**Caution:**<br><br>☐  Weapon Involved<br>☐  Weapon on Property |

**THE COURT FINDS** the Petitioner is in danger of harm and is eligible for a temporary order of protection. This Court acts without notice to the Respondent because harm may result to the Petitioner if the Order of Protection is not issued immediately. Terms of this Order are set forth below.

**THE COURT ORDERS:**
- ☒ That the above named Respondent be restrained from committing further acts of violence or threats of violence.
- ☒ That the above named Respondent shall stay at least **1500 feet away** from Petitioner's
  _✓_ person, _✓_ home, _✓_ workplace, _✓_ vehicle, ___ children's school/daycare,
  ___other: _____.

ENFORCEMENT WARNINGS TO RESPONDENT:

This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced on Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262). Federal law provides penalties for possessing, transporting, shipping, or receiving and firearm or ammunition (18 U.S.C. Section 922(g)(8). Only the court can change this order.

# EXHIBIT 3

Exhibit 60 p. 017

**IT IS FURTHER ORDERED:**

1. Respondent is restrained from assaulting, threatening, abusing, harassing, following, or stalking the Petitioner. Respondent must not harass, annoy, or disturb the peace or do any of those things to the following people (may include family members, witnesses to the offense, or other victims of the offense.):

2. Respondent must not threaten to commit or commit acts of violence against Petitioner or other person listed in #1 above.

3. The following applies to Petitioner's present residence:

   a. Petitioner's current location is a secret and will remain confidential.
      -OR-
   b. Respondent must stay away from Petitioner's residence below **or** wherever Petitioner may reside: **CONFIDENTIAL**

4. Respondent must stay **1500 feet** from Petitioner's residence, and Petitioner's place of employment/school at **Montana Real Estate - 553 Electric Avenue, Bigfork;** and other: **NA.**

5. Respondent must not telephone, email, text message, social network, write, contact, or otherwise communicate, directly or indirectly or through a third party with Petitioner or the following people (may include family members, witnesses to the offense, or other victims of the offense.): **Same as #1 above.**

6. Respondent must not take the following child(ren) out of this county: **NA**

7. Respondent used or threatened Petitioner with a firearm. Respondent is prohibited from owning, possessing and/or purchasing a firearm. _____ ( **Check only if applicable**)

8. Other civil or criminal actions pending involving the parties include: **NA.**

9. Respondent must not take, hide, sell, damage or dispose of Petitioner's property.

10. Respondent must give Petitioner possession or use of the following items (items may include the residence, automobile, and other essential personal property regardless of ownership): **NA**

11. A peace officer is directed to accompany Petitioner/Respondent to the residence to ensure Petitioner/Respondent safely obtains possession or removal of the property listed above.

    **\*\*PETITIONER/RESPONDENT MAY REMOVE WORK TOOLS, ESSENTIAL CLOTHING, AND PERSONAL EFFECTS FROM THE HOME IN THE PRESENCE OF A PEACE OFFICER AND AT THE OFFICER'S DISCRETION. \*\***

12. The Court orders the following additional relief to provide for the safety and welfare of the Petitioner or other family members: **NA.**

Exhibit 60 p. 018

A hearing on the Petitioner's request that this order be made an Order of Protection for a specific time or effective permanently will be held **before this Court on 08/22/2024, at the hour of 9:00 AM,** or as soon thereafter as the matter may be heard, in the courtroom of the Justice Court, Flathead County Justice Court, Second Floor, 935 1st Ave West, Kalispell, MT.

**This Temporary Order of Protection shall continue in full force and effect until 08/22/2024, or as soon thereafter as the matter may be heard. Petitioner should immediately report any violation of this order to law enforcement.**

## WARNINGS

**Violation of this Order is a criminal offense under Montana Code Annotated § 45-5-220 or § 45-5-626 and may carry penalties of up to $10,000.00 in fines and up to a 5 year jail sentence. This Order is issued by the Court and the Respondent is forbidden to do any act listed in the Order, even if invited by the Petitioner or another person. This Order may be amended only by further order of this Court or another court that assumes jurisdiction over this matter.**

The Sheriff is directed to serve, without cost to Petitioner, a copy of this Temporary Order of Protection together with a copy of Petitioner's petition upon Respondent and to file a return of service with the clerk of this court. This service will be as soon as possible and before the date of the hearing.

ISSUED this August 9, 2024.

Paul Sullivan
Justice of the Peace

Exhibit 60 p. 019

Kai,

Thought you may need to see this.

Regards,

**Michelle Thomson**
*Real Estate Advisor*

Cell 406.270.0802
Office 406.837.6000
553 Electric Avenue
Bigfork, MT 59911
mtreg@cyberport.net
michellethomson.bigfork@gmail.com



**From:** dorinda.gray@insuredtitles.com [mailto:dorinda.gray@insuredtitles.com]
**Sent:** Tuesday, August 13, 2024 2:36 PM
**To:** homes@nhmontana.com; megwarren@icloud.com; mtreg@cyberport.net; northwestrealtors@gmail.com; tanya.jackson@insuredtitles.com; talaci.larson@insuredtitles.com
**Subject:** File Number-1153156-Address-2000 Blacktail Road-Seller-Ryan D. Gabriel / Jesse M. Olsen

Hi All,

Touching base about this file and I'm including both sides as information in the counter leads me to believe there is some shared knowledge regarding what is happening with the property.

Ryan Gabriel has called our office a couple of times prior to the property going under contract and again today. I'm assuming he has likely called all title companies in the valley to try and get information ever since the property was listed.

Today he wanted to know if the property was under contract and the names of the selling agent(s) and brokerage. When he was again denied any information he became verbally abusive and is threatening all sorts of legal action.

Based on his behavior I did a little digging ahead of the title commitment and it would appear there is a court case out of Oregon that mandates the sale of this property? If that is accurate is there information that can be shared with us from that case? Do you happen to know if that judgement will be recorded in Flathead County as we don't have access to cases out of state if not recorded and/or filed in the courts?

I will be advising the team that any further communication from Ryan, email or phone calls, be forwarded to me.

Thanks,

Dorinda

*******************************************************************************
This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged.
If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited.
If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message and any copies immediately thereafter.

**EXHIBIT 4**

Exhibit 60 p. 020

If you received this email as a commercial message and would like to opt out of future commercial messages, please let us know and we will remove you from our distribution list.

Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
FAFLD


File No.: 1153156 FT

Buyer: Lacey Purdy

Seller: Ryan D. Gabriel and Jesse M. Olsen

Property Address: 2000 Blacktail Road, Lakeside, MT 59922


Dorinda Gray
Vice President/County Manager
Insured Titles
Phone: 406-755-5028
Fax: 406-755-3299

Beware of cyber-crime! If you receive an e-mail or any other communication that appears to be generated from a Insured Titles employee that contains new, revised or altered bank wire instructions, consider it suspect and call our office at a number you trust. Our wire instructions do not change.

This message contains confidential information intended only for the use of the intended recipient(s) and may contain information that is privileged. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited.

If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message immediately thereafter.

Exhibit 60 p. 021

Here we go again. Ryan has threatened the title company after we ordered a title insurance commitment.

Please advise.

Fritz

Montana Real Estate Group
(406) 837-6000 Office
(406) 250-5151 Fritz Cell



From: dorinda.gray@insuredtitles.com [mailto:dorinda.gray@insuredtitles.com]
Sent: Wednesday, August 14, 2024 12:12 PM
To: homes@nhmontana.com; megwarren@icloud.com; mtreg@cyberport.net; northwestrealtors@gmail.com
Cc: tanya.jackson@insuredtitles.com; talaci.larson@insuredtitles.com; andrea.reum@insuredtitles.com
Subject: File Number-1153156-Address-2000 Blacktail Road

Hi All,

After reviewing the information Megan provided me yesterday and information we were able to pull in Flathead County here are our concerns:

**The judgement does not address how Ryan will come out of title without him signing the Warranty Deed. Based on his phone behavior yesterday this would appear to be a moot point.

**The judgement does not address what portion of the proceeds, if any, are to be allocated between Jason and Ryan.

**In addition, Ryan's behavior from yesterday deems him to be a safety risk.

We are unwilling to move forward with the transaction without the allocation of proceeds and a quiet title action from the courts removing Ryan judicially from the property. Please advise.

Thanks,

Dorinda

*********************************************************************************
This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged.
If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited.
If you have received this message by mistake, please immediately notify us by replying to the message and

## EXHIBIT 5

Exhibit 60 p. 022


delete the original message and any copies immediately thereafter.

If you received this email as a commercial message and would like to opt out of future commercial messages, please let us know and we will remove you from our distribution list.

Thank you.
**************************************************************************************
FAFLD


File No.: 1153156 FT

Buyer: Lacey Purdy

Seller: Ryan D. Gabriel and Jesse M. Olsen

Property Address: 2000 Blacktail Road, Lakeside, MT 59922


Dorinda Gray
Vice President/County Manager
Insured Titles
Phone: 406-755-5028
Fax: 406-755-3299

Beware of cyber-crime! If you receive an e-mail or any other communication that appears to be generated from a Insured Titles employee that contains new, revised or altered bank wire instructions, consider it suspect and call our office at a number you trust. Our wire instructions do not change.

This message contains confidential information intended only for the use of the intended recipient(s) and may contain information that is privileged. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited.

If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message immediately thereafter.

Exhibit 60 p. 023

## CERTIFICATE OF SERVICE

I, Taylor Kai Groenke, hereby certify that I have served true and accurate copies of the foregoing Motion - Motion for Contempt to the following on 08-19-2024:

Ryan Dean Gabriel (Respondent)
2000 Blacktail Rd. Box 1140
Lakeside MT 59922
Service Method: First Class Mail

Electronically signed by Melissa Smith on behalf of Taylor Kai Groenke
Dated: 08-19-2024

Exhibit 60 p. 024

**F I L E D**

08/19/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Kristen Skees
DR-15-2024-0000394-JF
Coffman, Danni
7.00

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
Email: kai@familylawflathead.com

Attorney for Plaintiff

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| JESSE OLSEN,<br><br>          Plaintiff,<br><br>v.<br><br>RYAN GABRIEL,<br><br>          Defendant. | Cause No. DR-2024-394(E)<br><br>AFFIDAVIT OF JESSE OLSEN |

JESSE OLSEN, deposes and says:

1. I am the Plaintiff in this matter. Defendant, Ryan Dean Gabriel, and I were in a domestic partnership under the laws of Oregon from 2011 until March of 2022.

2. Ryan has engaged in substantial and continuous harassment of me through the legal system, and has harassed, intimidated and threatened all of the attorneys I have had to hire for the various legal actions related to the dissolution of our domestic partnership. Ryan has also harassed and threatened all individuals involved in assisting me in any way, including my realtor Fritz Groenke and his employees, and individuals at the title company I selected to close the sale of the real property jointly owned by Ryan and me located at 2000 Blacktail Road, Lakeside, Montana.

3. I reside in Portland, Oregon. Ryan travels between residences. At times he stays in the home we jointly own in Portland (which has been ordered to be sold) and at times at the

Doc ID: 2772168ec85c69e136c4a14b9843dc6ab543d77d

Exhibit 61 p. 001

property in Lakeside (which has been ordered to be sold) to the best of my knowledge and belief.

4.      On March 21, 2022, I filed a petition for dissolution of a domestic partnership in the Circuit Court of Multnomah County, Oregon which was assigned Case No. 22DR04942.  Ryan is the Respondent in Case No. 22DR04942.  A dissolution of a domestic partnership is largely treated the same as a dissolution of marriage under Oregon law.

5.      On March 21, 2022, Ryan filed a separate partition action involving our real property in Oregon which was assigned Case No. 22CV10399.

6.      On March 26, 2022, Ryan was personally served with the Petition for Dissolution in the Oregon case.

7.      On April 18, 2022, I was personally served with the Complaint in the Oregon partition action, Case No. 22CV10399.

8.      On June 6, 2022, Ryan filed a partition action in Flathead County, Cause No. DV-22-605(B).

9.      On August 17, 2022, the Circuit Court in Oregon consolidated the Oregon dissolution Case No. 22DR04942 and the Oregon partition Case No. 22CV10399, finding that Ryan and I are co-owners of real property in Oregon and Montana; that the partition action involved only the Oregon property; that the Circuit Court has personal jurisdiction over the parties; and that the Circuit Court has subject matter jurisdiction to compel the parties to act in each of the properties.

10.     Ryan filed a motion to dismiss the Oregon domestic relations case which was denied in August 2022.

Doc ID: 2772168ec85c69e136c4a14b9843dc6ab543d77d

Exhibit 61 p. 002

11.  Between August 17, 2022 and February 14, 2024, the Oregon case proceeded.  Ryan filed numerous vexatious motions in the Oregon case which delayed its resolution, most of which were denied.

12.  In April 2023, I hired Kai Groenke to seek dismissal of the Flathead County partition action since the issues are the same as in the Oregon dissolution action.

13.  On August 1, 2023, this Court issued an Order Staying Proceedings, staying the partition action filed in DV-22-605(B) pending the entry of a final judgment of the Circuit Court in Multnomah County, Oregon.

14.  Ryan's threats against my attorneys became violent in January 2024.  Ryan had filed a case in the United States District Court for the District of Montana claiming Oregon's domestic partnership laws were unconstitutional.  Although his lawsuit was dismissed, he emailed Christopher Gillette, the attorney I hired to defend against the federal lawsuit, and email containing the following statements on January 27, 2024:

> I would note, to your ultimate point, that **I would rather commit murder than succumb to forcibly conscripted marriage.**
> Conscripted marriage will not happen to me.
> **Anything that would prevent that will happen.**
> **Anything and everything.**
> Hopefully, that 'anything' will be a Fourteenth Amendment prohibition against conscripted, involuntary marriage.
> **God help you all if the US Constitution does not prevail.**
> (Emphasis added).

15.  On January 26 and February 14, 2024, Ryan and I attended a trial in the domestic partnership case in Oregon.

16.  On June 21, 2024, the Circuit Court entered the Amended General Judgment which is registered in this action (Dkt. #1).  The Judgment gave me exclusive and final authority over the marketing and sale of the Lakeside property and the Portland property.

Doc ID: 2772168ec85c69e136c4a14b9843dc6ab543d77d

Exhibit 61 p. 003

17. Ryan appealed the Judgment and I was required to hire an appellate attorney, George Kelly. George is the fourth attorney I have had to hire in the various legal matters involving Ryan and me as parties. Ryan filed a motion to stay execution of the Judgment in the appellate court, which was denied. He then filed various motions to stay in the Circuit Court, along with the posting of a supersedeas bond intended to stay the execution. On July 24, 2024, Judge Patrick Henry of the Circuit Court in Multnomah County, Oregon held a hearing and denied Ryan's motions for a stay and sustained my objection to his bond as being inadequate. Judge Henry specifically ruled there is no stay of execution of the Judgment in place. The Order attached to the Affidavit of Kai Groenke filed contemporaneously herewith accurately represents Judge Henry's ruling.

18. In early July 2024, I hired Fritz Groenke to list the Lakeside property for sale. Fritz was aware that Ryan may be difficult to work with, but he is an experienced broker who convinced me Ryan's antics would not deter him. Everyone underestimated the lengths to which Ryan would go to prevent the sale of the Lakeside property.

19. Based on information relayed to me by Fritz, he communicated with Ryan the first week of July to introduce himself and notify Ryan of the listing. I believe he was trying to set off on a good foot with Ryan in the hope of gaining his trust and cooperation.

20. Fritz emailed Ryan on July 8, 2024 requesting his cooperation. Ryan did not respond immediately. On July 12, Fritz informed me that Ryan did not respond and therefore I instructed him to proceed with the listing. I authorized him to visit the property to inspect.

21. Fritz visited the property on July 15, 2024 and talked to the AirBNB renters who were occupying the two rental cabins on the property. His visit was promptly followed by a

Doc ID: 2772168ec85c69e136c4a14b9843dc6ab543d77d

Exhibit 61 p. 004

barrage of text messages and threats from Ryan, including a threat to shoot Fritz in the face if he every set foot on the property again.

22.   In July 2024, Ryan's harassment, intimidation, and threats escalated to the point that both my attorney and Fritz Groenke obtained protective orders against Ryan issued by the Flathead County Justice Court.

23.   Beginning July 15, 2024, Ryan sent threatening text messages to Fritz and left a voicemail on his phone stating that he would shoot Fritz in the face if he ever set foot on the property again.   Ryan reported Fritz to the Montana Regional MLS for listing the property "illegally," which was false because Fritz had my authority and the Judgment gives me exclusive authority over the marketing and sale of the property.   The MLS Board became involved and requested information and documentation from Fritz.   He also sent numerous threatening text messages to Fritz and emails to Fritz and Kai regarding violence, threats of legal action, threats against their professional licenses, and threats to divulge personal information about Fritz, Kai and their family (referencing the "genealogy research" he was apparently doing or having someone else do for him) on the Internet for the purpose of invoking internet trolling, embarrassment, and intimidation.   Ryan sent an email to Fritz's associate, Michelle Thompson that she will "own" Fritz's estate if she receives information allegedly possessed by Ryan.   Ryan also reported Fritz to the Montana Board of Realty Regulation, making frivolous accusations that Fritz will now have to defend.   In an email to Fritz and Kai dated July 16, 2024, Ryan stated, "Leave me alone and you will both be fine."   His statement makes clear his actions were intended to harass, threaten and intimidate.

Doc ID: 2772168ec85c69e136c4a14b9843dc6ab543d77d

Exhibit 61 p. 005

24.     Kai and Fritz each obtained a protective order against Ryan based upon his harassment from the Flathead County Justice Court.

25.     Ryan was unsuccessful in seeking a stay of the execution of the Judgment, so he has resorted to harassment, intimidation, and threats instead.  He should not be allowed to make people feel threatened or unsafe, and he should not be allowed to continue to cost me thousands of dollars in attorneys' fees in carrying out lawful orders of the court.

26.     On August 9, 2024, I accepted a bona fide and reasonable offer to purchase the property with a closing date of September 16, 2024.  There is also a backup offer if the first offer falls through.

27.     Ryan was made aware of the offers and of my acceptance of the first offer.  He discovered that Insured Titles had been chosen to conduct the closing.

28.     On August 13, Dorinda Gray from Insured Titles emailed Fritz Groenke, noting that Ryan had contacted their office several times, had been verbally abusive, and had threated all sorts of legal action if they closed the sale.

29.     On August 14, Dorinda Gray emailed Fritz Groenke that Insured Titles had deemed Ryan to be a safety risk based on his abusive behavior ad threats.  The title company is unwilling to close the sale without the allocation of proceeds and a quiet title action.  However, I believe an order from this Court would suffice to allow the title company to close.

30.     In order to close the sale, I will at minimum need the following regarding the real property:

        a.      Access for any inspections the buyer requests during inspection periods and access for contractors for any repairs as a result of inspection.

        b.      Access for septic pumping.

Doc ID: 2772168ec85c69e136c4a14b9843dc6ab543d77d

Exhibit 61 p. 006

c.      Access for appraisers for the lender, surveyors, other real estate agents and clients showing the property and any of their inspectors or other individuals needing access.

d.      All codes or keys giving full access to all of the property to Montana Real Estate Group.

e.      AirBNB schedule and contact info for any occupants of the property since Ryan continues to rent it out.  He has blocked me from having access to this information.

f.      Access anytime the property is not occupied or upon a 24-hour notice when it is occupied.

g.      Access for buyers' final walk through prior to closing.

31.     The foregoing are general requirements for realtors to do their job.  However, I also need the Court to enforce my authority to instruct the realtors to take any action necessary for marketing, selling and closing a sale of the property and any buyers' requirements related to offers to purchase.

32.     Ryan's frivolous, numerous and vexatious court filings and threats he makes by telephone, text and email are all part of a common scheme of intimidation, threat, and harassment intended to thwart the execution of the Judgment.

Further Affiant sayeth naught.

I, Jesse Olsen, declare under penalty of perjury and under the laws of the State of Montana that the foregoing is true and correct.

DATED: _____08 / 19 / 2024_____

*Jesse Olsen*
_____
Jesse Olsen, Defendant
Signed at: __Portland__, Oregon

Page 7

Doc ID: 2772168ec85c69e136c4a14b9843dc6ab543d77d

Exhibit 61 p. 007


| | |
|---|---|
| **Title** | Affidavit of Jesse Olsen.pdf |
| **File name** | Affidavit%20of%20Jesse%20Olsen.pdf |
| **Document ID** | 2772168ec85c69e136c4a14b9843dc6ab543d77d |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History



**SENT**
**08 / 19 / 2024**
15:55:44 UTC

Sent for signature to Jesse Olsen (jesse.m.olsen@gmail.com)
from kai@familylawflathead.com
IP: 72.175.36.48

**VIEWED**
**08 / 19 / 2024**
17:19:29 UTC

Viewed by Jesse Olsen (jesse.m.olsen@gmail.com)
IP: 136.226.56.191

**SIGNED**
**08 / 19 / 2024**
17:20:13 UTC

Signed by Jesse Olsen (jesse.m.olsen@gmail.com)
IP: 136.226.56.191

**COMPLETED**
**08 / 19 / 2024**
17:20:13 UTC

The document has been completed.

Exhibit 61 p. 008

**CERTIFICATE OF SERVICE**

I, Taylor Kai Groenke, hereby certify that I have served true and accurate copies of the foregoing Affidavit - Affidavit in Support to the following on 08-19-2024:


Ryan Dean Gabriel (Respondent)
2000 Blacktail Rd. Box 1140
Lakeside MT 59922
Service Method: First Class Mail


Electronically signed by Melissa Smith on behalf of Taylor Kai Groenke
Dated: 08-19-2024

Exhibit 61 p. 009

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

CLERK OF DISTRICT COURT

2024 AUG 19 AM 10: 23

FILED
BY _____ ᵐᵐ _____
DEPUTY

# IN THE DISTRICT COURT OF THE STATE OF MONTANA
## FOR THE COUNTY OF FLATHEAD

| | | |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Cause No. DV-24- 1197 |
| Plaintiff, | ) | **COMPLAINT FOR INJUNCTIVE** |
| | ) | **AND OTHER RELIEF** |
| vs. | ) | |
| FREDERICK "FRITZ" J. GROENKE | ) | **AMY EDDY** |
| /DBA MONTANA REAL ESTATE | ) | |
| GROUP, TAYLOR KAI GROENKE, | ) | |
| GROENKE HOLDINGS, LLC, and | ) | |
| MONTANA REGIONAL MLS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

1.      Plaintiff RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel") brings this action complaining of Defendants FREDERICK "FRITZ" J. GROENKE /dba MONTANA REAL ESTATE GROUP, TAYLOR KAI GROENKE, GROENKE HOLDINGS, LLC, and MONTANA REGIONAL MLS, LLC for tortious interference with a contract and for violating the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101, et seq. (Montana Consumer Protection Act), as follows:

## JURISDICTION AND VENUE

2.      This action is brought pursuant to the provisions of the Montana Consumer Protection Act, Mont. Code Ann. § 30-14-111, and pursuant to a written contract between Plaintiff Mr. Gabriel and Zurc Capital, LLC, a Wyoming limited corporation.

Exhibit 62 p. 001

3. This Court has jurisdiction over the Defendants pursuant to Mont. Code Ann. § 3-5-302 because Defendants have transacted business within the State of Montana at all times relevant to this complaint.

4. Venue for this action properly lies in Flathead County pursuant to Mont. Code Ann. § 30-14-111(3) because Defendants transact business in Flathead County, the transactions out of which this action arose occurred in Flathead County, and this action is brought by Plaintiff Mr. Gabriel, a resident of Flathead County, Montana.

## **PARTIES**

5. Plaintiff, Ryan Dean Gabriel (hereinafter referred to as 'Mr. Gabriel') at all times relevant hereto, is an individual residing at 2000 Blacktail Road, Lakeside, Montana 59922.

6. A third party, Zurc Capital, LLC (hereinafter referred to as 'Zurc') at all times relevant hereto, is a duly formed limited liability corporation of the State of Wyoming, located at 20 N. Gould Street, Suite N, Sheridan, Wyoming 82801.

7. Defendant, FREDERICK "FRITZ" J. GROENKE /dba MONTANA REAL ESTATE GROUP (hereinafter "Mr. Groenke") at all times relevant hereto, is:

(a) a self-described real estate broker doing business under the laws of the State of Montana, the assumed name certificate for which is currently active, and who asserts authorization to do business under the alleged license #RRE-BRO-LIC-1435 in this State of Montana, and thus is subject to service of process pursuant to the laws of the State of Montana. (*See* **Exhibit 24**, attached).

(b) an adult citizen of the State of Montana who resides at 246 Flathead Lake Place, Bigfork, MT 59911, does business from 553 Electric Ave., Bigfork, MT 59911 and is subject to service of process pursuant to the laws of the State of Montana.

2    COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 002

8.    Defendant, TAYLOR KAI GROENKE (hereinafter "M/r/s. Groenke") at all times relevant hereto, is:

a)    a licensed, active Montana State Bar Association member and self-described family law attorney doing business under the laws of the State of Montana under the name "Law Office of Kai Groenke", in this State of Montana, and thus is subject to service of process pursuant to the laws of the State of Montana.

b)    an adult citizen of the State of Montana who resides at 12 Whitetail Meadows Road, Kalispell, MT, and does business from 239 2nd Street West in Kalispell, MT 59901 and is subject to service of process pursuant to the laws of the State of Montana.

9.    Defendant, GROENKE HOLDINGS, LLC, at all times relevant hereto, is the holding company through which liability insurance, business licensing and other registration activities are conducted by Defendant TAYLOR KAI GROENKE (i.e., it is M/r/s. Groenke's *alter ego*), does business at 239 2nd Street West in Kalispell, MT 59901 and is subject to service of process pursuant to the laws of the State of Montana. (*See* **Exhibit 25**, attached).

10.    Defendant, MONTANA REGIONAL MLS, LLC, is the listing service provider and authority through which Plaintiff Mr. Gabriel's permanent residence was improperly and fraudulently listed, does business from 1517 S. Reserve St., Missoula, MT 59801, its CEO is Justin Ponton (hereinafter "Mr. Ponton"), and is subject to service of process pursuant to the laws of the State of Montana. (*See* **Exhibit 26**, attached).

## COMMERCE/CONSUMER TRANSACTION

11.    Subsection 8 of Mont Code. Ann. § 30-14-102 or Montana Consumer Protection Act, defines "trade or commerce" as follows:

Exhibit 62 p. 003

**"Trade" and "commerce" mean the advertising, offering for sale, or distribution of any services, any property, tangible or intangible, real, person, or mixed, or any other article, commodity, or thing of value, wherever located, and includes any trade or commerce directly or indirectly affecting the people of this state.**

Mont. Code Ann.§ 30-14-102(8).

12.    Defendants were at all times relative hereto, engaged in trade or commerce in the State of Montana, including: legal services, realtor services, real estate listing services, advertising, marketing, promoting, selling, and/or distributing real property.

## BACKGROUND AND STATEMENT OF FACTS

13.    On or around July 23, 2023, Defendant Federick "Fritz" Groenke, a notorious local realtor and alleged biological father of Defendant Taylor "Kai" Groenke, listed Plaintiff Mr. Gabriel's permanent residential home and own real property at 2000 Blacktail Rd. in Lakeside, MT 59922 – without his consent – on Zillow.com, Redfin.com, Realtor.com and elsewhere, via Defendant Montana Regional MLS, LLC (among other avenues), by invoking an Oregon lower court judgment. This Amended General Judgment has been the subject of an Oregon trial court Stay by Supersedeas Undertaking since prior to the time of the listing in question, and which is currently pending in the Oregon Court of Appeals. (*See* **Exhibit 2**, attached).

14.    Defendant Frederick "Fritz" Groenke did not have legal authorization to list the property at the time of its listing on July 23, 2024, nor at the time of the subsequent temporary withdrawal and re-listing weeks later, and he was advised as much by Mr. Gabriel's Oregon attorney (Andrew Newsom, Partner – Holtey Law Firm). Defendant Mr. Groenke listed it anyway, in active coordination with his alleged biological daughter, Taylor "Kai" Groenke. (*See* **Exhibit 3**, attached).

4    COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 004

15.     That same day, Mr. Gabriel also witnessed the electronic gate that Mr. Groenke forcibly broke by forcing his way through it, along with the unauthorized listing of Mr. Gabriel's property, accompanied by the misleading and far-outdated photos from 2019 that Mr. Groenke illegally used in his listing – photos that still belong to Cecil Waati, another local realtor. (*See* **Exhibit 11**, attached).

16.     According to Defendant Taylor "Kai" Groenke, her client, Jesse Mark Olsen (hereinafter "Mr. Olsen") had previously hired Defendant Frederick "Fritz" Groenke, the alleged biological father of Defendant Taylor "Kai" Groenke, to attempt to sell Plaintiff Mr. Gabriel's permanent residence.   Defendant Montana Regional MLS, LLC, then listed the real property at 2000 Blacktail Road, Lakeside, MT 59922 for sale and the property is now under contract, as of August 9, 2023. This was done without Plaintiff Mr. Gabriel's consent, and with the lower court Stay (Supersedeas Undertaking) still in place. (*See* **Exhibit 26** *and* **Exhibit 3**, attached).

17.     Mr. Gabriel filed supersedeas undertakings in the trial court file on July 2 and July 7, 2024. The undertakings include the following language: "appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses and has access to the property, and the appellant will pay the value of the use and occupation of the property, in addition to half of the maintenance costs, for the period of possession if the judgment is affirmed." The undertakings also stated a proposed value for the use/occupation of the property. Under Oregon law, ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed. The value of

5     COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 005

the use and occupation during the period of possession must be stated in the undertaking." (*See* **Exhibit 17** *and* **Exhibit 3**, attached).

18.    Accordingly, the Oregon judgment is automatically stayed by the filing of the supersedeas undertakings, and no one has authority to list the Montana residence for sale during the period in which the supersedeas undertaking Stay is in place. (*See* **Exhibit 17**, attached).

19.    Compounding the illegal and/or extralegal listing of Plaintiff Mr. Gabriel's property and permanent residence (2000 Blacktail Road, Lakeside, MT 59922) Frederick "Fritz" Groenke, illegally impersonated another realtor (Michelle Thomson), deliberately using her signature and then substituting her 'Reply' address ('michellethomson.bigfork@gmail.com') with his own ('mtreg@cyberport.net'). **Mr. Groenke then attempted to walk back the attempted fraudulent conveyance, actions described by Kaaren Winkler, MPA, RCE, CAE and Chief Executive Officer of the Montana Association of REALTORS as "serious", "troubling" and "severe".** (Emphasis added.) (*See* **Exhibit 1** and **Exhibit 19**, attached).

20.    In other words, on August 3, 2024, at approximately 4pm MST, Frederick "Fritz" Groenke impersonated another realtor, Michelle Thomson (a federal, state and local crime), in the process of committing numerous other felonies, including illegal trespass (under Montana Penal Code 45-6-203), vandalism, breaking and entering and harassment, among other crimes. These actions also constitute rank violations of Article 1 & Article 3 of the National Association of Realtors (NAR) Code of Ethics: Unauthorized Access to Property, SOP 1-16 and 3-9. (*See* **Exhibit 1** *and* **Exhibit 18**, attached).

21.    Mr. Groenke is also illegally using misleading and outdated photographs that are owned by another local realtor, Cecil Waati, for which he did not receive permission and which wildly misrepresent the property in its present state. For example, the entire kitchen in the 2nd cabin is being gutted by a restoration company for an insurance claim caused by leaking fittings

6    COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 006

underneath the kitchen sink and adjacent bathroom sink. The entire floor is torn out, along with the kitchen cabinetry and appliances, and that project is not scheduled to be completed until early November 2024 (photos attached of the mitigation underway). In addition, the mitigation company has tested for mold and the entire sub-floor between the kitchen in the 2nd Cabin and the Garage was plastered with toxic mold, and so the entire lower ceiling has been gutted and will be drying out for weeks. (*See* **Exhibit 14**, attached).

22.     Compounding matters, the insurance company has stated it will not continue to reimburse any repairs or claims that stem from the water leakage incident if the property is pending a contractual sale. Beyond these issues, insurance coverage for the property was dropped in January 2024 due to the water leakage incident, and so any prospective buyer will not have continuity of insurance coverage as a result of these damages, dramatically lowering the purchase/sale price of the property under the current conditions (leaving aside the fact that Mr. Gabriel currently resides at the property and it is his permanent home). (*See* **Exhibit 15**, attached).

23.     Furthermore, the aerial photos published on the listing are fraudulent in the sense that the 'wilderness' photos are now fully developed properties. Finally, there is a 3' X 3' square hole in the pump house ceiling which was cut to allow a crane to access and fix the well pump. (*See* **Exhibit 14**, attached).

24.     Not only does this act constitute substantive fraud and misrepresentation, but the listing is also a clear violation of the National Association of Realtors (NAR) Code of Ethics Article 12: Displays of Competitor's Content and Listings. (*See* **Exhibit 1**, attached).

25.     Michael Ponton, CEO of the Montana Regional MLS, was made aware of the correspondence from my Oregon attorney, Andrew Newsom, which stated that at the time of the listing in question an active Court stay (supersedeas undertaking) was in place on a judgment

7       COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 007

that Fritz Groenke purported to rely on to justify the illegal listing. That listing has never been taken down, and the court stay is still in place. (*See* **Exhibit 3**, attached).

26. The full forwarded e-mail exchange incriminating Mr. Groenke in the above is attached as Exhibit 1. (*See* **Exhibit 1**).

27. Previously, on Friday, July 19, 2024, counsel for Defendant Mr. Olsen, Taylor "Kai" Groenke ("M/r/s. Groenke") filed for a Temporary Petition for Protective Order with the Justice Court of the State of Montana (Flathead) before Hon. Paul Sullivan, Justice of the Peace. In this Protective Order, Taylor "Kai" Groenke sought a ruling that would require Plaintiff Mr. Gabriel "shall stay at least 2,500 feet from ... 2000 Blacktail Road, Lakeside, MT 59922" – which happens to be Mr. Gabriel's permanent residence and home, and which he owns, has title to, and lives in. (*See* **Exhibit 4, page 2**, attached). M/r/s. Groenke's husband is David C. Dowell, who happens to work for the Flathead County Probation and Parole office, which in turn works closely with Hon. Paul Sullivan's Justice Court. In other words, M/r/s. Groenke is trying to use her husband's connections adjacent to Hon. Paul Sullivan, Justice of the Peace, and the Flathead County Justice Court, to evict Plaintiff Mr. Gabriel from his own home ostensibly so that her father, Frederick "Fritz" Groenke (a realtor) can sell it out from underneath Mr. Gabriel for some undisclosed commission. (*See* **Exhibit 4**, attached).

28. In M/r/s. Groenke's Petition for temporary protective order, which was notably signed on July 18, 2024, Taylor "Kai" Groenke makes several brazenly false and substantively dishonest claims, such as "He [Petitioner/Plaintiff Ryan Dean Gabriel] sent a video of a horror movie clip showing someone getting shot in the face while referencing my family." The video in question does not show anyone getting shot in the face, and the fact that "Fritz" Groenke is her alleged biological father – whom she knowingly sent to illegally trespass (per Montana Penal

8    COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 008

Code 45-6-203) on my property – is by Taylor "Kai" Groenke's own design. (*See* **Exhibit 5**, attached).

29.     Per widespread local consensus, this well-rehearsed sequence of events comprises a methodical system that Defendants "Kai" and "Fritz" Groenke (hereinafter, "the Groenkes") have deployed in the past to provoke and ensnare other less capable and/or more vulnerable local residents and constituents of this very Court. The "genealogy data" that "Kai" Groenke cites repeatedly in her own Petition for Protective Order is largely public information that is heavily suggestive of widespread infidelity within the Groenke family, mostly in relation to the older Groenke generations (i.e., Plaintiff Mr. Gabriel had previously no knowledge of Taylor "Kai" Groenke's new claims that she herself has children; Mr. Gabriel only learned this upon receipt of M/r/s. Groenke's Petition for Protective Order). (*See* **Exhibit 6**, attached).

30.     M/r/s. Groenke's own sought-after Petition for Protective Order was filed along with approximately 101 pages of documentation, most of which was hastily assembled and surprisingly exculpatory of Mr. Gabriel in the context of her allegations of harassment in a separate partition and sale claim still pending in Flathead County, Montana (Case No. DV-22-605). In fact, the 101 pages M/r/s. Groenke filed with her own Petition for Protective Order appears to be a "data dump" of her entire legal file in Case No. DV-22-605, much if not most of which probably violates Plaintiff Mr. Gabriel's personal privacy and her confidentiality obligations to her client, Jesse Mark Olsen, who is also the Defendant in Case No. DV-22-605. Moreover, this frantic "data dump" seems to implicate both Defendants "Kai" and "Fritz" Groenke in a wide range of probable criminal felony acts, including trespassing, ensnarement, racketeering, vandalism, and conspiracy to commit fraud, along with various conflicts of interest wherever their professional licenses are concerned. (*See* **CV-2024-1010-OP**, Flathead County Justice Court, State of Montana, **pages** 1-101).

9       COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 009

31.     On Tuesday, July 16, 2024, M/r/s. Groenke self-incriminates and reveals via e-mail that she coordinated her father's unlawful trespass onto Mr. Gabriel's residential property. In her rushed e-mail exchange, which attempted to re-frame the events from Monday, July 15, 2024, Taylor "Kai" Groenke alleged that the US Marshall's office was "looking for" Mr. Gabriel – a completely false claim that Plaintiff was able to verify with the US Marshall's office – which indicates that she also likely tried to "report" Mr. Gabriel to the US Marshall's office using false, misleading and/or defamatory information (*See* **Exhibit 7**, attached).

32.     Beyond this, "Kai" Groenke's e-mail reveals proactive coordination between herself and her alleged biological father, Frederick "Fritz" Groenke.  Prior to receipt of this e-mail from "Kai" Groenke, Plaintiff Mr. Gabriel was unsure of the exact connection between "Fritz" and "Kai" Groenke, but M/r/s. Groenke exposed the nature of that connection with this statement which she issued in response to a brief text exchange between Plaintiff Mr. Gabriel and Defendant "Fritz" Groenke the previous day: *"Ryan, I received your threats against me and my family that you sent to Fritz Groenke.  These will not be taken lightly.  The US Marshall's Office is still looking for you regarding the threats you made against the federal judge.  They will be interested in hearing you continue to threaten people.  Do not ever threaten my children.  You are obviously attempting to impede the sale of the property in Lakeside.  I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale."* (*See* **Exhibit 8**, attached).

33.     As established previously, here Defendant "Kai" Groenke is referring to the now-invoked Oregon lower court judgement which was the subject of a temporary Stay by Supersedeas Undertaking at the time of its listing, and which is currently pending appeal in the Oregon Court of Appeals. (*See* **Exhibit 9**, attached).

10      COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 010

34.     To M/r/s. Groenke's e-mail of July 16, 2024, Plaintiff Mr. Gabriel replied, "Taylor, It is you and Fritz who are harassing me, and you are vividly aware of that fact. (...) I didn't even know you had children, which begs the question of whether Fritz has comprehension issues. There were no threats made against any federal judge - this is total nonsense. Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to." (*See* **Exhibit 10**, attached).

35.     Plaintiff Mr. Gabriel continued, "Jesse does not have clearance to sell the Lakeside property - there is an appeal in place (...) Even Jesse's Portland attorney concedes that process will likely take 24 months or so. In the interim, do not step foot on my property." (*See* **Exhibit 7**, attached).

36.     Previously, on Monday, July 15, 2024, "Fritz" Groenke had sent an e-mail apparently dictated by "Kai" Groenke (Plaintiff Mr. Gabriel bases this observation upon Mr. Groenke's differing grammar, style and syntax from a text exchange between the two later in the day), in which "Kai" Groenke conspicuously omits the rest of the thread/exchange. (*See* **Exhibit 3, page 4**, attached). Later in that same day, Mr. Gabriel received a series of notifications from his guest at his residence (2000 Blacktail Rd. in Lakeside, MT) from "Albert", a guest of his staying at the property. (*See* **Exhibit 12**, attached).

37.     Guest "Albert" told Mr. Gabriel that Frederick "Fritz" Groenke busted the electronic security gate by trying to force it open, and then walked onto the property unannounced (to Mr. Gabriel or to anyone) and conveyed to his guest "Albert" highly inappropriate and potentially defamatory private information about Plaintiff Mr. Gabriel in an attempt to intimidate and harass Mr. Gabriel and his guests. Andrew Newsom, an appellate attorney and partner of a law firm (Holtey Law) who Mr. Gabriel has retained in Oregon for that

11      COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 011

local appellate case, has advised Mr. Gabriel that "Fritz" Groenke was not authorized to intrude on the property because there was a Stay on a motion in the case in question – along with a pending appeal to a legal outcome that Mr. Groenke is hoping transpires, but which has not yet transpired and which is unlikely to transpire. Andrew Newsom's office # is 503.224.9878 and his e-mail is anewsom@holteylaw.com. (*See* **Exhibit 3**, attached).

38.    Previously, on March 13, 2024, Defendant Jesse Mark Olsen ("Mr. Olsen") attempted to use the same exact e-mail thread cited above by "Kai" Groenke to attempt to obtain a Protective/Restraining Order under Oregon's "Family Abuse and Prevention Act" ("FAPA") against Plaintiff Mr. Gabriel.  Mr. Olsen's Oregon FAPA Petition is flatly denied by the Multnomah County Judge on this date (*See* **Exhibit 10**, attached).

39.    Plaintiff Mr. Gabriel has never previously been a party to any criminal or quasi-criminal action that he is aware of, in any jurisdiction.  In other words, Plaintiff Mr. Gabriel has a spotless record; he has never been arrested for anything, ever, or accused of anything ever, until this latest volley of civil Petitions for Orders of Protection by Mr. Olsen, his legal counsel (Defendant Taylor "Kai" Groenke), and M/r/s. Groenke's alleged biological father, Defendant Frederick "Fritz" Groenke, who himself filed his own Petition for Temporary Order of Protection in an attempt to oust Mr. Gabriel from his own home and permanent residence (*See* **Exhibit 16**, attached).

40.    The hearing date for Defendant Mr. "Fritz" Groenke's Petition with the Flathead County Justice Court is currently set for August 22, 2024.  Between Defendant Mr. Olsen, his counsel, Taylor "Kai" Groenke, and Federick "Fritz" Groenke, this latest Petition for Order of Protection (via Hon. Paul Sullivan's Justice of the Peace office, Flathead County) is now the *fifth* attempt in *five different courts* to obtain similar protective orders against Plaintiff Mr. Gabriel, using the same documentation. (Emphasis added.)  Three prior attempts for the same

12    COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 012

Petitions against Plaintiff Mr. Gabriel, were flatly denied by the respective judges in those Petitions (*See* **Exhibit 13**, attached).

41.     The fourth attempt, filed by Taylor "Kai" Groenke, was partially granted with most of her requests denied or since withdrawn, and that limited Order on M/r/s. Groenke's Petition is currently pending appeal. (*See* **CV-2024-1010-OP**, Flathead County Justice Court, State of Montana).

42.     The Multnomah County Circuit Court has a stay issued on an Amended General Judgment that began on July 8, 2024, and is still in effect as of today, August 13, 2024, by way of a supersedeas undertaking pursuant to Oregon Statute (ORS) 19.335 (2). Under Oregon law, ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed. The value of the use and occupation during the period of possession must be stated in the undertaking." (*See* **Exhibit 3**, attached).

43.     Mr. Gabriel currently has an appeal pending in Multnomah County Circuit Court Case No. 22DR04942.   The Court of Appeals case number is A184337. (*See* **Exhibit 2**, attached).

**<u>TORTIOUS INTERFERENCE WITH A CONTRACT</u>**

44.     Well before any of the events described above took place, on or about April 1, 2021, the Plaintiff Mr. Gabriel entered into a written contract, a copy of which is attached hereto, made a part hereof, and is marked as **Exhibit A** (hereinafter referred to as the 'Contract'). Said

13      COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 013

contract provides that the laws of the State of Montana shall govern the Contract. (*See* **Exhibit A**, attached).

45.    Pursuant to the Contract, Zurc Capital, LLC, entered an agreement with Plaintiff Mr. Gabriel to serve as the Property Manager for an AirBNB rental located at 2000 Blacktail Road, Lakeside, MT 59922.   Among other things, the contract stipulates:   "The Property Manager shall manage, operate and maintain the Project in a commercially reasonable manner for the tenants thereof, subject to (a) applicable governmental requirements and (b) the terms and provisions of this Agreement. At the expense of the Property Owner, the Property Manager shall keep the Project clean and in good repair, and shall order and supervise the completion of such repairs as may be required, provided that the Property Owner, in a manner reasonably satisfactory to the Property Manager, makes available to the Property Manager sufficient sums to pay the costs thereof." (*See* **Exhibit A**, attached).

46.    On or about May 10, 2023, Defendant M/r/s. "Kai" Groenke breached the Contract by filing a bogus series of arguments with the local Flathead County Court seeking a stay in Case No. DV-22-605. M/r/s. Groenke invoked the pending Oregon matter in the process, knowing that her client Mr. Olsen's Oregon attorney has stated through the lawsuit – and directly to the Plaintiff Mr. Gabriel in writing – that he intended to evict Mr. Gabriel from his property at 2000 Blacktail Road in Lakeside, MT and liquidate (force a sale of the property using the forementioned lawsuit in Oregon now on appeal) without Plaintiff Mr. Gabriel's consent or negotiated participation, thus substantially interfering with the property management Contract between Zurc Capital, LLC and Mr. Gabriel, leading to a substantive and costly breach of the same. (*See* **Exhibit 22**, attached).

14      COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 014

47.     Plaintiff Mr. Gabriel has performed all conditions precedent to recovery and has not excused Defendants' breach of the Contract, thus giving rise to Plaintiff's complaint and claim of tortious interference against the Defendants.

## VIOLATIONS OF LAW

### MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECT ACT

48.     Plaintiff incorporates by reference and re-alleges each allegation contained in paragraphs 1-47.

49.     All of the acts and practices engaged in and employed by the Defendants as alleged herein, are unfair or deceptive acts or practices affecting the conduct of any trade or commerce in Montana, which are declared unlawful by Mont. Code Ann.§ 30-14-103. Specifically, Defendant:

a) **Failed to disclose a known danger:** Defendants failed to disclose known safety risks associated with the extra-legal, forced eviction of unsuspecting homeowner, Plaintiff Mr. Gabriel, from his real property and permanent residence in spite of their intentions to do so;

b) **Misrepresented real property in a real estate listing:** Defendants knowingly misrepresented, directly or by implication, the current condition of the property at 2000 Blacktail Road, in Lakeside, MT 59922 to the prospective buyers and in the process of attempting to intimidate Plaintiff Mr. Gabriel.

c) **Entered an extra-legal real estate contract under false pretenses:** Defendants knowingly created a genuinely unsafe and dangerous cascade of escalating events with Plaintiff Mr. Gabriel and other parties, in violation of 49 U.S.C. Section 30120(i).

15     COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 015

d) **Failed to perform consistent with contract obligations imposed by express and implied warranties:** Defendants failed to list Mr. Gabriel's property in compliance with the law, real estate regulations and ethical obligations as required by the National Association of REALTORS Code of Ethics, and pursuant to express and implied warranty representations and terms of a real property listing and as required by state law.

50.     Each and every unfair or deceptive act or practice engaged in by Defendants, as recited above, constitutes a separate violation of the Montana Consumer Protection Act as provided by Mont. Code Ann.§ 30-14-103.

51.     Because Defendants willfully failed to reveal material facts regarding Plaintiff Mr. Gabriel's real property and permanent residence, the Defendants have violated Mont. Code Ann. § 30-14-103 with each representation or omission.

## REMEDIES

52.     The Montana Unfair Trade Practices and Consumer Protection Act states in relevant part as follows:

> **(2) In an action brought under 30-14-111, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by 30-14-103, the department, upon petition to the court, may recover on behalf of the state a civil find of not more than $10,000 for each violation. The fine provided for in this subsection is in addition to any liability that a person might be subject to tmder subsection (1).**

Mont. Code Ann. § 30-14-142(2).

## FURTHER CLAIMS

1.     The Defendants' acts delineated hereinabove were willful and intentional.

Exhibit 62 p. 016

2. The Defendants' acts delineated hereinabove were done with the unlawful purpose of causing damage and loss to the Plaintiff.

3. The Defendants' acts delineated hereinabove were calculated to cause loss and damage to Plaintiff Mr. Gabriel in his lawful business or undertakings.

4. The Defendants' acts delineated hereinabove proximately caused Plaintiffs Mr. Gabriel and Zurc Capital, LLC, combined contractual damages of $127,817.60 to date. (*See* Exhibit 23, attached).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this honorable Court enter an Order:

A. Issuing a permanent injunction prohibiting Defendants, their agents, employees, and all other persons and entities, corporate or otherwise, in active concert or participation with any of them, from engaging in unfair, deceptive, or misleading conduct;

B. Ordering Defendants to pay civil penalties of up to **$10,000.00** for each violation of the Montana Consumer Protection Act, as provided by Mont. Code Ann. § 30-14-142;

C. An award of damages in an amount which will fully and fairly compensate Plaintiff for loss of contract revenue of **$127,817.60**.

D. Granting such other and further relief as the Court deems equitable and proper.

DATED this 13th Day of August, 2024.

_____

Exhibit 62 p. 017

Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Phone #: (403) 606-5859 m.

***

## **CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing Motion, any referenced Affidavit, and other documents indicated above filed as attachments to this Motion were served upon the opposing parties on this 13th Day of August, 2024, by the method an at the address as indicated below:

Kai Groenke
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
kai@familylawflathead.com
Attorney for Defendants

____X____ by regular mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing address shown above, sent via USPS Priority Express with signature receipt.

DATED this 13th day of August, 2024.

_____
Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.

18      COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Exhibit 62 p. 018

Kaaren Winkler <kaaren@montanarealtors.org>                                          8/12/2024 9:33 AM

## Re: 2000 Blacktail Road || Montana Regional MLS, LLC || Frederick "Fritz" Groenke

To Ryan Gabriel <rgabriel@zurccapital.com>

I am deeply sorry to hear about the situation you have described regarding the alleged illegal listing of your property and the alleged fraudulent actions taken by Frederick "Fritz" Groenke. Your concerns are both serious and troubling, and it is important that they are addressed promptly and appropriately.

Given the severity of these allegations, I strongly encourage you to file a formal complaint with the Northwest Montana Association of REALTORS and the Board of Realty Regulation. This will ensure that the matter is investigated thoroughly and that necessary actions are taken to address any violations.

By filing these complaints, you are taking a crucial step in holding those responsible accountable for their actions and preventing similar incidents in the future.

Please do not hesitate to reach out if you need any further assistance or guidance in navigating this process.

Sincerely,

Kaaren Winkler, MPA, RCE, CAE
Chief Executive Officer
Montana Association of REALTORS

On Aug 10, 2024, at 6:59 PM, Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Kaaren, Brenda and Courtney,

It has come to my attention that you three sit on the Board of Directors and/or comprise senior leadership at the Montana Association of REALTORS, Brenda Miller is Regional Ambassador – Western MT, and that Kaaren Winkler is CEO of the same.

Please see the below correspondence regarding an illegal and/or extralegal listing of my property and permanent residence - 2000 Blacktail Road, Lakeside, MT 59922 - in which the realtor, Frederick "Fritz" Groenke, has illegally impersonated another realtor (Michelle Thomson), deliberately using her signature and then substituting her regular 'Reply' address ('michellethomson.bigfork@gmail.com') with his own ('mtreg@cyberport.net').

Fritz Groenke then attempted to walk back the attempted fraudulent conveyance, as you can see from the forwarded exchange below.

In other words, on August 8, 2024, at approximately 4pm MST, Frederick "Fritz" Groenke impersonated another realtor, Michelle Thomson (a federal, state and local crime), in the process of committing numerous other felonies, including illegal trespass (under Montana Penal Code 45-6-203), vandalism, breaking and entering and harassment, among other crimes.

These actions also constitute rank violations of **Article 1 & Article 3 of the NAR Code of Ethics: Unauthorized Access to Property, SOP 1-16 and 3-9.**

Mr. Groenke is also illegally using misleading and outdated photographs that are owned by another local

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF – TORTIOUS INTERFERENCE / MONT. CODE ANN. § 30-14-111

Exhibit 62 p. 019

realtor, Cecil Waati, for which he did not receive permission and which wildly misrepresent the property in its present state.

Not only does this constitute substantive fraud and misrepresentation, this is also a clear violation of **NAR Code of Ethics Article 12: Displays of Competitor's Content and Listings.**

Michael Ponton, CEO of the Montana Regional MLS, was made aware of the correspondence from my Oregon attorney, Andrew Newsom, which stated that at the time of the listing in question an active Court stay (supersedeas undertaking) was in place on a judgment that Fritz Groenke purported to rely on to justify the illegal listing. That listing has never been taken down, and the court stay is still in place.

Please see below and the attached.

Any actions taken by Montana Real Estate Group and Frederick "Fritz" Groenke under that illegal listing will also be vigorously litigated in the pending tortious interference lawsuit (Eleventh District Court, State of Montana, Flathead County) now being served upon the parties. The lawsuit will soon potentially expand to include Montana Regional MLS, LLC, Compass South Land Sales, and the Montana Association of REALTORS, given that it is that latter organization's template under which an extralegal, imminent Buy/Sell Agreement was issued.

I have Cc'd Justin Ponton on this e-mail thread, and will be forwarding the same to the entire board of directors of the Montana Association of Realtors.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free


——— Original Message ———
From: Fritz Groenke <mtreg@cyberport.net>
To: Ryan Gabriel, michellethomson.bigfork@gmail.com
Cc: jesse.m.olsen@gmail.com, justin@406mls.com
Date: 08/03/2024 8:42 PM EDT
Subject: RE: Re: 2000 Blacktail Road


Hello Ryan,

I sent the email to you requesting the showing for Blacktail and Michelle's contact info under my signature was inadvertent. She was not asking for the showing appointment I was. We will not be showing the property because you have refused the appointment to do so. If you change your mind please let me know and we will see if the prospects can be re contacted and view the property.

Fritz


Montana Real Estate Group

(406) 837-6000 Office

(406) 250-5151 Fritz Cell

<image001.jpg>


COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF – TORTIOUS INTERFERENCE / MONT. CODE ANN. § 30-14-111

Exhibit 62 p. 020

**From:** Ryan Gabriel [mailto:rgabriel@zurccapital.com]
**Sent:** Saturday, August 03, 2024 6:05 PM
**To:** michellethomson.bigfork@gmail.com
**Cc:** mtreg@cyberport.net
**Subject:** Fwd: Re: 2000 Blacktail Road

FYI

———— Original Message ————

From: Ryan Gabriel <rgabriel@zurccapital.com>
To: Montana Real Estate Group <mtreg@cyberport.net>
Cc: justin@406mls.com
Date: 08/03/2024 7:57 PM EDT
Subject: Re: 2000 Blacktail Road


Michelle,

Montana Real Estate Group is now the subject of a tortious interference litigation lawsuit in which I am a Plaintiff (Eleventh Judicial District Court, State of Montana).

Montana Real Estate Group, Frederick "Fritz" Groenke, Justin Ponton, CEO of Montana Regional MLS, and Montana Regional MLS are all named Defendants in that tortious interference litigation. The process servers are presently delivering that lawsuit in person to the parties named above.

Montana Real Estate Group and Frederick "Fritz" Groenke, via Montana Regional MLS, illegally listed the property in question (2000 Blacktail Rd., Lakeside, MT 59922) on or before July 23, 2024, while there was an active Court stay (supersedeas undertaking) in Multnomah County Court Case 22DR04942 on the very judgment cited by Fritz Groenke to justify listing the property.

Because the listing was never removed when the above-named Defendants were notified of the stay, it remains an illegal listing, and any criminal trespassing that stems from that illegal MLS listing will be subject to criminal prosecution under Montana Penal Code 45-6-203.

Any actions taken by Montana Real Estate Group and Frederick "Fritz" Groenke under that illegal listing will also be vigorously litigated in the tortious interference lawsuit now being served upon the parties.

I would note that you are sending this to me at 5:51pm on a Saturday evening (August 3, 2024), to inquire about a Sunday morning intrusion onto the property the very next day (August 4, 2024).

This almost certainly constitutes harassment in the context of the pending litigation and in the context of the illegal listing filed during a stay of the court.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF – TORTIOUS INTERFERENCE / MONT. CODE ANN. § 30-14-111

**Exhibit 1**, Page __3__ of __4__

Exhibit 62 p. 021

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 08/03/2024 3:44 PM EDT Montana Real Estate Group <mtreg@cyberport.net> wrote:

We have a request from cooperating broker to show the property Sunday tomorrow at 9 AM. Can we make that appointment to show the property?
Thank you for your earliest response the agent is waiting to hear back for the appointment.
Fritz

Michelle Thomson
*Real Estate Advisor*

Cell 406.270.0802
Office 406.837.6000
553 Electric Avenue
Bigfork, MT 59911
mtreg@cyberport.net
michellethomson.bigfork@gmail.com

<image002.jpg>

<Professional Email_ Olsen and Gabriel - Stay of Judgment Printout.pdf>

- image001.jpg (5 KB)
- image002.jpg (5 KB)

COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF – TORTIOUS INTERFERENCE / MONT. CODE ANN. § 30-14-111

**Exhibit 1**, Page __4__ of __4__

Exhibit 62 p. 022

# Case View  Olsen and Gabriel

✅  **Verified Party**

### OREGON COURT OF APPEALS

In the Matter of the Domestic Partnership of

Jesse Mark Olsen,
Petitioner-Respondent,

and

**CASE NUMBER**
A184337

Ryan Dean Gabriel,
Respondent-Appellant.

**CLASSIFICATION** Appeal – Civil – Domestic Relations

**FILED DATE** 05/10/2024 11:39 AM

**ORIGINATING COURT** Multnomah County Circuit Court
22DR04942

**STATUS** Waiting for Transcript/Agency Record

**STATUS DATE** 06/04/2024 8:48 PM

## PARTIES

Shows the first few parties on the case.

| | |
|---|---|
| **Ryan Dean Gabriel** APPELLANT | **Andrew Newsom** REPRESENTATION |
| **Ryan Dean Gabriel** APPELLANT | **Andrew Newsom** REPRESENTATION |
| **Jesse Mark Olsen** RESPONDENT | **George Kelly** REPRESENTATION |

## FUTURE HEARINGS

*No future hearings were found.*

## DOCKET ENTRIES

Exhibit 2, Page ___1___ of ___2___

Exhibit 62 p. 023

# My Filings

## FILINGS <span>▼</span>                                                 1 to 20 of 20

| Reference Number | Court | Case | Case Classification | Lead Docket Entry | Status | Status Date ▼ |
|---|---|---|---|---|---|---|
| E266-A6A9-3140-61E3 Motion - Stay Previous Judgment/Order | Oregon Court of Appeals | A184337 Olsen and Gabriel | Appeal - Civil - Domestic Relations | Motion - Stay Previous Judgment/Order | Accepted | 06/18/2024 5:59 PM |
| BE19-753C-67D1-A72F Initating Document - AMENDED Notice of Appeal (COA) (Appeal - Civil - Domestic Relations) | Oregon Court of Appeals | A184337 Olsen and Gabriel | Appeal - Civil - Domestic Relations | Initiating Document - Notice of Appeal | Accepted | 06/04/2024 8:48 PM |
| 0800-C2FB-8BCC-CC7C Initating Document - Notice of Appeal (COA) (Appeal - Civil - General) | Oregon Court of Appeals | A184374 Olsen v. Gabriel | Appeal - Civil - General | Initiating Document - Notice of Appeal | Accepted | 05/23/2024 11:20 AM |
| 2361-B4FE-2D07-F44E Initating Document - Notice of Appeal (COA) (Appeal - Civil - Domestic Relations) | Oregon Court of Appeals | A184337 Olsen and Gabriel | Appeal - Civil - Domestic Relations | Initiating Document - Notice of Appeal | Accepted | 05/17/2024 11:59 AM |
| 92A9-244E-2D30-E0A6 Initating Document - Notice of Appeal (COA) (Appeal - Civil - General) | Oregon Court of Appeals | New Case Filing | Appeal - Civil - General | Initiating Document - Notice of Appeal | Draft | 05/09/2024 5:18 PM |
| E6AF-62EC-CEE6-96B7 Motion - File Response CORRECTED | Oregon Supreme Court | S070743 Gabriel v. Olsen | Original Proceeding - Writ - Mandamus | Motion - File Response | Accepted | 01/31/2024 10:16 AM |
| E35F-F129-FC56-51CF Motion - File Response | Oregon Supreme Court | S070743 Gabriel v. Olsen | Original Proceeding - Writ - Mandamus | Motion - File Response | Accepted | 01/31/2024 10:12 AM |

**Exhibit 2**, Page  2  of  2

Exhibit 62 p. 024

**Ryan Gabriel <rgabriel@zurccapital.com>**                                7/23/2024 1:44 PM

# Unauthorized Listing: 2000 Blacktail Rd., Lakeside, MT 59922

To justin@406MLS.com <justin@406mls.com>

Justin,

I was given your name and number by Jerry Moon at NMLR.

A real estate agent has illegally listed my property for sale. His name is Fritz Groenke and he is listing it without my authorization using Cecil Waati's photography from four years ago, which I understand from Amanda Kelly is illegal (another realtor that I have been talking to).

Fritz also broke onto the property last week while I was gone, and busted the electronic security gate by trying to force it open, and then he harassed a guest who was staying on the property.

This is the listing:

https://us.prospects.com/prospects/outside/inscription.do?tok=Z5kbYbSXOUncnHYEUW+cBmj6w2YCh/
luVhQInBdm5p8lXtaullcRJ5wXbeedNl7b9y8dWnqOCGXumzlQgvpjHU99gwJq6pJqC8O2dg9Feo4YZ7TPK0bWpH
wNSXTdWnj1

This is not authorized. I will be calling the Board of Realtor Regulations as well. Please let me know what can be done in the interim.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

Exhibit 62 p. 025

**Ryan Gabriel <rgabriel@zurccapital.com>**                       7/23/2024 7:38 PM

# Fwd: Olsen and Gabriel – Stay of Judgment

To kai@familylawflathead.com • mtreg@cyberport.net  Copy melissa@familylawflathead.com •
Philip Li <admin@zurccapital.com>

FYI, please see below (re: Fritz Groenke's unauthorized listing of my residential property today, his criminal
trespass and vandalism of that same property on Monday, July 15, 2024, and your subsequent petition for
protective order from yesterday – which not coincidentally seeks my effective eviction from my own residential
property).

──────── Original Message ────────
From: Andrew Newsom <anewsom@holteylaw.com>
To: justin@406mls.com
Cc: Amy Turenhout <aturenhout@holteylaw.com>, Ryan Gabriel <rgabriel@zurccapital.com>
Date: 07/23/2024 6:41 PM EDT
Subject: Olsen and Gabriel - Stay of Judgment

Dear Mr. Ponton:

I represent Mr. Ryan Gabriel in an appeal pending in Multnomah County Circuit Court Case No.
22DR04942. The Court of Appeals case number is A184337. I understand that MLS has listed the
real property at 2000 Blacktail Road, Lakeside, MT 59922 for sale. This was done without Mr.
Gabriel's consent and apparently at the direction of the opposing party in the litigation (Mr. Jesse
Olsen).

Mr. Gabriel filed supersedeas undertakings in the trial court file on July 2 and 7, 2024. The
undertakings include the following language: "appellant will not commit waste or allow waste to
be committed on the real property while the appellant possesses and has access to the property,
and the appellant will pay the value of the use and occupation of the property, in addition to half
of the maintenance costs, for the period of possession if the judgment is affirmed." The
undertakings also stated a proposed value for the use/occupation of the property.

Under Oregon law, ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession of
real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides
that the appellant will not commit waste or allow waste to be committed on the real property
while the appellant possesses the property, and the appellant will pay the value of the use and
occupation of the property for the period of possession if the judgment is affirmed. The value of
the use and occupation during the period of possession must be stated in the undertaking."

Accordingly, the Oregon judgment is automatically stayed by the filing of the supersedeas
undertakings, and no one has authority to list the Montana residence for sale. Please remove the
listing from MLS until further notice. We have a court appearance tomorrow morning and are likely
to learn more at that time.

Thank you,

Exhibit 3, Page __2__ of __4__

Exhibit 62 p. 026

Andrew

**Andrew W. Newsom** | *Partner*
**Holtey Law LLC** | www.holteylaw.com
1140 SW 11th Avenue, 4th Floor | Portland, OR 97205
T. 503.224.9878 | teamnewsom@holteylaw.com

Confidentiality Notice: This e-mail transmission may contain confidential and privileged information.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message.  If you have received this message by mistake, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.  Thank you.

Please note that our office no longer sends or receives faxes

Exhibit 62 p. 027

**Kai Groenke**

| | |
|---|---|
| **From:** | Montana Real Estate Group <mtreg@cyberport.net> |
| **Sent:** | Monday, July 15, 2024 4:58 PM |
| **To:** | Kai Groenke; 'Jesse Olsen' |
| **Subject:** | RE: FW: 2000 Blacktail Road Lakeside, MT |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hello Jesse and Kai,
I visited the property this afternoon. Place is looking good. Grass mowed, no trash and well maintained structures. There are two locked gates however one was open and I noticed walking up to the  two "cabins" there were windows open and air conditioners running. While taking pictures of the outside of the cabins an AirB&B tenant came out and we talked. He said he was renting short term for the week with his family members of 7 total and paying just under $10,000. He invited me inside both cabins and I have a good idea of what we are selling now. I will come up with a figure for listing price tomorrow Jesse. The interiors were in clean condition and operational. I saw no damage. The renters had their personal stuff scattered all over the place and  I declined to take any pictures for marketing purposes. There were no certified mail notices or stickers for mail on the doors or gates to the property. I did not notice a mail box there either. I understood from Ryan's one correspondence he was living in Seattle area and still working at Zurc Capital LLC. Thought to mention that is case he could be served there or if you need me to post the notice on the property I can  do that.

This still leaves the issue of access to the property. I will need the Air B&B schedule and renters contacts info, gate padlock key, door lock punch codes and Ryan's cooperation on his schedule occupying the property to arrange showings for prospective buyers. We cannot arrive at the property with buyer clients and run into occupants that have not been notified or are hostile to our efforts. That of course would be for showings at the price point of fair market value. If you want us to obtain offers for sight unseen prospects we could try at a price point that is in the wholesale territory. One idea would be to have the prospects book a short term stay if they could fit into the schedule which I am sure could be booked for several months in advance or we instruct them to do drive by or walk around looks and solicit offers with inspection contingency period for when it can be arranged to get them inside.  There is still no response from Ryan to my last email and Jesse may consider having the locks changed or recoded and given to us for access. This may solve the short term renter issue as well.  This situation is difficult but solvable in which I will need your advice and directions. We are ready to go to work and can assist you with how we move forward from here.

Fritz

Montana Real Estate Group
(406) 250-5151 Fritz Cell
(406) 837-6000 Office


**REAL ESTATE GROUP**

**From:** Kai Groenke [mailto:kai@familylawflathead.com]
**Sent:** Monday, July 15, 2024 1:24 PM
**To:** Fritz Groenke <mtreg@cyberport.net>; 'Jesse Olsen' <jesse.m.olsen@gmail.com>
**Subject:** RE: FW: 2000 Blacktail Road Lakeside, MT

1

Exhibit 3, Page __4__ of __4__

Exhibit 62 p. 028

Exhibit 62 p. 029

Name Taylor Kai Groenke
Address (withheld)
City, State, Zip
Telephone No. 406-890-2999

⠂ JUL ⠄ ⠄ 9: ⠄5

IN THE _____ **JUSTICE** _____ COURT

STATE OF MONTANA

COUNTY OF **FLATHEAD** _____

| | | |
|---|---|---|
| **TAYLOR KAI GROENKE** | ) | No. CV-2024-1010-OP |
| | ) | |
| Petitioner, | ) | |
| | ) | **SWORN PETITION FOR** |
| v. | ) | **TEMPORARY** |
| | ) | **ORDER OF PROTECTION** |
| **RYAN D. GABRIEL** | ) | **AND REQUEST FOR HEARING** |
| | ) | |
| Respondent. | ) | |

The law requires that Respondent be given a copy of this completed form and all attachments.

1. **Request for Temporary Order of Protection.** Under oath and as provided by Mont. Code Ann. § 40-15-201, I request that the Court issue a Temporary Order of Protection against Respondent. I believe I am in danger of harm if the court does not issue a Temporary Order of Protection immediately.

2. **Protected Person/s.** I am seeking an Order of Protection for *(check all that apply):*
   ☑ Myself
   ☑ The following minor child/ren:

| Child/ren | Age | How child is related to: You    Respondent | Who does child live with? |
|---|---|---|---|
| Groenke child 1 (identity withheld) | 10 | Biological | No relation | Petitioner and child's father |
| Groenke Child 2 (identity withheld) | 10 | Biological | No relation | Petitioner and child's father |
| | | | | |
| | | | | |

Petition for Temporary Order of Protection and Request for Hearing- AGO Form OVS 3 – Revised 02/11
Page 1 of 9

EXHIBIT 4 - PAGE 1 OF 2

4. ☑ *(List the distance, up to 1500 feet, that you want Respondent to stay away from you and/or the person you want protected and the places you check below).*

Respondent shall stay at least ~~2,500~~ feet from:
☑ Me (Petitioner)
☑ Minor child/ren  Groenke child 1 (identity withheld); Groenke child 2 (identity withheld)

☑ Other people:  David D. (husband)

☑ My home (if you want the location of your home to be secret, do not list) Creston Hatchery Road, Kalispell
☑ My job or workplace:  239 2nd Street West, Kalispell, Montana
☑ My vehicle:  2017 Honda Pilot
☑ The child/ren's school and/or child care:  All elementary schools in Flathead County, Montana
to protect my children's identities, and because Respondent has no minor children in or around Flathead Co.

☑ Other places (describe):  2000 Blacktail Road, Lakeside, Montana (currently owned by Jesse Olsen
and Ryan Gabriel); Logan Health Medical Fitness Center, Kalispell ;  Kalispell  Probation & Parole
if he comes onto the property, even though legally authorized to do so by Jesse Olsen and a Court order.  unless required to report there by Court order.

5. ☑ Respondent used or threatened me with firearms. Respondent shall not possess these firearms
*(describe):*  All firearms, bows, arrows, or other objects capable of shooting a projectile.

6. ☐ Respondent shall not take, hide, sell, damage or dispose of property belonging to me (and/or the person who I want protected) or Respondent or both of us.

7. ☑ Respondent shall give me (or the person I want protected) possession or use of the following items (items may include the residence, automobile and other essential personal property no matter who owns it):  Unobstructed access to the property at 2000 Blacktail Road, Lakeside, Montana as instructed by Jesse Olsen, who has exclusive right to sell the property.

8. ☑ I (and/or the person I want protected) need a peace officer to help get possession of the property listed in Number 7, or I request that a peace officer come with Respondent when picking up his/her property or belongings.

9. ☑ The Court should order Respondent to complete violence counseling, which may include alcohol or chemical dependency counseling or treatment, if appropriate.

10. ☑ The Court should order the following to provide for the safety and welfare of me and/or the person I want protected, and family:  Ryan may only contact me by email at kai@familylawflathead.com  and the topics of discussion shall be limited to BRIEF discussions of the two cases pending in Flathead County, MT.  Ryan may not post or discuss any information about me or my family online, via email, or by any other electronic means.

Text Messages between Ryan Gabriel + Fritz Groenke – Tues., July 16 2024 (as documented by Kai Groenke).



**Screen 1 (1:49)**

Fritz, apparently you were not only trespassing and broke the electronic gate, but you told my guests false information about a pending lawsuit on appeal.

This exposes you to four types of potential lawsuits: Trespassing, tortious interference (with a contract), defamation and intimidation.

Pull the stunt you did today again on my property without my explicit consent and you can expect to be hit on all counts and with all charges.

Also, your low-talent daughter tried to pull off her own besieged "Taylor Lorenz" moment and failed spectacularly.

Everyone already knows her as the "Taylor Lorenz of the Montana Legal Community":

https://foreman.substack.com/p/taylor-lorenz-of-the-montana-legal

And you'll be known as an old guy so desperate for business you keep breaking everyone's electronic gate

**Screen 2 (1:49)**

And you'll be known as an old guy so desperate for business you keep breaking everyone's electronic gate trying to close a sale, ostensibly because you can't earn it the old fashioned way.

*Daughter, niece, adopted, etc.

Still gathering the genealogy data. If she isn't the direct genetic offspring of whomever everyone in your family thinks she is, I will enjoy figuring out the legal disclosure options I may have.

There seems to be a lot of undisclosed infidelity in the Groenke family genome, that much is becoming abundantly clear.

Also, Fredrick, please advise whether I can serve legal papers to this address:

246 Flathead Lake PL
Bigfork, MT 69911

Ok thanks for your response Ryan. Will share this with Jesse since he has engaged me to list the property for sale. Thought that would benefit

**Screen 3 (1:49)**

Ok thanks for your response Ryan. Will share this with Jesse since he has engaged me to list the property for sale. Thought that would benefit you both. Don't want to make it a hassel for you or him. Please don't threaten me with violence by shooting me in the face. I am just trying to do my job. I am filing a restraining order against you since you have threatened me with physical harm. This is not beneficial to the process of selling the property. Cooperation is your gain in this process.
Thanks for your communications.
Fritz

Before I file against you please let me know in 48 hours if you will reconsider your position.

Good luck with the restraining order – it's well within my rights to tell you not to trespass on my property.

You came onto my property today knowing that there is an appeal pending, harassed my guest and disclosed false and defamatory information.

You don't get a restraining order if

**Screen 4 (1:50)**

Good luck with the restraining order – it's well within my rights to tell you not to trespass on my property.

You came onto my property today knowing that there is an appeal pending, harassed my guest and disclosed false and defamatory information.

You don't get a restraining order if someone simply tells you not to return.

Please confirm whether the tortious interference (with a contract) should be served to the address I specified.

The genealogy data is public, on the other hand.

You also damaged the electric gate by trying to force it open.

Given the above fact pattern, I can actually probably get a restraining order on you, actually.

Also, concealment and racketeering are federal felonies, particularly when the criminal activity crosses state lines.

I will not hesitate to put a Trump DOJ on the budding Groenke case

**Screen 5 (1:50)**

I will not hesitate to put a Trump DOJ on the budding Groenke case.

I think you can also safely assume that if I ever sue you for tortious interference, I can only win the damages I seek if you're alive.

So to the extent that you are now more valuable to me intact, no, I won't shoot you in the face.

That said: Don't ever come on my property without my explicit permission.

As we move forward with the tortious interference and racketeering litigation, always remember: You came to me.

Also ask the "Taylor Lorenz of the Montana Legal Community" what she thinks of this particular "toon".

Personally, I think it is positively unbecoming but perhaps she will have a second opinion.



→ YouTube "play" Button (nobody gets shot in the face)

**Screen 6 (2:02)**





Exhibit 62 p. 031

**Ryan Gabriel <rgabriel@zurccapital.com>**            7/16/2024 3:05 PM

## Re: Threats

To Kai Groenke <kai@familylawflathead.com>    Copy Montana Real Estate Group (Work) <mtreg@cyberport.net> •
Jesse Olsen <jesse.m.olsen@gmail.com>

Taylor,

It is you and Fritz who are harassing me, and you are vividly aware of that fact. You seem to be operating an
ensnarement and extortion racket, and if so, you will be aggressively pursued by a Trump DOJ or possibly the
Montana AG's office as I am thoroughly documenting everything the two of you have done to this point.

I didn't even know you had children, which begs the question of whether Fritz has comprehension issues.

There were no threats made against any federal judge – this is total nonsense. Jesse himself attempted to get a
restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-
mail exchange you are alluding to.

Jesse does not have clearance to sell the Lakeside property – there is an appeal in place and under a worst case
scenario a supersedeas bond will be posted to secure a temporary stay of Judge Henry's order while the case is on
appeal. Even Jesse's Portland attorney concedes that process will likely take 24 months or so.

In the interim, do not step foot on my property. The geneology data I have received on the Groenke family could
make life very uncomfortable for all of you – and the best part is that it appears to be public data.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/16/2024 2:13 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

Ryan,

I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken
lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal
judge. They will be interested in hearing you continue to threaten people. Do not _ever_ threaten my children.

You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking
to enforce the order which specifically provides you are NOT to interfere with the sale.

**Kai Groenke**

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT 59901

EXHIBIT 6

Exhibit 62 p. 032

**Ryan Gabriel <rgabriel@zurccapital.com>**                    7/16/2024 3:16 PM

# Re: Threats

To Kai Groenke <kai@familylawflathead.com> • Copy Montana Real Estate Group (Work) <mtreg@cyberport.net> •
Jesse Olsen <jesse.m.olsen@gmail.com>

Further to the below, if (as you claim) there is a US Marshall "looking into" this, it's curious that they haven't simply called me. I am quite sure that in one single conversation, I could quickly redirect their interest to focus on the Groenke Crime Cartel.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/16/2024 3:05 PM EDT Ryan Gabriel <rgabriel@zurccapital.com> wrote:

Taylor,

It is you and Fritz who are harassing me, and you are vividly aware of that fact. You seem to be operating an ensnarement and extortion racket, and if so, you will be aggressively pursued by a Trump DOJ or possibly the Montana AG's office as I am thoroughly documenting everything the two of you have done to this point.

I didn't even know you had children, which begs the question of whether Fritz has comprehension issues.

There were no threats made against any federal judge – this is total nonsense. Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to.

Jesse does not have clearance to sell the Lakeside property - there is an appeal in place and under a worst case scenario a supersedeas bond will be posted to secure a temporary stay of Judge Henry's order while the case is on appeal. Even Jesse's Portland attorney concedes that process will likely take 24 months or so.

In the interim, do not step foot on my property. The geneology data I have received on the Groenke family could make life very uncomfortable for all of you – and the best part is that it appears to be public data.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/16/2024 2:13 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

**Exhibit 7**, Page __1__ of __3__

Exhibit 62 p. 033

Ryan,

I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will be interested in hearing you continue to threaten people. Do not <u>ever</u> threaten my children.

You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale.

## Kai Groenke

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT 59901

Tel: (406)-890-2999

www.familylawflathead.com

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

**Exhibit 7**, Page __2__ of __3__

Exhibit 62 p. 034

*United State Marshals Service (https://www.usmarshals.gov/)*



ryan gabriel

Local News | U.S. Marshals Service (https://www.usmarshals.gov/local-districts/news/2011)

https://www.usmarshals.gov/local-districts/news/2011

Task Force (CARFTF) arrested fugitive **Ryan** Polk on March 4, 2024. Read more U.S...in Southern West Virginia arrested **Gabriel** Hosings during the ...

 (ONLY 1 RESULT WAS RETURNED)

Powered by Search.gov

---

Accessibility (https://www.justice.gov/accessibility/accessibility-information)

---

Freedom of Information (https://www.usmarshals.gov/freedom-of-information-act)

---

Privacy Policy (https://www.justice.gov/doj/privacy-policy)

---

Legal Policies and Disclaimers (https://www.justice.gov/legalpolicies)

---

No Fear Act (https://www.justice.gov/jmd/eeo-program-status-report)

---

eRulemaking (https://www.regulations.gov/)

---

U.S. Department of Justice (https://www.justice.gov/)

---

Ethics (https://www.usmarshals.gov/ethics)

---

Government Service (https://www.usa.gov/)

Exhibit 7, Page __3__ of __3__

Exhibit 62 p. 035

**Kai Groenke <kai@familylawflathead.com>**                                    7/16/2024 2:14 PM

# Threats

To rgabriel@zurccapital.com   Copy Montana Real Estate Group (Work) <mtreg@cyberport.net> •
Jesse Olsen <jesse.m.olsen@gmail.com>

---

Ryan,

I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly.
The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will
be interested in hearing you continue to threaten people. Do not ever threaten my children.

You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to
enforce the order which specifically provides you are NOT to interfere with the sale.

## Kai Groenke

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT  59901

Tel:  (406)-890-2999

www.familylawflathead.com

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally
privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These
privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise
applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to
whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying,
printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and
then delete all copies of this email. Thank you.*

EXHIBIT 8

**Ryan Gabriel <rgabriel@zurccapital.com>**                                    7/23/2024 5:05 PM

## RE: Re: Gabriel - Call w/ George

To Kai Groenke <kai@familylawflathead.com>    Copy Melissa Smith <melissa@familylawflathead.com>

Taylor,

They are not, as far as I can tell, violations of the protective order.

This communication is clearly non-violent, and is directly related to the protective order that you are seeking, which asks the court to forcibly remove me from my own residence, and which ties directly into Fritz' illegal listing of my property today.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/23/2024 5:02 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

Ryan, these communications are violations of the protective order and will be reported.

## Kai Groenke

**Law Office of Kai Groenke, P.C.**

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Tuesday, July 23, 2024 1:15 PM
**To:** Kai Groenke <kai@familylawflathead.com>
**Cc:** Melissa Smith <melissa@familylawflathead.com>
**Subject:** Fwd: Re: Gabriel - Call w/ George

Taylor,

It has come to my attention that Fritz listed the Montana property for sale today.

I am submitting an ethics complaint with the Montana Dept. of Labor & Industry professional licenses unit, along with a Montana Bar Association ethics complaint against you personally.

On top of the question of your licenses, I will be filing a lawsuit against both of you personally this week as I described earlier. I will use a process server and/or certified mail to serve it to stay in compliance with the temporary protective order.

Exhibit 9, Page _1_ of _5_

Exhibit 62 p. 037

Ryan D. Gabriel

**Zurc Capital, LLC**

rgabriel@zurccapital.com

**206.391.9886** mobile

**403.606.5859** office

**855.488.ZURC** toll free

---------- Original Message ----------

From: Andrew Newsom

To: Ryan Gabriel <rgabriel@zurccapital.com>

Cc: Amy Turenhout

Date: 07/23/2024 2:59 PM EDT

Subject: Re: Gabriel - Call w/ George

The stay is in effect, and you can tell that from looking at the statute (ORS 19.335[2]) vs. the supersedeas that you filed. If the undertaking says what it needs to say, the judgment is stayed.

I will write George and tell him we have some positive indications on assumption, but not enough finality yet. Thus, unless he wants to postpone, we will do the hearing tomorrow, but whatever the outcome we will continue settlement discussions if it turns out that assumption is possible.

**Andrew W. Newsom** | *Partner*

**Holtey Law LLC** | www.holteylaw.com

1140 SW 11th Avenue, 4th Floor | Portland, OR 97205

Confidentiality Notice: This e-mail transmission may contain confidential and privileged information. Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received this message by mistake, please advise the sender by reply e-mail and delete this message. Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document. Thank you.

Please note that our office no longer sends or receives faxes.

---

From: Ryan Gabriel <rgabriel@zurccapital.com>

**Exhibit 9**, Page __2__ of __5__

Exhibit 62 p. 038

**Sent:** Tuesday, July 23, 2024 11:46 AM
**To:** Andrew Newsom
**Cc:** Amy Turenhout
**Subject:** Re: Gabriel – Call w/ George

Andrew,

In other news, this real estate agent that Jesse wants to use to sell the Montana property (Fritz Groenke) has *listed* the property for sale as of today. I called the MLS and Northwest Montana Association of Realtors and the first thing they noticed is that he listed it using the former listing agent's photographs (Cecil Waati) which is apparently illegal or a copyright violation, in addition to being outdated photos.

I just want to make sure he doesn't have authorization to do this given that there is a supersedeas undertaking and a temporary stay in place, before I file an ethics complaint against Fritz with the Montana Dept. of Labor & Industry professional licenses unit.

I am also afraid he is going to try and bring people to the property to show it. I am literally living here and do not want this guy on my property. This is the person who broke the electronic security gate by trying to force it open.

Thanks-

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

**Exhibit 9**, Page __3__ of __5__

8/2/2024, 7:12 PM

Exhibit 62 p. 039

**Ryan Gabriel <rgabriel@zurccapital.com>**                                        7/22/2024 9:25 PM

## Re: Notice of Protective Order

To Kai Groenke <kai@familylawflathead.com>  Copy Melissa Smith <melissa@familylawflathead.com> •
mtreg@cyberport.net

Kai,

I am just now reading the attachments.  You sent the court over 100 pages of documentation that you assembled in attempt to evict me from my own property.  Now that that effort has failed, you seem to be attempting to get your own separate protection order which would prohibit me from inhabiting my own property.  Am I reading this right?

I would note the judge declined to endorse that portion of your petition, along with the vast majority of the requests made in the petition, which means they probably think you are insane.

This documentation that you sent the court specifically incriminates Fritz, not me.

Look at what you sent the court, and consider that there was a temporary stay on the amended judgment that you prodded Fritz to act upon.  There is no way he did this at Jesse's behest alone, which we will learn in discovery.  At some point Fritz is going to find out that you effectively set him up.

I will have a proper challenge ready for the Court.

I have Cc'd Fritz here.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 07/22/2024 5:35 PM EDT Kai Groenke <kai@familylawflathead.com> wrote:

Ryan,

Please be advised that the Flathead County Justice Court has entered a protective order against you in the attached cause of action.  Please find a copy of the Sworn Petition with supporting documentation and the Temporary Protective Order which is currently in effect.

## Kai Groenke

**Law Office of Kai Groenke, P.C.**

239 2nd Street West

Kalispell, MT  59901

Tel:  (406)-890-2999

www.familylawflathead.com

**Exhibit 9**, Page __4__ of __5__

Exhibit 62 p. 040

*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege. These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication. This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended. If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited. Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email. Thank you.*

**Exhibit 9**, Page ⟍ of ⟍

2 of 2

8/2/2024, 7:14 PM

Exhibit 62 p. 041

**Jesse Mark Olsen**      *See CIF*      **Case No:** 24PO00918
Petitioner              DOB
*(name of person who asked for restraining order)*

         **FAMILY ABUSE PREVENTION ACT
ORDER**
*(After Hearing)*

    and
**Ryan Dean Gabriel**      *See CIF*
Respondent             DOB
*(name of person to be restrained)*

     *Protective Order - FAPA*

This matter came before the Court on March 13, 2024.

**Hearing Type:**
☒ 21 day hearing (custody not at issue)      ☐ 5 day hearing (custody at issue)
☐ Exceptional circumstances hearing      ☐ Renewal
☐ Modification

**PETITIONER**                     **RESPONDENT**
☒ Appeared in person or ☐ by telephone/video    ☒ Appeared in person or ☐ by telephone/video
☐ Was served a copy of this Order in court today    ☐ Was served a copy of this Order in court today
☐ Did not appear                          ☐ Did not appear
☐ Attorney:                              ☐ Attorney:
    OSB #:                                 OSB #:

☐ Petitioner has been the victim of abuse committed by Respondent within the 180 days before the filing of the *Petition*
☐ Petitioner reasonably fears for their physical safety
☐ Respondent represents a credible threat to the physical safety of Petitioner or Petitioner's children

**FIREARMS FINDINGS:** *(if the restraining order is continued or renewed)*
   At the time of the abuse, Respondent:
     ☐ was **or** ☐ was similarly situated to a:
       ☐ Spouse or Registered Domestic Partner of victim *(current or former)*
       ☐ Parent or guardian of victim
     ☐ shared a child in common with the victim *(child must be born)*
     ☐ was living or had lived with the victim in a sexually intimate relationship

Exhibit 62 p. 042

☐ was involved or had been involved in a sexually intimate relationship with the victim
☐ was an adult related by blood or marriage to the victim

☐ The order was issued after a hearing of which Respondent received actual notice and at which Respondent had the opportunity to participate

**ORDERS:**

☒ The restraining order issued to Petitioner on <u>January 29, 2024</u> is:
    ☒ Dismissed
    ☐ Continued
    ☐ Renewed. The order will expire on: _____.
    ☐ Modified as follows:_____

**Except as modified above, all portions of the restraining order remain in effect.**

The order restrains Respondent from harassing, stalking, or threatening Petitioner or Petitioner's or Respondent's children or engaging in other conduct that would place Petitioner in reasonable fear of bodily injury to Petitioner or Petitioner's or Respondent's children AND

Respondent represents a credible threat to the physical safety of Petitioner or Petitioner's or Respondent's children OR

This order by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against Petitioner or Respondent's children that would be reasonably expected to cause bodily injury

☐ Respondent is prohibited from possessing FIREARMS or AMMUNITION under state and federal law. The terms of Sections 18 and 19 of the Order remain in effect. Respondent is required to surrender firearms and ammunition and to file a *Declaration of Firearms Surrender* as ordered.

**Security for violation of this order is** ☐ **Bail deferred**

---

### IMPORTANT NOTICE ABOUT YOUR RIGHT TO PURCHASE OR POSSESS FIREARMS AND AMMUNITION

As a result of this restraining order, it is unlawful for Respondent to possess, receive, ship, transport, or purchase a FIREARM, including the frame or receiver of a firearm, a muffler or silencer, and any destructive device (described in 18 USC 921(a)(4)), or AMMUNITION. Respondent's ability to serve in the armed forces of the United States or to be employed in law enforcement also may be negatively affected.

> **If you have any questions about these laws you should talk to a lawyer**

**CERTIFICATE OF COMPLIANCE WITH THE VIOLENCE AGAINST WOMEN ACT**

This protective order meets all full faith and credit requirements of the Violence Against Women Act, 18 U.S.C. 2265(1994). This court has jurisdiction over the parties and the subject matter. The respondent was afforded notice and timely opportunity to be heard as provided by the law of this jurisdiction. This order is

<u>3/13/2024</u>
Date

_____
Circuit Court Judge Francis G. Troy II

21-160 (12/22) Page 2 of 2

EXHIBIT 10 - PAGE 2 OF 3

Exhibit 62 p. 043



CERTIFIED TO BE A TRUE
COPY OF THE ORIGINAL.

DATED: 3/13/24

_____
COURT CLERK

EXHIBIT 10 - PAGE 3 of 3

Exhibit 62 p. 044



"Fritz" Groenke

≡        ⌂ realtor.com®

‹ Back     Lakeside, MT          ✕

Listed by Fritz Groenke with Montana Real Estate Group

9/18

For sale

# $1,085,000

**5.95 acre lot**

2000 Blacktail Rd, Lakeside, MT 59922

Est. $6,059/mo

View on Map

🚍 Add a commute

⌂ **Multi-Family**
Property type

2 Cars
Garage

📅 **3 days**
On Realtor.com

**2016**
Year built

This property has multiple listings: For Sale listing 1 | For Sale listing 2

( Ask a question )   ( Share this home )

📅 **Open houses**                                    ⌄

🏘 **Property details**                                ⌄

📄 **Monthly payment**                                ⌄

( Contact agent )              Schedule tour

Exhibit 11, Page _1_ of _3_

Exhibit 62 p. 045

*"Fritz" Groenke*

☰    🏠 realtor.com®

‹ Back    Lakeside, MT    ✕

Listed by Fritz Groenke with Montana Real Estate Group



For sale

# $1,085,000

Est. $6,059/mo ✎

5.95 acre lot

2000 Blacktail Rd, Lakeside, MT 59922

View on Map ⚲

🚗 Add a commute

🏠 **Multi-Family**
Property type

📅 **3 days**
On Realtor.com

🚗 **2 Cars**
Garage

🏗 **2016**
Year built

This property has multiple listings: **For Sale listing 1** | **For Sale Listing 2**

( Ask a question )    ( Share this home )

---

② **Open houses**    ⌄

---

🏠 **Property details**    ⌄

---

🧾 **Monthly payment**    ⌄

---

( Contact agent )    ( Schedule tour )

Exhibit 62 p. 046



**Exhibit 11**, Page __3__ of __3__

1/1

Exhibit 62 p. 047





Exhibit 12, Page 2 of 2

Exhibit 62 p. 049

1
2
3
4  IN THE CIRCUIT COURT OF THE STATE OF OREGON
5  FOR THE COUNTY OF MULTNOMAH

6  Jesse Mark Olsen,                          )
7              Petitioner,                     )
                                               )  Case No.   22DR04942
8       v.                                     )
                                               )  PETITOINER'S PROTECTIVE ORDER
9  Ryan Dean Gabriel,                          )
                                               )
10             Respondent.                     )
                                               )
11

12  THIS MATTER having come before the court upon Petitioner's Motion for Protective Order,

13  Petitioner's Motion for a Protective Order is:

14  _____ Granted

15  ___X___ Denied

16  IT IS FURTHER ORDERED Respondent Ryan Dean Gabriel, is responsible for all attorneys

17  costs and fees associated with the execution of this order.

18                                        **5/1/2023 4:50:35 PM**

19

20                                        _____
                                          Circuit Court Judge Francis G. Troy II
21  Prepared & Submitted by:
    Roscoe C. Nelson, Jr.
22  OSB # 732218
    Attorney for Petitioner
23  811 SW Naito Parkway
    Suite 200
24  Portland, OR  97204
    (503) 222-1081
25  attorneys@roscoecnelson.com

26

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR  97204 · (503) 222-1081
attorneys@roscoecnelson.com

Exhibit 13, Page __1__ of __8__

Exhibit 62 p. 050

IN THE CIRCUIT COURT OF THE STATE OF OREGON
COUNTY OF MULTNOMAH
Family Law Department

In the matter of ☐ the Marriage of: )
 ) **22DR04942**
*Jesse Olsen* )
**Petitioner** ) Case No._____
 )
 )
**and** )
 ) **ORDER to SHOW CAUSE RE Motion to**
 ) **Compel Discovery**
*Ryan Gabriel* )
**Respondent** )
 )

CERTIFIED TO BE A TRUE
COPY OF THE ORIGINAL.

DATED: 04/25/23

The ☐ Petitioner ☑ Respondent ☐ _____ Provides Motion & Declaration to VLN
Compel Discovery Pursuant to ORCP 46(A).

COURT CLERK

**IT IS HEREBY ORDERED that:**

☑ The Motion for an Order to Show Cause is GRANTED.

   ☑ All parties must appear *remotely* for TRIAL ASSIGNMENT
   at 9:00 a.m. on this date: *5/25/23* _____ to report their readiness
   for an *in-person* hearing on *5/26/23* _____
   about _____

**Trial Assignment Call-In** - Call 503-388-9555, Access Code 146 792 6901###
*An attached sheet provides information about the Trial Assignment process.*

> At Trial Assignment, the hearing on *5/26/23* _____ will be assigned
> to a specific Judge and courtroom for the next business day. **IF YOU FAIL TO**
> **APPEAR REMOTELY AT TRIAL ASSIGNMENT YOU MAY LOSE YOUR**
> **CHANCE TO PARTICIPATE IN THE IN-PERSON HEARING THE NEXT DAY.**

☐    This matter will be heard before Judge _____ in Room _____
   of the Central Courthouse at _____ a.m./p.m. on _____, 20___.
   *The attached sheet about Trial Assignment does not apply in this situation.*

☐ The Motion for an order to show cause is DENIED.

Dated: 04/25/23 _____

/s/ **FRANCIS G. TROY II**
_____
Circuit Court Judge
☒ Form stamped and issued by clerk at counter **VLN**
                    Clerk initial

_____
Print Name

Page 1 of 2 –Order to Show Cause Generic (04/22)

Exhibit 62 p. 051

1
2
3
4                    IN THE CIRCUIT COURT OF THE STATE OF OREGON
5                           FOR THE COUNTY OF MULTNOMAH
6   Jesse Mark Olsen,                    )
7                    Petitioner,         )   Case No.   22DR04942
                                         )
8           v.                           )   PETITIONER'S MOTION FOR
                                         )   PROTECTIVE ORDER
9   Ryan Dean Gabriel,                   )
                                         )
10                   Respondent.         )
11

12          Petitioner makes this motion to request a protective order, prohibiting Respondent from further

13   use of pleadings, which demand irrelevant information, and emails directed to my client and not to my

14   office on my clients behalf.

15          Respondent is conducting himself in an unprofessional and thoroughly disruptive manner as we

16   work towards a simple resolution to this matter.

17          Based on Respondents reckless indifference to the rules of the court and common courtesy;

18

19   Petitioner requests the award of attorneys fees can costs associated with this matter.

20          Respectfully submitted, this 13th day of August, 2023.

21                                          _/s/ Roscoe C. Nelson, Jr._____
                                            Roscoe C. Nelson, Jr.
22                                          OSB# 732218
                                            NELSON & NELSON
23

24

25

26

Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204 · (503) 222- 1081
attorneys@roscoecnelson.com

Exhibit 13, Page _3_ of _8_

Exhibit 62 p. 052

15
16

| Email Received | EmailReceivedDate | Email |
|---|---|---|
| Email Received | EmailReceivedTime | Email |
| Email Message ID | EmailMessageID | Email |
| Mailbox File | MailboxFile | Email/Attachment |
| Mailbox Path | MailboxPath | Email/Attachment |
| Document Title | Title | Attachments/Loose Files |
| Document Author | DocAuthor | Attachments/Loose Files |
| Document Last Author | DocLastAuthor | Attachments/Loose Files |
| Created Date Time | CreatedDateTime | Attachments/Loose Files |
| Modified Date Time | ModifiedDateTime | Attachments/Loose Files |
| File Name | FileName | All |
| File Extension | FileExtension | All |
| File Path | FilePath | All |
| MD5 Hash | MD5Hash | Included Natives |
| Confidentiality | Confidentiality | All |
| Text Path | Text_File | All |
| Native Path | Native_file | All |

I. At Gabriel's request, Olsen shall promptly produce ESI in its native format.

## DEFINITIONS

For purpose of these discovery requests, the following terms are used as defined immediately below:

A. "Communication" or "communications" means any act or process of communicating, the imparting or interchange of thoughts, opinions or information by speech, writing, or signs, including telephone calls, text or instant messages, emails, letters, voice messages, social media posts, and other correspondence.

B. "Document", "docs" or "documents" shall be interpreted broadly to include the original and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise of writings or electronically stored information, including, but not limited to: correspondence; letters; memoranda; digital or handwritten jottings or notes; diaries; files; statistics; telegrams; emails; email attachments; electronic or paper

address books, contact lists, and mailing lists; text messages; electronic messages; saved instant messaging conversations; chat room conversations; peer-to-peer networking conversations; voice mails; minutes; transcripts; transcriptions; contracts; agreements; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; books; manuals; prospecti; inter-office and intra-office communications; calendars; offers; notations of any sort of conversation, telephone calls, meetings or other communications; telephone message records or logs; caller-id information; internet histories; computer and network activity logs; web pages; social media accounts; online forums; online services; databases; spreadsheets; bulletins; pamphlets; circulars; printed matter; invoices; worksheets; research; studies; papers; pleadings; motions; legal memoranda; all drafts, alterations, modifications, changes, and amendments of any of the foregoing; faxes; scanned documents; questionnaires; opinions; statements; graphic and oral reproductions of any kind, including, without limitation, photographs, charts, microfilm, computer software, and electronic recordings, such as tapes, diskettes, or cassettes or any tangible thing, however produced or reproduced.

C. "Gabriel" refers to Ryan Dean Gabriel, and shall also be deemed to mean every agent, representative, attorney, employee, former employee, officer, independent contractor, subcontractor, and consultant of Ryan Dean Gabriel and his related business entities.

D. "You" or "Your" refers to Jesse Mark Olsen, and shall also be deemed to mean every agent, representative, attorney, employee, former employee, supervising broker, officer, independent contractor, subcontractor and/or consultant of Jesse Mark Olsen, and his related business entities.

E. "Portland Property" refers to the real property located at 5721 SW Salmon Street, Portland, OR, 97221.

F. "Montana Property" refers to the real property located at 2000 Blacktail Rd., Lakeside, MT 59922.

G. "Related to" or "relating to" means directly, indirectly, or in any way concerning, referring to, alluding to, responding to, regarding, describing, explaining, discussing, reflecting, analyzing, or commenting upon.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1: Full known names (first and last), current and/or last known contact information (phone number(s), address(es), e-mail address(es), or other messaging service address(es), including/such as WhatsApp, Telegram, etc.) for the following individuals who will be deposed in response to your sworn statement to this Court, "In normal circles, when asked if Respondent (Ryan Dean Gabriel) was my domestic partner, the answer was yes.", "Petitioner (you) introduced Respondent (Ryan Dean Gabriel) at a number of work functions as his boyfriend and/or partner.", and in response to your instant claim that this case is "no different than any other dissolution of marriage", asserting that you and Mr. Gabriel "spent years together representing themselves as a marital couple ... to the world and in acquiring property jointly." This deposition list includes, but may not be limited to: 1) Anne Meeker; 2) Valerie Munck; 3) Carolyn B. Olsen (your mother); 4) Mark Olsen (your father); 5) All Nike employees and contract employers introduced to Mr. Gabriel in person or by phone, in order of introduction – starting with Jorden Web (intimate sexual partner and co-worker at Nike prior to, in and around 2012), continuing on to Bob Swan and other personally introduced members of your 2012 "Dragon Boat Racing" team, your July/August 2013 "Cascade Lakes Relay" team, your "Movember" teammates starting in November 2013, all "Game Night" Nike employees (Kyle Karsdsen, etc.) who spent hours playing card games with yourself and Mr. Gabriel, and concluding with Leon Witherow / Thomas Durand in 2020; 6) Dave Denson; 7)

Cohen Summers; 8) Dominic Fontanilla; 9) Harmony Cosgrove; 10) Rachael Cely; 11) Shell Dukes and other members of the Nike Travel team who arranged your international travel, which would theoretically (per your claims) have recorded Mr. Gabriel as your spouse; 12) an appropriate officer of Nike Risk Management, which would have theoretically (per your claims) recorded Mr. Gabriel as your spouse; 13) Michael Olsen (brother) and his ex-boyfriend, "Jorge", the latter former Nordstrom employee whom you claimed to have violently assaulted in 2011; 14) Natalie Marsh; 15) Chad & Brinley Wilcoxon; 16) Culter & Nicole Marby; 17) Cameron & Tara Shick; 18) Justin & Sarah Meavers; 19) Derek & Toni Yew; 20) Kevon & Alaina Rahimnalegan; 21) Alex & Jena Pratt; 22) Marloe Blair & Rhett Elder; 23) Tyler & Olya Bird; 24) Kristie Mishak, direct report at Nike with intimate knowledge of your domestic affairs; 25) Kylee Barton, direct report at Nike with intimate knowledge of your domestic affairs; 26) Kati Davis, colleague at Nike with intimate knowledge of your domestic affairs.

RESPONSE:

REQUEST NO. 2: Any and all documents to support your allegation that "Respondent (Ryan Dean Gabriel) made it clear to Petitioner (you) that it was not going to be safe for him to reside in the Portland property after separation.", and show evidence that this impression was separate and distinct from your intent to follow through on your direct spoken threat made to Mr. Gabriel on March 14, 2022 at 8:37 PM, "You'll never see those dogs again if you don't give me the [Portland property at 5721 SW Salmon St.].", along with your prevailing concern that returning to the Portland property would enable Mr. Gabriel to retrieve his pet beagle, Eden.

RESPONSE:

REQUEST NO. 3: Any and all documents to support your allegation that "In fact, the locks were changed by Respondent, as well as the security codes; and as to date the Respondent has not furnished Petitioner with the current keys or security codes.", and show evidence that the

5   RESPONDENT/PLAINTIFF RYAN DEAN GABRIEL'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PETITIONER/DEFENDANT JESSE MARK OLSEN
EXHIBIT A
Page 5 of 11

6   RESPONDENT/PLAINTIFF RYAN DEAN GABRIEL'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PETITIONER/DEFENDANT JESSE MARK OLSEN
EXHIBIT A
Page 6 of 11

7   RESPONDENT/PLAINTIFF RYAN DEAN GABRIEL'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PETITIONER/DEFENDANT JESSE MARK OLSEN
EXHIBIT A
Page 7 of 11

8   RESPONDENT/PLAINTIFF RYAN DEAN GABRIEL'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PETITIONER/DEFENDANT JESSE MARK OLSEN
EXHIBIT A
Page 8 of 11



**Exhibit 13**, Page _6_ of _8_

Exhibit 62 p. 053

original keys to the house at any point in time stopped working on the locks, and show evidence
that Respondent Mr. Gabriel had a request from you or your attorney's office to furnish codes on
the locks—installed as a security precaution due to the 17 contractors' employees who had direct
access to keys to the house—but declined or failed to do so.

RESPONSE:

REQUEST NO. 4: Provide any and all documents to support your claim that "both"
Petitioner and Respondent's names "may have been on various utility bills at any given time."

RESPONSE:

REQUEST NO. 5: Provide any and all text messages you are able to produce, or in the
alternative furnish a timeline in which the same text messages "clearly would not be saved or
reproducible after all these years", to support your repeatedly stated position in "*Petitioner's
Response to Respondent's First Request for Production & Admission*' (dated March 17, 2023)
that these documents can no longer be produced for this instant lawsuit that you (Petitioner)
initiated presumably due to an abundance of this precise type of evidence.

RESPONSE:

REQUEST NO. 6: Provide any and all documents supporting expenses that Petitioner
believes can be considered "improvements", and which are consistent with your stated
commitment to "assemble a list of such improvements as we able to be catalogued.", considering
that if the improvements were paid for by Petitioner, it is almost certainly true that Respondent
will not have copies of these same documents.

RESPONSE:

REQUEST NO. 7: Provide any and all documents supporting expenses, receipts, and
payments that Petitioner believes are related to "insurance claims", and which are consistent with

---

I hereby certify that I served the foregoing *Respondent/Plaintiff Ryan Dean Gabriel's Second
Request for Production of Documents to Petitioner/Defendant Jesse Mark Olsen* on the
following party:

Roscoe C. Nelson
Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, OR 97204
rcnll@rcnnsconsulaw.com
Of Attorneys for Petitioner

By the following method or methods:

___X___  by causing full, true and correct copies thereof to be hand delivered to the attorney(s) at
the attorney(s) last known office address listed above on the date set forth below

___X___  by emailing full, true, and correct copies thereof to the attorney(s) at the email address
shown above, which is the last known email address for the attorney(s) office, on the date set
forth below

DATED this ___11th___ day of April 2023

By: _____
Ryan D. Gabriel
Defendant, pro se

(206) 391-9886
Telephone

---

your stated commitment to "endeavor to produce documentation showing payment owing to the
damages made by Olsen and fully reimbursed by the insurance company."

RESPONSE:

DATED this 9th Day of April, 2023.

_____
Respondent/Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd.
Lakeside, MT 59922

(206) 391-9886
Telephone

10    RESPONDENT/PLAINTIFF RYAN DEAN GABRIEL'S SECOND REQUEST FOR PRODUCTION OF
DOCUMENTS TO PETITIONER/DEFENDANT JESSE MARK OLSEN    EXHIBIT A

Exhibit 13, Page __7__ of __8__

Exhibit 62 p. 054

# IN THE CIRCUIT COURT FOR THE STATE OF OREGON
# FOR MULTNOMAH COUNTY

### Family Law Department

Jesse Mark Olsen,

                Petitioner,

And

Ryan Dean Gabriel,

                Respondent

Case No. 22DR04942
**ORDER, GRANTING MOTION TO COMPEL**

This matter came before the court on **06/30/2023.**
The following persons appeared and received a copy of this order:
[ ] Petitioner     [X] Petitioner's Attorney : Roscoe C. Nelson III
[X] Respondent     [ ] Respondent's Attorney: _____
[ ] Other: _____
[ ] No parties because no hearing was scheduled.

## Courts Findings:

Parties came before Judge Allen for Motion to Compel. Petitioner has not provided necessary documents pursuant to the First and Second RFPs.

## Now therefore it is hereby order as follows:

Both parties are obligated to provide the other party any documents on which they intend to rely at trial related to claims made for the two homes at issue. Petitioner need not make himself available for deposition because no request was made pursuant to rules. Additionally, and specifically, Petitioner is to provide documents responsive to Respondent's First RFP requests 17 (as to an alleged domestic partnership), 21 through 24 and as to the Second RFP request, Petitioner is to supply the names of any persons he intends to call as a witness to support his allegation that the parties were in a domestic relationship, as opposed to a mere friendship or a business relationship.

All documents are to be provided no later than 5pm on July 3, 2023.

_____6-30-2023_____
Date

_____Bere A Allen_____
Circuit Court Judge

Exhibit 62 p. 055



61 Inverness Drive East, Suite 210
Englewood, CO
80112

## Final Report

**Claim Id**
P90246 MLD Ryan Gabriel

**Date of Loss**
Sep 5, 2023

**Date Claim Created**
Aug 9, 2024

**Type of Loss**
Other

**Project Manager**
Lawrence

**CAT Code**
352587

**Address**
Ryan Gabriel
2000 Blacktail Road
Lakeside MT 59922
United States

**Policyholder Name**
Ryan Gabriel

**Insurance Company**
PC14948 American

**Adjuster**
PC14948 American

**Policy Number**
Claim #932483AA

**Policyholder Email**
aegil2@gmail.com

**Policyholder Phone Number**
+1 403 606 5859

# Claim Summary

Claim #932483AA

Exhibit 14, Page __1__ of __20__

Exhibit 62 p. 056

# Table of Contents

**General Notes**                                                    **3**

**Kitchen**                                                         **13**
   Overview Photos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Garage**                                                         **17**
   Overview Photos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Exterior**                                                       **19**
   Overview Photos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Bedroom**                                                        **20**
   Overview Photos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Attachments

1. Encircle Moisture Full Report

Exhibit 14, Page __2__ of __20__

Exhibit 62 p. 057

# General Notes

| Phone call |
| --- |
| I called and left a voicemail for Ryan to let him know that I am still here and will do whatever I can to help. |

| Phone call |
| --- |
| The team showed up without a check, tried to call him but the number said the number I called was not assigned. Had the team check and seen it the number we have on file. |

| Day 1 material removal |
| --- |
| Team arrived on site began by removing backsplash and affected flooring from the kitchen area. Once the affected flooring was removed we set up containment barrier in the garage we began material removal in this area by creating a 2'x2' cut to assess the drywall it had considerable amount of potential microbial growth so we will be removing the remaining affected drywall from the ceiling.

We will be working on getting a counter top expert to remove the granite counter top from the lower kitchen cabinets. |

  

Exhibit 14, Page **3** of **20**

Exhibit 62 p. 058



**Exhibit 14**, Page 4 of 20

Exhibit 62 p. 059

 

**Material removal Day 2**

team arrived onsite set a second AFD in the containment in the garage to create negative air we then removed remaining affected drywall and insulation from the garage area (145 SQFT of each) also removed screws and hepa vacuumed the framing.

Picked up deposit check from customer and delivered to DS front desk.

counter top specialist stopped by could not offer any assistance other than pointers on how to move the counter top. Spoke to the repairs GM Josh he will be onsite to inspect counter top 8/14/24. all subfloor and framing showing to dry standard removed dehu set by crew yesterday.

We will treat the affected framing in the garage and wait for solution for counter top before removing affected drywall from the kitchen area.

2 techs @ 8hrs each
respirator and N95 used for PPE
gloves non disposable.

  

Exhibit 62 p. 060



Exhibit 62 p. 061



**Exhibit 14,** Page __7__ of __20__

Exhibit 62 p. 062






## Material removal COS final day 3

team arrived onsite with the reconstruction team. We all began by removing the counter top from the exterior wall of the kitchen after witch the recon team left the project.

Kelly and I completed the removal of the cabinets saving the the doors and drawers onsite for the recon team. we then completed a two foot flood cut of the exterior wall where the source of loss was located. Some suspect microbial growth was found on the back side of the drywall so we removed the insulation from the affected cavities and cleaned/ treated them.

The third technician completed the treating and cleaning of the affected framing in the garage.

Once all the microbial concerns had been addressed we then removed all the remaining laminate flooring from the top level of the project. took down containment and collected a COS from the customer. We then returned to the shop unloaded 2 vans of debris and cleaned 2 AFDs.

2 repairs techs @ 4 hrs each
3 techs @ 8hrs each

Exhibit 62 p. 063



**Exhibit 14**, Page __9__ of __20__

Exhibit 62 p. 064



**Exhibit 14**, Page __10__ of __20__

Exhibit 62 p. 065



**Exhibit 14**, Page __11__ of __20__

Exhibit 62 p. 066



**Exhibit 14**, Page _12_ of _20_

Exhibit 62 p. 067

CS put the estimate together, ran it through Ask AiME, and submitted it for review.

## Kitchen

### Overview Photos: Kitchen


Photo 1 · 12:58 PM MDT Aug 12, 2024


Photo 2 · 12:58 PM MDT Aug 12, 2024


Photo 3 · 12:58 PM MDT Aug 12, 2024


Photo 4 · 12:58 PM MDT Aug 12, 2024


Photo 5 · 12:58 PM MDT Aug 12, 2024


Photo 6 · 12:58 PM MDT Aug 12, 2024

**Exhibit 14**, Page _13_ of _20_

Exhibit 62 p. 068



Exhibit 62 p. 069



Exhibit 62 p. 070



Exhibit 62 p. 071



## Garage

### Overview Photos: Garage



**Exhibit 14**, Page _17_ of _20_

Exhibit 62 p. 072



**Exhibit 14,** Page _18_ of _20_

Exhibit 62 p. 073



## Exterior

**Overview Photos:** Exterior



Exhibit 62 p. 074

# Bedroom

## Overview Photos: Bedroom


Photo 1     2:20 PM MDT   Aug 12, 2024


Photo 2     2:20 PM MDT   Aug 12, 2024


Photo 3     2:20 PM MDT   Aug 12, 2024


Photo 4     2:20 PM MDT   Aug 12, 2024


Photo 5     2:20 PM MDT   Aug 12, 2024

**Exhibit 14,** Page _20_ of _20_

Exhibit 62 p. 075



TAB bank
Member FDIC

4185 HarrisonBlvd.
Ogden, UT 84403
TABbank.com

SALT LAKE CITY, UT 840

9 APR 2024 PM 1 L

Ryan Gabriel
2000 Blacktail RD. # 1140
Lakeside, MT 59922

59922-955800

Exhibit 62 p. 076



**FLATHEAD ELECTRIC COOPERATIVE**
Community, Innovation, Reliability.

# BILLING HISTORY

## BILL & PAY ⌃

Auto Pay Program

**Billing History**

Budget Gauge

Make a Payment

Payment History

## USAGE ⌃

Average Usage

Usage Comparison

Usage Explorer

Usage Management

Usage Tracking

## CONTACT US ⌄

## SETTINGS ⌄

⋮ Report Power Outage

Submit Inquiry

$ Make a Payment

⌇ Notifications

Sign Out

∘ Start/Stop Service

• Outage Center

∘ Save Money & Energy

• Light Pending Newsletter

---

1825014 — 2000
BLACKTAIL RD

| | |
|---|---|
| **Account** | **FLATHEAD ELECTRIC CO-OP — 1825014** RYAN GABRIEL 2000 BLACKTAIL RD, LAKESIDE, MT View Usage |
| **Billing Date** | 08/05/2024 |
| **Paperless** | $207.00 View Bill |
| **Adjustments** | $0.00 |
| **Total Due** | **$207.00** |
| **Account** | **FLATHEAD ELECTRIC CO-OP — 1825014** RYAN GABRIEL 2000 BLACKTAIL RD, LAKESIDE, MT View Usage |
| **Billing Date** | 07/05/2024 |
| **Paperless** | $428.00 View Bill |
| **Adjustments** | $0.00 |

Exhibit 15, Page 2 of 2

Exhibit 62 p. 077

# RESPONDENT

IN THE JUSTICE COURT OF THE STATE OF MONTANA
IN AND FOR THE COUNTY OF FLATHEAD
BEFORE PAUL SULLIVAN, JUSTICE OF THE PEACE
935 1ST AVE WEST KALISPELL, MT 59901
(406) 758-5643

| | |
|---|---|
| **Temporary Order of Protection** | **Case No:** CV-385-2024-0001021-OP |
| Order Effective Until: 08/22/2024 or hearing | **Hearing Date:** 08/22/2024<br>**Hearing Time:** 9:00 AM |
| Fritz Groenke ,<br>　　　　　　Petitioner,<br><br>　vs.<br><br>Ryan Dean Gabriel ,<br>　　　　　Respondent. | **Petitioning on behalf of:**<br>And/or on behalf of minor family member(s)<br>(list name, relationship):<br><br>**Caution:**<br><br>☐ Weapon Involved<br>☐ Weapon on Property |

**THE COURT FINDS** the Petitioner is in danger of harm and is eligible for a temporary order of protection. This Court acts without notice to the Respondent because harm may result to the Petitioner if the Order of Protection is not issued immediately. Terms of this Order are set forth below.

**THE COURT ORDERS:**

☒ That the above named Respondent be restrained from committing further acts of violence or threats of violence.

☒ That the above named Respondent **shall stay at least 1500 feet away from** Petitioner's
＿✓＿ person. ＿✓＿ home. ＿✓＿ workplace. ＿✓＿ vehicle. ＿＿ children's school/daycare.
＿＿other: ＿＿＿＿＿＿＿＿＿.

## ENFORCEMENT WARNINGS TO RESPONDENT:

This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, any U.S. Territory, and may be enforced on Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262). Federal law provides penalties for possessing, transporting, shipping, or receiving and firearm or ammunition (18 U.S.C. Section 922(g)(8)). Only the court can change this order.

**Exhibit 16**, Page ＿/＿ of ＿/＿

Exhibit 62 p. 078

# ORS 19.335
# Stay by filing of supersedeas undertaking

---

**(1)** If a judgment is for the recovery of money, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will pay the judgment to the extent that the judgment is affirmed on appeal.

**(2)** If a judgment requires the transfer or delivery of possession of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed. The value of the use and occupation during the period of possession must be stated in the undertaking.

**(3)** Intentionally left blank —Ed.

**(a)** If a judgment requires the transfer or delivery of possession of personal property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will obey the judgment of the appellate court, and that if the appellant does not obey the judgment, the appellant will pay an amount determined by the trial court and stated in the undertaking.

**(b)** If a judgment requires the transfer or delivery of possession of personal property, the judgment is stayed without the filing of a supersedeas undertaking if the appellant transfers or delivers the personal property to the court or places the property in the custody of an officer or receiver appointed by the trial court.

**(4)** If a judgment requires the foreclosure of a mortgage, lien or other encumbrance, and also requires payment of the debt secured by the mortgage, lien or other encumbrance, a supersedeas undertaking acts to stay that portion of the judgment that requires payment of the debt if the undertaking provides that the appellant will pay any portion of the judgment remaining unsatisfied after the sale of the property subject to the mortgage, lien or other encumbrance. The amount of the undertaking must be stated in the undertaking. The requirements of this subsection are in

**Exhibit 17,** Page _/_ of _3_

Exhibit 62 p. 079

addition to any provisions in a supersedeas undertaking that may be required under subsection (2) or (3) of this section to stay delivery or transfer of property.

(5)    If a judgment requires the execution of a conveyance or other instrument, the judgment is stayed without the filing of a supersedeas undertaking if the appellant executes the instrument and deposits the instrument with the trial court administrator. Unless otherwise directed by the appellate court, the instrument must be held by the trial court administrator until issuance of the appellate judgment terminating the appeal.

(6)    Except as provided in ORCP 72, a stay of judgment described in this section takes effect only after the party has filed a notice of appeal and filed any supersedeas undertaking required for the stay. [1997 c.71 §6; 1999 c.367 §11; 2007 c.547 §5]

_Location:_
https://oregon.public.law/statutes/ors_19.335

_Original Source: Section 19.335 — Stay by filing of supersedeas undertaking,_ https://www.-
oregonlegislature.gov/bills_laws/ors/ors019.html
(last accessed Aug. 25, 2023).

**Exhibit 17,** Page **2** of **3**

Exhibit 62 p. 080

Oregon.Public.Law

**Oregon Rules of Civil Procedure**

# ORCP 72 - Stay of proceedings to enforce judgment

STAY OF PROCEEDINGS TO ENFORCE JUDGMENT

RULE 72

**A Immediate execution; discretionary stay.** Execution or other proceeding to enforce a judgment may issue immediately upon the entry of the judgment, unless the court directing entry of the judgment, in its discretion and on such conditions for the security of the adverse party as are proper, otherwise directs. The court shall have authority to stay execution of a judgment temporarily until the filing of a notice of appeal and to stay execution of a judgment pending disposition of an appeal, as provided in ORS 19.335, 19.340 and 19.350 or other provision of law.

**B Other stays.** This rule does not limit the right of a party to a stay otherwise provided for by these rules or other statute or rule.

**C Stay or injunction in favor of public body.** The federal government, any of its public corporations or commissions, the state, any of its public corporations or commissions, a county, a municipal corporation, or other similar public body shall not be required to furnish any bond or other security when a stay is granted by authority of section A of this rule in any action to which it is a party or is responsible for payment or performance of the judgment.

**D Stay of judgment as to multiple claims or multiple parties.** If a court enters a limited judgment under the provisions of Rule 67 B, the court may stay enforcement of the judgment and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered.

[CCP 12/13/80; § A amended by CCP 12/14/96; § A amended by 1997 c.71 § 18; § D amended by 2003 c.576 § 263.]

Hosted by :

**Exhibit 17,** Page __3__ of __3__

Exhibit 62 p. 081

**Form #E-1**

Board or State Association

110 Cooperative Way     Kalispell     MT   59901
Address              City            State    Zip

## Ethics Complaint

To the **Grievance Committee** of the    Northwest Montana Association of REALTORS, Inc.
Board or State Association

Filed **August 15**, 20**24**

Ryan Dean Gabriel             Frederick "Fritz" Groenke

2000 Blacktail Rd., Lakeside MT 59     Montana Real Estate Group
Complainant(s)                                Respondent(s)

Complainant(s) charge(s):

An alleged violation of Article(s) **Article 1, 3 and 12: SOP** of the Code of Ethics or other membership duty as set

forth in the bylaws of the Board in __Article VII, Sections 2, 3 & 4__ and alleges that the above charge(s)
Article, Section

(is/are) supported by the attached statement, which is signed and dated by the complainant(s).

This complaint is true and correct to the best knowledge and belief of the undersigned and is filed within one hundred eighty (180) days after the facts constituting the matter complained of could have been known in the exercise of reasonable diligence or within one hundred eighty (180) days after the conclusion of the transaction, whichever is later.

I (we) declare that to the best of my (our) knowledge and belief, my (our) allegations in this complaint are true.

Are the circumstances giving rise to this ethics complaint involved in civil or criminal litigation or in any proceeding before the state real estate licensing authority or any other state or federal regulatory or administrative agency?
◯ Yes ◯ No

You may file an ethics complaint in any jurisdiction where a REALTOR® is a member or MLS participant. Note that the REALTORS® Code of Ethics, Standard of Practice 14-1 provides, in relevant part, "REALTORS® shall not be subject to disciplinary proceeding in more than one Board of REALTORS® . . . with respect to alleged violations of the Code of Ethics relating to the same transaction or event."

Have you filed, or do you intend to file, a similar or related complaint with another Association(s) of REALTORS®?
◉ Yes ◯ No

If so, name of other Association(s): **Board of Realty Regulation** Date(s) filed: **8/15/2024**

I understand that should the Grievance Committee dismiss this ethics complaint in part or in total, that I have twenty (20) days from transmittal of the dismissal notice to appeal the dismissal to the Board of Directors.

Complainant(s):

Ryan Dean Gabriel
Type/Print Name                                  Signature

Type/Print Name                                  Signature

Address

(403) 606-5859                  rgabriel@zurccapital.com
Phone                                    Email

*(Revised 11/14)*

*Code of Ethics and Arbitration Manual*     **Exhibit 18**, Page __l__ of __l__
88

Exhibit 62 p. 082

**Ryan Gabriel <rgabriel@zurccapital.com>**                                   8/3/2024 9:33 PM

# RE: Re: 2000 Blacktail Road

To Fritz Groenke <mtreg@cyberport.net> • michellethomson.bigfork@gmail.com   Copy justin@406mls.com

Michelle,

We have evidence that "Fritz" deliberately sent this e-mail using your signature under Taylor "Kai" Groenke's explicit guidance, and without your immediate knowledge.

We also have direct metadata evidence that there was no request for a showing of the property at 9am tomorrow, on August 4, 2024.

Taylor "Kai" Groenke is, per her own testimony, the alleged biological daughter of Frederick "Fritz" Groenke, and she dictated this series of e-mails to Fritz.

We have evidence that Frederick "Fritz" Groenke deliberately concealed your true e-mail address, 'michellethomson.bigfork@gmail.com' so that you would be unaware of this, which is why I sent you the previous 'FYI'.

This e-mail exchange and all parties involved are now the subject of major Federal criminal racketeering investigation and you are hereby directed to preserve all communications on this matter.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

> On 08/03/2024 8:42 PM EDT Fritz Groenke <mtreg@cyberport.net> wrote:
>
> Hello Ryan,
>
> I sent the email to you requesting the showing for Blacktail and Michelle's contact info under my signature was inadvertent. She was not asking for the showing appointment I was. We will not be showing the property because you have refused the appointment to do so. If you change your mind please let me know and we will see if the prospects can be re contacted and view the property.
>
> Fritz
>
> Montana Real Estate Group
>
> (406) 837-6000 Office
>
> (406) 250-5151 Fritz Cell

**Exhibit 19**, Page ___/___ of __3__

Exhibit 62 p. 083



**REAL ESTATE GROUP**

--------------------------------------------------------------------------------

**From:** Ryan Gabriel [mailto:rgabriel@zurccapital.com]
**Sent:** Saturday, August 03, 2024 6:05 PM
**To:** michellethomson.bigfork@gmail.com
**Cc:** mtreg@cyberport.net
**Subject:** Fwd: Re: 2000 Blacktail Road

FYI

--------- Original Message ---------

From: Ryan Gabriel <rgabriel@zurccapital.com>

To: Montana Real Estate Group <mtreg@cyberport.net>

Cc: justin@406mls.com

Date: 08/03/2024 7:57 PM EDT

Subject: Re: 2000 Blacktail Road


Michelle,

Montana Real Estate Group is now the subject of a tortious interference litigation lawsuit in which I am a Plaintiff (Eleventh Judicial District Court, State of Montana).

Montana Real Estate Group, Frederick "Fritz" Groenke, Justin Ponton, CEO of Montana Regional MLS, and Montana Regional MLS are all named Defendants in that tortious interference litigation. The process servers are presently delivering that lawsuit in person to the parties named above.

Montana Real Estate Group and Frederick "Fritz" Groenke, via Montana Regional MLS, illegally listed the property in question (2000 Blacktail Rd., Lakeside, MT 59922) on or before July 23, 2024, while there was an active Court stay (supersedeas undertaking) in Multnomah County Court Case 22DR04942 on the very judgment cited by Fritz Groenke to justify listing the property.

Because the listing was never removed when the above-named Defendants were notified of the stay, it remains an illegal listing, and any criminal trespassing that stems from that illegal MLS listing will be subject to criminal prosecution under Montana Penal Code 45-6-203.

Any actions taken by Montana Real Estate Group and Frederick "Fritz" Groenke under that illegal listing will also be vigorously litigated in the tortious interference lawsuit now being served upon the parties.

I would note that you are sending this to me at 5:51pm on a Saturday evening (August 3, 2024), to inquire about a Sunday morning intrusion onto the property the very next day (August 4, 2024).

**Exhibit 19,** Page __2__ of __3__

Exhibit 62 p. 084

This almost certainly constitutes harassment in the context of the pending litigation and in the context of the illegal listing filed during a stay of the court.

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

On 08/03/2024 3:44 PM EDT Montana Real Estate Group <mtreg@cyberport.net> wrote:

We have a request from cooperating broker to show the property Sunday tomorrow at 9 AM. Can we make that appointment to show the property?
Thank you for your earliest response the agent is waiting to hear back for the appointment.
Fritz

Michelle Thomson
*Real Estate Advisor*

Cell 406.270.0802
Office 406.837.6000
553 Electric Avenue
Bigfork, MT 59911
mtreg@cyberport.net
michellethomson.bigfork@gmail.com



- image001.jpg (5 KB)
- image002.jpg (5 KB)

**Exhibit 19**, Page __3__ of __3__

Exhibit 62 p. 085

FILED
08/01/2023
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Kristen Skees
DV-15-2022-0000605-PA
Allison, Robert B
10.00

District Court Judge
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, MT 59901
(406) 758-5906

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | | |
|---|---|---|
| RYAN DEAN GABRIEL,<br><br>                              Plaintiff,<br><br>v.<br><br>JESSE MARK OLSEN<br><br>                              Defendant. | | Cause No. DV-22-605 (B)<br><br>**ORDER STAYING PROCEEDINGS** |

The Court, having reviewed Defendant's Motion to Dismiss or in the Alternative to Stay Proceedings filed in this matter, and good cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Stay Proceedings is GRANTED <u>so long as quarterly updates regarding the case mentioned below are received by this Court beginning October 1, 2023. Exhibits of court orders shall accompany said updates when necessary. Should either party wish to lift this STAY, the moving party shall file a motion requesting as much</u>. Accordingly, all further proceedings in this matter are hereby STAYED pending the entry of a final judgment in the Circuit Court of the State of Oregon, County of Multnomah Case No. 22DR04942. Even if Defendant is served with the Summons in this matter subsequent to this Order, Defendant's Answer need not be filed and Defendant may not be defaulted without further order of the Court.

ELECTRONICALLY signed and dated below.

Electronically Signed By:
Hon. Judge Robert B. Allison
Tue, Aug 01 2023 01:53:07 PM

Exhibit 22, Page 1 of 2

Exhibit 62 p. 086

Kai Groenke
Law Office of Kai Groenke, P.C.
239 2nd Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
kai@familylawflathead.com

Attorney for Defendant


## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| RYAN DEAN GABRIEL,<br><br>                                        Plaintiff,<br><br>v.<br><br>JESSE MARK OLSEN<br><br>                                        Defendant. | Cause No. DV-22-605(B)<br><br>**NOTICE OF ISSUE** |

COMES NOW the Defendant Jesse Olsen, by and through his undersigned counsel, and pursuant to the Montana Eleventh Judicial District Court Rule (3)(a), notifies the Court that more than 60 days has passed since Defendant's Motion to Dismiss or in the Alternative to Stay Proceedings has been ripe for decision.

Defendant filed his Motion on May 9, 2023. Plaintiff filed his Answer Brief on May 19, 2023. Defendant's Reply was filed on May 31, 2023. More than 60 days have passed since the filing of Defendant's reply brief. The matter is ripe for ruling and the Defendant respectfully requests a ruling on his Motion.

DATED this 31st day of July, 2023.

LAW OFFICE OF KAI GROENKE, P.C.

By:     /s/ Kai Groenke
          Attorneys for Defendant

Exhibit 62 p. 087



**Montana Department of**
**LABOR & INDUSTRY**

Home    Help    License Search    Permit Search

Underground Utility Incident Report Search    Continuing Education Search ⌄

**State of Montana**
Business Standards Division
Professional and Occupational Licensing Bureau
Board of Realty Regulation

Click here for a disclaimer

---License Information---------------------------------

**Licensing Board/Program:** Board of Realty Regulation

**License Type:** Broker License

**License Number:** RRE-BRO-LIC-1435

**License Status:** Active

**License Expiration Date:** 10/31/2024

**License Issued Date:** 01/27/1979

---License Holder---------------------------------

**Business Name:** MONTANA REAL ESTATE GROUP

**Name:** Frederick J Groenke

**City, State Zip:** BIGFORK, MT 59911

---Endorsements---------------------------------

With endorsements of:
*SUPERVISING BROKER*

**Exhibit 24,** Page __1__ of __2__

Exhibit 62 p. 088

## Public Documents

Our records show no public documentation for this licensee.

## Discipline

Our records show no adverse information concerning this licensee.

Back

**Exhibit 24,** Page __2__ of __2__

Exhibit 62 p. 089

Login

# Business Search

## Groenke Holdings, LLC (C1054904)

Domestic Limited Liability Company

**Request Information**

groenk 🔍

Advanced ⌄

Results: 1

| Form Info | Status |
|---|---|
| Groenke Holdings, LLC (C1054904) Domestic Limited Liability Company | Active-Good Standin |

| | |
|---|---|
| Filing Number | C1054904 |
| Entity Type | Domestic Limited Liability Company |
| Entity SubType | Limited Liability Company |
| Status | Active-Good Standing |
| Managed By | Member |
| Formed In | Montana |
| Principal Address | 239 2ND STREET WEST KALISPELL, MT 59901 |
| Mailing Address | 239 2nd Street West Kalispell, MT 59901 |
| Registration Date | 08/31/2017 |
| AR Due Date | 04/15/2025 |
| Registered Agent | Noncommercial RA00020430 Kai Groenke 239 2ND STREET WEST KALISPELL, MT 59901 |

Active ABNs & TMs

Professional Center (A1066927)

Inactive ABNs & TMs

View Filings

**Exhibit 25**, Page ___1___ of ___2___

© 2024 MT Secretary of State

Exhibit 62 p. 090

# LAW OFFICE OF KAI GROENKE, P.C.

239 2nd Street West • Kalispell • MT • 59901
Phone: (406) 890-2999  Email: kai@familylawflathead.com
www.familylawflathead.com

## TRANSMITTAL MEMORANDUM

0001

August 12, 2024

Ryan Gabriel
2000 Blacktail Rd. Box 1140
Lakeside, MT 59922

Re:    Flathead County Cause No. DV-22-605 (B)

**Enclosed please find the following documents:**

- Response to Motion to Lift Stay of Proceedings and Schedule Hearing for Plaintiff's Sworn Petition for Order of Protection
- Defendant's Fourth Supplemental Status Report
- Proposed Order

**Action required by you:**

Review and keep for your records.  Please feel free to contact Kai with any questions or concerns.

Kind regards,

*/s/ Melissa Smith*
Paralegal
melissa@familylawflathead.com

Enclosure

Exhibit 25, Page **2** of **2**

Exhibit 62 p. 091

‹ Back to search      ⌂ Zillow      ♡ Save      ⬆ Share      ⊘ Hide      ○○○

**Active under contract**

⊞ See all 16 photos

# $1,085,000

2000 Blacktail Rd, Lakeside, MT 59922

**4** beds   **4** baths   **3,001** sqft

Est.: **$6,323/mo**  ✏  **Get pre-qualified**

🏠 Single Family Residence          🔨 Built in 2016          📐 5.95 Acres lot

♦ $1,029,900 Zestimate®          📊 $362/sqft          🌿 $— HOA

## What's special

Only a quick trip up to Blacktail Mountain Ski Area or down to Flathead Lake in Lakeside, sits two separate Montana Style dwellings with classic high end finishes. **Exhibit 26, Page  1  of  4**  ▼

Exhibit 62 p. 092



‹ Back to search          **Zillow**          ♡ Save    ⬆ Share    ⊘ Hide    ⦁⦁⦁

Overview     Facts & features     Market value     Payment calculator     Neighborhood

**$1,029,900 Zestimate®**          **$362/sqft**                    **$— HOA**

# What's special

Only a quick trip up to Blacktail Mountain Ski Area or down to Flathead Lake in Lakeside, sits two separate Montana Style dwellings with classic high end finishes. Situated to embrace the secluded and active Montana lifestyle, each cabin also offers two bedrooms and two baths with kitchens. Enjoy vaulted ceilings, open floor plan, granite countertops, hardwood floors,

⌄ **Show more**

**29 days** on Zillow   |   **2,053** views   |   **157** saves   |   Likely to sell faster than **93% nearby**

Zillow last checked: 1 hour ago

Listing updated: August 12, 2024 at 10:46am

Listed by: Fritz J Groenke 406-837-6000, Montana Real Estate Group

Source: MRMLS, MLS#: 30026820



# Travel times

# Staff

*The Montana Regional Multiple Listing Service staff is available Monday-Friday, 8 AM-5 PM and is happy to answer any questions regarding MLS software or provided benefits. We appreciate your patience as we respond to inquiries as quickly as we can.*
*Matrix Listings, Violations, IDX/VOW/3rd Party, etc.*
*Derek Close, IT Director*
*406-752-0416 ext. 2 (tel:406-752-0416)*
*dclose@406mls.com (mailto:dclose@406mls.com)*

*Matrix Questions, Administration*
*Justin Ponton, CEO*
*(406) 752-0416 ext.1 (tel:406-752-0416)*
*Justin@406mls.com (mailto:Justin@406mls.com)*

*Billing, Passwords & other Subscriber Issues*
*Molly Harris, Subscriber Relations*
*For new MRMLS Subscribers, those who are moving offices or going inactive, please contact your local association first (buttons below). If your association isn't listed below, please contact Molly.*
*(406) 752-0416 ext.3 (tel:406-752-0416)*
*Molly@406mls.com (mailto:Molly@406mls.com)*

- The Board of Realty Regulation (button below) handles all information pertaining to licensing and regulation of real estate agents and brokers.
- The State association (button below) is responsible for the legal hotline, advocacy, training, and forms.
- Local associations (buttons below) are responsible for local agent changes,
  association dues, keycards/lockboxes, and additional training.

*Remember, for issues with agent changes (new, moving, inactivation) WITHIN the*
*MRMLS region (everything from the Idaho/Montana border east to the Great Falls,*
*Helena, and Butte areas), please contact your local association first (buttons below). For the rest of Montana (roughly Havre, Lewistown, and Bozeman and everything east) and other states, contact Molly.*

Quick Links:

Board of Realty Regulation (http://boards.bsd.dli.mt.gov/rre)

Bitterroot Valley Board of REALTORS® (https://bvbor.org/)

Helena Association of REALTORS® (https://www.helenarealtors.com)

Northwest Montana Association of REALTORS® (https://www.nmar.com/)

Montana Association of REALTORS® (https://www

Great Falls Association of REALTORS® (https:/

Missoula Organization of REALTORS® (https://www.

Rocky Mountain Association of REALTORS® (htt

Montana Regional MLS
PO Box 2938
Missoula, MT 59806
(406) 752-0416

**Exhibit 26**, Page __3__ of __4__

Exhibit 62 p. 094

Disclaimer: MRMLS makes no representations or warranties of any nature with regard to the privacy and/or business practices of the websites linked from or to 406mls.com nor with regard to their use of any information they may collect.

DMCA Notice (http://mlscom.wwwaz1–ss26.a2hosted.com/dmca/)

**Exhibit 26**, Page __4__ of __4__

Exhibit 62 p. 095



# PROPERTY MANAGEMENT AGREEMENT

This PROPERTY MANAGEMENT AGREEMENT (the "Agreement") is effective as of April 1, 2021 (the "Effective Date") by and between Zurc Capital, LLC a Wyoming limited liability company (the "Property Management Co.") and Ryan D. Gabriel, owner (the "Property Owner") of 2000 Blacktail Road, Lakeside, MT 59922 which consists of 2 detached, wholly autonomous single-family home (cabin) units located at that address, and as more particularly described in Exhibit "1" attached hereto.

The Property Owner desires to engage the Property Manager to supervise, manage, lease, operate, and maintain the Project.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Commencement and Termination Dates.

    1.1    Commencement and Termination. The Property Manager's duties and responsibilities under this Agreement shall begin on the Effective Date.

    1.2    Termination. This Agreement shall terminate on the earlier of: (i) the sale of the Project or (ii) April 1, 2025, which may be automatically extended for up to 4 additional 1 year periods barring the objection of either party. Notwithstanding the above, the Property Owner and the Property Manager may elect to extend this Agreement beyond the term set forth above by mutual written agreement.

2. Property Manager's Responsibilities.

    2.1    Status of the Property Manager. The Property Owner and the Property Manager do not intend to form a joint venture, partnership or similar relationship. Instead, the parties intend that the Property Manager shall act solely in the capacity of an independent contractor for the Property Owner. Nothing in this Agreement shall cause the Property Manager and the Property Owner to be joint venturers or partners of each other, and neither shall have the power to bind or obligate the other party by virtue of this Agreement, except as expressly provided in this Agreement. Nothing in this Agreement shall deprive or otherwise affect the right

Exhibit 62 p. 096

of the parties to this Agreement to own, invest in, manage or operate, or to conduct business activities that compete with the business of the Project.

2.2 <u>Management</u>. The Property Manager shall manage, operate and maintain the Project in a commercially reasonable manner for the tenants thereof, subject to (a) applicable governmental requirements and (b) the terms and provisions of this Agreement. At the expense of the Property Owner, the Property Manager shall keep the Project clean and in good repair, and shall order and supervise the completion of such repairs as may be required, provided that the Property Owner, in a manner reasonably satisfactory to the Property Manager, makes available to the Property Manager sufficient sums to pay the costs thereof.

2.3 <u>Employees/Independent Contractors of Property Manager</u>. The Property Manager shall employ, directly or through third party contractors (e.g. employee leasing company) employees and/or independent contractors to enable the Property Manager to manage, operate and maintain the Project. All matters pertaining to the supervision of such employees and independent contractors shall be the responsibility of the Property Manager. All salaries, benefits and positions of employees who perform work in connection with the Project shall be consistent with the Budget (as defined in Section 2.5).

2.4 <u>Compliance with Laws, Mortgages and Other Matters</u>.

2.4.1 The Property Manager shall comply with all applicable local, state and federal laws (collectively "Laws"). The Property Manager may implement such procedures with respect to the Project as the Property Manager may deem advisable for the efficient and economic management and operation thereof. The Property Manager shall pay from the Operating Account (defined in Section 6.1) expenses incurred to remedy violations of Laws. However, the Property Manager shall not be obligated to remedy any violations of Law if sufficient funds are not available in the Operating Account or if the Property Owner does not provide sufficient additional funds to do so.

2.4.2 The Property Manager shall furnish to the Property Owner, promptly after receipt, any notice of violation of any material Laws issued by any governmental entity or any notice of termination or cancellation of any insurance policy.

2.4.3 The Property Manager shall use commercially reasonable efforts to comply with the Loan Documents. The Property Manager shall furnish to the Property Owner, promptly after receipt, any notices of default received from a Lender. The Property Owner shall furnish to the Property Manager, promptly after receipt, any notices of default received from a Lender.

2.5 <u>Budgets</u>.

2.5.1 The Property Manager shall prepare and submit to the Property Owner annually an annual capital and operating budget ("Budget") for the promotion, operation, leasing, repair, maintenance and improvement of the Project for each calendar year. The Budget for the initial calendar year, preapproved by the Property Owner, is attached hereto as Exhibit "B" and incorporated herein by this reference. The Property Manager shall deliver the Budget for each subsequent calendar year on or prior to December 1st of the calendar year before the budget year, or as soon as possible thereafter. The Property Owner shall have thirty (30) days after delivery of the Budget to approve or disapprove of the Budget. The Property Owner agrees to use its best

<u>EXHIBIT A</u>
PAGE 2 OF 14

Exhibit 62 p. 097

efforts to approve the Budget. If the Property Owner does not disapprove of the Budget (which disapproval shall be in writing to the Property Manager), or any item therein, within such thirty (30) day specified response period described above, the Property Owner shall have been deemed to have approved the Budget. In the event the approval is not obtained, the Property Owner shall negotiate in good faith with the Property Manager for fifteen (15) days to resolve the issue. If the parties are unable to reach an agreement, the issue shall be resolved by arbitration as set forth in Section 13.5 with the Property Owner on the one hand, and the Property Manager on the other hand; the costs of the arbitration shall be paid by the Project. The Property Manager may proceed under the terms of the proposed Budget for items that are not objected to and may take any action with respect to Permitted Expenditures (as defined in Section 2.5.2 below). In the event that the items that are objected to are operational expenditures, as opposed to capital expenditures, the Property Manager shall be entitled to operate the Project using the prior year's Budget for such items plus five percent (5%) until approval is obtained. The Property Manager may at any time submit a revised Budget to the Property Owner for its approval, which will be governed by the terms of this Section 2.5.1 and shall continue to operate the Project under the previously approved Budget until the revised Budget is approved. The Property Manager shall provide the Property Owner with such information regarding the Budget as may be, from time to time, reasonably requested by the Property Owner.

2.5.2    The Property Manager shall charge all expenses to the proper account as specified in the Budget, provided that the Property Manager may reallocate savings from one line item to other line items for the benefit of the Property Owner. The Property Manager shall submit (subject to the same procedures as set forth in Section 2.5.1) a revised Budget to the Property Owner before making any expenditure not within the Budget unless the expenditure is (a) less than $25,000, or (b) is, in the Property Manager's reasonable judgment, required to avoid personal injury, significant property damage, a default under any loan encumbering the Project, a violation of applicable Law or the suspension of a service (collectively, "Permitted Expenditures").

2.5.3    During each calendar year, in the regular monthly reports sent to the Property Owner, the Property Manager shall inform the Property Owner of any material increases in costs and expenses not foreseen and not included in the Budget within a reasonable time after the Property Manager learns of such changes.

2.5.4    Any controversy arising out of or related to any dispute regarding the Budget as set forth in Section 2.5.1 shall be settled by binding arbitration as provided in Section 13.5.

2.6    Leasing.

2.6.1    The Property Owner hereby approves all Leases, as defined in Section 2.6.2 presently in effect on the date hereof and the Property Manager's standard lease form, a copy of which is attached hereto and incorporated herein as Exhibit C.

2.6.2    The Property Manager shall use commercially reasonable efforts to obtain tenants for all leasable space in the Project and to renew leases and rental agreements (collectively, "Leases") as provided herein. The Property Manager shall have the authority to negotiate and execute new and renewal Leases on behalf of the Property Owner. In connection with its leasing efforts, the Property Manager may advertise the Project for lease.

Exhibit 62 p. 098

2.6.3   The Property Manager shall not, without the prior written approval of the Property Owner, give free rental or discounts or rental concessions to any employees, officers or shareholders of the Property Manager or anyone related to such employees, officers or shareholders unless such discounts or concessions are disclosed in the Budget or are in lieu of salaries or other benefits to which they would be contractually entitled. The Property Manager shall not lease any space in the Project to itself or to any of its affiliates or subsidiaries.

2.6.4   The Property Manager shall reasonably investigate all prospective tenants, and shall not rent to persons not meeting credit standards reasonable for the market. The Property Manager may, in its discretion, obtain a credit check for all prospective tenants through LexisNexis or a similar service. The Property Manager shall retain such information for the duration of the tenancy, and shall make it available to the Property Owner upon reasonable notice, subject to compliance with any confidentiality restrictions required by any credit check company and any applicable Laws. The Property Manager does not guarantee the accuracy of any such information or the financial condition of any tenant.

2.6.5   The Property Manager is hereby authorized to execute any and all subordination and non-disturbance agreements, tenant estoppel certificates and tenant notices with respect to the Project, and any and all property tax declaration forms with respect to the acquisition of the Project.

2.7   Collection of Rents and Other Income. Unless otherwise required by any Loan Documents affecting the Project, the Property Manager shall bill all tenants and shall use its commercially reasonable efforts to collect all rent and other charges due and payable from any tenant or from others for services provided in connection with the Project. The Property Manager shall deposit all monies so collected in the Operating Account as defined in Section 6.1.

2.8   Repairs and Maintenance. The Property Manager shall maintain the buildings, appurtenances and common areas of the Project other than areas that are the responsibility of the tenants, including, without limitation, all repairs, cleaning, painting, decorations and alterations, for example electrical, plumbing, carpentry, masonry, elevators and such other routine repairs as are necessary or reasonably appropriate in the course of maintenance of the Project (subject to the limitations of this Agreement). The Property Manager shall pay actual and reasonable expenses for materials and labor for such purposes from the Operating Account.

2.9   Capital Expenditures. The Property Manager, on behalf of the Property Owner, may make any capital expenditure within any Budget approved by the Property Owner without any further consent, provided that the Property Manager follows the bidding procedures prescribed below. All other capital expenditures (other than Permitted Expenditures) shall be subject to submittal of a revised Budget to the Property Owner. Unless the Property Owner specifically waives such requirements, or approves a particular contract, the Property Manager shall award any contract for a capital improvement exceeding $50,000 in cost on the basis of competitive bidding, solicited from a minimum of two (2) written bids. The Property Manager shall accept the bid of the lowest bidder determined by the Property Manager to be responsible, qualified and capable of completing such improvements on a reasonable schedule.

2.10   Service Contracts, Supplies and Equipment.

Exhibit 62 p. 099

2.10.1   The Property Manager, on behalf of the Property Owner, may enter into or renew any contract for cleaning, maintaining, repairing or servicing the Project or any of the constituent parts of the Project (including but not limited to contracts for utilities, security or other protection, extermination, landscaping, architectural or engineering services) without the further consent of the Property Owner. Each service contract shall (a) be in the name of the Property Owner or the Property Manager as agent of the Property Owner, (b) be assignable to a successor owner of the Project, and (c) be for a term not to exceed one year unless the circumstances require otherwise in the sole discretion of the Property Manager.

2.10.2   If this Agreement terminates pursuant to Section 10, the Property Manager shall assign to the Property Owner or the nominee of the Property Owner all of the Property Manager's interest in the service agreements pertaining to the Project or otherwise terminate such service agreements as directed by the Property Owner to the extent the Property Manager and/or Property Owner has the authority to terminate such service agreements.

2.10.3   At the expense of the Property Owner, the Property Manager shall purchase, provide, and pay for any needed janitorial and maintenance supplies, tools and equipment, restroom and toilet supplies, light bulbs, paints, and similar supplies necessary to operate and maintain the Project. Any interest in such supplies and equipment shall be the property of the Property Owner. All such supplies, tools, and equipment generally shall be delivered to and stored at the Project and shall be used only in connection with the management, operation, and maintenance of the Project.

2.10.4   The Property Manager shall use reasonable efforts to purchase all goods, supplies or services at the lowest cost reasonably available from reputable sources.

2.11   <u>Taxes and Mortgages</u>. The Property Manager, unless otherwise requested, shall obtain and verify bills for real estate and personal property taxes, general and special real property assessments and other like charges (collectively "Taxes") which are, or may become, liens against the Project and appeal such Taxes as the Property Manager may decide, in its reasonable judgment, to be prudent. The Property Manager shall report any such Taxes that materially exceed the amounts contemplated by the Budget to the Property Owner prior to the Property Manager's payment thereof. The Property Manager, if requested by the Property Owner, will prepare an application for correction of the assessed valuation (in cooperation with the Property Owner) to be filed with the appropriate governmental agency. The Property Manager shall pay, within the time required to obtain discounts, from funds provided by the Property Owner or from the Operating Account, all utilities, Taxes and payments due under each lease, mortgage, deed of trust or other security instrument, if any, affecting the Project. To the extent contemplated by the Budget (as may be revised from time to time), the Property Manager may make any such payments and pay customary rates to tax professionals for related tax services without the additional approval of the Property Owner.

2.12   <u>Miscellaneous Duties</u>. The Property Manager shall (a) maintain at the Property Manager's office address as set forth in Section 12.1 or at the Project, and readily accessible to the Property Owner, orderly files containing rent records, insurance policies, Leases and subleases, correspondence, receipted bills and vouchers, bank statements, canceled checks, deposit slips, debit and credit memos, and all other documents and papers pertaining to the Project or the operation thereof; (b) provide information about the Project necessary for the preparation and filing by the Property Owner of its income or other tax returns required by any governmental authority, including annual statements,; (c) consider and record

EXHIBIT A
PAGE 5 OF 14

Exhibit 62 p. 100

tenant service requests in systematic fashion showing the action taken with respect to each; (d) supervise the moving in and out of tenants and, if permitted under the Leases and known to the Property Manager, subtenants; arrange, to the extent possible, the dates thereof to minimize disturbance to the operation of the Project and inconvenience to other tenants; and render an inspection report, an assessment for damages and a recommendation on the disposition of any deposit held as security for the performance by the tenant under its lease with respect to each premises vacated; (e) check all bills received for the services, work and supplies ordered in connection with maintaining and operating the Project and, except as otherwise provided in this Agreement, pay such bills when due and payable; and (f) not knowingly permit the use of the Project for any purpose that might void any policy of insurance held by the Property Owner or that might render any loss thereunder uncollectible. All such records are the property of the Property Owner and will be made available to the Property Owner upon request.

3. Insurance.

3.1 Insurance.

3.1.1 The Property Manager, at the Property Owner's expense, will, to the extent available at commercially reasonable rates, obtain and keep in force (or require the tenants under the Leases to obtain and keep in force) adequate insurance against physical damage (such as fire with extended coverage endorsement, boiler and machinery) and against liability for loss, damage or injury to property or persons that might arise out of the occupancy, management, operation or maintenance of the Project, as contemplated by the Budget and any Loan Documents affecting the Project. Such insurance shall be obtained for the Property Owner and shall include the Property Owner as a named insured. The Property Manager shall not be required to obtain terrorism, earthquake or flood insurance unless required by the Loan Documents or otherwise expressly directed to do so by a specific written notice from the Property Owner, but may do so in the Property Manager's reasonable discretion. The Property Manager shall be a named insured on all property damage insurance and an additional insured on all liability insurance maintained with respect to the Project. In the event the Property Manager receives insurance proceeds for the Project, the Property Manager will take any required actions as set forth in any Loan Documents affecting the Project. In the event that the Property Manager receives insurance proceeds that are not governed by the terms of any Loan Documents affecting the Project, the Property Manager will either (i) use such proceeds to replace, repair or refurbish the Project or (ii) distribute such proceeds to the Property Owner, as directed by the Property Owner. Any insurance proceeds distributed to the Property Owner will be distributed subject to any fees owed to the Property Manager pursuant to this Agreement. The foregoing notwithstanding, in all events the Property Manager will obtain on behalf of the Property Owner, at the Property Owner's expense, all applicable insurance coverage as may be required by the terms of any Loan Documents.

3.1.2 The Property Owner acknowledges that the Property Manager is not a licensed insurance agent or insurance expert. Accordingly, the Property Manager shall be entitled to rely on the advice of a reputable insurance broker or consultant regarding the proper insurance for the Project.

3.1.3 Subject to the provisions of any Loan Documents, the Property Manager shall investigate and submit, as soon as reasonably practicable, any required reports to the insurance carrier as to all accidents, claims for damage relating to the ownership, operation and maintenance of the Project, any damage to or destruction of the Project and the estimated costs of repair thereof. Subject to the provisions of any Loan

Exhibit 62 p. 101

Documents, the Property Manager shall settle all claims, including the execution of proofs of loss, the adjustment of losses, signing and collection of receipts and collection of money.

    3.2    Contractor's and Subcontractor's Insurance. The Property Manager shall require all contractors and subcontractors entering upon the Project to perform services to have insurance coverage at the contractor's or subcontractor's expense, in the following minimum amounts or such other amounts as may be required under the terms of any Loan Documents: (a) worker's compensation – statutory amount; (b) employer's liability (if required) - $500,000; and (c) comprehensive general liability insurance, including comprehensive auto liability insurance covering the use of all owned, non-owned and hired automobiles, with bodily injury and property damage limits of $750,000 per occurrence. The Property Manager may waive such requirements in its reasonable discretion. The Property Manager shall obtain and keep on file a certificate of insurance which shows that each contractor and subcontractor is so insured.

    3.3    Waiver of Subrogation. To the extent available at commercially reasonable rates, all property damage insurance policies required hereunder shall contain language whereby the insurance carrier thereunder waives any right of subrogation it may have with respect to the Property Owner or the Property Manager.

    4.    Bank Accounts.

    4.1    Operating Account. To the extent funds are not required to be placed in a lockbox pursuant to any Loan Documents affecting the Project, the Property Manager shall deposit all rents and other funds collected from the operation of the Project in a reputable bank or financial institution in a special trust or depository account or accounts for the Project maintained by the Property Manager for the benefit of the Property Owner. The Property Manager shall maintain books and records of the funds deposited in the accounts and withdrawals therefrom (such accounts together with any interest earned thereon, shall collectively be referred to herein as the "Operating Account"). The Property Manager shall maintain, with funds from the Property Owner, the Operating Account so that an amount at least as great as the budgeted expenses for such month is in such Operating Account as of the first of each month. The Property Manager shall pay from the Operating Account, on behalf of the Property Owner, the operating expenses of the Project and any other payments relating to the Project as required by this Agreement. If more than one account is necessary to operate the Project, each account shall have a unique name, except to the extent any Lender requires sub-accounts within any account. All rents and other funds collected in the Operating Account after payment of all operating expenses, debt service and such amounts as may be reasonably determined by the Property Manager to be retained for reserves or improvements, shall, unless otherwise provided by any Loan Documents, be paid to the Property Owner.

    4.2    Access to Account. As authorized by signature cards, representatives of the Property Manager shall have access to and may draw upon all funds without the approval of the Property Owner. Additionally, representatives of the Property Manager shall have access to and may draw upon any funds escrowed or held in reserve for capital expenditures without the approval of the Property Owner, provided that the requirements of Section 2.9 and any additional Lender requirements with respect to such amounts are satisfied. The Property Owner may not withdraw funds from such accounts without the Property Manager's prior written consent, except following the Property Manager's default after expiration of any applicable notice and cure periods or the termination of this Agreement.

EXHIBIT A
PAGE 7 OF 14

Exhibit 62 p. 102

7. <u>Payment of Expenses</u>.

      7.1 <u>Costs Eligible for Payment from Operating Account</u>. The Property Manager shall pay all expenses of the operation, maintenance and repair of the Project contemplated by the Budget directly from the Operating Account or shall be reimbursed by the Property Owner, subject to the conditions set forth in Section 2.5, including the following to the extent applicable: (a) costs of the gross salary and wages or proportional shares thereof, payroll taxes, payroll processing fees, worker's compensation insurance, employee education, training and certification and all other benefits of employees (for example, on-site personnel) required to manage, operate and maintain the Project properly, adequately, safely and economically, subject to this Agreement, provided that the Property Manager shall not pay such employees in advance; (b) cost to comply with the terms of any Loan Documents and/or to correct the violation of any governmental requirement relating to the leasing, use, repair and maintenance of the Project, or relating to the Laws, if such cost is not the result of the Property Manager's gross negligence fraud or willful misconduct; (c) actual and reasonable cost of making all repairs, decorations and alterations if such cost is not the result of the Property Manager's gross negligence or willful misconduct; (d) cost incurred by the Property Manager in connection with all service agreements; (e) cost of collection of delinquent rents collected by a collection agency or attorney; (f) legal support fees and reasonable legal fees of attorneys for the costs of services otherwise provided herein; (g) cost of capital expenditures subject to the restrictions in Section 2.9 and in this Section; (h) cost of printed checks for each account required for the Project and the Property Owner; (i) cost of utilities and costs associated with utility billing; (j) cost of advertising, marketing and resident surveys; (k) cost of printed forms and supplies required for use at the Project; (l) management compensation set forth in Section 9; (m) the cost of tenant improvements to the Project subject to the restrictions in Section 2.9 and this Section 7.1; (n) all hiring, relocation and termination costs for any employees whose salaries and benefits are paid by the Property Owner; (n) brokers' commissions; (o) debt service; (p) the cost of utilities, services, contractors and insurance; (q) reimbursement of the Property Manager's out-of-pocket costs and expenses to the extent not prohibited by Section 8; (r) general accounting and reporting services within the reasonable scope of the Property Manager's responsibility to the Property Owner; (s) cost of forms, papers, ledgers, postage and other supplies and equipment (including computer equipment) used in the Property Manager's office at any location;(t) computer/information technology (IT) support and the cost of electronic data processing equipment, including personal computers located at the Property Manager's office at the Project for preparation of reports, information and returns to be prepared by the Property Manager under the terms of this Agreement; (u) cost of electronic data processing provided by computer service companies for preparation of reports, information and returns to be prepared by the Property Manager under the terms of this Agreement, including but not limited to any costs associated with Yardi or similar property management software; (v) travel and entertainment expenses intended to advance the interests of the Project; and (w) cost of routine travel by the Property Manager's employees or agents to and from Project. In the alternative, the Property Manager may charge a monthly flat fee for the above services, which flat fee is subject to the approval of the Property Owner. All other amounts not directly related to the Project or the Property Owner shall be payable solely by the Property Manager, and shall not be paid out of the Operating Account or reimbursed by the Property Owner.

      7.2 <u>Operating Account Deficiency</u>. If there are not sufficient funds in the Operating Account (or any reserve account held by the Lender) to make any required payment, the Property Manager shall notify the Property Owner, if possible, at least ten (10) days prior to any such delinquency so that the Property Owner has an opportunity to deposit sufficient funds into the Operating Account (or, if applicable, any reserve account held

by the Lender) to allow for payment prior to the imposition of any penalty or late charge. In no event shall the Property Manager be required to expend any of its own funds for the operation or maintenance of the Project; however, should it do so, the Property Manager shall be entitled to reimbursement from the Property Owner within thirty (30) days after such advance.

8. Property Manager's Costs Not To Be Reimbursed.

8.1 Non-Reimbursable Costs. Costs attributable to losses arising from the gross negligence or fraud on the part of the Property Manager, the Property Manager's agents or employees shall be at the sole cost and expense of the Property Manager and shall not be reimbursed by the Property Owner.

8.2 Litigation. The Property Manager will be responsible for and hold the Property Owner harmless from, all fees, costs, expenses, and damages relating to criminal activity involving employees, disputes with employees for worker's compensation (to the extent not covered by insurance), discrimination or wrongful termination, including legal fees and other expenses, where it is determined by final judicial determination that such loss, cost or expense was the fault of the Property Manager.

9. Compensation. The Property Manager and its Affiliates will receive the compensation set forth on Schedule 1.

10. Termination.

10.1 Termination by Property Owner. The Property Owner shall have the right to terminate this Agreement only upon the following events: (i) because of the gross negligence, willful misconduct or fraud of the Property Manager, (ii) the bankruptcy, insolvency or inability of the Property Manager to meet its obligation as the same come due or (iii) as directed by a Lender pursuant to the terms of any applicable Loan Documents.

10.2 Termination by the Property Manager. The Property Manager shall have the right to terminate this Agreement upon thirty (30) days prior written notice from the Property Manager to the Property Owner indicating its' termination of the Agreement.

10.3 Termination on Sale. This Agreement shall automatically terminate upon the sale of the entire Project.

10.4 Final Accounting. Within forty-five (45) days after termination of this Agreement for any reason, the Property Manager shall deliver to the Property Owner the following: (a) a final accounting, setting forth the balance of income and expenses on the Project as of the date of termination; (b) transfer to any account indicated by the Property Owner any balance or monies of the Property Owner or tenant security deposits held by the Property Manager with respect to the Project (or transfer the accounts in which such sums are held as instructed by the Property Owner); and (c) deliver to a subsequent property manager or other agent indicated by the Property Owner all materials and supplies, keys, books and records, contracts, leases, receipts for deposits, unpaid bills and other papers or documents which pertain to the Project. For a period of forty-five (45) days after such expiration or cancellation for any reason other than the Property Owner's default, the Property Manager shall be available, through its senior executives familiar with the Project, to consult with and advise the Property Owner or any person or entity succeeding to the Property Owner as owner of the Project

EXHIBIT A
PAGE 9 OF 14

Exhibit 62 p. 104

or such other person or persons selected by the Property Owner regarding the operation and maintenance of the Project. In addition, the Property Manager shall cooperate with the Property Owner in notifying all tenants of the Project of the expiration and termination of this Agreement, and shall use reasonable efforts to cooperate with the Property Owner to accomplish an orderly transfer of the operation and management of the Project to a party designated by the Property Owner. The Property Manager shall receive its monthly Property Management Fee for such services. The Property Manager shall, at its cost and expense, promptly remove all signs wherever located indicating that it is the Property Manager and replace and repair any damage resulting therefrom. Termination of this Agreement shall not release either party from liability for failure to perform any of the duties or obligations as expressed herein and required to be performed by such party for the period prior to the termination.

       10.5   <u>Debts and Obligations of the Property Owner</u>. In the performance of its duties hereunder, the Property Manager and its affiliates, shall act on behalf of the Property Owner solely in their capacity as the Property Owner's agent. All debts and obligations to third parties incurred by the Property Manager or its affiliates, in relation to the Project, shall be the debts and obligations of the Property Owner, and neither the Property Manager, nor its affiliates, shall be liable for, and shall be indemnified by, the Property Owner for any such debts, liabilities or obligations. The Property Manager and its affiliates shall have no obligation or responsibility to make payments with their own funds on any indebtedness incurred on behalf of the Property Owner or the Project, whether secured by the Project, or any portion thereof. Furthermore, this Agreement shall not be terminated by the Property Owner until all existing debts, liabilities and obligations arising out of any loan or the payment for goods or services on behalf of the Project are paid in full or assumed by a successor property manager; any guarantees entered into or made by the Property Manager, its affiliates, principles or officers on behalf of the Project are extinguished; and all fees owed to the Property Manager and its affiliates have been paid in full.

       11.   <u>Conflicts</u>. The Property Manager shall not deal with or engage, or purchase goods or services from, any subsidiary or affiliated company of the Property Manager in connection with the management of the Project for amounts above market rates.

       12.   <u>Notices</u>. All notices, demands, consents, approvals, reports and other communications to the Property Owner as provided for in this Agreement shall be in writing and shall be given to the Property Owner as set forth below, or at such other address as they may specify hereafter in writing. All notices, demands, consents, approvals, reports, and other communications to the Property Manager provided for in this Agreement shall be in writing and shall be given to the Property Manager at the address set forth below or at such other address as it may specify hereafter in writing:

To the Property Manager at:

Zurc Capital, LLC
30 N. Gould St. Suite N
Sheridan, WY 82801
Attention: General Administrator

<br>

EXHIBIT A
PAGE 10 OF 14

Exhibit 62 p. 105

To the Property Owner:

Ryan D. Gabriel
2000 Blacktail Road, #1140
Lakeside, MT 59922

Any notice or other communication that is not emailed may be delivered by a recognized overnight delivery service providing a receipt, facsimile transmission or mailed by United States registered or certified mail, return receipt requested, postage prepaid if deposited in a United States Post Office or depository for the receipt of mail regularly maintained by the post office. Notices sent by overnight courier shall be deemed given one (1) business day after mailing; notices sent by registered or certified mail shall be deemed given two (2) business days after mailing; and notices sent by facsimile transmission shall be deemed given as of the date sent (if sent prior to 5:00 p.m. MT and if receipt has been acknowledged by the operator of the receiving machine). Notices sent via e-mail shall be deemed given as of the date sent (if sent prior to 5:00 p.m. MT and if the Property Manager does not receive a "bounce back" notice that the e-mail transmission was not completed).

13.    Miscellaneous.

13.1    Assignment. The Property Manager may not assign this Agreement without the prior written consent of the Property Owner, which consent may be withheld in the Property Owner's sole and absolute discretion, except with respect to an assignment to an affiliate, including, but not limited to a wholly-owned subsidiary, which shall be permissible under this Agreement.

13.2    Gender. Each gender shall include each other gender. The singular shall include the plural and vice-versa.

13.3    Amendments. Each amendment, addition or deletion to this Agreement shall not be effective unless approved by the parties in writing, except as otherwise provided herein.

13.6    Governing Law; Venue. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Wyoming without regard to any choice of law rules. Any action relating to or arising out of this Agreement shall be brought only in a court of competent jurisdiction located in Montana where the property is involved directly, or otherwise Wyoming.

13.7    Headings. All headings are only for convenience and ease of reference and are irrelevant to the construction or interpretation of any provision of this Agreement.

13.8    Representations. The Property Manager represents and warrants that it is or shall become fully qualified and licensed, to the extent required by applicable Law, to manage and lease real estate and perform all obligations assumed by the Property Manager hereunder. The Property Manager shall use reasonable efforts to comply with all such laws now or hereafter in effect. If at any time it is determined that the Property Manager does not have all applicable licenses or qualifications, the Property Manager shall be given a reasonable opportunity to cure such deficiency by obtaining any required licenses or permits.

13.9    Indemnification by Property Manager. The Property Manager shall indemnify, defend and hold the Property Owner and its shareholders, officers, directors, members, partners and employees harmless

from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including reasonable attorneys' fees and court costs, sustained or incurred by or asserted against the Property Owner where it is determined by final judicial determination that such loss, cost or expense was the result of the acts of the Property Manager which arise out of the gross negligence, willful misconduct or fraud of the Property Manager, its agents or employees or the Property Manager's material breach of this Agreement. If any person or entity makes a claim or institutes a suit against the Property Owner on a matter for which the Property Owner claims the benefit of the foregoing indemnification, then (a) the Property Owner shall give the Property Manager prompt notice thereof in writing; (b) the Property Manager may defend such claim or action by counsel of its own choosing provided such counsel is reasonably satisfactory to the Property Owner; and (c) neither the Property Owner nor the Property Manager shall settle any claim without the other's written consent.

      13.10   <u>Indemnification by the Property Owner.</u> The Property Owner shall indemnify, defend and hold the Property Manager and its shareholders, members, partners, officers, directors, managers and employees harmless from any and all claims, demands, causes of action, losses, damages, fines, penalties, liabilities, costs and expenses, including reasonable attorneys' fees and court costs, sustained or incurred by or asserted against the Property Manager by reason of the operation, management, and maintenance of the Project and the performance by the Property Manager of the Property Manager's obligations under this Agreement, except those which arise from the Property Manager's gross negligence, willful misconduct or fraud. If any person or entity makes a claim or institutes a suit against the Property Manager on matters for which the Property Manager claims the benefit of the foregoing indemnification, then (a) the Property Manager shall give the Property Owner prompt notice thereof in writing; (b) the Property Owner may defend such claim or action by counsel of its own choosing provided such counsel is reasonably satisfactory to the Property Manager; (c) neither the Property Manager nor the Property Owner shall settle any claim without the other's written consent; and (d) this subsection shall not be so construed as to release the Property Owner or the Property Manager from any liability to the other for a breach of any of the covenants agreed to be performed under the terms of this Agreement.

      13.11   <u>Complete Agreement.</u> This Agreement shall supersede and take the place of any and all previous agreements entered into between the parties with respect to the Project.

      13.12   <u>Severability.</u> If any provisions of this Agreement or application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement, where the application of such provisions or circumstances other than those as to which it is determined to be invalid or unenforceable shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

      13.13   <u>No Waiver.</u> The failure by any party to insist upon the strict performance of, or to seek remedy of, any one of the terms or conditions of this Agreement or to exercise any right, remedy, or election set forth herein or permitted by law shall not constitute or be construed as a waiver or relinquishment for the future of such term, condition, right, remedy or election, but such item shall continue and remain in full force and effect. All rights or remedies of the parties specified in this Agreement and all other rights or remedies that they may have at law, in equity or otherwise shall be distinct, separate and cumulative rights or remedies, and no one of them, whether exercised or not, shall be deemed to be in exclusion of any other right or remedy of the parties.

Exhibit 62 p. 107

13.14   Binding Effect. This Agreement shall be binding and inure to the benefit of the parties and their respective successors and assigns.

13.15   Counterparts. This Agreement may be executed in several counterparts, which when executed shall constitute one Agreement, binding on all of the parties hereto, notwithstanding that all of the parties are not signatory to the original or the same counterpart.

IN WITNESS WHEREOF the parties hereby execute this Agreement to be effective as of the date set forth above.

PROPERTY MANAGER:

Zurc Capital, LLC
30 N. Gould St. Suite N
Sheridan, WY 82801

By: _RYAN D. GABRIEL_

Name: _____

Title: _MANAGING MEMBER_

PROPERTY OWNER:

Ryan Gabriel
2000 Blacktail Road #1140
Lakeside, MT 59922

By: _____

EXHIBIT A
PAGE 13 OF 14

Exhibit 62 p. 108

SCHEDULE 1

FEES TO PROPERTY MANAGER & AFFILIATES

The Property Manager and its Affiliates will receive the following compensation:

- **Property Management Fee.** The Property Manager, or an affiliate, shall receive, for its services in managing the day-to-day operations of the Project in accordance with the terms of this Agreement, an annual property management fee (the "Property Management Fee") equal to 3.5% of the Gross Revenues (as defined below) and prorated for any partial year, payable in monthly installments, which Property Management Fee shall be in addition to any out-of-pocket and on-site personnel costs that are reimbursable pursuant to Section 7. "Gross Revenues" shall be all gross billings from the operations of the Project including rental receipts, late fees, application fees, pet fees, damages, lease buy-out payments, and reimbursements by tenants for common area expenses, operating expenses and Taxes and similar pass-through obligations paid by tenants, but excluding (i) security deposits received from tenants and interest accrued thereon for the benefit of the tenant until such deposits or interest are included in the taxable income of the Property Owner; (ii) advance rents (but not lease buy-out payments) until the month in which payments are to apply as rental income; (iii) reimbursements by tenants for work done for that particular tenant, (iv) proceeds from the sale or other disposition of all or any part of the Project, (v) insurance proceeds received by the Property Owner as a result of any insured loss (except proceeds from rent insurance or the excess of insurance proceeds for repairs over the actual costs of such repairs), (vi) condemnation proceeds not attributable to rent, (vii) capital contributions made by the Property Owner; (viii) proceeds from capital, financing and any other transactions not in the ordinary course of the operation of the Project, (ix) income derived from interest on investments or otherwise, (x) abatement of Taxes, awards arising out of takings by eminent domain, discounts and dividends on insurance policies, and (xi) rental concessions not paid by third parties. The Property Management Fee shall be payable monthly from the Operating Account or from other funds timely provided by the Property Owner. Upon termination of this Agreement, the parties will prorate the Property Management Fee on a daily basis to the effective date of such cancellation or termination. Upon a sale of the Project, the Property Manager shall receive additional compensation equal to the previous month's Property Management Fee as compensation for work to be performed in connection with the sale or completion of managing matters relating to each tenant. The Property Management Fee will be paid monthly in arrears.

Exhibit 62 p. 109

**From:** Montana Real Estate Group <mtreg@cyberport.net>
**Sent:** Wednesday, July 24, 2024 2:43 PM
**To:** Kai Groenke <kai@familylawflathead.com>
**Subject:** FW: Gabriel and Olsen

Just received this but didn't see you were sent a copy.
FG

Montana Real Estate Group
(406) 250-5151 Fritz Cell
(406) 837-6000 Office



**From:** George W. Kelly [mailto:georgewkelly@gmail.com]
**Sent:** Wednesday, July 24, 2024 2:14 PM
**To:** Andrew Newsom <anewsom@holteylaw.com>
**Cc:** Jesse Olsen <jesse.m.olsen@gmail.com>
**Subject:** Re: Gabriel and Olsen

Andrew,

I can well appreciate that Ryan would like to further delay the listing. But Jesse is not in agreement. Given this morning's decision from the judge, Jesse insists that: (1) Ryan immediately, get him the missing key to the Portland residence (there apparently are two locks on the door and Ryan has given Jesse the key to only one of the locks); and (2) Ryan immediately make the Montana home available to the realtor so that the property can be listed. Of course, listing is not the same as selling. So, if settlement is seriously being considered, Ryan should be able to prevent a sale if he acts quickly. From Jesse's perspective, Ryan has already had 60 days to do something (the original judgment having been entered in May) and nothing has yet been done. Also, prime selling season is *now*. I can't imagine that Montana homes are as readily marketed in the fall/winter.

-- George


On Wed, Jul 24, 2024 at 9:23 AM Andrew Newsom <anewsom@holteylaw.com> wrote:
Hi George:

I understand the judge's oral ruling today, but I still suggest that it's not going to benefit your client to immediately move forward with the listing or sale of the Montana residence. We have a real chance at resolving this mess. I think it may become a lot harder to resolve if we have to deal with continued visits to Mr. Gabriel's residence and all the rest. I think we will know if we

can resolve the case within a week or two, so it seems especially unwise to risk it. Of course, as it stands, it is Mr. Olsen's decision.

Andrew

**Andrew W. Newsom** | *Partner*

**Holtey Law LLC** | [www.holteylaw.com](www.holteylaw.com)

1140 SW 11th Avenue, 4th Floor | Portland, OR 97205

T. 503.224.9878 | [teamnewsom@holteylaw.com](teamnewsom@holteylaw.com)

Confidentiality Notice: This e-mail transmission may contain confidential and privileged information.  Unless you are the addressee (or authorized to receive messages for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message.  If you have received this message by mistake, please advise the sender by reply e-mail and delete this message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document.  Thank you.

Please note that our office no longer sends or receives faxes

1   **Ryan Dean Gabriel,** *Pro Se*
    2000 Blacktail Road, #1140
2   Lakeside, MT 59922
    Telephone: (206) 391-9886 m.
3   rgabriel@zurccapital.com

4
                    **UNITED STATES DISTRICT COURT FOR THE**
5                        **DISTRICT OF MONTANA**
                            MISSOULA DIVISION
6

7   RYAN DEAN GABRIEL,                    )        Civil No. _____

8              Plaintiff,                 )
                                                   **COMPLAINT AND CLAIM /**
9      vs.                                )        **PRAYER FOR DECLARATORY**
                                                   **AND INJUNCTIVE RELIEF**
10  DORINDA SUE GRAY, INSURED             )
11  TITLES, LLC /DBA INSURED TITLES,
    TITLE INSURANCE CORPORATION           )
12  /DBA INSURED TITLES, TAYLOR KAI
    GROENKE, and FREDERICK J. "FRITZ"     )
13  GROENKE /DBA MONTANA REAL
    ESTATE GROUP,                         )
14
15             Defendants.                )

16  -------------------------------------------------------)

17
            Plaintiff Ryan Dean Gabriel brings this Complaint against the above-named Defendants,
18
19  and states the following in support thereof:

20              **PRELIMINARY STATEMENT AND FACTUAL BACKGROUND**

21          1.      On August 13, 2024, and August 14, 2024, Defendant Dorinda Sue Gray ("M/r/s.

22  Gray"), acting on her own behalf and under the authority of her employer, Insured Titles, LLC

23  /dba Insured Titles, a subsidiary of Defendant Title Insurance Corporation, sent a series of e-mail

24  messages to Defendant Frederick "Fritz" Groenke ("Mr. Groenke") in which M/r/s. Gray

25  knowingly colluded with Mr. Groenke to illegally remove Plaintiff Ryan Dean Gabriel ("Mr.

26  Gabriel") from the title and deed to his permanent residence and home, located at 2000 Blacktail

27  Road in Lakeside, MT 59922.   Specifically, M/r/s. Gray suggested that Mr. Groenke seek

28

# CERTIFICATE OF SERVICE

I, Susan G. Ridgeway, hereby certify that I have served true and accurate copies of the foregoing Notice - Notice to the following on 11-19-2024:

Alan F. McCormick (Attorney)
PO Box 7909
350 Ryman St.
Missoula MT 59807
Representing: Frederick J Groenke
Service Method: eService

Kevin Scott Jones (Attorney)
2625 Dearborn Ave., Ste. 102A
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Remy James Orrantia (Attorney)
2625 Dearborn Ave., Ste. 102
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Joseph David Houston (Attorney)
2625 Dearborn Avenue, Ste. 102A
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Ryan Dean Gabriel (Petitioner)
2000 Blacktail Rd. Box 1140
Lakeside MT 59922
Service Method: Email

Electronically signed by Donna Allen on behalf of Susan G. Ridgeway
Dated: 11-19-2024

FILED
11/19/2024
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Maria Albarran
DV-15-2024-0001197-TO
Allison, Robert B
38.3

"allocation of proceeds and a quit title action from the courts removing [Plaintiff] Ryan from the property.  Please advise." (*See* **Exhibit 27**, attached here).

2.      Previously, on July 26, 2024, at 3:56pm MST, Plaintiff Mr. Gabriel spoke directly to Defendant Dorinda Sue Gray, on a recorded call, in which M/r/s. Gray emphatically reassured Mr. Gabriel that it was "impossible" for him to be removed from the title to his permanent home "without you signing the Warranty Deed", further reassuring Plaintiff that "title theft" as heard on radio advertisements for Home Title Lock™ were "not really a thing", and that Mr. Gabriel "would be made aware of any attempts to remove [him] from title by the title company [Defendant Insured Titles, LLC /dba Insured Titles]".  Simultaneously, Defendant M/r/s. Gray was secretly and proactively coordinating with Defendant Frederick "Fritz" Groenke to explore creative ways of removing Mr. Gabriel from the title to his own permanent residence, ostensibly so that Mr. Groenke could list and sell the property out from underneath him. (*See* **Exhibit 27**, attached here).

3.      Prior, on or around July 23, 2023, Federick "Fritz" Groenke, a notorious local realtor and alleged biological father of a local attorney, Defendant Taylor "Kai" Groenke, listed Plaintiff Mr. Gabriel's permanent residential home and own real property at 2000 Blacktail Rd. in Lakeside, MT 59922 – without his consent – on Zillow.com, Redfin.com, Realtor.com and elsewhere, via Montana Regional MLS, LLC (among other avenues), by invoking an Oregon lower court judgment.  This Amended General Judgment has been the subject of an Oregon trial court Stay by Supersedeas Undertaking since prior to the time of the listing in question, and which is currently pending in the Oregon Court of Appeals.  (*See* **Exhibit 2**, attached).

4.      Defendant Frederick "Fritz" Groenke did not have legal authorization to list the property at the time of its listing on July 23, 2024, nor at the time of the subsequent temporary withdrawal and re-listing weeks later, and he was advised as much by Mr. Gabriel's Oregon attorney (Andrew Newsom, Partner – Holtey Law Firm).  Mr. Groenke listed it anyway, in active coordination with Defendant M/r/s. Gray, who acted under the authority of Defendant Insured

Titles, LLC.  (*See* **Exhibit 3**, attached).  The above sequence of events has precipitated the need for the instant Complaint and Claim for Declaratory and Injunctive Relief by this Federal Court.

## **PARTIES**

5.      Plaintiff, RYAN DEAN GABRIEL (hereinafter referred to as 'Mr. Gabriel') at all times relevant hereto, is an individual residing at 2000 Blacktail Road, Lakeside, Montana 59922.

6.      Defendant, DORINDA SUE GRAY acting through her employer, INSURED TITLES, LLC /DBA "INSURED TITLES", licensed and vested with the powers of the State of Montana to record, strike, perpetuate and assist with the enforcement of real property title is subject to the personal jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(2)(A) and (B). At all times relevant hereto, Defendant DORINDA SUE GRAY is/was acting under color of law, and resides at 802 Columbia Ave., Whitefish MT 59937.

7.      Defendant, INSURED TITLES, LLC /DBA "INSURED TITLES", licensed and vested with the powers of the State of Montana to record, strike, perpetuate and assist with the enforcement of real property title in Montana and Idaho is subject to the personal jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(2)(A) and (B).  At all times relevant hereto, Defendant INSURED TITLES, LLC / DBA INSURED TITLES is/was acting under color of law, and is located at 1724 Fairview Missoula, Montana 59801.

8.      Defendant, TITLE INSURANCE CORPORATION /DBA "INSURED TITLES", is the parent company of INSURED TITLES, LLC /DBA "INSURED TITLES", and is licensed and vested with the powers of the State of Montana to record, strike, perpetuate and assist with the enforcement of real property title in Montana and Idaho is subject to the personal jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(2)(A) and (B).  At all times relevant hereto, Defendant TITLE INSURANCE CORPORATION is/was acting under color of law, and is located at 195 South Broadway, PO Box 580, Blackfoot, ID 83221.

9.     A third party, Zurc Capital, LLC (hereinafter referred to as 'Zurc') at all times relevant hereto, is a duly formed limited liability corporation of the State of Wyoming, located at 20 N. Gould Street, Suite N, Sheridan, Wyoming 82801.

10.    Defendant, FREDERICK "FRITZ" J. GROENKE /dba MONTANA REAL ESTATE GROUP (hereinafter "Mr. Groenke") at all times relevant hereto, is:

(a)    a self-described real estate broker doing business under the laws of the State of Montana, the assumed name certificate for which is currently active, and who asserts authorization to do business under the alleged license #RRE-BRO-LIC-1435 in this State of Montana, and thus is subject to service of process pursuant to the laws of the State of Montana. (*See* **Exhibit 24**, attached).

(b)    an adult citizen of the State of Montana who resides at 246 Flathead Lake Place, Bigfork, MT 59911, does business from 553 Electric Ave., Bigfork, MT 59911 and is subject to service of process pursuant to the laws of the State of Montana.

11.    Defendant, TAYLOR KAI GROENKE (hereinafter "M/r/s. Groenke") at all times relevant hereto, is:

a)     a licensed, active Montana State Bar Association member and self-described family law attorney doing business under the laws of the State of Montana under the name "Law Office of Kai Groenke", in this State of Montana, and thus is subject to service of process pursuant to the laws of the State of Montana.

b)     an adult citizen of the State of Montana who resides at 12 Whitetail Meadows Road, Kalispell, MT, and does business from 239 2nd Street West in Kalispell, MT 59901 and is subject to service of process pursuant to the laws of the State of Montana.

12.    A third party, GROENKE HOLDINGS, LLC, at all times relevant hereto, is the holding company through which liability insurance, business licensing and other registration

Exhibit 63 p. 004

activities are conducted by Defendant TAYLOR KAI GROENKE (i.e., it is M/r/s. Groenke's *alter ego*), does business at 239 2nd Street West in Kalispell, MT 59901 and is subject to service of process pursuant to the laws of the State of Montana. (*See* **Exhibit 25**, attached).

13.    A third party, MONTANA REGIONAL MLS, LLC, is the listing service provider and authority through which Plaintiff Mr. Gabriel's permanent residence was improperly and fraudulently listed, does business from 1517 S. Reserve St., Missoula, MT 59801, its CEO is Justin Ponton (hereinafter "Mr. Ponton"), and is subject to service of process pursuant to the laws of the State of Montana. (*See* **Exhibit 26**, attached).

14.    A third party, JESSE MARK OLSEN ("Mr. Olsen") is a co-owner of Plaintiff Mr. Gabriel's permanent residence at 2000 Blacktail Road in Lakeside, MT 59922, is listed as tenants in common on the property with Mr. Gabriel and who also has 50/50 title to the property. Mr. Olsen, at all times relevant hereto, is an adult citizen of the State of Oregon who resides at 650 S. Gaines Street, Unit 1914, Portland OR 97239.

15.    A third party, Roscoe C. Nelson, Jr. (hereinafter referred to as 'Mr. Nelson'), doing business as sole proprietorship 'Nelson & Nelson', at all times relevant hereto, is a lawyer and non-incorporated business (sole proprietorship) doing business under the laws of the State of Oregon, the assumed name certificate for which has been revoked since February 23, 2023, and is also an adult citizen of the State of Oregon who resides at 2903 SW Fairview Boulevard, Portland, Oregon 97205.  Mr. Nelson represents third party Mr. Olsen in Oregon.

**JURISDICTION AND VENUE**

16.    This action arises under the U.S. Constitution, 42 U.S.C. § 1983.

17.    This Court has subject matter jurisdiction pursuant to Article III of the U.S. Constitution and 28 U.S.C. §§ 1331, because this case arises under the Fourteenth Amendment to the United States Constitution and because Plaintiff Mr. Gabriel seeks redress of his civil rights under 28 U.S.C. § 1343.

18.     This Court is empowered by 28 U.S.C. §§ 2201 and 2202 to grant declaratory as well as other forms of relief, including permanent injunctive relief, necessary to remedy the alleged constitutional violations.

19.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

20.     Venue of this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims have and continue to occur in this district and Plaintiff and Defendants are in the State of Montana.  Assignment to the Missoula Division is proper because Plaintiff is a permanent resident of Flathead County, Montana.

## FACTUAL BACKGROUND (CONTINUED)

21.     Defendant Mr. Groenke was officially provided notice on August 23, 2024, by the Northwest Montana Association of REALTORS ("NMAR") that his actions were the subject of a disciplinary hearing.  NMAR wrote, "The Grievance Committee Panel met August 21, 2024, to review the complaint and, after full and careful consideration, referred the ethics complaint alleging a violation 1, 3 and 12 to the Professional Standards Committee for a hearing. Please see a copy of Grievance Committee Report attached (Form #E-5.1)." (*See* **Exhibit 28**, attached).

22.     Plaintiff Mr. Gabriel had previously submitted that ethics complaint following a sequence of events in which Mr. Groenke was preparing an illegal listing of his property, which Mr. Gabriel became aware of on July 23, 2024.  That same day, Mr. Gabriel also witnessed the electronic gate that Mr. Groenke forcibly broke by forcing his way through it, along with the unauthorized listing of Mr. Gabriel's property, accompanied by the misleading and far-outdated photos from 2019 that Mr. Groenke illegally used in his listing – photos that still belong to Cecil Waati, another local realtor.  (*See* **Exhibit 11**, attached).

23.     According to local Defendant Taylor "Kai" Groenke, her client, Jesse Mark Olsen (hereinafter "Mr. Olsen") had previously hired Frederick "Fritz" Groenke, the alleged biological father of Taylor "Kai" Groenke, to attempt to sell Plaintiff Mr. Gabriel's permanent residence.

Montana Regional MLS, LLC, then listed the real property at 2000 Blacktail Road, Lakeside, MT 59922 for sale and the property is now under contract, as of August 9, 2023.  This was done without Plaintiff Mr. Gabriel's consent, and with the lower court Stay (Supersedeas Undertaking) still in place.  (*See* **Exhibit 26** *and* **Exhibit 3**, attached).

24.    Mr. Gabriel filed supersedeas undertakings in the trial court file on July 2 and July 7, 2024. The undertakings include the following language: "appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses and has access to the property, and the appellant will pay the value of the use and occupation of the property, in addition to half of the maintenance costs, for the period of possession if the judgment is affirmed." The undertakings also stated a proposed value for the use/occupation of the property. Under Oregon law, ORS 19.335 (2), "If a judgment requires the transfer or delivery of possession of real property, a supersedeas undertaking acts to stay the judgment if the undertaking provides that the appellant will not commit waste or allow waste to be committed on the real property while the appellant possesses the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed. The value of the use and occupation during the period of possession must be stated in the undertaking." (*See* **Exhibit 17** *and* **Exhibit 3**, attached).

25.    Accordingly, the Oregon judgment is automatically stayed by the filing of the supersedeas undertakings, and no one has authority to list the Montana residence for sale during the period in which the supersedeas undertaking Stay is in place.  (*See* **Exhibit 17**, attached).

26.    Compounding the illegal and/or extralegal listing of Plaintiff Mr. Gabriel's property and permanent residence (2000 Blacktail Road, Lakeside, MT 59922), Defendant Frederick "Fritz" Groenke illegally impersonated another realtor (Michelle Thomson), deliberately using her signature and then substituting her 'Reply' address ('michellethomson.bigfork@gmail.com') with his own ('mtreg@cyberport.net').  **Mr. Groenke**

**then attempted to walk back the attempted fraudulent conveyance, actions described by Kaaren Winkler, MPA, RCE, CAE and Chief Executive Officer of the Montana Association of REALTORS as "serious", "troubling" and "severe"**. (Emphasis added.) (*See* **Exhibit 1** and **Exhibit 19**, attached).

27.    In other words, on August 3, 2024, at approximately 4pm MST, Defendant Frederick "Fritz" Groenke impersonated another realtor, Michelle Thomson (a federal, state and local crime), in the process of committing numerous other felonies, including illegal trespass (under Montana Penal Code 45-6-203), vandalism, breaking and entering and harassment, among other crimes.  These actions also constitute rank violations of Article 1 & Article 3 of the National Association of Realtors (NAR) Code of Ethics:  Unauthorized Access to Property, SOP 1-16 and 3-9. (*See* **Exhibit 1** *and* **Exhibit 18**, attached).

28.    Mr. Groenke is also illegally using misleading and outdated photographs that are owned by another local realtor, Cecil Waati, for which he did not receive permission and which wildly misrepresent the property in its present state.  For example, the entire kitchen in the 2nd cabin is being gutted by a restoration company for an insurance claim caused by leaking fittings underneath the kitchen sink and adjacent bathroom sink.  The entire floor is torn out, along with the kitchen cabinetry and appliances, and that project is not scheduled to be completed until early November 2024 (photos attached of the mitigation underway). In addition, the mitigation company has tested for mold and the entire sub-floor between the kitchen in the 2nd Cabin and the Garage was plastered with toxic mold, and so the entire lower ceiling has been gutted and will be drying out for weeks.  (*See* **Exhibit 14**, attached).

29.    Compounding matters, the insurance company has stated it will not continue to reimburse any repairs or claims that stem from the water leakage incident if the property is pending a contractual sale.  Beyond these issues, insurance coverage for the property was dropped in January 2024 due to the water leakage incident, and so any prospective buyer will

Exhibit 63 p. 008

1   not have continuity of insurance coverage as a result of these damages, dramatically lowering

2   the purchase/sale price of the property under the current conditions (leaving aside the fact that

3   Mr. Gabriel currently resides at the property and it is his permanent home).  (*See* **Exhibit 15**,

4   attached).

5

6          30.     Furthermore, the aerial photos published on the listing are fraudulent in the sense

7   that the 'wilderness' photos are now fully developed properties. Finally, there is a 3' X 3' square

8   hole in the pump house ceiling which was cut to allow a crane to access and fix the well pump.

9   (*See* **Exhibit 14**, attached).

10          31.     Not only does this act constitute substantive fraud and misrepresentation, but the

11   listing is also a clear violation of the National Association of Realtors (NAR) Code of Ethics

12   Article 12:  Displays of Competitor's Content and Listings.  (*See* **Exhibit 1**, attached).

13

14          32.     Michael Ponton, CEO of the Montana Regional MLS, was made aware of the

15   correspondence from Plaintiff Mr. Gabriel's Oregon attorney, Andrew Newsom, which stated

16   that at the time of the listing in question an active Court stay (supersedeas undertaking) was in

17   place on a judgment that Fritz Groenke purported to rely on to justify the illegal listing.  That

18   listing has never been taken down, and the court stay is still in place.  (*See* **Exhibit 3**, attached).

19          33.     The full forwarded e-mail exchange incriminating Mr. Groenke in the above is

20   attached as Exhibit 1.  (*See* **Exhibit 1**).

21

22          34.     Previously, on Friday, July 19, 2024, counsel for Oregon resident Mr. Olsen,

23   Taylor "Kai" Groenke ("M/r/s. Groenke") filed for a Temporary Petition for Protective Order

24   with the Justice Court of the State of Montana (Flathead) before Hon. Paul Sullivan, Justice of

25   the Peace.  In this Protective Order, Taylor "Kai" Groenke sought a ruling that would require

26   Plaintiff Mr. Gabriel "shall stay at least 2,500 feet from … 2000 Blacktail Road, Lakeside, MT

27   59922" – which happens to be Mr. Gabriel's permanent residence and home, and which he owns,

28   has title to, and lives in.  (*See* **Exhibit 4**, **page 2**, attached).  M/r/s. Groenke's husband is David

C. Dowell, who happens to work for the Flathead County Probation and Parole office, which in turn works closely with Hon. Paul Sullivan's Justice Court.  In other words, M/r/s. Groenke is trying to use her husband's connections adjacent to Hon. Paul Sullivan, Justice of the Peace, and the Flathead County Justice Court, to evict Plaintiff Mr. Gabriel from his own home ostensibly so that her father, Frederick "Fritz" Groenke (a realtor) can sell it out from underneath Mr. Gabriel for some undisclosed commission.  (*See* **Exhibit 4**, attached).

35.   Ultimately, Defendant M/r/s. Groenke did not succeed in securing Plaintiff Mr. Gabriel's eviction from his own home by means of her sought-after Protective Order.  That effort having failed, Defendant Taylor "Kai" Groenke then dramatically escalated matters yet further by demanding the local District Court (Flathead County, Montana) "**impose criminal sanctions upon Ryan, including incarceration, for the protection of the public, Jesse, his attorneys, the realtors, potential buyers, the home inspectors, and any other person who may need access to the real property [Plaintiff Mr. Gabriel's permanent residence at 2000 Blacktail Road in Lakeside, MT 59922] or is otherwise involved in the marketing and sale of the property. (…) Ryan should be incarcerated until such time as the sale of the property closes. (…) Finally, Ryan will be more easily served with process and documents as a resident of Flathead County Jail until the transaction can be completely closed.**" (Emphasis added.) (*See* **Exhibit 29**, attached).

36.   Rewinding back to the origin of this ongoing Complaint: On March 22, 2022, Oregon resident Jesse Mark Olsen ("Mr. Olsen"), by and through his attorney Roscoe C. Nelson, Jr. (III) ("Mr. Nelson"), filed a civil family lawsuit in Multnomah County, Oregon (Case No. 22DR04942), against Plaintiff Ryan Dean Gabriel ("Mr. Gabriel") alleging that Mr. Gabriel and Mr. Olsen were "spouse[s]" having entered into an implied "domestic partnership" or "marriage" for 12 years starting in 2010, seeking dissolution of the alleged unregistered domestic partnership.

37.     That lawsuit is pending appeal, and the injuries created by the lawsuit are ongoing. The initiation of injuries substantially began when Plaintiff Mr. Gabriel's *'Motion to Dismiss'* was denied by the local Circuit Court on August 16, 2022, and injuries became more acute and compounded when Plaintiff Mr. Gabriel's *'Special Motion to Strike'* was denied by the local Circuit Court on April 19, 2023.  Trial was held on January 26, 2024, and February 14, 2024, an Order was issued by the trial Court on April 17, 2024.  An Amended General Judgment was ultimately entered on May 23, 2024, and a stay was issued on that judgment on July 7, 2024.

38.     Mr. Olsen through his attorney has since backpedaled these allegations as discovery and the trial has unfolded, now asserting that Mr. Gabriel and Mr. Olsen were merely in an unregistered domestic partnership per Oregon's controversial *'Beal v. Beal'*[1] case law precedent, even though Oregon is neither a common law marriage state nor a "community property" jurisdiction.  The local court under Hon. Judge Patrick Henry appeared to walk the core claims back yet further, suggesting that mere temporary cohabitation may be the central question, stating to Mr. Gabriel at trial, "You seem to be preoccupied with the term 'domestic partnership'.", but still ruled that the parties were in an unregistered domestic partnership.

39.     Prior to receipt of Mr. Olsen's *'Summons'*, which began with the proclamation, "Your spouse has filed a Petition asking for a dissolution of your marriage", Mr. Gabriel had not ever once considered the viability of anything resembling "unregistered domestic partnership" laws in Oregon, which does not recognize common law marriage, is not a community property state, and in which he does not reside.  Mr. Gabriel has been a resident of Montana since Feb. 2021, and prior to that was a resident of Washington State, stretching back to 2001.

40.     Mr. Gabriel has a Montana Drivers' License, files his taxes in Montana, has a Montana vehicle license, and his employers from 2002 onwards have only known him to reside

---

[1] In *'Beal v. Beal'*, 282 Or. 115, 577 P.2d 507 (Or. 1978), the Oregon Supreme Court ruled that the property of unmarried cohabitants should be equitably distributed according to the parties' intent, rather than by title or possession.

Exhibit 63 p. 011

in Washington State and Montana. All payroll taxes and employment-related taxes for Mr. Gabriel have been paid to and recorded in Washington State and Montana since 2002 to present, and Mr. Gabriel has only been eligible for unemployment and other related state benefits in Washington State and Montana since 2002 to present. Additionally, Mr. Gabriel has only ever voted in Washington State and Montana since 2002 and has never held an Oregon State identification card, nor an Oregon vehicle license plate. Mr. Gabriel categorically denies being married to Mr. Olsen, nor ever once signaling his intent to enter into a domestic partnership under Oregon law, including *'Beal v. Beal' Id.,* which appears to have no limiting principles.

41.    While Mr. Olsen and his attorney Mr. Nelson have not yet cited any specific case law precedent in any of their filings with the Multnomah County Circuit Court, the trial Court (Hon. Judge Henry) cited *'Beal v. Beal'* and its progeny comprise the precedent case law which could plausibly support Mr. Olsen's alleged domestic partnership claims. The precedent set by *'Beal v. Beal'* has been from the outset a controversial, activist workaround to enable Oregon courts to break with a previous, longstanding "clean hands" doctrine, giving litigants and judges a *de facto* common law marriage and dissolution construct, even though the litigators in these cases go to great lengths to deny that the parties are involved in any common law marriage. Notably, *'Beal v. Beal'* exists 100% outside of Oregon Statutory Law, and has never been reconciled with Oregon legislative statutes, precisely because doing so would precipitate a legal crisis in Oregon. In other words, *'Beal v. Beal'* is quasi-extralegal case law precedent.

42.    Abuse of this extralegal Oregon case law by the Defendants using local Montana District courts, its vested powers as title agents, and Montana State Bar Association licensed trial lawyers has and will continue to have devastating consequences for Mr. Gabriel and any other unwitting party to an alleged claim of implied or unregistered domestic partnership with real property in Oregon. Among other things, disproving such an allegation requires tremendous expense, time, resources, and outrageous violations of personal privacy.

Exhibit 63 p. 012

43.     Specifically, Mr. Olsen through his attorneys has stated that his goals are to: a) liquidate Mr. Gabriel's properties; b) evict Mr. Gabriel from his Montana home; c) swirl together the parties' previous real property contributions, inputs, labor, investments and incurred debts for purposes of 'dissolution'; d) nullify Mr. Gabriel's property management agreement with Zurc Capital, LLC, which affords Mr. Gabriel limited vacation rental income while he is traveling for work; and e) place Mr. Olsen in sole custody of two jointly owned properties while arranging their sale, including Mr. Gabriel's Montana residence; and f) divide the proceeds of all liquidated assets unequally and to the financial advantage of Mr. Olsen, which effectively would result in a massive wealth and balance sheet transfer from Mr. Gabriel to Mr. Olsen.  Defendant DORINDA SUE GRAY ("M/r/s. Gray") has proactively joined these efforts using the authorities vested in her by her employer, Defendant INSURED TITLES, LLC /DBA INSURED TITLES, for an undisclosed payment or commission. (*See* **Exhibit 27**, attached here.)

44.     The Defendants' reckless, uninformed abuse and extralegal enforcement of this controversial case law not only gravely threatens the financial well-being of Plaintiff Mr. Gabriel; it is also unconstitutional.  The construct of 'unregistered domestic partnership' in which one party (Mr. Gabriel) is unwittingly and forcibly conscripted into a *de facto* marital or domestic partnership contract in a state (Oregon) in which he does not reside and without his consent violates the Due Process Clause of the Fourteenth Amendment to the US Constitution, by depriving Mr. Gabriel his fundamental right to make decisions concerning his life, his future, his property and his residency.  In other words, the Due Process Clause of the Fourteenth Amendment gives all adult US citizens the "right not to marry"[2] via substantive due process, or ***not*** to otherwise be conscripted into a related construct (i.e., 'domestic partnership'), foiling any clever workarounds that may have been or may soon be invented by radical attorneys – with the assistance of activist judges – in creative jurisdictions such as Oregon. (Emphasis added.)

---

[2] Kaiponanea T. Matsumura, *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016).  Available at: https://ir.lawnet.fordham.edu/flr/vol84/iss4/11

Exhibit 63 p. 013

1

**<u>ARGUMENTS</u>**

2

**A.      The Right Not to Marry**

3

45.      In *'Obergefell v. Hodges'*[3] the Court held that "the right to marry is protected by

4

the Constitution" under the Due Process Clause. In its ruling, the majority gave four reasons for

5

6

this: (1) marriage is "inherent in personal autonomy", (2) marriage is a "union unlike any other

7

in its importance to" the parties, (3) the right to marry connects to the right to make decisions

8

about family, procreation, and childrearing, and (4) marriage is a "keystone of our social order".

9

46.      In the United States, many legal scholars and authorities subscribe to the notion

10

that the U.S. Constitution enshrines certain fundamental rights that arise by its express terms or

11

through implication. Today, the idea of fundamental rights is enforced through Section 1 of the

12

Fourteenth Amendment of the Constitution (*See* U.S. Const. amend. XIV, § 1), which reads:

13

14

> "*All persons born or naturalized in the United States and subject to the*

15

> *jurisdiction thereof, are citizens of the United States and of the State wherein they*

16

> *reside. No State shall make or enforce any law which shall abridge the privileges*

17

> *or immunities of citizens of the United States; nor shall any State deprive any*

18

> *person of life, liberty, or property, without due process of law; nor deny to any*

19

> *person within its jurisdiction the equal protection of the laws.*"

20

47.      The Supreme Court has contributed to this federalization of domestic relations

21

laws by "constitutionalizing" family law. It has repeatedly used the U.S. Constitution, in

22

particular the Fourteenth Amendment, to extend constitutional privacy protections to increasing

23

numbers of persons and to invalidate state laws in areas of law previously thought to be the

24

exclusive province of state legislatures and state courts.

25

26

48.      Furthermore, starting with '*Shelley v. Kraemer'*, 334 U.S. 1, 13 (1948), Federal

27

courts have clarified that State actions of a particular character are prohibited.  While individual

28

invasion of individual rights is not the subject-matter of the Fourteenth Amendment, it has a

---

[3] *Obergefell v. Hodges,* 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015)

Exhibit 63 p. 014

deeper and broader scope in that it nullifies and makes void all State legislation, and State action of every kind, including precedent case law, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws.

49.     The U.S. Supreme Court has interpreted the Constitution to recognize the existence of several fundamental rights that were not expressly stated, including an individual's right to marry.  As eloquently argued by Kaiponanea T. Matsumura in *'A Right Not to Marry'*, 84 Fordham L. Rev. 1509 (2016), "State actions that compel marriage can be seen as falling on a spectrum from minimal interventions, like creating legal incentives for people to marry (for example, by providing favorable inheritance, tax, evidence, and tort rules to married couples), to maximal ones (like requiring marriage between unwilling participants). These actions differ both in terms of the degree of coercion and the nature of state intervention."

50.     Matsumura continues, "Depending on which state actions the right not to marry would prevent, that right can also be understood as falling along a spectrum. For example, the recent framing of the right to marry in terms of "personal choice" and "individual autonomy" (*Obergefell*, 135 S. Ct. at 2597, 2599) leaves little doubt that the Fourteenth Amendment would recognize, at the very least, some right not to marry—it is unlikely that the state could pair off unmarried strangers and deem them legally married over their objection."

51.     Finally, Matsumura writes, "If the right not to marry is thought of as freedom from state-imposed marriage, the autonomy interests become symmetrical with the interests protected by the right to marry. Choosing to marry only takes on meaning because of the freedom to choose not to marry.  Although the state may prefer one choice over the other, the choice in either direction has the same valence from the perspective of self-definition and autonomy."

52.     Under Oregon statutory law, marriage and domestic partnerships are treated identically for the purposes of dissolution (*See* Oregon Revised Statutes, "ORS" Chapter 107 –

Exhibit 63 p. 015

1  '*Marital Dissolution, etc.*'), and also as evidenced by the repeated invocation of ORS Chapter

2  107 by the attorney for Mr. Olsen, Mr. Nelson, in his '*Summons*' and throughout his originally

3  served lawsuit on March 22, 2022.

4

5     53.    In *Zablocki v. Redhail*, 434 U.S. 374, 386 (1978), the court noted the importance

6  of "the decision to enter the relationship that is the foundation of the family in our society"). Thus,

7  the right not to marry (or in the instant case, not to be involuntarily conscripted into an Oregon

8  domestic partnership) is justified by an additional, related value.    In its purest form, the right

9  would entail freedom from state interference in "matters of family life" that are protected by the

10  Due Process Clause.  In safeguarding a range of related "intimate and personal" choices, the Court

11  has noted that "[b]eliefs about these matters could not define the attributes of personhood were

12  they formed under compulsion of the State." This concept of noninterference characterizes the

13  privacy rights recognized under the Due Process Clause.[4]  While the Obergefell majority's theory

14  of autonomy and identity envisions the right to marry moving in the direction of a positive right,

15  a negative right not to marry would still rest on more solid conceptual ground."[5]  All of these

16  arguments apply to some degree or another to the right to enter into a domestic partnership subject

17  to any state's laws, and inversely the right not to.

18

19     **B.     State Responses to '*Obergfell*'**

20     54.    Per Matsumura, "Despite their differences, nonmarital relationships—from

21  municipal registries, to state employment benefits, to state alternatives to marriage—all exist in

22  what Professor Douglas NeJaime has called a "dialogical relationship" with marriage[6]; these

23

24

25

___

[4] *See* Cass R. Sunstein, '*The Right to Marry*', 26 CARDOZO L. REV. 2081, 2089–94 (2005); note 20, at 2094 ("For the ordinary privacy rights with which marriage is associated, the Constitution requires governmental noninterference; it does not require the government to provide money, institutional arrangements, or anything else.")

[5] *See* Matsumura, '*A Right Not to Marry*', 84 Fordham L. Rev. 1509 (2016) notes 127–30 and accompanying text. (concluding that right to marry protects equal access to whatever rights a state elects to associate with marriage, rather than a positive right to marriage). Available at: https://ir.lawnet.fordham.edu/flr/vol84/iss4/11

[6] Douglas NeJaime, '*Before Marriage: The Unexplored History of Nonmarital Recognition and Its Relationship to Marriage*', 102 CAL. L. REV. 87, 111 (2014).

Exhibit 63 p. 016

statuses arose in the shadow of, in imitation of, and sometimes in opposition to, the institution of marriage.[7] The arrival of nationwide marriage equality therefore calls into question their reasons for being and leaves their future existence in jeopardy." Thus, in this instant lawsuit, Plaintiff Mr. Gabriel hereby calls into question the reason for Oregon's *'Beal v. Beal'* and its progeny.

55.    Matsumura continues, "Many jurisdictions have already phased out existing nonmarital statuses like domestic partnerships and civil unions or are moving in that direction.[8] These jurisdictions have not only closed the statuses to future registrants, but have eliminated them altogether." Thus, the reasoning behind the original decision in *'Beal v. Beal'* and subsequent cases in Oregon becomes impossibly thin, post-*Obergefell*, and cannot now withstand a confrontation with the Due Process Clause of the Fourteenth Amendment.

## C.    Liberty, Identity, Privacy, Dignity, Consent and Personal Autonomy

56.    The liberty and personal autonomy arguments surrounding marriage and legal domestic partnerships reached their zenith in the Court's latest discussion of the right to marry in *'Obergefell'*.  Justice Kennedy's majority opinion starts from the lofty premise that the "liberty" protected by the Fourteenth Amendment extends to "personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." (*'Obergefell v. Hodges'*, 135 S. Ct. 2584, 2597 (2015).  Several principles explain why the right to marry falls within this concept of liberty.  First, the choices "whether and whom to marry" are "among life's momentous acts of self-definition." (*Id.* at 2599 (quoting *'Goodridge v. Dep't of Pub. Health'*, 798 N.E.2d 941, 955 (Mass. 2003)).  Thus, because these decisions are "inherent in the concept

---

[7] Melissa Murray, *'Paradigms Lost: How Domestic Partnership Went from Innovation to Injury'*, 37 N.Y.U. REV. L. & SOC. CHANGE 291, 294–96 (2013).
[8] *See* generally WASH. REV. CODE § 26.60.010 (2014). *See also* 2012 Wash. Sess. Laws 203 ("[A]ny state registered domestic partnership in which the parties are the same sex, and neither party is sixty-two years of age or older, that has not been dissolved or converted into a marriage by the parties by June 30, 2014, is automatically merged into a marriage and is deemed a marriage as of June 30, 2014." *See also* CONN. GEN. STAT. § 46b-38rr (2009) (converting existing civil unions to marriages after October 1, 2010); *see also* 'Act Implementing the Guarantee of Equal Protection', 2009 Conn. Acts No. 9-13 § 12(a). *See also* DEL. CODE ANN. tit. 13, § 218 (2013); see also *'Civil Marriage Equality and Religious Freedom Act of 2013'*, 79 Del. Laws ch. 19, § 6 (2013). *See also* N.H. REV. STAT. ANN. § 457:46 (2010).

Exhibit 63 p. 017

of individual autonomy"—and, indeed, they "shape an individual's destiny"—they are constitutionally protected. (*Id.*)

57.     In *'Obergfell'*, the Court tells us that "by the time of the Nation's founding [marriage] was understood to be a voluntary contract." *(Id.)*

58.     The same is true of domestic partnerships in Oregon.  Under Oregon statutory law governing domestic partnerships, Oregon Revised Statutes (hereafter "ORS") Chapter 106, which spells out Oregon's statutory law governing the establishment of domestic partnerships, in particular 106.325 (5) (d):

> *"(5) On the Declaration of Domestic Partnership, each individual who wants to become a partner in a domestic partnership shall:*
>
> *(...) (d) State that the individual* **consents** *to the jurisdiction of the circuit courts of Oregon for the purpose of an action to obtain a judgment of dissolution or annulment of the domestic partnership or for legal separation of the partners in a domestic partnership, or for any other proceeding related to the partners' rights and obligations, even if one or both partners cease to reside in, or to maintain a domicile in, this state; (...)"*

59.     What is remarkable about this statute is that Oregon law makes it abundantly clear that **consent** is required to enter into a domestic partnership in Oregon, and further suggests that residency is required (i.e., "*cease(s) to reside in* [Oregon]"). (Emphasis added.)

60.     ORS 106.315 ('Prohibited and void domestic partnerships') also states: "2. When either party to a domestic partnership is incapable of making the civil contract or **consenting to the contract** for want of legal age **or sufficient understanding**, or **when the consent of either party is obtained by force or fraud**, the domestic partnership is void from the time it is so declared by a judgement of a court having jurisdiction of the domestic partnership. [2007 c.99 §4; 2009 c.561 §2; 2015 c.629 §10]." (Emphasis added.)  Surely this statute, by extension, would apply to

the period before the court's ruling if such a contract was "created" by fraud and without the unwitting party's consent and understanding.

**D.     Conscriptive Approaches to Cohabitant Obligations; Fraud; Uncertainty**

61.     In *'Is Consent Necessary? An Evaluation of the Emerging Law of Cohabitant Obligation'*[9], UCLA legal scholar Marsha Garrison investigates the extent to which adoption of a conscriptive approach to cohabitant obligation would "mar the symmetry of the legal structure" and examines those "considerations of history or custom or policy or justice" that might justify an asymmetrical law of family obligation.  Garrison explains why "our law has relied on commitment as a determinant of marital obligation and evaluates possible justifications for the conscriptive approach", and concludes that "those justifications are clearly inadequate to support conscriptive rules for cohabitants who do not have common children and that, while the case of cohabitants with common children is more complex, conscriptive rules would almost certainly work more harm than good even for this limited group."

62.     Garrison continues, "The contrasting relational perspectives of cohabitants and married couples emerge in many ways, but attitudes toward money are particularly revealing. Blumstein and Schwartz, who conducted a pioneering survey of American couples, analyzed responses to a range of questions on sharing and concluded that "married couples unconsciously assume a commingling of money and... cohabitors assume separate finances."[10].

63.     Garrison then poses the pivotal question, *"Does It Make More Sense to Require Cohabiting Couples to Contract Out or Contract In?"* by devoting an entire chapter to the topic, writing, "The evidence on equivalence establishes that it would be grossly unfair to treat all or even most cases of cohabitation like marriage: despite a small number of marriage-like relationships, cohabitants typically do not see their relationships as marital and do not behave like married couples;" and further, and in particular:

---

[9] 52 UCLA L. Rev. 815 (2005)
[10] *See* PHILIP BLUMSTEIN & PEPPER SCHWARTZ, *'American Couples:  Money, Work, Sex'* (1983), 98, at 98.

*"The decline of common law marriage reflects the sad fact that litigation based determination of marital commitment "leads to fraud and uncertainty in the most important of human relationships.[11] Unsurprisingly, more complex formulations of the requirements for a common law marriage produce more fraud and uncertainty than simpler ones. Even a five-factor requirement list led appellate Judge Jackson of Utah to expostulate that, "[in litigation[,] each element becomes a source of dispute." Judge Jackson urged "a simpler scheme with fewer elements" if the legislature "wants to keep some form of common-law marriage,"[12] but his clear preference was abolition of the doctrine outright: "Most American states have already experimented with this doctrine. Based on their experience, all but ten have repealed common-law marriage. Utah should not recycle this great experiment."[13]*

64.     In the immediate, pending Oregon domestic partnership dispute between Mr. Gabriel and Mr. Olsen, Mr. Nelson (attorney for Mr. Olsen) hinges his lawsuit on the pivotal claims, promoted heavily in Mr. Olsen's various filings in Multnomah County Circuit Court (State of Oregon) Case No. 22DR04942, including and in particular *'Petitioner's Response to Defendant's Motions to Dismiss'* that "the parties spent years together representing themselves as a marital couple … to the world and in acquiring property jointly", arguing that the dissolution of the alleged domestic partnership is "no different than any other dissolution of marriage."

65.     On this point, Garrison opines, "The common law marriage "experiment" demands factual inquiry into only two issues, whether there was a present agreement to be married and whether the couple publicly held themselves out as married. If these two facts are so hard to determine that the potential for fraud and uncertainty outweighs the benefit of the doctrine, then

---

[11] *See* HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES 48 (2d ed. 1987), note 22, at 59. *See also* Cynthia Grant Bowman, *'A Feminist Proposal to Bring Back Common Law Marriage'*, 75 OR. L.REV. 709, 731-50 (1996). Bowman reviewed historical data and concluded that the abolition of common law marriage reflected the elimination of the "frontier conditions" rationale for informal marriage; fears of fraud in the transmission of property; a desire to protect marriage and the family against alternative forms of sexual unions; racism and eugenics; the movement to maintain vital statistics and enforce various health-related requirements for marriage through the licensing process; and administrative and judicial efficiency.
[12] *'Kelley v. Kelley'*, 9 P.3d 171, 184 (Utah Ct. App. 2000) (Jackson, J., dissenting).
[13] *Id*. at 185 (Jackson, J. dissenting)

one must assume that the "anything relevant to life as a couple" approach of the *De Facto Relationships Act of New Zealand'*[14] or 'American Legal Institute Principles'[15] (as examples) would produce even more ***fraud and uncertainty***, with even less offsetting benefit." (Emphasis added).

66.     With respect to Garrison's above-referenced point that litigation-based determination of marital or domestic partnership commitment "leads to fraud and uncertainty", it is important to note that if an Oregon court were to decide that Mr. Olsen and Mr. Gabriel were in a domestic partnership subject to dissolution under Oregon law, then Mr. Olsen in particular would be potentially found guilty of committing fraud on multiple counts by his lender SNMC, along with all governing authorities with relevant statutes defining mortgage fraud.

67.     Per federal mortgage lending regulations guided by FinCEN and as enforced by FERA (Fraud Enforcement and Recovery Act of 2009), so too could be initiated criminal Department of Justice (hereinafter "DOJ"), Federal Bureau of Investigation (hereinafter "FBI"), Federal Trade Commission (hereinafter "FTC"), Department of Housing and Urban Development (hereinafter "HUD") and Securities and Exchange Commission ("hereinafter "SEC") probes into Mr. Olsen's written stated denial of the existence of any domestic partnership to his mortgage lender, SNMC, during SNMC's application, underwriting, closing and title recording phase – a lender which then sold the mortgage loan to PNC Bank ("PNC") – statements made all while Mr. Olsen conversely sues Plaintiff Mr. Gabriel using directly contradictory claims.

**E.     Federal Court Venue, Subject Matter Jurisdiction**

68.     Beginning with the Warren Court in the mid 1960s, Supreme Court decisions have affected nearly every area of family law, transforming what had been seen as ordinary state-

---

[14] *'Property (Relationships) Amendment Act, 2001'* (N.Z), available at http://www.legislation.govt.nl.  For descriptions of the legislation and its development, *see* Bill Atkin, The Challenge of Unmarried Cohabitation-The New Zealand Response, 37 FAM. L.Q. 303 (2003); Virginia Grainer, *'What's Yours Is Mine: Reform of the Property Division Regime for Unmarried Couples in New Zealand'*, 11 PAC. RIM L. & POL'Y J. 285 (2002).
[15] AM. LAW INST., PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS ch. 6 (2002).

Exhibit 63 p. 021

regulated family issues—regulation of marriage, criminal laws on contraception, etc.—into constitutional issues of equality, privacy, and federalism. Over 100 Supreme Court cases have dealt with such issues as establishing and terminating parental status; child abuse and neglect; marriage; jurisdiction for divorce, alimony, division of property, child custody, and child support; family property rights such as homestead, pensions, and insurance proceeds; family living arrangements; child custody and visitation; and child rearing. The Supreme Court has set the framework for examining domicile, jurisdiction, and full faith and credit issues for recognizing sister state divorce decrees.

69.     As argued previously, starting with *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948), Federal courts have clarified that State actions of a particular character is prohibited:  "While individual invasion of individual rights is not the subject-matter of the Fourteenth Amendment, it has a deeper and broader scope in that it nullifies and makes void all State legislation, and State action of every kind, including precedent case law, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty or property without due process of law, or which denies to any of them the equal protection of the laws."

70.     This ongoing constitutionalization of family law is likely to continue because the Supreme Court appears willing to recognize new rights protected by substantive due process. In addition, the protection is not limited to traditional families. As families become even more diverse and problems more complex, the Supreme Court (hereinafter "SCOTUS") is likely to be the final voice, although lower Federal courts are equally proper venues to hear cases that are not challenged all the way up to SCOTUS, or which are unlikely to be taken up by SCOTUS.

**F.     Implied Intent; Abolition of Common Law Marriage**

71.     Here it is important to cite among other national trends the effective abolition of common law marriage via such landmark cases as *PNC Bank Corp. v. W.C.A.B.* (Stamos), 831 A.2d 1269 (Pa. Commw. Ct. 2003) and *Stone v. Thompson*, 428 S.C. 79, 82, 833 S. E.2d 266, 267

(July 24, 2019)[16].  Taken together, these recent rulings and others have effectively abolished common law marriage nationwide, including, as argued in this instant case, such related constructs as implied domestic partnership – particularly following the '*Obergfell v. Hodges*' SCOTUS decision.  The legal reasoning of the Courts has consistently been that, following '*Obergfell*' and other statutory and case law revisions governing common law marriage, there is no basis for the Courts to determine implied ***intent*** of the parties when the avenues for filing for marriage or domestic partnership are readily, easily and cheaply available – and without impediment, in any state – to anyone who intends such an arrangement. (Emphasis added.)

### G.   Federal Court Intervention and the '*Younger*' Abstention.

72.   The following paragraphs are lifted from Hon. Judge Dana L. Christensen's thoughtful opinion supporting a Federal court Order dated January 26, 2024, in a related, now-dismissed, somewhat analogous lawsuit brought by Plaintiff Mr. Gabriel against Mr. Olsen as an individual.  *See* Case No. CV 23-142-M-DLC (US District Court, Montana – Missoula Division): "Younger stands for the proposition that federal courts should avoid interfering with ongoing state

---

[16] "We find the Pennsylvania court's reasoning and other considerations sufficiently persuasive to adopt a bright-line rule requiring those who wish to be married in South Carolina to obtain a lawful license. Our law contains similar provisions regarding child support, inheritance, and the ceremonial marriage process. *See* S.C. Code Ann. §§ 20-1-210 to -240 (1976); §§ 62-2-101 to -109 (1976 & Supp. 2018); § 63-5-20 (1976 & Supp. 2018). (…) The current case is emblematic of this shift, as the parties' community of friends was wholly unconcerned with their marital status, and indeed several of their witnesses were in similar relationships. Meanwhile, courts struggle mightily to determine if and when parties expressed the requisite intent to be married, which is entirely understandable given its subjective and circumstantial nature. The solemn institution of marriage is thereby reduced to a guessing game with significant ramifications for the individuals involved, as well as any third party dealing with them." *(…)*

"Critically, non-marital cohabitation is exceedingly common and continues to increase among Americans of all age groups. The right to marry is a fundamental constitutional right, *Obergefell v. Hodges* , —— U.S. ——, 135 S. Ct. 2584, 2604-05, 192 L.Ed.2d 609 (2015), which leads us to believe the right to remain unmarried is equally weighty, particularly when combined with our admonitions that a person cannot enter into such a union accidentally or unwittingly, *Callen v. Callen* , 365 S.C. 618, 626, 620 S.E.2d 59, 63 (2005). Further, we must agree with the many observers who have noted that common-law marriage requirements are a mystery to most. The present case is illustrative. None of the multiple witnesses who were asked understood what was required to constitute a common-law marriage, despite the fact that, as mentioned, several were involved in lengthy cohabitating relationships themselves. Moreover, two of such partners testified in complete opposition to one another, with one reporting they were common-law married, and the other stating emphatically they were not. This further persuades us to reject a mechanism which imposes marital bonds upon an ever-growing number of people who do not even understand its triggers." *Stone v. Thompson*, 428 S.C. 79, 85-86 (S.C. 2019)

criminal, civil, and administrative proceedings." *See* Arevalo v. Hennessy, 882 F.3d 763, 765 (9th Cir. 2018) ("Younger cautions against federal interference with ongoing state criminal, civil, and administrative proceedings."). Younger abstention in civil cases "is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *See* Cook v. Harding, 879 F.3d 1035, 1039 (9th Cir. 2018). Where these factors are met, Younger provides an exception to this Court's typical obligation to exercise jurisdiction where it exists. *See* Arevalo, 882 F.3d at 765. The Court may raise the abstention doctrine sua sponte. *See* H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000).

73. Again quoting Hon. Judge Dana Christensen: "Applying the above factors, the Younger abstention ***does not apply*** (Emphasis added.) The first, third, and fourth factors are all met in this case. The Oregon state court dissolution proceedings are ongoing. Oregon has a strong interest in matters of family relations—a "traditional area of state concern," over which the state "has a vital interest in protecting the authority of the judicial system." *See* H.C. ex rel. Gordon, 203 F.3d at 613. And Plaintiff could raise the same challenges to the domestic partnership proceedings in the course of the state court matter. *See* Martinez v. California, 444 U.S. 277, 283 n.7 (1980) (42 U.S.C. § 1983 action brought in state court); Cook, 879 F.3d at 1038 (same). Regarding the second factor, the Ninth Circuit has made clear that "Younger abstention is improper in civil cases outside of . . . two limited categories" – quasicriminal enforcement actions or actions involving a state's interest in enforcing the orders and judgments of its courts – "regardless of the subject matter or the importance of the state interest." *Id.* at 1039. The Ninth Circuit has further explained that "federal courts cannot ignore [these] strict limitations on Younger abstention simply because states have an undeniable interest in family law." *Id.* at 1040.

74.   *(Continued from Judge Christensen's Order):* "The Oregon state court action is not quasi-criminal; however, the question of whether the case implicates Oregon's interest in enforcing the orders and judgments of its courts is a closer question. "The Supreme Court and [Ninth Circuit] have held that this [second category] is geared to ensuring that federal courts do not interfere in the procedures by which states administer their judicial system and ensure compliance with their judgments." *See* Rynearson v. Ferguson, 903 F.3d 920, 926 (9th Cir. 2018). The Ninth Circuit has repeatedly cautioned against applying Younger abstention except in "extraordinary and narrow" circumstances. *See*, e.g., Nationwide Biweekly Admin., Inc. v. Owen, 873 F.3d 716, 727 (9th Cir. 2017). For example, in Cook, the Ninth Circuit reversed the district court's application of Younger abstention in the context of constitutional challenges to Cal. Fam. Code § 7962 raised simultaneously in both state and federal court proceedings. 879 F.3d at 1038. The court reasoned that "an argument regarding the state courts' power to apply its laws in subsequent proceedings and the state's interest in its interrelated family laws . . . do[] not relate to the state courts' ability to enforce compliance with judgments already made." *Id.* at 1041. Here, the Oregon action does not relate to the state courts' ability to enforce compliance with judgments already made and Plaintiff does not challenge "the processes by which the State compels compliance" with the judgments of its courts. *See* Cook, 879 F.3d at 1041 (emphasis added); *see also* Sloatman v. Housewright, No. 2:21-cv-08235-WLH (MAA), 2023 WL 8852375, at *6 (C.D. Cal. Nov. 17, 2023) (concluding that a "divorce action does not fall into one of the two "exceptional categories" of civil cases warranting Younger abstention"). Accordingly, the Court concludes that Younger's abstention doctrine does not apply in this matter."

### FIRST CLAIM FOR RELIEF

**Defendant's enforcement of domestic partnership case law in Oregon
violates the Plaintiff's substantive due process rights, rights of liberty,
dignity, privacy and autonomy guaranteed by the Fourteenth Amendment**

75.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 74 as if fully set forth herein.

76.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

77.     As previously articulated by Justice Kennedy's majority opinion in *'Obergefell'*, "liberty" as protected by the Fourteenth Amendment extends to "personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs."

78.     As established herein, SCOTUS further held that several principles explain why the right to marry falls within this concept of liberty (*'Obergefell'*, 135 S. Ct. at 2597, 2599). First, the choices "whether and whom to marry" are "among life's momentous acts of self-definition." Thus, because these decisions are "inherent in the concept of individual autonomy"— and, indeed, they "shape an individual's destiny"—they are constitutionally protected.

79.     As argued herein, the right not to marry or enter into a legal domestic partnership is justified by an additional, related value. In its purest form, the right would entail freedom from state interference in "matters of family life" that are protected by the Due Process Clause.[17]

80.     In safeguarding a range of related "intimate and personal" choices, the Court majority in *'Obergefell'* has noted that "[b]eliefs about these matters could not define the

---

[17] *See 'Zablocki v. Redhail'*, 434 U.S. 374, 386 (1978); see also *id.* (noting the importance of "the decision to enter the relationship that is the foundation of the family in our society").

Exhibit 63 p. 026

1    attributes of personhood were they formed under compulsion of the State." This concept of

2    noninterference characterizes the privacy rights recognized under the Fourteenth Amendment.[18]

3        81.     All of these arguments apply to some degree or another to the right to enter into

4    a domestic partnership subject to any state's laws, and inversely the right not to.

5        82.     In *'Obergfell'*, the Court tells us that "by the time of the Nation's founding

6    [marriage] was understood to be a voluntary contract". The same is true of domestic partnerships

7    in Oregon. The Oregon trial court's ruling under *'Beal v. Beal'* would forcibly conscript Plaintiff

8    Mr. Gabriel into a domestic partnership resembling a *de facto* marriage starting in 2011, against

9    his will and without his prior knowledge, thus depriving Mr. Gabriel of basic human agency.

10       83.     The State of Oregon, by refusing to dismiss Mr. Olsen's domestic partnership

11   claims under the overreaching *'Beal v. Beal'* precedent and its progeny, thereby underwrites Mr.

12   Olsen's abuse of controversial Oregon case law and precedent in the process of violating Plaintiff

13   Mr. Gabriel's substantive due process rights under the Fourteenth Amendment[19].

14       84.     Under Oregon Statutory Law (hereinafter, "ORS") governing domestic

15   partnerships, ORS Chapter 106, which lays out statutory law governing the establishment of

16   domestic partnerships, in particular 106.325 (5) (d), which requires "*that the individual **consents***

17   *to the jurisdiction of the circuit courts of Oregon for the purpose of an action to obtain a*

18   *judgment of dissolution or annulment of the domestic partnership or for legal separation of the*

19   *partners in a domestic partnership, or for any other proceeding related to the partners' rights*

---

[18] *See* Cass R. Sunstein, *'The Right to Marry'*, 26 CARDOZO L. REV. 2081, 2089–94 (2005); note 20, at 2094 ("For the ordinary privacy rights with which marriage is associated, the Constitution requires governmental noninterference; it does not require the government to provide money, institutional arrangements, or anything else.")
[19] In footnote 4 of *U.S. v. Carolene Products, 304 U.S. 144 (1938)*, the Supreme Court indicated that substantive due process would apply to: "rights enumerated in and derived from the first Eight Amendments to the Constitution, the right to participate in the political process, such as the rights of voting, association, and free speech, and the rights of 'discrete and insular minorities.'" Following *Carolene Products*, the U.S. Supreme Court has determined that fundamental rights protected by substantive due process are those deeply rooted in U.S. history and tradition, viewed in light of evolving social norms. These rights are not explicitly listed in the Bill of Rights, but rather are the penumbra of certain amendments that refer to or assume the existence of such rights. This has led the Supreme Court to find that personal and relational rights, as opposed to economic rights, are fundamental and protected.

*and obligations, even if one or both partners cease to reside in, or to maintain a domicile in, this state;"* Oregon law makes it abundantly clear that **consent** is required to enter into a domestic partnership in Oregon, and further suggests that residency is required (i.e., "*cease(s) to reside in* [Oregon]"); Plaintiff Mr. Gabriel has never consented to this, and there is no evidence of consent. (Emphasis added.)

85.     To the extent that the trial Court's Order runs afoul of ORS 106.315 ('Prohibited and void domestic partnerships'), this would preclude the Court from conscripting Mr. Gabriel into a domestic partnership against his will and without his knowledge.  ORS 106.315 states: "2. When either party to a domestic partnership is incapable of making the civil contract or **consenting to the contract** for want of legal age **or sufficient understanding**, or **when the consent of either party is obtained by force or fraud**, the domestic partnership is void from the time it is so declared by a judgement of a court having jurisdiction of the domestic partnership. [2007 c.99 §4; 2009 c.561 §2; 2015 c.629 §10]."  Surely this statute, by extension, would apply to the period before the court's ruling if such a contract was "created" by fraud and without the unwitting party's consent and understanding. (Emphasis added.)

86.     Accordingly,  Plaintiff Mr. Gabriel is entitled to declaratory and injunctive relief.

87.     Without injunctive relief from Defendants' reckless abuse and attempted enforcement of the State of Oregon's unconstitutional domestic partnership case law (e.g., *'Beal v. Beal'*), Plaintiff will continue to suffer irreparable harm, undue burden and expense in the future, and a clear violation of his substantive due process rights under the Fourteenth Amendment of the United States Constitution.

## <u>SECOND CLAIM FOR RELIEF</u>

**<u>Violation of the Contracts Clause, Art. I, section 10</u>**
**<u>of the United States Constitution as incorporated and made</u>**
**<u>applicable to states by the Fourteenth Amendment</u>**

88.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 87 as if fully set forth herein.

89.     Plaintiffs' property management contract with Zurc Capital, LLC (hereinafter "Zurc Capital") and Zurc Capital's 'AirBNB' rental relationships with its tenants are controlled by contracts, including rental agreements (the "Contracts"), all of which are enforceable contracts within the meaning of Article I, section 10. 35.  The Contracts obligate Zurc Capital's short-term vacation renters to pay lodging and other related expenses in exchange for the right to occupy portions of Plaintiffs' premises while he travels for business.  The Contracts also provide for various means of enforcing that payment obligation, including the imposition of late fees and penalties and right to terminate the tenancy and recover possession of the premises.

90.     Defendants' misuse of Oregon and Montana family law courts to ensnare real property and adjudicate real property disputes using Oregon's extralegal *Beal v. Beal* case law precedent  – specifically, Mr. Gabriel's residence in Montana, which is comprised of 6 acres and two autonomous cabins – substantially impairs Plaintiffs' contractual obligations with Zurc Capital, LLC, and by extension servicers such as 'AirBNB' (an e-commerce facilitation platform for vacation rentals) and thereby blocks, impairs or encumbers Mr. Gabriel's proper access to the revenue created by these contractual obligations.

91.     Further compounding pre-existing contractual matters, if an Oregon or Montana court were to conclude, even upon appeal, that Mr. Olsen and Mr. Gabriel were in a domestic partnership subject to dissolution under Oregon law, then Mr. Olsen (in particular) and also possibly Plaintiff Mr. Gabriel could be accused of committing mortgage fraud on multiple counts by his lender SNMC (Security National Mortgage Corporation), along with servicer PNC Bank, which purchased the loans from SNMC by relying on warranties made by SNMC and which contradict the fundamental, core claims supporting Mr. Olsen's domestic partnership lawsuit.

92.    Per federal mortgage lending regulations guided by FinCEN and as enforced by FERA (Fraud Enforcement and Recovery Act of 2009), so too could be initiated possible criminal Department of Justice (hereinafter "DOJ"), Federal Bureau of Investigation (hereinafter "FBI"), Federal Trade Commission (hereinafter "FTC"), Department of Housing and Urban Development (hereinafter "HUD") and Securities and Exchange Commission ("hereinafter "SEC") probes into Defendant Mr. Olsen's written stated denial of the existence of any domestic partnership to his mortgage lender, SNMC, during SNMC's application, underwriting, closing and title recording phase – a lender which then sold the mortgage loan to PNC Bank ("PNC") – statements made all while Mr. Olsen conversely sues Plaintiff Mr. Gabriel using directly contradictory claims.

93.    Without injunctive relief from the Defendants' reckless abuse of the State of Oregon's unconstitutional domestic partnership case law (e.g., *'Beal v. Beal'*), Plaintiff will continue to suffer irreparable harm in the future, and possibly even Mr. Olsen will incur irreparable harm inflicted upon him by his own lawsuit, insofar as his claims are potentially criminally fraudulent and would invoke criminal prosecution.

94.    The above violations of the United States Constitution give rise to both declaratory and injunctive remedies under the Federal Civil Rights Act, 42 U.S.C. § 1983.

95.    Plaintiff Mr. Gabriel is entitled to a declaration from this Court that the *'Beal v. Beal', etc.* case law precedents cited above and now invoked in Multnomah County Circuit Court Case No. 22DR04942 violate Article I, section 10, of the United States Constitution.

96.    Plaintiff Mr. Gabriel is entitled to an injunction directed to Defendants prohibiting any local Montana court enforcement or implementation of *'Beal v. Beal'* or any similar Oregon case law precedent governing so-called 'unregistered domestic partnerships' in Oregon.

97.    Plaintiff Mr. Gabriel is entitled to recover his reasonable costs and attorney fees incurred in bringing this action pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectively prays that this Court:

A. Enter a judgment declaring that Defendants, by improperly leveraging *'Beal v. Beal'* via the State of Oregon and its courts, has overreached in its attempted enforcement of Mr. Olsen's Oregon domestic partnership lawsuit in Montana, in particular that it:

    i. violates the Due Process Clause of the Fourteenth Amendment by infringing upon Plainiff's fundamental right to liberty, dignity, privacy, and personal autonomy, and is therefore void and unenforceable.

    ii. jeopardizes Plaintiff by potentially and needlessly implicating both the Plaintiff but also primarily Mr. Olsen in potential criminal mortgage fraud, were an Oregon court to conclude after appeal that a domestic partnership does exist in Oregon under *'Beal v. Beal'* and its progeny.

B. Issue preliminary and permanent injunctions enjoining Defendants, the local family law Courts in Montana, their legal counsel and those in active concert or participation with the State from pursuing or enforcing Mr. Olsen's marriage or domestic partnership claim, in any jurisdiction, and in particular Flathead County, Montana.

C. Waive the requirement for the posting of a bond of security for the entry of temporary and preliminary relief;

D. Award Plaintiff his costs and expenses, including reasonable attorneys' fees, pursuant to 42 U.S.C. U.S.C. § 1988 and all other applicable statutes and sources of law; and

E. Grant such other relief as the Court deems just and proper.

\* \* \*

DATED this 26th Day of August, 2024.

Respectfully submitted,

_____

Exhibit 63 p. 031

1

2

3

4

Plaintiff, *Pro Se* (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Tel: (403) 606-5859 m.

5

6

Submitted by Ryan Dean Gabriel, *pro se*
(206) 391-9886

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 63 p. 032

*Melissa C. Smith*
*Paralegal*

Law Office of Kai Groenke, P.C.

[www.familylawflathead.com](www.familylawflathead.com)

[Click here to send me a secure email](Click here to send me a secure email)

---

**From:** Ryan Gabriel <aegil2@gmail.com>
**Sent:** Thursday, August 29, 2024 7:27 PM
**To:** Jesse Olsen <jesse.m.olsen@gmail.com>
**Cc:** Melissa Smith <melissa@familylawflathead.com>
**Subject:** Re: Invoice 2143 from Performance Plus Restoration [JOB# 24-1262 - Jesse Olsen]

Oh, and now that we're on the topic of power-starved, half-witted Stalinist lawyers, I have this excellent scene from 'The Death of Stalin' for you to entertain yourself with:

[https://www.youtube.com/watch?v=EDOIzK8NuoU&t=121s](https://www.youtube.com/watch?v=EDOIzK8NuoU&t=121s)

On Thu, Aug 29, 2024 at 7:18 PM Ryan Gabriel <[aegil2@gmail.com](aegil2@gmail.com)> wrote:

> Jesse,
>
> I am also here Cc'ing the familiar (/thrall) for what is now widely called - in prominent legal circles - the 'Half Wit Hag of Flathead Valley' the entirety of this conversation for posterity, and also so that you don't have to.
>
> On Thu, Aug 29, 2024 at 6:58 PM Ryan Gabriel <[aegil2@gmail.com](aegil2@gmail.com)> wrote:
>
>> * Is concerned = are concerned.
>>
>> Notice my biggest concern at the moment is grammar. You're in a very, very bad position right now.
>>
>> On Thu, Aug 29, 2024, 6:56 PM Ryan Gabriel <[aegil2@gmail.com](aegil2@gmail.com)> wrote:
>>
>>> Provide your carefully contemplated answer to my other questions first, and then I'll

answer your questions.

Quid pro quo.

Also, because the 'Half-Wit Hag of Flathead Valley' (I swear - this is the widely circulated tag of another local lawyer, and I've heard it from more than once) invoked incarceration in an actual legal filing, these will now be remedies available to me wherever you and the Groenke Crime Cartel is concerned.

And I have orders of magnitude more kompromot on you three, particularly Fritz, to the point of bad comedy.

You should really contemplate what I can now put in those subpoenas as a result of the 'Half-Wit Hag of Flathead Valley's poorly conceived filing (at your behest).

On Thu, Aug 29, 2024, 2:18 PM Jesse Olsen <jesse.m.olsen@gmail.com> wrote:

> Where is the check presently? Are you indicating that you've requested a new check be sent? If not, yes, endorse the check so we can complete the process of getting Performance Plus paid.
>
>
> On Tue, Aug 27, 2024 at 3:25 PM Ryan Gabriel <aegil2@gmail.com> wrote:
>
>> Jesse,
>>
>> A check has been sent to PPR payable to me, you and PPR. I obviously want the repair work to continue on the Portland residence but I instructed PPR to change the bill-to party to you (Jesse Olsen) as you signed the PPR work authorization and the policy is under your account. Let me know whether I need to endorse the check; if so I will endorse.
>>
>> Separately, are you aware that your lawyer in Kalispell is seeking, in your latest filing (ostensibly on your behalf) to incarcerate me indefinitely in Flathead County Jail for the explicit purpose of holding me hostage to force me to sign title and deed documents on my permanent residence? Your lawyer actually put that in writing in a legal filing that she signed presumably at your direction.
>>
>> You do realize that I can issue subpoenas in any number of active lawsuits, including those you are not a party to, in which I ask the parties subpoenaed

what they know about your intention to imprison me under this specific premise, right?

Optically, I would imagine anyone seeing a copy of that filing you authorized would immediately sever all ties with you if they were to learn about it.

That filing is now a matter of public record, and I have pro se subpoena power in multiple Federal and district courts to inquire about relevant parties' knowledge of it. You really ought to read it, and consider the position Kai Groenke (and you) have therefore put yourself in.

I'd send you a copy but you can probably get it from Kai.

---------- Forwarded message ---------
From: <office@pprbuild.com>
Date: Tue, Aug 27, 2024, 12:48 PM
Subject: Invoice 2143 from Performance Plus Restoration [JOB# 24-1262 - Jesse Olsen]
To: <jesse.m.olsen@gmail.com>
Cc: <aegil2@gmail.com>

## Performance Plus Restoration

**Invoice** *Due:08/21/2024*
*2143*                                    Amount Due: **$8,325.24**

Dear Jesse Olsen:

Your invoice# 2143 for $8,325.24 is attached. Please note the amount for this invoice only, but you can see the entire account balance in the attachment.

Your invoice is due 08/21/2024, and we ask that you submit your payment at your earliest convenience.

If you would like to pay by credit card, please email or call us, and we will send you an invoice that gives you access to pay by credit card. Note that there is a 4% fee of the entire invoice amount for credit card payments. There is no fee to pay by bank account.

If you'd like to pay a different amount, please click the link below, and next to the payment amount at the top left, click "Edit amount" and change it to the amount you want to pay.

We appreciate and thank you for your business.

Please do not hesitate to contact us for anything.

Regards,

Mary & Shari
Your PPR Accounting Team
Office@PPRbuild.com
Shari Direct PH: 503-563-6807
Mary Direct PH: 503-563-6806
Office: 503-577-5487

Mail all payments to:
Performance Plus Restoration
PO BOX 1727
Clackamas, OR 97015

**View & Pay Invoice**

Exhibit 63A p. 004

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Friday, September 6, 2024 7:38 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Subject:** Fwd: NMAR: Response and Abeyance

Melissa,

You should congratulate the Groenke Crime Cartel on their first steps in a very, very gradual process.

Those who pick fights like this tend to learn only very slowly what life has in store for them. According to historical accounts, these things really do happen to very, very real people:

https://www.researchgate.net/figure/Execution-of-Fu-Zhuli-by-lingchi-April-10-1905-Caishikou-execution-field-Beijing_fig2_249315258l-10-1905-Caishikou-execution-field-Beijing_fig2_249315258JnQ9q5RTJPs

Always remember: This was a proactive choice someone close to you made, and it certainly was not my choice.

Crime doesn't pay. In fact, it ends very poorly for the criminals involved.

Racketeering is one of those crimes that inevitably ends in horror. Are you engaged in racketeering?

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

Exhibit 64 p. 001





Exhibit 64 p. 002

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RYAN DEAN GABRIEL,                                          Case No. 3:24-cv-00754-JR

        Plaintiff,                                              FINDINGS AND
                                                                          RECOMMENDATION
      v.

TINA KOTEK, in her official capacity as
Governor of the State of Oregon; STATE
OF OREGON, by and through the Oregon
Department of Administrative Services;
ELLEN ROSENBLUM, in her official
capacity as Attorney General of the State of
Oregon; MEAGAN AILEEN FLYNN, in
her capacity as presiding Chief Justice of
Oregon Judicial Department; and JUDITH
MATARAZZO, in her capacity as presiding
Judge of Multnomah County Circuit Court,

        Defendants.
_____

RUSSO, Magistrate Judge:

      Defendants Tina Kotek, Ellen Rosenblum, Meagan Aileen Flynn, Judith Matarazzo, and

the State of Oregon move to dismiss *pro se* plaintiff Ryan Gabriel's complaint pursuant to Fed. R.

Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion is

granted, and this case dismissed.

Page 1 – FINDINGS AND RECOMMENDATION

Exhibit 65 p. 001

## BACKGROUND

On March 22, 2022, Oregon resident Jesse Olsen, a non-party to this action, "filed a civil family lawsuit in Multnomah County, Oregon (Case No. 22DR04942), against Plaintiff . . . alleging that Mr. Gabriel and Mr. Olsen were spouses having entered into an implied domestic partnership or marriage for 12 years starting in 2010, seeking dissolution of the alleged unregistered domestic partnership." Am. Compl. ¶ 1 (doc. 13) (internal quotations and brackets omitted). "Plaintiff Mr. Gabriel's 'Motion to Dismiss' was denied by the local Circuit Court on August 16, 2022, and [his] 'Special Motion to Strike' was denied by the local Circuit Court on April 19, 2023." *Id.* at ¶ 2.

In November 2023, plaintiff filed a lawsuit against Mr. Olsen in the U.S. District Court for the District of Montana. *See generally* Compl. (Case No. 9:23-cv-00142-DLC, doc. 1). Plaintiff sought a declaration that the domestic partnership lawsuit in Oregon violated the Due Process Clause of the Fourteenth Amendment, and to enjoin Mr. Olsen from pursuing the domestic partnership claim. *Id.* at pg. 18. That lawsuit was ultimately dismissed for failure to state a claim. Order 9 (Case No. 9:23-cv-00142-DLC, doc. 33).[1]

"Trial [in the relation to the underlying Multnomah County domestic relations case] was held on January 26, 2024, and February 14, 2024, [and] an Order was issued by the trial Court on April 17, 2024." Am. Compl. ¶ 2 (doc. 13). Via that order, Multnomah County Circuit Court Judge Patrick W. Henry found that a domestic partnership existed between plaintiff and Mr. Olsen, and dissolved that partnership and divided common assets. Morgan Decl. Ex. 1, at 1-4 (doc. 18). In dividing plaintiff and Mr. Olsen's property, Judge Henry applied Oregon Supreme Court case *Beal*

---

[1] Plaintiff filed a separate lawsuit in Montana state court. *See* Pl.'s Suppl. Resp. to Mot. Dismiss 1 (doc. 28).

Exhibit 65 p. 002

*v. Beal*, 282 Or. 115, 577 P.2d 507 (1976),[2] examining the facts to determine the parties' intent. *Id.* at 2. "A judgment was ultimately entered on May 23, 2024."[3] Am. Compl. ¶ 2 (doc. 13). Plaintiff appealed that judgment to the Oregon Court of Appeals. *Id.*

On May 3, 2024, plaintiff initiated this lawsuit, amending his complaint on June 17, 2024. Like the Montana lawsuit filed in November 2023, plaintiff seeks a declaration that *Beal* violates the Due Process Clause of the Fourteenth Amendment, and that the underlying state court decision violates the Contract Clause of Article I, section 10 of the U.S. Constitution. *Id.* at pgs. 23-24. Furthermore, plaintiff seeks to enjoin defendants "from pursuing or enforcing Mr. Olsen's marriage or domestic partnership claim, in any jurisdiction." *Id.* at pg. 24.

On July 18, 2024, defendants filed the present motion to dismiss. Briefing was completed in regard to that motion on September 25, 2024.

## STANDARD OF REVIEW

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). The party who seeks to invoke the subject matter jurisdiction of the court bears the burden of establishing that such jurisdiction exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The court may hear evidence regarding subject matter jurisdiction and resolve factual disputes where necessary. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

---

[2] *Beal* held that "a division of property accumulated during a period of cohabitation must be begun by inquiring into the intent of the parties, and if an intent can be found, it should control that property distribution." *Beal*, 282 Or. at 122.

[3] An "Amended General Judgment" was issued by the Multnomah County Circuit Court on June 21, 2024. Morgan Decl. Ex. 2, at 4 (doc. 18).

Exhibit 65 p. 003

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court, in many circumstances, instructs the pro se litigant regarding deficiencies in the complaint and grants leave to amend. *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). A pro se plaintiff's claims may nonetheless be dismissed with prejudice where it appears beyond doubt the plaintiff can prove no set of facts that would entitle him or her to relief. *Barrett v. Belleque*, 544 F.3d 1060, 1061–62 (9th Cir. 2008).

## DISCUSSION

Defendants argue that this case should be dismissed on two independent grounds: (1) the *Rooker-Feldman* doctrine and (2) Eleventh Amendment immunity. Defs.' Mot. Dismiss 2-3 (doc. 17). Defendants further assert that the *Ex parte Young* exception to Eleventh Amendment immunity does not apply because plaintiff is seeking retrospective relief. *Id.* at 9-10.

Conversely, plaintiff argues that his claims are not barred by the *Rooker-Feldman* doctrine because this suit was filed in federal court before the state court issued its judgment. Pl.'s Resp. to

Mot. Dismiss 6-7 (doc. 20). In support, plaintiff cites to *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), for the proposition that "[*Rooker-Feldman*] is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 6 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284). Plaintiff also asserts that the *Ex parte Young* exception to the Eleventh Amendment governs because defendants are enforcing an allegedly unconstitutional state case law, namely *Beal*. *Id.*

I.    ***Rooker-Feldman* Doctrine**

At its core, the *Rooker-Feldman* doctrine restricts federal district court jurisdiction over state court decisions. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 482 (1983); *see also Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986) ("The United States District Court, as a court of original jurisdiction, has no authority to review final determinations of a state court in judicial proceedings.").

In addition to barring direct review, the doctrine prevents a federal court from considering any claims that amount to a collateral attack on issues that are "inextricably intertwined" with the state court's decision. *Noel v. Hall*, 341 F.3d 1148, 1158-63 (9th Cir. 2003); *see also Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) ("A federal action constitutes such a de facto appeal where claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state court ruling or require the district to interpret the application of state laws or procedural rules.") (citation and internal quotations omitted). Moreover, *Rooker–Feldman* "bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state court proceeding afforded the federal court plaintiff a full and fair opportunity to litigate [his] claims." *Bianchi v. Rylaarsdam*,

Exhibit 65 p. 005

334 F.3d 895, 901 (9th Cir.2003). Thus, "unlike res judicata, the *Rooker-Feldman* doctrine is not limited to claims that were actually decided by state courts, but rather it precludes review of all state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.*

In sum, "under the *Rooker–Feldman* doctrine, a plaintiff may not initiate a federal court action that: (1) directly challenges a state court holding or decision; or (2) indirectly challenges a state court holding or decision by raising claims in federal court that are inextricably intertwined with the state court judgment, even if the claim is that the state court's actions were unconstitutional." *Weems v. Or. Univ. Sys.*, 2012 WL 4093539, at *3 (D. Or. Sept. 17, 2012), *aff'd*, 569 Fed.Appx. 494 (9th Cir. 2014) (citing *Feldman*, 460 U.S. at 486); *see also Noel*, 341 F.3d at 1165 (district court lacks subject matter jurisdiction "when a plaintiff's suit in federal district court is at least in part a forbidden de facto appeal of a state court judgment, and an issue in that federal suit is inextricably intertwined with an issue resolved by the state court's judicial decision from which the forbidden de facto appeal is taken") (internal quotations omitted).

Here, despite raising constitutional challenges, the underlying state court decision is at the very heart of plaintiff's claims. Plaintiff's briefing acknowledges as much. *See* Pl.'s Surreply to Mot. Dismiss 5 (doc. 23) (requesting "injunctive relief from all lower court proceedings until the appellate process can be concluded, in which Plaintiff Mr. Gabriel fully expects the lower court findings to be overturned, and/or the Oregon Supreme Court to either scale back or overturn *Beal v. Beal* outright"). In other words, the harm alleged is a direct result of the state court decision. *See, e.g.*, Am. Compl. pg. 23 (doc. 13). In fact, it is clear from both the claims and relief sought that plaintiff is asking this Court to declare the state court judgment void. *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007) ("Such a claim is squarely barred by *Rooker-*

Exhibit 65 p. 006

*Feldman*; a request to declare the state court judgment void seeks redress from an injury caused by the state court itself.").

Further, plaintiff's reliance on *Exxon Mobil Corp.* is misplaced. Although the Supreme Court did allow for parallel state and federal litigation in *Exxon Mobil Corp.*, there is no question in this case as to timing or concurrent jurisdiction. That is, there is a significant distinction between the parallel state and federal cases in *Exxon Mobil Corp.* and here, where plaintiff brought suit against state judges and other officials seeking to overturn not only the state court judgment but also *Beal*. And, significantly, the dispositive complaint in this case was filed after plaintiff alleges the state court judgment was issued. *See* Am. Compl. ¶ 2 (doc. 13) ("A judgment was ultimately entered on May 23, 2024.").

Finally, plaintiff's assertion that, "at the time of filing his instant Federal Complaint, [he] had no knowledge of any such forthcoming [Multnomah County] judgment, nor any of its specifics" is disingenuous. Pl.'s Resp. to Mot. Dismiss 7 (doc. 20). Plaintiff initiated this lawsuit approximately two weeks after Judge Henry found that a domestic partnership existed between plaintiff and Mr. Olsen, dissolved that partnership, and divided common assets. Morgan Decl. Ex. 1, at 1-4 (doc. 18). That Judge Henry's decision was not reduced to a judgment until sometime later does not obviate the fact that plaintiff is attempting to challenge the substance of a state court final determination via these proceedings. *Cf. RLR Inv., LLC v. City of Pigeon Forge*, 4 F.4th 380, 396 (6th Cir. 2021) ("Under *Rooker-Feldman*—even after *Exxon*—federal district courts don't have jurisdiction over appeals of interlocutory state-court orders."). *Rooker-Feldman* therefore applies because plaintiff's claims center on an injury caused by a state court judgment and not the actions of an adverse party. Defendants' motion is granted in this regard.

## II.    Eleventh Amendment

"States are protected by the Eleventh Amendment from suits brought by citizens in federal court." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001). Critically, the State of Oregon has not waived its immunity to suits brought under § 1983. *McCall v. Oregon*, 2013 WL 6196966, at *8 (D. Or. Nov. 27, 2013).

*Ex parte Young* provides a limited exception to the Eleventh Amendment. *See generally Ex parte Young*, 209 U.S. 123 (1908). The exception "allows citizens to sue state officers in their official capacities for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (quoting *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)) (internal quotations omitted). *Ex parte Young*, however, applies to individual state officials only when the official "ha[s] some connection with the enforcement of the act." *Id.* at 943. Further, the connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* (citing *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).

The connection of the two state executive officers to the specific enforcement power of *Beal* or the underlying judgment is too generalized. Governor Kotek, like the California governor in *Association des Eleveurs de Canards et d'Oies du Quebec*, "is entitled to Eleventh Amendment immunity because [her] only connection to [the case] is [her] general duty to enforce [Oregon] law." *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 943. Likewise, there is no indication that Attorney General Rosenblum possesses a direct connection with the enforcement of state court domestic relation decisions. The listed state judicial officers are also immune under

Exhibit 65 p. 008

the Eleventh Amendment. *See Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024) ("Judges do not enforce state laws as executive officials might; instead they work to resolve disputes between parties"; because "an injunction against a state court or its machinery would be a violation of the whole scheme of our Government . . . state court judges cannot be sued in federal court in their judicial capacity under the Eleventh Amendment.") (citations and internal quotations omitted).

Finally, plaintiff seeks declaratory and injunctive relief that places him in the same position he was in before the state court judgment. *See* Am. Compl. pgs. 23-24 (doc. 13). In other words, he seeks retrospective and not prospective relief. For this additional reason, his claims fail. *See Green v. Mansour*, 474 U.S. 64, 67-69 (1985) (the Eleventh Amendment prohibits federal courts from issuing declaratory and injunctive relief against state officials when no continuing violation exists).

## RECOMMENDATION

For the foregoing reasons, defendants' Motion to Dismiss (doc. 17) should be granted. The parties' requests for oral argument are denied as unnecessary. Because this Court determines that jurisdiction is lacking, defendants' Motion to Stay Discovery and Pretrial Deadlines (doc. 30) is granted pending final resolution of the Motion to Dismiss.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgement or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections

Page 9 – FINDINGS AND RECOMMENDATION

Exhibit 65 p. 009

to any factual determination of the Magistrate Judge will be considered as a waiver of the party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of the fact in an order or judgement entered pursuant to this recommendation.

DATED this 3rd day of October, 2024.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Exhibit 65 p. 010

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **RYAN DEAN GABRIEL**, | Case No. 3:24-cv-00754-JR |
| Plaintiff, | **ORDER ADOPTING FINDINGS &** |
| v. | **RECOMMENDATION** |
| **TINA KOTEK**, in her official capacity as Governor of the State of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of the State of Oregon; **MEAGAN AILEEN FLYNN**, in her official capacity as Chief Justice of the Oregon Supreme Court; **JUDITH MATARAZZO**, in her official capacity as Presiding Judge of the Multnomah County Circuit Court; and the **OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES**, | |
| Defendants. | |

Ryan Dean Gabriel, 200 Blacktail Rd., #1140, Lakeside, MT 59922. Pro se.

Shaunee Morgan and Kate E. Morrow, Assistant Attorneys General, and Ellen F. Rosenblum, Attorney General, Oregon Department of Justice, 100 SW Market St., Portland, OR 97201. Attorneys for Defendants.

**IMMERGUT, District Judge.**

PAGE 1 – ORDER ADOPTING F&R

Exhibit 66 p. 001

This Court has reviewed de novo the portion of the Findings and Recommendation ("F&R") to which Plaintiff objected. For the following reasons, the Court ADOPTS Magistrate Judge Russo's F&R.

## STANDARDS

Under the Federal Magistrates Act ("Act"), as amended, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a party objects to a magistrate judge's F&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* But the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the F&R that are not objected to. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Nevertheless, the Act "does not preclude further review by the district judge, *sua sponte*" whether de novo or under another standard. *Thomas*, 474 U.S. at 154.

## DISCUSSION

On October 3, 2024, Magistrate Judge Russo issued her F&R, recommending that this Court dismiss Plaintiff's Complaint. No objections have been timely filed. This Court has reviewed the F&R for "clear error on the face of the record." Fed. R. Civ. P. 72(b) Advisory Committee Notes. Having reviewed the file, this Court finds no clear error in Judge Russo's conclusions that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and the Eleventh Amendment.[1]

---

[1] This Court notes that, because the *Rooker-Feldman* doctrine goes to a court's subject-matter jurisdiction, *Benavidez v. County of San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021), while the Eleventh Amendment is "not a true limitation upon the court's subject matter jurisdiction," *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 760 (9th Cir. 1999), *as amended*

Exhibit 66 p. 002

**CONCLUSION**

This Court has reviewed for clear error Judge Russo's F&R. Judge Russo's F&R, ECF 31, is adopted. This Court GRANTS Defendants' Motion to Dismiss, ECF 17, DISMISSES as moot Defendants' Motion to Stay Discovery and Pretrial Deadlines, ECF 30, and DISMISSES this case for lack of subject-matter jurisdiction.

**IT IS SO ORDERED**.

DATED this 22nd day of October, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

*on denial of reh'g en banc*, 201 F.3d 1186, it may not have been necessary to consider Plaintiff's Eleventh Amendment argument after concluding that subject-matter jurisdiction was absent. In any event, this Court identifies no clear error in either portion of the F&R.

Exhibit 66 p. 003

*Melissa C. Smith*
*Paralegal*
Law Office of Kai Groenke, P.C.
www.familylawflathead.com

Click here to send me a secure email

**From:** Ryan Gabriel <rgabriel@zurccapital.com>
**Sent:** Friday, October 4, 2024 6:42 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Subject:** Re: Amended Motion

You might contemplate that only one amended motion is permitted.

You're going to be spending a lot of panicked time trying claw this particular iteration back at the 11th hour, but by the time you realize your mistake it will almost certainly be too late to withdraw or retract any of it.

Even if you try to withdraw the motion, I will insist on proceeding with the hearing under the opposite premise and my own competing motion.

Finally, once that is concluded, the main looming event - DV-15-24-1197 - followed by the disbarment of what I like to call 'The Maximilien Robespierre of the Montana Legal Community' ('The Taylor Lorenz of the Montana Legal Community' was a bit too kind) will proceed as anticipated.

https://en.wikipedia.org/wiki/Maximilien_Robespierre

Cheers,

Ryan D. Gabriel
Zurc Capital, LLC
rgabriel@zurccapital.com

206.391.9886 mobile
403.606.5859 office

855.488.ZURC toll free

On 10/04/2024 7:06 PM EDT Melissa Smith
<melissa@familylawflathead.com> wrote:


Ryan,

Please find attached an Amended Motion filed today with the District Court.

*Melissa C. Smith*
*Paralegal*
Law Office of Kai Groenke, P.C.
239 2nd Street West
Kalispell, MT  59901
Tel:  (406)-890-2999
Fax: (406)-755-1918
www.familylawflathead.com


Click here to send me a secure email


*This e-mail and the information contained herein is confidential information belonging to the sender, and may also be legally privileged and protected, including by the attorney-client privilege and/or the attorney work product privilege.  These privileges are hereby asserted and reserved if this correspondence is intended for a client, or if any privilege is otherwise applicable to this communication.  This e-mail and information contained herein is intended only for the use by the party to whom this e-mail is intended.  If you are not the intended recipient, you are notified that any retention or disclosure, copying, printing or distribution of this e-mail is strictly prohibited.  Please advise if this e-mail has been erroneously sent to you, and then delete all copies of this email.  Thank you.*

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

**IN THE DISTRICT COURT OF THE STATE OF MONTANA**
**FOR THE COUNTY OF FLATHEAD**

| | | |
|---|---|---|
| FREDERICK "FRITZ" GROENKE, | ) | Cause No. DR-24-527 (A) |
| Plaintiff/Respondent, | ) | **AMENDED BRIEF OF** |
| | ) | **DEFENDANT / APPELLANT** |
| vs. | ) | **RYAN DEAN GABRIEL** |
| RYAN DEAN GABRIEL, | ) | |
| Defendant/Appellant. | ) | |

COMES NOW Respondent/Appellant RYAN DEAN GABRIEL who files this brief in appeal of an Order of Protection (Case No. CV-385-2024-0001021-OP) signed by Hon. Paul Sullivan dated August 22, 2024, and memorandum/statement of facts in support thereof.

**MEMORANDUM/STATEMENT OF FACTS**

1.      The immediate conflict at issue arose on or around mid-July, 2024, when Plaintiff/Respondent Frederick "Fritz" Groenke (hereinafter "Mr. Groenke"), a notorious local realtor and alleged biological father of a local attorney, Taylor "Kai" Groenke (hereinafter "M/r/s. Groenke"), listed Defendant/Appellant Mr. Gabriel's permanent residential home and own real property at 2000 Blacktail Rd. in Lakeside, MT 59922 – without his consent – on Zillow.com, Redfin.com, Realtor.com and elsewhere, via Montana Regional MLS, LLC (among other avenues), by invoking an Oregon lower court judgment. (*See* **Exhibit 1**, attached).

2.      This Amended General Judgment has been the subject of an Oregon trial court Stay by Supersedeas Undertaking since prior to the time of the listing in question, and which is currently pending in the Oregon Court of Appeals.  (*See* **Exhibit 2**, attached).

3.      Plaintiff/Respondent Mr. Groenke did not have legal authorization to list the property at the time of its listing on July 23, 2024, nor at the time of the subsequent temporary

withdrawal and re-listing weeks later, and he was advised as much by Mr. Gabriel's Oregon attorney (Andrew Newsom, Partner – Holtey Law Firm). Mr. Groenke listed it anyway, in active coordination with M/r/s. Groenke and a listing agent, accompanied by the misleading and far-outdated photos from 2019 that Mr. Groenke illegally used in his listing – photos that still belong to Cecil Waati, another local realtor. (*See* **Exhibit 3** *and* **Exhibit 11**, attached).

4.      According to M/r/s. Groenke, her client, JESSE MARK OLSEN ("Mr. Olsen"), had previously hired Mr. Groenke, the alleged biological father of Defendant Taylor "Kai" Groenke, to attempt to sell Mr. Gabriel's permanent residence. At Mr. Groenke's request, Montana Regional MLS, LLC, then listed the real property at 2000 Blacktail Road, Lakeside, MT 59922 for sale and the property is now under contract, as of August 9, 2023. This was done without Defendant/Appellant Mr. Gabriel's consent, and with the lower court Stay (Supersedeas Undertaking) still in place. (*See* **Exhibit 26** *and* **Exhibit 3**, attached).

5.      Compounding the illegal and/or extralegal listing of Mr. Gabriel's property and permanent residence (2000 Blacktail Road, Lakeside, MT 59922) Frederick "Fritz" Groenke, illegally impersonated another realtor (Michelle Thomson), deliberately using her signature and then substituting her 'Reply' address ('michellethomson.bigfork@gmail.com') with his own ('mtreg@cyberport.net'). Plaintiff/Respondent Mr. Groenke then attempted to walk back the attempted fraudulent conveyance, actions described by Kaaren Winkler, MPA, RCE, CAE and Chief Executive Officer of the Montana Association of REALTORS as "serious", "troubling" and "severe". (*See* **Exhibit 1** and **Exhibit 19**, attached).

6.      In other words, on August 8, 2024, at approximately 4pm MST, Mr. Groenke, in active coordination with Taylor "Kai" Groenke, impersonated another realtor, Michelle Thomson (a federal, state and local crime), in the process of committing numerous other felonies, including illegal trespass (under Montana Penal Code 45-6-203), vandalism, breaking and entering and harassment, among other crimes. These actions also constitute rank violations of Article 1 & Article 3 of the National Association of Realtors (NAR) Code of Ethics: Unauthorized Access to Property, SOP 1-16 and 3-9. (*See* **Exhibit 1** *and* **Exhibit 18**, attached).

7.     Plaintiff/Respondent Mr. Groenke is also illegally using misleading and outdated photographs that are owned by another local realtor, Cecil Waati, for which he did not receive permission, and which wildly misrepresent the property in its present state.  For example, the entire kitchen in the 2nd cabin is being gutted by a restoration company for an insurance claim caused by leaking fittings underneath the kitchen sink and adjacent bathroom sink.  The entire floor is torn out, along with the kitchen cabinetry and appliances, and that project is not scheduled to be completed until early November 2024 (photos attached of the mitigation underway). In addition, the mitigation company has tested for mold and the entire sub-floor between the kitchen in the 2nd Cabin and the property's garage was plastered with toxic mold, and so the entire lower ceiling has been gutted and will be drying out for weeks.  (*See* **Exhibit 14**, attached).

8.     Furthermore, the aerial photos published on Petitioner Mr. Groenke's listing are fraudulent in the sense that the 'wilderness' photos are now fully developed properties. Finally, there is a 3' X 3' square hole in the pump house ceiling which was cut to allow a crane to access and fix the well pump.  (*See* **Exhibit 14**, attached).

9.     Not only does this act constitute substantive fraud and misrepresentation, but the listing is also a clear violation of the National Association of Realtors (NAR) Code of Ethics Article 12:  Displays of Competitor's Content and Listings.  (*See* **Exhibit 1**, attached).

10.     Michael Ponton, CEO of the Montana Regional MLS, was made aware of the correspondence from Mr. Gabriel's Oregon attorney, Andrew Newsom, which stated that at the time of the listing in question an active Court stay (supersedeas undertaking) was in place on a judgment that Mr. Groenke purported to rely on to justify the illegal listing.  That listing has never been taken down, though a court stay was in place.  (*See* **Exhibit 3** *and* **Exhibit 33**, attached).

11.     The full forwarded e-mail exchange incriminating Plaintiff/Respondent Mr. Groenke in the above is attached as Exhibit 1.  (*See* **Exhibit 1**).

12.     On July 16, 2024, M/r/s. Groenke reveals via e-mail that she coordinated Mr. Groenke's unlawful trespass onto Mr. Gabriel's residential property.  (*See* **Exhibit 7**, attached).

13.     Prior to receipt of this e-mail from M/r/s. Groenke, Mr. Gabriel was unaware of any connection between "Fritz" and "Kai" Groenke, but M/r/s. Groenke exposed the nature of

Exhibit 67 p. 003

that connection with this statement (issued in response to a brief text exchange between Mr. Gabriel and Plaintiff/Respondent Mr. Groenke the previous day): ***"Ryan, I received your threats against me and my family that you sent to Fritz Groenke. These will not be taken lightly. The US Marshall's Office is still looking for you regarding the threats you made against the federal judge. They will be interested in hearing you continue to threaten people. Do not* <u>*ever*</u> *threaten my children. You are obviously attempting to impede the sale of the property in Lakeside. I am certain Jesse will be seeking to enforce the order which specifically provides you are NOT to interfere with the sale."*** (*See* **Exhibit 8**, attached). As established previously, here M/r/s. Groenke is referring to the now-invoked Oregon lower court judgement which was the subject of a temporary Stay by Supersedeas Undertaking at the time of its listing, and which is currently pending appeal in the Oregon Court of Appeals. (*See* **Exhibit 9**, attached).

14. To M/r/s. Groenke's e-mail of July 16, 2024, Defendant/Appellant Mr. Gabriel replied, "Taylor, It is you and Fritz who are harassing me, and you are vividly aware of that fact. (…) I didn't even know you had children, which begs the question of whether Fritz has comprehension issues. There were no threats made against any federal judge - this is total nonsense. Jesse himself attempted to get a restraining order against me using that exact e-mail thread, and it was flatly rejected by the judge who read the e-mail exchange you are alluding to." (*See* **Exhibit 10**, attached here).

15. Mr. Gabriel continued, "Jesse does not have clearance to sell the Lakeside property - there is an appeal in place (…) Even Jesse's Portland attorney concedes that process will likely take 24 months or so. In the interim, do not step foot on my property." (*See* **Exhibit 7**, attached).

16. Previously, on Monday, July 15, 2024, Plaintiff/Respondent "Fritz" Groenke had sent an e-mail apparently dictated by "Kai" Groenke (Defendant/Appellant Mr. Gabriel bases this observation upon Mr. Groenke's differing grammar, style and syntax from a text exchange between the two later in the day), in which "Kai" Groenke conspicuously omits the rest of the thread/exchange. (*See* **Exhibit 3**, **page 4**, attached). Later in that same day, Mr. Gabriel received a series of notifications from his guest at his residence (2000 Blacktail Rd. in Lakeside, MT) from "Albert", a guest of his staying at the property. (*See* **Exhibit 12**, attached).

17.     Guest "Albert" told Mr. Gabriel that Petitioner Frederick "Fritz" Groenke destroyed the electronic security gate by trying to force it open, and then walked onto the property unannounced (to Mr. Gabriel or to anyone) and conveyed to his guest "Albert" highly inappropriate and potentially defamatory private information about Mr. Gabriel, in an attempt to intimidate and harass Mr. Gabriel and his guests.  Andrew Newsom, an appellate attorney and partner of a law firm (Holtey Law) who Mr. Gabriel has retained in Oregon for that local appellate case, has advised Mr. Gabriel that Mr. Groenke was not authorized to intrude on the property because there was a Stay on a motion in the case in question – along with a pending appeal to a legal outcome that Petitioner Mr. Groenke is hoping transpires, but which has not yet transpired and which is unlikely to transpire.  Andrew Newsom's office # is 503.224.9878 and his e-mail is anewsom@holteylaw.com. (*See* **Exhibit 3** *and* **Exhibit 33**, attached).

18.     After learning of Plaintiff/Respondent Mr. Groenke's illegal intrusion, vandalism and trespass, Defendant/Appellant Mr. Gabriel then left him a voicemail, saying something to the effect of, "If you ever step on my property again without my explicit consent, I'll shoot you in the face with bear mace."  Plaintiff/Respondent Mr. Groenke and Defendant/Appellant Mr. Gabriel then had a lengthy text exchange later in the evening in which Mr. Gabriel withdrew his threat to shoot Mr. Groenke with anything, concluding, "no, I won't shoot you in the face." – all within hours of leaving the voicemail.  No further hints of threats of violence – in defense of his own property or otherwise – were made by Defendant/Appellant Mr. Gabriel to Mr. Groenke, although Mr. Gabriel did threaten to sue him for tortious interference, and sent YouTube videos depicting a villain in a 2023 *'Hellraiser'* HBO film being voluntarily converted into a 'cenobite' by *'Leviathan'* (which serves as the 'God of Order' that film series), along with a 'DeepFake' parody of a crying journalist performed by a CGI-generated Joe Biden.  The intent of these was to signal to Mr. Groenke that the power-starved actions he was taking against Mr. Gabriel were extremist in nature and that in hindsight he might regret.  (*See* **Exhibit 5**, attached here.)

19.     Dramatically escalating matters with frenzied anticipation, on Friday, July 19, 2024, Taylor "Kai" Groenke then filed for a Temporary Petition for Protective Order with the Justice Court of the State of Montana (Flathead) before Hon. Paul Sullivan, Justice of the Peace.

In this Protective Order, M/r/s. Groenke sought a ruling that would require Mr. Gabriel "**shall stay at least 2,500 feet from … 2000 Blacktail Road, Lakeside, MT 59922**" – which happens to be Mr. Gabriel's permanent residence and home, and which he owns, has title to, and lives in. (*See* **Exhibit 4**, **page 2**, attached). M/r/s. Groenke's husband is David C. Dowell, who happens to work for the Flathead County Probation and Parole office, which in turn works closely with Hon. Paul Sullivan's Justice Court. In other words, M/r/s. Groenke tried to use her husband's connections adjacent to Hon. Paul Sullivan and the Flathead County Justice Court, to evict Mr. Gabriel from his own home ostensibly so that her father, Plaintiff/Respondent Frederick "Fritz" Groenke (a realtor) could sell it out from underneath Mr. Gabriel for some undisclosed commission. (*See* **Exhibit 4**, attached).

20.    In M/r/s. Groenke's Petition for temporary protective order, which was notably signed on July 18, 2024, Taylor "Kai" Groenke made several brazenly false and substantively dishonest claims, such as "He [Mr. Gabriel] sent a video of a horror movie clip showing someone getting shot in the face while referencing my family.", and "[Mr. Gabriel] used or threatened me with firearms." (*See* **Exhibit 4**, attached, along with Case No. CV-2024-1010-OP, Flathead County Justice Court). Here M/r/s. Groenke committed perjury before the Court. Not only has Mr. Gabriel never threatened to use firearms against M/r/s. Groenke, but the video in question does also not show anyone getting shot in the face (rather, it shows the villain of the film being voluntarily converted into a 'cenobite' in exchange for ultimate power). Furthermore, the fact that "Fritz" Groenke is her alleged biological father – whom she knowingly sent to illegally trespass (per Montana Penal Code 45-6-203) on Mr. Gabriel's property – is by Taylor "Kai" Groenke's own calculated design. (*See* **Exhibit 5**, **Exhibit 11** and **Exhibit 12**, attached).

21.    In other words, M/r/s. Groenke and Plaintiff/Respondent Mr. Groenke are deliberately teaming up to provoke Defendant/Appellant Mr. Gabriel, with the specific intent to produce the instant protective order, for the express purpose of obtaining optical leverage in an underlying legal dispute. (*See* Cause No. DR-24-394, Flathead District Court, Montana.)

22.    To appreciate the scope of the Groenkes' lawfare scheme against Mr. Gabriel, consider the following: In the matter of Taylor "Kai" Groenke's own (separate) protective order

against Mr. Gabriel, now being appealed with the Montana Supreme Court, Mr. Gabriel accused M/r/s. Groenke of committing perjury and sought sanctions. In response, in her *'Respondent's Brief'* dated September 13, 2024, M/r/s. Groenke argues, "There is no basis for imposing sanctions against me. I have done nothing wrong. (…) **Ryan was expected to**, and has, violated the Judgment in numerous ways as alleged in the motion seeking to enforce the Judgement currently set for hearing on October 2024." (Emphasis added.) (*See* **Exhibit 32**, attached here).

23. Here it is important to note that M/r/s. Groenke herein admits she **planned** for Mr. Gabriel to "violate" the Judgement in question, referring to *'Olsen v. Gabriel'*, Cause No. DR-24-394, filed with the County of Flathead District Court, State of Montana. (Emphasis added.)

24. Contrary to Plaintiff/Respondent Mr. Groenke's claims of harassment, every one of Mr. Gabriel's legal filings are strictly in defensive response to lawsuits and illegal and/or extra-legal actions initiated by Mr. Olsen, Mr. Groenke, M/r/s. Groenke and her hired agents and attorneys. Mr. Olsen has sued Defendant/Appellant Mr. Gabriel for dissolution of "unregistered domestic partnership" in Oregon, a state in which Mr. Gabriel does not reside and has never resided, and now M/r/s. Groenke has stated she intends to leverage an amended Oregon judgment – subject to a stay on appeal – in a local Montana court to hold Defendant/Appellant Mr. Gabriel in contempt of court, explicitly for the purpose of jailing Mr. Gabriel in order to force his signature on the title documents relinquishing his possession of his own home and permanent residence.

25. M/r/s. Groenke's exact words, from her motion in Case No. DR-2024-394 (E)[1]: *"Ryan should be incarcerated until such time as the sale of the property closes. Furthermore, incarceration will ensure Ryan remains available in Flathead County to sign any documents necessary to close the sale of the property. Finally, Ryan will be more easily served with process and documents as a resident of the Flathead County Jail until the transaction can be completely closed."* (Emphasis added.) (*See* **Exhibit 29**, attached here).

26. With respect to Plaintiff/Respondent Mr. Groenke's arguments from his instant *'Respondent's Brief'* that Mr. Gabriel is somehow the aggressor or the antagonist, there is thin

---

[1] See 'MOTION TO ENFORCE FOREIGN JUDGMENT AND PETITION FOR CONTEMPT, STATEMENT OF CHARGE', Montana Eleventh Judicial District Court, Flathead County, Cause No. DR-2024-394 (E).

Exhibit 67 p. 007

basis for these claims. For example, the "genealogy data" that Plaintiff/Respondent Mr. Groenke cites repeatedly in his own *'Respondent's Brief'* in the instant case is largely public – not private – information that is heavily suggestive of widespread infidelity within the Groenke family, mostly in relation to the older Groenke generations. (*See* **Exhibit 5** and **Exhibit 6**, attached).

27. To clarify, Mr. Gabriel is at all turns defensively reacting to a series of legal actions initiated by Mr. and M/r/s. Groenke, who deliberately committed and orchestrated the acts that have produced the instant petition for Order of Protection – specifically to obtain such an Order of Protection. (*See* **Exhibit 9**, **Exhibit 12** *and* **Exhibit 27** attached here). This was clearly done to gain optical leverage in the underlying Oregon dispute that M/r/s. Groenke willfully carried into Montana, for which she was paid to leverage in Montana court under extralegal pretenses, and for which she hopes Mr. Groenke will earn a realtor payout. (*See* **Exhibit 12**, attached here).

28. Such a payout would be predicated on the complete destruction, financial and otherwise, of Defendant/Appellant Mr. Gabriel – who has no criminal record of any kind, in any jurisdiction – along with the extralegal eviction of Mr. Gabriel from his permanent residence, loss of the title to his home, and his simultaneous incarceration. (*See also* **Exhibit 27**, attached here).

29. In every sensible reading of this situation, it is therefore Mr. Groenke who is aggressively harassing, threatening and stalking Mr. Gabriel, in coordination with M/r/s. Groenke. Mr. Gabriel in turn is simply taking defensive measures to be left alone and to live in peace in his own residence until the Oregon appellate matter can be satisfactorily concluded by the Oregon Court of Appeals, for which he is duly represented by counsel. Mr. Gabriel currently has an appeal pending in Multnomah County Circuit Court Case No. 22DR04942. The Oregon Court of Appeals case number is A184337. (*See* **Exhibit 2**, attached).

30. Andrew Newsom, an appellate attorney and partner of a law firm (Holtey Law) who Mr. Gabriel has retained in Oregon for that local appellate case, has advised Mr. Gabriel that the actions taken by Plaintiff/Respondent M/r/s. Groenke at the time were not authorized because there was a Supersedeas Undertaking and temporary Stay in the case in question – along with a pending appeal to a legal outcome that M/r/s. Groenke is hoping transpires, but which has not yet

transpired, and which is unlikely to transpire. Andrew Newsom's office # is 503.224.9878 and his e-mail is anewsom@holteylaw.com. (*See* **Exhibit 3, Exhibit 9** *and* **Exhibit 17**, attached here).

31.    Mr. Gabriel has never previously been a party to any criminal or quasi-criminal action that he is aware of, in any jurisdiction.  In other words, Mr. Gabriel has a spotless prior record; he has never been arrested for anything, ever, or accused of anything ever, until this latest volley of civil Petitions for Orders of Protection (*See* **Exhibit 16**, attached).

32.    Between Mr. Olsen, his counsel, Taylor "Kai" Groenke, and Plaintiff/Respondent Mr. Groenke, this instant *'Petition for Order of Protection'* is now the fourth attempt in four different courts to obtain similar protective orders against Mr. Gabriel, using the same documentation.  Three prior attempts for the same Petitions against Mr. Gabriel, were flatly denied by the respective judges in those Petitions (*See* **Exhibit 13**, attached).

33.    The third attempt, filed by Taylor "Kai" Groenke, was partially granted with most of her requests denied or since withdrawn, and that limited Order on M/r/s. Groenke's Petition is currently pending Mr. Gabriel's appeal with the Supreme Court of Montana.  Ultimately, M/r/s. Groenke failed to succeed in securing Mr. Gabriel's eviction from his own home via her own sought-after Protective Order. (*See* **Exhibit 4**, attached here).

34.    That effort having failed, M/r/s. Groenke then dramatically escalated matters yet further by demanding the local District Court, ***"impose criminal sanctions upon Ryan, including incarceration, for the protection of the public, Jesse, his attorneys, the realtors, potential buyers, the home inspectors, and any other person who may need access to the real property [Respondent/Appellant's permanent residence at 2000 Blacktail Road in Lakeside, MT 59922] or is otherwise involved in the marketing and sale of the property. (…) Ryan should be incarcerated until such time as the sale of the property closes. (…) Finally, Ryan will be more easily served with process and documents as a resident of Flathead County Jail until the transaction can be completely closed."*** (Emphasis added.) (*See* **Exhibit 29**, attached).

35.    Mr. Gabriel hereby argues that Mr. Groenke therefore also suffers from a conflict of interest, and that his motivation in seeking this Order of Protection is, principally, the

Exhibit 67 p. 009

impairment of Mr. Gabriel's ability to prevent his own home from being sold out from underneath him for a financial benefit (realtor commission) to be pocketed by Mr. Groenke.

36.     Petitioner Mr. Groenke was officially provided notice on August 23, 2024, by the Northwest Montana Association of REALTORS ("NMAR") that his actions were the subject of a disciplinary hearing.  NMAR wrote, "The Grievance Committee Panel met August 21, 2024, to review the complaint and, after full and careful consideration, referred the ethics complaint alleging a violation 1, 3 and 12 to the Professional Standards Committee for a hearing. Please see a copy of Grievance Committee Report attached (Form #E-5.1)." (*See* **Exhibit 28**, attached).

## **CONCLUSION**

**1.     The Protective Order against Respondent/Appellant Mr. Gabriel should be narrowed substantially** to lift the restriction on Mr. Gabriel's Second Amendment rights under (U. S. Const. Article IV, § 3) per finding #6. of the Order.

**2.     Alternately, the Protective Order against Respondent/Appellant Mr. Gabriel should be revoked entirely,** as Plaintiff/Respondent Mr. Groenke has not been credibly threatened with anything other than legal action by Mr. Gabriel.

* * *

DATED this 6th Day of October, 2024.


                                   Respectfully submitted,



                                   _____
                                   Respondent/Appellant, *Pro Se* (signature)

                                   Ryan D. Gabriel
                                   2000 Blacktail Rd. #1140
                                   Lakeside, MT 59922
                                   Tel:  (403) 606-5859 m.

Submitted by Ryan Dean Gabriel, *pro se*
(206) 391-9886

# OFFICIAL RECEIPT
## OREGON JUDICIAL DEPARTMENT
### Payments Accepted Online
**www.courts.oregon.gov** Select *OJD Courts E-Pay*

Payor
Gabriel, Ryan Dean
2000 Blacktail Rd #1140
Lakeside, MT 59922

Receipt No.
**2024-684595**

Transaction Date
10/18/2024

| Description | Amount Paid |
|---|---|

On Behalf Of  Gabriel, Ryan Dean
22DR04942
Jesse Mark Olsen vs Ryan Dean Gabriel
Tender

| | | | |
|---|---|---|---|
| Tender | | | 51,816.00 |
| **SUBTOTAL** | | | **51,816.00** |

**PAYMENT TOTAL**   | **51,816.00**

| | Check (Ref #0001250108) Tendered | 51,816.00 |
|---|---|---|
| | Total Tendered | **51,816.00** |
| | Change | 0.00 |

| 10/18/2024 | Cashier | Audit |
|---|---|---|
| 02:06 PM | Station MULw12 | 282262094 |

## OFFICIAL RECEIPT

Exhibit 68 p. 001

| | |
|---|---|
| JESSE MARK OLSEN, | ) Case No. 22DR04942 |
| Petitioner, | ) |
| | ) **SUPERSEDEAS UNDERTAKING** |
| | ) **PURSUANT TO ORS 19.335** |
| RYAN DEAN GABRIEL, | ) |
| Respondent. | ) |

------------------------------------------------------)

In consideration of the pending appeals A184374 and A184337, Respondent, the undersigned, does hereby notify of his supersedeas undertaking on appeal, specifically with respect to the listing, sale or transfer of 2000 Blacktail Road, Lakeside, MT 59922. Respondent has paid the amount of $51,816 to the Clerk of the Court as cash security. The sufficiency of this amount has been stipulated to by the parties and approved by the Court as appropriate, per the Order dated August 14, 2024.

Respondent will not commit waste or allow waste to be committed on the real property while the appellant possesses and has access to the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed. For the purposes of this appeal, the value of the use and occupation during the period of possession is $51,816 for a period of 24 months ($2,159 per month), which is per the parties' stipulation and the 8/14/2024 Order.

DATED: Oct 18, 2024

Andrew W. Newsom
OSB# 096119
Holtey Law, LLC
teamnewsom@holteylaw.com
October 18, 2024

Ryan D. Gabriel, Appellant
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Telephone: (206) 391-9886

*SUPERSEDEAS UNDERTAKING ON APPEAL (ORS 19.335)*

Exhibit 68 p. 002

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Supersedeas Undertaking was served upon the following person(s):

| | |
|---|---|
| Roscoe C. Nelson, III<br>811 SW Naito Pkwy #200<br>Portland, OR, 97204<br>503-222-1081<br>attorneys@roscoecnelson.com<br>OSB# 732218 | George W. Kelly, PC<br>303 W. 10th<br>Eugene, OR, 97401<br>541-343-1884<br>Georgewkelly@gmail.com<br>OSB# 822980 |

__x__ **by mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, to the address(es) shown above which is the last known office address(es) of the person(s), and deposited with the United States Postal Service at Portland, Oregon on the date set forth below.

__x__ by e-mailing to the person(s) to the last known e-mail address as shown above, on the date set forth below.

DATED: Oct 18, 2024

_____
Respondent/Appellant
Ryan D. Gabriel

*SUPERSEDEAS UNDERTAKING ON APPEAL (ORS 19.335)*

Exhibit 68 p. 003

# Undertaking

Final Audit Report

2024-10-18

| | |
|---|---|
| Created: | 2024-10-18 |
| By: | Amy Turenhout (aturenhout@holteylaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAx6Qr1FAsM2z4QN2yJ9k6QnyR-1CrPFd9 |

## "Undertaking" History

Document created by Amy Turenhout (aturenhout@holteylaw.com)
2024-10-18 - 5:14:10 PM GMT

Document emailed to Ryan Gabriel (aegil2@gmail.com) for signature
2024-10-18 - 5:14:14 PM GMT

Email viewed by Ryan Gabriel (aegil2@gmail.com)
2024-10-18 - 8:15:11 PM GMT

Document e-signed by Ryan Gabriel (aegil2@gmail.com)
Signature Date: 2024-10-18 - 8:16:49 PM GMT - Time Source: server

Agreement completed.
2024-10-18 - 8:16:49 PM GMT


Adobe Acrobat Sign

Exhibit 68 p. 004

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

**IN THE DISTRICT COURT OF THE STATE OF MONTANA
FOR THE COUNTY OF FLATHEAD**

| | | |
|---|---|---|
| JESSE OLSEN, | ) | Cause No. DR-24-394 (E) |
| Plaintiff, | ) | **NOTICE OF REINSTATEMENT OF** |
| | ) | **STAY OF FOREIGN JUDGMENT** |
| vs. | ) | |
| | ) | |
| RYAN GABRIEL | ) | |
| Defendant. | ) | |

COMES NOW Defendant RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel") who herein notifies this Court of a renewed Oregon Court Stay of its Amended General Judgment via stipulated Order dated August 14, 2024, in Oregon Case No. 22DR04942[1] pending appeal, which is at the epicenter of this instant cause to enforce Foreign Judgment (*See* **Exhibit 45**, attached here).

The instant Case record will show that Plaintiff JESSE OLSEN "hereinafter "Mr. Olsen") through his counsel has relied upon the Amended General Judgment in Oregon Case No. 22DR04942 as pretext and justification for their unlawful actions, including an attempt to incarcerate Defendant Mr. Gabriel under unlawful pretenses in order to force his signature on the sale and title to his own permanent residence at 2000 Blacktail Road in Lakeside, MT 59922. That Amended General Judgment was subject to a Stay via Supersedeas Undertaking until it was lifted by the Oregon trial Court on August 14, 2024, and then it was subsequently reinstated on October 18, 2024. (*See* **Exhibit 45**, attached here).

---

[1] See 22DR04942, *'Olsen v. Gabriel'*, Multnomah County Circuit Court, State of Oregon, 2022.

1    NOTICE OF REINSTATEMENT OF STAY OF FOREIGN JUDGMENT    Exhibit 69 p. 001

The Court Stay via stipulated Order proves that all actions taken by Plaintiff through his counsel with respect to Plaintiff Mr. Gabriel's primary residence at 2000 Blacktail Road in Lakeside, MT 59922 prior to August 14, 2024, and after October 18, 2024, which have been duly documented within the instant case and its various pleadings and exhibits, are and were unlawful.

WHEREFORE Plaintiff Mr. Gabriel gives this Court notice of the reinstatement of a Stay via stipulated trial Court Order and subsequent Supersedeas Undertaking. (*See* **Exhibit 45**).

* * *

DATED this 21st Day of October, 2024.

Respectfully submitted,

_____
Defendant, *Pro Se* (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Tel: (403) 606-5859 m.

***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing Notice, Exhibits and other documents were served upon the opposing parties on this 21st Day of October, 2024, by the method an at the address as indicated below:

Melissa Smith
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
melissa@familylawflathead.com

***

_____X___ by regular mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing addresses shown above, sent via USPS Priority Express with signature receipt.

_____X___ by e-mailing full, true, and correct copies thereof to the attorney(s) at the electronic mail addresses shown above.

DATED this 21st day of October, 2024.

_____
Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.
rgabriel@zurccapital.com

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

**IN THE DISTRICT COURT OF THE STATE OF MONTANA
FOR THE COUNTY OF FLATHEAD**

| | | |
|---|---|---|
| RYAN DEAN GABRIEL, | ) | Cause No. DV-24-1197 |
| Plaintiff, | ) | **NOTICE OF REINSTATEMENT OF STAY OF FOREIGN JUDGMENT** |
| vs. | ) | |
| FREDERICK "FRITZ" J. GROENKE /DBA MONTANA REAL ESTATE GROUP, TAYLOR KAI GROENKE, and MONTANA REGIONAL MLS, LLC | ) ) ) | |
| Defendants. | ) | |

COMES NOW Plaintiff RYAN DEAN GABRIEL (hereinafter "Mr. Gabriel") who herein notifies this Court of a renewed Oregon Court Stay of an Amended General Judgment via stipulated Order dated August 14, 2024, in Oregon Case No. 22DR04942[1] pending appeal, which is at the epicenter of this instant Complaint (*See* Exhibit 45, attached here).

The instant Case record will show that Defendants FREDERICK "FRITZ" J. GROENKE /dba MONTANA REAL ESTATE GROUP, TAYLOR KAI GROENKE, and MONTANA REGIONAL MLS, LLC have relied upon the Amended General Judgment in Oregon Case No. 22DR04942 as pretext and justification for their unlawful actions leading to Defendants' tortious interference with Plaintiff's business contracts, along with the alleged violations of the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101, et seq.

---

[1] See 22DR04942, *'Olsen v. Gabriel'*, Multnomah County Circuit Court, State of Oregon, 2022.

Exhibit 70 p. 001

That Amended General Judgment was subject to a Stay via Supersedeas Undertaking until it was lifted by the Oregon trial Court on August 14, 2024, and subsequently reinstated on October 18, 2024. (*See* **Exhibit 45**, attached here).

The Court Stay via stipulated Order proves that all actions taken by Defendants with respect to Plaintiff Mr. Gabriel's primary residence at 2000 Blacktail Road, in Lakeside, MT 59922 prior to August 14, 2024, and after October 18, 2024, and which have been duly documented within the instant case and its various pleadings and exhibits, are and were unlawful as previously alleged by Plaintiff Mr. Gabriel.

DATED this 22nd Day of October, 2024.

_____
Plaintiff, Pro Se (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Phone #: (403) 606-5859 m.

***

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Notice and Exhibits were served upon the opposing parties on this 22nd Day of October, 2024, by the method an at the address as indicated below:

Kevin S. Jones
Joseph D. Houston
Remy J. Orrantia
Jones & Houston, PLLC
2625 Dearborn Ave., Suite 102
Missoula, MT 59804
(406) 541-3333

kevin@jonesmtlaw.com
remy@jonesmtlaw.com
Attorneys for Montana Regional MLS, LLC

\*\*\*

Robert C. Lukes
Alan F. McCormick
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT 59807-7909
Phone (406) 523-2500
rclukes@garlington.com
afmccormick@garlington.com
Attorneys for Frederick J. "Fritz" Groenke

\*\*\*

Susan G. Ridgeway
HALL & EVANS, LLC
125 Bank Street, Suite 403
Missoula, Montana 59802
Telephone: (406) 541-8882
ridgeways@hallevans.com
Attorneys for Defendant Taylor Kai Gronke

_____X___ by regular mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing addresses shown above, sent via USPS Priority Express with signature receipt.

_____X___ by e-mailing full, true, and correct copies thereof to the attorney(s) at the electronic mail addresses shown above.

DATED this 22nd day of October, 2024.

_____
Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.

3       NOTICE OF REINSTATEMENT OF STAY OF FOREIGN JUDGMENT

Exhibit 70 p. 003

# OFFICIAL RECEIPT
## OREGON JUDICIAL DEPARTMENT
### Payments Accepted Online
**www.courts.oregon.gov** Select *OJD Courts E-Pay*

| Payor | | Receipt No. |
|---|---|---|
| Gabriel, Ryan Dean | | **2024-684595** |
| 2000 Blacktail Rd #1140 | | |
| Lakeside, MT 59922 | | Transaction Date |
| | | 10/18/2024 |

| Description | | Amount Paid |
|---|---|---|
| On Behalf Of  Gabriel, Ryan Dean | | |
| 22DR04942 | | |
| Jesse Mark Olsen vs Ryan Dean Gabriel | | |
| Tender | | |
| Tender | | 51,816.00 |
| **SUBTOTAL** | | **51,816.00** |
| | **PAYMENT TOTAL** | **51,816.00** |
| | Check (Ref #0001250108) Tendered | 51,816.00 |
| | **Total Tendered** | **51,816.00** |
| | Change | 0.00 |

| 10/18/2024 | Cashier | Audit |
|---|---|---|
| 02:06 PM | Station MULw12 | 282262094 |

## OFFICIAL RECEIPT

Exhibit 70 p. 004

FOR THE COUNTY OF MULTNOMAH

JESSE MARK OLSEN, )
                                )
          Petitioner, )

RYAN DEAN GABRIEL, )

          Respondent. )

----------------------------------------------------)

Case No. 22DR04942

**SUPERSEDEAS UNDERTAKING PURSUANT TO ORS 19.335**

    In consideration of the pending appeals A184374 and A184337, Respondent, the undersigned, does hereby notify of his supersedeas undertaking on appeal, specifically with respect to the listing, sale or transfer of 2000 Blacktail Road, Lakeside, MT 59922. Respondent has paid the amount of $51,816 to the Clerk of the Court as cash security. The sufficiency of this amount has been stipulated to by the parties and approved by the Court as appropriate, per the Order dated August 14, 2024.

    Respondent will not commit waste or allow waste to be committed on the real property while the appellant possesses and has access to the property, and the appellant will pay the value of the use and occupation of the property for the period of possession if the judgment is affirmed. For the purposes of this appeal, the value of the use and occupation during the period of possession is $51,816 for a period of 24 months ($2,159 per month), which is per the parties' stipulation and the 8/14/2024 Order.

    DATED: Oct 18, 2024

Andrew W. Newsom
OSB# 096119
Holtey Law, LLC
teamnewsom@holteylaw.com
October 18, 2024

Ryan D. Gabriel, Appellant
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Telephone: (206) 391-9886

*SUPERSEDEAS UNDERTAKING ON APPEAL (ORS 19.335)*

1

Exhibit 45, Page __2__ of __8__

Exhibit 70 p. 005

**CERTIFICATE OF SERVICE**

2

I hereby certify that a true and correct copy of the Supersedeas Undertaking was served

3     upon the following person(s):

4

| Roscoe C. Nelson, III | George W. Kelly, PC |
|---|---|
| 811 SW Naito Pkwy #200 | 303 W. 10th |
| Portland, OR, 97204 | Eugene, OR, 97401 |
| 503-222-1081 | 541-343-1884 |
| attorneys@roscoecnelson.com | Georgewkelly@gmail.com |
| OSB# 732218 | OSB# 822980 |

7

  x  by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid

8     envelope, to the address(es) shown above which is the last known office address(es) of the
person(s), and deposited with the United States Postal Service at Portland, Oregon on the date set

9     forth below.

10

  x  by e-mailing to the person(s) to the last known e-mail address as shown above, on the date

11     set forth below.

12     DATED: Oct 18, 2024

13

14

15     Respondent/Appellant
Ryan D. Gabriel

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 70 p. 006

# Undertaking
### Final Audit Report
2024-10-18

| | |
|---|---|
| Created: | 2024-10-18 |
| By: | Amy Turenhout (aturenhout@holteylaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAx6Qr1FAsM2z4QN2yJ9k6QnyR-1CrPFd9 |

## "Undertaking" History

📄 Document created by Amy Turenhout (aturenhout@holteylaw.com)
2024-10-18 - 5:14:10 PM GMT

📧 Document emailed to Ryan Gabriel (aegil2@gmail.com) for signature
2024-10-18 - 5:14:14 PM GMT

📄 Email viewed by Ryan Gabriel (aegil2@gmail.com)
2024-10-18 - 8:15:11 PM GMT

✍ Document e-signed by Ryan Gabriel (aegil2@gmail.com)
Signature Date: 2024-10-18 - 8:16:49 PM GMT - Time Source: server

✅ Agreement completed.
2024-10-18 - 8:16:49 PM GMT

 **Adobe Acrobat Sign**

Exhibit 70 p. 007

1

2

3         IN THE CIRCUIT COURT OF THE STATE OF OREGON
                    FOR MULTNOMAH COUNTY

4

5    JESSE MARK OLSEN,                    )
                                         )      No. 22DR04942
6         Petitioner,                    )
                                         )      ORDER DENYING
7         and                            )      STAY MOTIONS AND
                                         )      SUSTAINING OBJECTIONS
8    RYAN DEAN GABRIEL,                   )      TO UNDERTAKING
                                         )
9         Respondent.                    )

10        This matter was presented to the court at a July 24, 2024 telephonic hearing.

11   George Kelly (attorney for petitioner), Andrew Newsom (attorney for respondent),

12   and respondent, personally, were present. The hearing was held to resolve the

13   petitioner's objections to the respondent's July 1, 2024 "Supersedeas Undertaking

14   Pursuant to ORS 19.335, 19.555," his July 1, 2024 "Motion to Stay Execution of

15   Amended Judgment Pending Appeal," his July 2, 2024 "Motion to Stay Execution

16   of Amended Judgment Pending Appeal," his July 2 "Undertaking on Appeal

17   Pursuant to ORS 19.300," his July 6, 2024 "Supersedeas Undertaking Pursuant to

18   ORS 19.335, 19.355," and his July 8, 2024 "Motion to Stay Execution of

19   Amended Judgment Pending Appeal." The court heard arguments and accepted

20   the parties' agreement that the reasonable value of the use and occupation of their

21

Exhibit 70 p. 008

1  Montana home came to $4,318 monthly and that, because respondent is a half

2  owner, the posting that will effect a stay is 24 times half of that amount (*i.e.,* a

3  posting of $51,816). It then ruled that respondent's undertakings were insufficient

4  on account of respondent's failure to post a bond, letter of credit, or cash in support

5  of them.

6  Therefore, it is now ORDERED that petitioner's objections are sustained,

7  respondent's stay motions are denied, and there is presently no stay of the

8  provisions of the court's Amended General Judgment.

9

10                                                    8/14/2024 3:39:54 PM

11                                                    *Patrick W. Henry*

12                                                    **Circuit Court Judge Patrick W. Henry**

13  Submitted by:

14

15  George W. Kelly (822980)
16  Attorney for Respondent
    Date: 8/8/24

17  Approved as to form:

18

19
                                    August 7, 2024
20  Andrew Newsom (096119)
    Attorney for Petitioner
21

George W. Kelly (822980) * 303 West 10ᵗʰ Avenue, Eugene, OR 97401 * (541) 343-1884          PAGE 2

Exhibit 45, Page __6__ of __8__

Exhibit 70 p. 009

## CERTIFICATE OF READINESS

The proposed order is ready for judicial signature as shown by the signature of

the parties' attorney, which is set out on the document.

George W. Kelly (822980)
Dated: 8/8/21
Attorney for Jesse Olsen

Exhibit 70 p. 010



Whitefish
CREDIT UNION

Acct: 0001250166 Dollar: 0599 Date: 10/17/24 Time: 12:20pm    No. 0001250108

See receipt for reference

Check Number: 00 0001250108
Purpose:
Amount: $51,816.00
Pay To: *STATE OF OREGON*

RE: RYAN DEAN GABRIEL,
MEMO: CASE # 22DN03942 *UNDERTAKING*

Whitefish
CREDIT UNION    93 - 2601/292
                WHITEFISH CREDIT UNION WHITEFISH,MT          No. 0001250108
                     OFFICIAL CHECK

                                              10/17/24
PAY  EXACTLY ... $ 51 , 816 . 00 Dollars 00 Cents      $51,816.00

... FIFTY-ONE THOUSAND EIGHT HUNDRED SIXTEEN DOLLARS ...
... AND 00 CENTS ...

TO THE        *STATE OF OREGON*
ORDER OF      RE: RYAN DEAN GABRIEL,
              MEMO: CASE # 22DN03942 *UNDERTAKING*

⑆000125010⑆ ⑆292260132⑆ ⑆000000000000000⑆

Exhibit 70 p. 011

**From:** Melissa Smith <melissa@familylawflathead.com>
**Sent:** Monday, October 21, 2024 7:40 AM
**To:** Kai Groenke <kai@familylawflathead.com>
**Subject:** Fw: Case 9:24-cv-00118-JTJ Gabriel v. Gray et al | Motion for Leave to Amend Complaint

Get Outlook for iOS

---

**From:** Zurc System Admin <admin@zurccapital.com>
**Sent:** Sunday, October 20, 2024 11:13:36 PM
**To:** Ryan Gabriel <rgabriel@zurccapital.com>; ridgeways_hallevans.com <ridgeways@hallevans.com>; afmccormick_garlington.com <afmccormick@garlington.com>
**Cc:** allend_hallevans.com <allend@hallevans.com>; rclukes_garlington.com <rclukes@garlington.com>; llroberts_garlington.com <llroberts@garlington.com>; lcschneiter_garlington.com <lcschneiter@garlington.com>; Melissa Smith <melissa@familylawflathead.com>
**Subject:** Re: Case 9:24-cv-00118-JTJ Gabriel v. Gray et al | Motion for Leave to Amend Complaint

Oh, and lest I be accused of lacking a sense of humor in the forthcoming proceedings:

https://youtu.be/FhoSqdCG9fQ?si=QLtquasNG2AmCDnm

Funny is serious, and vice versa.

Sent via BlackBerry Hub+ Inbox for Android

---

Original
Message

Show Details

From: rgabriel@zurccapital.com
Sent: October 20, 2024 1:57 PM
To: ridgeways@hallevans.com; afmccormick@garlington.com
Cc: allend@hallevans.com; admin@zurccapital.com; rclukes@garlington.com; llroberts@garlington.com; lcschneiter@garlington.com; melissa@familylawflathead.com
Subject: Case 9:24-cv-00118-JTJ Gabriel v. Gray et al | Motion for Leave to Amend Complaint

Groenke Crime Cartel apparatchiks,

The attached was filed with the Federal Court today.

Cheers,

Ryan D. Gabriel
**Zurc Capital, LLC**
rgabriel@zurccapital.com

**206.391.9886** mobile
**403.606.5859** office
**855.488.ZURC** toll free

Exhibit 71 p. 001



Test your
Musical Knowledge

START QUIZ



Rammstein - Waidmanns Heil (English Translation)

Genius English Translations  •  Track 3 on Rammstein - Liebe ist für alle ...



GENIUS    Latinx Heritage Month    Featured    Charts    Videos    Promote Your Music                    Sign Up    [Search lyrics & more]

1 Viewer        53.4K Views

Rammstein - Waidmanns Heil (English Translation) Lyrics

Translations ▾    3 Contributors

[Verse 1]
I've been in heat for days
So I shall go out and hunt me a hind
I'll wait and prey till dawn
To aim and hit perfectly

[Chorus]
On the land, on the sea
Impending doom awaits
The creature must die
Die

[Verse 2]
A lanky doe jumps on her feet
From sunbathing in the reeds
Runs in the woods, leaves but a trail
I catch a glimpse, i'm locking on
As the doe's tail shivers
I produce my gun
(Huntsman, man, man, man's salvation)
I rub the velvet off my antler
And take a sure shot
(Huntsman, man, man, man's salvation)

[Chorus]

See rock shows near Wichita
Get tickets as low as $46

You might also like



Waidmanns Heil
Rammstein

meet the grahams
Kendrick Lamar

THE HEART PART 6

Exhibit 71 p. 002

On the land, on the sea
Impending doom awaits
The creature must die
(Huntsman, man, man, man's salvation)
Die!
(Huntsman, man, man, man's salvation)



[Verse 3]
She feels the muzzle energy
Drops of blood drip on the knee
On the land, on the sea
Impending doom awaits
The creature must die
(Huntsman, man, man, man's salvation)
Die!

 

# About

Have the inside scoop on this song?

Exhibit 71 p. 003

**From:** Ryan D. Gabriel <rgabriel@zurccapital.com>
**Sent:** Wednesday, October 23, 2024 4:52 PM
**To:** Melissa Smith <melissa@familylawflathead.com>
**Subject:** Fw: DR-15-2024-0000394-JFJesse Mark Olsen and Ryan Dean Gabriel

Melissa,

Now that Jesse and Taylor have been deprived of the excitement of physically hauling me into court, I invite Jesse to deescalate this.particular matter sooner rather than later as there is a Stay in place on the Foreign Judgment in question, which I understand George Kelly has now verified with your office.

I have little interest in pursuing a criminal contempt charge against Jesse, and have not yet filed this petition yet, but I reserve the right to file it if Jesse's now-defunct Petition for Contempt and companion Motion is withdrawn only at the last possible minute and/or during the hearing itself.

Please confer with Jesse and let me know either way.

Sent via BlackBerry Hub+ Inbox for Android

From: noreply@courts.mt.gov
Sent: October 23, 2024 4:21 PM
To: rgabriel@zurccapital.com
Subject: DR-15-2024-0000394-JFJesse Mark Olsen and Ryan Dean Gabriel

Please see attached documentation.

Thank you,
Mandi Hess
Deputy Clerk
406-758-5870

Exhibit 72 p. 001

**Ryan Dean Gabriel**, *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com

**IN THE DISTRICT COURT OF THE STATE OF MONTANA
FOR THE COUNTY OF FLATHEAD**

| | | |
|---|---|---|
| JESSE OLSEN, | ) | Cause No. DR-24-394 (E) |
| Plaintiff, | ) | **MOTION TO VACATE PETITION FOR CONTEMPT AND TO ABATE OR DISMISS AMENDED MOTION TO ENFORCE FOREIGN JUDGMENT, AND TO DISMISS REQUEST FOR ATTORNEYS' FEES** |
| vs. | ) | |
| | ) | |
| RYAN GABRIEL | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant RYAN GABRIEL (hereinafter "Mr. Gabriel") who herein moves this Court to vacate Plaintiff's Petition for Contempt, to abate or dismiss Amended Motion to Enforce Foreign Judgment, and to dismiss Request for Attorney's Fees with prejudice.

Defendant Mr. Gabriel has conferred with counsel for Plaintiff JESSE OLSEN (hereinafter "Mr. Olsen") and Mr. Olsen opposes this Motion.

**BACKGROUND AND FACTS SUPPORTING MOTION**

1.     Plaintiff Mr. Olsen through his attorney Taylor "Kai" Groenke (hereinafter "M/r/s. Groenke") filed the instant *'Amended Motion to Enforce Foreign Judgment and Petition for Contempt, Statement of Charge, and Request for Attorneys' Fees'* on October 4, 2023.  However, Defendant Mr. Gabriel was never properly served by the Flathead County Sherriff's Office, as required by law, the 'Application for Hearing on Contempt' and 'Order to Show Cause'.  Per Flathead County local rules, "If service was not perfected by the Sheriff a minimum of fourteen (14) business days prior to the hearing, the hearing must be vacated and reset." (*See* **Exhibit 46**, attached here.)  In addition, Mr. Olsen's instant Petition for Contempt and Statement of Charge is made

pursuant to Mont. Code Ann. § 3-1-518, which is predicated on Mont. Code Ann § 3-1-513:

> "Mont. Code Ann. § **3-1-513:  Warrant -- statement of charge.** When the contempt is not committed in the immediate view and presence of the court or judge, a warrant may be issued to bring the person charged to the court to answer the charge. The warrant must be accompanied by an adequate and specific statement of the charge. The answer to the charge must be followed by a hearing under **3-1-518**."

2.    To this date (October 23, 2024), Defendant Mr. Gabriel has not been properly served by the Flathead County Sheriff's Office in any capacity and has still not received a copy of the Application for Hearing on Contempt in any format, wherein guidance is offered to Defendant / Respondent on how to respond to such a Petition for Contempt. (*See* **Exhibit 46**, attached here.) Therefore, the hearing to Show Cause must be vacated and reset.

3.    Furthermore, the instant Motion to Enforce Foreign Judgment is in clear violation of Mont. Code Ann. § **3-1-502,** as the Foreign Judgment in question is subject to an immediately effective Stay via stipulated Court Order pending appeal in an Oregon court:

> "Mont. Code Ann. § **3-1-502:   Order refused -- subsequent applications prohibited.** (1) If an application for an order, made to a judge of a court in which the action or proceeding is pending, is refused in whole or in part or is granted conditionally, no subsequent application for the same order shall be made to any other judge, except of a higher court."

4.    Here it is important to note that George W. Kelly and Roscoe C. Nelson, III, presently retained attorneys for Plaintiff Mr. Olsen in Oregon in the underlying case (Cause No. 22DR04942, Multnomah County Circuit Court, State of Oregon, currently on appeal in Cause No. A184337, Oregon Court of Appeals), have declined to pursue any judgment enforcement measures against Defendant Mr. Gabriel within the originating Court, and have similarly declined to bring any petition or charges for contempt of Court, or any postmortem request for

attorneys' fees, in the originating case. The reason for this is that all parties in the underlying Oregon case, including Plaintiff/Petitioner Mr. Olsen through his attorney George W. Kelly, Defendant/Respondent Mr. Gabriel through his attorney Andrew Newsom, and Hon. Judge Henry, the presiding Judge in the underlying case, all signed a Stipulated Order on August 14, 2024, agreeing that "The court heard arguments and accepted the parties' agreement that the reasonable value and use and occupation of their Montana home came to $4,318 monthly and that, because respondent [Mr. Gabriel] is a half owner, **the posting that will effect a stay is 24 times half of that amount (i.e., a posting of $51,816).** (Emphasis added.) (*See* **Exhibit 45**, attached here).

5. In compliance with the above-mentioned stipulated Order signed by Hon. Judge Henry on August 18, 2024, and at the advice of his Oregon attorney Andrew Newsom, Defendant Mr. Gabriel posted that exact amount in the form of a cashier's check for $51,816 on October 18, 2024, along with the requisite supersedeas undertaking filing, to achieve full compliance with both the Amended General Judgement now on appeal and the subsequent trial Court order specifying the amount to "effect a stay". The undertaking and cash posting were both accepted by the Oregon Court on August 18, 2024. (*See* **Exhibit 45**, attached here).

6. The Amended General Judgment was therefore subject to a Stay via Supersedeas Undertaking until it was lifted by the Oregon trial Court on August 14, 2024, and subsequently reinstated on October 18, 2024, according to Defendant Mr. Gabriel's Oregon attorney, Andrew Newsom. (*See* **Exhibit 45**, attached here).

6. Defendant Mr. Gabriel has posted a Notice of Stay of Foreign Judgment and properly served counsel for Mr. Olsen of this Court Stay via Stipulated Order, signed by all parties and Hon. Judge Henry on August 14, 2024, which means that Plaintiff Mr. Olsen is now in contempt of Court for failing to withdraw the instant Amended Motion to Enforce Foreign Judgment. Therefore, the hearing to Show Cause must not only be vacated and reset, but that hearing will now be centered on

Defendant Mr. Gabriel's imminent Application for Hearing on Contempt and Order to Show Cause filed against Plaintiff Mr. Olsen. (*See* **Exhibit 46**, attached here.)

7.    Furthermore, the instant Case record will show that Plaintiff JESSE OLSEN through his counsel has relied upon the Amended General Judgment in Oregon Case No. 22DR04942 as pretext and justification for their unlawful actions, including an attempt to incarcerate Defendant Mr. Gabriel under unlawful pretenses in order to force his signature on the sale and title to his own permanent residence at 2000 Blacktail Road in Lakeside, MT 59922.

8.    The Court Stay via stipulated Order proves that all actions taken by Plaintiff Mr. Olsen through his counsel with respect to Defendant Mr. Gabriel's primary residence at 2000 Blacktail Road in Lakeside, MT 59922 prior to August 14, 2024, and after October 18, 2024, which have been duly documented within the instant case and its various pleadings and exhibits, are and were unlawful.

## CONCLUSION

WHEREFORE Plaintiff Mr. Gabriel herein moves this Court to vacate Plaintiff's Petition for Contempt, to abate or dismiss the instant Amended Motion to Enforce Foreign Judgment, and to dismiss Request for Attorney's Fees with prejudice.

\* \* \*

DATED this 23rd Day of October, 2024.

Respectfully submitted,

_____
Defendant, *Pro Se* (signature)

Ryan D. Gabriel
2000 Blacktail Rd. #1140
Lakeside, MT 59922
Tel:  (403) 606-5859 m.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing Notice, Exhibits and other documents were served upon the opposing parties on this 23rd Day of October, 2024, by the method an at the address as indicated below:

Melissa Smith
Law Office of Kai Groenke, P.C.
239 Second Street West
Kalispell, MT 59901
Telephone: (406) 890-2999
melissa@familylawflathead.com

***

____X___ by regular mailing full, true, and correct copies thereof to the attorney(s) at the physical mailing addresses shown above, sent via USPS Priority Express with signature receipt.

____X___ by e-mailing full, true, and correct copies thereof to the attorney(s) at the electronic mail addresses shown above.

DATED this 23ʳˢ day of October, 2024.

_____
Ryan D. Gabriel
Respondent/Plaintiff, *pro se*

2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.
rgabriel@zurccapital.com

FILED

10/31/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Anissa Neils
DR-15-2024-0000394-JF
Coffman, Danni
20.00

Hon. Danni Coffman
District Court Judge, Dept. E
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, MT 59901
Phone: (406) 758-5906

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | | |
|---|---|---|
| Jesse Mark Olsen, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. DR-15-2024-0000394-JF |
| vs. | ) | |
| | ) | |
| Ryan Dean Gabriel, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

     This matter came before the Court on Plaintiff's motion for contempt. Both parties appeared. The present dispute stems from an Order in a dissolution matter in Oregon. The subject judgment was filed as a Foreign Judgment in this Court in early July. The Judgment gives Plaintiff Jesse Olsen ("Olsen") nearly unilateral power to list and sell their properties with input from Gabriel. The Judgment also prohibits Gabriel from interfering in the sale of the property. When there was or was not a stay of judgment is in dispute and will be litigated, if necessary, in Oregon. Olsen wished to nonetheless proceed with an evidentiary hearing on Gabriel's conduct that Olsen alleges has interfered with the sale of their property in Lakeside, Montana.

    The Court heard testimony from several witnesses who detailed communications they received from Defendant Ryan Gabriel ("Gabriel") that were threatening in nature and are the subject of respective protective order proceedings. Gabriel testified that he was hyperbolic in his communications, and/or "funny," and that everyone was overreacting. Whatever Mr. Gabriel thinks of his style of communication, the Court agrees with Olsen that they are threatening and obstructive. Accordingly, while the Court takes under advisement the motion for contempt and attorney's fees, **IT IS HEREBY ORDERED:**

    Ryan Gabriel shall have no direct or indirect contact, except through legal counsel, with any party associated with the real estate transaction in Lakeside, Montana. This includes but is not limited to Olsen's attorney, her staff, the realtor, the Title Company, the buyer, or any other party having any connection to the Lakeside property. Ryan Gabriel may not harass or threaten any person associated with the sale of the Lakeside, Montana property. This includes but is not limited to the above-named people, and any inspectors or tradespeople who may visit the property in connection with the subject real estate transaction. Mr. Gabriel may respond to scheduling inquires made directly to him regarding the Lakeside properties, any response must

<span style="color:red">Exhibit 74 p. 001</span>

be limited to the scope of the request and must not be harassing or threatening in nature. Similarly, Ryan Gabriel shall not interfere, directly or indirectly, except by lawful legal process, with the sale of real property in Lakeside, Montana as set forth in the Oregon Judgment. Mr. Gabriel is hereby on notice that if he makes frivolous legal filings, he may be deemed a Vexatious Litigant under Montana law.

This Order is in effect whether or not there is a stay of the Oregon Judgment. Interference shall include, because of his prior threatening conduct for which he is the subject of felony criminal charges, being present when a realtor, inspector, buyer, or other person authorized by Olsen is on the premises, provided Gabriel is given two hours advance notice. Gabriel will remain .25 miles from the property or more during any such time a person is present on the property, as authorized by Olsen, for the purpose of effectuating the sale of the property.

*ELECTRONICALLY SIGNED AND DATED BELOW*

FILED
11/07/2024
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Amanda Hess
DR-15-2024-0000394-JF
Coffman, Danni
25.00

Hon. Danni Coffman
District Court Judge, Dept. E
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, MT 59901
Phone: (406) 758-5906

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

Jesse Mark Olsen,           )
                                  )
            Plaintiff(s), )
vs.                              )
                                  )
Ryan Dean Gabriel,         )
                                  )
           Defendant(s). )
                                  )
_____ )

Cause No. DR-15-2024-0000394-JF

ORDER CLARIFYING THIS COURT'S 10/31/2024 NO CONTRACT ORDER

On 10/31/2024 this Court issued an Order restricting Ryan Gabriel's contact with any person related to the transaction of the Lakeside property and Ordering him to not interfere with the pending transaction of that property. The Court Ordered:

Ryan Gabriel shall have no direct or indirect contact, except through legal counsel, with any party associated with the real estate transaction in Lakeside, Montana. This includes but is not limited to Olsen's attorney, her staff, the realtor, the Title Company, the buyer, or any other party having any connection to the Lakeside property. Ryan Gabriel may not harass or threaten any person associated with the sale of the Lakeside, Montana property. This includes but is not limited to the above-named people, and any inspectors or tradespeople who may visit the property in connection with the subject real estate transaction. Mr. Gabriel may respond to scheduling inquires made directly to him regarding the Lakeside properties, any response must be limited to the scope of the request and must not be harassing or threatening in nature. Similarly, Ryan Gabriel shall not interfere, directly or indirectly, except by lawful legal process, with the sale of real property in Lakeside, Montana as set forth in the Oregon Judgment. Mr. Gabriel is hereby on notice that if he makes frivolous legal filings, he may be deemed a Vexatious Litigant under Montana law.

One week following this Order, Ryan Gabriel filed a Motion to Stay, and a separate motion entitled "Notice of Foreign Court Filing and Request for Clarification of Interim Order." In his request for clarification, it appears he seeks guidance on whether providing service of legal filings to Mr. Olsen's attorney would be a violation of the Order.

<span style="color:red">Exhibit 75 p. 001</span>

Shortly after, Jesse Olsen filed a Notice of Noncompliance alleging Mr. Gabriel did not make the property available for inspection by the buyer despite adequate notice. In the Notice Mr. Olsen alleges Mr. Gabriel's Oregon Attorney was notified that the buyer requested access to the property at 2:00pm on November 3rd. Mr. Olsen's attorney then responded that he did not represent Mr. Gabriel in this matter and that he would need to be contacted directly. The Notice then concludes the Mr. Gabriel did not respond to the request for access, alleging he violated the Order by interfering with the transaction. At no point does the Notice indicate that Mr. Gabriel was contacted directly or that he restricted access.

Although the Court appreciates the parties are trying to strictly abide by the Order, a clarification appears necessary. Therefore, IT IS FURTHER ORDERED:

Ryan Gabriel may serve copies of all legal filings to Mr. Olsen's attorney while he remains a pro se litigant, such service is not a violation of the Order. He is reminded that the Order still applies, and legal filings must not be frivolous, threatening, or harassing. Furthermore, as Mr. Gabriel has not yet retained local counsel to represent him in this matter he must be notified directly about scheduling requests. Again, as made clear in the original Order, he may respond to scheduling inquires made directly to him regarding the Lakeside properties, any response must be limited to the scope of the request and must not be harassing or threatening in nature. If he retains legal counsel, all such notification will be made through such counsel.


ELECTRONICALLY SIGNED AND DATED BELOW.


c:      Kai Groenke
        Jesse Mark Olsen
        Ryan Dean Gabriel

Electronically Signed By:
Hon. Judge Danni Coffman
Thu, Nov 07 2024 04:11:45 PM

Exhibit 75 p. 002



**FILED**

10/30/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0646

Form 1
IN THE SUPREME COURT OF THE STATE OF MONTANA
Supreme Court Cause No. DA24-0646
(To be assigned by the Clerk of the Supreme Court)

**Ryan Dean Gabriel,** *Pro Se*
2000 Blacktail Road, #1140
Lakeside, MT 59922
Telephone: (206) 391-9886 m.
rgabriel@zurccapital.com
Appellant,

     v.                         NOTICE OF APPEAL

TAYLOR "KAI" GROENKE,
Appellee.

     NOTICE is given that RYAN DEAN GABRIEL, the Appellant above-named and who is the Defendand/Appellant in that cause of action filed in the Montana Eleventh Judicial District Court, in and for the County of Flathead, as Cause No. DR-24-510 (B), hereby appeals to the Supreme Court of the State of Montana from the final judgment or order entered in such action on the 30th day of September, 2024.

### THE APPELLANT FURTHER CERTIFIES:

     1. That this appeal is not subject to the mediation process required by M. R. App. P. 7.

     2. That this appeal is an appeal from an order certified as final under M. R. Civ. P. 54(b). If this is such an appeal, a true copy of the District Court's certification order is attached hereto as Exhibit "A."

     3. That the notice required by M. R. App. P. 27 has been or will be given, within 11 days of the date hereof, to the Supreme Court and to the Montana Attorney General with respect to a challenge to the constitutionality of any act of the Montana Legislature.

     4. That all available transcripts of the proceedings in this cause have been ordered from the court reporter contemporaneously with the filing of this notice of appeal. If all available transcripts have not been ordered, that Appellant has complied with the provisions of M. R. App. P. 8(3) contemporaneously with the filing of this notice of appeal.

     5. That included herewith is the filing fee prescribed by statute, or the affidavit to proceed without payment of the required filing fee prescribed in the Appendix of Forms as Form 3.

     Dated this 30th day of October, 2024.

Ryan D. Gabriel
Appellant, *pro se*
2000 Blacktail Road, Box #1140
Lakeside, MT 59922
Tel. # (403) 606-5859 m.
rgabriel@zurccapital.com

**FILED**

OCT 3 0 2024

Bowen Greenwood
Clerk of Supreme Court
State of Montana

Exhibit 76 p. 001

CERTIFICATE OF SERVICE

I hereby certify that I have filed a true and accurate copy of the foregoing NOTICE OF APPEAL with the Clerk of the Montana Supreme Court; and that I have served true and accurate copies of the foregoing NOTICE OF APPEAL upon the Clerk of the District Court, each attorney of record, and each party not represented by an attorney in the above-referenced District Court action, as follows:

> Law Office of Kai Groenke, P.C.
> 239 Second Street West
> Kalispell, MT 59901
> Telephone: (406) 890-2999
> melissa@familylawflathead.com

***

_____X_____ by regular mailing full, true, and correct copies thereof to the attorney(s) at

the physical mailing addresses shown above, sent via USPS Priority Express with signature

receipt.

Dated this 30th day of October, 2024.

> Ryan D. Gabriel
> Appellant, *pro se*
> 2000 Blacktail Road, Box #1140
> Lakeside, MT 59922
> Tel. # (403) 606-5859 m.
> rgabriel@zurccapital.com

2

Exhibit 76 p. 002

# CERTIFICATE OF SERVICE

I, Susan G. Ridgeway, hereby certify that I have served true and accurate copies of the foregoing Notice - Notice to the following on 11-19-2024:


Alan F. McCormick (Attorney)
PO Box 7909
350 Ryman St.
Missoula MT 59807
Representing: Frederick J Groenke
Service Method: eService

Kevin Scott Jones (Attorney)
2625 Dearborn Ave., Ste. 102A
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Remy James Orrantia (Attorney)
2625 Dearborn Ave., Ste. 102
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Joseph David Houston (Attorney)
2625 Dearborn Avenue, Ste. 102A
Missoula MT 59804
Representing: Montana Regional MLS, LLC
Service Method: eService

Ryan Dean Gabriel (Petitioner)
2000 Blacktail Rd. Box 1140
Lakeside MT 59922
Service Method: Email


Electronically signed by Donna Allen on behalf of Susan G. Ridgeway
Dated: 11-19-2024